UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

leave to
file is
granted
ESH
6/12/06

| | |
|---|---|
| SIMON BANKS, J.D.<br>P.O. BOX 17052<br>ALEXANDRIA, VA. 22302<br><br>Plaintiff<br><br>v.<br><br>S. ELWOOD YORK, JR., ET AL.<br>------------------<br><br>DISTRICT OF COLUMBIA<br>GOVERNMENT<br>JOHN A. WILSON BUILDING<br>1350 PENNSYLVANIA AVENUE, NW<br>WASHINGTON, DC 20004<br><br>DEVON BROWN,<br>DIRECTOR<br>DC DEPARTMENT OF<br>CORRECTIONS<br>1923 VERMONT AVENUE, NW<br>WASHINGTON, DC 2003<br><br>ROBERT YORK, WARDEN<br>DISTRICT OF COLUMBIA<br>JAIL<br>1901 D STREET, SE<br>WASHINGTON, DC 2003 | Civil Action No. 05-1514 (ESH)<br>Ellen Segal Huvelle, Judge |

Defendants

June 8, 2006

PLAINTIFF'S AMENDED COMPLAINT
AS TO DEFENDANTS DEVON BROWN, ROBERT CLAY
AND DISTRICT OF COLUMBIA GOVERNMENT

PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)
That before filing his motion Plaintiff requested defendant's consent
To the relief requested in such motion however the defendants did not

Give their consent to the relief requested in the motion

1.     The plaintiff brings this action against the government of the District of Columbia Government, defendants **Robert Clay, Warden** of District of Columbia Jail and **DeVon Brown, Director of the District of Columbia Department of Corrections**, in their individual capacity under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce the Fourth, Fifth, and Eighth Amendments and through the Fifth Amendment, the Standards of the Fourteenth Amendment, for injuries suffered by Plaintiff because defendants held Plaintiff at a District of Columbia Corrections facility past his release date.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 131 and 28 U.S.C. § 1343(a)(3). This Court has jurisdiction over the named plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has pendent jurisdiction over the Plaintiff's common law claims against the defendants pursuant to 28 U.S.C. 1367(a).

4.     Venue is appropriate in this District . Each of the claims for relief arose in this judicial district.

5.     There is a clear question of liability on the question of whether the Plaintiff was overdetained, and the answer to that question can be determined by ministerial inspection of the Department of Corrections' records.

6.     Among the questions of law and fact are:

(a) whether defendant District of Columbia has a pattern and practice of holding detainees and inmates past their release dates;

(b) whether defendants District of Columbia has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates holding them past their release dates;

(c) whether defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

(d) whether defendant Clay was deliberately indifferent to the rights of Plaintiff and inmates and detainees in the custody of the Department of Corrections by failing to supervise his subordinates;

(e) whewther plaintiff has sustained damages and, if so, the proper measure of such damages.

## PARTIES

7.    The Plaintiff Simon Banks is an adult resident of the State of Virginia

8.    Defendant District of Columbia Government is the Government of the District of Columbia.

9.    Defendant DeVon Brown is the Director of the District of Columbia Department of Corrections.

10.    Defendant Robert Clay, is the Warden of the District of Columbia Jail.

## FACTUAL ALLEGATIONS

### DISTRICT OF COLUMBIA'S PATTERN AND PRACTICE OF OVERDETENTION

Introduction and description of the problem

3

11.    The Department of Corrections has a long and documented history of overdetaining detainees and inmates past their release dates.

12.    "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date.

13.    "Release Date" for each detainee is the day which the person is entitled to be released by court order or the date on which the basis for his or her detention has expired.

14.    The Plaintiff was released on April 28, 2006 at 10:00 O'clock PM although the Plaintiff's sentence expired on March 20, 2006.

15.    The Defendants and their employees, agents and assigns, miscalculated Plaintiff's release date on several occasions during May 2005 and April, 2006 as October 7 and October 2, 2006, respectively.

16.    The Plaintiff protested defendant's miscalculation of the Plaintiff's release date that the defendants, their agents, employees and assigns calculated, erroneously as October 7 and October 2, 2006.

17.    Notwithstanding the Plaintiff's numerous protest that the release calculation of the defendants was erroneous in that defendants failed to credit the six months that the Plaintiff was purportedly erroneously released to the Alexandria, Virginia, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals, Judge Noel Kramer sitting specially as an appellate Judge, in the District of Columbia, the defendants failed to correct the error, with reckless, egregious indifference to

the rights of the Plaintiff, and subjected the Plaintiff to an additional 39 days and 20 hours beyond the expiration of the Plaintiff's sentence.

18. On April 26, 2006, at 1:00 PM the Plaintiff was taken from E2A Section of the Central Treatment Facility and placed in a holding cell at the Central Treatment Facility until 10:00 0'Clock PM where there was no TV, bed, or recreation area.

19. On April 26, 2006, at 10:00 PM the Plaintiff was taken to the DC Jail and held in a holding area on the first floor of the DC Jail until 12:30 A.M. April 27, 2006 when the Plaintiff was transferred to an intake cell on the Third Tier of the DC Jail and not released for recreation until 2:30 PM thru 5:30 PM, then the Plaintiff was returned to his cell where the Plaintiff remained until 5:30 PM on April 27, 2006 when the Plaintiff was allowed to leave his cell for four hours of recreation and then returned to his cell until April 28, 2006.

20. On April 28, 2006, the Plaintiff was allowed to come out of his assigned cell at 2:30 PM and at on or about 6:00 O'clock PM the Plaintiff was informed that he could bag up, without telling Plaintiff whether the Plaintiff was being released or being reassigned to a Halfway House as the Plaintiff was previously informed on April 15, 2006, by Ms. Jennings, the Case Manager of E2A of the CTF Detention Center.

21. D.C. Code § 24-201.06 requires that a prisoner shall be released by the Department of Corrections on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence. The federal rule is the same. 8 USCA § 3624(a).

22.    "Exit Date" for each detainee or inmate means the date on which he or she

was actually released from the custody of the Department of Corrections.

### The Department of Corrections And Its Facilities; Responsibility

### For Administering Prisoners In the District of Columbia

23.    As Director, Defendant DeVon Brown is the policy maker for the Department

of Corrections.

24.    Defendant DeVon Brown has ultimate supervisory authority for all operations

of the Department of Corrections.

25.    Defendant DeVon Brown is ultimately responsible for the functioning of the

Department of Corrections' Records Office, as defined below, and all other

Departments of Corrections Facilities.

26.    Defendant DeVon Brown is also responsible for ensuring that each employee

of the Department of Corrections discharges his or her duties in accordance

with the law.

## COMPONENTS OF THE DEPARTMENT OF CORRECTIONS

27.    The District of Columbia Central Detention Facility ("D.C. Jail") is the

primary facility used by the Department of Corrections to house inmates.

28.    The D.C. Jail houses about 2,000 and some odd prisoners at any one time.

29.    Most of the prisoners at the D.C. Jail are either pre-trial  detainees,

misdemeanants serving sentences, or parole and probation violators.

30.    The Department of Corrections also houses prisoners in its Correctional

Treatment Facility ("CTF").

31.  CTF is a freestanding, privately-run facility about 500 feet from the D.C. Jail building.

32.  Prisoners in CTF remain in the custody of the Department of Corrections.

33.  CTF houses about 700 individuals at any one time.

34.  Most prisoners detained in CTF are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

35.  The Department of Corrections also houses prisoners at various halfway houses located in the District of Columbia.

36.  On information and belief, approximately several hundred prisoners are housed at various Department of Corrections halfway houses at any one time.

37.  Inmates housed at Department of Corrections halfway houses remain in the custody of the Department of Corrections, although they are permitted access to the street in order to work, obtain drug or other substance abuse treatment, or for other purposes.

## THE INMATE MANAGEMENT SYSTEM

38.  The records office located at the D.C. Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the D.C. Jail, CTF and the halfway houses.

39.  The Records Office is responsible for ensuring that all persons housed at the D.C. Jail, CTF and the halfway houses are released according to their court-ordered Release Dates.

40.  Currently, the Receiving and Discharge Office located at the DC Jail is the only place where people are booked into and out of the Department of Corrections' custody.

41.  Until about June 2001, people were also booked out of the Department of Corrections' custody directly from the District of Columbia Superior Court.

42.  The Plaintiff was released from the DC Jail although the Plaintiff was housed at the CTF Facility until April 26, 2006, when the Plaintiff was taken to the DC Jail for release processing.

43.  Almost every inmate taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge is no longer pending is returned to the D.C. Jail for processing before release rather than being released from the courthouse.

44.  The District of Columbia Superior Court for the District of Columbia and the United States District Court for the District of Columbia use different computer systems from the computer system used by the Records Office.

45.  Release and commitment data entered into the court computer systems by courtroom clerks do not appear in the computer system used by the Records Office, the JAXX system ("JAXX") and (JACCS).

46.  As a result, all release and commitment orders generated by judges in the Superior and District Courts on paper must be hand carried to the Records Office by marshals as prisoners are bused from the courthouse to the jail.

47.  All processing of release and commitment orders must be done by hand at the Records Office located at the D.C. Jail.

48. Release and commitment data entered into the court computer system by courtroom clerks must be entered again by hand into JAXX, JACCS.

49. The name and DCDC number (jail identification number) of every inmate physically entering or leaving the D.C. Jail is also entered by hand into the "Count" computer, a MacIntosh/Apple computer used to maintain a census of all inmates in the D.C. Jail at any one time.

## THE CAUSE OF THE OVERDETENTION PROBLEM – COLLAPSE OF THE INMATE MANAGEMENT SYSTEM

50. The cause of the overdetention problem is a deliberate indifference by Defendant District of Columbia to the rights of detainees and prisoners to be released on their Release Dates, inasmuch as the Department of Corrections has no effective inmate management system that can ensure release of prisoners by their Release Dates.

51. The fact that the Department of Corrections has no effective inmate management system has been documented by a series of reports and recommendations dated back at least 20 years.

52. On October 5, 1999, John L. Clark, Corrections Trustee for the District of Columbia, prepared a Report to the United States Attorney General entitled, "Review of the Handling of Leo Gonzales Wright and Similar Offenders Sentenced by the U.S. District Court for the District of Columbia" (the "Wright Report").

53.    The Wright Report documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office. (Wright Report, Major Findings, F-14).

54.    Among the major findings of the Wright Report were lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management." (Wright Report, Major Findings, F-14 and F-20).

55.    The Wright Report also listed an extensive series of studies and recommendations that were "not seriously implemented" including studies dating back as far as 1976.  The studies mentioned and some of their principal recommendations were as follows:

1976 RMC Research Corporation Analysis.  Major Recommendations: reorganization of the Record Office and increased staffing in the office.

1985 BOP Evaluation.  Major Recommendations:  creation of a headquarters level position at the Department of Corrections' to provide guidance and written policy to the Records Office; increased Records Office staff; and restricted access to the Records Office and files.

1986 DOC Security Workgroup Study.  Major Recommendations: creation of a system of judgment and commitment files separate from central inmate files; restricted access to the Records Office and institutional files.

## PLAINTIFF'S OVERDETENTION BY THE D.C. JAIL

56.    Plaintiff,  Simon Banks' Release Date was March 20, 2006.

57. Plaintiff, Simon Banks' was overdetained for more than 39 days and 20 hours. See ¶s 11 through 18 hereof.

58. The moving force behind Plaintiff's overdetention was the collapse of the Department of Corrections' inmate management system.

59. Defendants' overdetention of the Plaintiff was unconstitutional, outrageous, egregious and with reckless indifference to the rights of the Plaintiff.

60. Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a result of the overdetention.

61. On or about May, 2005, the defendants' subordinate correction officers conducted a shakedown at the unit where the Plaintiff was housed in the District of Columbia Jail.

62. In February and March 2004, the Plaintiff paid in excess of $8000 to have seven of his teeth sawed down for purposes of installing a permanent dental crown that would improve the protection of Plaintiff's teeth and that would improve the Plaintiff's teeth appearance.

63. During the Shakedown, correction officers confiscated and destroyed Plaintiff's dental crown protecting some 7 teeth.

64. The Plaintiff filed a grievance and a complaint with Warden Corbitt of the District of Columbia Jail regarding the confiscation and destruction of the Plaintiff's Dental Crown.

65. In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown by correctional officers of the DC Jail, the Plaintiff met personally with Warden Corbitt in Warden Corbitt's Office and Warden

Corbitt stated he would look into it but that he doubted that there was anything that the DC Jail medical unit could do.

66.     In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown and in connection with the pain, suffering and damage to the Plaintiff's teeth, the dental unit of the Department of Corrections treated the Plaintiff with antibiotics but the Plaintiff was further advised that that was all that the dental/medical unit could do other than pull seven of the Plaintiff's teeth that were chipping and causing the Plaintiff to suffer infection and great pain and suffering.

67.     From May, 2005, through April, 2006, the Plaintiff suffered chipping and repeated gum and tooth infection due to the exposure of the Plaintiff's seven teeth without the protection of a dental crown.

68.     From May, 2005 through April, 2006, the Plaintiff was repeatedly given pain medicine and antibiotics to alleviate the pain and suffering that the Plaintiff was suffering as the result of the progressive destruction of Plaintiff's teeth which were exposed as the result of being sawed down for purposes of installing permanent crown containing teeth.

69.     As a consequence of the defendants' egregious, gross negligence, and reckless indifference to the rights of the Plaintiff, and because of defendants failure to provide the Plaintiff with replacement crown and medical malpractice, the Plaintiff suffered the lost of four teeth which were removed by the Plaintiff's dentist, Pamela Brady, after the Plaintiff was released from custody of the DC Jail, in May, 2006.   Three other teeth of the Plaintiff have been so destroyed

that they are unable to hold any dental crown and the Plaintiff is now required to have a bridge containing seven false teeth, which the Plaintiff will undergo a period of adjustment, therapy, for purposes of attempting to get used to the false teeth.

70. Plaintiff suffered anxiety, loss of teeth, pain, gum infection, and damages as the result of the destruction of the Plaintiff's dental crown and the defendant's failure to replace the Plaintiff's dental crown or afford the Plaintiff opportunity to go to his dentist who was prepaid to secure f or the Plaintiff a temporary and/or permanent dental crown.

## FAILURE AND/OR DELIBERATE ACTIONS OF DEFENDANTS DEVON BROWN AND ROBERT CLAY TO HOUSE THE PLAINTIFF AT THE CENTRAL TREATMENT FACILITY

71. When the Plaintiff was initially incarcerated in connection with the four consecutive misdemeanor contempt citations and order, arising out of the Plaintiff's allege violation of prior restraint speech restrictions of Judge Noel Kramer, on April 8, 2004, in May, 2004, the Plaintiff, because of his low custody level, his age then 64, the Plaintiff was accessed by the Records Office of the DC Jail and its staff of correctional officers, as eligible to be housed at the Central Treatment Facility of the DC Jail. ("CTF")

72. In connection with the assessment, the Plaintiff was reassigned and housed at the eligibility assessment, the Plaintiff was reassigned for housing at the CTF Facility where the Plaintiff was assigned to a housing unit at the E Building, where the Plaintiff's cell was never locked, and the Plaintiff was allowed to

leave his cell at all times excepting administrative Count Times and Lockdowns.

73.     When the Plaintiff returned to the DC Jail on December 18, 2004, after spending six months in the Alexandria Jail, the Plaintiff was housed at the DC Jail until August 30, 2005, although the Plaintiff had been assessed in December, 2004 and January 2005, and again in March, 2005, as eligible for assignment for housing at the CTF Facility.

74.     Despite the eligibility assessment and approval for reassignment to the CTF Facility, the Plaintiff was denied housing at the CTF Facility, when and while inmate with higher custody levels were higher, and whom were under 64 years of age.

75.     The actions of the defendants DeVon Brown and Robert Clay in failing to reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff being housed at sections of the DC Jail where the Plaintiff suffered regular lockdowns, extreme restrictions on liberty, recreation, commissary, visitation, telephone privileges and cost.

76.     The actions of the defendants DeVon Brown and Robert Clay, in failing to reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff being housed at the "Hole" section of the DC Jail from May through August 30, 2005, where the Plaintiff suffered for 30 days with recreation and telephone privilege for one hour and where the Plaintiff was locked down for 23 hours per day, and for sixty (60) days where the Plaintiff was locked down for twenty hours per day, and where the Plaintiff received visitors chained

from angle, waist and wrist handcuffs, and when the Plaintiff received visitors, the Plaintiff was placed in a locked holding –steel screen area, segregated from other inmates, the same as if the Plaintiff had committed a violation of institutional rules and was placed on administrative segregation, when this was not the case.  As a consequence of this outrageous, egregious action, the Plaintiff suffered humiliation, lost of liberty, undue hardship and deprivation of privileges.

77.     As a consequence of the actions of DeVon Brown and Robert Clay as set forth in paragraph 73 hereof, the Plaintiff was commingled with inmates whom were charged with multiple murder, including inmate that committed murder in the Tavern Case, and other murderers whom confided in the Plaintiff that they were found guilty of murder, conspiracy to murder, and were awaiting transfer to the federal institutions operated by the Bureau of Prisons.

## SUBSTANTIVE ALLEGATIONS
## COUNT 1 – NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION
### (Defendants DeVon Brown and Robert Clay)

78.     The Plaintiff realleges and incorporate by reference all allegations set forth above in this complaint.

79.     Defendants DeVon Brown and Robert Clay entrusted certain duties including but not limited to ensuring the release of Plaintiff on his Release Date, and of all detainees and inmates in the Department of Corrections' Custody to certain Department of Corrections employees.

80.  Therefore, Defendants DeVon Brown and Robert Clay had respective duties to exercise reasonable care in training, supervising and disciplining such employees in exercising their duties.

81.  The need for such training was obvious from the sensitive and technical nature of the responsibilities entrusted to such Department of Correction employees.

82.  The problems at Department of Corrections facilities described above, and the various reports prepared by John Shaw, John L. Clark and others, as well as the injunctions and settlement agreements entered by the Honorable United States **Judge Royce C. Lamberth**, on January 25 2006, in the case of *Marcus Bynum v. District of Columbia, et al* **02-cv-956, [See 6-8, 18-20 of Approved Settlement Agreement] [attached]** coupled with the reports and admissions of the Defendant District of Columbia and the District of Columbia Department of Corrections therein, should have made it obvious to Defendants DeVon Brown and Robert Clay that the training such employees were receiving was inadequate, that the medical care and dental care, were inadequate, that the Records Office ability to correctly calculate Release Dates were inadequate, and that as a direct and proximate result Plaintiff, an inmate and other inmates under their supervision would suffer injury.

83.  Defendants DeVon Brown and Robert Clay, respectively, negligently trained and supervised or negligently failed to train and supervise such employees in their duties, and as a result such employees were incompetent to perform their duties.

84.   This negligent training and negligent failure to train and supervise by Defendants DeVon Brown and Robert Clay, respectively, resulted in the complete breakdown of the inmate management system of the Department of Corrections, a continuing violation of the rights of inmates and of the Plaintiff's rights, and as a result such employees were incompetent to perform their duties.

85.   This negligent training and negligent failure to train and supervise by Defendant DeVon Brown and Robert Clay resulted in the complete breakdown of the inmate management system of the Department of Corrections and caused the overdetention of Planitiff and other inmates, a continuing violation, a continuing custom, usage and institutionally policy, overtly, covertly, and negligently perpetuated prior to and subsequent to the filing of the *Marcus Bynum, et al,* Case, the injunctions issued and settlement agreement ratified by United States District Court Judge, Royce Lamberth. *Id.*

86.   As a result of said negligence of Defendant DeVon Brown and Robert Clay, Plaintiff suffered injuries described in the preceding paragraphs of this Complaint.

## COUNT 2
### VIOLATION OF THE FOURTH, FIFTH AND EIGHTH AMENDMENTS, AND, THROUGH THE FIFTH, THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C.§ 1983

### (Defendants DeVon Brown and Robert Clay)

87.   Plaintiff realleges and incorporate by reference all allegations set forth above in this complaint.

88.   Defendant DeVon Brown and Robert Clay, were at all times relevant, the supervisors of the Department of Corrections employees charged with ensuring the release of Plaintiff on Plaintiff's Release Date and the Release of all detainees and inmates in the custody of the Department of Corrections.

89.   Defendant DeVon Brown and Robert Clay, respectively, deliberately failed to train, monitor and discipline such employees.

90.   Defendant DeVon Brown and Robert Clay, respectively, had both actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff and other inmates.

91.   Defendant DeVon Brown and Robert Clay, respectively, engaged in a pattern of continued inaction in the face of such employees' documented widespread abuse of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

92.   Defendant Devon Brown and Robert Clay, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

93.   The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant DeVon Brown and Robert Clay, respectively, while DeVon Brown and Robert Clay, respectively, were acting under color of District of Columbia law and

were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

94. Defendant DeVon Brown's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

95. Defendant Robert Clay's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

## COUNT III
## § 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS OF ITS EMPLOYEES

96. The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

97. District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and release.

98. Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

99. District of Columbia employees continue in such conduct up to and including the present.

100. At all times relevant such District of Columbia employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia

employees were acting in furtherance of the business of the District of Columbia.

101.    Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

### COUNT 1V
### § 1983 MONELL CUSTOM AND PRACTICE DIRECT LIABILITY OF DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, EIGHTH AND, THROUGH THE FIFTH, FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFF

102.    The Plaintiff realleges and incorporate by reference all allegations set forth above in this Complaint.

103.    District of Columbia employees caused the intentional, unjustified overdetention of the Plaintiff in failing to provide an effective system to govern the timely release of prisoners in its detention facilities.

104.    District of Columbia employees continue in such conduct up to and including the present time.

105.    Defendant District of Columbia was at all times relevant the municipality in charge of the D.C. Jail, CTF and other Department of Corrections facilities.

106.    Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in Department of Corrections  facilities in accordance with their Release Dates.

107.    There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with

monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.

108.  The pattern of unconstitutional conduct the Plaintiff complain of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.

109.  Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their Release Dates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff at a Department of Corrections facility. [The Honorable United States **Judge Royce C. Lamberth**, on January 25 2006, in the case of  *Marcus Bynum v. District of Columbia, et al* **02-cv-956**], **[See 6-8, 18-20 of Approved Settlement Agreement attached]]**

110.  Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged with monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release in violation of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of such individuals.

111.  Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force

behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

112.    Defendant District of Columbia's policy, custom and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

113.    Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above.

114.    Defendant District of Columbia's actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff request that this Court grant the following relief:

1.    grant a jury trial on all claims;

2.    require the defendants to pay for all of the Plaintiff's dental problems

3.    Grant the Plaintiff actual damages in the amount of $1 Million Dollars

4.    Grant the Plaintiff compensatory damages in the amount of $1 Million Dollars,

5.    Grant the Plaintiff punitive damages in the amount of $1 Million Dollars

6.    Grant the Plaintiff Cost and Attorneys fees, and any and all other relief this Honorable Court deem appropriate.

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, Plaintiff's Amended Complaint was electronically mailed, and postage prepaid, this 8th day of June, 2006, to the following:

VIA FACSIMILE TO

**Denise.baker@dc.gov**
**djbakerbrown@msn.com**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,