UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BANKS, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>S. ELWOOD YORK, JR., ET AL. )<br>)<br>Defendants ) | Civil Action No. 05-1514 (ESH)<br>Ellen Segal Huvelle, Judge |

# ATTACHMENT 1
### [To Amended Complaint]
# FINAL SETTLEMENT AGREEMENT

*BYNUM, ET AL V DISTRICT OF COLUMBIA*
NO. 02-956 (RCL)

*Respectfully Submitted*

*By Plaintiff, Simon Banks*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARCUS BYNUM, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 02-956 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant ) | |

## FINAL APPROVAL ORDER

This Lawsuit, having come before this Court for a final approval hearing on January 20, 2006, at 9:30 a.m., pursuant to this Court's Order Preliminarily Approving Proposed Settlement Between Plaintiffs and Defendant, dated August 31, 2005 (the "Preliminary Approval Order") (docket # 128) to consider and determine the matters set forth in the Preliminary Approval Order; and due notice of said hearing having been published and given; and all entities that made timely objections to the proposed settlement set forth in the Settlement Agreement made and entered into on June 16, 2005, as amended June 22, 2005 and August 31, 2005, 2005, and described in the Class and Settlement Notice, having been given an opportunity to present such objections to the Court and to be heard at the hearing; and the Court having considered the matter, including all papers filed in connection therewith, and the oral presentations of counsel and objectors at said hearing; and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.  Each term and phrase used in this Final Order and Judgment shall have the same definition and

1

settlement where four of the eight named plaintiffs objected and 60 people filed comments or objections and the class was ultimately held to comprise about 125 members. Memorandum Opinion, Neal v. Director, Department of Corrections, 93-cv-02420 (RCL) June 28, 1999, pages 14, 22, and 27. See also, e.g., Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-119 (3d Cir.1990) ("only" 29 objections in 281 member class "strongly favors settlement"); In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283, 318 (3d Cir.1998) (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

**Settlement Agreement approved because fair, adequate, and reasonable**

7. The settlement of this Lawsuit was not the product of collusion between Plaintiffs and Defendant or their respective counsel, but rather was the result of bona fide and arm's-length negotiation conducted in good faith by the Parties and their counsel through the United States District Court Mediation Program administered by the Office of the Circuit Executive for the United States Courts for the District of Columbia Circuit, pursuant to LCvR 84. The Settlement Agreement and the settlement set forth therein are hereby approved and found to be fair, adequate, reasonable, in the best interest of the Class as a whole, and in satisfaction of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

**Class certified under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3)**

8. The Court has previously certified both an Over-detention Class and a Strip Search Class under both Fed. R. Civ. P. 23(b)(2) and (b)(3). This is a hybrid class action, certified under Fed. R. Civ. P. 23(b)(2) with regard to seeking injunctive relief on over-detentions, and strip searches

of inmates under the definition of the strip search class set forth herein. Therefore, regarding prospective relief, no member of the class may opt-out. With regards to monetary relief, the class is certified under Fed. R. Civ. P. 23(b)(3) and class members have a right to opt out of the monetary relief stage.

9. The Over-Detention Injunctive Relief Class is defined as:

> (a) Each person who has been, is or will be incarcerated in any District of Columbia Department of Corrections facility beginning in the three years preceding the filing of this action on or about May 16, 2002 up to and until the date this case is terminated; and (b) who was not released, or, in the future will not be released by midnight on the date on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired.

The Over-Detention Monetary Relief Class is defined the same as above except that it ends on August 31, 2005.

**Class-wide Prospective Relief**

11. The plaintiffs' claims for prospective relief regarding the Over-detention and the strip search classes have been resolved by the cessation of the practices of Over-detentions and strip-searching court returns entitled to release. No court order is entered under the terms of the settlement agreement between the parties on these issues. The parties agree that the injunctive relief objective of this agreement is the elimination of over-detentions and court release strip searches. To that end, the District will, for a period of two years, provide to Class Counsel annually a report on whether 1) it has strip searched any court returns entitled to release absent individualized reasonable suspicion to do so, and whether 2) it has released any detainees or

7

inmates more than 24 hours after the time they become entitled to release, and the reasons therefore. In addition, under the terms of this settlement elaborated further on in this Order, the District must invest substantial funds in new renovations that will substantially contribute to processing of inmates in the jail.

**Class Counsel**

12.     The Court reaffirms the appointment of William Claiborne, Lynn Cunningham and Barrett S. Litt as Class Counsel, and, based upon the work that has occurred between the Preliminary Approval Order and the present, reaffirms the findings it made at the time of the Preliminary Approval Order confirming or appointing them.

Pursuant to F. R. Civ. P. Rule 23(g)(1)(i), the Court considered the following points in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, and other complex litigation, of the type asserted in the action, based in part on affidavits submitted by counsel in support of their motions to certify, (3) counsel's knowledge of the applicable law, (4) the resources counsel committed to representing the class; as well as other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class. The Court finds that Plaintiffs' counsel have done extensive research in this case, including taking numerous depositions and affidavits and interviewing numerous persons who have knowledge of the case, and thoroughly analyzing the computer records of the District of Columbia. Plaintiffs' counsel are competent to represent the members of the class.

**Payment by the District of Columbia**

31. Plaintiffs requested injunctive relief as part of the complaint. The parties agreed that $3 million of the $12 million payment referenced above would revert to the D.C. Department of Corrections to be spent on programs and services which relate to the subject of this complaint (the "reversion fund"). These funds may be spent on new staff, services, construction, technology, equipment, programs or other activities otherwise necessary to improve or assist in processing inmates for release and to reduce incidents of over-detention and the need to strip search, without individualized suspicion, inmates who meet the definition of the strip search class. The reversion fund exists to fund the injunctive relief changes necessary to eliminate the over-detentions and strips searches that are the subject of this lawsuit and will be for new programs or activities not previously budgeted (and specifically not as a part of the general budget).

32. The reversion funds shall be spent as follows:

The Department of Corrections (DOC) shall use the $3 million in settlement money to build a state of the art Inmate Processing Center (IPC) within the foot print of the DC Jail site, which will be a project totaling approximately $5 Million. The additional $2 million required to complete the project will be provided by the District government.

The purpose of the Inmate Processing Center ("IPC") will be to provide adequate processing facilities for intakes and releases, and associated records processing. The IPC will:

- Include required processing space, stations, and protocols for new system intakes, inmates returning from court hearings with legal matters pending, inmates returning from court post sentencing, and inmates

18

returning from court with dismissed charges and no legal matters pending. The processing stations will be set up in a logical flow allowing for booking the inmate, collection of property and funds, required searches, risk assessment and classification, generation of photographs and id wristbands, distribution of clothing, establishment of required accounts, orientation, and dissemination of rules and regulations. Court ordered releases will be separated from inmates to be held in custody. The Center may provide for pre-release counseling stations as well, offering job, education and referrals to community and governmental resources. The Center's capacity will be sufficient to adjust operational work stations to match changing demand patterns. DOC's goal is to create a processing environment that is more humane and business-like in appearance.

- Incorporate "boss chairs" and other non-invasive detection technologies in the process flow with the goal of minimizing physical contact and providing for clothed body searches, except where evidence warrants a search. The focus would be on detecting metals, explosives, drugs and other contraband.

- Utilize technology aided inmate property management whereby inmates' property will be digitally photographed prior to storage, and inmates will be given a receipt for property retrieval upon release.

- Contain space for inmate records processing so this function is seamlessly integrated with the new Inmate Processing Center.

19

- Take advantage of positive id technology at system intake and release points to verify the identity of individuals prior to intake and release.

Existing staff and computer equipment will be re-located to the IPC. DOC expects the IPC to yield substantial operational benefits as a result of the co-location of interdependent intake/release functions and the logical process flow layout of the Center. In an effort to strengthen IPC operations still further, DOC is requesting capital funds in FY 07 to install a wireless LAN at the DC Jail and an RFID system. The latter system will allow DOC to track inmate movements and locations electronically, conduct real-time counts, and assure positive identification.

33. Except as otherwise provided in this Order, each party shall bear its own costs, expenses and attorneys' fees.

34. The basis of the award of attorney's fees and costs contained in ¶ 20 is as follows:

   a. Class Counsel engaged in protracted efforts over a period of four years to obtain this settlement, which the Court considers to be an outstanding settlement both in its monetary and in its non-monetary terms. The court considers the results in this case to have been exceptional.

   b. This was complex litigation, involving novel issues, and the effort that went into the results reflects that fact. There is extensive documentation of the time spent by counsel to attest to the substantial effort that went into this case, and the Court has reviewed the file, which also reflects the extensive work performed on both sides. Extraordinary effort went into the resolution of these cases, not only through litigation, but through many hours of

create any inference that there is any liability therefore. Neither this Final Order of Approval of Settlement, nor the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other matter or proceeding in any court, administrative agency, arbitration, or other tribunal, other than as expressly set forth in the Settlement Agreement.

43.    Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and therefore directs entry of this Final Order of Approval of Settlement.

      SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, January 25, 2006.