UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

JUL 2 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DR. SIMON BANKS, J.D. )
P.O. BOX 17052 )
ALEXANDRIA, VA. 22302 )
)
**Plaintiff** )
)
v. )        Civil Action No. 05-1514 (ESH)
)        Ellen Segal Huvelle, Judge
DEVON BROWN, )
DIRECTOR )
DC DEPARTMENT OF )
CORRECTIONS )
1923 VERMONT AVENUE, NW )
WASHINGTON, DC 2003 )

ANTHONY WILLIAMS, MAYOR )
DISTRICT OF COLUMBIA )
GOVERNMENT )
JOHN A. WILSON BUILDING )
1350 PENNSYLVANIA AVENUE, NW )    2nd Amended Complaint
WASHINGTON, DC 20004 )
)
ROBERT CLAY, WARDEN )
DISTRICT OF COLUMBIA )
JAIL )        July 27, 20006
)
1901 D STREET, SE )
WASHINGTON, DC 2003 )
)
EDWARD D. REISKIN )
DISTRICT OF COLUMBIA )
DEPUTY MAYOR FOR PUBLIC )
SAFETY )
1350 PENNSYLVANIA AVENUE, NW )
SUITE 327 )
WASHINGTON, DC 2004 )
)
NORA TALLY, CAPTAIN )
DISTRICT OF COLUMBIA )
DEPARTMENT OF CORRECTIONS )
DC JAIL )

DC JAIL                              )
1901 D STREET, S.E.                  )
WASHINGTON, DC 20003                 )
                                     )
GLORIA NELSON, DIRECTOR              )
OF RECORDS                           )
D.C. DEPARTMENT OF                   )
CORRECTIONS                          )
1923 VERMONT AVENUE, NW              )
WASHINGTON, DC 20003                 )
                                     )
DR. GREGORY PANE, DIRECTOR           )
DISTRICT OF COLUMBIA                 )
DEPARTMENT OF HEALTH                 )
825 NORTH CAPITOL STREET, N.E.       )
WASHINGTON, DC. 20002                )
                                     )
DR. FOZIA ABDULWAHAB,                )
MEDICAL DIRECTOR DC                  )
JAIL AND CENTRAL TREATMENT           )
FACILITY (CTF)                       )
1901 D STREET, S.E.                  )
WASHINGTON, DC 20003                 )
                                     )
CORRECTIONS CORPORATION OF           )
AMERICA                              )
102 Woodmont Boulevard, Suite 800    )
Nashville, TN 37205                  )
                                     )
JOHN CAUFIELD, WARDEN                )
CENTRAL TREATMENT FACILITY           )
(CTF)                                )
CORRECTIONS CORPORATION OF           )
AMERICA                              )
1901 E STREET, S.E.                  )
WASHINGTON, DC 20003                 )                    )


**Defendants**


**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)**
**That before filing his motion Plaintiff requested defendant's consent**
**To the relief requested in such motion and defendants did**
**Give their consent to the relief requested in the motion**

1.    The plaintiff brings this action against Mayor Anthony Williams, Government of

the District of Columbia Government, in his official capacity, and other District of

Columbia Government defendants whom are employees of the District of Columbia, and

the Corrections Corporation of America, in their official capacity, and in their individual

capacity under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to

enforce the Fourth, Fifth, and Eighth Amendments and through the Fifth Amendment, the

Standards of the Fourteenth Amendment, for injuries suffered by Plaintiff because

defendants held Plaintiff at a District of Columbia Corrections facility past his release

date.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 131 and 28

U.S.C. § 1343(a)(3).  This Court has jurisdiction over the named plaintiffs' §

1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  This

Court has pendent jurisdiction over the Plaintiff's common law claims against

the defendants pursuant to 28 U.S.C. 1367(a).

4.    Venue is appropriate in this District .  Each of the claims for relief arose in

this judicial district.

5.    There is a clear question of liability on the question of whether the Plaintiff

was overdetained, and the answer to that question can be determined by

ministerial inspection of the Department of Corrections' records.

3

6.      Among the questions of law and fact are:

(a) whether defendant District of Columbia has a pattern and practice of holding detainees and inmates past their release dates;

(b) whether defendants District of Columbia has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates holding them past their release dates;

(c) whether defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

(d) whether defendants Devon Brown, Clay was deliberately indifferent to the rights of Plaintiff and inmates and detainees in the custody of the Department of Corrections by failing to supervise his subordinates;

(e) whether the defendants individually were deliberately indifferent to Plaintiff's health and safety, and objectively were sufficiently serious to constitute constitutional violations.

(f) whether the defendants individually subjected the Plaintiff to unconstitutionally harsh conditions,

(g) whether the conduct of the defendants individually and collectively violate clearly established constitutional rights, statutory law and rights of which a reasonable person would know;

(h) whether plaintiff has sustained damages and, if so, the proper measure of such damages.

## EXHAUSTION

The Plaintiff exhausted his administrative remedies by bringing the conditions that the Plaintiff suffered set forth in the complaint to the attention of the Warden,  the Director of Corrections, the medical personnel and the Mayor's Risk Management Office.

## PARTIES

7.    The Plaintiff Simon Banks is an adult resident of the State of Virginia

8.    Defendant Anthony Williams is the Mayor of the District of Columbia Government and is being sued in his official capacity..

9.    Defendant DeVon Brown is the Director of the District of Columbia Department of Corrections and is being sued in his official capacity and in his individual capacity.

10.    Defendant Robert Clay, is the Warden of the District of Columbia Jail and is being sued in his official capacity and in his individual capacity.

11.    Defendant Edward D. Reiskin is the Deputy Mayor of the District of Columbia for Public Safety and is being sued in his official capacity.

12.    Defendant Nora Tally, Captain, is an employee of the DC Department of Corrections and is being sued in her official capacity and in her individual capacity.

13.    Defendant Gloria Nelson, Director of Records, D.C. Department of Corrections, is being sued in her official capacity and in her individual capacity.

14.   Defendant Dr. Gregory Pane, Director District of Columbia Department of Health, is being sued in his official capacity.

15.   Defendant Dr. Fozia Abdul Wahab, Medical Director DC Jail and Central Treatment Facility, is being sued in his official capacity.

16.   Defendant John Caufield, Warden Central Treatment Facility (CTF), is an employee of the Corrections Corporation of America, is being sued in his official capacity.

## FACTUAL ALLEGATIONS
### DISTRICT OF COLUMBIA'S PATTERN AND PRACTICE OF OVERDETENTION

Introduction and description of the problem

17.   The Department of Corrections has a long and documented history of overdetaining detainees and inmates past their release dates.

18.   "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date.

19.   "Release Date" for each detainee is the day which the person is entitled to be released by court order or the date on which the basis for his or her detention has expired.

20.   The Plaintiff was released on April 28, 2006 at 10:00 O'clock PM although the Plaintiff's sentence expired on March 20, 2006.

21.   The Defendants and their employees, agents and assigns, miscalculated Plaintiff's release date on several occasions during May 2005 and April, 2006 as October 7 and October 2, 2006, respectively.

22.  The Plaintiff protested defendant's miscalculation of the Plaintiff's release date that the defendants, their agents, employees and assigns calculated, erroneously as October 7 and October 2, 2006.

23.  Notwithstanding the Plaintiff's numerous protest that the release calculation of the defendants was erroneous in that defendants failed to credit the six months that the Plaintiff was purportedly erroneously released to the Alexandria, Virginia, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals, Judge Noel Kramer sitting specially as an appellate Judge, in the District of Columbia, the defendants failed to correct the error, with reckless, egregious indifference to the rights of the Plaintiff, and subjected the Plaintiff to an additional 39 days and 20 hours beyond the expiration of the Plaintiff's sentence.

24.  On April 26, 2006, at 1:00 PM the Plaintiff was taken from E2A Section of the Central Treatment Facility and placed in a holding cell at the Central Treatment Facility until 10:00 0'Clock PM where there was no TV, bed, or recreation area.

25.  On April 26, 2006, at 10:00 PM the Plaintiff was taken to the DC Jail and held in a holding area on the first floor of the DC Jail until 12:30 A.M. April 27, 2006 when the Plaintiff was transferred to an intake cell on the Third Tier of the DC Jail and not released for recreation until 2:30 PM thru 5:30 PM, then the Plaintiff was returned to his cell where the Plaintiff remained until 5:30 PM on April 27, 2006 when the Plaintiff was allowed to leave his cell for four hours of recreation and then returned to his cell until April 28, 2006.

26.    On April 28, 2006, the Plaintiff was allowed to come out of his assigned cell at 2:30 PM and at on or about 6:00 O'clock PM the Plaintiff was informed that he could bag up, without telling Plaintiff whether the Plaintiff was being released or being reassigned to a Halfway House as the Plaintiff was previously informed on April 15, 2006, by Ms. Jennings, the Case Manager of E2A of the CTF Detention Center.

27.    D.C. Code § 24-201.06 requires that a prisoner shall be released by the Department of Corrections on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence. The federal rule is the same. 8 USCA § 3624(a).

28.    "Exit Date" for each detainee or inmate means the date on which he or she was actually released from the custody of the Department of Corrections.

**The Department of Corrections And Its Facilities; Responsibility**

**For Administering Prisoners In the District of Columbia**

29.    As Director, Defendant DeVon Brown is the policy maker for the Department of Corrections.

30.    Defendant DeVon Brown has ultimate supervisory authority for all operations of the Department of Corrections.

31.    Defendant DeVon Brown is ultimately responsible for the functioning of the Department of Corrections' Records Office, as defined below, and all other Departments of Corrections Facilities.

32.   Defendant DeVon Brown is also responsible for ensuring that each employee of the Department of Corrections discharges his or her duties in accordance with the law.

## COMPONENTS OF THE DEPARTMENT OF CORRECTIONS

33.   The District of Columbia Central Detention Facility ("D.C. Jail") is the primary facility used by the Department of Corrections to house inmates.

34.   The D.C. Jail houses about 2,000 and some odd prisoners at any one time.

35.   Most of the prisoners at the D.C. Jail are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

36.   The Department of Corrections also houses prisoners in its Correctional Treatment Facility ("CTF").

37.   CTF is a freestanding, privately-run facility about 500 feet from the D.C. Jail building.

38.   Prisoners in CTF remain in the custody of the Department of Corrections.

39.   CTF houses about 700 individuals at any one time.

40.   Most prisoners detained in CTF are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

41.   The Department of Corrections also houses prisoners at various halfway houses located in the District of Columbia.

42.   On information and belief, approximately several hundred prisoners are housed at various Department of Corrections halfway houses at any one time.

43.   Inmates housed at Department of Corrections halfway houses remain in the custody of the Department of Corrections, although they are permitted access

to the street in order to work, obtain drug or other substance abuse treatment, or for other purposes.

## THE INMATE MANAGEMENT SYSTEM

44.    The records office located at the D.C. Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the D.C. Jail, CTF and the halfway houses.

45.    The Records Office is responsible for ensuring that all persons housed at the D.C. Jail, CTF and the halfway houses are released according to their court-ordered Release Dates.

46.    Currently, the Receiving and Discharge Office located at the DC Jail is the only place where people are booked into and out of the Department of Corrections' custody.

47.    Until about June 2001, people were also booked out of the Department of Corrections' custody directly from the District of Columbia Superior Court.

48.    The Plaintiff was released from the DC Jail although the Plaintiff was housed at the CTF Facility until April 26, 2006, when the Plaintiff was taken to the DC Jail for  release processing.

49.    Almost every inmate taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge is no longer pending is returned to the D.C. Jail for processing before release rather than being released from the courthouse.

50. The District of Columbia Superior Court for the District of Columbia and the United States District Court for the District of Columbia use different computer systems from the computer system used by the Records Office.

51. Release and commitment data entered into the court computer systems by courtroom clerks do not appear in the computer system used by the Records Office, the JAXX system ("JAXX") and (JACCS).

52. As a result, all release and commitment orders generated by judges in the Superior and District Courts on paper must be hand carried to the Records Office by marshals as prisoners are bused from the courthouse to the jail.

53. All processing of release and commitment orders must be done by hand at the Records Office located at the D.C. Jail.

54. Release and commitment data entered into the court computer system by courtroom clerks must be entered again by hand into JAXX, JACCS.

55. The name and DCDC number (jail identification number) of every inmate physically entering or leaving the D.C. Jail is also entered by hand into the "Count" computer, a MacIntosh/Apple computer used to maintain a census of all inmates in the D.C. Jail at any one time.

## THE CAUSE OF THE OVERDETENTION PROBLEM – COLLAPSE OF THE INMATE MANAGEMENT SYSTEM

56. The cause of the overdetention problem is a deliberate indifference by Defendant District of Columbia to the rights of detainees and prisoners to be released on their Release Dates, inasmuch as the Department of Corrections

has no effective inmate management system that can ensure release of prisoners by their Release Dates.

57.  The fact that the Department of Corrections has no effective inmate management system has been documented by a series of reports and recommendations dated back at least 20 years.

58.  On October 5, 1999, John L. Clark, Corrections Trustee for the District of Columbia, prepared a Report to the United States Attorney General entitled, "Review of the Handling of Leo Gonzales Wright and Similar Offenders Sentenced by the U.S. District Court for the District of Columbia" (the "Wright Report").

59.  The Wright Report documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office. (Wright Report, Major Findings, F-14).

60.  Among the major findings of the Wright Report were lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management." (Wright Report, Major Findings, F-14 and F-20).

61.  The Wright Report also listed an extensive series of studies and recommendations that were "not seriously implemented" including studies dating back as far as 1976.  The studies mentioned and some of their principal recommendations were as follows:

1976 RMC Research Corporation Analysis.  Major
Recommendations: reorganization of the Record Office and
increased staffing in the office.

1985 BOP Evaluation.  Major Recommendations:  creation of a
headquarters level position at the Department of Corrections' to
provide guidance and written policy to the Records Office; increased
Records Office staff; and restricted access to the Records Office and
files.

1986 DOC Security Workgroup Study.  Major Recommendations:
creation of a system of judgment and commitment files separate
from central inmate files; restricted access to the Records Office and
institutional files.

### PLAINTIFF'S OVERDETENTION BY THE D.C. JAIL

62.    Plaintiff,  Simon Banks' Release Date was March 20, 2006.

63.    Plaintiff, Simon Banks' was overdetained for more than 39  days and 20

hours.  See ¶s 11 through 18 hereof.

64.    The moving force behind Plaintiff's overdetention was the collapse of the

Department of Corrections' inmate management system.

65.    Defendants' overdetention of the Plaintiff was unconstitutional,outrageous,

egregious and with reckless indifference to the rights of the Plaintiff.

66.    Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a

result of the overdetention.

67.    The defendants had further prior notice of the erroneous release date that the

defendants caused to be computed regarding the Plaintiff when the Plaintiff

filed this instant suit on July 7, 2005 and when they were copied with

Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive

Relief.  See ¶2-Z5 of Page 12 of Plaintiff's initial complaint and

notwithstanding Plaintiff's civil complaint and Plaintiff's exercise of serving

notice upon the Defendants Williams, Brown, Clay and Nelson, these
Defendants did not correct their erroneous computation which resulted in the
plaintiff being overdetained for in excess of 40 days beyond his March 20,
2006 release date.

68.    On or about May, 2005, the defendants' subordinate correction officers
conducted a shakedown at the unit where the Plaintiff was housed in the
District of Columbia Jail.

69.    In February and March 2004, the Plaintiff paid in excess of $8000 to have
seven of his teeth sawed down for purposes of installing a permanent dental
crown that would improve the protection of Plaintiff's teeth and that would
improve the Plaintiff's teeth appearance.

70.    During the Shakedown, correction officers confiscated and destroyed
Plaintiff's dental crown protecting some 7 teeth.

71.    The Plaintiff filed a grievance and a complaint with Warden Corbitt of the
District of Columbia Jail regarding the confiscation and destruction of the
Plaintiff's Dental Crown.

72.    In connection with the Plaintiff's grievance regarding the confiscation of the
Plaintiff's dental crown by correctional officers of the DC Jail, the Plaintiff
met personally with Warden Corbitt in Warden Corbitt's Office and Warden
Corbitt stated he would look into it but that he doubted that there was anything
that the DC Jail medical unit could do.

73.    In connection with the Plaintiff's grievance regarding the confiscation of the
Plaintiff's dental crown and in connection with the pain, suffering and damage

14

to the Plaintiff's teeth, the dental unit of the Department of Corrections treated the Plaintiff with antibiotics but the Plaintiff was further advised that that was all that the dental/medical unit could do other than pull seven of the Plaintiff's teeth that were chipping and causing the Plaintiff to suffer infection and great pain and suffering.

74.  From May, 2005, through April, 2006, the Plaintiff suffered chipping and repeated gum and tooth infection due to the exposure of the Plaintiff's seven teeth without the protection of a dental crown.

75.  From May, 2005 through April, 2006, the Plaintiff was repeatedly given pain medicine and antibiotics to alleviate the pain and suffering that the Plaintiff was suffering as the result of the progressive destruction of Plaintiff's teeth which were exposed as the result of being sawed down for purposes of installing permanent crown containing teeth.

76.  As a consequence of the defendants' egregious, gross negligence, and reckless indifference to the rights of the Plaintiff, and because of defendants failure to provide the Plaintiff with replacement crown and medical malpractice, the Plaintiff suffered the lost of four teeth which were removed by the Plaintiff's dentist, Pamela Brady, after the Plaintiff was released from custody of the DC Jail, in May, 2006.  Three other teeth of the Plaintiff have been so destroyed that they are unable to hold any dental crown and the Plaintiff was required to have a bridge containing seven false teeth, which the Plaintiff has suffered lost of teeth, lost and reduction of gum, disfigurement of Plaintiff's face, and Plaintiff has undergone and will continue to undergo a period of adjustment,

therapy, for purposes of attempting to get adjusted to and use to eating, speaking and swallowing food with the false teeth when and while Plaintiff suffers lost of gums tissue while Plaintiff's gums recede and become smaller

77.    Plaintiff suffered anxiety, loss of teeth, pain, gum infection, and damages as the result of the destruction of the Plaintiff's dental crown and the defendant's failure to replace the Plaintiff's dental crown or afford the Plaintiff opportunity to go to his dentist who was prepaid to secure f or the Plaintiff a temporary and/or permanent dental crown which done to improve the plaintiff's looks, smile, and general appearance.

78.    The failure of Dr. Gregory Pane, Director District of Columbia Department of Health, and Dr. Fozia Abdulwahab, Medical Director, DC Jail and Central Treatment Facility (CTF) to provide for Plaintiff to have proper dental care, medical care, and the policy, custom and systemic practices of the medical department at the DC Jail and the Central Treatment Facility, which were under the supervision, management and direction of defendant Pane, were with deliberate indifference to the dental health, and general health and safety of the Plaintiff.

79.    At all times relevant the defendants were aware and knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions.

80.    The actions and inactions of Dr. Gregory Pane and Dr. Fozia Abdulwahab, unconstitutionally deprived the Plaintiff of the basic necessities of life.

### FAILURE AND/OR DELIBERATE ACTIONS OF DEFENDANTS DEVON BROWN AND ROBERT CLAY

## TO HOUSE THE PLAINTIFF AT THE CENTRAL TREATMENT FACILITY

81.     When the Plaintiff was initially incarcerated in connection with the four consecutive misdemeanor contempt citations and order, arising out of the Plaintiff's allege violation of prior restraint speech restrictions of Judge Noel Kramer, on April 8, 2004, in May, 2004, the Plaintiff, because of his low custody level, his age then 64, the Plaintiff was accessed by the Records Office of the DC Jail and its staff of correctional officers, as eligible to be housed at the Central Treatment Facility of the DC Jail. ("CTF")

82.     In connection with the assessment, the Plaintiff was reassigned and housed at the eligibility assessment, the Plaintiff was reassigned for housing at the CTF Facility where the Plaintiff was assigned to a housing unit at the E Building, where the Plaintiff's cell was never locked, and the Plaintiff was allowed to leave his cell at all times excepting administrative Count Times and Lockdowns.

83.     When the Plaintiff returned to the DC Jail on December 18, 2004, after spending six months in the Alexandria Jail, the Plaintiff was housed at the DC Jail until August 30, 2005, although the Plaintiff had been assessed in December, 2004 and January 2005, and again in March, 2005, as eligible for assignment for housing at the CTF Facility.

84.     Despite the eligibility assessment and approval for reassignment to the CTF Facility, the Plaintiff was denied housing at the CTF Facility, when and while inmate with higher custody levels were higher, and whom were under 64 years of age.

17

85.    The actions of the defendants DeVon Brown and Robert Clay in failing to reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff being housed at sections of the DC Jail where the Plaintiff suffered regular lockdowns, extreme restrictions on liberty, recreation, commissary, visitation, telephone privileges and cost.

86.    The actions of the defendants DeVon Brown and Robert Clay, in failing to reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff being housed at the "Hole" section of the DC Jail from May through August 30, 2005, where the Plaintiff suffered for 30 days with recreation and telephone privilege for one hour and where the Plaintiff was locked down for 23 hours per day, and for sixty (60) days where the Plaintiff was locked down for twenty hours per day, and where the Plaintiff received visitors chained from angle, waist and wrist handcuffs, and when the Plaintiff received visitors, the Plaintiff was placed in a locked holding –steel screen area, segregated from other inmates, the same as if the Plaintiff had committed a violation of institutional rules and was placed on administrative segregation, when this was not the case.  As a consequence of this outrageous, egregious action, the Plaintiff suffered humiliation, lost of liberty, undue hardship and deprivation of privileges.

87.    As a consequence of the actions of DeVon Brown and Robert Clay as set forth in paragraph 73 hereof, the Plaintiff was commingled with inmates whom were charged with multiple murder, including inmate that committed murder in the Tavern Case, and other murderers whom confided in the Plaintiff that

18

they were found guilty of murder, conspiracy to murder, and were awaiting

transfer to the federal institutions operated by the Bureau of Prisons.

## SUBSTANTIVE ALLEGATIONS
## COUNT 1 – NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION
### (Defendants DeVon Brown, Robert Clay, and Gloria Nelson)

88.     The Plaintiff realleges and incorporate by reference all allegations set forth

above in this complaint.

89.     Defendants DeVon Brown, Robert Clay and Gloria Nelson, entrusted certain

duties including but not limited to ensuring the release of Plaintiff on his

Release Date, and of all detainees and inmates in the Department of

Corrections' Custody to certain Department of Corrections employees.

90.     Therefore, Defendants DeVon Brown, Robert Clay and Gloria Nelson had

respective duties to exercise reasonable care in training, supervising and

disciplining such employees in exercising their duties.

91.     The need for such training was obvious from the sensitive and technical nature

of the responsibilities entrusted to such Department of Correction employees.

92.     The problems at Department of Corrections facilities described above, and the

various reports prepared by John Shaw, John L. Clark and others, as well as

the injunctions and settlement agreements entered by the Honorable United

States **Judge Royce C. Lamberth**, on January 25 2006, in the case of

***Marcus Bynum v. District of Columbia, et al* 02-cv-956, [See 6-8, 18-20 of**

**Approved Settlement Agreement] [attached]** coupled with the reports and

admissions of the Defendant District of Columbia and the District of

Columbia Department of Corrections therein, should have made it obvious to

Defendants DeVon Brown and Robert Clay that the training such employees were receiving was inadequate, that the medical care and dental care, were inadequate, that the Records Office ability to correctly calculate Release Dates were inadequate, and that as a direct and proximate result Plaintiff, an inmate and other inmates under their supervision would suffer injury.

93. Defendants DeVon Brown, Robert Clay, and Gloria Nelson, respectively, negligently trained and supervised or negligently failed to train and supervise such employees in their duties, and as a result such employees were incompetent to perform their duties.

94. This negligent training and negligent failure to train and supervise by Defendants DeVon Brown and Robert Clay, respectively, resulted in the complete breakdown of the inmate management system of the Department of Corrections, a continuing violation of the rights of inmates and of the Plaintiff's rights, and as a result such employees were incompetent to perform their duties.

95. This negligent training and negligent failure to train and supervise by Defendant DeVon Brown, Robert Clay and Gloria Nelson, resulted in the complete breakdown of the inmate management system of the Department of Corrections and caused the overdetention of Planitiff and other inmates, a continuing violation, a continuing custom, usage and institutionally policy, overtly, covertly, and negligently perpetuated prior to and subsequent to the filing of the *Marcus Bynum, et al,* Case, the injunctions issued and settlement agreement ratified by United States District Court Judge, Royce Lamberth. *Id.*

20

96. Defendant Gloria Nelson, Director of Records, DC Department of Corrections, negligently performed her duties and functions of keeping accurate release records and accurately computing the Plaintiff's release date.

97. As a result of said negligence of Defendant DeVon Brown, Robert Clay and Gloria Nelson, Plaintiff suffered injuries described in the preceding paragraphs of this Complaint.

## NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION OF Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar

98. Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, negligently trained their medical subordinants and negligently enforced a systemic policy, custom and practice and procedure of not affording proper dental care to the Plaintiff's dental and medical needs because of a policy, custom, practice and procedure of deliberate indifference to the medical and dental needs of the Plaintiff.

99. Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, were aware of the facts that a substantial risk of harm exist to Plaintiff's teeth, dental health, and facial structure.

100. Defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions and enforcement of the official policy of the DC Department of Corrections Medical Department, its custom, practice that is persistent and widespread.

101.   The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar were grevious, sufficiently serious and constitute flagrant abuse of the constitutional rights of the Plaintiff.

102.   The Plaintiff suffered physical injuries as the result of the actions and inactions of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar and their subordinates.

103.   The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, violated clearly established Constitutional rights, statutory law and rights of which a reasonable person would know.

**COUNT 2**
**VIOLATION OF THE FOURTH, FIFTH AND EIGHTH AMENDMENTS, AND, THROUGH THE FIFTH, THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C.§ 1983**

**(Defendants DeVon Brown and Robert Clay)**

104.   Plaintiff reallege and incorporate by reference all allegations set forth above in this complaint.

105.   Defendant DeVon Brown, Robert Clay and Gloria Nelson, were at all times relevant, the supervisors of the Department of Corrections employees charged with ensuring the release of Plaintiff on Plaintiff's Release Date and the Release of all detainees and inmates in the custody of the Department of Corrections.

106.   Defendant DeVon Brown,  Robert Clay and Gloria Nelson, respectively, deliberately failed to train, monitor and discipline such employees.

107.   Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, had
       both actual and constructive knowledge that such employees were engaged in
       conduct that posed a pervasive and unreasonable risk of constitutional injury
       to the Plaintiff and other inmates.

108.   Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively,
       engaged in a pattern of continued inaction in the face of such employees'
       documented widespread abuse of the Fourth, Fifth and Eighth and, through
       the Fifth, Fourteenth Amendment rights of the Plaintiff.

109.   Defendant Devon Brown, Robert Clay and Gloria Nelson, respectively,
       actions, and failure to act, as described above, directly, proximately and
       affirmatively caused the violations of the Fourth, Fifth and Eighth and,
       through the Fifth, Fourteenth Amendment rights of the Plaintiff.

110.   The deprivation to the Fourth, Fifth and Eighth and, through the Fifth,
       Fourteenth Amendment rights of the Plaintiff, were committed by Defendant
       DeVon Brown, Robert Clay and Gloria Nelson, respectively, while DeVon
       Brown, Robert Clay and Gloria Nelson, respectively, were acting under color
       of District of Columbia law and were acting pursuant to the policy, custom
       and practice of Defendant District of Columbia.

111.   Defendant DeVon Brown's actions, and failure to act, as described above,
       directly and proximately caused injury described above to the Plaintiff.

112.   Defendant Robert Clay's actions, and failure to act, as described above,
       directly and proximately caused injury described above to the Plaintiff.

113.   Defendant Gloria Nelson's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

### ACTIONS OF DEFENDANT NORA TALLY, CAPTAIN

114.   On June 29, 2005, after the Plaintiff complained to defendant Tally that an inmate that had just been assigned to Plaintiff's cell had disclosed to the Plaintiff that he was HIV positive and that the Plaintiff then demanded that the new inmate be transferred to another cell or that the Plaintiff be transferred to another cell, defendant Tally, in retaliation against the Plaintiff for Plaintiff's protected disclosure, placed Plaintiff in solitary confinement, in a disciplinary division of the District of Columbia Jail, where the Plaintiff was locked down for 30 days for 23 hours per day, required to wear shackles from arms to feet, at visitations and at trips to the medical unit, and locked in a cage during visitations, and commingled with inmates that had high custody levels including an inmate that was incarcerated for committing murders in a Tavern that was published in the media as well as other inmates whom informed the Plaintiff that they were incarcerated in the area where the Plaintiff was confined from June 29, 2005 through August 30, 2005.

115.   Defendant Tally asserted to the Plaintiff that she was placing the Plaintiff in involuntary protected custody, and this label was a smokescreen to disguise the retaliatory, disciplinary actions that Tally took against the Plaintiff.

116.   The actions of defendant Tally were in violation of the Plaintiff's Constitutional Rights, statutory, rights, rights pursuant to 28 DCMR § 509.1 and other regulations of the DC Department of Corrections.

117. The actions of defendant Tally, was intentional, and with deliberate indifference to the Plaintiff's health, safety, and objectively serious to constitute constitutional violations.

118. The actions of defendant Tally deprived the Plaintiff of access to the Courts, the DC Jail's prison library, and prejudiced and harmed the Plaintiff's civil litigation, ***Banks v. Comey, et al.*** as well as other pending litigation of the Plaintiff's.

119. As a consequence of the actions of defendant Tally, the Plaintiff was unable to prosecute his civil actions, *Banks v. Comey, et al.*

120. As a direct and proximate cause of the actions of defendant Tally, the Plaintiff suffered injury to his person, his mental health, and suffered mental and emotional abuse, apprehension, and Plaintiff was continually on guard to protect his person and safety against the commingled inmates whom were charged with murder and other egregious conduct.

## COUNT III
## § 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS OF ITS EMPLOYEES

121. The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

122. District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and release.

25

123. Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

124. District of Columbia employees continue in such conduct up to and including the present.

125. At all times relevant such District of Columbia employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

126. Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

127. The actions of defendants Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

128. The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, DeVon Brown, respectively, while Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab,, respectively, were acting under color of District of Columbia

law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

129.    Defendant Edward D. Reiskin's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

130.    Defendant Dr. Gregory Pane's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

131.    Defendant Dr. Fozia Abdulwahar's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

132.    Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

133.    Defendant District of Columbia  is therefore further liable under 42 U.S.C. § 1983  for constitutional injuries to the Plaintiff caused by the deliberate indifference of defendant Tally.

134.    At all times relevant defendant Tally was acting pursuant to the policy, custom, practices and procedures of the District of Columbia Government.

**COUNT III**
**§ 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS OF ITS EMPLOYEES**

135.    The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

136.    District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of

27

constitutional injury of overdetention in administering records relating to inmates' detention and release.

137.    Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

138.    District of Columbia employees continue in such conduct up to and including the present.

139.    The District of Columbia is liable to the Plaintiff for the unconstitutional, willful, deliberate and wanton conduct of defendant Tally taken against the Plaintiff which violated the Plaintiff's rights pursuant to the due process clause, the Fourth and Eighth Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution.

## UNCONSTITUTIONAL DEPRIVATION OF DENTAL CARE

140.    At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinate employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

141.    At all times relevant the District of Columbia Government employees caused the intentional, unjustified harm to the Plaintiff's teeth, Plaintiff's dental health, and the disfigurement of the Plaintiff, because of the defendant's Reiskin, Pane and Abdulwahar's reckless and deliberate indifference to the medical and dental needs of the Plaintiff.

142. At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinates were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

143. Depriving Plaintiff of the dental care that the Plaintiff was entitled to after the defendants destroyed the Plaintiff's dental crown, violates Plaintiff's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates Plaintiff Fourth and Eighth Amendment Rights.

144. District of Columbia employees continue in such conduct up to and including the present.

145. As a direct and proximate cause of the defendants Reiskin, Pane and Abdulwahab's actions and inactions the Plaintiff was injured and suffered damages to his physical person, his teeth, his dental health, his facial features, his ability to eat and consume food and drink, and his appearance.

**COUNT 1V**
**§ 1983 MONELL CUSTOM AND PRACTICE DIRECT LIABILITY OF DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, EIGHTH AND, THROUGH THE FIFTH, FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFF**

146. The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint.

147. District of Columbia employees caused the intentional, unjustified overdetention of the Plaintiff in failing to provide an effective system to govern the timely release of prisoners in its detention facilities.

148. District of Columbia employees continue in such conduct up to and including the present time.

149. Defendant District of Columbia was at all times relevant the municipality in charge of the D.C. Jail, CTF and other Department of Corrections facilities.

150. Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their Release Dates.

151. There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.

152. The pattern of unconstitutional conduct the Plaintiff complain of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.

153. Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their Release Dates

were engaged in conduct that posed a pervasive and unreasonable risk of
constitutional injury to the Plaintiff at a Department of Corrections facility.
[The Honorable United States **Judge Royce C. Lamberth**, on January 25
2006, in the case of ***Marcus Bynum v. District of Columbia, et al* 02-cv-
956], [See 6-8, 18-20 of Approved Settlement Agreement attached]]**

154.    Defendant District of Columbia's policymakers engaged in a pattern of
continued inaction in the face of the deliberate indifference of employees
charged with monitoring and ensuring release of inmates in Department of
Correction facilities in accordance with their Release in violation of the
Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights
of such individuals.

155.    Defendant District of Columbia's actions, and failure to act, as described
above, directly and proximately and affirmatively were the moving force
behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through
the Fifth, Fourteenth Amendment Rights.

156.    Defendant District of Columbia's policy, custom and practice described above
were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth
and Eighth and, through the Fifth, Fourteenth Amendment Rights.

157.    Defendant District of Columbia's actions, and failure to act, as described
above, directly and proximately caused, and was the moving force behind, the
Plaintiff's injury as described above were pursuant to the District of Columbia
policy, practices and procedures and violated the Plaintiff's rights pursuant to

the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights

158. The actions of defendants Reiskin, Pane, Abdulwahab and Tally, as described above, were were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

159. Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above were pursuant to the District of Columbia policy, practices and procedures and violated the Plaintiff's rights pursuant to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment

160. Defendant District of Columbia's actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

## UNCONSTITUTIONAL DEPRIVATION OF DENTAL AND MEDICAL CARE

161. Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

162. Defendant District of Columbia's policy, custom, procedures and practice described above were the moving force behind the deprivations to the

32

Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

163.   Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above.

164.   Defendant District of Columbia's actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

## ACTIONS OF DEFENDANT CORRECTION CORPORATION OF AMERICA

165.   The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

166.   Defendant Corrections Corporation of America, defendant John Caufield, because of its negligent training of its law librarian and medical staff, from September 1, 2005 through April 28, 2006, and restrictions that precluded the Plaintiff from having reasonable access to the Central Treatment Facility Law Library, and its restrictions on copying materials from books, deprived the Plaintiff of access to the Court's, and harmed the Plaintiff's appeal filed with the Virginia Court of Appeals, and Plaintiff's Appeals filed with the United States District Court for the District of Columbia,  by its restrictions placed on Plaintiff's access to the Central Treatment Facility Law Library, causing the Plaintiff's litigation appeals to be dismissed.

167. The defendants John Caufield and the dentist assigned to the CTF medical unit deprived the Plaintiff of dental care needed to save the Plaintiff's teeth from destruction, and further caused the Plaintiff harm to Plaintiff's teeth, Plaintiff's gums, Plaintiff's jaw and Plaintiff's physical looks, and Plaintiff's ability to eat, consume and digest food, and resulting in the Plaintiff having to have root canals and removal of teeth.

168. The defendant's John Caufield and the facilities management of the Corrections Corporation of America, from September 1, 2005 through February 2006, the CTF facility, subjected the Plaintiff to long periods of exposure to cold temperatures in the unit where the Plaintiff was housed, causing the Plaintiff to suffer pain, colds, and harsh living conditions, that violated the Plaintiff's rights pursuant to the Eighth Amendment of the United States Constitution.

169. The actions and inactions of defendants Correction Corporation of America, defendant Caufield, his subordinates and assigns, were reckless and with deliberate indifference to the Plaintiff's Constitutional rights, Plaintiff health and safety and constitue grievous and flagrant abuse.

170. The actions and inactions of defendants Corporation of America and defendant Caufield, were pervasive, and pursuant to and in furtherance of the custom and practices of the District of Columbia Government Department of Corrections.

171.    The actions of defendants Corrections Corporation of America and defendant
        Caufield, violated clearly established constitutional, legal and rights of the
        Plaintiff under laws, rules, regulations that a reasonable person would know.

172.    The actions of defendants Corrections Corporation of America (CCA) and
        defendant Caufield, were negligent, and breached a duty of care that the
        Plaintiff was entitled to pursuant to the laws and contract and management
        agreement with the District of Columbia Government governing the conduct
        and actions of the defendants  CCA and defendant Caufield.

173.    The actions of the CCA and Caufield were willful, deliberate and with
        deliberate indifference and reckless disregard for the rights of the Plaintiff.

174.    As a direct and proximate consequence of defendant's CCA and Caufield
        breach of duty and negligent actions, the Plaintiff suffered injury and harm to
        his person.

175.    As a direct and proximate consequence of defendant's CCA and Caufield
        breach of duty and negligent actions, the Plaintiff suffered injury and harm to
        Constitutional rights pursuant to the Fifth, the Fourth, and the Fourteenth
        Amendment of the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff request that this Court grant the following relief:

1.    grant a jury trial on all claims;

2.    require the defendants to pay for all of the Plaintiff's dental care and problems

3.    Grant the Plaintiff actual damages in the amount of  $20 Million Dollars
      against the District of Columbia Government, and $1 Million dollars from

each of the District of Columbia Government employees whom are named
defendants in their personal capacity.

4.    Grant the Plaintiff compensatory damages in the amount of $10 Million
      Dollars against the District of Columbia Government.

5.    Grant the Plaintiff consequential damages of $5 Million Dollars against the
      District of Columbia Government.

6.    Grant the Plaintiff punitive damages in the amount of $10 Million Dollars
      against the District of Columbia Government.

7.    Grant the Plaintiff Cost and Attorneys fees, and any and all other relief this
      Honorable Court deem appropriate against the District of Columbia
      Government.

8.    Grant the Plaintiff $25 Million Dollars actual damages against the Correction
      Corporation of America.

9.    Grant the Plaintiff $25 Million Dollars compensatory damages against the
      Correctional Corporation of America.

10.   Grant the Plaintiff $20 Million Dollars consequential damages against the
      Correctional Corporation of America.

11.   Grant the Plaintiff attorney fees, cost of court and any and all other relief that
      the court deem appropriate.

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, Plaintiff's Amended Complaint was electronically mailed, and postage prepaid, this 28th day of July, 2006, in the a.m. to the following:

VIA FACSIMILE TO

**Denise.baker@dc.gov**
**djbakerbrown@msn.com**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,