# RECEIVED

AUG **1 8** 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **DR. SIMON BANKS, J.D.** ) | |
| **P.O. BOX 17052** ) | |
| **ALEXANDRIA, VA. 22302** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1514 (ESH)** |
| ) | **Ellen Segal Huvelle, Judge** |
| **DEVON BROWN,** ) | |
| **DIRECTOR** ) | |
| **DC DEPARTMENT OF** ) | |
| **CORRECTIONS** ) | |
| **1923 VERMONT AVENUE, NW** ) | |
| **WASHINGTON, DC 2003** ) | |
| ) | |
| **ANTHONY WILLIAMS, MAYOR** ) | |
| **DISTRICT OF COLUMBIA** ) | |
| **GOVERNMENT** ) | |
| **JOHN A. WILSON BUILDING** ) | |
| **1350 PENNSYLVANIA AVENUE, NW** ) | **3rd Amended Complaint** |
| **WASHINGTON, DC 20004** ) | |
| ) | |
| **ROBERT CLAY, WARDEN** ) | |
| **DISTRICT OF COLUMBIA** ) | **(BANKS V ELWOOD, YORK** |
| **JAIL** ) | **JR. )** |
| **1901 D STREET, SE** ) | |
| **WASHINGTON, DC 2003** ) | |
| ) | |
| **EDWARD D. REISKIN** ) | **August 18, 2006** |
| **DISTRICT OF COLUMBIA** ) | |
| **DEPUTY MAYOR FOR PUBLIC** ) | |
| **SAFETY** ) | |
| **1350 PENNSYLVANIA AVENUE, NW** ) | |
| **SUITE 327** ) | |
| **WASHINGTON, DC 2004** ) | |
| ) | |
| **NORA TALLY, CAPTAIN** ) | |
| **DISTRICT OF COLUMBIA** ) | |
| **DEPARTMENT OF CORRECTIONS** ) | |
| **DC JAIL** ) | |

1901 D STREET, S.E.                    )
WASHINGTON, DC 20003                   )
                                       )
GLORIA NELSON, DIRECTOR                )
OF RECORDS                             )
D.C. DEPARTMENT OF                     )
CORRECTIONS                            )
1923 VERMONT AVENUE, NW                )
WASHINGTON, DC 20003                   )
                                       )
DR. GREGORY PANE, DIRECTOR             )
DISTRICT OF COLUMBIA                   )
DEPARTMENT OF HEALTH                   )
825 NORTH CAPITOL STREET, N.E.         )
WASHINGTON, DC. 20002                  )
                                       )
DR. FOZIA ABDULWAHAB,                  )
MEDICAL DIRECTOR DC                    )
JAIL AND CENTRAL TREATMENT             )
FACILITY (CTF)                         )
1901 D STREET, S.E.                    )
WASHINGTON, DC 20003                   )
                                       )
CORRECTIONS CORPORATION OF             )
AMERICA                                )
102 Woodmont Boulevard, Suite 800      )
Nashville, TN 37205                    )
                                       )
JOHN CAUFIELD, WARDEN                  )
CENTRAL TREATMENT FACILITY             )
(CTF)                                  )
CORRECTIONS CORPORATION OF             )
AMERICA                                )
1901 E STREET, S.E.                    )
WASHINGTON, DC 20003                   )                    )


**Defendants**


**PLAINTIFF'S SECOND AMENDED COMPLAINT**


**PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)**

**PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)**
**That before filing his motion Plaintiff requested defendant's consent**
**To the relief requested in such motion and defendants did**
**Give their consent to the relief requested in the motion**

1.      The plaintiff brings this action against Mayor Anthony Williams, Government of
the District of Columbia Government, in his official capacity, and other District of
Columbia Government defendants whom are employees of the District of Columbia, and
the Corrections Corporation of America, in their official capacity, and in their individual
capacity under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to
enforce the Fourth, Fifth, and Eighth Amendments and through the Fifth Amendment, the
Standards of the Fourteenth Amendment, for injuries suffered by Plaintiff because
defendants held Plaintiff at a District of Columbia Corrections facility past his release
date.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 131 and 28
        U.S.C. § 1343(a)(3).  This Court has jurisdiction over the named plaintiffs' §
        1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  This
        Court has pendent jurisdiction over the Plaintiff's common law claims against
        the defendants pursuant to 28 U.S.C. 1367(a).

4.      Venue is appropriate in this District .  Each of the claims for relief arose in
        this judicial district.

3

5.    There is a clear question of liability on the question of whether the Plaintiff was overdetained, and the answer to that question can be determined by ministerial inspection of the Department of Corrections' records.

6.    Among the questions of law and fact are:

(a) whether defendant District of Columbia has a pattern and practice of holding detainees and inmates past their release dates;

(b) whether defendants District of Columbia has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates holding them past their release dates;

(c) whether defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

(d) whether defendants Devon Brown, Clay was deliberately indifferent to the rights of Plaintiff and inmates and detainees in the custody of the Department of Corrections by failing to supervise his subordinates;

(e) whether the defendants individually were deliberately indifferent to Plaintiff's health and safety, and objectively were sufficiently serious to constitute constitutional violations.

(f) whether the defendants individually subjected the Plaintiff to unconstitutionally harsh conditions,

(g) whether the conduct of the defendants individually and collectively violate clearly established constitutional rights, statutory law and rights of which a reasonable person would know;

4

(h) whether plaintiff has sustained damages and, if so, the proper measure of such damages.

## EXHAUSTION

The Plaintiff exhausted his administrative remedies by bringing the conditions that the Plaintiff suffered set forth in the complaint to the attention of the Warden, the Director of Corrections, the medical personnel and the Mayor's Risk Management Office.

## PARTIES

7. The Plaintiff Simon Banks is an adult resident of the State of Virginia

8. Defendant Anthony Williams is the Mayor of the District of Columbia Government and is being sued in his official capacity..

9. Defendant DeVon Brown is the Director of the District of Columbia Department of Corrections and is being sued in his official capacity and in his individual capacity.

10. Defendant Robert Clay, is the Warden of the District of Columbia Jail and is being sued in his official capacity and in his individual capacity.

11. Defendant Edward D. Reiskin is the Deputy Mayor of the District of Columbia for Public Safety and is being sued in his official capacity.

12. Defendant Nora Tally, Captain, is an employee of the DC Department of Corrections and is being sued in her official capacity and in her individual capacity.

13.     Defendant Gloria Nelson, Director of Records, D.C. Department of Corrections, is being sued in her official capacity and in her individual capacity.

14.     Defendant Dr. Gregory Pane, Director District of Columbia Department of Health, is being sued in his official capacity.

15.     Defendant Dr. Fozia Abdul Wahab, Medical Director DC Jail and Central Treatment Facility, is being sued in his official capacity.

16.     Defendant John Caufield, Warden Central Treatment Facility (CTF), is an employee of the Corrections Corporation of America, is being sued in his official capacity.


**FACTUAL ALLEGATIONS**
**DISTRICT OF COLUMBIA'S PATTERN AND PRACTICE OF OVERDETENTION**

Introduction and description of the problem

17.     The Department of Corrections has a long and documented history of overdetaining detainees and inmates past their release dates.

18.     "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date.

19.     "Release Date" for each detainee is the day which the person is entitled to be released by court order or the date on which the basis for his or her detention has expired.

20.     The Plaintiff was released on April 28, 2006 at 10:00 O'clock PM although the Plaintiff's sentence expired on March 20, 2006.

6

21.  The Defendants and their employees, agents and assigns, miscalculated
     Plaintiff's release date on several occasions during May 2005 and April, 2006
     as October 7 and October 2, 2006, respectively.

22.  The Plaintiff protested defendant's miscalculation of the Plaintiff's release
     date that the defendants, their agents, employees and assigns calculated,
     erroneously as October 7 and October 2, 2006.

23.  Notwithstanding the Plaintiff's numerous protest that the release calculation
     of the defendants was erroneous in that defendants failed to credit the six
     months that the Plaintiff was purportedly erroneously released to the
     Alexandria, Virginia, when and while the Plaintiff was serving a sentence
     imposed by the District of Columbia Court of Appeals, Judge Noel Kramer
     sitting by as an appellate Judge, in the District of Columbia, the defendants
     failed to correct the error, with reckless, egregious indifference to the rights of
     the Plaintiff, and subjected the Plaintiff to an additional 39 days and 20 hours
     beyond the expiration of the Plaintiff's sentence.

24.  On April 26, 2006, at 1:00 PM the Plaintiff was taken from E2A Section of
     the Central Treatment Facility and placed in a holding cell at the Central
     Treatment Facility until 10:00 0'Clock PM where there was no TV, bed, or
     recreation area.

25.  On April 26, 2006, at 10:00 PM the Plaintiff was taken to the DC Jail and held
     in a holding area on the first floor of the DC Jail until 12:30 A.M. April 27,
     2006 when the Plaintiff was transferred to an intake cell on the Third Tier of
     the DC Jail and not released for recreation until 2:30 PM thru 5:30 PM, then

7

the Plaintiff was returned to his cell where the Plaintiff remained until 5:30 PM on April 27, 2006 when the Plaintiff was allowed to leave his cell for four hours of recreation and then returned to his cell until April 28, 2006.

26.    On April 28, 2006, the Plaintiff was allowed to come out of his assigned cell at 2:30 PM and at on or about 6:00 O'clock PM the Plaintiff was informed that he could bag up, without telling Plaintiff whether the Plaintiff was being released or being reassigned to a Halfway House as the Plaintiff was previously informed on April 15, 2006, by Ms. Jennings, the Case Manager of E2A of the CTF Detention Center.

27.    D.C. Code § 24-201.06 requires that a prisoner shall be released by the Department of Corrections on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence.  The federal rule is the same.  8 USCA § 3624(a).

28.    "Exit Date" for each detainee or inmate means the date on which he or she was actually released from the custody of the Department of Corrections.

**The Department of Corrections And Its Facilities; Responsibility**

**For Administering Prisoners In the District of Columbia**

29.    As Director, Defendant DeVon Brown is the policy maker for the Department of Corrections.

30.    Defendant DeVon Brown has ultimate supervisory authority for all operations of the Department of Corrections.

8

31.    Defendant DeVon Brown is ultimately responsible for the functioning of the
Department of Corrections' Records Office, as defined below, and all other
Departments of Corrections Facilities.

32.    Defendant DeVon Brown is also responsible for ensuring that each employee
of the Department of Corrections discharges his or her duties in accordance
with the law.

**COMPONENTS OF THE DEPARTMENT OF CORRECTIONS**

33.    The District of Columbia Central Detention Facility ("D.C. Jail") is the
primary facility used by the Department of Corrections to house inmates.

34.    The D.C. Jail houses about 2,000 and some odd prisoners at any one time.

35.    Most of the prisoners at the D.C. Jail are either pre-trial  detainees,
misdemeanants serving sentences, or parole and probation violators.

36.    The Department of Corrections also houses prisoners in its Correctional
Treatment Facility ("CTF").

37.    CTF is a freestanding, privately-run facility about 500 feet from the D.C. Jail
building.

38.    Prisoners in CTF remain in the custody of the Department of Corrections.

39.    CTF houses about 700 individuals at any one time.

40.    Most prisoners detained in CTF are either pre-trial detainees, misdemeanants
serving sentences, or parole and probation violators.

41.    The Department of Corrections also houses prisoners at various halfway
houses located in the District of Columbia.

42.   On information and belief, approximately several hundred prisoners are
       housed at various Department of Corrections halfway houses at any one time.

43.   Inmates housed at Department of Corrections halfway houses remain in the
       custody of the Department of Corrections, although they are permitted access
       to the street in order to work, obtain drug or other substance abuse treatment,
       or for other purposes.

## THE INMATE MANAGEMENT SYSTEM

44.   The records office located at the D.C. Jail ("Records Office") is responsible
       for administering and maintaining the records, including the judgment and
       commitment files, of all persons housed at the D.C. Jail, CTF and the halfway
       houses.

45.   The Records Office is responsible for ensuring that all persons housed at the
       D.C. Jail, CTF and the halfway houses are released according to their court-
       ordered Release Dates.

46.   Currently, the Receiving and Discharge Office located at the DC Jail is the
       only place where people are booked into and out of the Department of
       Corrections' custody.

47.   Until about June 2001, people were also booked out of the Department of
       Corrections' custody directly from the District of Columbia Superior Court.

48.   The Plaintiff was released from the DC Jail although the Plaintiff was housed
       at the CTF Facility until April 26, 2006, when the Plaintiff was taken to the
       DC Jail for release processing.

49. Almost every inmate taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge is no longer pending is returned to the D.C. Jail for processing before release rather than being released from the courthouse.

50. The District of Columbia Superior Court for the District of Columbia and the United States District Court for the District of Columbia use different computer systems from the computer system used by the Records Office.

51. Release and commitment data entered into the court computer systems by courtroom clerks do not appear in the computer system used by the Records Office, the JAXX system ("JAXX") and (JACCS).

52. As a result, all release and commitment orders generated by judges in the Superior and District Courts on paper must be hand carried to the Records Office by marshals as prisoners are bused from the courthouse to the jail.

53. All processing of release and commitment orders must be done by hand at the Records Office located at the D.C. Jail.

54. Release and commitment data entered into the court computer system by courtroom clerks must be entered again by hand into JAXX, JACCS.

55. The name and DCDC number (jail identification number) of every inmate physically entering or leaving the D.C. Jail is also entered by hand into the "Count" computer, a MacIntosh/Apple computer used to maintain a census of all inmates in the D.C. Jail at any one time.

**THE CAUSE OF THE OVERDETENTION PROBLEM – COLLAPSE OF THE INMATE MANAGEMENT SYSTEM**

56.   The cause of the overdetention problem is a deliberate indifference by
      Defendant District of Columbia, DeVon Brown,

57.   to the rights of detainees and prisoners to be released on their Release Dates,
      inasmuch as the Department of Corrections has no effective inmate
      management system that can ensure release of prisoners by their Release
      Dates.

58.   The fact that the Department of Corrections has no effective inmate
      management system has been documented by a series of reports and
      recommendations dated back at least 20 years.

59.   On October 5, 1999, John L. Clark, Corrections Trustee for the District of
      Columbia, prepared a Report to the United States Attorney General entitled,
      "Review of the Handling of Leo Gonzales Wright and Similar Offenders
      Sentenced by the U.S. District Court for the District of Columbia" (the
      "Wright Report").

60.   The Wright Report documented a long pattern of systemic problems dealing
      with case management, classification and records office management at the
      Records Office. (Wright Report, Major Findings, F-14).

61.   Among the major findings of the Wright Report were lack of adequate written
      policy and procedures resulting in out-of-date policies that either were being
      ignored or were ineffective, which resulted in an inmate records office
      management system that was "overwhelmed and in distress and suffering
      from years of prolonged inattention from top management." (Wright Report,
      Major Findings, F-14 and F-20).

12

62.   The Wright Report also listed an extensive series of studies and

recommendations that were "not seriously implemented" including studies

dating back as far as 1976.  The studies mentioned and some of their principal

recommendations were as follows:

1976 RMC Research Corporation Analysis.  Major
Recommendations: reorganization of the Record Office and
increased staffing in the office.

1985 BOP Evaluation.  Major Recommendations:  creation of a
headquarters level position at the Department of Corrections' to
provide guidance and written policy to the Records Office; increased
Records Office staff; and restricted access to the Records Office and
files.

1986 DOC Security Workgroup Study.  Major Recommendations:
creation of a system of judgment and commitment files separate
from central inmate files; restricted access to the Records Office and
institutional files.

### PLAINTIFF'S OVERDETENTION BY THE D.C. JAIL

63.   Plaintiff,  Simon Banks' Release Date was March 20, 2006.

64.   Plaintiff, Simon Banks' was overdetained for more than 39  days and 20 hours

when the Plaintiff was released on April 28, 2006 at 10:00 p.m. See ¶s 20

through 38 hereof.

65.   The moving force behind Plaintiff's overdetention was the collapse of the

Department of Corrections' inmate management system.

66.   Defendants' overdetention of the Plaintiff was unconstitutional,outrageous,

egregious and with reckless indifference to the rights of the Plaintiff.

67.   Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a

result of the overdetention.

68.    The defendants had further prior notice of the erroneous release date that the defendants caused to be computed regarding the Plaintiff when the Plaintiff filed this instant suit on July 7, 2005 and when they were copied with Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive Relief. See ¶2-Z5 of Page 12 of Plaintiff's initial complaint and notwithstanding Plaintiff's civil complaint and Plaintiff's exercise of serving notice upon the Defendants Williams, Brown, Clay and Nelson, these Defendants did not correct their erroneous computation which resulted in the plaintiff being overdetained for in excess of 40 days beyond his March 20, 2006 release date.

69.    On or about May, 2005, the defendants' subordinate correction officers conducted a shakedown at the unit where the Plaintiff was housed in the District of Columbia Jail.

70.    In February and March 2004, the Plaintiff paid in excess of $8000 to have seven of his teeth sawed down for purposes of installing a permanent dental crown that would improve the protection of Plaintiff's teeth and that would improve the Plaintiff's teeth appearance.

71.    During the Shakedown, correction officers confiscated and destroyed Plaintiff's dental crown protecting some 7 teeth.

72.    The Plaintiff filed a grievance and a complaint with Warden Corbitt of the District of Columbia Jail regarding the confiscation and destruction of the Plaintiff's Dental Crown.

14

73. In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown by correctional officers of the DC Jail, the Plaintiff met personally with Warden Corbitt in Warden Corbitt's Office and Warden Corbitt stated he would look into it but that he doubted that there was anything that the DC Jail medical unit could do.

74. In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown and in connection with the pain, suffering and damage to the Plaintiff's teeth, the dental unit of the Department of Corrections treated the Plaintiff with antibiotics but the Plaintiff was further advised that that was all that the dental/medical unit could do other than pull seven of the Plaintiff's teeth that were chipping and causing the Plaintiff to suffer infection and great pain and suffering.

75. From May, 2005, through April, 2006, the Plaintiff suffered chipping and repeated gum and tooth infection due to the exposure of the Plaintiff's seven teeth without the protection of a dental crown.

76. From May, 2005 through April, 2006, the Plaintiff was repeatedly given pain medicine and antibiotics to alleviate the pain and suffering that the Plaintiff was suffering as the result of the progressive destruction of Plaintiff's teeth which were exposed as the result of being sawed down for purposes of installing permanent crown containing teeth.

77. As a consequence of the defendants' egregious, gross negligence, and reckless indifference to the rights of the Plaintiff, and because of defendants failure to provide the Plaintiff with replacement crown and medical malpractice, the

15

Plaintiff suffered the lost of four teeth which were removed by the Plaintiff's

dentist, Pamela Brady, after the Plaintiff was released from custody of the DC

Jail, in May, 2006. Three other teeth of the Plaintiff have been so destroyed

that they are unable to hold any dental crown and the Plaintiff was required to

have a bridge containing seven false teeth, which the Plaintiff has suffered

lost of teeth, lost and reduction of gum, disfigurement of Plaintiff's face, and

Plaintiff has undergone and will continue to undergo a period of adjustment,

therapy, for purposes of attempting to get adjusted to and use to eating,

speaking and swallowing food with the false teeth when and while Plaintiff

suffers lost of gums tissue while Plaintiff's gums recede and become smaller

78.    Plaintiff suffered anxiety, loss of teeth, pain, gum infection, and damages as

the result of the destruction of the Plaintiff's dental crown and the defendant's

failure to replace the Plaintiff's dental crown or afford the Plaintiff

opportunity to go to his dentist who was prepaid to secure for the Plaintiff a

temporary and/or permanent dental crown which done to improve the

plaintiff's looks, smile, and general appearance.

79.    The failure of Dr. Gregory Pane, Director District of Columbia Department of

Health, and Dr. Fozia Abdulwahab, Medical Director, DC Jail and Central

Treatment Facility (CTF) to provide for Plaintiff to have proper dental care,

medical care, and the policy, custom and systemic practices of the medical

department at the DC Jail and the Central Treatment Facility, which were

under the supervision, management and direction of defendant Pane, were

16

with deliberate indifference to the dental health, and general health and safety of the Plaintiff.

80.     At all times relevant the defendants were aware and knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions.

81.     The actions and inactions of Dr. Gregory Pane and Dr. Fozia Abdulwahab, unconstitutionally deprived the Plaintiff of the basic necessities of life.

### FAILURE AND/OR DELIBERATE ACTIONS OF DEFENDANTS DEVON BROWN AND ROBERT CLAY TO HOUSE THE PLAINTIFF AT THE CENTRAL TREATMENT FACILITY

82.     When the Plaintiff was initially incarcerated in connection with the four consecutive misdemeanor contempt citations and order, arising out of the Plaintiff's allege violation of prior restraint speech restrictions of Judge Noel Kramer, on April 8, 2004, in May, 2004, the Plaintiff, because of his low custody level, his age then 64, the Plaintiff was accessed by the Records Office of the DC Jail and its staff of correctional officers, as eligible to be housed at the Central Treatment Facility of the DC Jail. ("CTF")

83.     In connection with the assessment, the Plaintiff was reassigned and housed at the eligibility assessment, the Plaintiff was reassigned for housing at the CTF Facility where the Plaintiff was assigned to a housing unit at the E Building, where the Plaintiff's cell was never locked, and the Plaintiff was allowed to leave his cell at all times excepting administrative Count Times and Lockdowns.

17

84. When the Plaintiff returned to the DC Jail on December 18, 2004, after spending six months in the Alexandria Jail, the Plaintiff was housed at the DC Jail until August 30, 2005, although the Plaintiff had been assessed in December, 2004 and January 2005, and again in March, 2005, as eligible for assignment for housing at the CTF Facility.

85. Despite the eligibility assessment and approval for reassignment to the CTF Facility, the Plaintiff was denied housing at the CTF Facility, when and while inmate with higher custody levels were higher, and whom were under 64 years of age.

86. The actions of the defendants DeVon Brown and Robert Clay in failing to reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff being housed at sections of the DC Jail where the Plaintiff suffered regular lockdowns, extreme restrictions on liberty, recreation, commissary, visitation, telephone privileges and cost.

87. The actions of the defendants DeVon Brown and Robert Clay, in failing to reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff being housed at the "Hole" section of the DC Jail from May through August 30, 2005, where the Plaintiff suffered for 30 days with recreation and telephone privilege for one hour and where the Plaintiff was locked down for 23 hours per day, and for sixty (60) days where the Plaintiff was locked down for twenty hours per day, and where the Plaintiff received visitors chained from angle, waist and wrist handcuffs, and when the Plaintiff received visitors, the Plaintiff was placed in a locked holding –steel screen area,

18

segregated from other inmates, the same as if the Plaintiff had committed a violation of institutional rules and was placed on administrative segregation, when this was not the case. As a consequence of this outrageous, egregious action, the Plaintiff suffered humiliation, lost of liberty, undue hardship and deprivation of privileges.

88.    As a consequence of the actions of DeVon Brown and Robert Clay as set forth in paragraph 73 hereof, the Plaintiff was commingled with inmates whom were charged with multiple murder, including inmate that committed murder in the Tavern Case, and other murderers whom confided in the Plaintiff that they were found guilty of murder, conspiracy to murder, and were awaiting transfer to the federal institutions operated by the Bureau of Prisons.

**SUBSTANTIVE ALLEGATIONS**
**COUNT 1 – NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION**
**(Defendants DeVon Brown,  Robert Clay,  and Gloria Nelson)**

89.    The Plaintiff realleges and incorporate by reference all allegations set forth above in this complaint.

90.    Defendants DeVon Brown,  Robert Clay and Gloria Nelson, entrusted certain duties including but not limited to ensuring the release of Plaintiff on his Release Date, and of all detainees and inmates in the Department of Corrections' Custody to certain Department of Corrections employees.

91.    Therefore, Defendants DeVon Brown,  Robert Clay and Gloria Nelson had respective duties to exercise reasonable care in training, supervising and disciplining such employees in exercising their duties.

19

92.   The need for such training was obvious from the sensitive and technical nature of the responsibilities entrusted to such Department of Correction employees.

93.   The problems at Department of Corrections facilities described above, and the various reports prepared by John Shaw, John L. Clark and others, as well as the injunctions and settlement agreements entered by the Honorable United States **Judge Royce C. Lamberth**, on January 25 2006, in the case of *Marcus Bynum v. District of Columbia, et al* **02-cv-956, [See 6-8, 18-20 of Approved Settlement Agreement] [attached]** coupled with the reports and admissions of the Defendant District of Columbia and the District of Columbia Department of Corrections therein, should have made it obvious to Defendants DeVon Brown and Robert Clay that the training such employees were receiving was inadequate, that the medical care and dental care, were inadequate, that the Records Office ability to correctly calculate Release Dates were inadequate, and that as a direct and proximate result Plaintiff, an inmate and other inmates under their supervision would suffer injury.

94.   Defendants DeVon Brown, Robert Clay, and Gloria Nelson, respectively, negligently trained and supervised or negligently failed to train and supervise such employees in their duties, and as a result such employees were incompetent to perform their duties.

95.   This negligent training and negligent failure to train and supervise by Defendants DeVon Brown and Robert Clay, respectively, resulted in the complete breakdown of the inmate management system of the Department of Corrections, a continuing violation of the rights of inmates and of the

20

Plaintiff's rights, and as a result such employees were incompetent to perform their duties.

96.   This negligent training and negligent failure to train and supervise by Defendant DeVon Brown, Robert Clay and Gloria Nelson, resulted in the complete breakdown of the inmate management system of the Department of Corrections and caused the overdetention of Planitiff and other inmates, a continuing violation, a continuing custom, usage and institutionally policy, overtly, covertly, and negligently perpetuated prior to and subsequent to the filing of the *Marcus Bynum, et al,* Case, the injunctions issued and settlement agreement ratified by United States District Court Judge, Royce Lamberth. *Id.*

97.   Defendant Gloria Nelson, Director of Records, DC Department of Corrections, negligently performed her duties and functions of keeping accurate release records and accurately computing the Plaintiff's release date.

98.   As a result of said negligence of Defendant DeVon Brown, Robert Clay and Gloria Nelson, Plaintiff suffered injuries described in the preceding paragraphs of this Complaint.

### NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION OF Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar

99.   Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, negligently trained their medical subordinants and negligently enforced a systemic policy, custom and practice and procedure of not affording proper dental care to the Plaintiff's dental and medical needs because of a policy, custom, practice and procedure of deliberate indifference to the medical and dental needs of the Plaintiff.

21

100. Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, were aware of the facts that a substantial risk of harm exist to Plaintiff's teeth, dental health, and facial structure.

101. Defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions and enforcement of the official policy of the DC Department of Corrections Medical Department, its custom, practice that is persistent and widespread.

102. The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar were grevious, sufficiently serious and constitute flagrant abuse of the constitutional rights of the Plaintiff.

103. The Plaintiff suffered physical injuries as the result of the actions and inactions of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar and their subordinates.

104. The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, violated clearly established Constitutional rights, statutory law and rights of which a reasonable person would know.

## COUNT 2
## VIOLATION OF THE FOURTH, FIFTH AND EIGHTH AMENDMENTS, AND, THROUGH THE FIFTH, THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C.§ 1983

### (Defendants DeVon Brown and Robert Clay)

105. Plaintiff reallege and incorporate by reference all allegations set forth above in this complaint.

106. Defendant DeVon Brown, Robert Clay and Gloria Nelson, were at all times relevant, the supervisors of the Department of Corrections employees charged with ensuring the release of Plaintiff on Plaintiff's Release Date and the Release of all detainees and inmates in the custody of the Department of Corrections.

107. Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, deliberately failed to train, monitor and discipline such employees.

108. Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, had both actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff and other inmates.

109. Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, engaged in a pattern of continued inaction in the face of such employees' documented widespread abuse of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

110. Defendant Devon Brown, Robert Clay and Gloria Nelson, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

111. The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, while DeVon Brown, Robert Clay and Gloria Nelson, respectively, were acting under color

of District of Columbia law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

112.    Defendant DeVon Brown's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

113.    Defendant Robert Clay's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

114.    Defendant Gloria Nelson's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

### ACTIONS OF DEFENDANT NORA TALLY, CAPTAIN

115.    On June 29, 2005,  after the Plaintiff complained to defendant Tally that an inmate that had just been assigned to Plaintiff's cell had disclosed to the Plaintiff that he was HIV positive and that the Plaintiff then demanded that the new inmate be transferred to another cell or that the Plaintiff be transferred to another cell, defendant Tally, in retaliation against the Plaintiff for Plaintiff's protected disclosure, placed Plaintiff in  solitary confinement, in a disciplinary division of the District of Columbia Jail, where the Plaintiff was locked down for 30 days for 23 hours per day, required to wear shackles from arms to feet, at visitations and at trips to the medical unit, and locked in a cage during visitations, and commingled with inmates that had high custody levels including an inmate that was incarcerated for committing murders in a Tavern that was published in the media as well as other inmates whom informed the Plaintiff that they were incarcerated in the area where the Plaintiff was confined from June 29, 2005 through August 30, 2005.

24

116. Defendant Tally asserted to the Plaintiff that she was placing the Plaintiff in involuntary protected custody, and this label was a smokescreen to disguise the retaliatory, disciplinary actions that Tally took against the Plaintiff.

117. The actions of defendant Tally were in violation of the Plaintiff's Constitutional Rights, statutory, rights, rights pursuant to 28 DCMR § 509.1 and other regulations of the DC Department of Corrections.

118. The actions of defendant Tally, was intentional, and with deliberate indifference to the Plaintiff's health, safety, and objectively serious to constitute constitutional violations.

119. The actions of defendant Tally deprived the Plaintiff of access to the Courts, the DC Jail's prison library, and prejudiced and harmed the Plaintiff's civil litigation, ***Banks v. Comey, et al.*** as well as other pending litigation of the Plaintiff's.

120. As a consequence of the actions of defendant Tally, the Plaintiff was unable to prosecute his civil actions, *Banks v. Comey, et al.*

121. As a direct and proximate cause of the actions of defendant Tally, the Plaintiff suffered injury to his person, his mental health, and suffered mental and emotional abuse, apprehension, and Plaintiff was continually on guard to protect his person and safety against the commingled inmates whom were charged with murder and other egregious conduct.

**COUNT III**
**§ 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS OF ITS EMPLOYEES**

122.    The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

123.    District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and release.

124.    Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

125.    District of Columbia employees continue in such conduct up to and including the present.

126.    At all times relevant such District of Columbia employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

127.    Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

128.    The actions of defendants Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth,

26

Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

129. The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, DeVon Brown, respectively, while Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab,, respectively, were acting under color of District of Columbia law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

130. Defendant Edward D. Reiskin's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

131. Defendant Dr. Gregory Pane's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

132. Defendant Dr. Fozia Abdulwahar's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

133. Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

134. Defendant District of Columbia is therefore further liable under 42 U.S.C. § 1983 for constitutional injuries to the Plaintiff caused by the deliberate indifference of defendant Tally.

135. At all times relevant defendant Tally was acting pursuant to the policy, custom, practices and procedures of the District of Columbia Government.

27

## COUNT III
## § 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS OF ITS EMPLOYEES

136.    The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

137.    District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and release.

138.    Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

139.    District of Columbia employees continue in such conduct up to and including the present.

140.    The District of Columbia is liable to the Plaintiff for the unconstitutional, willful, deliberate and wanton conduct of defendant Tally taken against the Plaintiff which violated the Plaintiff's rights pursuant to the due process clause, the Fourth and Eighth Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution.

### UNCONSTITUTIONAL DEPRIVATION OF DENTAL CARE

141.    At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinate employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests

28

of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

142.   At all times relevant the District of Columbia Government employees caused the intentional, unjustified harm to the Plaintiff's teeth, Plaintiff's dental health, and the disfigurement of the Plaintiff, because of the defendant's Reiskin, Pane and Abdulwahar's reckless and deliberate indifference to the medical and dental needs of the Plaintiff.

143.   At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinates were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

144.   Depriving Plaintiff of the dental care that the Plaintiff was entitled to after the defendants destroyed the Plaintiff's dental crown, violates Plaintiff's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates Plaintiff Fourth and Eighth Amendment Rights.

145.   District of Columbia employees continue in such conduct up to and including the present.

146.   As a direct and proximate cause of the defendants Reiskin, Pane and Abdulwahab's actions and inactions the Plaintiff was injured and suffered damages to his physical person, his teeth, his dental health, his facial features, his ability to eat and consume food and drink, and his appearance.

29

## COUNT 1V
## § 1983 MONELL CUSTOM AND PRACTICE DIRECT LIABILITY OF DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, EIGHTH AND, THROUGH THE FIFTH, FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFF

147.    The Plaintiff realllege and incorporate by reference all allegations set forth above in this Complaint.

148.    District of Columbia employees caused the intentional, unjustified overdetention of the Plaintiff in failing to provide an effective system to govern the timely release of prisoners in its detention facilities.

149.    District of Columbia employees continue in such conduct up to and including the present time.

150.    Defendant District of Columbia was at all times relevant the municipality in charge of the D.C. Jail, CTF and other Department of Corrections facilities.

151.    Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in Department of Corrections  facilities in accordance with their Release Dates.

152.    There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.

153.    The pattern of unconstitutional conduct the Plaintiff complain of was so pervasive that Defendant District of Columbia and its policy makers had

actual and constructive notice of the need for training, supervision and discipline.

154.   Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their Release Dates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff at a Department of Corrections facility. [The Honorable United States **Judge Royce C. Lamberth**, on January 25 2006, in the case of *Marcus Bynum v. District of Columbia, et al* **02-cv-956**], **[See 6-8, 18-20 of Approved Settlement Agreement attached]]**

155.   Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged with monitoring and ensuring release of the Plaintiff and other inmates in Department of Correction facilities in accordance with their Release in violation of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of such individuals.

156.   Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

157.   Defendant District of Columbia's policy, custom and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

158.   Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above were pursuant to the District of Columbia policy, practices and procedures and violated the Plaintiff's rights pursuant to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights

159.   The actions of defendants Reiskin, Pane, Abdulwahab and Tally, as described above, were were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

160.   Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above were pursuant to the District of Columbia policy, practices and procedures and violated the Plaintiff's rights pursuant to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment

161.   Defendant District of Columbia's actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

## UNCONSTITUTIONAL DEPRIVATION OF DENTAL AND MEDICAL CARE

162.   Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force

32

behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

163.    Defendant District of Columbia's policy, custom, procedures and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

164.    Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above.

165.    Defendant District of Columbia's actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

**COUNT V**
**§ 1983 LIABILITY OF**
**DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, AND**
**FOURTEENTH AMENDMENT**
**RIGHTS OF PLAINTIFF WHEN PLAINTIFF WAS TRANSFERRED**
**TO ALEXANDRIA, VIRGINIA IN VIOLATION OF THE EXTRADITION**
**LAWS OF THE UNITED STATES AND THE DISTRICT OF**
**COLUMBIA**

166.    The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint.

167.    The District of Columbia government by and through the actions of Defendants DeVon Brown, its/his agents, employees and assigns violated the Plaintiff's constitutional rights and statutory rights under the laws of the

33

United States and the District of Columbia, when they directly and indirectly
caused the transfer of the Plaintiff to Alexandria, Virginia on June 23, 2004,
when and while the Plaintiff was serving a sentence imposed by the District of
Columbia Court of Appeals (Judge Noel Kramer).

168.    At the time Defendants District of Columbia, DeVon Brown, its/his agents
and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, they
knew and had reason to know through clearly established law that a reason
person would know, that the Plaintiff's rights were clearly established.

169.    At the time Defendants  District of Columbia, DeVon Brown, its/his agents
and assigns caused the Plaintiff to be transferred to Alexandria, Virginia,
Plaintiff had not waived his constitutional right to an extradition hearing and
to protest the legal validity and authenticity of the detainer order of
Alexandria, Virginia.

170.    At the time Defendants  District of Columbia, DeVon Brown, its/his agents
and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, they
knew and had reason to know that Plaintiff sought and was expecting an
extradition hearing for purposes of exercising his constitutional right to protest
the legal validity and authenticity of the detainer order of Alexandria,
Virginia.

171.    Prior to the time Defendants District of Columbia, DeVon Brown, its/his
agents and assigns caused the Plaintiff to be transferred to Alexandria,
Virginia, Plaintiff articulated his protest, in open court, against the legal

34

validity, propriety and authenticity of the detainer order of Alexandria, Virginia.

172.    At the time Defendants District of Columbia, DeVon Brown, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, it acted with wanton/reckless disregard and with reckless indifference to the rights of the Plaintiff.

173.    Because of the deficient training that the District of Columbia Government, DeVon Brown afforded its employees agents and assigns, the Plaintiff was transferred to Alexandria, Virginia on June 23, 2004, in violation of his Constitutional and statutory right to a hearing to challenge and protest his transfer to Alexandria, Virginia in connection with the detainer that the City of Alexandria, Virginia (Commonwealth of Virginia) had lodged against the Plaintiff.

174.    As a consequence of the actions and inactions of Defendant District of Columbia and DeVon Brown, its/his agents and assigns, the Plaintiff suffered injury to his Constitutional Rights, his Substantive Due Process Rights and his Procedural Due Process Rights.

**COUNT VI**

**VIOLATION OF RIGHTS PROTECTED BY THE EIGHTH AMENDMENT**

175.    The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

176.    From on or about December 21, 2004 to the present, the defendants individually and collectively have subjected the plaintiff to the following:

35

## A. OVERCROWDING

An overcrowded jail that exceeds the population cap to the rated design capacity, that resulted in the plaintiff and other inmates suffering a twenty-three hour lockdown seven days a week, poor-third world sanitary and health conditions, deprivation of recreation and medical services, and imminent threat to personal safety.

## MEDICAL CARE AT THE DC JAIL SUFFERS FROM SYSTEMIC DEFICIENCIES

The jail where the plaintiff was confined suffers from systemic deprivation of medical care, poor and extremely deficient medical care and services, lack of dental care, failure to respond to request for dental and other medical care needs.

## C. THE DC JAIL SUFFERS FROM INADEQUATE MEDICAL HEALTH PROFESSIONALS

The DC Jail where plaintiff was confined suffers from systemic personal indifference with respect to its policy of providing medical care to inmates, inadequate staffing of medical health professionals including doctors, nurses, nursing assistants, which has resulted in continued failure to respond to plaintiff and other inmates numerous requests for medical needs and which have resulted in prolong delays from one week to ninety days to secure an appointment with a doctor, dentist, nurse, optometrist where the plaintiff has waited for in excess of ninety days for an appointment with the jail's podiatrist and optometrist and dentist to no avail.

## D. DEFECTIVE AND UNSANITARY THIRD-WORLD SHOWERS

The defendants have directly and indirectly caused the plaintiff to be confined in the DC Jail Block, S.W. 1 where the showers are infested with bacteria, standing water, infested with various diseases and/or disease causing germs, bacteria. The showers are

36

made of aluminum and exhibit a third-world structure, a throwback to the 18th Century,

where water collects because of insufficient drainage.

### E. INADEQUATE DIETARY AND NUTRITIONAL HEALTH CARE PROFESSIONALS

The DC Jail where the plaintiff was confined suffers from inadequate dietary staff,

nutritional health professionals, and as a consequence the plaintiff and other inmates

whom require diabetic foods, have been denied nutritional diets and foods to

accommodate our dietary needs, in particular the needs of diabetics.

### F. DEFICIENT LAW LIBRARY RESOURCES AND STAFF

The DC Jail where the plaintiff was confined has an inadequate jail law library

which suffers from a lack of staff, which is unable to accommodate a population that

exceeds from 2,300 to 2,400 inmates and contains antiquated law books, Federal

Reporters Third Series, Atlantic Reporters Second Series, a deficiency in Fed.

Supplements, Advance Sheets and current volumes of the District of Columbia Codes, a

deficiency in the current criminal code, a deficiency in the United State Reports, Supreme

Court Reports, all which expire at 2001; a total lack of Slip. Opinions, Shepherds which

expire at 2001; a lack of c.d.s which contain current laws, a lack of Black's Law

Dictionary which is a third edition, some five editions behind current law all which

prejudices and deprive the plaintiff and other inmates with access to the courts.  These

deficiencies caused the Plaintiff to suffer inability to prosecute his case, *Banks v. Comey,*

before the United States District Court for the District of Columbia and the United States

Court of Appeals for the District of Columbia Circuit and the Plaintiff's appeal in the

Court of Appeal of the State of Virginia, in that these deficiencies substantially

contributed to the Plaintiff's timely filing of his appeals.

37

## G. INSUFFICIENT SECURITY AND LACK OF CORRECTIONAL OFFICERS

The DC Jail where the plaintiff was confined lacked appropriate security, correctional officers and other staff to prevent a jail riot, or injury to staff as well as to the respective overcrowded inmate population, and thus posed an imminent threat of personal injury, personal safety, assault and/or death to the Plaintiff as well as to the other respective inmates, in particular and as well as to staff and to inmates whom are fragile, and inmates whom are elderly and inmates who are rated at a low or minimum custody threat levels.

### H. DANGEROUS COMMINGLING OF INMATES

The DC Jail where the plaintiff was confined, commingled, recklessly, negligently, and unwarrantly, dangerous felons, felons with murder charges, with misdemeanors defendant awaiting trial for stealing a coca -cola, and with other low-custody rated inmates. This systemic policy shows a reckless indifference for the safety, health and welfare of the Plaintiff and other inmates.

### I. DEFECTIVE GRIEVANCE PROCESS

The jail where plaintiff was confined did not process Plaintiff and other inmates grievances, and did not provide Plaintiff and other inmates with receipts of his/their grievances that they and that Plaintiff filed and submitted. The jail systemically failed to credit, record or respond to grievances. These actions are systemically designed to preempt and frustrate Plaintiff and other institutional inmates' ability to exhaust administrative remedies, a jurisdictional pre-requisite to filing suit under the PLRA.

### J. SYSTEMIC SMOKE SCREENS TO FRAUDULENTLY DISGUISE AND SUPPRESS DISMAL HEALTH-SAFETY CRISIS AND DEPRECATORY CONDITIONS

38

The DC Jail where the plaintiff was confined engaged in systemic cosmetic

smokescreens orchestrated to distort Plaintiff's and other inmate despair, disguised

intrinsic defects, unsanitary conditions, rats, roaches, insects, and the potential for

out-of-control spontaneous combustions; a jail that would make the Iraq's Abu

Ghraib Prison look like a country club, or the Ritz Carlton.

### K. LACK OF READING MATERIALS

The DC Jail where plaintiff was confined lacked magazines, reading materials and

books to reduce boredom, despair, hopelessness, suicidal acts and inmate altercations,

as well as dangers to society for retribution. (The Plaintiff suffered boredome,

despair, and was a witness to inmate altercations that were causally connected to

these deficiencies.

### L. LACK OF RECREATIONAL BUDGET/ RECREATIONAL EQUIPMENT

The DC Jail where the plaintiff was confined did not provide a standard gym,

table tennis, volleyball courts, weight lifting apparatus, walking room, et cetera, and there

is not established recreational budget for the DC Jail. This deficiency caused the Plaintiff

to suffer mental and emotional distress and unwarranted anxiety.

### M. DEFECTIVE ROACH INFECTED MATTRESSES

The DC Jail where the plaintiff was confined contained hundreds of torn, unsanitary

and defective mattresses and blankets which have not been cleaned for months and are

systemically left on beds and are repeatedly recycled to other inmates whom are

processed in the jail's intake section as well as disseminated to other inmates. Some

mattresses contain roaches and other insects.

### N.  ONE DESK, ONE CHAIR FOR TWO INMATES IN ONE-MAN CELLS

The DC Jail where the plaintiff was confined possessed one man cells where two inmates are confined, there is one desk with one attached steel seat for each two-man cells causing squabbles over the desks and chair space and usage for inmates whom are locked down for an average of twenty-three hours per day, seven days a week.  This is a deprivation of basic human needs, and most of the time during Plaintiff's confinement, the Plaintiff did not have access to a desk and/or a seat to a desk.

### O.  DEFICIENT COMMISSARY

The DC Jail where the plaintiff was confined has a contract with a company to provide commissary items to inmates which has failed to fill inmate order for some six months, such as lotions, skin oils, hair oils, peanut butter and where such items as coffee, tea are not included.  As well as other items which are not filled by the contractor.  This has resulted in a breach of contract that has adversely affected the Plaintiff and other inmate population who has contracted with the DC Jail to receive orders that they fill out, resulting in unwarranted induced detrimental reliance and despair, anxiety which contributed to the adverse conditions setforth above and below.

### P.  LACK OF AND NO PROVISIONS FOR NAIL CLIPPERS

The jail where the plaintiff was confined systemically deprived the plaintiff and other inmates for some six months and longer of fingernail clippers, toenail clippers, and/or any manner by which the plaintiff could get his nails cut off, resulting in the plaintiff suffering for months with extraordinary fingernails and toenails which caused pain, suffering and anxiety.

40

## Q. DEPRIVATION OF BASIC HUMAN NEEDS

The DC Jail where the plaintiff was confined, through its policy, practices and procedures deprived the plaintiff and other inmates of basic medical and human needs including skin lotions, sufficient blankets for cold cells, microwave ovens for heating cold foods and other foods improperly cooked foods that were prepared by inmates, for heating coffee, tea and soups.

## R. REGULAR SEWAGE BACKUP

The DC Jail where the plaintiff was confined has regular sewage backups and subjects the plaintiff and other inmates to lockdown confinement in areas where sewage stench is nauseating, sickening and triggers pulmonary anxiety, mental and emotional stress and nausea. Moreover, the sewage system and frequent backup poses an exponential health risk, if not an epidemic of colossal proportion. As a consequence the Plaintiff suffered despair, anxiety, hopelessness as a consequence of the stench.

## S. LACK OF DENTAL CARE

The DC Jail where the plaintiff was housed had two dentist who provided dental services limited to pulling teeth whether or not sound medical diagnosis and prognosis suggest tooth retention an alternative medical treatment and regimen. There were two dentists for in excess of 2,300 inmates. In order for inmates to receive dental services offered based upon expediency and opposed to sound medical judgment, inmates are required to sign a waiver rendering the jail and its medical staff harmless, or forego dental treatment, i.e. pulling of one's tooth (teeth). Moreover, upon rejecting the tooth pulling alternative, the Plaintiff and other inmates were required to sign a form rejecting

41

dental treatment. There was no provision on the form that offers the rejectee inmate, including the Plaintiff an opportunity to state what specifically is being rejected. As a consequence the Plaintiff's dental condition was not treated and the Plaintiff ultimately lost seven teeth.

## T. UNAUTHORIZED OPENING OF MAIL OUTSIDE OF THE INMATE PRESENCE INCLUDING LEGAL MAIL

The correctional officers and/or staff of the DC Jail opened plaintiff's legal and personal mail on numerous occasions during the months of January through April 2005, outside of the plaintiff's presence, a violation of plaintiff's right to Due Process, Equal Protection and Privacy. As a consequence the Plaintiff suffered deprivation to his constitutional right and reasonable expectancy to privacy with respect to legal matters.

## U. HAZARDOUS BUNK BEDS WITHOUT LADDERS

The DC Jail where plaintiff has been confined had bunk beds without ladders and required the Plaintiff and other inmates to negotiate getting up and down these steel bunk beds, to Plaintiff's peril and to their peril where many have suffered falls and injuries, in particular the elderly, the impaired, the disabled. These bunk beds pose an imminent threat of injury and harm each time the Plaintiff and other inmates was required to negotiate getting up, on and down from these structural hazards. This continuous and perpetual condition caused the Plaintiff to suffer anxiety, fear of falling and suffering an injury and apprehension each time the Plaintiff, a 66-67 years of age inmate, was required to negotiate his way to the upper bunk bed without a ladder.

## V. DC DEPARTMENT OF HEALTH FAILURE TO INSPECT JAIL FOR HEALTH AND SAFETY

42

Because the District of Columbia Department of Health and its Director, had failed to conduct regular audits and evaluation of the unsanitary and unsafe conditions that systemically plague the DC Jail's facility, between April 8, 2004 through June 23, 2004, and December 19, 2005 and July, 2005, the Plaintiff was subjected to a condition of confinement where an egregious health and safety crisis existed, and was unabated, systemically and strategistically ignored for prolonged periods of time. This reckless indifference for the rights of the Plaintiff and the DOC inmate population caused the Plaintiff to be subjected to conditions of confinement that provided a human health-safety crisis.

## W. LACK OF REHABILITATIVE COURSES

The DC Jail where the plaintiff was confined lacks: rehabilitative courses, adequate staffing, adequate ventilation, adequate heating and air filtering and poses environmental risk because of lack of clean air and lack fresh air.

## X. DEFECTIVE HEATING AND VENTILATION

Because of the DC Jail lack of heating and lack of ventilation, ventilating air ducts and air vents, air filters, the plaintiff and other inmates suffered from temperature ranging from thirty and forty degrees during the months of December through March 2005.

43

Y. Because of the reckless disregard for the constitutional rights of the plaintiff and

deliberate indifference of the defendants to the needs of the plaintiff and other

inmates setforth in paragraphs 5A through X "here of " the plaintiff has suffered

deprivations of his constitutional rights, equal protection of the laws, deprivation

of due process.

## Z. DESTRUCTION OF PLAINTIFF'S DENTAL CROWN AND REFUSAL TO REPLACE

When the correctional officers during the jail shakedown took plaintiff's

temporary crown containing protection for seven of plaintiff's teeth that were sawed

down and when the DC Jail's Dentist and the defendant failed to provide and protect

plaintiff's exposed teeth which repeated became infected and at the present posed a

serious risk of loss and irreparable harm and after plaintiff's serious medical/dental

needs were diagnosed by the jail's two physicians, the defendants acted with reckless

disregard and deliberate indifference to plaintiff's medical/dental health needs by

refusal to accommodate plaintiffs health crisis.

## Z1. RETALIATION AND REPRISAL FOR WHISTLEBLOWING ACTIVIES AND FOR PETITIONING THE COURT AND CONGRESS FOR REDRESS

In retaliation for plaintiff's whistleblowing activies and for petitioning the Courts, the

Congress and the DC Jail for redress, the defendants' York and Corbett has subjected the

plaintiff to systemic retaliation and reprisal from December 2004 to the present, by

retaliating against the plaintiff when they subjected Plaintiff to be placed in cell blocks

where the plaintiff was locked down twenty-three hours per day despite the plaintiff's

age, low custody level, and despite plaintiff had not violated any rules or regulations of

the Department of Correction. The Plaintiff was previously housed at the Central

44

Treatment Facility (CTF) contract facility, where the plaintiff was not locked down at all prior to being illegally transferred to Virginia on June 23, 2004, including failure to provide plaintiff with dental access.

### Z2. UPON CANCELLATION OF PLAITIFF'S ASSIGNMENT TO THE LAW LIBRARY

The defendant York and Corbett abruptly cancelled the plaintiff's assignment to the law library as a Volunteer Assistant and removed other library assistants as a smokescreen to disguise denying plaintiff access to the DC Jail's Library.  The defendant Corbett directly and indirectly facilitated the abrupt closure of the law library on Tuesday, May 3, 2005 to prevent plaintiff access to the law library after Corbett received pleadings requesting leave to exceed the page limit where defendant Corbett is a defendant as Warden in the stead of defendant Smith in the Case of Banks v. Smith, et al.

### Z3. DEFENDANT CORBETT DIRECTEDLY AND INDIRECTLY FACILITATED THE CANCELLATION OF PLAINTIFF'S DIETARY MEALS ON MAY 2, 2005 CAUSING PLAINTIFF TO BE TAKEN OFF THE DIABETIC DIET LIST, DEPRIVING PLAINTIFF OF MILK, FRUIT, LOW SUGAR FOODS, LOW STARCH FOODS AND THREATENS PLAINTIFF'S GENERAL HEALTH AND SAFETY

### Z4. THE DEFENDANT YORK AND CORBETT PLACED AN INMATE IN A CELL WHERE THE PLAINTIFF WAS CONFINED WHO HAS SORES FROM HIS HEAD TO HIS FEET

Z5.  The defendants York and Corbett placed an inmate in a cell where the plaintiff was confined whom had sores from his head to his feet.  Many of the sores were open.  The inmate, Mr. Davis, date of birth 5-5-58 suffers from fungus infection, and a disease resulting from heroin and other drugs addition, and posed an imminent health risk to the Plaintiff, causing the Plaintiff to suffer fear, apprehension, anxiety, despair, depression and hopelessness.

177. The actions of Defendant District of Columbia and DeVon Brown, its/his agents, employees and assigns, were intentional, reckless, with reckless indifference to the rights of the Plaintiff.

178. The actions of Defendant District of Columbia and DeVon Brown, its/his agents, employees and assigns, were intentional, and pursuant to the custom, policy, and systemic practices, policies and procedures of the District of Columbia Government, the District of Columbia Department of Corrections.

## ACTIONS OF DEFENDANT CORRECTION CORPORATION OF AMERICA

179. The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

180. Defendant Corrections Corporation of America, defendant John Caufield, because of its negligent training of its law librarian and medical staff, from September 1, 2005 through April 28, 2006, and because of its municipal policy restrictions and corporate policy restrictions that precluded the Plaintiff from having reasonable access to the Central Treatment Facility Law Library, and its restrictions on copying materials from books, deprived the Plaintiff of access to the Court's, and harmed the Plaintiff's appeal filed with the Virginia Court of Appeals, and Plaintiff's Appeals filed with the United States District Court for the District of Columbia, by its restrictions placed on Plaintiff's access to the Central Treatment Facility Law Library, causing the Plaintiff's litigation appeals to be dismissed.

181. The defendants John Caufield and the dentist assigned to the CTF medical unit deprived the Plaintiff of dental care needed to save the Plaintiff's teeth

from destruction, and further caused the Plaintiff harm to Plaintiff's teeth, Plaintiff's gums, Plaintiff's jaw and Plaintiff's physical looks, and Plaintiff's ability to eat, consume and digest food, and resulting in the Plaintiff having to have root canals and removal of teeth.

182. The defendant's John Caufield and the facilities management of the Corrections Corporation of America, from September 1, 2005 through February 2006, the CTF facility, subjected the Plaintiff to long periods of exposure to cold temperatures in the unit where the Plaintiff was housed, causing the Plaintiff to suffer pain, colds, and harsh living conditions, that violated the Plaintiff's rights pursuant to the Eighth Amendment of the United States Constitution.

183. The actions and inactions of defendants Correction Corporation of America, defendant Caufield, his subordinates and assigns, were reckless and with deliberate indifference to the Plaintiff's Constitutional rights, Plaintiff health and safety and constitute grievous and flagrant abuse.

184. The actions and inactions of defendants Corporation of America and defendant Caufield, were pervasive, and pursuant to and in furtherance of the custom and practices of the District of Columbia Government Department of Corrections.

185. The actions of defendants Corrections Corporation of America and defendant Caufield, violated clearly established constitutional, legal and rights of the Plaintiff under laws, rules, regulations that a reasonable person would know.

47

186.   The actions of defendants Corrections Corporation of America (CCA) and defendant Caufield, were negligent, and breached a duty of care that the Plaintiff was entitled to pursuant to the laws and contract and management agreement with the District of Columbia Government governing the conduct and actions of the defendants CCA and defendant Caufield.

187.   The actions of the CCA and Caufield were willful, deliberate and with reckless and deliberate indifference and reckless disregard for the rights of the Plaintiff.

188.   As a direct and proximate consequence of defendant's CCA and Caufield breach of duty and negligent actions, the Plaintiff suffered injury and harm to his person.

189.   As a direct and proximate consequence of defendant's CCA and Caufield breach of duty and negligent actions, the Plaintiff suffered injury and harm to Constitutional rights pursuant to the Fifth, the Fourth, and the Fourteenth Amendment of the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff request that this Court grant the following relief:

1.   grant a jury trial on all claims;

2.   require the defendants to pay for all of the Plaintiff's dental care and problems

3.   Grant the Plaintiff actual damages in the amount of $20 Million Dollars against the District of Columbia Government, and $1 Million dollars from

48

each of the District of Columbia Government employees whom are named defendants in their personal capacity.

4.   Grant the Plaintiff compensatory damages in the amount of $10 Million Dollars against the District of Columbia Government.

5.   Grant the Plaintiff consequential damages of $15 Million Dollars against the District of Columbia Government.

6.   Grant the Plaintiff  punitive damages in the amount of $10 Million Dollars against the District of Columbia Government.

Grant the Plaintiff Cost and Attorneys fees, and any and all other relief this Honorable Court deem appropriate against the District of Columbia

7.   Grant the Plaintiff $25 Million Dollars actual damages against the Correction Corporation of America.

8.   Grant the Plaintiff $25 Million Dollars compensatory damages against the Correctional Corporation of America.

9.   Grant the Plaintiff $25 Million Dollars consequential damages against the Correctional Corporation of America.

10.  Grant the Plaintiff attorney fees, cost of court and any and all other relief that the court deem appropriate.

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

49

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, Plaintiff's Amended Complaint was electronically mailed, and postage prepaid, this 18th day of August, 2006. to the following:

VIA FACSIMILE TO
**Denise.baker@dc.gov**
**djbakerbrown@msn.com**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887


Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,