**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                               )
DR. SIMON BANKS,                               )
                                               )
            Plaintiff,                         )
                                               )        Civil Action No. 05-1514 (ESH)
      v.                                       )
S. ELWOOD YORK, JR., et al.,                   )
                                               )
            Defendants.                        )
_____)

**DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendants, Anthony Williams (Williams), Mayor of the District of Columbia, Gregory Pane, M.D. (Pane), Director, D.C. Department of Health (DOH), and Nora Tally, Captain, D.C. Department of Corrections (Tally) (collectively "Defendants"), by and through undersigned counsel, respectfully move this Court to dismiss the plaintiff's third amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). As grounds for this motion, defendants assert that:

1. Plaintiff fails to state a claim for which relief may be granted;

2. Defendants sued in their individual capacity are entitled to qualified immunity;

3. Plaintiff is barred from contesting his extradition to the custody of Virginia correctional authorities;

4. Plaintiff failed to exhaust his administrative remedies;

5. All non-constitutional claims should be dismissed for lack of subject matter jurisdiction.

In support of this motion, the Defendants respectfully refer the Court to the attached memorandum of points and authorities. A proposed Order is also attached for the Court's consideration.

Defendants requested the consent of Plaintiff for the filing of this Motion to Dismiss the Third Amended Complaint, to which Plaintiff replied by email on September 27, 2006 stating that he did not consent.

**WHEREFORE**, Defendants pray that this Honorable Court deny the claims asserted by Plaintiff and dismiss this action against these defendants with prejudice.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

RICHARD S. LOVE [340455]
Chief, Equity I

____/s/_____
DENISE J. BAKER [493414]
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC  20001
202-442-9887

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Dismiss Plaintiff's Third Amended Complaint was filed electronically with the Court for ECF service, and mailed, US postage prepaid, this 10th day of October 2006 to:

Dr. Simon Banks
P.O. Box 17052
Alexandria, VA  22302

_____/s/_____
Denise J. Baker

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

DR. SIMON BANKS,                               )
                                               )
              Plaintiff,                        )
                                               )        Civil Action No. 05-1514 (ESH)
        vi.                                     )
S. ELWOOD YORK, JR., et al.,                    )
                                               )
              Defendants.                       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S THIRD AMENDED COMPLAINT**

### I. INTRODUCTION

Plaintiff, Simon Banks (Banks), asserts a plethora of alleged wrongs committed by the defendants arising from his almost two (2) year confinement in the District of Columbia's Jail.[1] It is clear from a review of the plaintiff's complaint that he intends to hold these defendants liable based upon his mistaken belief that these defendants:

1.  Negligently trained or supervised the government staff (Count I);

2.  Effected policies, procedures, and customs that negatively impacted Plaintiff's sentence calculations, dental care, and jail cell assignment practices (Counts II and III, and IV)[2];

3.  Permitted his extradition to Virginia (Count V); and,

4.  Provided unsuitable prison services and facilities (Count VI).

_____

[1] Banks was extradited to Alexandria Virginia during a portion of his D.C. sentence.
[2] The 3rd Amended Complaint contains two (2) Count III claims, one on page 25 and one on page 28. Both Count III claims allege §1983 respondeat superior liability. For the purposes of this Motion to Dismiss, defendants shall treat the second Count III as included in the first Count III.

While the claims asserted contain all the buzzwords related to constitutional wrongs, such as "deliberate indifference", negligent training and supervision, "policy and practice," and §1983, when boiled down to its essence this lawsuit is no more than negligence claims for damages, which do not rise to the level of constitutional violations.

The Defendants move for dismissal of the plaintiff's claims on the following grounds:

1.  The Complaint fails to state a claim for which relief may be granted;

2.  Individual D.C. Defendants are entitled to qualified immunity;

3.  Plaintiff is barred from contesting his extradition to the custody of Virginia correctional authorities;

4.  Plaintiff failed to exhaust his administrative remedies; and,

5.  All non-constitutional claims lack subject matter jurisdiction.

## II.  FACTUAL BACKGROUND

Banks alleges three factual bases to support his claim for relief.  The first arises from a miscalculation of his jail sentence.  The second arises from a jail "shakedown"[3] in which his property (dental crown) was damaged or destroyed. The third basis is a sweeping complaint concerning the alleged conditions of confinement he experienced while incarcerated at the D.C. Jail (Jail), which he has since been released from.

### A.  *Miscalculation of Jail Sentence*

Banks broadly blames the collapse of the Department of Corrections inmate management system for his overdetention.  (Third Amended Complaint ¶ 63).  He cites several studies in support of the problems at the D.C. Records Office.  These studies are not relevant, however, to the plaintiff's very discreet and individualized bases for miscalculation of his jail term.

---

[3] "Shakedown" is defined as a thorough search of a place or person.  American Heritage Dictionary, www.answers.com, October 4, 2006.

4

A review of jail and court records indicates that Banks' untimely release is more strongly related to his court file having several case reference numbers, and factors unique to calculating his sentence, as opposed to any systemic inadequacy. Factually, Banks was convicted to serve four (4) six-month sentences consecutively.

His custodial records reflect that the confusion started on or about April 4, 2004, when Banks was committed in appeals court case 02-BG-1374. On June 4, 2004, the court amended the Judgment and Commitment Order (J&C) to reflect a reference number of SP008-04. On June 24, 2004, the Court prepared another J &C with the number M6425-04 after crossing out the SP1008-04 number. On June 7, 2004 the court issued a release order in the original case number 02-BG-1374; however there were no release orders tied to M6425-04, and Banks was held in that case—even though it was the same case under a different number. It was not the D.C. Records Office or any D.C. executive agency that issued the duplicative case numbers.

Added to the above confusion is the fact that Banks was the subject of extradition to Alexandria, Virginia during the course of his D.C. sentences. Inter-jurisdictional confusion arose as to the appropriateness of granting Banks credit for time served in Virginia. At any rate, the problems in calculating plaintiff's sentence were the result of his unique circumstances, and not caused by any policy or practice of the District of Columbia

### B.  Property Damage and Medical Claim

Banks attempts to weave a medical claim into a property damage claim arising from a "shakedown" at the jail in May 2005. His dental crown was confiscated and, according to Banks, destroyed during the shakedown. Banks wanted his property—his dentures—returned or repaired. Alternatively, he wanted to see his private pre-paid dentist, who had begun the work of installing caps on his teeth prior to his incarceration. Leaving the D.C. Jail for regular private

dental appointments, absent a life threatening situation, posed serious security and other concerns, and was not allowed.

Banks does not allege that he received no medical care for the resulting loss of his dental crown. He alleges that the care was improper in that it consisted of painkillers and ultimately pulled teeth by a dentist at the D.C. Jail.

### C.  *Choice of Housing during Incarceration*

Specific to Defendant Tally, Banks alleges that she caused him damage by not permitting him to be housed in a specific wing or portion of the jail. She also permitted him to be housed with another inmate that had a skin condition.

As a result of Banks' complaints, she moved him to another portion of the jail where, again, Banks found fault with the accommodations. After the transfer, Banks complained that the conditions were harsh, cold, and that he was housed with hardened criminals.

### D.  *Generalized Complaints*

Banks could not do any of the things that he wanted to do or liked to do while he was in jail. His ability to have the foods that he wanted or the books that he required was circumscribed. He submits a laundry list of things that he wanted and could not have.

### III.    STANDARD OF REVIEW FOR GRANT OF A MOTION TO DISMISS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). The moving party is entitled to judgment if there are no allegations in the complaint that could provide a basis for recovery. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (1987).

Although the non-moving party enjoys the benefit of all inferences that can be reasonably drawn from the allegations alleged in the complaint, bare conclusions of law—or sweeping and unwarranted averments of fact—will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Id.*  The court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications* Corp., 60, 16 F.3d 1271, 276 (D.D.C. 1994).  While this Court must construe plaintiff's factual allegations liberally, it need not blindly accept naked and conclusory allegations.  *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989) (Court has authority to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless).

## IV.  LEGAL ARGUMENT

### A.  *The Complaint Fails to State a Claim for Which Relief May Be Granted*

The Plaintiff's complaint should be dismissed with prejudice for three reasons.  First, Plaintiff cannot establish an underlying constitutional violation, let alone actions on the part of these named defendants which violated plaintiff's constitutional rights.  Second, assuming a predicate constitutional violation, and assuming that plaintiff's claims against the Mayor are brought in his official capacity (i.e., a suit against the District), Plaintiff cannot establish that a custom or policy of the District caused the violation of Plaintiff's constitutional rights.  *Monell v. Dep't of Social Serv. of the City of New York,* 436 U.S. 658, 691 (1978).  Since the constitutional claims fail, the pendent common law claims should likewise fail.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

### B. *Plaintiff Fails to Allege any Constitutional Violations by Mayor Williams and Dr. Pane*

Even if plaintiff's claims against defendants, Mayor Williams and Dr. Pane, rose to the level of a constitutional violation, which they do not, plaintiff fails to allege any specific unconstitutional or improper act/conduct was committed by these defendants. *Respondeat superior* is not available under §1983 and on this basis alone, plaintiff has failed to meet the requirements of *Monell* for a claim against Williams or Pane. Mayor Anthony Williams is named as a defendant simply because he is the Mayor of the District of Columbia and Dr. Pane is named as a defendant solely because he is the Director of the District of Columbia's Department of Health (DOH). Plaintiff makes no specific factual allegations against Mayor Williams or Dr. Pane and therefore, the complaint against them must be dismissed as a matter of law.

### C. *The Complaint Fails to Allege a Constitutional Claim for Inadequate Medical Care.*

The dental prosthesis (crown) owned by the plaintiff was damaged when correctional officers inspected cells at the D.C. Jail. (Third Amended Complaint ¶ 73). The pleadings do not state that any correctional officer(s) intentionally damaged the plaintiff's property in the form of his dental prosthesis.

Plaintiff fails to state an Eighth Amendment claim for the alleged failure to provide him with adequate medical care since he does not allege acts or omissions sufficiently harmful to evidence deliberate indifference to his serious medical needs. *Estelle v. Gamble, 4*29 U.S. 97, 106 (1976). Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain as proscribed by the Eighth Amendment. *Id.* at 104. Moreover, to establish an unconstitutional deprivation of medical care, a prisoner must demonstrate that the acts or omissions complained of were sufficiently harmful to amount to "deliberate indifference" to "serious medical needs." *Id.* at 106 (1976). *See also Inmates of*

*Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (test under *Estelle* is two-pronged, requiring that prisoner's medical needs be serious and that defendants display deliberate indifference to those needs).

The Court in *Estelle* instructs that a complaint which alleges that a correctional system has been negligent in treating a medical condition does not state a claim of medical mistreatment under the Eighth Amendment. *Id*. at 106. Rather, it is only "deliberate indifference to serious medical needs" that can offend the Eighth Amendment. *Id*.[4]

Nowhere in this plaintiff's complaint does he allege any refusal to administer medical aid. What he alleges is that the Defendants did not replace his property, his dental prosthesis, after it was damaged in the shakedown. Then he ties the missing dental crown to his resultant gum disease. There is no inference that can be drawn from the facts at bar that the corrections officers, who may have taken or damaged the dental prosthesis, intended to cause plaintiff dental injury as a result of a routine jail inspection.

---

[4] The Supreme Court refers with approval to specific Circuit Courts of Appeal's decisions as illustrative of deliberate indifference:

*Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to deliberate indifference . . .rather than an exercise of professional judgment");

*Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *cert. denied sub nom. Thomas v. Cannon,* 419 U.S. 879 (1974) (injection of penicillin with knowledge that prisoner was allergic, and **refusal** of doctor to treat allergic reaction);

*Jones v. Lockhart*, 484 F.2d 1192 (8th Cir. 1973) (**Refusal** of doctor to treat allergic reaction);

*Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), *cert. denied,* 401 U.S. 983 (1971) (prison physician **refused** to administer the prescribed pain killer and rendered leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon).
*Estelle, supra,* 429 U.S. at 104 n. 10, (emphasis added).

To prove an Eighth Amendment violation related to prison medical treatment, plaintiff must show that officials were deliberately indifferent to a serious illness or injury.  *See*, *Risdal v. Martin*, 810 F. Supp. 1049, 1054, n. 8 (S.D. Iowa, 1993).  Deliberate indifference has been described as possession of "actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent harm could be inferred from [a] failure to prevent it," *Young v. Quinlan*, 960 F.2d 351, 360, n. 22, *quoting Henderson v. DeRobertis,* 940 F.2d 1055, 1060 (7th Cir. 1991).

In *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Supreme Court defined the meaning of deliberate indifference, and held that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."  In the instant case, plaintiff's own allegations in the complaint belie any contention that he has not been given medical care consistent with the requirements of the Eighth Amendment.  He admits that he was "repeatedly given pain medicine and antibiotics to alleviate the pain." (Third Amended Complaint ¶ 76).  Plaintiff acknowledges that "the dental unit of the Department of Corrections treated the Plaintiff with antibiotics" and that the Dental Unit could pull the teeth.  (*Id*. at 74).  Plaintiff admits that the dental unit removed four teeth.  (*Id*. at 77).  Therefore, neither these Defendants (nor the District) were deliberately indifferent to any serious medical needs.

In applying the test set forth in *Estelle, supra*, the Courts have considered such factors as the severity of the medical problems, the potential for harm and whether any such harm actually resulted from any Eighth Amendment allegations. *See Burns v. Head Jailor of LaSalle County Jail*, 576 F. Supp. 618, (N.D. Ill. 1984), *Thomas v. Pate*, 493 F.2d 151 (7th Cir. 1984).  Except in totally conclusory terms, Plaintiff has not even alleged any serious deprivation that would be

tantamount to cruel and unusual punishment.  *See, e.g.*, *Benson v. Cady,* 761 F.2d 335, 341 (7th Cir. 1985) (defendant's failure to ensure that plaintiff received prescribed medication, and prescription of incorrect medication, causing adverse side effects, was possibly negligent, but not an Eighth Amendment violation, absent allegations of deliberate indifference or knowledge of the harm); *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (despite injury to plaintiff, mere delay in providing therapeutic equipment did not state Eighth Amendment claim); *Wood v. Housewright*, 900 F2d 1332, 1334-35, (9th cir. 1990) (possible negligence, but no Eighth Amendment violation, where prison failure to provide plaintiff's medical records resulted in adverse side effects and a three month delay in treatment).

At most, plaintiff's complaint raises questions of negligence, not constitutional violations. The Eighth Amendment is not implicated by treatment that constitutes ordinary malpractice or negligence.  See *Benson v. Cady, supra.*

It is conceded that the Constitution does require that prisoners be provided with a certain minimum level of medical treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). However, it does not guarantee to a prisoner the treatment of his choice.  *Id.*  Prisoners simply cannot insist that their institutional host provide them with the most sophisticated care that money can buy.  *United States v. DeCologero*, 821 F.2d 39 (1st Cir. 1987).  Here, Plaintiff would have preferred to see his own dentist, outside the prison walls, for continued treatment. However, after his dental treatment began, he was arrested and incarcerated. Plaintiff is not assured the same level of personal dental care in jail that he would have received as a free man. He is assured of, and did receive, care that was not deliberately indifferent to any serious medical need.

### D.  Plaintiff Cannot Establish that the Defendants had a Custom or Practice of Overdetention Relevant to the Miscalculation of His Jail Term

A review of jail and court records indicate that Banks' untimely release is more strongly related to his court file having several case reference numbers, and factors unique to calculating his sentence, as opposed to any systemic inadequacy.  Factually, Banks was convicted to serve four (4) six-month sentences consecutively.

Nevertheless, Banks broadly blames the collapse of the Department of Corrections inmate management system for his overdetention.    (Third Amended Complaint ¶ 63).  He cites several studies in support of the problems at the D.C. Records Office.  These studies are not relevant, however, to the plaintiff's very discreet and individualized bases for miscalculation of his jail term.

His custodial records reflect that the confusion started on or about April 4, 2004, when Banks was committed in appeals court case 02-BG-1374.  On June 4, 2004, the court amended the Judgment and Commitment Order (J&C) to reflect a reference number of SP008-04.  On June 24, 2004, the Court prepared another J &C with the number M6425-04 after crossing out the SP1008-04 number.  On June 7, 2004 the court issued a release order in the original case number 02-BG-1374; however there were no release orders tied to M6425-04, and Banks was held in that case—even though it was the same case under a different number.  It was not the D.C. Records Office or any D.C. executive agency that issued the duplicative case numbers.

On June 18, 2004, Banks was released to the Metropolitan Police Department (M.P.D.) Fugitive Unit pursuant to a detainer issued by the State of Virginia.  On or about June 23, 2004, Virginia officials extradited Banks to Virginia.

While Banks was in Virginia's custody on or about September 1, 2004, the D.C. Superior Court issued an amended J&C order in case M6425-04 for Counts A through D to run

consecutively, *nunc pro tunc*, to June 3, 2004, for the same sentence and date as case #02-BG-1374. Banks was returned to D.C. custody from Virginia on or about December 17, 2004 to serve out his D.C. sentence.

A new sentence computation was prepared upon Banks' return from the State of Virginia, which awarded Banks with 75 days of prior jail credit from the date he was initially committed on April 5, 2004 until the date that he was turned over to M.P.D. for extradition on June 18, 2004. This new sentence computation did not credit toward his D.C. sentence the time that plaintiff spent in Virginia, and re-started service of his D.C. sentence on the date that Banks was returned from Virginia on December 17, 2004. Thus, the projected release date was calculated to be October 2, 2006.

Not until April 28, 2006, was the confusion regarding the case numbers, as well as the time-served credit for custody in Virginia made clear. A new sentence calculation was prepared taking into account these two discrepancies and Banks was released.

Looking at the facts related above as a backdrop, it becomes evident that the defendants have neither violated Banks' due process rights nor incurred municipal liability by evidencing deliberate indifference through its policies or customs. The test for due process violations is separate and distinct from the test for municipal liability. The due process inquiry requires an objective assessment of whether the District's conduct is sufficiently egregious, not merely unreasonableness or negligence. *Hardeman v. Clark,* 593 F. Supp. 1285 (D.C. Cir. 1984) *citing Owens v Haas,* 601 F.2d 1242, 1246 (2nd Cir. 1979) (Mere negligence on the part of a municipality does not establish 42 U.S.C. § 1983 liability); *Hayes v. Faulkner County,* 388 F.3d. 669, 674 (8th Cir. 2004).

On the other hand, the question of deliberate indifference, the evidentiary standard required for municipal liability, is different from mere unreasonableness.  To establish municipal liability resulting in constitutional injuries, Plaintiff must show a causal link between his/her individual detention and one of the District's policies or customs. *Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. Cir. 1986).  See, City of Canton v. Harris, 489 U.S. 378, 388-91 (1989); See also, Monell, supra at, 690-91.*

The "but for" to Banks' extended stay was not any systematic inadequacy that resulted from a municipal policy or practice, but the result of the unique circumstances of plaintiff's sentences and his extradition to the State of Virginia.   It was not deliberate indifference or egregious conduct by the District that caused Banks' delayed jail release.  There was no grand scheme or design to overdetain Banks.  There was no systematic or systemic failure of the Records Office as alleged by the plaintiff's complaint.  This incident, unfortunate though it may be, is no more than, at most, the negligent failure to properly calculate this inmate's sentence as a result of the unique factors attendant to his various case numbers, and his extradition to Virginia between June and December 2004.

### E.  *Plaintiff Cannot Establish the Predicates to Eighth Amendment Violations Based upon the Conditions of his Confinement*

Plaintiff finds fault with every aspect of his incarceration, and he seeks to hold defendants liable for each such alleged fault.[5]  To establish an Eighth Amendment violation

---

[5] The complete list of complaints alleged by the Plaintiff are as follows:

(1)  he was overdetained (3rd Amended Complaint ¶¶ 20, 24-26, 63-64)

(2)  Correctional officers confiscated and destroyed his dental crown during a jailhouse shakedown (*Ibid*. ¶¶69-71)

(3)  The jail is overcrowded and lacks recreations and medical services.   (*Ibid*., page 36[5])

(4)  He has had to wait more than 90 days for an appointment with the jail's podiatrist, optometrist or dentist caused by "inadequate medical health professionals" at the jail. (*Ibid.* page 36, 41).

regarding conditions of confinement, two requirements must be met.  First, the deprivation must be, objectively, "sufficiently serious" and secondly, a prison official must have been deliberately indifferent to inmate health or safety.  *Farmer v. Brennan, supra.*   Second, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*  Banks' allegations do not meet either prong of this standard.  Banks does not alleged that any District officials had the purpose of causing him harm or know that harm would result, or even that any official failed to act, despite his or her knowledge of a substantial risk of harm to Banks.  *Id. at 842.*

The U.S. Supreme Court cautioned lower federal and state courts against enlarging the "commodious contours" of section 1983 of the Fourteenth Amendment so as to displace state law.  *Daniels v. Williams, 474 U.S. 547 (1981); Paul v. Davis, 424 U.S. 693, 701 (1976).*  The

---

(5)   The showers are defective and unsanitary.  (*Ibid.*, pages 36-37.)

(6)   His meals were not nutritious. (*Ibid.* page 37).

(7)   The law library collection was antiquated and inadequate.  (*Ibid.* page 37).

(8)   More correctional officers are needed on staff (*Ibid.*, page 38)

(9)   Misdemeanants and felons are co-mingled in the jail holding facilities *(Ibid.* page 38).

(10)  His grievance was not timely processed and recorded (*Ibid.* page 38)

(11)  Reading materials and recreational facilities in the jail were insufficient (*Ibid.* page 39)

(12)  There was insufficient recreational equipment.  (*Ibid.* page 39)

(13)  The mattresses were defective and unsanitary. (*Ibid.* page 39).

(14)  Only one desk and one chair were provided for two inmates per one-man cell (Ibid., page 40)

(15)  The jails commissary lack essential lotions, skin oils and peanut butter (*Ibid.*, page 40)

(16)  There is a need for greater finger- and toenail clipping.  (*Ibid.* page 40)

(17)  He was deprived of "basic human needs" including skin lotions, blankets, and microwave ovens to warm food.
      (*Ibid.* page 41).

(18)  There was sewage backup in the facility (*Ibid.* page 41).

(19)  His mail was opened.  (*Ibid.* page 42).

(20)  His bunk beds had no ladder to the upper bunk (*Ibid.* page 42).

(21)  The facility was not audited by the D.C. Department of Health (DOH) (*Ibid.* page 42-43).

(22)  There was a lack of fresh air and rehabilitative courses. (*Ibid.* page 43)

(23)  The heating system was inadequate. (*Ibid.* page 43).

mere fact that the conduct was allegedly performed by a state actor or allegedly occurred within a state facility does not support its characterization as a constitutional wrong. Rather, it is grievous or flagrant governmental abuse that demands a constitutional response. *Davis v. Butcher, 853 F.2d 718, 721 (9th Cir. 1988).* Isolated and limited tortious conduct in the prison does not violate inmate constitutional rights. *Id. at 720 n. 3.*

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments.'" *Wilson v. Seiter, 501 U.S. 294 (1991);* but, jail conditions may be restrictive and even harsh without violating the Constitution. Only "those deprivations denying the minimal civilized measure of life's necessities … are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson, 501 U.S. at 825.* "Cruel and unusual punishment" is that which involves the unnecessary and wanton infliction of pain, those which are grossly disproportional to the severity of the crime for which an inmate is imprisoned, or are totally without penological justification. *Rhodes v. Chapman, 452 U.S. 337 at 346.* A discerning review of plaintiff's grumblings show a nitpicking of minor, isolated problems that lack the obduracy or wantonness required to make out an Eighth Amendment violation.

For plaintiff to sustain an Eighth Amendment cause of action, the deprivation alleged must objectively result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. at 347). The D.C. Circuit Court of Appeals has held that "the 'deprivations' that trigger Eighth Amendment scrutiny are deprivations of essential human needs." *Women Prisoners of the District of Columbia Department of Corrections v. District of Columbia*, 93 F.3d 910, 928 (D.C. Cir. 1996) (*quoting Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988)). The D.C. Circuit noted that the Constitution "does not mandate comfortable prisons," *Women Prisoners*, 93 F.3d

16

at 928 (*quoting Wilson,* 501 U.S. at 298), adding that, "To the extent that conditions … 'are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Women Prisoners*, 93 F.3d at 928 (*quoting Rhodes*, 452 U.S. at 347).

The extent of plaintiff's injuries are "pain, colds, and harsh living conditions" (Third Amended Complaint ¶ 182); "despair, anxiety, [and] hopelessness" (*Id.* at page 41); "[E]xtraordinary fingernails and toenails which caused pain, suffering and anxiety." (*Id.* at page 40); and dental impairment *(Id.* at ¶ 73). These conditions do not rise to the level required to trigger Eighth Amendment violations.[6]

---

[6]    Plaintiff's allegation that he suffered from exposure to extremely cold temperatures without warm clothing is not objectively serious enough to state a constitutional violation. In general, an inmate cannot support a claim that he was exposed to unconstitutionally extreme temperatures unless the exposure was prolonged enough to endanger the health and safety of the inmate. *See Ware v. Fairman*, 884 F. Supp. 1201, 1207 (N.D. Ill. 1995); *Campbell-El v. District of Columbia*, 881 F. Supp. 42, 44 (D.D.C. 1995); *Gawloski v. Dallman*, 803 F. Supp. 103, 111 (S.D. Ohio 1992).

In *Ware*, the plaintiff alleged that he was forced to live in overcrowded, cold, and unsanitary living conditions while he was a pre-trial detainee at a Northern Illinois jail. *Ware* at 1204. A broken window allegedly made the cell blocks extremely cold, and for this first week, the plaintiff had to sleep on the floor of his cell without a blanket. *Id.* at 1207. The court held that the plaintiff had not stated a claim for relief under the Eighth Amendment, because he "has not pled allegations which create a possible inference that he was routinely placed in cells with unreasonable temperatures." *Id.* The court explained that:

> The conditions complained of by plaintiff, although perhaps uncomfortable, are at most temporary and therefore not serious enough to be considered cruel and unusual punishment. These conditions are not considered punishment because they do not result in a serious deprivation of basic human needs of the minimal civilized measure of life's necessities. Moreover, the conditions plaintiff complains of do not pose a "substantial risk of serious harm." *Id.* (*quoting Farmer*, 511 U.S. at 834).

Other courts have reached the same conclusion using similar criteria. In *Gawloski*, the plaintiff "failed to produce affirmative evidence in support of his claims that his cell lacked heat or ventilation *for months at a time.*" *Gawloski*, 803 F. Supp. at 111 (emphasis added). Although the plaintiff could prove that "on several occasions plaintiff alerted prison officials that he lacked heat in his cell," the court held that he had "failed to produce affirmative evidence indicating that

### F. *Plaintiff Has No Right to be Classified at a Particular Jail Custody Level or Remain in Particular Jail Housing*

The complaint alleges two instances in which Plaintiff was not afforded the housing that he desired. Since he did not receive the desired housing, he seeks damages from the defendants. First, Plaintiff wanted to be housed at the Correctional Treatment Facility (CTF) (Third Amended Complaint ¶ 82-85) because there, his "cell was never locked" and he was allowed to leave his cell (*Id*. at ¶ 83). Secondly, the complaint alleges that after Plaintiff complained about being in close proximity with an HIV infected cellmate, Plaintiff was moved to inappropriate jail housing (*Id*. at ¶¶ 115-116).

Plaintiff's bare allegations that he has a right to be classified at a particular custody level or housed in a particular portion of the jail facility, standing alone, fails to state a claim for relief. Courts have consistently held that inmates, such as plaintiff herein, have no right to remain or be incarcerated in any particular facility or location. See, e.g., *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ali v. United States*, 743 F. Supp. 50-52 (D.D.C. 1990) (The government has unfettered discretion to determine where offenders who have violated the District of Columbia Code serve their prison sentences).

Factually, Plaintiff raised a hue and cry about his allegedly HIV positive cellmate. Tally could reasonably infer that Plaintiff believed that he was "in danger from a clear and present threat" and she reasonably used her discretion to modify Plaintiff's housing arrangements.

---

defendants exposed him to *extended periods* of cold or heat in a manner violative of the Eighth Amendment." *Id*.(emphasis added); *see also Cambell-El*, 881 F. Supp. at 44 (no Eighth Amendment violation where plaintiff allegedly received inappropriate clothing for one-hour outdoor recreation periods).

### G.   The Defendant, Captain Nora Tally, is Entitled to Qualified Immunity

At most, Plaintiff contends that Captain Nora Tally modified his housing arrangements. (Third Amended Complaint ¶¶ 115-116).   Plaintiff argues without any supporting evidence that the reason for this housing placement was to retaliate against him for revealing his cellmate's HIV status.  (*Id*. at 116).   Similar to defendants, Mayor Williams and Dr. Pane, any other allegations as to Captain Tally should be dismissed since plaintiff fails to directly complain of any action she took (or failed to take), and *respondeat superior* liability is not available to support a §1983 claim.  Because Banks sues under 42 U.S.C. §  1983, the only predicate available for imposing personal liability on Captain Tally must be her *personal* involvement in the claimed constitutional deprivations.   Notions of *respondeat superior* will not suffice (a principle repeated over and over in the numerous progeny of *Monell* at 691; *see, e.g., Kunik v. Racine County,* 946 F.2d 1574, 1582 (7th Cir.1991)).

Tally had the right and discretion to take such an action after receiving complaints from plaintiff, himself, that he wanted to move because "an inmate that had just been assign to Plaintiff's cell had disclosed to the Plaintiff that he was HIV positive" and the Plaintiff wanted one of them to move.

It is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002).  The doctrine of qualified immunity was defined by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) as one which shields government official's "discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Id.* at 818.  Since *Harlow* was decided, the Supreme Court further expanded the qualified

immunity standard in *Mitchell v. Forsyth*, 472 U.S. 511 (1985). The Court stated:

> Unless the plaintiff's allegations state a claim of violation of
> *clearly established law*, a defendant pleading qualified immunity
> is entitled to dismissal *before* the commencement of discovery.

*Id.* at 536. (Emphasis supplied).  *See also Hunter v. District of Columbia*, 943 F.2d 69 (D.C. Cir.

1991).  One of the reasons for the qualified immunity defense is to allow:

> [O]fficials of government [to] be free to exercise their duties
> unembarrassed by the fear of damage suits in respect to acts done
> in the course of those duties – suits which consume time and energies
> which would otherwise be devoted to governmental service and the threat
> of which might appreciably inhibit the fearless, vigorous, and effective
> administration of policies of government.

*Barr v. Mateo*, 360 U.S. 564, 571 (1959).  The qualified immunity doctrine underpins the

necessity to shield government officials from the type of lawsuit plaintiff filed in the instant case.

Futhermore, as the Court in *Martin v. Malhoyt,* 830 F.3d 237, (D.C. Cir. 1987) stated:

> [P]laintiffs bringing suit against public officials generally must
> put forward, in their complaints or other supporting materials
> greater factual specificity and particularity than is usually
> required.

*Id*. at 256.

In the case at bar, Tally should not bear the expense and trauma of protracted litigation,

based upon the conclusory and unsupported claims of constitutional violations alleged in

plaintiff's complaint. Plaintiff's claims do not even rise to the level of a constitutional violation,

let alone demonstrate that defendant Tally violated clearly established federal rights that a

reasonable corrections official in her position would have known.  Thus, she (and alternatively

both defendants Williams and Pane) should be granted qualified immunity.

### H. All Non-Constitutional Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction.

In addition to claiming constitutional violations, the plaintiff's third amended complaint also could be read to allege that the defendants are liable for common law claims. (Third Amended Complaint, ¶¶ 99-114) Any such claims should be dismissed for lack of subject matter jurisdiction.

Absent any constitutional or federal statutory claims, this Court may decline to exercise supplemental jurisdiction over the common law claims asserted by the plaintiff. See 28 U.S.C. § 1368(c)(3). Furthermore, the Supreme Court has written that, once federal claims have been dismissed, a District Court should dismiss pendent state law claims.

In *Gaubert v. Gray*, a remarkably similar situation, the district court dismissed the plaintiff's constitutional claims on the grounds of qualified immunity. 747 F. Supp. 40, 50 (D.D.C. Cir. 1990). Noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," the court also dismissed the plaintiff's four common law claims. *Id*. Citing the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the district court wrote:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gaubert*, 747 F. Supp. at 50. Here, like the situation in *Gaubert*, the plaintiff's constitutional claims do not rise to the level of a constitutional violation, and, it follows *a fortiori,* that his common law claims should be dismissed as well.

### I.  *Plaintiff failed to exhaust his administrative remedies.*

Finally, plaintiff has failed to exhaust his administrative remedies concerning the claims he has raised in this federal complaint.    Plaintiff has neither alleged nor shown that he has exhausted administrative remedies that were available to him under the District of Columbia's Inmate Grievance Procedure, as required by the Prison Litigation Reform Act (PLRA), *42 U.S.C. § 1997e(a).*

The PLRA requires that no action with respect to prison conditions be brought "until such administrative remedies as are available are exhausted." *42 U.S.C. §1997e(a).*  The purpose of the grievance procedures is to give prison officials an opportunity to address alleged problems and to relieve the courts of unnecessary litigation.  Plaintiff seeks to turn the grievance process on its head in his attempt to create a federally protected interest for himself.  Even if the jail's inmate grievance process was flawed, that fact is not enforceable as a federal right.  For this reason alone, plaintiff's claims should be dismissed.  *Porter v. Nussle, 534 U.S. 516, 520 (2002); Jackson v. District of Columbia, 254 F.3d 262, 269, 270-71 (D.C. Cir. 2001).*

### J.  *Plaintiff is barred from contesting his extradition to the custody of Virginia correctional authorities*

Plaintiff waived extradition and a copy of his D. C. Superior Court "Order For Return of Fugitive Upon Waiver" is attached hereto as Exhibit **"A"** and made a part hereof, and the Court may take judicial notice of this court document.  Plaintiff's claims in this regard should be dismissed.

### V.  CONCLUSION

Wherefore, for all the above-stated reasons, plaintiff's complaint should be dismissed as to defendants Mayor Williams, Dr. Pane, and Captain Tally.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

RICHARD S. LOVE [340455]
Chief, Equity I

_____/s/_____
DENISE J. BAKER [493414]
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC  20001
202-442-9887