**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————
                              )
DR. SIMON BANKS,            )
                              )
          Plaintiff,      )
                              )     Civil Action No. 05-1514 (ESH)
          v.             )
S. ELWOOD YORK, JR., et al.,   )
                              )
         Defendants.    )
———————————————————)

**DEFENDANTS', DEVON BROWN, GLORIA NELSON, AND EDWARD D. REISKIN,**
**MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendants, Devon Brown (Brown), Director of the District of Columbia's Department

of Corrections, Edward D. Reiskin (Reiskin), District of Columbia Deputy Mayor for Public

Safety and Justice, and Gloria Nelson (Nelson), Director of Records for the District of Columbia

Department of Corrections (collectively "Defendants"), by and through undersigned counsel,

respectfully move this Court to dismiss the plaintiff's third amended complaint pursuant to Fed.

R. Civ. P. 12(b)(6).  As grounds for this motion, defendants assert that:

1. Plaintiff fails to state a claim against them for which relief may be granted;

2. Defendants sued in their individual capacity are entitled to qualified immunity;

3. Plaintiff is barred from contesting his extradition to the custody of Virginia correctional
   authorities;

4. Plaintiff failed to exhaust his administrative remedies;

5. All non-constitutional claims should be dismissed for lack of subject matter jurisdiction.

Co-defendants, Anthony Williams (Williams), Mayor of the District of Columbia,

Gregory Pane, M.D. (Pane), Director, D.C. Department of Health (DOH), and Nora Tally,

Captain, D.C. Department of Corrections (Tally) filed their Motion to Dismiss Plaintiff's Third

Amended Complaint with this Court on October 10, 2006 (Dkt. No. 55).

In support of this motion, the Defendants respectfully refer the Court to the attached

memorandum of points and authorities.  A proposed Order is also attached for the Court's

consideration.

Defendants requested the consent of Plaintiff to the relief requested in this Motion to

Dismiss, to which Plaintiff replied by email on November 3, 2006 stating that he did not consent.

**WHEREFORE**, Defendants pray that this Honorable Court deny the claims asserted by

Plaintiff and dismiss this action against these defendants with prejudice.

> Respectfully submitted,
>
> EUGENE A. ADAMS
> Interim Attorney General for the District of Columbia
>
> GEORGE C. VALENTINE
> Deputy Attorney General
> Civil Litigation Division
>
> RICHARD S. LOVE [340455]
> Chief, Equity I
>
> ___/s/_____
> DENISE J. BAKER [493414]
> Assistant Attorney General, DC
> 441 Fourth Street, NW
> Sixth Floor South
> Washington, DC  20001
> 202-442-9887

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Dismiss Plaintiff's Third Amended
Complaint was filed electronically with the Court for ECF service and mailed, US postage prepaid,
this 6th day of November 2006 to:

Dr. Simon Banks
P.O. Box 17052

Alexandria, VA  22302


_____/s/_____
Denise J. Baker

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| DR. SIMON BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-1514 (ESH) |
| vi. | ) | |
| S. ELWOOD YORK, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S THIRD AMENDED COMPLAINT**

### I.  INTRODUCTION

Plaintiff, Simon Banks (Banks), asserts a plethora of alleged wrongs committed by the

defendants arising from his almost two (2) year confinement in the District of Columbia's Jail.[1]

It is clear from a review of the plaintiff's complaint that he intends to hold these defendants

liable based upon his mistaken belief that these defendants:

1. Negligently trained or supervised the government staff (Count I);

2. Effected policies, procedures, and customs that negatively impacted Plaintiff's
   sentence calculations, dental care, and jail cell assignment practices (Counts II
   and III, and IV)[2];

3. Permitted his extradition to Virginia (Count V); and,

4. Provided unsuitable prison services and facilities (Count VI).

---

[1] Banks was extradited to Alexandria Virginia during a portion of his D.C. sentence.
[2] The 3rd Amended Complaint contains two (2) Count III claims, one on page 25 and one on page 28.  Both Count III claims allege §1983 respondeat superior liability.  For the purposes of this Motion to Dismiss, defendants shall treat the second Count III as included in the first Count III.

While the claims asserted contain all the buzzwords related to constitutional wrongs, such as "deliberate indifference", negligent training and supervision, "policy and practice," and §1983, when boiled down to its essence this lawsuit is no more than negligence claims for damages, which do not rise to the level of constitutional violations.

The Defendants move for dismissal of the plaintiff's claims on the following grounds:

1. The Complaint fails to state a claim against them for which relief may be granted;

2. Individual D.C. Defendants are entitled to qualified immunity;

3. Plaintiff is barred from contesting his extradition to the custody of Virginia correctional authorities;

4. Plaintiff failed to exhaust his administrative remedies; and,

5. All non-constitutional claims lack subject matter jurisdiction.

## II.  FACTUAL BACKGROUND

Banks alleges three factual bases to support his claims for relief.  The first arises from a miscalculation of his jail sentence.  The second arises from a jail "shakedown"[3] in which his property (dental crown) was damaged or destroyed. The third basis is a sweeping complaint concerning the alleged conditions of confinement he experienced while incarcerated at the D.C. Jail (Jail), which he has since been released from.

### A.  *Miscalculation of Jail Sentence*

Banks broadly blames the collapse of the Department of Corrections inmate management system for his overdetention.  (3rd Amended Complaint ¶ 63).  He cites several studies in support of the problems at the D.C. Records Office.  These studies are not relevant, however, to the plaintiff's very discreet and individualized bases for miscalculation of his jail term.

---

[3] "Shakedown" is defined as a thorough search of a place or person.  American Heritage Dictionary, www.answers.com, October 4, 2006.

A review of jail and court records indicates that Banks' untimely release is the result of to his court file having several case reference numbers, and factors unique to calculating his sentence, as opposed to any systemic inadequacy.  Factually, Banks was convicted to serve four (4) six-month sentences consecutively.

His custodial records reflect that the confusion started on or about April 4, 2004, when Banks was committed in appeals court case 02-BG-1374.  On June 4, 2004, the court amended the Judgment and Commitment Order (J&C) to reflect a reference number of SP008-04.  On June 24, 2004, the Court prepared another J &C with the number M6425-04 after crossing out the SP1008-04 number.  On June 7, 2004 the court issued a release order in the original case number 02-BG-1374; however there were no release orders tied to M6425-04, and Banks was held in that case—even though it was the same case under a different number.  It was not the D.C. Records Office or any D.C. executive agency that issued the duplicative case numbers.

Added to the above confusion is the fact that Banks was the subject of extradition to Alexandria, Virginia during the course of his D.C. sentences.  Inter-jurisdictional confusion arose as to the appropriateness of granting Banks credit for time served in Virginia.  At any rate, the problems in calculating plaintiff's sentence were the result of his unique circumstances, and not caused by any policy or practice of the District of Columbia.

### B.  Property Damage and Medical Claim

Banks attempts to weave a medical claim into a property damage claim arising from a "shakedown" at the jail in May 2005.  His dental crown was confiscated and, according to Banks, destroyed during the shakedown.  Banks wanted his property—his dentures—returned or repaired.  Alternatively, he wanted to see his private pre-paid dentist, who had begun the work of installing caps on his teeth prior to his incarceration.   Leaving the D.C. Jail for regular private

dental appointments, absent a life threatening situation, posed serious security and other concerns, and was not allowed.

Banks does not allege that he received no medical care for the resulting loss of his dental crown. He alleges that the care was improper in that it consisted of painkillers and ultimately pulled teeth by a dentist at the D.C. Jail.

### C. Choice of Housing during Incarceration

Specific to Defendant Brown, Banks alleges that he caused him damage by not permitting him to be housed in a specific wing or portion of the jail. Banks complains that the conditions were harsh, cold, and that he was housed with hardened criminals. (3rd Amended Complaint, ¶¶ 82-88.)

### D. Generalized Complaints

Banks could not do any of the things that he wanted to do or liked to do while he was in jail. His ability to have the foods that he wanted or the books that he required was circumscribed. He submits a laundry list of things that he wanted and could not have.

### III.    STANDARD OF REVIEW FOR GRANT OF A MOTION TO DISMISS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). The moving party is entitled to judgment if there are no allegations in the complaint that could provide a basis for recovery. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (1987).

Although the non-moving party enjoys the benefit of all inferences that can be reasonably drawn from the allegations alleged in the complaint, bare conclusions of law—or sweeping and unwarranted averments of fact—will not be deemed admitted for purposes of a motion under

Rule 12(b)(6). *Id.* The court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications* Corp., 60, 16 F.3d 1271, 276 (D.D.C. 1994). While this Court must construe plaintiff's factual allegations liberally, it need not blindly accept naked and conclusory allegations. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989) (Court has authority to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless).

## IV.   LEGAL ARGUMENT

### A.  *The Complaint Fails to State a Claim for Which Relief May Be Granted*

The Plaintiff's complaint should be dismissed with prejudice for three reasons. First, Plaintiff cannot establish an underlying constitutional violation, let alone actions on the part of these named defendants which violated plaintiff's constitutional rights. Second, assuming a predicate constitutional violation, and assuming that plaintiff's claims against the defendants are brought in their official capacity (i.e., a suit against the District), Plaintiff cannot establish that a custom or policy of the District caused the violation of Plaintiff's constitutional rights. *Monell v. Dep't of Social Serv. of the City of New York,* 436 U.S. 658, 691 (1978). Since the constitutional claims fail, the pendent common law claims should likewise fail. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

To the extent that Brown and Nelson are sued in their individual capacities, these claims must also fail.

### B.  *Plaintiff Fails to Allege any Constitutional Violations by Devon Brown, Gloria Nelson or Edward Reiskin*

Even if plaintiff's claims against defendants, Brown, Reiskin or Nelson rose to the level of a constitutional violation, which they do not, plaintiff fails to allege any specific

unconstitutional or improper act/conduct was committed by these defendants. *Respondeat superior* is not available under §1983 and on this basis alone, plaintiff has failed to meet the requirements of *Monell* for a claim against these defendants.

Gloria Nelson is named as a defendant simply because she was the Director of Records for the District of Columbia's Department of Corrections. However, she held the directorship beginning July 9, 2006, several months after the plaintiff was released from the jail. Therefore, all claims against Ms. Nelson should fail for that reason alone.

Devon Brown is named as a defendant simply because he is the Director of the District of Columbia's Department of Corrections (DOC). Mr. Brown has held the directorship since January 10, 2006, less than four months before the plaintiff was released from jail. Plaintiff makes no specific factual allegations against Brown, other than that plaintiff was not given his jail cell of choice. (3rd Amended Complaint, ¶¶ 82-88.)

Edward Reiskin is named as a defendant solely because he is the District's Deputy Mayor for Public Safety and Justice. Mr. Reiskin was appointed Deputy Mayor for Public Safety and Justice in January 2005 and as Interim City Administrator in September 2006. As Deputy Mayor, he oversees six agencies, including the Department of Corrections. The directors of those agencies, including DeVon Brown, report to him. Plaintiff makes no factual allegations against Reiskin, other than a generalized assertion that he "negligently trained [his] medical subordinates and negligently enforced a systemic policy, custom and practice and procedure of not affording proper dental care to the Plaintiff's dental and medical needs because of a policy, custom and procedure of deliberate indifference to the medical and dental needs of the Plaintiff." (*Id*. at 99-104). As previously stated, these mere iterations of the constitutionally required "buzzword," without more, do not amount to a constitutional violation.

### C.   The Complaint Fails to Allege a Constitutional Claim for Inadequate Medical Care.

The dental prosthesis (crown) owned by the plaintiff was damaged when correctional officers inspected cells at the D.C. Jail.  (3rd Amended Complaint ¶ 73).  The pleadings do not state that any correctional officer(s) intentionally damaged the plaintiff's property in the form of his dental prosthesis.

Plaintiff fails to state an Eighth Amendment claim for the alleged failure to provide him with adequate medical care since he does not allege acts or omissions sufficiently harmful to evidence deliberate indifference to his serious medical needs.  *Estelle v. Gamble, 4*29 U.S. 97, 106 (1976).  Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain as proscribed by the Eighth Amendment.  *Id*. at 104.  Moreover, to establish an unconstitutional deprivation of medical care, a prisoner must demonstrate that the acts or omissions complained of were sufficiently harmful to amount to "deliberate indifference" to "serious medical needs."  *Id.* at 106 (1976).  *See also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (test under *Estelle* is two-pronged, requiring that prisoner's medical needs be serious and that defendants display deliberate indifference to those needs).

The Court in *Estelle* instructs that a complaint which alleges that a correctional system has been negligent in treating a medical condition does not state a claim of medical mistreatment under the Eighth Amendment.  *Id*. at 106.  Rather, it is only "deliberate indifference to serious medical needs" that can offend the Eighth Amendment.  *Id.*[4]

---

[4] The Supreme Court refers with approval to specific Circuit Courts of Appeal's decisions as illustrative of deliberate indifference:

*Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the  prisoner's ear and stitching the stump may be

Nowhere in this plaintiff's complaint does he allege any refusal to administer medical aid. What he alleges is that the Defendants did not replace his property, his dental prosthesis, after it was damaged in the shakedown. Then he ties the missing dental crown to his resultant gum disease. There is no inference that can be drawn from the facts at bar that the corrections officers, who may have taken or damaged the dental prosthesis, intended to cause plaintiff dental injury as a result of a routine jail inspection.

To prove an Eighth Amendment violation related to prison medical treatment, plaintiff must show that officials were deliberately indifferent to a serious illness or injury. *See*, *Risdal v. Martin*, 810 F. Supp. 1049, 1054, n. 8 (S.D. Iowa, 1993). Deliberate indifference has been described as possession of "actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent harm could be inferred from [a] failure to prevent it," *Young v. Quinlan*, 960 F.2d 351, 360, n. 22, *quoting Henderson v. DeRobertis,* 940 F.2d 1055, 1060 (7th Cir. 1991).

In *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Supreme Court defined the meaning of deliberate indifference, and held that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." In the instant case, plaintiff's own allegations in the complaint belie any contention

---

attributable to deliberate indifference . . .rather than an exercise of professional judgment");

*Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *cert. denied sub nom. Thomas v. Cannon,* 419 U.S. 879 (1974) (injection of penicillin with knowledge that prisoner was allergic, and **refusal** of doctor to treat allergic reaction);

*Jones v. Lockhart*, 484 F.2d 1192 (8th Cir. 1973) (**Refusal** of doctor to treat allergic reaction);

*Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), *cert. denied,* 401 U.S. 983 (1971) (prison physician **refused** to administer the prescribed pain killer and rendered leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon). *Estelle, supra,* 429 U.S. at 104 n. 10, (emphasis added).

that he has not been given medical care consistent with the requirements of the Eighth Amendment. He admits that he was "repeatedly given pain medicine and antibiotics to alleviate the pain." (3rd Amended Complaint ¶ 76). Plaintiff acknowledges that "the dental unit of the Department of Corrections treated the Plaintiff with antibiotics" and that the Dental Unit could pull the teeth. (*Id*. at 74). Plaintiff admits that the dental unit removed four teeth. (*Id*. at 77). Therefore, neither these Defendants (nor the District) were deliberately indifferent to any serious medical needs.

In applying the test set forth in *Estelle, supra*, the Courts have considered such factors as the severity of the medical problems, the potential for harm and whether any such harm actually resulted from any Eighth Amendment allegations. *See Burns v. Head Jailor of LaSalle County Jail*, 576 F. Supp. 618, (N.D. Ill. 1984), *Thomas v. Pate*, 493 F.2d 151 (7th Cir. 1984). Except in totally conclusory terms, Plaintiff has not even alleged any serious deprivation that would be tantamount to cruel and unusual punishment. *See, e.g*., *Benson v. Cady,* 761 F.2d 335, 341 (7th Cir. 1985) (defendant's failure to ensure that plaintiff received prescribed medication, and prescription of incorrect medication, causing adverse side effects, was possibly negligent, but not an Eighth Amendment violation, absent allegations of deliberate indifference or knowledge of the harm); *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (despite injury to plaintiff, mere delay in providing therapeutic equipment did not state Eighth Amendment claim); *Wood v. Housewright*, 900 F2d 1332, 1334-35, (9th cir. 1990) (possible negligence, but no Eighth Amendment violation, where prison failure to provide plaintiff's medical records resulted in adverse side effects and a three month delay in treatment).

At most, plaintiff's complaint raises questions of negligence, not constitutional violations. The Eighth Amendment is not implicated by treatment that constitutes ordinary malpractice or negligence.  See *Benson v. Cady, supra.*

It is conceded that the Constitution does require that prisoners be provided with a certain minimum level of medical treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). However, it does not guarantee to a prisoner the treatment of his choice.  *Id.*  Prisoners simply cannot insist that their institutional host provide them with the most sophisticated care that money can buy.  *United States v. DeCologero*, 821 F.2d 39 (1st Cir. 1987).  Here, Plaintiff would have preferred to see his own dentist, outside the prison walls, for continued treatment. However, after his dental treatment began, he was arrested and incarcerated. Plaintiff is not assured the same level of personal dental care in jail that he would have received as a free man. He is assured of, and did receive, care that was not deliberately indifferent to any serious medical need.

### D. Plaintiff Cannot Establish that the Defendants had a Custom or Practice of Overdetention Relevant to the Miscalculation of His Jail Term

A review of jail and court records indicate that Banks' untimely release is the result of to his court file having several case reference numbers, and factors unique to calculating his sentence, as opposed to any systemic inadequacy.  Factually, Banks was convicted to serve four (4) six-month sentences consecutively.

Nevertheless, Banks broadly blames the collapse of the Department of Corrections inmate management system for his overdetention.    (3rd Amended Complaint ¶ 63).  He cites several studies in support of the problems at the D.C. Records Office.  These studies are not relevant, however, to the plaintiff's very discreet and individualized bases for miscalculation of his jail term.

His custodial records reflect that the confusion started on or about April 4, 2004, when Banks was committed in appeals court case 02-BG-1374. On June 4, 2004, the court amended the Judgment and Commitment Order (J&C) to reflect a reference number of SP008-04. On June 24, 2004, the Court prepared another J&C with the number M6425-04 after crossing out the SP1008-04 number. On June 7, 2004 the court issued a release order in the original case number 02-BG-1374; however there were no release orders tied to M6425-04, and Banks was held in that case—even though it was the same case under a different number. It was not the D.C. Records Office or any D.C. executive agency that issued the duplicative case numbers.

On June 18, 2004, Banks was released to the Metropolitan Police Department (M.P.D.) Fugitive Unit pursuant to a detainer issued by the State of Virginia. On or about June 23, 2004, Virginia officials extradited Banks to Virginia.

On or about September 1, 2004, while Banks was in Virginia's custody, the D.C. Superior Court issued an amended J&C order in case M6425-04 for Counts A through D to run consecutively, *nunc pro tunc*, to June 3, 2004, for the same sentence and date as case #02-BG-1374. Banks was returned to D.C. custody from Virginia on or about December 17, 2004 to serve out his D.C. sentence.

A new sentence computation was prepared upon Banks' return from the State of Virginia, which awarded Banks with 75 days of prior jail credit from the date he was initially committed on April 5, 2004 until the date that he was turned over to M.P.D. for extradition on June 18, 2004. This new sentence computation did not credit toward his D.C. sentence the time that plaintiff spent in Virginia, and re-started service of his D.C. sentence on the date that Banks was returned from Virginia on December 17, 2004. Thus, the projected release date was calculated to be October 2, 2006.

14

Not until April 28, 2006, was the confusion regarding the case numbers, as well as the time-served credit for custody in Virginia made clear.  A new sentence calculation was prepared taking into account these two discrepancies and Banks was released.

Looking at the facts related above as a backdrop, it becomes evident that the defendants have neither violated Banks' due process rights nor incurred municipal liability by evidencing deliberate indifference through its policies or customs.  The test for due process violations is separate and distinct from the test for municipal liability.  The due process inquiry requires an objective assessment of whether the District's conduct is sufficiently egregious, not merely unreasonableness or negligence.  *Hardeman v. Clark,* 593 F. Supp. 1285 (D.C. Cir. 1984) *citing Owens v Haas,* 601 F.2d 1242, 1246 (2nd Cir. 1979) (Mere negligence on the part of a municipality does not establish 42 U.S.C. § 1983 liability); *Hayes v. Faulkner County,* 388 F.3d. 669, 674 (8th Cir. 2004).

On the other hand, the question of deliberate indifference, the evidentiary standard required for municipal liability, is different from mere unreasonableness.  To establish municipal liability resulting in constitutional injuries, Plaintiff must show a causal link between his/her individual detention and one of the District's policies or customs. *Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. Cir. 1986).  See, City of Canton v. Harris, 489 U.S. 378, 388-91 (1989); See also, Monell, supra at, 690-91.*

The "but for" to Banks' extended stay was not any systematic inadequacy that resulted from a municipal policy or practice, but the result of the unique circumstances of plaintiff's sentences and his extradition to the State of Virginia.   It was not deliberate indifference or egregious conduct by the District that caused Banks' delayed jail release.  There was no grand scheme or design to overdetain Banks.  There was no systematic or systemic failure of the

Records Office as alleged by the plaintiff's complaint.  This incident, unfortunate though it may be, is no more than, at most, the negligent failure to properly calculate this inmate's sentence as a result of the unique factors attendant to his various case numbers, and his extradition to Virginia between June and December 2004.

### E.  Plaintiff Cannot Establish the Predicates to Eighth Amendment Violations Based upon the Conditions of his Confinement

Plaintiff finds fault with every aspect of his incarceration, and he seeks to hold defendants liable for each such alleged fault.[5]  To establish an Eighth Amendment violation

---

[5] The complete list of complaints alleged by the Plaintiff are as follows:

(1)  he was overdetained (3rd Amended Complaint ¶¶ 20, 24-26, 63-64)

(2)  Correctional officers confiscated and destroyed his dental crown during a jailhouse shakedown (*Ibid*. ¶¶69-71)

(3)  The jail is overcrowded and lacks recreations and medical services.  (*Ibid*., page 36[5])

(4)  He has had to wait more than 90 days for an appointment with the jail's podiatrist, optometrist or dentist caused by "inadequate medical health professionals" at the jail. (*Ibid*. page 36, 41).

(5)  The showers are defective and unsanitary.  (*Ibid*., pages 36-37.)

(6)  His meals were not nutritious. (*Ibid*. page 37).

(7)  The law library collection was antiquated and inadequate.  (*Ibid*. page 37).

(8)  More correctional officers are needed on staff (*Ibid*., page 38)

(9)  Misdemeanants and felons are co-mingled in the jail holding facilities (*Ibid*. page 38).

(10)  His grievance was not timely processed and recorded (*Ibid*. page 38)

(11)  Reading materials and recreational facilities in the jail were insufficient (*Ibid*. page 39)

(12)  There was insufficient recreational equipment.  (*Ibid*. page 39)

(13)  The mattresses were defective and unsanitary. (*Ibid*. page 39).

(14)  Only one desk and one chair were provided for two inmates per one-man cell (Ibid., page 40)

(15)  The jails commissary lack essential lotions, skin oils and peanut butter (*Ibid*., page 40)

(16)  There is a need for greater finger- and toenail clipping.  (*Ibid*. page 40)

(17)  He was deprived of "basic human needs" including skin lotions, blankets, and microwave ovens to warm food. (*Ibid*. page 41).

(18)  There was sewage backup in the facility (*Ibid*. page 41).

(19)  His mail was opened.  (*Ibid*. page 42).

(20)  His bunk beds had no ladder to the upper bunk *(Ibid*. page 42).

(21)  The facility was not audited by the D.C. Department of Health (DOH) (*Ibid*. page 42-43).

(22)  There was a lack of fresh air and rehabilitative courses. (*Ibid*. page 43)

(23)  The heating system was inadequate. (*Ibid*. page 43).

regarding conditions of confinement, two requirements must be met.  First, the deprivation must

be, objectively, "sufficiently serious" and secondly, a prison official must have been deliberately

indifferent to inmate health or safety.  *Farmer v. Brennan, supra.*   Second, a prison official

"must both be aware of facts from which the inference could be drawn that a substantial risk of

harm exists, and he must also draw the inference." *Id.*  Banks' allegations do not meet either

prong of this standard.  Banks does not allege that any District officials had the purpose of

causing him harm or knew that harm would result, or even that any official failed to act, despite

his or her knowledge of a substantial risk of harm to Banks.  *Id. at 842.*

The U.S. Supreme Court cautioned lower federal and state courts against enlarging the

"commodious contours" of section 1983 of the Fourteenth Amendment so as to displace state

law.  *Daniels v. Williams, 474 U.S. 547 (1981); Paul v. Davis, 424 U.S. 693, 701 (1976).*  The

mere fact that the conduct was allegedly performed by a state actor or allegedly occurred within

a state facility does not support its characterization as a constitutional wrong.  Rather, it is

grievous or flagrant governmental abuse that demands a constitutional response.  *Davis v.*

*Butcher, 853 F.2d 718, 721 (9th Cir. 1988).*  Isolated and limited tortious conduct in the prison

does not violate inmate constitutional rights.  *Id. at 720 n. 3.*

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments.'"

*Wilson v. Seiter, 501 U.S. 294 (1991);* but, jail conditions may be restrictive and even harsh

without violating the Constitution. Only "those deprivations denying the minimal civilized

measure of life's necessities … are sufficiently grave to form the basis of an Eighth Amendment

violation." *Wilson, 501 U.S. at 825.*   "Cruel and unusual punishment" is that which involves the

unnecessary and wanton infliction of pain, those which are grossly disproportional to the severity

---

of the crime for which an inmate is imprisoned, or are totally without penological justification. *Rhodes v. Chapman, 452 U.S. 337 at 346.* A discerning review of plaintiff's grumblings show a nitpicking of minor, isolated problems that lack the obduracy or wantonness required to make out an Eighth Amendment violation.

For plaintiff to sustain an Eighth Amendment cause of action, the deprivation alleged must objectively result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. at 347). The D.C. Circuit Court of Appeals has held that "the 'deprivations' that trigger Eighth Amendment scrutiny are deprivations of essential human needs." *Women Prisoners of the District of Columbia Department of Corrections v. District of Columbia*, 93 F.3d 910, 928 (D.C. Cir. 1996) (*quoting Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988)). The D.C. Circuit noted that the Constitution "does not mandate comfortable prisons," *Women Prisoners*, 93 F.3d at 928 (*quoting Wilson,* 501 U.S. at 298), adding that, "To the extent that conditions … 'are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Women Prisoners*, 93 F.3d at 928 (*quoting Rhodes*, 452 U.S. at 347).

The extent of plaintiff's injuries are "pain, colds, and harsh living conditions" (Third Amended Complaint ¶ 182); "despair, anxiety, [and] hopelessness" (*Id*. at page 41); "[E]xtraordinary fingernails and toenails which caused pain, suffering and anxiety." (*Id.* at page 40); and dental impairment *(Id.* at ¶ 73). These conditions do not rise to the level required to trigger Eighth Amendment violations.[6]

---

[6]     Plaintiff's allegation that he suffered from exposure to extremely cold temperatures without warm clothing is not objectively serious enough to state a constitutional violation. In general, an inmate cannot support a claim that he was exposed to unconstitutionally extreme temperatures unless the exposure was prolonged enough to endanger the health and safety of the inmate. *See Ware v. Fairman*, 884 F. Supp. 1201, 1207 (N.D. Ill. 1995); *Campbell-El v. District*

### F.  Plaintiff Has No Right to be Classified at a Particular Jail Custody Level or Remain in Particular Jail Housing

The complaint alleges two instances in which Plaintiff was not afforded the housing that he desired.  Since he did not receive the desired housing, he seeks damages from the defendants. Plaintiff wanted to be housed at the Correctional Treatment Facility (CTF) (3rd Amended Complaint ¶ 82-88) because there, his "cell was never locked" and he was allowed to leave his cell (*Id*. at ¶ 83).

---

*of Columbia*, 881 F. Supp. 42, 44 (D.D.C. 1995); *Gawloski v. Dallman*, 803 F. Supp. 103, 111 (S.D. Ohio 1992).

In *Ware*, the plaintiff alleged that he was forced to live in overcrowded, cold, and unsanitary living conditions while he was a pre-trial detainee at a Northern Illinois jail.  *Ware* at 1204.  A broken window allegedly made the cell blocks extremely cold, and for this first week, the plaintiff had to sleep on the floor of his cell without a blanket.  *Id*. at 1207.  The court held that the plaintiff had not stated a claim for relief under the Eighth Amendment, because he "has not pled allegations which create a possible inference that he was routinely placed in cells with unreasonable temperatures."  *Id.*  The court explained that:

> The conditions complained of by plaintiff, although perhaps uncomfortable, are at most temporary and therefore not serious enough to be considered cruel and unusual punishment.  These conditions are not considered punishment because they do not result in a serious deprivation of basic human needs of the minimal civilized measure of life's necessities.  Moreover, the conditions plaintiff complains of do not pose a "substantial risk of serious harm."  *Id.* (*quoting Farmer*, 511 U.S. at 834).

Other courts have reached the same conclusion using similar criteria.  In *Gawloski*, the plaintiff "failed to produce affirmative evidence in support of his claims that his cell lacked heat or ventilation *for months at a time.*"  *Gawloski*, 803 F. Supp. at 111 (emphasis added).  Although the plaintiff could prove that "on several occasions plaintiff alerted prison officials that he lacked heat in his cell," the court held that he had "failed to produce affirmative evidence indicating that defendants exposed him to *extended periods* of cold or heat in a manner violative of the Eighth Amendment."  *Id.*(emphasis added); *see also Cambell-El*, 881 F. Supp. at 44 (no Eighth Amendment violation where plaintiff allegedly received inappropriate clothing for one-hour outdoor recreation periods).

Plaintiff's bare allegations that he has a right to be classified at a particular custody level or housed in a particular portion of the jail facility, standing alone, fails to state a claim for relief. Courts have consistently held that inmates, such as plaintiff herein, have no right to remain or be incarcerated in any particular facility or location. See, e.g., *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ali v. United States*, 743 F. Supp. 50-52 (D.D.C. 1990) (The government has unfettered discretion to determine where offenders who have violated the District of Columbia Code serve their prison sentences).

### G.   The Defendant, DeVon Brown, is Entitled to Qualified Immunity

Plaintiff contends that Brown modified his housing arrangements by "failing to reassign and house the Plaintiff at the CTF facility. (3rd Amended Complaint ¶¶ 86). Plaintiff also alleges that Brown, as the head of DOC, "entrusted certain duties including but not limited to ensuring the release of Plaintiff on his release date * * * to certain Department of Corrections employees [who were not appropriately trained, supervised or disciplined]. (*Id.* at ¶¶ 90-91).

 Plaintiff alleges no damage or injury arising from the housing arrangement other than that he was "commingled with inmates whom were charged with multiple murder (sic) . . .." (*Id.* at 88) The complaint should be dismissed as to Brown since plaintiff fails to directly complain of any action he took (or failed to take), and *respondeat superior* liability is not available to support a §1983 claim. Because Banks sues under 42 U.S.C. § 1983, the only predicate available for imposing personal liability on Brown must be his *personal* involvement in the claimed constitutional deprivations. Notions of *respondeat superior* will not suffice (a principle repeated over and over in the numerous progeny of *Monell at* 691; *see, e.g., Kunik v. Racine County,* 946 F.2d 1574, 1582 (7th Cir.1991)).

Furthermore, it is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). The doctrine of qualified immunity was defined by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) as one which shields government official's discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Since *Harlow* was decided, the Supreme Court further expanded the qualified immunity standard in *Mitchell v. Forsyth*, 472 U.S. 511 (1985). The Court stated:

> Unless the plaintiff's allegations state a claim of violation of *clearly established law*, a defendant pleading qualified immunity is entitled to dismissal *before* the commencement of discovery.

*Id.* at 536. (Emphasis supplied). *See also Hunter v. District of Columbia*, 943 F.2d 69 (D.C. Cir. 1991). One of the reasons for the qualified immunity defense is to allow:

> [O]fficials of government [to] be free to exercise their duties unembarrassed by the fear of damage suits in respect to acts done in the course of those duties – suits which consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Mateo*, 360 U.S. 564, 571 (1959). The qualified immunity doctrine underpins the necessity to shield government officials from the type of lawsuit plaintiff filed in the instant case.

Furthermore, as the Court in *Martin v. Malhoyt,* 830 F.3d 237, (D.C. Cir. 1987) stated:

> [P]laintiffs bringing suit against public officials generally must put forward, in their complaints or other supporting materials greater factual specificity and particularity than is usually required.

*Id*. at 256.

In the case at bar, defendant Brown, is entitled to the protection of qualified immunity. Plaintiff's claims against defendant Brown do not even rise to the level of a constitutional

violation let alone assert how defendant Brown violated clearly established constitutional rights which a reasonable corrections official in his position would have known of.

### H.  The Defendant, Gloria Nelson, is Entitled to Qualified Immunity

Plaintiff also alleges that Nelson, as the head of DOC's Records Office, "entrusted certain duties including but not limited to ensuring the release of Plaintiff on his release date * * * to certain Department of Corrections employees [who were not appropriately trained, supervised or disciplined].  (*Id.* at ¶¶ 90-91).  This is the same claim made against Defendant Brown, supra, Section "G" supra, and should be dismissed for the same reasons.  There are no other substantive claims against Ms. Nelson.  The negligent training and supervision allegations do not amount to constitutional violations, and should be dismissed against Nelson as discussed fully in Section "I" *infra* of this Memorandum of Points and Authorities.

Furthermore, for the same reasons as set forth in Section G, defendant Nelson is entitled to the protection of qualified immunity.  The claims against defendant Nelson do not rise to the level of constitutional violations, let alone violations of clearly established federal rights which a reasonable corrections official in defendant Nelson's position would have known of.

Lastly, defendant Nelson was the Director of the DOC Records Office for a period beginning several months after plaintiff was released from jail.  For that reason alone, the claims against defendant Nelson should be dismissed with prejudice.

### I.  All Non-Constitutional Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction.

In addition to claiming constitutional violations, the plaintiff's third amended complaint also could be read to allege that the defendants are liable for common law claims.  (3rd Amended

Complaint, ¶¶ 89-114)   Any such claims should be dismissed for lack of subject matter jurisdiction.

Absent any constitutional or federal statutory claims, this Court may decline to exercise supplemental jurisdiction over the common law claims asserted by the plaintiff.  See 28 U.S.C. § 1368(c)(3).  Furthermore, the Supreme Court has written that, once federal claims have been dismissed, a District Court should dismiss pendent state law claims.

In *Gaubert v. Gray*, a remarkably similar situation, the district court dismissed the plaintiff's constitutional claims on the grounds of qualified immunity.  747 F. Supp. 40, 50 (D.D.C. Cir. 1990).  Noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," the court also dismissed the plaintiff's four common law claims.  *Id.*  Citing the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the district court wrote:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gaubert*, 747 F. Supp. at 50.  Here, like the situation in *Gaubert*, the plaintiff's constitutional claims do not rise to the level of a constitutional violation, and, it follows *a fortiori,* that his common law claims should be dismissed as well.

### J.  *Plaintiff failed to exhaust his administrative remedies.*

Finally, plaintiff has failed to exhaust his administrative remedies concerning the claims he has raised in this federal complaint.    Plaintiff has neither alleged nor shown that he has exhausted administrative remedies that were available to him under the District of Columbia's

Inmate Grievance Procedure, as required by the Prison Litigation Reform Act (PLRA), *42 U.S.C. § 1997e(a)*.

The PLRA requires that no action with respect to prison conditions be brought "until such administrative remedies as are available are exhausted." *42 U.S.C. §1997e(a)*. The purpose of the grievance procedures is to give prison officials an opportunity to address alleged problems and to relieve the courts of unnecessary litigation. Plaintiff seeks to turn the grievance process on its head in his attempt to create a federally protected interest for himself. Even if the jail's inmate grievance process was flawed, that fact is not enforceable as a federal right. For this reason alone, plaintiff's claims should be dismissed. *Porter v. Nussle, 534 U.S. 516, 520 (2002); Jackson v. District of Columbia, 254 F.3d 262, 269, 270-71 (D.C. Cir. 2001)*.

### K. *Plaintiff is barred from contesting his extradition to the custody of Virginia correctional authorities*

Plaintiff waived extradition and a copy of his D. C. Superior Court "Order For Return of Fugitive Upon Waiver" is attached hereto as Exhibit **"A"** and made a part hereof, and the Court may take judicial notice of this court document. Plaintiff's claims in this regard should be dismissed.

### V. CONCLUSION

Wherefore, for all the above-stated reasons, plaintiff's complaint should be dismissed as to defendants DeVon Brown, Edward D. Reiskin, and Gloria Nelson.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

RICHARD S. LOVE [340455]

Chief, Equity I

_____/s/_____
DENISE J. BAKER [493414]
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC  20001
202-442-9887