## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                       :
                                           :
    Plaintiffs                     :
                                           :       Civil Action No. 06-315 (RCL)
        v.                 :
                                           :
Government of the District                 :
Of Columbia,                               :
                                           :
    Defendants.                    :

### AFFIDAVIT OF SHANKEISHA MITCHELL

    I, Shankeisha Mitchell, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    On January 11, 2006 I was arrested and taken into custody in Washington, D.C. by members of the Metropolitan Police Department in case 2006-GJ-111 in Superior Court for the District of Columbia.

2.    My arrest was based on a warrant issued by Chief Judge Rufus King of the District of Columbia Superior Court in order to secure my appearance as a Material Witness before a Grand Jury in case 2005-FEL-4882, the United States of America v. Mitchell Russell.

3.    I was taken into custody on Wednesday, January 11, 2006 and confined at the District of Columbia Jail until January 12, 2006 when I appeared before the Honorable Rufus King, Chief Judge of Superior Court. Chief Judge King ordered that I testify before the Grand Jury and be released immediately after testifying.

4.    On my initial entry into the DC Jail on January 11, 2006 I was strip searched.

5.    After my court appearance before Chief Judge King on January 12, 2006 I was returned to the D.C. Jail and strip searched.  I testified before the

1449-500942

Grand Jury early in the afternoon on Friday, January 13, 2006. I completed my testimony before 4:00 p.m.

6.    I was not immediately released after testifying before the Grand Jury as ordered by Chief Judge King.

7.    Instead, on Friday, January 13, 2006 I was transported from 555 Indiana Avenue, N.W. to the D.C. Jail. I was not transported to the D.C. General Hospital facility to be processed out. At the D.C. Jail, I was strip searched and again incarcerated.

8.    I was released from the D.C. Jail on Saturday, January 14, 2006. I was strip searched prior to my release from the D.C. Jail.

9.    During each of the aforementioned strip searches, I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

10.    I did not have any arrest warrants, wants, detainers or warrants as of January 13, 2006.

Date: April ____, 2006
City: Washington, D.C.
DOB: 1/21/67
SSN: _____
PDID: _____
DCDC: _____

Respectfully submitted,

_Shankeisha Mitchell_
Shankeisha Mitchell

_____
Witness

1449-500943

0001- 002

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                   :
                                       :
        Plaintiffs                     :
                                       :        Civil Action No. 06-315 (RCL)
        v.                             :
                                       :
Government of the District             :
Of Columbia,                           :
                                       :
_____Defendants._____:

### AFFIDAVIT OF TONEY MALLOY

I, Toney Malloy, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      On January 26, 2006 I was ordered held without bond in case 2005 DVM 4158 in the Superior Court for the District of Columbia. On February 9, 2006 this detention was amended to Halfway House detention.

2.      I was sentenced to 20 days in jail in said matter on February 24, 2006. At the time of sentencing, I had served a total of at least 30 days confinement in case 2005 DVM 4158.

3.      Instead of being released from the courtroom I was transported back to the D.C. Jail and confined at the jail.

4.      I was confined at the D.C. Jail until March 3, 2006 when I was brought to D.C. Superior Court and charged with one count of Escape and ordered held without bond in case 2006 CF2 4247.

5.      As part of my commitment and reentry into the DC Jail on February 24, 2006 I was strip searched.

1449-500803

6.    I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

7.    I was not presented to a Judicial Officer for an Initial Hearing for 7 days, from February 24, 2006 to March 3, 2006. I did not have any other open cases or valid detainers, wants, or warrants as of February 24, 2006.

Date: _____
City: _____
DCDC: 289872
PDID: 302664
DOB: 9/26/66

Respectfully submitted,

Toney Malloy

1449-500804

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
        Plaintiffs                      :
                                        :        Civil Action No. 06-315 (RCL)
            v.                          :
                                        :
Government of the District              :
Of Columbia,                            :
                                        :
        Defendants.            :

## AFFIDAVIT OF DAVID PETERSON
## REGARDING THE FILING OF AN ADMINISTRATIVE
## GRIEVANCE

I, David Peterson, pursuant to 28 U.S.C. 1746 certify under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    On February 13, 2006 I was incarcerated at the District of Columbia Central Detention Facility (D.C. Jail) to serve a term of 7 days imprisonment as a sanction pursuant to my participation in the Superior Court Drug Treatment Intervention Program as a condition of my probation in case 2005 FEL 2201 in the Superior Court of the District of Columbia.

2.    My release date was February 20, 2006. I was not released from the D.C. Jail until February 24, 2006.

3.    I was strip searched after a court appearance on February 21, 2006 and again strip searched after a contact legal visit on February 22, 2006.

4.    After said strip search on February 22, 2006 I filed an Administrative Grievance regarding my overdetention and strip searches on behalf of myself and all others similarly situated. I hand wrote a complaint alleging that I and other inmates had been incarcerated past my release date and strip searched. I included my DCDC number and dated and signed this document.

1449-500805

0003- 001

5.    The box where such Grievances are submitted in my cell block was full so I gave my Grievance to the Correctional Officer in charge of my unit, Sergeant Murphy.   Sgt. Murphy placed my Grievance in a folder and stated that he would turn it in.

Date:  4/6/2006   (DC Jail)
City:  Washington DC
DCDC:  252552

Respectfully submitted,

David Peterson

1449-500806

0003- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
        Plaintiffs                      :
                                        :      Civil Action No. 06-315 (RCL)
            v.                          :
                                        :
Government of the District  :
Of Columbia,                            :
                                        :
        Defendants.            :

## AFFIDAVIT OF MAURICE WILLIAMS

I, Maurice Williams, pursuant to 28 U.S.C. 1746 certify as
true under penalty of perjury under the laws of the United States of
America that the following is true and correct:

1.     On February 2, 2006 I was arrested and a judicial officer
entered an order that I be held without bond in case 2006 CTF
2022 in Superior Court for the District of Columbia and on
February 8, 2006 a judicial officer released this hold by placing me
on Personal Recognizance.

2.     At the time of my arrest on February 2, 2006, I was on
probation in case 2004 CMD 6502 and case 2005 CMD 9764 and
no orders of detention were filed in said cases.

3.     Instead of being released from the courtroom on February 8,
2006 I was transported back to the D.C. Jail and confined at the
jail.

1449-500807

0004- 001

4.    On February 27, 2006 I was brought from the D.C. Jail to Superior Court for hearings in cases 2004 CMD 6502 and 2005 CMD 9764 before the Honorable James Boasberg to Show Cause why probation should not be revoked. No entry of a detention order occurred in said cases and I was not held in said cases.

5.    Instead of being released, I was returned to the DC Jail on February 27, 2006 and remained in confinement.

6.    I was confined at the D.C. Jail until March 1, 2006.

7.    Inasmuch as no order of detention was entered in cases 2004 CMD 6502 and 2005 CMD 9764, I was illegally detained from February 8, 2006 to March 1, 2006.

8.    On my return to the DC Jail on February 8, 2006 I was strip searched.

9.    I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

10.    I did not have any arrest warrants, wants, detainers or warrants as of February 8, 2005.

Date: _3/18 06_

City: _Washington DC_

DCDC: 196269

PDID: 313295

DOB: 5/30/60

Respectfully submitted,

_Maurice Williams_

Maurice Williams

1449-500808

0004- 002

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

MARCUS BYNUM, et al.            )
                               )
                   Plaintiffs) )
                               )
        v.                     )       Civil Action No. 02cv956 (RCL)
                               )
GOVERNMENT OF THE DISTRICT OF  )
COLUMBIA, et al.               )
                               )
                   Defendant ) )

## AFFIDAVIT

I, _Carl Barnes_, pursuant to 28 U.S.C. § 1746,
certify as true under penalty of perjury under the laws of the
United States of America that the following is true and correct:

1.   I was confined in the DC Jail beginning

_____.

2.   On __2/15/06__ I went to Court in
Superior Court and the Court ordered me released

_Time Served_.

3.   Instead of being released from the courtroom, I was
transported back to the DC Jail to be processed out.

1

**1449-500537**

0005- 001

4.    When I arrived at the DC Jail, I was taken into the DC Jail, and booked back in.

5.    As part of the commitment into the DC Jail, I was strip searched.

6.    I had to take off all my clothes (the Department of Corrections jumpsuit I was wearing).  A guard looked at my genitals.  I had to turn around and spread my butt cheeks.  The guard looked in my butt cheeks.

7.    They strip searched every single one of us who came in, not just some of us.

8.    They also strip searched me on the way out when I was released __*Yes*__ (yes/no).

9.    I was not released until __*continuing*_____.

10.   I did not have any other open cases or detainers, wants or warrants as of the day I went to court.

February **22** 2006

                    Respectfully submitted,

                    *Col. A. Barnes*

1449-500538

0005- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                          :
                                              :
        Plaintiffs                            :
                                              :       Civil Action No. 06-315 (RCL)
               v.                             :
                                              :
Government of the District                    :
Of Columbia,                                  :
                                              :
        Defendant.                            :
_____

### AFFIDAVIT OF JAMES G. JONES REGARDING
### OVERDETENTION, STIP SEARCH, AND FILING OF A GRIEVANCE
### AT THE D.C. JAIL

I, James G. Jones, pursuant to 28 U.S.C. 1746 certify as true under penalty of
perjury under the laws of the United States of America that the following is true and
correct:

1.      On February 22, 2006 I appeared before the Honorable Ann O'Regan Keary in
the Superior Court for the District of Columbia for an Arraignment Hearing in case 2006-
CMD-3682. Judge Keary entered an order releasing me on Personal Recognizance and I
was so released.

2.      On April 15, 2006 I was rearrested and appeared before the Honorable Maurice
Ross in the Superior Court for the District of Columbia for Presentment in case 2006-
CF2-7396. Judge Ross ordered that I be held for 5 business days pursuant to D.C. Code
23-1322(a)(1) (A) and I was stepped back to the District of Columbia Central Detention
Facility.

3.      On April 24, 2006 a Preventive Detention Hearing was held in case 2006-CF2-
7396 wherein the United States dropped its request that I be detained and the Honorable
Ronald Goodbread ordered I be released on Personal Recognizance in said matter. Judge
Goodbread did not disturb my conditions of release on case 2006-CMD-3682.

4.      Instead of being taken to the grounds of the D.C. General Hospital and processed
out after my release by Judge Goodbread on April 24, 2006, I was transported back to the
D.C. Jail, strip searched, and confined at the jail.

5.      I had to take off all of my clothes (the Department of Corrections jump suit I was
wearing). A guard looked at my genitals. I had to turn around and spread my butt
cheeks. The guard looked in my butt cheeks.

**1449-500873**

6.     On my return to the D.C. Jail on April 24, 2006 I filed a Grievance by writing a complaint and filing it in the box for such administrative Grievances. My Grievance alleged that I was being overdetained past my date of release. My Grievance also complained that I was strip searched after I had been released. My Grievance was filed on my behalf as well as on behalf of all others who were similarly situated. I signed and dated my Grievance and placed it in the box where such complaints are filed.

7.     I was released from the D.C. Jail at approximately 2:00 on the afternoon of April 25, 2006.

8.     I did not have any arrest warrants, wants, detainers or warrants after my court appearance before Judge Goodbread on April 24, 2006.

Date: May 4, 2006
City: Washington, D.C. at Superior Court
DCDC: _____
PDID: 336522
DOB: 01/30/1962

James G. Jones    5/4/06

Address: 5732 Southern Ave. S.E., Wash, D.C. 20019 (house)

1449-500874

0006- 002

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CARL BARNES, et al.           )
                              )
              Plaintiffs)
                              )
       v.                     )      Civil Action No. 06-315 (RCL)
                              )
GOVERNMENT OF THE DISTRICT OF )
COLUMBIA, et al.              )
                              )
              Defendant )

AFFIDAVIT


I, _Mickey Crawford_____, pursuant to 28 U.S.C. § 1746,

certify as true under penalty of perjury under the laws of the

United States of America that the following is true and correct:

1.    I was confined in the DC Jail beginning

_12/20/04_____ on a parole matter.


2.    On _1/19/06_____ I ~~went to Court in~~ was due to be released

~~Superior Court and the Court ordered me released~~

on Parole to a halfway House.

3.    Instead of being released from the ~~courtroom, I was~~ DC Jail, I was held

~~transported back to the DC Jail to be processed out.~~

until 1/25/06. I was not released to a halfway

house, I was released to the street.

1449-500887

4.   ~~When I arrived at the DC Jail, I was taken into the DC Jail,
and booked back in.~~

5.   ~~As part of the commitment into the DC Jail, I was strip
searched.~~

6.   I had to take off all my clothes (the Department of
Corrections jumpsuit I was wearing).  A guard looked at my
genitals.  I had to turn around and spread my butt cheeks.  The
guard looked in my butt cheeks.

7.   ~~They strip searched every single one of us who came in, not
just some of us.~~

8.   They also strip searched me on the way out when I was
released _1/26/06_ ((yes)/no).

9.   I was not released until ___1/26/06___.

10.  I did not have any other open cases or detainers, wants or
warrants as of the day I ~~went to court~~ _was due to be released_, 1/19/06.

Date: _4/19/06_
City: _Wash, DC / DC Jail_

                    Respectfully submitted,

2

1449-500888

0007- 002

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                  :
                                      . :
        Plaintiffs                    :
                                      :    Civil Action No. 06-315 (RCL)
        v.                            :
                                      :
Government of the District            :
Of Columbia,                          :
                                      . :
        Defendants.                   :

### AFFIDAVIT OF TERENCE BARFIELD

I, Terence Dareen Barfield, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      On December 15, 2005 I appeared before the Honorable Raphael Diaz in D.C. Superior Court in case 2004-FEL-7629.  Judge Diaz entered an order that I be held for 5 days as a sanction for violating my conditions of release.

2.      Accordingly, I was taken from Courtroom 301 at D.C. Superior Court and confined at the D.C. Jail on December 15, 2005.

3.      On December 21, 2005 I was transported from the D.C. Jail to D.C. Superior Court where I again appeared before Judge Diaz in case 2006-FEL-7629. At that time, Judge Diaz entered an order that I be released.

4.      After my court appearance before Judge Diaz on December 21, 2005, I was taken to the grounds of the D.C. General Hospital and but not processed out. I waited at that location for many hours then I was informed that Jail Records said that I had a hold and that Jail Records had no Release Form. After waiting many hours, I was taken from the grounds of the D.C. General Hospital back to the D.C. Jail.

**1449-500896**

5.    On my return to the D.C. Jail on December 21, 2005 I was strip searched. I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

6.    After numerous telephone calls from my family to jail records and to my attorney, I was finally released from the D.C. Jail on December 24, 2005.

7.    I was strip searched immediately prior to my release from the D.C. Jail on December 24, 2005. I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

8.    I was illegally detained from December 21, 2005 to December 24, 2005.

9.    I did not have any arrest warrants, wants, detainers or warrants as of December 21, 2005.

Date: _5-4-06_
City: _Washington, DC_

Respectfully submitted,

_Terence Barfield_
Terence Barfield

PDID: 514824
DCDC: 289739
DOB: 02/26/1981
SSN: _____
Address: _1322 Congress St SE #8_
_20020 Wash, DC_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                          :
                                              :
        Plaintiffs                            :
                                              :        Civil Action No. 06-315 (RCL)
              v.                              :
                                              :
Government of the District                    :
Of Columbia,                                  :
                                              :
        Defendant.                            :

## AFFIDAVIT OF JUDITH JAMISON

I, Judith Jamison, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    On January 18, 2006 I was arrested and taken into custody in Washington, D.C. by members of the Metropolitan Police Department pursuant to a warrant issued in case CR05-460 in the United States District Court for the District of Columbia.

2.    I was taken into custody on Wednesday, January 18, 2006 and confined at the D.C. Central Cellblock until Thursday, January 19, 2006 when I was transported to the Superior Court for the District of Columbia. I was held in the H. Carl Moultrie I courthouse all day but did not appear before a judge, magistrate judge or any judicial officer, and I was transported to the D.C. Jail late in the afternoon.

4.    On Friday, January 20, 2006 I was transported from the D.C. Jail to the United States District Court for the District of Columbia where I appeared before the Honorable Magistrate Judge Deborah Robinson for an Initial Hearing in case CR05-460. Magistrate Judge Robinson entered an order that I be released on Personal Recognizance.

5.    I was not immediately released after my Initial Hearing before Magistrate Judge Robinson.

**1449-500907**

0009- 001

6.    Instead, on Friday, January 20, 2006 I was transported from the H. Barrett Prettyman courthouse to the D.C. Jail. I was not transported to the D.C. General Hospital facility to be processed out.

7.    I was released from the D.C. Jail on Saturday, January 21, 2006.

8.    I was strip searched prior to my initial entry into Central Cellblock on January 18, 2006, strip searched on my return from D.C. Superior Court to the D.C. Jail on January 19, 2006, strip searched on my return from United States District Court on January 20, 2006 and strip searched prior to my release from the D.C. Jail on January 21, 2006.

9.    During each of the aforementioned strip searches, I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

10.    I did not have any arrest warrants, wants, detainers or warrants as of January 20, 2006.

Date: ~~April~~ *May* *13*, 2006
City: Washington, D.C.
DOB: 9/25/43
SSN:
DCDC: 308-097
PDID: 581522

Respectfully submitted,

*Judith Jamison*
Judith Jamison

*Janetta Smith*
Witness

1449-500908

0009- 002

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,              :

                       :

    Plaintiffs             :

                       :

    v.                   :        Civil Action No. 06-315 (RCL)

                       :

Government of the District   :

    Of Columbia,          :

                       :

    Defendant.          :

## AFFIDAVIT OF ~~JOSEPH JENKINS~~ *Joe Jarrell*

I, ~~Joseph Jarrell~~ *Joe Jarrell* pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    On __1/19/06__ I entered into an agreement with a sanctions based drug treatment program known as the Superior Court Drug Treatment Intervention Program (SCDIP) in connection with case __2005 CMD 12643__ in the Superior Court of the District of Columbia.

2.    On January 26, 2006 the Honorable Michael Rankin entered an order that I suffer a sanction of 5 days in jail due to an infraction I incurred pursuant to my SCDIP Agreement. Judge Rankin also entered an order that I enter and complete an inpatient drug treatment program as directed by SCDIP and that I be placed into said inpatient drug treatment program directly for the District of Columbia Central Detention Facility (DC Jail), i.e., bed to bed.

3.    On February 1, 2006 I completed serving the 5 day sanction imposed by Judge Rankin. SCDIP had secured my admission into an inpatient drug treatment program known as Community Action Group. On the afternoon of February 1, 2006 Melvin Howard, Transportation Coordinator for CAG arrived at the D.C. Jail to transport me to their program. I was taken from my cell to R&D to be processed out but the D.C. Jail Records Office would not authorize my release as their records indicated that no release order had been received from Superior Court. I waited in R&D from the afternoon until 3:00 a.m. when I was returned to a cell

4.    It is my understanding from conversations with Mr. Howard that he made a second attempt at picking me up from the D.C. Jail on February 17, 2006 and that the D.C. Jail Records Office refused to release me. And it is my understanding from conversations with Mr. Howard that several subsequent attempts were made through

1449-500930

0010- 001

telephone calls by Mr. Howard to D.C. Jail Records to secure my release from the D.C. Jail to their inpatient drug treatment program but my release was denied.

5.      I contacted my attorney, Joel Davidson, and my SCDIP casemanager. I was transported from the D.C. Jail to the Superior Court for the District of Columbia on February 22, 2006 to appear before the Honorable Michael Rankin. Judge Rankin expressed his frustration and concern that I had not been released to the inpatient program at CAG. Accordingly, Judge Rankin entered an order that I be released from the D.C. Jail immediately and that I report to CAG by 9:00 a.m. the following day, February 23, for admission into their drug treatment program.

6.      I was not taken from Superior Court to the release facility on the grounds of the D.C. General Hospital on February 22, 2006 as ordered by Judge Rankin. Rather, I was taken back to the D.C. Jail and incarcerated.

7.      I was released from the D.C. Jail on February 24, 2006.

8.      I had no open cases, warrants, detainers or other holds on February 1, 2006 such that I was illegally detained at the DC Jail from February 1, 2006 to February 24, 2006.

9.      I was strip searched during my illegal detention from February 1, 2006 to February 24, 2006. I was strip searched after Judge Rankin ordered my immediate release on February 22, 2006 and I was strip searched prior to my release on February 24, 2006. During each strip search, I had to take off all of my clothes. A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

10.     My DCDC number is 308172, my Social Security Number is _____ ___ ____ and my date of birth is __3/9/62_____.

        Done this 22 day of April, 2006 at D.C. Superior Court, 500 Indiana Avenue, NW, Washington, DC.

Joseph Jerrell            Joe Jerrell

Ralph Perkins
Witness

1449-500931

0010- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                                    :
                                                        :
        Plaintiffs                                      :
                                                        :        Civil Action No. 06-315 (RCL)
                v.                                       :
                                                        :
Government of the District                              :
Of Columbia,                                            :
                                                        :
        Defendant.                                      :

_____

## AFFIDAVIT OF ROBERT YOUNG

        I, Robert Young, pursuant to 28 U.S.C. 1746 certify as true under penalty of
perjury under the laws of the United States of America that the following is true and
correct:

1.      On February 3, 2006 I was arrested and appeared before the Honorable Magistrate
Judge Pamela Diaz in the Superior Court for the District of Columbia for a Presentment
Hearing in case 2006-CF2-2109. Judge Diaz entered an order releasing me on Personal
Recognizance and I was so released.

2.      On March 10, 2006 I was rearrested and appeared before the Honorable
Magistrate Judge Aida Melendez in the Superior Court for the District of Columbia for
Arraignment in case 2006-CMD-4719. Judge Melendez ordered that I be held for 5
business days pursuant to D.C. Code 23-1322(a)(1) (A) and I was stepped back to the
District of Columbia Central Detention Facility.

3.      On March 17, 2006 a Preventive Detention Hearing was held in case 2006-CMD-
4719 wherein the United States dropped its request that I be detained and the Honorable
Magistrate Judge Ronald Goodbread ordered I be released on Personal Recognizance in
said matter. Judge Goodbread did not disturb my conditions of release on case 2006-
CF2-2109.

4.      Instead of being taken to the grounds of the D.C. General Hospital and processed
out, I was transported back to the D.C. Jail and confined at the jail.

5.      My attorney, Anna VanCleave of the Public Defender Service, made telephone
calls to the D.C. Jail Records office regarding my continued incarceration and was
informed that Jail Records had no record of an order of release in case 2006-CF2-2109.
Ms. VanCleave was further informed that the D.C. Jail would continue to hold me until a
release order was obtained in case 2006-CF2-2109 (although no order of detention was
ever entered in 2006-CF2-2109).

**1449-500963**

0011- 001

6.    On March 28, 2006 Ms. VanCleave filed an entirely superfluous motion to the Honorable John Mott that the Court enter an order releasing me in case 2006-CF2-2109 and that a copy of said order be faxed to D.C. Jail Records Office. Judge Mott granted this relief.

7.    I was released from the D.C. Jail on March 28, 2006.

8.    I was illegally incarcerated at the D.C. Jail for eleven days, from March 17, 2006 to March 28, 2006.

9.    After Judge Goodbread ordered my release in case 2006-CMD-4719 on March 17, 2006 I was not taken to D.C. General Hospital facility to be processed out, rather I was taken back to the D.C. Jail and strip searched.

9.    I was also strip searched prior to my release from the D.C. Jail on March 28, 2006.

10.    On each occasion, I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

11.    I did not have any arrest warrants, wants, detainers or warrants as of March 17, 2006.

Date: April 22, 2006
City: Washington, D.C. at Superior Court
DCDC: 193131
PDID: 298341
DOB: 6/22/60

Robert Young

Witness

1449-500964

0011- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
        Plaintiffs                      :
                                        :        Civil Action No. 06-315 (RCL)
            v.                          :
                                        :
Government of the District :
Of Columbia,                            :
                                        :
        Defendants.            :

## AFFIDAVIT OF MARCELLOUS SUMMERS

I, Marcellous Summers, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    On Thursday, February 2, 2006 I was presented in D.C. Superior Court in case 2006-FUG-311 as a fugitive from state of Maryland.  I waived my right to an extradition hearing and a judicial officer entered an order that I be held for 3 business days for the demanding jurisdiction to pick me up from the District of Columbia Central Detention Facility.

2.    Accordingly, I was taken from the courtroom at D.C. Superior Court and confined at the D.C. Jail on February 2, 2006.

3.    On Tuesday, February 7, 2006 I was transported from the D.C. Jail to D.C. Superior Court but I did not appear before a judicial officer.  I was returned to the D.C. Jail.

**1449-500993**

0012- 001

4.    An order of release was entered on February 7, 2006 in my case.

5.    I was released from the D.C. Jail on February 13, 2006.

6.    I was illegally detained from February 7, 2006 to February 13, 2006.

7.    On my return to the D.C. Jail from D.C. Superior Court on February 7, 2006 I was not taken to the grounds of D.C. General Hospital and processed out. Rather, I was taken back to the D.C. Jail and strip searched.

8.    ~~I was also strip searched prior to my release on February 13, 2006.~~ MS

9.    I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

10.    I did not have any arrest warrants, wants, detainers or warrants as of February 7, 2006.

Date: *May 10, 2006*
City: _____
DCDC: _____
DOB: 3/27/1976

Respectfully submitted,

*Marcellous Summers*
Marcellous Summers

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
        Plaintiffs                      :
                                        :       Civil Action No. 06-315 (RCL)
        v.                              :
                                        :
Government of the District              :
Of Columbia,                            :
                                        :
        Defendant.                      :

## AFFIDAVIT OF ANTONIO HARRIS

        I, Antonio Harris, pursuant to 28 U.S.C. 1746 certify as true under penalty of
perjury under the laws of the United States of America that the following is true and
correct:

1.      On January 6, 2006 I appeared before the Honorable Ann O'Reagan Keary in the
Superior Court for the District of Columbia in case 2005-CMD-5662 and entered a guilty
plea. Judge Keary entered an order sentencing me to 30 days in jail with credit for time
served in that case. At that time, I also entered a guilty plea in case 2005-CMD-13645
and Judge Keary suspended execution of sentence and imposed a term of probation. I
was stepped back to the District of Columbia Central Detention Facility.

2.      By the time of my sentencing on January 6, 2006 in case 2005-CMD-5662, I had
already served 30 days in jail in that case such that I should have been released
immediately. I was held in the jail on a $1,000 bond from 8/19/05 to 8/26/05. I served a
Drug Court sanction at the jail followed by detention at the jail awaiting placement in an
inpatient drug treatment program from 10/18/05 to 11/1/05. Lastly, I was held without
bond at the jail from 12/31/05 to 1/6/06.

3.      Instead of being taken to the grounds of the D.C. General Hospital and processed
out after my sentencing on January 6, 2006, I was transported back to the D.C. Jail and
confined at the jail.

4.      My attorney, Nancy Allen, made telephone calls to the chambers of Judge Keary
regarding my continued incarceration. On January 26, 2006 Judge Keary entered release
orders in cases 2005-CMD-5663 and 2005-CMD-13645.

5.      I was released from the D.C. Jail on January 26, 2006.   *28 A.H.*

6.      I was illegally incarcerated at the D.C. Jail for 20 days, from January 6, 2006 to
January 26, 2006.   *22 A.H.*
*28 A.H.*

1449-501001

0013- 001

7.    After Judge Keary sentenced me on January 6, 2006  I was not taken to D.C. General Hospital facility to be processed out, rather I was taken back to the D.C. Jail and strip searched.

8.    I had to take off all of my clothes (the Department of Corrections jump suit I was wearing).  A guard looked at my genitals.  I had to turn around and spread my butt cheeks.  The guard looked in my butt cheeks.

9.    I did not have any arrest warrants, wants, detainers or warrants as of January 6, 2006.

Date: May 13, 2006
City: Washington, D.C. at the DC Jail
DCDC: 306319
PDID: 423825
DOB: 1/25/67


Antonio Harris


Witness

1449-501002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                        :
                                            :
        Plaintiffs                          :
                                            :        Civil Action No. 06-315 (RCL)
            v.                              :
                                            :
Government of the District                  :
Of Columbia,                                :
                                            :
        Defendant.                          :

## AFFIDAVIT OF QUENTA ENNIS

        I, Quenta Ennis, pursuant to 28 U.S.C. 1746 certify as true under penalty of
perjury under the laws of the United States of America that the following is true and
correct:

1.      On October 31, 2005 I appeared before the Honorable Jeanette Clark in the
Superior Court for the District of Columbia in case 2005-CMD-8957 and entered a guilty
plea.  Judge Clark entered an order sentencing me to Time Served in said matter.

2.      Also, on October 31, 2005 I was being held without bond in case 2004-FEL-2351.
My attorney, Charles Daum, filed a motion to amend my conditions of release and on
October 31, 2005 the Honorable Harold Cushenberry held a Bond Review Hearing and
entered an order releasing me on Personal Recognizance in case 2004-FEL-2351..

3.      Instead of being taken to the grounds of the D.C. General Hospital and processed
out after my sentencing and bond review hearings on October 31, 2005,  I was
transported back to the D.C. Jail and confined at the jail.

4.      I was released from the D.C. Jail on November 4, 2005.

5.      I was illegally incarcerated at the D.C. Jail from October 31, 2005 to November 4,
2005.

6.      After Judge Clark sentenced me to time served and Judge Cushenberry released
me on Personal Recognizance on October 31, 2005  I was not taken to D.C. General
Hospital facility to be processed out, rather I was taken back to the D.C. Jail and strip
searched.

7.      I was again strip searched immediately prior to my release on November 4, 2005.

1449-501003

8.    In both instances on October 31 and November 4, 2005, I had to take off all of my
clothes (the Department of Corrections jump suit I was wearing). A guard looked at my
genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt
cheeks. I had to open my mouth. A guard looked in my mouth. I had to stand naked and
a guard visually examined my entire body, front and back.

9.    I did not have any arrest warrants, wants, detainers or holds of any kind after my
court appearances on October 31, 2005.

Date: May 21, 2006
City: Washington, D.C. at the DC Jail
DCDC: 294987
PDID: 497330
DOB: 5/19/80

_Quenta Ennis_
Quenta Ennis

_Ralph Robinson_
Witness

**1449-501004**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                            :

    Plaintiffs                             :

            v.                     :          Civil Action No. 06-315 (RCL)

Government of the District                     :
Of Columbia,                                   :

    Defendant                              :

_____

### Affidavit of Anthony Howe

    I Anthony Howe, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    I was arrested and released on Personal Recognizance on January 2, 2006 in case 2006-CMD-8 in the Superior Court for the District of Columbia.

2.    On January 12, 2006 I was arrested again and held without bond for 5days in case 2006-CMD-394 pending a Detention Hearing in that matter.

3.    On January 18, 2006 the Honorable Ronald Goodbread held a Detention Hearing in case 2006-CMD-394 and released me on Personal Recognizance in said matter. Judge Goodbread did not disturb my release conditions in case 2006-CMD-8 such that I remained on Personal Recognizance in that matter.

4.    After my court appearance and release on Personal Recognizance on January 18, 2006 I was not taken from Superior Court to the grounds of the D.C. General Hospital and processed out. Rather, I was held at D.C. General until late in the evening then brought to the D.C. Jail where I was strip searched and incarcerated.

1449-501008

0016- 001

5.  During the strip search on January 18, 2006 I was forced to remove all of my clothing (an orange DOC issued jail jumpsuit) and stand naked before a DOC officer. I was forced to lift my genitals so the DOC officer could look under my genitals. I was forced to open my mouth so the DOC guard could look inside of my mouth. I was forced to lift my butt cheeks and squat so the DOC guard could examine my butt.

6.  I was detained at the D.C. Jail until my release from the jail at approximately 7:00 p.m. on January 20, 2006.

7.  I was illegally detained at the D.C. Jail for 2 days, from January 18, 2006 to January 20, 2006.

8.  I had no arrest warrant, detainers, wants or holds of any kind after my appearance before Judge Goodbread on January 18, 2006.

_5/22/06_
Date

Anthony Howe

City: Washington, DC
DCDC: _197488_
PDID 322623
DOB: 10/14/55
SSN: _____

1449-501009

0016- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                         :
                                             :
        Plaintiffs                           :
                                             :        Civil Action No. 06-315 (RCL)
        v.                                   :
                                             :
Government of the District                   :
Of Columbia,                                 :
                                             :
        Defendants.                          :

## AFFIDAVIT OF PERCIVAL PENDERGRASS

I, Percival Pendergrass, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.     On August 31, 2005 I was sentenced to serve 45 days in jail, consecutive to any other sentence, in case M-3197-04 in the Superior Court of the District of Columbia.

2.     The Parole Board also imposed a one month term of incarceration for the parole violation. I was confined at the D.C. Jail on September 19, 2005 and transferred by the United States Bureau of Prisons to Big Sandy, Kentucky until completion of sentence on November 3, 2005.

3.     On said date, I was released by the Bureau of Prisons to a detainer issued by the District of Columbia Department of Corrections in connection with the sentence of 45 days imposed in case M-3197-04.

4.     I reentered the District of Columbia Central Detention Facility on November 14, 2005.

5.     I was released from said facility on November 23, 2005 after the intercession of a Corrections Officer, Corporal Grimes, who noted the overdetention and took immediate action to have me released.

**1449-500719**

6.     My release date was November 3, 2005. However, I was released on November 23, 2005.

7.     As part of my commitment and entry into the DC Jail on or about November 14, 2005, I was strip searched.

8.     As part of my release from the DC Jail on November 23, 2005, I was strip searched.

9.     I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

10.     I did not have any other open cases or valid detainers, wants, or warrants as of November 3, 2005.

Date: _____2/25/06_____
City: _____Washington, DC_____
DCDC: 232947
PDID: 396324
DOB: 2/23/54

Respectfully submitted,

*Percival Pendergrass*
Percival Pendergrass

1449-500720

0017- 002

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                     :
                                         :
    Plaintiffs                           :
                                         :   Civil Action No. 06-315 (RCL)
           v.                       :
                                         :
Government of the District :
Of Columbia,                             :
                                         :
    Defendants.            :

## AFFIDAVIT OF DENARD HAWKINS

I, Dernard Hawkins, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      On November 30, 2005 the Honorable John Bayly issued a Warrant for my arrest for failing to appear for a hearing to Show Cause why my probation should not be revoked in case 2002 FEL 1451.

2.      On February 15, 2006 Judge Bayly entered an Order quashing said Arrest Warrant and vacating said Order to Show Cause in case 2002 FEL 1451.

3.      I was detained at the Alexandria, Virginia, Detention Center on February 15, 2006. Instead of being released on February 15, 2006 I was taken by the US Marshal's Service from the Alexandria Jail to the D.C. Jail and held in confinement at the DC Jail from February 15, 2006 until my release on February 22, 2006.

4.    I was illegally detained at the DC Jail by the DC Department of Corrections from February 15, 2006 to February 22, 2006.

5.    On my return to the DC Jail on February 15, 2006 I was strip searched.

8.    I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

9.    I did not have any open cases, arrest warrants, wants, detainers or warrants as of February 15, 2005.

Date: _3/22/06_

City: _Washington)C_

DCDC: 281828

PDID: 446427

DOB:7/18/66

Respectfully submitted,

*Dernard Hawkins Sr*

Dernard Hawkins

1449-500585

0018- 002

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Carl Barnes, et al., | : |
| | : |
|    Plaintiffs | : |
| | : |
| v. | :    **Civil Action No. 06-315 (RCL)** |
| | : |
| Government of the District | : |
|    Of Columbia, | : |
| | : |
|    Defendant. | : |

## AFFIDAVIT OF JEANETTE GRAY

I, Jeanette Gray, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    I entered a plea of guilty to one count of Bail Reform Act violation in case 2004CMD 8853, one count of Sexual Solicitation in case 2005CMD8426 and one count of sexual Solicitation in case 2005CMD8471 on February 9, 2006 in the Superior Court for the District of Columbia. In exchange for my guilty pleas, the government agreed to dismiss cases 2006CMD1587 and 2006CMD1524 entirely.

2.    On February 23, 2006 the Honorable Ann O'Reagan Keary entered a sentence of 5 days in jail, consecutive, in case 2004CMD8853 and a sentence of 5 days in jail, consecutive, in case 2005CMD8426. And Judge Keary entered an order sentencing me to 180 days in jail, execution of sentence suspended as to all and placed me on probation for one year with the condition that I enter and complete an inpatient drug treatment program as directed by Court Services Offender Supervision Agency (CSOSA) in case 2005CMD8471 and that I be placed into said inpatient drug treatment program directly for the District of Columbia Central Detention Facility (DC Jail), i.e., bed to bed. Lastly, Judge Keary ordered that I be held at the DC Jail until CSOSA placed me into an inpatient drug treatment program.

3.    On March 20, 2006 Correctional Officers as well as personnel from CSOSA and Safe Haven informed me that on or about said date CSOSA secured my admission into an inpatient drug treatment program known as Safe Haven Outreach Program (Safe Haven) and that personnel from Safe Haven contacted the DC Jail Records office by telephone to arrange for my transfer from the DC Jail to Safe Haven as ordered by Judge Keary and arranged by CSOSA. I was further informed that DC Jail Records would not authorize my release as their records indicated that cases 2006CMD1524 and 2006CMD1587 were still open and that I was being held without bond in said cases.

1449-500839

4.      I contacted my attorney and my CSOSA/Probation Officer and I was transferred from the DC Jail to Safe Haven on March 31, 2006 by Maurice Harrison, transportation coordinator for Safe Haven. I am currently in the Safe Haven inpatient program.

5.      I had no open cases, warrants, detainers or other holds on March 20, 2006 such that I was illegally detained at the DC Jail from March 20, 2006 to March 31, 2006.

6.      ~~I was strip searched during my illegal detention from March 20, 2006 to March 31, 2006 and I was strip searched prior to my release on March 31, 2006. I had to take off all of my clothes. A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.~~

7.      My DCDC number is 193814, my Social Security Number is                     and my date of birth is October 12, 1957.

        Done this 19 day of April, 2006 at Safe Haven, 1140 N. Capitol Street, NW Washington, DC.

                                        _Jeanette Gray_
                                        Jeanette Gray


                        _____
                        Witness

1449-500840

0019- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                          :
                                              :
        Plaintiffs                            :
                                              :        Civil Action No. 06-315 (RCL)
                v.                            :
                                              :
Government of the District                    :
Of Columbia,                                  :
                                              :
        Defendant.                            :

### AFFIDAVIT OF WILLIAM BUNN

        I, William Bunn, pursuant to 28 U.S.C. 1746 certify as true under penalty of
perjury under the laws of the United States of America that the following is true and
correct:

1.      On January 24, 2006 I appeared before the Honorable Raphael Diaz in the
Superior Court for the District of Columbia for a Bench Warrant Return Hearing in case
2005-FEL-6721. Judge Diaz entered an order that I be held without bond in said case. I
was incarcerated at the D.C. Jail.

2.      On February 6, 2006 Judge Diaz entered an order that I be held on a $500.00 cash
or surety bond in case 2005-FEL-6721. My family posted said $500.00 bond on
February 13, 2006.

3.      Instead of being taken to the grounds of the D.C. General Hospital and processed
out, I remained incarcerated at the D.C. Jail.

4.      I was released from the D.C. Jail on February _15_, 2006. *at 9:00 pm*

5.      I was illegally incarcerated at the D.C. Jail for _2_ days, from February 13, 2006
to February _15_, 2006.

6.      ~~I was also strip searched prior to my release from the D.C. Jail on February~~
~~_____, 2006.~~

7.      ~~I had to take off all of my clothes (the Department of Corrections jump suit I was~~
~~wearing). A guard looked at my genitals. I had to turn around and spread my butt~~
~~cheeks. The guard looked in my butt cheeks.~~

8.      I did not have any arrest warrants, wants, detainers, wants, warrants, or open cases
as of February 13, 2006.

**1449-500949**

Date: April 23, 2006
City: Washington, D.C. at the D.C. Jail
DCDC: 215103
PDID:
DOB: 4/1/64
SSN:

_William Bunn_

William Bunn

_Ralph Robins_

Witness

**1449-500950**

0020- 002

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                          :
                                              :
        Plaintiffs                            :
                                              :        Civil Action No. 06-315 (RCL)
            v.                                :
                                              :
Government of the District                    :
Of Columbia,                                  :
                                              :
        Defendant.                            :

## AFFIDAVIT OF RICARDO LUZANO

        I, Ricardo Luzano, pursuant to 28 U.S.C. 1746 certify as true under penalty of
perjury under the laws of the United States of America that the following is true and
correct:

1.      On January 12, 2006 I was arrested on bench warrants issued by the Honorable
Thomas Motley in D.C. Superior Court in cases 2003-CMD-6460 and 2003-FEL-6464
for failing to appear for Show Cause Hearings in said matters. I was held without bond in
both cases.

2.      On February 10, 2006 I appeared before Judge Motley in the Superior Court for
the District of Columbia for Show Cause Hearings in cases 2003-CMD-6460 and 2003-
FEL-6464. Judge Motley revoked my probation in both cases and entered a resentence of
50 days in jail, consecutive, in case 2003-CMD-6460 and a resentence of 70 days in jail
in case 2003-FEL-6464.

3.      Accordingly, I had to serve a total of 120 days in jail in said matters and, with
credit for time served from the sentence of Judge Motley imposed on July 15, 2004, I
should have been released from jail on May 3, 2006.

4.      I was not released from the DC Jail on May 3, 2006. I was released from the D.C.
Jail on May 12, 2006.

5.      I was illegally incarcerated at the D.C. Jail for 9 days, from May 3, 2006 to May
12, 2006.

6.      I did not have any arrest warrants, wants, detainers or holds of any kind as of May
3, 2006.

Date: May 22, 2006
City: Washington, D.C.

1449-501010

DCDC: 299543
PDID: 542476
DOB: 6/24/83

Ricardo Luzano

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Carl A. Barnes, et al.<br>on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Government of the District of<br>Columbia,<br><br>Defendant | Case Number 06-315(RCL) |

## DECLARATION OF BARRETT S. LITT

I, **BARRETT S. LITT**, declare:

1.    I am an attorney duly licensed to practice law in the State of California. I am admitted to the United States Supreme Court, and my application to appear *pro haec vice* in this district for this case will be submitted. (I was appointed class counsel *pro haec vice* in the related case of Bynum v. District of Columbia.). The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify to those facts in a court of law.

1

1449-501016

0023- 001

2.    This declaration is submitted in support of plaintiffs' Motion
for Class Certification, and specifically will address the issue of adequacy of
representation, my experience, and my approach to cases of this type, of
which I have handled several.

## GENERAL QUALIFICATIONS

3.    I am an attorney duly licensed to practice in the State of
California and in the Central District of California. I graduated from the
University of California at Berkeley in 1966 and from UCLA Law School in
1969. For the first approximately ten years of my practice, I focused
primarily in the area of criminal defense at the trial and appellate levels,
mostly in the federal courts. In that capacity, I handled hundreds of matters,
tried many cases ranging from immigration offenses to murders, and handled
numerous appeals. For the past approximately 25 years, I, as well as the
firms in which I have been a principal, have focused primarily on complex
civil litigation in the areas of constitutional law, civil rights law, class action
litigation, and complex multi-party litigation.

4.    I have been a partner in the law firm of Litt, Estuar, Harrison,
Miller and Kitson for the past approximately two years. For the previous
seven years I was the principal in the law firm of Litt & Associates, Inc., in
which the partners in my current firm were trained. From September 1,

2

1449-501017

0023- 002

1991 to May 1, 1997, when my then partner left the law firm to become

Deputy General Counsel for Civil Rights at HUD, I was a partner at the firm

of Litt & Marquez. And for the seven years prior to that, I was a partner in

the firm of Litt & Stormer, Inc.

    5.     My current and former firms all operated for the specific

purpose of developing and maintaining a civil rights and public interest law

practice which operates in the private sector on the basis of self-generated

fee awards and other recoveries. Litt & Stormer received the Pro Bono Firm

of the Year Award from Public Counsel in 1987 in recognition of its public

interest and civil rights work. Litt & Marquez received an award from the

NAACP Legal Defense Fund in July, 1992, as civil rights firm of the year in

recognition of its civil rights work. I received an award from UCLA School

of Law as its public interest alumnus of the year in 1995. I have both spoken

and written on the subject of civil rights training. I recently published an

article entitled "Class Certification in Police/ Law Enforcement Cases" in

*Civil Rights Litigation and Attorney's Fee Annual Handbook*, Vol. 18, Ch. 3

(West Publishing 2002). In January of 2006, the Los Angeles Lawyer (the

publication of the Los Angeles County Bar Association) published an article

I authoredentitled "Using Civil Code Section 52.1 To Certify Money

Damages Classes For Violation Of Civil Rights," an article addressing the

3

use of California's general civil rights statute's minimum damage provision in the context of civil rights class actions.

6.      Civil rights law enforcement class actions in which I am or have been the, or one of the, lead counsel, going back to the late 1980's, include:

❖ *Williams v. Block*, Case No. CV-97-03826-CW (Central District of California) and related cases (a series of cases county jail overdetention and strip search cases, settled for $27 Million and a complete revamp of jail procedures);

❖ *Wisely v. State of California*, Case No.: BC 227373 (Superior Court of California)(settled injunctive relief class action regarding the policy and practice of the State Department of Corrections to randomly subject visitors to the prisons to intrusive body scans, and to subject those who "failed" the scan to a visual body search; dismissal of damages on state immunity grounds on appeal);

❖ *Bynum v. District of Columbia*, Case No. 02-956 (RCL) (D.D.C.)( class action against the District of Columbia for overdetentions and blanket strip searches of persons ordered released from custody; final approval of $12,000,000 settlement occurred January 2006);

4

1449-501019

0023- 004

❖ *Johnson v. District of Columbia*, Case No. 02-2364 (RMC)

(D.D.C.) (pending class action against the District of Columbia and

United States Marshals for blanket strip searches of arrestees

without reasonable suspicion and not involved in drug or violent

activity; eight figure settlement agreed to pending final Justice

Department approval of settlement documents);

❖ *Powell v. Barrett*, Civil Case No. 1:04-cv-1100 (N.D.

Ga.)(RWS)(pending class action against the Sheriff of Fulton

County, Fulton County, and the City of Atlanta, Georgia, for

overdetentions and blanket strip searches of arrestees and persons

ordered released from custody);

❖ *Jones v. Murphy*, Case No. CCB 05 CV 1287 (D.

Maryland)(pending class action challenging overdetentions and

illegal strip searches in Central Booking in Baltimore, MD);

❖ *Craft v. County of San Bernardino*, No. EDCV05-0359 SGL (C.D.

Calif.) (pending class action for illegal strip searches of arrestees, of

those entitled to immediate release, and for lack of privacy in

conduct of searches);

5

❖ *Davis v. County of Los Angeles*, No.: CV 04-8251 AHM (MANx)

(C.D. Calif.) (pending class action for failure to adequately address

spread of MRSA in the Los Angeles County jail).

7.    Other civil rights class actions in which I was the, or one of the,

lead counsel, going back to the late 1980's, include:

❖ *Ofoma v. Biggers*, Case No.: 715400 (Complex Litigation Panel)

(Orange County Superior Court)(family discrimination class action

settled in 1996 for damages for the individual plaintiffs and the class

of residents, a consent decree and an award of attorney's fees);

❖ *People of the State of California v. Highland Federal Savings and*

*Loan*, Case No.: CA 718 828 (Los Angeles Superior Court)(class

action filed on behalf of the People of the State of California and a

class of tenants residing in several slum buildings located in Los

Angeles for financing practices encouraging and perpetuating slum

conditions, settled for $3.165 million after decision in *People v.*

*Highland*, 14 Cal.App.4th 1692, 19 Cal. Rptr. 555 (1993)

established potential liability for lenders);

❖ *Hernandez v. Lee*, No. BC 084 011 (Los Angeles Superior Court)(a

class action on behalf of tenants of numerous buildings for slum

conditions settled in 1998 for $1,090,000);

6

1449-501021

0023- 006

❖ *Mould v. Investments Concept, Inc.*, Case No.: CA 001 201 (Los
   Angeles Superior Court)(race discrimination class action on behalf
   of a class of applicants and potential housing applicants, settled in
   1992 for a total of $850,000 for the class and a comprehensive
   consent decree regarding the defendants' discriminatory policies
   and practices);

❖ *California Federation of Daycare Association v. Mission Insurance
   Co.*, Case No.: CA 000 945 (Los Angeles Superior Court)(class
   action on behalf of several thousand family daycare providers
   whose daycare insurance policies were canceled mid-term or were
   not renewed by Mission Insurance Company, settled in 1980's for
   reinstatement of policies and attorney's fees; brought at request of
   Public Counsel).

8.       Individual or multi-plaintiff civil rights cases in which I am or
have been the, or one of the, lead counsel, going back to the late 1980's,
include:

❖ *McClure v. City of Los Angeles*, No. CV-92-2776-E (C.D. Cal.)(fair
   housing and equal protection case against City of Long Beach and
   its agents for preventing six group homes for Alzheimer's victims
   from opening; jury verdict of $22.5 Million (reduced on remittitur to

7

$13,826,832) plus approximately $10,000,000 in attorney's fees and

costs) (appeal pending);

❖ *U.S. v. Hovsepian*, 359 F.3d 1144, 1147 (9th Cir. 2004)(en banc)

(successful action to naturalize individuals previously convicted of

conspiracy to bomb Turkish consulate in Philadelphia), aff'd after

remand, 422 F.3d 883 (9/6/05);

❖ *Walker v. City of Lakewood*, 263 F.3d 1005 (9th Cir. 2001)

(reversing district court decision dismissing fair housing

organization's claim against city for retaliation for supporting

tenants suing landlord; case subsequently settled for structural relief,

damages and attorney's fees);

❖ *Hospital and Service Employees Union, SEIU Local 399, AFL-CIO

v. City of Los Angeles* (Los Angeles Superior Court) (a settlement in

1993 of $2.35 million against the Los Angeles Police Department

for injuries to 148 demonstrators at Century City organized by the

Justice for Janitors campaign of SEIU);

❖ *Rainey v. County of Ventura*, Case No. 96 4492 LGB (C.D.

Calif.)(action against County of Ventura for race discrimination on

behalf of 12 police officers, settled for damages, structural relief and

attorney's fees);

8.

1449-501023

0023- 008

❖ *Lawson v. City of Los Angeles*, Case No.: BC 031 232 (Los Angeles

Superior Court)(lawsuit filed in 1991 on behalf of individuals who

had been subject to what we alleged were unlawful use of force

practices by the Los Angeles Police Department's Canine Unit,

settled in 1995 for $3.6 million and comprehensive structural relief);

❖ *Tipton-Whittingham v. City of Los Angeles*, Case No.: CV-94-3240

(TH)(C.D. Cal.)(sex discrimination and harassment suit against the

Los Angeles Police Department, involving over 25 individual

officers, as a result of which the Department has already completely

revamped its anti-discrimination policies and procedures; damages

claims settled for $4.85 Million in 2004 in addition to separate fee

award of nearly $2 Million in 2000 for injunctive relief, resulting in

decision in *Tipton-Whittingham v. City of Los Angeles* (2004) 34

Cal.4th 604, in which the California Supreme Court upheld catalyst

fees under California law);

❖ *Tavelman v. City of Huntington Park* (individual employment

discrimination case against the City on behalf of a Jewish police

officer who had been subjected to a campaign of religious

harassment, which was settled in mi-'90's for $350,000);

9

1449-501024

0023- 009

❖ *Hampton v. NRG* (racial harassment in employment claim; jury verdict of $1,000,000 for two former employees, plus award of attorney's fees and costs; settled in mid-'90's while on appeal);

❖ *Ware v. Brotman Medical Center* (Los Angeles Superior Court) (1993 $2.5 million jury verdict against hospital for removal of hospital privileges of black doctor; settled for $1.75 million);

❖ *Mathis v. PG&E* (1991 $2 million verdict against PG&E for barring contract employee from Diablo Canyon Nuclear Power Plant; reversed by the Ninth Circuit);

❖ *Zuniga v. Los Angeles Housing Authority* (1995) 41 Cal.App.4th 2 (holding that the Housing Authority could be held responsible for injuries to tenants after the Housing Authority was put on notice that tenants were being victimized on the premises and took no reasonable measures to prevent the injury; case settled for $1,040,000);

❖ *Macias v. State of California* (Los Angeles Superior Court) (action against the State of California and others for blinding of young man as a result of exposure to malathion spray, a portion of which was decided in *Macias v. State of California* (1994) 10 Cal.4th 844);

10

❖ *PIN v. HACLA*, Case No: CV-96-2810 RAP (RNBx)(action against the Housing Authority of the City of Los Angeles on behalf of several hundred present or former tenants for discrimination by failing to provide adequate security for isolated minorities in housing developments, settled in 1998 for $1.3 Million plus a comprehensive structural relief settlement agreement);

❖ *Melgar v. Klee* (Los Angeles Superior Court)(1988 $1.5 million jury verdict against Los Angeles Police Department for police shooting; settled for $1.45 million);

❖ *Heidy v. United States Customs Serv.*, 681 F.Supp. 1445 (C.D.Cal. 1988) (injunction against U.S. Customs Service for policies and practices of seizing materials from persons traveling from Nicaragua in violation of the First Amendment);

❖ *Hernandez v. Avol* (action on behalf of approximately 350 slum housing residents, settled in 1988 for a comprehensive injunction and $2.5 Million damages, plus a separate award of attorney's fees).

9.    As my case list demonstrates, I have been involved and successful in a wide range of complex civil rights cases, including class actions such as this.

**1449-501026**

0023- 011

10.   In the course of my work on law enforcement class actions, I have gained considerable experience in how to organize cases of this type and make them manageable. As the Court is aware from the *Bynum* litigation, there are District computerized records from which determinations regarding class membership can be made. The immediate focus of this case is to obtain meaningful court intervention since the unmonitored agreement to change the practices that were the subject of the *Bynum* litigation was apparently unsuccessful. Thus, plaintiffs contemplate filing a motion for preliminary injunction early in the litigation, and then turning to the question of compensation for those affected and long term injunctive relief to ensure that this problem does not recur.

11.   As was evidenced by the course of the *Bynum* litigation, my co-counsel, William Claiborne, and I have both the resources and the experience and expertise to prosecute this case to resolution, and to fully represent the interests of the class.

· I declare under penalty of perjury under the laws that the foregoing statements are true and correct. Executed at Los Angeles, California this 23rd day of May, 2006.

_____
Barrett S. Litt

12

1449-501027

0023- 012

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| C. Alan Powell et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Case No. 04-1100 (JOF) |
| | ) | |
| v. | ) | |
| | ) | |
| Jacqueline Barrett et al. | ) | |
| | ) | |
| Defendants | ) | |

### DECLARATION OF RICHARD A. BERK

I, Richard Berk, declare and say:

1.    I have personal knowledge of the information set forth herein and, if called upon to testify, I could and would do so as is set forth in the following paragraphs.

2.    I am currently a Professor of Statistics and Sociology at UCLA. I have appointments in both the Department of Statistics and the Department of Sociology, although all of my teaching is done in the Department of Statistics. I am also the Director of the UCLA Statistical Consulting Center, which provides technical assistance to clients in need of statistical help. These clients may be on campus or off campus.

3.    I have a B.A. Degree in psychology from Yale University and a Ph.D. in sociology from Johns Hopkins University. While in graduate school, I specialized in statistical methods and began teaching statistics part time at local colleges. I have been teaching statistics at both the undergraduate and graduate levels for 30 years. Over that time, I have published a dozen books and over 150 journal articles and book

**1449-501035**

0026- 001

chapters. My work on quantitative research methods has been recognized by the American Sociological Association through the Paul F. Lazersfeld award for contributions to research methodology. I am a fellow of the American Association for the Advancement of Science and the American Statistical Association. I have recently completed by second term on the National Research Council's Committee on Applied and Theoretical Statistics. Formerly, I was the Vice Chair of the Board of Directors of the Social Science Research Council (and sat on the board for two terms of 3 years each). Attached to this Declaration is my curriculum vitae, which provides a more comprehensive description of my background.

4.      My current research has been funded by the National Science Foundation and the Environmental Protection Agency. Both awards were for statistical applications, one for evaluating integrated assessment models used in climate research, and one for the development of new statistical tools to permit sound generalizations from environmental case studies.

5.      In my work I have often been called upon to analyze data on the conduct of government agencies to determine whether that conduct has been consistent with an articulated purpose or policy. Also, on many occasions I have been called upon to analyze data to determine whether there is evidence of discriminatory conduct, such as, for example, discrimination based on age or socio-economic status. I am also experienced in analyzing highly sensitive and confidential inmate data from law enforcement databases such as the ones that may be implicated in this case. I was until recently retained by the California Department of Corrections for whom I did various analyses based on confidential databases.

6.      I have been qualified in California and federal courts to testify as an expert in matters relating to statistical analyses on many occasions. A small sample includes the following cases: Washington and Jenkins v. United States, No. CR 91-632(A)-TJH (U.S.D.C., C.D. Cal.); Sumner Peck Ranch, Inc., et al., v. Bureau of Reclamation, et al., No. CV-F-91-048-OWW (U.S.D.C., E.D. Cal.); Henry and Lopez

**1449-501036**

0026- 002

v. United States, No. CR 94-628-CBM (C.D. Cal.); Belmontes v. Vasquez, No. CV-
89-0736-EJG-JFM (U.S.D.C., E.D. Cal.); Barajas-Flores v. United States, No. CR-93-
837 (U.S.D.C., C.D. Cal.); Lawson v. Gates, No. BC 031232(Los Angeles Superior
Court).

     7.    This declaration is prepared in support of plaintiffs' motion for class
certification regarding the overdention of inmates and strip search of arrestees and
court returns subject to immediate release.

     8.    In 2000, I was retained by counsel for plaintiffs in the class action matter
of *Williams v. County Of Los Angeles*, Case No. CV 97-03826-CW, in the Central
District of California. As background, the *Williams* class action involved three (3)
classes, which I will briefly describe below. The Overdetention Class consisted of
persons who were not released from Los Angeles County Jail within a reasonable time
after they became entitled to release. The Strip Search Class consisted of persons who
were in the custody of law enforcement and taken to Court, became entitled to release
while at the Courthouse, were remanded to the custody of the Los Angeles County
Sheriff's Department and then returned to County Jail, and were subjected to an
unlawful strip and/or visual body cavity search prior to their release. The Wrong
Warrant Class consisted of persons who were arrested based on a warrant who were
not, in fact, the person for whom the warrant was issued, and were purportedly held
without a timely determination of whether s/he was the correct arrestee, even if LASD
personnel were notified that the warrant was not for him or her.

     9.    My task in *Williams* was to analyze and process data maintained by the
County in Los Angeles Sheriff's Department (hereafter "LASD") databases necessary
to determine the Overdetention class members and the prerequisites for Strip Search
Class members (who then had to file a claim that they were in fact strip searched), the
length of overdetention for the Overdetention Class, and the identifying information to
notify and authenticate class members for both the Overdetention and Strip Search
Classes. To accomplish this task, LASD turned over all data that I concluded were

necessary to address the issues for which I was retained, which was then agreed to by the parties with the participation of the court. It was subject to an Agreement that the data be maintained in strict confidence, and not be used for any purpose other than the class claims administration in *Williams*. To further protect privacy, prior to turning the information over to me, LASD redacted the data to remove personal identifying information such as names and addresses, but providing a unique identifier such as a criminal identification number. Information to determine membership in each of the three classes was contained in (1) the LASD's mainframe database used to track jail inmates, known as the Automated Justice Information System (AJIS), (2) reports and archived data from the Sheriff's Department's CJSS computer system, (3) data transcribed from copies of hand written log pages maintained by the Sheriff, and (4) deposition testimony by Sheriff's employees who were the persons most knowledgeable regarding the aforementioned databases. *Williams* involved analysis of several hundred thousand inmate records, and resulted in class notices being mailed to approximately 300,000 class members. At the conclusion of *Williams*, all data was returned to the County Sheriffs. My colleagues and I never had the personal identifying information for class members, except just prior to class notice, when we prepared the final data for use by the Class Administrator. All the contact activity was conducted by the Class Administrator retained pursuant to an agreement of the parties to conduct class notice. (This latter occurred after settlement.).

     10.    I have subsequently acted as an expert in the cases of *Bynum v. District of Columbia* Case No. 02-956 (RCL) (D.D.C.) and *Johnson v. District of Columbia* Case No. 02-2364 (RMC) (D.D.C.). *Bynum* is a case against the District of Columbia for overdetentions and routine strip searches of persons taken to court and ordered released who nonetheless were returned to jail and subsequently strip searched prior to release. *Johnson* is a case against the District of Columbia and the United States Marshal Service, which acts as the Marshal for the District of Columbia, for the routine strip searched of minor offenders who have been arrested, regardless of

1371-502090

1449-501038

0026- 004

whether their arrest is for crimes involving drugs or violence. In those two cases, I have analyzed, or am in the process of analyzing, the computer data maintained by the relevant government entities to determine who are class members and what the nature of their injury is based on the data, e.g., for how long they were overdetained. In *Bynum*, I submitted a declaration proposing a trial plan for sampling the class for trial purposes, from which projections could be made to the class as a whole. It is my understanding that the court there accepted my proposal in concept although details had to be worked out after completion of the data review.

11. Plaintiffs' counsel has retained me in this case to provide my opinion on a plan to determine damages for the class. Since discovery has not yet occurred in this case, I am unable to rely on documents at this time. However, based on my experience acting as an expert in the similar cases in Los Angeles and Washington D.C., and as a consultant to the California Department of Corrections, I have found that it is generally the case that jails and prisons maintain computerized records for each arrestee and/or inmate, which contains detailed information regarding each inmate, usually including such information as arrest date, charges, case numbers, outcome of charges, sentence where applicable, release date and the like. I have also found that such records will contain a variety of unique identifying information such as name, birth date, address, drivers' license, social security number and the like. Although these may be written in a variety of programs, my graduate students and I have been able to put them into a uniform program and relate them, allowing them to be used to analyze the class or potential class. Assuming that Fulton County keeps such records, I believe it is highly likely that I will be able to perform a similar analysis for arrestees and inmates of the Fulton County Jail to what I have done or am doing in Los Angeles and Washington D.C.

12. The first step in my being able to analyze the data regarding the jail will be to have access to any manuals that describe the purpose or function of any databases maintained by the defendants. Based on that review, I anticipate that it will

**1371-502091**

**1449-501039**

**0026- 005**

identify the fields in any relevant databases, and describe the information contained in each field.

13.    In order to determine class membership, I will have to review such database manuals and any other documents that describe the databases, their fields or structure. From there I can preliminarily determine which fields from which databases are necessary to properly identify who has been overdetained and/or strip searched. I will also seek fields necessary for me to identify the length of overdetention for each individual. If, after reviewing the data contained in these fields, I find that more information/fields are necessary, I will contact plaintiffs' counsel to make the request. To what extent I will need data from the defendants' databases I cannot say at this point. After I have had a chance to review all the database manuals and documents, I will better be able to address that issue. I would like to have those as soon as possible so that I can provide a more informed opinion on this issue. It may be that I will require samples to make the determination of what I need. It is premature for me to say.

14.    It is not necessary for me to obtain personal information about an inmate so long as there is a unique anonymous identifier related to each inmate and, to the extent that correlation of different databases is required, such a unique identifier crosses databases. In my experience, such unique identifiers are common, often as a prisoner or inmate number. If they don't cross databases, they can be correlated by a combination of factors such as name, birth date, case numbers, drivers' license and social security number, to the extent they are available. Once I see more detailed information on the databases, I will be able to address this issue further.

15.    My tasks based on the information provided by the Fulton County Jail would be 1) to identify overdetention class members, and determine the length of overdetention and 2) to identify members of the strip search class members (or potential class members if there is an issue of whether all people in a certain category were strip-searched).

6        1371-502092

1449-501040

0026- 006

16.    Assuming that the computerized data allows analysis along the foregoing lines, I anticipate that I will also be able to easily cull out a random statistical sampling of class members that could provide the basis for drawing conclusions about the class as a whole. Its size would depend on the level of reliability sought and whether certain variables need to be addressed for different sub-groups within the sample. It is too early for me to address that issue. Normally, a sample of several hundred is sufficient to draw conclusions applicable to the class as a whole within a certain specified and highly reliable margin of error. Because I have yet to review the data, it is premature at this stage to opine as to a specific number of records or range of numbers that would constitute a statistically valid sample.

17.    It is well known and widely accepted that probability (random) sampling is desirable for three reasons. First, it provides a formal and scientifically valid vehicle for projections from a sample to the population from which it was selected. It is used for this purpose by any number of government agencies (e.g., the US Census Bureau) and commercial enterprises (e.g., major accounting firms such as Deloitte Touche). Second, it provides a formal and scientifically valid way to estimate the uncertainty in such projections. Third, probability samples pass the "sniff test" in that the selection is undertaken with procedures that are absolutely neutral with respect to the issues at hand. That is, there are no grounds for suspicion that the sample was chosen in a manner that favors any particular set of facts. Without probability sampling, all three desirable attributes are lost. Thus, it would be possible if I am so directed to choose a random sample that could be tried in court, surveyed or otherwise assessed in some fashion, and the conclusions reached projected onto the class as a whole within a certain margin of random error.

18.    To elaborate, the procedure I propose here is the following:

   a. Analyze the data available from the Fulton County Jail and any other relevant sources, and determine the method to establish the extent of

7        **1371-502093**

**1449-501041**

0026- 007

overdetentions and of strip searches and/or candidates to be strip-searched.

b. Determine the appropriate size of a random sample of people who were overdetained, and people who were strip-searched. I anticipate that the sample size would be in the low hundreds, which should be sufficient assuming a normal distribution of awards, and a reasonable and expected standard deviation. Based on these assumptions, I would expect to be able to conclude with a 95% confidence level or higher that the mean award is within a relatively small dollar value of what the mean for the population as a whole would be. I am speaking in generalities at this point due to the absence of data, and anticipate that I will be able to provide a more informed opinion once the data is available and has been analyzed. However, the confidence level within certain dollar values can only finally be determined when the trier of fact reaches it s conclusions.

c. I anticipate that the trial would occur in three phases. The first phase would be the liability phase. Assuming liability, then the second phase would be to address the damages to be awarded to the random sample. I would address the issues, and presumably any defense expert playing a similar role for the defendants. I assume there would also be other experts in other areas, such as a mental health expert or team of experts, for both sides. The jury would deliberate and reach conclusions based on the random sample. Its conclusions might or might not include the value of one day of overdetention, and the value of a strip search. It might also address certain variables, such as whether the individual was a first offender, whether the individual was charged with a crime, or the nature of the charges or other claims against the individual, as well as how these variables influence its decisions on value. Again, it is too early in the case to address these issues in the absence of the records.

**1449-501042**

0026- 008

d. The third and last phase of the trial would then address the class as a whole, the mean values for the random sample, the range of the possible deviation of the mean at different confidence levels, and the extrapolation of the damages from the random sample to the class as a whole based on these and other factors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of July, 2004, at Los Angeles, California.

Richard A. Berk

1371-502095

1449-501043

0026- 009



PLAINTIFF'S
EXHIBIT
34

## AFFIDAVIT OF TONY EDWARD SAVAGE

### IN THE CASE OF BYNUM, et al. v. DISTRICT OF COLUMBIA, 02-956 (RCL)

1.    I was first employed by the District of Columbia Department of Corrections ("DOC") on July 23, 1984.

2.    Until my termination on January 31, 2003, I had been employed by DOC as a Legal Instruments Examiner, GS-8, Step 9. I had been a Legal Instruments Examiner since 1985.

3.    During the almost 20 years that I was employed by the Department of Corrections, there has never been a policy and procedures manual for Legal Instruments Examiners such as myself, and for supervisors, to utilize in determining how to deal with the many different and complicated situations which routinely arise regarding the release of an inmate, such as situations in which an inmate is held pending multiple charges from different jurisdictions, and some but not all of the charges are dismissed while others remain pending. DOC has issued publications and conducted training on certain aspects of inmate release, such as implementation of the Sentencing Reform Amendment Act ("SRAA"), or how to enter computer data into the JACCS system, but DOC has never issued a comprehensive policy and procedures manual which instructs Legal Instruments Examiners how to deal with complicated multi-jurisdictional issues or apparently conflicting court orders or statutory provisions. These situations are handled on a case-by-case basis, based on unwritten past practice, instructions from DOC supervisors and, in the past, in consultation with legal authorities from the Courts of the District of Columbia and Agencies from other jurisdictions.

1

**1346-401158**

**1449-501067**

0028- 001

4.    After DOC received unfavorable publicity starting in 2000, DOC Director Odie Washington took steps to try to deal with the ongoing problem of erroneous inmate releases. Director Washington hired as a consultant, Charles Kim, who had been an industrial engineer with Boeing Aircraft. Mr. Kim's goal was to model DOC's inmate release program on Boeing's production line. A key component of this new procedure was that when a Legal Instruments Examiner such as myself received an inmate file from a supervisor, the actions we were to take with respect to the file were to be clearly apparent from the documents in the file. We were not allowed to exercise any discretion, to the point that in May 2002 the telephones which had always been at our desks were physically removed from our desks so that we could no longer call outside agencies to obtain information or to consult with them regarding how to handle a particular release situation.

5.    Mr. Kim had been conducting classes regarding his new procedure in conjunction with Cheryl Warner, the previous Chief of the Records Office, who had been removed from her position regarding a previous incident in which a deaf inmate had been wrongfully held at the Jail for 22 months without a conviction. Having been removed from her position as Chief of the Records Office, Ms. Warner was then hired by DOC as a consultant to work with Mr. Kim.

6.    The new system proposed by Mr. Kim did not really address many of the problem issues we had to deal with on a routine basis, because Mr. Kim's system was based upon the JACCS computer program. JACCS is a computer data entry program, not a policy and procedures program. _CEt_

-2-

1346-401159

1449-501068

0028- 002

7.    On June 10, 2002 I received for processing the file of inmate Donald J. Shields. I received Mr. Shields' file from Virginia Bowie. It was a thin file with few documents. On that date Ms. Bowie was performing the duties of both Acting Supervisor and Review Examiner. DOC policy requires each release to be signed off on both by the Legal Instruments Examiner who processed the release documents (such as myself) and by a senior level Examiner as the Review Examiner, and a final review of the Supervisor. Thus, with respect to Mr. Shields' release, Ms. Bowie was both the Review Examiner and the Supervisor who conducted the final review.

8.    When I reviewed Mr. Shields' file I noticed that although he was eligible for release for the District of Columbia charge pending against him, drinking beer in public, there was a detainer against him, which detainer had been filed by the Metro Transit Police due to an outstanding robbery warrant for him in Prince George's County.

9.    I told Ms. Bowie that Mr. Shields was not eligible for release because there was an outstanding detainer against him. Ms. Bowie told me that the Department of Corrections did not honor Metro Transit Police detainers unless they were entered into the system through the D.C. Metropolitan Police Department. I told Ms. Bowie that I did not believe that was correct; I told her that the Metro Transit Police detainer based on the outstanding Prince George's County robbery warrant should be honored. Ms. Bowie specifically ordered me to prepare release documents for Mr. Shields. She also signed off on the release documents as the Review Examiner and the Supervisor which is required to effectuate the actual release. *JS*

-3-

2

1346-401160

1449-501069

0028- 003

10.      I processed the paperwork for Mr. Shields to be released, as I had been specifically

ordered to do so by Ms. Bowie. However, since the Metro Transit Police detainer based on the

Prince George's County robbery warrant had not been cleared, I did not delete that detainer from

the JACCS system, even though Mr. Shields was to be released. Thus, notice of the detainer was

still in the JACCS system when Ms. Bowie reviewed the paperwork and signed off on the release of

Mr. Shields. The outstanding Metro Transit Police detainer was also listed in the case jacket.

11.      When I reported to work the next morning, June 11, 2002, I heard that someone had

determined that Mr. Shields had been improperly released. My regular supervisor, Benjamin Ellis,

and I went to Ms. Bowie and spoke with her. Ms. Bowie defended the release of Mr. Shields. She

said that Metro Transit Police detainers were not honored by DOC unless they were processed

through MPD. She stated that his release was proper and that she did not have to call anyone or

consult with anyone regarding the release.

12.      After this conversation with Ms. Bowie and Mr. Ellis, I went to a JACCS training

class at the Reeves Center, which class was being jointly conducted by Mr. Kim and Ms. Warner. A

number of other employees from the Records Office were also in attendance at the class. Also

present at the class was Ronald Watkins, who had worked in the Records Office as a Lead Legal

Instruments Examiner, until he was detailed to CTF in November 2001.

-4-

13.    Shortly after the class started, Valerie Emerson, the Acting Chief of the Records

Office, stated that there had been another improper release of an inmate. She stated that inmate

Donald J. Shields had been improperly released and that I was responsible for the improper release.

She stated that I should have known that DOC has honored detainers from the Metro Transit Police

since 1991. She stated that there was a memo to that effect.

14.    Mr. Watkins spoke up and asked where was the memo and how could the Examiners

be expected to remember everything, because there was no policy and procedures manual. Mr.

Watkins said that management was responsible for the series of improper releases. At that point Ms.

Emerson said that Ms. Bowie was not responsible for the improper release of Mr. Shields, because

she did not see the detainer, but Mr. Savage did. At that point I stated that I was not responsible for

the improper release because Ms. Bowie reviewed the file and she was both the supervisor and the

Review Examiner. Ms. Emerson then said that I should have called to check on the status of the

detainer. At that point Mr. Watkins spoke up and asked how I could have called since the

telephones had been removed from the desks. At this point Mr. Kim asked Ms. Warner to address

the proper procedures to be followed. Mr. Watkins spoke up and asked how Ms. Warner could

address the problem since she had been removed from her position because she was not able to deal

with the problem when she was Chief of the Records Office. Mr. Watkins then stated words to the

effect that this had gone on long enough, that there was one incident after another, and it was time

for the Inspector General's Office to become involved and he was going to speak to the Inspector

General about this case.

1346-401162

1449-501071

0028- 005

15.     Later that afternoon, about lunchtime, when Deborah Thomas, Althea Hayes and I
rode back to CDF with Mr. Watkins, I saw Mr. Watkins with an individual whom I did not know,
but whom I subsequently learned was an 010 investigator.

16.     The next day, June 12, 2002, the man whom I had seen with Mr. Watkins the
previous afternoon came to CDF. He told me that he was an investigator from 010 and that he
wanted to question me about the release of Donald Shields. He told me this was very serious. He
placed me under oath, and told me that failure to tell the truth would be perjury. He took a sworn
statement from me. The information that I provided to him was consistent with the information in
this Affidavit. The 010 investigator told me that he was going to speak with Ms. Bowie and Mr.
Ellis about the release of Mr. Shields and would continue his investigation.

17.     Some weeks later, I believe in July 2002, two investigators from DOC Office of
Internal Affairs ("OIA") came and basically repeated the process of investigation that 010
investigator had done in June. I questioned why DOC was following up on the OIG investigation,
but was told by the OIA investigator it was a separate matter.

18.     After the DOC OIA investigators came and questioned me about the Shields release,
Ms. Bowie came and spoke to me. It was known that she was leaving DOC for the Federal Bureau
of Prisons. (She left in September 2002). When Ms. Bowie spoke to me on that occasion in July
2002, she told me that Valerie Emerson, the Acting Chief of the Records Office, had told her that
M.L. Brown, the Deputy Director of DOC, had told Ms. Emerson to tell Ms. Bowie that she never
saw the detainer in the Shields' file and that I never told her that there was a detainer against Mr.

-6-

1346-401163

1449-501072

0028- 006

Shields. During that conversation in July 2002 Ms. Bowie told me that there was no detainer against

Mr. Shields in the file and that she and I had never had the conversation when I told her about the

detainer. I told Ms. Bowie that was wrong and she knew it. She told me that her position was that

she had never seen a detainer against Mr. Shields and that I had never told her about it. She also

said it was not on the JACCS printout.

19.    In addition to being a veteran Legal Instruments Examiner at DOC, I was also a

Shop Steward for the Fraternal Order of Police/Department of Corrections Labor Committee, the

Union for DOC employees ("FOP"). In September 2002 Director Washington and other DOC

senior managers attended a Union Board of Directors meeting that was held in the DOC Director's

conference room at the Grimke Building. I attended that meeting in my capacity as FOP Shop

Steward. There had been another improper release of an inmate in late July, which also resulted in

adverse publicity for DOC. At the FOP Board meeting in August, I told Director Washington that

there needed to be a policy and procedures manual for the Examiners so these problems would not

continue. Mr. Washington stated that there should be a manual, but DOC has not had a manual

since 1965. He further stated that he did not know how to resolve the problem and neither did his

staff. He also said that I (Mr. Savage) did not know how to solve the problem either.

20.    There was another improper inmate release in September 2002. On September 30,

2002 I wrote to Chief Judge King of the Superior Court and told him that I believed that the DOC

position regarding its efforts to deal with improper inmate releases was a hoax and that the manual

being developed by Mr. Kim which was supposed to resolve the problem consisted of nothing more

-7-

7

1346-401164

1449-501073

0028- 007

than data entry procedures; it was not a policy and procedures manual. I addressed my letter to Chief Judge King through the DOC chain of command, and sent it out to each addressee by fax.

21.    On October 4, 2002, four days after I faxed my letter to Chief Judge King through the DOC chain of command, I was placed on administrative leave with pay, pending further notice, by M.L. Brown, the Deputy Director of DOC.

22.    On October 12, 2002 I wrote a letter to Mr. Brown, stating that while I believed the substance of my letter to Chief Judge King was correct, the tone was probably inappropriate. I requested that I be allowed to return to work.

23.    On October 23, 2002 I was served with an Advance Notice of Proposed Removal from Deputy Director Brown. The reason proposed for my removal was the improper release of inmate Donald J. Shields on June 10, 2002.

24.    The proposal that I be terminated based on the Shields' release was sent to a DOC Hearing Officer, Delores Thomas. I wrote to Ms. Thomas. I told her that Ms. Bowie knew about the detainer and she ordered me to prepare release documents for Mr. Shields notwithstanding the detainer. Ms. Thomas sustained the proposed removal on the basis that there was in fact a detainer against Mr. Shields, and I should have followed up on it and I should have known about the 1991 memo, so therefore I was responsible for the improper release.

-8-

1449-501074

0028- 008

25. By letter dated January 28, 2003 Director Washington terminated, my employment effective January 31, 2003, based on the proposal by Mr. Brown.

26. I have filed suit, pro se, in the U.S. District Court for the District of Columbia, alleging retaliation and violation of my constitutional rights, Civil Action No. 03-0 184.

## COURT RETURNS

27. Unless indicated otherwise, the following statements are based on my professional knowledge as a Legal Instruments Examiner, assigned to the D.C. Jail Records Office and personal knowledge from my experience working in the DC Jail Records Office and talking with other Department of Corrections employees and with District of Columbia Superior Court personnel during the course of my duties.

28. During the period of time I worked in the Records Office at the DC Jail, from 1998, (closure of Medium Security) until my termination on January 31, 2003, on every week day that court was in session, inmates in the custody of the DC Department of Corrections were transported from the DC Jail and/or the CTF facility to the District of Columbia Superior Court and the District of Columbia District Court for hearings in their court cases.

29. During this period of time, the number of inmates in the custody of the DC Jail transported from the DC Jail and the CTF to the District of Columbia Superior Court and the District of Columbia District Court for hearings in their court cases averaged about 100 per day Monday through Thursday and on any given Friday about 200 inmates.

-9-

1346-401166

1449-501075

0028- 009

30.    Some of these inmates transported to court for hearings in their cases became entitled to release in the case (or cases) they went to court on that day because the judge ordered their release in that case (or cases) or the case(s) was terminated because of dismissal, acquittal, or being sentenced to time served or a period of detention shorter than the period of time they had already been held, or for some other reason.

31.    Of these inmates who became entitled to release in the case (or cases) they went to court on that day, some remained subject to Department of Corrections custody because they had other pending cases on which they were being held, or they were subject to detainers or warrants.

32.    Generally speaking, it was the practice of the DC Jail to continue to detain any person in Department of Corrections custody, even after all the local cases on which he was being detained were over, if he was subject to a detainer or warrant.

33.    However, many of the inmates transported to court for hearings in their cases who became entitled to release in the case (or cases) they went to court on that day were also thereby entitled to release from Department of Corrections custody because there were no other local cases on which they were being held, and they were not subject to any detainers or warrants.

34.    During the period from fall of 1999 to the summer of 2000, I was assigned to the D.C. Superior Court Cell Block, in official capacity of a Legal Instruments Examiner/ Liaison responsible for review of all court order releases documents and certification of the actual release from the courthouse in conjunction with having communicated with the Records Office to perform NCIC checks and clearance.

-10-

1346-401167

1449-501076

0028- 010

35.     During this period, some of the inmates transported to court for hearings in their cases who became entitled to release in the case (or cases) they went to court on that day were released directly from the courthouse, and some were transported back to the DC Jail to be processed out.

36.     The NCIC checks and clearance process was otherwise known as a "run down" process, i.e., for every person who received a court release in the cases or cases he went to court that day, would telephone the Records Office to request a "run down" as to whether there existed outstandings warrants or detainers or any other documents which would otherwise prevent his/her release from custody and telefax a copy of the release order(s).

37.     The purpose of having telefaxed a copy of the court order release documents was to enable the Records Office to flag the release should the NCIC "run down" indicate outstanding warrants and detainers.

38.     The reason why some of the inmates transported to court for hearings in their cases who became entitled to release in the case (or cases) they went to court on that day and were also entitled to release from Department of Corrections custody were released directly from the courthouse, and some were sent back to the DC Jail to be processed out, is founded upon the major reason of the Records Office could not process all the request in a timely manner which cause the Superior Court Cell Block to become overcrowded.  In addition on some days but not very often inmates who went to court and were ordered release in their cases were returned the DC Jail because the Courtroom Marshals held the release orders in their possession and did not submit the documents for Records Office "run downs" until the end of that Marshals day.

-11-

1346-401168

1449-501077

0028-.011

39.    Sometime after the summer of 2000, a new policy was implemented under which no persons entitled to release by virtue of their court appearances were released from either courthouse. Under the new policy, all inmates transported from the DC Jail to the Superior Court or the federal District Court for a hearing were returned to the DC Jail following the hearing.

40.    The reason the Marshals implemented the new policy was because the Records Office could not process the "run downs" in a timely manner to prevent the Superior Court Cell Block from overcrowding and the Records Office complained that the Marshals were holding the court order releases and other court documents until the end of the day.

41.    Another contributing factor in the Records Office in delay or processing "run downs" for release is that during this period of time the Records Office did not have sufficient trained and experienced staff to process each days court paper work on the same day the court issued it, and so the Records Office was always running a few days behind in processing paper work.

42.    Inmates in the custody of the DC Jail transported from the DC Jail to the District of Columbia Superior Court or the District of Columbia District Court for hearings in their court cases who returned to the DC Jail from the courthouse were called "court returns".

43.    Based on my professional experience by having been assigned to the DC Jail R&D Unit I knew that it was the practice of the DC Jail to re-book every single court return into the DC Jail upon his arrival into the DC Jail from court.

-12-

12

1346-401169

1449-501078

0028- 012

44.   Also based on my professional knowledge from working in the R&D Unit, I know that it was the practice of the DC Jail to subject all persons transported to the DC Jail, including court returns booked into the DC Jail following court hearings, to blanket strip searches that included inspecting the person's genitals and buttocks and anus, prior to admitting them to the general prison population including the cell block areas.

45.   Also based on my personal knowledge from working in the DC Jail Records Office, I would say that during the period of time running from January 1, 1999 up to the date I stopped working in the Records Office, January 31, 2003, during any given week, the number of court returns returning from either the District of Columbia Superior Court or the District of Columbia District Court who were entitled to release from Department of Corrections custody because all they had no other pending cases on which they were being held, or they were not subject to detainers or warrants, at a minimum of 1 per day and on average 5 per day. This is a conservative estimate and the numbers could reach as many as 15 inmates on any given Friday.

## JACCS

46.   The following statements are based on my experience working in the DC Jail Records Office and talking with District of Columbia Superior Court personnel during the course of my duties.

47.   There are a number of fields that are common to both JACCS and the District of Columbia Superior Court Criminal Information System "CIS" database including PDID and

-13-

**1346-401170**

**1449-501079**

0028- 013

DCDC. The DC Jail collects the PDID from each intake and enters it into JACCS. Every DC Jail intake is issued a DCDC and that number is entered into JACCS as the unique identifier for that intake.

48.    JACCS can generate a report showing, for each inmate, the date the last case on which the person was held in the DC Jail was "cleared" or disposed, and also the date on which that inmates was actually released from the custody of the DC Jail on that date.

49.    JACCS can also generate a report showing whether an inmate was subject to a detainer on the date the last case on which the person was held in the DC Jail was "cleared" or disposed of.

I, T. Edward Savage, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on May 2, 2003.

_____
T. EDWARD SAVAGE

1346-401171

1449-501080

0028- 014

**1:99-cv-00332-UNA** DAVIS v. LIBRARY OF CONGRESS
UNASSIGNED, presiding
**Date filed:** 02/16/1999
**Date terminated:** 02/16/1999 **Date of last filing:** 12/01/1999

# Associated Cases

There are no associations for this case.

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/28/2006 11:40:52 | | |
| **PACER Login:** us3871 | **Client Code:** | |
| **Description:** Associated Cases | **Search Criteria:** | 1:99-cv-00332-UNA |
| **Billable Pages:** 1 | **Cost:** | 0.08 |

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CARL A. BARNES, *et. al.*,          )
                                    )
                Plaintiffs,         )
                                    )    Case Number:  06-315 (RCL)
        v.                          )
                                    )
DISTRICT OF COLUMBIA                )
                                    )
                Defendant.          )
                                    )

### DECLARATION OF PAIGE IRELAND

I, Paige Ireland, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that

the foregoing is true and correct to the best of my knowledge, information and belief:

1.      I am the Records Office Administrator for the Central Detention Facility (CDF)

and I have held this position, under contract with the District of Columbia (DC)

Department of Corrections (DOC) since February 22, 2006.  My duties entail

management of the DOC records unit and operational quality control and quality

assurance of inmate records, intakes, status changes, and releases.  I hold an M.B.A.

degree in Organizational Theory from Cornell University, and I am versed in business re-

engineering, performance improvement, and workflow design.

2.      I have reviewed the documents in the possession of DOC relating to the release of

the five (5) named plaintiffs in the lawsuit captioned, *Barnes, et al., v. District of*

*Columbia*, U.S.D.C. Civil Action, No. 06-315 ("Barnes Lawsuit"), namely, Carl A.

Barnes ("Barnes"), Dernard Hawkins ("Hawkins"), David Peterson ("Peterson"),

Maurice Williams ("Williams"), and Toney James Malloy ("Malloy").  Each inmate

1

alleges that he was over-detained by DOC. The following paragraphs, 3-7, reflect my review of the above-referenced inmates' records.

3. **Toney James Malloy.** On February 22, 2006, Mr. Malloy escaped from DOC custody in a halfway house, one day before he was scheduled for release. An arrest warrant was issued on February 23, 2006, the same date that he was apprehended. Since then he has been held in the D.C. Jail on felony escape charges until June 6, 2006 when he was sentenced on that charge. Currently, he remains at the D.C. Jail as a sentenced felon. A review of Mr. Malloy's records indicates that at all times complained of, he was lawfully detained. True and correct copies of documents regarding inmate Malloy are available for review by Plaintiffs.

4. **Dernard Hawkins.** On February 15, 2006 inmate Hawkins was committed to DOC by the Superior Court. On February 21, 2006 the Superior Court issued a release order *nunc pro tunc* to February 17, 2006. The Release Order was received by DOC on February 21, 2006 at 8:38 p.m., which left insufficient time to process and release inmate Hawkins by 10 p.m., the statutorily imposed cut-off time. D.C. Official Code § 24-211.02(b) (6) (2005 Supp.). Hawkins was released the next day, February 22, 2006. True and correct copies of documents regarding inmate Hawkins are available for review by Plaintiffs.

5. **David Peterson.** The Drug Court sanctioned Peterson to D.C. Jail beginning February 13, 2006, with an established release date of February 19, 2006 at 7:00 a.m. On February 13, 2006, a computer malfunction caused all data in the DOC JACCS computer to be lost, including that of inmate Peterson's projected release date. DOC used its best efforts to rebuild the records. DOC has since developed procedures to

2

process inmate releases should the JACCS System fail or otherwise be out of service. On February 21, 2006, a Superior Court judge issued an order to release inmate Peterson. DOC was faxed a copy of the release order from the Superior Court cellblock on the same date. Inmate Peterson was released the next day, February 22, 2006.    True and correct copies of documents regarding inmate Peterson are available for review by Plaintiffs.

6.    **Carl Barnes.** Inmate Barnes was transferred from Saint Elizabeth's Hospital to the D.C. Jail on February 15, 2006, with three open charges, one of which required that he be sentenced to 90 days in jail. The sentence could not be properly computed without court documents associated with the other two open cases. On February 17, 2006 all the necessary documents were received, the sentence computed, and a projected release date of Saturday, February 18, 2006 determined. Inmate Barnes was mistakenly not released on February 18, 2006. DOC received on February 22, 2006 at 9:13 p.m., Release Orders dated February 21, 2006, which was too late to release the inmate prior to the 10 p.m. statutory cutoff. Inmate Barnes was released the next day, February 23, 2006. True and correct copies of documents regarding inmate Barnes are available for review by Plaintiffs.

7.    **Maurice Williams.** This inmate was held on three charges. He was sentenced on February 27, 2006 on two charges to time served, but DOC did not receive that release order until March 1, 2006. That order indicated a release date of February 8, 2006. Inmate Williams was released on March 1, 2006. True and correct copies of documents regarding inmate Williams are available for review by Plaintiffs.

3

8.    While it is the Records Office's current objective to process and release inmates

within 3½ hours of receipt of a release order, there are many factors which may

contribute to an inability to achieve this objective, including: other open charges,

detainers, and/or warrants which need to be reviewed, computer malfunctions, timely

receipt from the Court of applicable release orders and other documents, timely arrival at

the Jail of inmates from court and the Superior Court's transition to a new computer

system (Court View).

PAIGE IRELAND

Dated: _6/29/06_

4

UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLE A. BARNES, et al<br><br>        Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT<br>OF COLUMBIA,<br><br>        Defendant | Civil Action No: **06-315**<br>        **(RCL)**<br><br>Next Event: None scheduled |

## AFFIDAVIT OF NAMED PLAINTIFF DAVID PETERSON IN SUPPORT OF

## PLAINTIFF'S RULE 56(f) MOTION

My name is David Peterson and I am a named plaintiff in this case. I am a member of the Overdetention Class and also a member of the Strip Search Class.

I have been informed that the District of Columbia has filed a motion in this case, a summary judgment motion, that is basically a motion to throw out the overdetention claims. My lawyer tells me that we need more information from the District of Columbia to fight the motion. We have not yet been able to get the information we need because of court rules governing exchange of information.

My lawyer, William Claiborne, is also filing a report explaining why he does not have enough information to fight the District of Columbia's motion at this time, and describing the information he needs to fight the motion and how he expects to get it.

**1449-502108**

0030- 001

I, David Peterson, pursuant to 28 U.S.C. § 1746, certify as true under penalty of

perjury under the laws of the United States of America that the above is true and

correct.

Date: July 31, 2006

City:  Washington, D.C.

David Peterson

**1449-502109**

0030- 002

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## ADMINISTRATIVE ORDER NO. 02-22

**WHEREAS**, the occurrence of erroneous and/or late releases from the D.C. Jail has increased over the past several months; and

**WHEREAS**, the Court's ability to process paperwork in a timely fashion should not hinder the release process;

**NOW, THEREFORE**, it is, by the Court, hereby

**ORDERED**, no in-custody defendant will be returned to the jail unless the United States Marshals Service has paperwork in all his/her corresponding cases; it is further

**ORDERED**, no in-custody defendant is to be removed from the courtroom until the appropriate paperwork has been completed by the courtroom clerk and signed off on by the judge. Defendants with multiple cases shall conclude all business in one courtroom before being moved to another; and it is further

**ORDERED**, this administrative order shall take effect on August 5, 2002.

**SO ORDERED.**


**BY THE COURT**
**July 25, 2002**                    _____/s/_____
                                     **Chief Judge Rufus King, III**

**Copies to:**   **All Judges**
           **Magistrate Judges**
           **Executive Officer**
           **Clerk of the Court**
           **Division Directors**
           **D.C. Department of Corrections**
           **United States Marshals Service**
           **United States Attorney's Office**
           **Public Defender Service**
           **Defender Services Office, C-215**
           **Mildred Bailey, Librarian**


**1449-501914**

## Section F
## Information Systems and Research

**Principle: A written body of policy and procedure establishes the facility's procedures for information storage and retrieval, master indexes, daily reports, evaluation, and research.**

### Information System

**3-ALDF-1F-01**
**(Ref. 2-5090)**

The facility contributes to, has access to, and uses an organized system of information storage, retrieval, and review. The information system is part of an overall research and decision-making capacity relating to both inmate and operational needs.

*Comment:*
Correctional information systems facilitate decision making, research, and timely responses to offender needs and outside inquiries. In large correctional systems, information systems often are the responsibility of the parent agency. If the parent agency does not provide this function, the facility should train and assign specific personnel to this function.

**3-ALDF-1F-02**
**(Ref. 2-5105)**

All staff who have direct access to information in the information system are trained in and responsive to the system's security requirements.

*Comment:*
Written policy should specify which persons have direct access to the information system.

### Sharing of Information

**3-ALDF-1F-03**
**(Ref. 2-5092)**

The facility or parent agency collaborates with criminal justice and service agencies in information gathering, exchange, and standardization.

*Comment:*
Systemwide collaboration is critical to effective management and timely decisionmaking and helps prevent or reduce duplication of effort and costs. Facilities should share information among themselves while respecting the confidentiality and privacy of offender records.

### Master Index and Daily Reports

**3-ALDF-1F-04**
**(Ref. 2-5094)**

Written policy and procedure provide for an inmate population accounting system that includes records on the admission, processing, and release of inmates.

*Comment:*
None.

1449-501915

0036- 001

Part One. Administration and Management



**3-ALDF-1F-05**
**(Ref. 2-5104)**

The facility maintains a system that identifies all inmates in custody and their actual physical locations.

*Comment:*
None.

**3-ALDF-1F-06**
**(Ref. 2-5175)**

The facility administration maintains a written record of the following:

- personnel on duty
- inmate population count
- admissions and releases of inmates
- shift activities
- entry and exit of physicians, attorneys, and other visitors
- unusual occurrences

*Comment:*
None.

**3-ALDF-1F-07**
**(Ref. 2-5099)**

Intake booking information is recorded for every person admitted to the facility and includes at least the following data, unless prohibited by law:

- picture
- booking number
- name and aliases of person
- current address (or last known address)
- date, duration of confinement, and a copy of the court order or other legal basis for commitment
- name, title and signature of delivering officer
- specific charge(s)
- sex
- age
- date of birth
- place of birth
- race
- present or last place of employment
- health status, including any current medical or mental health needs
- emergency contact (name, relation, address and phone number)
- driver's license and social security numbers
- notation of cash and all property
- additional information concerning special custody requirements, service needs, or other identifying information such as birthmark or tattoos

*Comment:*
None.

1449-501916

0036- 002

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :

     Plaintiffs                        :

                  :    Civil Action No. 06-315 (RCL)

       v.                            :

Government of the District          :
Of Columbia,                        :
                  :
     Defendants.                     :

## AFFIDAVIT OF CHANTEL HENSON

I, Chantel Henson, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. On July 14, 2006 I appeared before the Honorable Diana Epps in D.C. Superior Court in case 2006-DVM-1550.  Judge Epps entered an order that I be held for 5 days pursuant to D.C. Code 22-1322 (a)1(c).

2. Accordingly, I was taken from Courtroom 119 at D.C. Superior Court and confined at the Correctional Treatment Facility (CTF) on July 14, 2006.

3. On Friday, July 21, 2006 I was transported from CTF to D.C. Superior Court where I again appeared before Judge Epps in case 2006-DVM-1550.  The government was not prepared to go forward with a Detention Hearing and at 10:30 a.m. on July 21, 2006 Judge Epps entered an order that I be released.

4. After my court appearance before Judge Epps on July 21, 2006, I was not taken to the grounds of the D.C. General Hospital and processed out. Rather, I was taken back to CTF and incarcerated.

5. On my return to the CTF on December 21, 2005 I was strip searched. I had to take off all of my clothes (the Department of Corrections jump suit I was wearing).  A guard looked at my genitals. I had to turn around and

1449-501917

spread my butt cheeks. The guard looked in my butt cheeks.

6.      My mother waited outside the DC Jail until late in the evening on July 21 and returned the next day. After numerous telephone calls from my mother to the DC Jail and to my attorney, I was finally released from CTF on Saturday, July 22, 2006. My mother informs me that DC Jail personnel told her that I was not released because the DC Jail had no 'paperwork' from the court indicating that I had been released.

7.      I was illegally detained for 1 day, from July 21, 2006 to July 22, 2006.

8.      I did not have any arrest warrants, wants, detainers or warrants as of July 21, 2006.

Date: _7/29/06_
City: Washington, D.C.

Respectfully submitted,

_Chantel Henson_
Chantel Henson

PDID: 531375
DCDC: 311043
DOB: 12/27/1986
SSN: _____

1449-501918

0037- 002

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
    Plaintiffs                      :
                                        :      **Civil Action No. 06-315 (RCL)**
       v.                          :
                                        :
Government of the District              :
of Columbia,                            :
                                        :
    Defendant                       :

## AFFIDAVIT OF JEFFREY S. OWENS

    I, Jeffrey S. Owens, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.     On December 16, 2005 I was arrested in case PS-3498-95 for allegedly failing to make court ordered child support payments. On said date I was brought before a judicial officer in the Superior Court of the District of Columbia who entered an order that I be held until December 23, 2005. Accordingly, I was stepped back to the D.C. Jail.

2.     On December 23, 2005 I was transported from the DC Jail to D.C. Superior Court and again appeared before a judicial officer, who ordered that I be released.

3.     Instead of being taken to the grounds of the DC General Hospital and processed out, I was transported from DC Superior Court back to the D.C. Jail and incarcerated.

4.     I was strip searched on my return from court on December 23, 2006. I had to take off all of my clothes (The Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

5.     On or about February *23*, 2006 I failed to appear for a Review Hearing in case PS-3498-95 because I was being illegally detained in the D.C. Jail and a bench warrant issued for my arrest.

6.    On March 29, 2006 I was taken from the D.C. Jail to D.C. Superior Court and appeared before Judge ___Doyle___, who expressed dismay over my illegal detention and ordered my immediate release.

7.    Accordingly, I was taken to the grounds of the D.C. General Hospital and processed out. I was released at approximately 10:00 p.m. on March 29, 2006.

8.    I was overdetained and illegally incarcerated for 96 days, from December 23, 2005 until March 29, 2006.

9.    I did not have any arrest warrants, wants, detainers or warrants after Judge P. Diaz released me on December 23, 2005.

Date: June 6, 2006
City: Washington, D.C. at Superior Court
DCDC: 211026
DOB: 8/10/62
PDID: _____
SSN

Jeffrey Owens

1449-501920

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                          :
                                              :
         Plaintiffs                           :
                                              :        Civil Action No. 06-315 (RCL)
              v.                              :
                                              :
Government of the District                    :
Of Columbia,                                  :
                                              :
         Defendants.    _____      :

### AFFIDAVIT OF JOHN WEST

         I, John West, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      On January 14, 2005 in D.C. Superior Court the Honorable Gerald Fisher entered a sentence that I be incarcerated for 60 days in jail in case 2004-FEL-4805 and that I be imprisoned for 14 months, consecutive, in case 2004-FEL-4806.

2.      Accordingly, I was given over to the custody of the Bureau of Prisons to serve the sentence of 14 months. I completed said sentence in Chicago on January 13, 2006 and I was released by the Bureau of Prisons to a D.C. detainer and transported to the D.C. Jail to serve the 60 days sentence in case 2004-FEL-4805.

3.      I arrived at the DC Jail on January 29, 2006. My 60 day sentence expired on March 13, 2006. I was not released on March 13, 2006. I was released from the D.C. Jail on March 23, 2006.

4.      I was illegally detained for 10 days, from March 13, 2006 to March 23, 2006.

**1449-501921**

0039- 001

5.     I did not have any arrest warrants, wants, detainers or warrants as of March 13,2006.

Date: July 28, 2006
City: DC Jail

Respectfully submitted,

*John West*

John West (aka Isaac Tucker)

PDID: 558105
DCDC: 299215
DOB:  1/1/80
FCI #211-54-424

1449-501922

0039- 002

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
          Plaintiffs                    :
                                        :     Civil Action No. 06-315 (RCL)
          v.                            :
                                        :
Government of the District              :
Of Columbia,                            :
                                        :
          Defendants.          :

## AFFIDAVIT OF JAMES G. JONES REGARDING SECOND OVERDETENION

I, James G. Jones, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    At 11:34 a.m. on the morning of July 17, 2006 I appeared before the Honorable Brian Holeman in D.C. Superior Court in case 2006-CF2-12391. At the time, I was being held without bond in said matter. Judge Holeman entered an order releasing the hold, placed me on Personal Recognizance, and ordered that I be placed on home confinement in the Heightened Supervision Program.

2.    On July 17, 2006 I had two other pending cases, 2006-CF2-7396 and 2006-CMD-3682. I was on Personal Recognizance in these two matters and that release condition was not changed.

3.    After my court appearance before Judge Holeman on July 17, 2006 I was not taken to the grounds of the D.C. General Hospital and processed out. I was taken back to the D.C. Jail and incarcerated.

4.    On my return to the D.C. Jail on July 17, 2006 I was strip searched. I had to take off all of my clothes (the Department of Corrections jump suit I

1449-501923

was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

5.    I have been informed that my family made telephone calls to D.C. Jail records and were told that Jail Records had no 'paperwork' from Superior Court ordering my release. I have been informed that my attorney contacted Judge Holeman's law clerk who took steps to secure my release. I was finally released from the D.C. Jail at approximately 9:30 p.m. on July 18, 2006.

6.    I was illegally detained for 1 day, from July 17, 2006 to July 18, 2006.

7.    I did not have any arrest warrants, wants, detainers, holds, or warrants as of July 17, 2006.

Date: July 2̲8̲ 2006
City: Washington, D.C.

Respectfully submitted,

James G. Jones

PDID: 336522
DCDC: 285616
DOB: 1/30/62
SSN:

**1449-501924**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                    :
                                        :
        Plaintiffs                      :
                                        :        Civil Action No. 06-315 (RCL)
            v.                          :
                                        :
Government of the District              :
Of Columbia,                            :
                                        :
        Defendants.                     :

## AFFIDAVIT OF RAYMOND BUTTS

        I, Raymond Butts, pursuant to 28 U.S.C. 1746 certify as true under
penalty of perjury under the laws of the United States of America that the
following is true and correct:

1.   On February 8, 2006 I was arrested on drug possession charges in
case 2006-CMD-2445 in D.C. Superior Court and released on Personal
Recognizance. On March 7, 2006 I did not appear for a hearing and a bench
warrant issued. On April 29, 2006 I was arrested on said warrant and held
without bond in said matter until July 3, 2006 when it was dismissed as part
of a plea agreement with case 2006-CMD-8457.

2.   On April 29, 2006 I was arrested and charged with a Bail Reform
Act violation in case 2006-CMD-8457 and held without bond for 5 days
under D.C. Code 22-1322 A1(a). On May 1, 2006 a Detention Hearing and
a Status Hearing was held in said matters. I appeared before the Honorable
John Bayly who entered an order that I be held pending disposition in both
pending cases.

3.   On July 3, 2006 I entered into a plea agreement and pled guilty to one
count of a Bail Reform act violation in case 2006-CMD-8457 whereby case
2006-CMD-2445 was dismissed . Judge Bayly sentenced me to serve 70
days with credit for time served to be followed by probation.

0041- 001

4.   Inasmuch as I had already served 66 days by the day of sentencing, I should have been released on July 7, 2006. I was not released on July 7, 2006 and remain incarcerated at the D.C. Jail. I was provided with information (a "face sheet") that I was scheduled to be released on September 10, 2006.

5.   Jail records did not give any credit for time served in case 2006-CMD 8457.

6.   I contacted my attorney, Angela Plater, regarding my overdetention. Ms. Plater contacted Judge Bayly and I was released from the D.C. Jail on July 26, 2006.

7.   I was illegally detained for 19 days, from July 7, 2006 to July 26, 2006.

8.   I did not have any arrest warrants, wants, detainers or warrants as of July 7, 2006.

Date: _7/30/06_
City: Washington, D.C.

Respectfully submitted,

_Raymond Butts_
Raymond Butts

PDID: 443465
DCDC: 291004
DOB: 8/8/1965

1449-501926

0041- 002

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carl Barnes, et al.,                     :
                                         :
    Plaintiffs                   :
                                         :        Civil Action No. 06-315 (RCL)
         v.              :
                                         :
Government of the District               :
Of Columbia,                             :
                                         :
    Defendants.                  :

### AFFIDAVIT OF ERVIN HALTIWANGER

I, Ervin Haltiwanger, pursuant to 28 U.S.C. 1746 certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    On July 26, 2006 I was being held without bond at the D.C. Jail in case _O6-CMD-6247_ .  On July 26, 2006 I appeared before the Honorable _Lynn Leibovitz_ in D.C. Superior Court in said case and, at approximately 11:00 a.m., Judge _Leibovitz_ entered an order dismissing the case and releasing me from detention.

2.    After my court appearance before Judge _Leibovitz_ on July 26, 2006, I was not taken to the grounds of the D.C. General Hospital and processed out.  Rather, I was taken back to the ~~D.C. Jail~~ CTF and incarcerated.

3.    On my return to the ~~D.C. Jail~~ CTF on July 26, 2006 I was strip searched.  I had to take off all of my clothes (the Department of Corrections jump suit I was wearing).  A guard looked at my genitals.  I had to turn around and spread my butt cheeks.  The guard looked in my butt cheeks.

4.    I was finally released from the D.C. Jail at approximately 1:00 p.m. on July 27, 2006.

5.    Prior to my release on July 27, 2006, I was again strip searched.

**1449-502110**

I had to take off all of my clothes (the Department of Corrections jump suit I was wearing). A guard looked at my genitals. I had to turn around and spread my butt cheeks. The guard looked in my butt cheeks.

6.     I was illegally detained for 1 day, from July 26, 2006 to July 27, 2006.

7.     I did not have any arrest warrants, wants, detainers or warrants as of July 26, 2006.

Date: July 31, 2006
City: Washington, D.C.

Respectfully submitted,

*Ervin Haltiwanger*
Ervin Haltiwanger

PDID:
DCDC: 159357
DOB: 1/3/48
SSN:

1449-502111

0042- 002

**Bynum v. District of Columbia** Settlement Administrator
P.O. Box 6177
Novato, CA 94948-6177

1-888-809-8820

## CLASS ACTION CLAIM FORM

Claim #: DCB-113268-2-01    604

George Keitt
705 21st St NE
Washington, DC 20002

Name/Address Changes (if any): *Same address*

(202) 398-4462 *(person)*
Area Code    Telephone Number

*No Email*

Email Address

(202) 398-3310
Area Code    Home Telephone Number

Date of Birth: 1/1/1944    Gender: M

Other names or aliases you have used between May 16, 1999 and August 31, 2005: *Same None*

---

- I wish to make a claim against the District of Columbia because between the dates of May 16, 1999 and August 31, 2005, I was in any District of Columbia Department of Corrections facility, and:

  1) I was not released by midnight of the day I became entitled to release by court order or expiration of sentence, and/or

  2) I appeared in court and the judge ordered me released, and there was no other reason for the District of Columbia to detain me, but I was strip searched before my release.

- I understand my entitlement will be determined exclusively by records of the District of Columbia (including the records of the Superior Court of the District of Columbia).

- You must **return this Claim Form** so that it is mailed with a postmark **NO LATER THAN December 23, 2005** in order to receive money from the class. If your Claim Form is not mailed with a postmark no later than December 23, 2005, you will not be considered a member of the class even if you wish to be. DO NOT DELAY. Complete, sign and submit ALL Claim Forms you receive (even if you receive more than one).

YES, I QUALIFY AND WISH TO MAKE A CLAIM

| DCDC# | PDID# | Booking No. | Commit Date | Release Date | Exit Date | Days Overdetained | Strip-Search (Y/N) |
|-------|-------|-------------|-------------|--------------|-----------|-------------------|--------------------|
| 191482 | 291842 | 2005-00223 | 1/6/2005 | 1/11/2005 | 1/12/2005 | 1 | Y |

---

**Taxpayer Identification Number Certification - Substitute IRS Form W-9**

Enter your Social Security Number: 2 5 0 -- 7 2 -- 4 4 5 7

Print name as shown on your income tax return if different from George Keitt: _____

Under penalties of perjury, I certify that:

1. The taxpayer identification number shown on this form is my correct taxpayer identification number, **and**
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, **and**
3. I am a U.S. person (including a U.S. resident alien). Please Check one: ☑ Yes ☐ No

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.
**The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.**



SETTLEMENT ADMINISTRATOR
P.O. BOX 6177
NOVATO, CA 94948-6177

DCB

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
U.S. COURTHOUSE
333 CONSTITUTION AVENUE, N.W.
WASHINGTON, DC 20001

OFFICIAL BUSINESS

94948-6177

Case 1:05-cv-01514-RCL    Document 70-3    Filed 11/09/2006    Page 100 of 105
Case 1:02-cv-00956-RCL    Document 135    Filed 01/16/2006    Page 1 of 4
Plaintiffs' Exhibit # 10, Keith letter

George Keith
Dec 22, 2005

To Mr. Bynum v. District of Court Case
No 02-956 (RCL) my name is
George Keith Soc. Security# 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
Reason for my object, because I was
hold almost 2 yhrs. after the Judge
release me from the Jail
Arrest date 1/6/2005 Release Date 1/11/2005
Exit Date 1/12/2005 Overdetained 1 Day.
My address is 705-21 St. N.E.
Wash. D.C 20002 Telephone 202-398-3210
Thank you for your Supported,

Sergel George Keith



RECEIVED

DEC 2 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2006 NOV -9  PH II: 59

NANCY M.
MAYER-WHITTINGTON
CLERK

| | |
|---|---|
| CARL A. BARNES, *et. al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| DISTRICT OF COLUMBIA | ) |
| Defendant. | ) |

Case Number: 06-315 (RCL)

## DECLARATION OF PAIGE IRELAND

I, Paige Ireland, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief

1.    I am the Records Office Administrator for the Central Detention Facility (CDF) and I have held this position, under contract with the District of Columbia (DC) Department of Corrections (DOC) since February 22, 2006. My duties entail management of the DOC records unit and operational quality control and quality assurance of inmate records, intakes, status changes, and releases. I hold an M.B.A. degree in Organizational Theory from Cornell University, and I am versed in business reengineering, performance improvement, and workflow design.

2.    I have reviewed the documents in the possession of DOC relating to the release of the five (5) named plaintiffs in the lawsuit captioned, *Barnes, et al., v. District of Columbia,* U.S.D.C. Civil Action, No. 06-315 ("Barnes Lawsuit"), namely, Carl A. Barnes ("Barnes"), Dernard Hawkins ("Hawkins"), David Peterson ("Peterson"), Maurice Williams ("Williams"), and Toney James Malloy ("Malloy"). Each inmate

alleges that he was over-detained by DOC. The following paragraphs, 3-7, reflect my

review of the above-referenced inmates' records.

3.    **Toney James Malloy.** On February 22, 2006, Mr. Malloy escaped from DOC

custody in a halfway house, one day before he was scheduled for release. An arrest warrant

was issued on February 23, 2006, the same date that he was apprehended. Since then he has been

held in the D.C. Jail on felony escape charges until June 6, 2006 when he was sentenced on that

charge. Currently, he remains at the D.C. Jail as a sentenced felon. A review of Mr.

Malloy's records indicates that at all times complained of, he was lawfully detained. True

and correct copies of documents regarding inmate Malloy are attached hereto as Exhibit "A"

and made a part hereof.

4.    **Dernard Hawkins.** On February 15, 2006 inmate Hawkins was committed to DOC

by the Superior Court. On February 21, 2006 the Superior Court issued a release order *nunc*

*pro tunc* to February 17, 2006. The Release Order was received by DOC on February 21,

2006 at 8:38 p.m., which left insufficient time to process and release inmate Hawkins by 10

p.m., the statutorily imposed cut-off time. D.C. Official Code § 24211.02(b) (6) (2005 Supp.).

Hawkins was released the next day, February 22, 2006. True and correct copies of documents

regarding inmate Hawkins are attached hereto as Exhibit "B" and made a part hereof.

5. **David Peterson.** The Drug Court sanctioned Peterson to D.C. Jail beginning February 13,

2006, with an established release date of February 19, 2006 at 7:00 a.m. On February 13,

2006, a computer malfunction caused all data in the DOC JACCS computer to be lost,

including that of inmate Peterson's projected release date. DOC used its best efforts to

rebuild the records. DOC has since developed procedures to

2

process inmate releases should the JACCS System fail or otherwise be out of service. On February 21, 2006, a Superior Court judge issued an order to release inmate Peterson. DOC was faxed a copy of the release order from the Superior Court cellblock on the same date. Inmate Peterson was released the next day, February 22, 2006. True and correct copies of documents regarding inmate Peterson are attached hereto as Exhibit "C" and made a part hereof.

6. **Carl Barnes.** Inmate Barnes was transferred from Saint Elizabeth's Hospital to the D.C. Jail on February 15, 2006, with three open charges, one of which required that he be sentenced to 90 days in jail. The sentence could not be properly computed without court documents associated with the other two open cases. On February 17, 2006 all the necessary documents were received, the sentence computed, and a projected release date of Saturday, February 18, 2006 determined. Inmate Barnes was mistakenly not released on February 18, 2006. DOC received on February 22, 2006 at 9:13 p.m., Release Orders dated February 21, 2006, which was too late to release the inmate prior to the 10 p.m. statutory cutoff. Inmate Barnes was released the next day, February 23, 2006. True and correct copies of documents regarding inmate Barnes are attached hereto as Exhibit "D" and made a part hereof.

7.    **Maurice Williams.** This inmate was held on three charges. He was sentenced on February 27, 2006 on two charges to time served, but DOC did not receive that release order until March 1, 2006. That order indicated a release date of February 8, 2006. Inmate Williams was released on March 1, 2006. True and correct copies of documents regarding inmate Williams are attached hereto as Exhibit "E" and made a part hereof.

8.      While it is the Records Office's current objective to process and release inmates within 3

½ hours of receipt of a release order, there are many factors which may contribute to an inability to

achieve this objective, including: other open charges, detainers, and/or warrants which need to be

reviewed, computer malfunctions, timely receipt from the Court of applicable release orders and

other documents, timely arrival at the Jail of inmates from court and the Superior Court's

transition to a new computer system (Court View).

PAIGE IRELAND

                                Dated:

6/29/06

4