UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS,                )<br>                                          )<br>                    Plaintiff     )<br>                                          )<br>v.                                      )<br>                                          )<br>S. ELWOOD YORK, JR., ET AL. )<br>                                          )<br>                    Defendants )<br>                                          ) | Civil Action No. 05-1514 (ESH)<br>Ellen Segal Huvelle, Judge<br><br><br>November 15, 2006 |

**PLAINTIFF'S SECOND MOTION FOR DISCOVERY
AND FOR A DISCOVERY SCHEDULING ORDER**

**PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)
That before filing his motion Plaintiff requested defendant's consent
To the relief requested in such motion however the defendants did not
Give their consent to the relief requested in the motion**

Comes now, Simon Banks, Plaintiff and moves this Honorable Court pursuant to Fed. R. Civ. P. 26, for a discovery scheduling order, and in support cites the following:

The Plaintiff incorporate by reference Plaintiff's Memorandum of Points and authority in support of Plaintiff's Motion for Discovery and a Discovery Scheduling Order.

_____//s//_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302

drsbanks@msn.com,

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, was mailed, via electronic mail, this day of 15th day of November, 2006, to the following:

**VIA EMAIL TO**
**Denise.baker@dc.gov**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887

**VIA EMAIL TO**
Megan.benary@eclairryan.com
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

**Kelvin.Newsome@LeClairRyan.com**
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

**Facsimile 602 263-1784**
Daniel P. Struck
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012

_____/s//_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SIMON BANKS, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 05-1514 (ESH) |
| | ) | Ellen Segal Huvelle, Judge |
| S. ELWOOD YORK, JR., ET AL. | ) ) | |
| Defendants | ) ) | November 15, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S SECOND MOTION FOR DISCOVERY
AND FOR A DISCOVERY SCHEDULING ORDER**

This cause of action was initially filed on July 7, 2005. The Plaintiff, in the past year and four months, filed two successive amended complaints. The Plaintiff has been prejudiced by the failure of the U.S. Marshal to serve listed defendants in a reasonable time.

Subsequent to July 7, 2005, when the Plaintiff filed the initial complaint the defendants have changed wardens and directors of the Department of Corrections Records Office several times. The Director of the District of Columbia Department of Corrections has had at least two Directors since the filing of the initial complaint. Larry Corbitt, the former warden of the Central Detention Center (CDC) was replaced with Robert Clay, acting Warden (CDC), has been replaced by William Smith. The Plaintiff

3

sued Warden Larry Corbitt, then Warden Robert Clay, in his official capacity. The Director of the Department of Corrections Records Office, was encumbered by J. Myrick. This person has recently been replaced by John Manuel.

The wardens of the Central Treatment Facility also has changed several times since August 30, 2006.

The District of Columbia Government, the District of Columbia Department of Corrections has contracted and subcontracted medical services to medical services providers. There seems to be several independent contractors whom are shielding and/or were set in place by the District of Columbia Government to shield the District of Columbia from liability for medical malpractice. The Plaintiff needs discovery to acquire copies of these contracts and subcontracts so that indispensable parties may be joined in the instant complaint.

The persons in charge of the Department of Corrections Medical Services as Medical Services Provider has changed, and there has been delegations of authority that affect liability of tortfeasors. The Department of Corrections have been stonewalling information regarding whom is and was in charge of medical services during the past year and a half. For each request of information the Plaintiff is directed to the Department of Corrections Freedom of Information Officer, and there is an established process of protracted delay and information is not forthcoming. The Department of Corrections FOIA Officer is located in the Office of the Department of Corrections General Counsel. Obviously, the General Counsel of DCDC coordinates responses with the District of Columbia Attorney General's Office.

4

The Plaintiff initiated discovery on June 4, 2006,[1] and subsequent to the Plaintiff's initiation of discovery the defendants filed motion to Stay, the Respondent responded to the motion. See Opposition to Motion to Stay discovery.

The Court granted the Plaintiff's 2nd Motion to Amend the Complaint and sua sponte issued an order effectively staying discovery until the defendant responded to Plaintiff's Second Amended Complaint.

The Plaintiff has filed a Third Amended Complaint.

The District of Columbia Government defendants have filed joint motions to dismiss the Plaintiff's Third Amended Complaint and/or for summary judgment.

The Plaintiff stands to be irreparably and severely prejudiced in his ability to perpetuate the record, defend against dispositive motions; prosecute his causes of actions and acquire verifying documentation and admissions that would assist the Plaintiff in his ability to submit affidavits, deposition discovery, interrogatories, request for admissions and be prepared to submit affirmative responses in defense any dispositive motion that the defendants submit.

The Plaintiff has exhibited by the Affidavits and exhibits that the Plaintiff submitted in connection with Plaintiff's Rule 56(e) and (f) Motions and Motion for Judicial Notice, that the Plaintiff some evidence of deliberate indifference, pattern and practice, custom and systemic reckless disregard for the rights of the Plaintiff and other persons whom were subjected to overdetention, strip searches, and deprivation of their constitutional rights based upon the defendants failure to train and generate a new policy, custom, practice, and procedure that would cure the on-going systemic over-detention/false imprisonment, unconstitutional problem that plague the entities

---

[1] See Plaintiff's Notice of Filing Discovery upon defendants

5

supervised, maintained and operated by the District of Columbia Government that caused the Plaintiff's unconstitutional over-detention.

The Plaintiff needs discovery to perpetuate the record regarding the Plaintiff's release to the State of Virginia in violation of the District of Columbia Compact Act, the District of Columbia Extradition Act, the United States Extradition Act, and the District of Columbia Government's failure to credit the Plaintiff's release records with six months the Plaintiff spent in the State of Virginia, notwithstanding the Plaintiff's repeated request of the Department of Corrections to make such recalculation, as far back as July 7, 2005. See ¶Z5 at Page 12 of Plaintiff's original complaint filed on July 7, 2005.  Defendants York, Corbitt, Tally, Reiskin, Williams, were all designated recipients of the Plaintiff's initial complaint and motion for injunctive relief.  See attached Motions for Injunctive Relief which was served upon York, Corbit via electronic mail (email).

Substantive and Procedural Due process, fairness and equal protection mitigate that the court grant the motion.

The Plaintiff needs discovery to perpetuate the record with respect to the issues of Overdetention, (Prior admissions of the defendants in the cases of *Marcus Bynum v Dist of Col 02-956*, the *Barnes, et al v. District of Columbia*,Royce C. Lamberth, presiding Date filed, 02/23-2006, and Marcus Bynum v Dist of Col 02-956 (RCL) Memorandum and Order, filed Nov. 18, 2002. In *Watson v. Gaines, Civil Action No. 01 CV 2418 (GK), Judge Kessler has required the DCDC to provide plaintiff's counsel "lists" of D.C. Jail inmates subject to detainers (Pltfs. Reply Mem. 6n.4), thereby implying an ongoing duty to report to the Plaintiff in that case*

6

(a)      The Plaintiff is pursuing discovery in the above-referenced and other overdetention cases, showing negligence, failure to train and systematic deficiencies in recordkeeping causing systemic overdetention. Plaintiff seeks discovery expert statements provided to the United States Attorney General and to United States Judge Royce Lamberth in the *Marcus Bynum* case regarding the overdetention issue, inter alia.  This discovery would facilitate admissions and promote a climate that is conducive to settlement and/or dispositive motions, thereby promoting judicial economy.

(b)      (b) The plaintiff is pursuing discovery to perpetuate the record regarding defendants' transfer of the Plaintiff to Alexandria Virginia in violation of Plaintiff's Constitutional rights, statutory rights, right to substantive and procedural due process that affords the Plaintiff the right to an extradition hearing in connection with the transfer of the Plaintiff immediately after the Plaintiff asserted his protest to the legal validity and constitutionality of the Virginia detainer when and while the Plaintiff was serving a sentence that had previously been imposed;

(c)      The Plaintiff is seeking discovery on the issue of medical malpractice, violation of the Eighth Amendment cruel and unusual punishment that the Plaintiff was subjected to while an inmate at the DC Department of Corrections, i.e. the deprivation of basic human needs, as set forth in Plaintiff's Third Amended Complaint (Previously articulated in Plaintiff's original complaint and Plaintiff's affidavit in support of injunctive relief filed with the Plaintiff's original complaint.

(d)    These deprivations caused the Plaintiff to suffer irreparable harm, lost of seven teeth and damage to gums and facial features and personal appearance; damage to Plaintiff's appeal in the case of *Banks v. Comey*, and a case in the Virginia Court of Appeals *Banks v. Commonwealth,* for untimeliness when and while the Plaintiff was being overdetained, and where and when the Plaintiff was in custody of the DC Department of Corrections and then in Alexandria, Virginia, the Commonwealth attorney, whom conspired with the Assistant United States Attorneys, Thomas Zeno and John Griffith,[2] seized all of the Plaintiff's client files, business records, computer, and all evidence that the Plaintiff needed to prove his innocence, all of Plaintiff's business records, and where the Commonwealth Attorney refused to release these exculpatory evidence[3], until after the initial appeal was decided, notwithstanding Plaintiff's Motions to Compel deprivation of Brady Material, and where the Plaintiff was provided two attorneys whom sabatoged Plaintiff's case and also refused to provide access to all but 12 of some 200 client business records after announcing they would not be a party to assisting Plaintiff in his prosecution of Plaintiff's civil complaint against the Alexandria Detective, a Virginia Bar investigator and the Assistant Commonwealth Attorney whom knew that Plaintiff's right to practice before administrative agencies of the

---

[2] Based upon the complaint of one witness, former client whose complaint was dismissed by the Circuit Court of Alexandria
[3] Disclosure statements of Plaintiff's non-bar license status, services performed, cases won and cases settled throughout the United States; Plaintiff's complaints to the FBI, the Attorney General, the United States Senate Judiciary Committee, the DC Bar Counsel, against the Perpetrators whom conspired to retaliate against the Plaintiff for Petitioning government for redress.

8

        United States was clearly established.  The Plaintiff represented attorneys, FBI agents, CIA and other government employees nationwide and in Okinawa, Japan, for over 20 years.  These attorneys were appointed to sabatoged the Plaintiff's defense when and while the Plaintiff was incarcerated.  These attorneys that represented Plaintiff called one witness,[4] out of 20, requested by Plaintiff, while an attorney Plaintiff represented waited for three days and was not called.

(e)    But for the unconstitutional transfer of the Plaintiff in violation of Plaintiff's extradition rights, the Plaintiff would have had access to all of his files, his computer, and the Plaintiff would have been able to defend himself although the DC and Virginia Authorities made sure that over 190 contracts of the Plaintiff were destroyed, when and while the Commonwealth Attorney advised the Plaintiff's clients that Plaintiff had abandoned them and absconded with their money while suppressing Plaintiff's contact information precluding the Plaintiff from communicating with his clients when the Plaintiff was incarcerated. (The Plaintiff has requested the FBI, the Department of Justice and the entire Congress to investigate)

(f)    The Plaintiff has been subjected to the above when and while the District of Columbia Court of Appeals has refused to allow the Plaintiff to terminate

---

[4] a Park Service Police Officer, SWATT team member, assigned to protect the President of the United States as a counter-sniper, whom Plaintiff had won his case before an administrative judge of the United States Merit Protection Board.  This witness wrote the Plaintiff a commendation letter for outstanding trial performance, and neither the letter was put into evidence, nor was the fact that this witness was a police officer.  He was identified only as a government employee, asked did I do a good job and did I disclose to him my non-bar status and subsequent to responding to these questions he was hurried off the stand.

|      | |
|---|---|
|      | appointed attorney Cynthia Nordone, who was appointed on June 21, 2005 to file an appellate brief in 40 days and as of this present date after five motions to terminate her, has not filed the Plaintiff's appeal brief, now over 14 months after the first appointed attorney, Frederick Sullivan sat on the Plaintiff's appeal brief for six months and then announced he was being appointed a magistrate judge. In December 2005 Plaintiff requested the appointment of an attorney only because the Plaintiff feared the court would not give him a 30 day continuance to perfect his appellate brief, because of retaliation for petitioning Congress and the FBI for redress. |
| (g)  | The Plaintiff seeks to prove the District's liability with evidence based upon declarations of pre-trial detainees, overdetained individuals, statistical sampling, analysis of the District's own computer records, deposition testimony and with witness testimony. |
| (h)  | The Plaintiff needs discovery to acquire statistics regarding the egregiously deficient medical services provided by the District of Columbia Government Department of Corrections to its inmate population, during the past several years to show deliberate indifference to the medical needs of the Plaintiff. |
| (i)  | The use of statistical evidence to prove liability in civil rights cases is well established. *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1413 (D.C. 1998); *Davis v. Califano,* 613 F.2d 957 (D.C. Cir. 1979)("statistical proof may alone be used, without presentation of specific instances of discrimination, to establish a prima facie case of employment discrimination"); *Mitchell v. Diamond Cab Company of District of Columbia,* |

2003 U.S. Dist. LEXIS 12492, *25 (D.D.C. 2003) (motion for summary judgment) (collecting cases); *Simon II,* 2002 U.S. Dist. LEXIS 25632, *156 (E.D.N.Y. Oct. 22, 2002) (citing to extensive body of law review articles discussing sampling to prove liability and making point that requiring individuals trials on damages allows wrongdoer to avoid responsibility for conduct). Both scholars and courts have recognized that, in many cases, statistical methods actuall provide a more accurate form of evidence than individual testimony. **Simon II,** 2002 U.S. Dist. LEXIS 25632, at *161.

(j) Many categories of federal cases routinely use statistical methods to determine liability and damages. See, e.g., *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L. Ed. 2d 498 (1977); *Zippo Manufacturing Co. v. Rogers Imports, Inc.* 216 F. Supp. 670 (S.D.N.Y> 1963) (Feinberg, J.) (survey data in trademark infringement case); *Cimino v. Raymark Indus.,* 751 F. Supp. 649, 659 (E.D. Tex 1990) (discussing statistics and its applications in federal cases) *rev'd, Cimino v. Raymark Indus., Inc. 151 F.3d 297 (5th Cir. 1998)*. Courts frequently permit evidence of life expectancy on mortality tables when determining damages. See *Ageloff v. Delta Airlines, Inc.,* 860 F.2d 379 (11th Cir. 1988); *Asana v. United States,* 616 F.2d 41 (2nd Cir. 1980); *Larsen v. International Business Machines Corp.,* 87 F.R.D. 602 (E.D. Pa. 1980) (use of work-life tables.

(k) The Plaintiff needs to discover all documents (electronic or otherwise) relating to JACCS, CRYSIS, the "release discrepancy database," the District of Columbia Superior Court CIS system, FTR Gold and FTR regular (recording

11

system, drug program software systems ("old system, Prism") and "any other computer software used to track and monitor persons charged with criminal offense heard in the Superior Court of the District of Columbia."

(l) Plaintiff need the raw data instead of paper discovery so Plaintiff can reconstruct the databases, combine the databases, run their queries, and generate his own reports. The simplest method of obtaining this information [data items (fields), datasets, and key fields] is to obtain selected fields from databases that contain information about putative class of overdetained persons.on a medium such as a DVD and then to give the selected fields to an expert for analysis. The expert could then put the selected fields from the different databases into a single database and devise a computer program to compile a group list, profile and sample. Plaintiff will have generated identifiers to identify individuals using the unique identifiers of PDID, DCDC and case numbers and then ask the defendants to produce data identifying overdetained and other designated comparatives by name. Plaintiff will ask for social security numbers of selected overdetained by name as needed to locate them for notice and sampling. This is the method that was successfully employed in a similar case, a class action lawsuit[5]

(m) Plaintiff needs to discover more than one database in this case. First, the Department of Corrections ("DOC") has used two different computerized inmate management system databases during the recent past. From before 1999 up to about October 2000 the DOC employed a computer system called "CRYSIS." Then, in about October 2000, the DOC switched to the current

---

[5] *Williams v. Los Angeles County*, Case No. CV 97-03826-CW (and consolidated cases),.

        system called "JACCS."  Plaintiff's expert will definitely need fields from the JACCS database because that is the computerized inmate management system current used to track inmates and their release dates at the DC jail.  Plaintiff will need some fields from the CRYSIS  system because when the DOC made the switch from CRYSIS to JACCS, the DOC did not "migrate" from CRYSIS to JACCS all the data needed to make sentence calculations for inmates serving sentences and other release decisions.  (Plaintiff knows this from discovery had in other cases).

(n)     Plaintiff further needs fields from the CIS system and other District of Columbia Superior Court databases to serve as a check on the accuracy of the data in JACCS and CRYSIS and to supplement gaps in the JACCS/CRYSIS data because of problems with data entry in the JACCS and CRYSIS systems. ***Report of Inspector General on Central Detention Facility,* Report Number 02-00002FL, October 2002, "Inspector General's Report.**  According to the Inspector General's Report, on October 25, 2001, over one year after the Action Plan was filed, the DC Jail's inmate management software, JACCS, indicated that 703 inmates were overdetained on that date.

(o)     Third, CIS contains many fields that have information that can be used to verify or calculate release dates or ascertain overdetainees even though the data in the fields is not used by the Department of Corrections in making release determinations because the information is not entered in the CIS until several days after the date the person is entitled to release.  For example, CIS has fields that capture information about a defendant's charge, his court dates,

13

        his release status (whether and when in custody), disposition, and jail sentence if any. Data in these fields can be used to verify or supply missing data in JACCS.

(p)      On the other side of the coin, CIS has some fields with information on releases that is relied on by the Department of Corrections in making certain releases. For example, the current procedure for obtaining the release of an in custody pretrial detainee held on bond is to go to the District of Columbia Superior Court Finance Office and post the bond, obtain a receipt from the Finance Office verifying payment of the bond, and then take the receipt to the DC Jail to obtain release of the inmate. The DC Jail will not release such a person without the bond receipt.

(q)      Fourth, the fields from the CIS system and other District of Columbia Superior Court databases will also be used in compiling a statistical profile of the arrest and conviction history of overdetained persons and other comparables regarding violation of extradition procedural and substantive rights as well as deprivation of dental and other medical treatment.

(r)      The PTL (Prisoner Transfer List) generated by the District of Columbia Superior Court CIS system does show every in-custody defendant at the DC Jail who went to court at the District of Columbia Superior Court on a particular day. JACCS (and (CRYSIS) for the relevant period) shows the charges and detainers against each person. Combining the data from these systems will enable Plaintiff to compile a list of victims of the District of Columbia Policy, practices, custom and procedures.

14

(s)     Plaintiff must conduct discovery for each database in stages in order to make intelligent choices about which electronic data is needed for each database, and to make the requests for raw data as narrow as possible. Plaintiff need to (1) identify databases with relevant information, (2) obtain data dictionaries (or record layouts) and documentation on how to interpret the code fields and technical manuals to identify what data items (fields ) , datasets, and key fields exist in each database and (3) depose person most knowledgeable how data items (fields), datasets, and key fields are used in the release process, or can be used by Plaintiff for identifying comparable victims similar to Plaintiff, calculating overdetentions, making profiles or choosing a sample, (4) request selected data items (fields), datasets, and key fields, less any personal identifying information, for each comparable victim which are relevant to Plaintiff's case of systemic, custom, policy, practice and procedure.

***Databases are Clearly Discoverable under the Federal Rules of Civil Procedure***

(t)     Computer information is discoverable under Rule 34 as a matter of course. Fed. R. Civ. P. 34(a) (document(s) include "data compilations from which information can be obtained"). AS long ago as 1990, in an employment discrimination class action, this Court ordered an employer to produce two of its "data bas[s], in computer readable form, with hard copy documentation required to interpret, program and decode the data". *Martin v. Potomac Elec. Power Co.,* 1990 U.S. Dist. LEXIS 11688, at **48-**50 (D.D.C. 1990). This Court has approved the discoverability of computer databases in at least two cases. In *Cobell v. Norton,* 96-1285 (RCL), the parties have been using discovery of

        databases and analyzing the data in them in the *"Indian Trust Fund"* litigation pending before this Court. *Alexander v. FBI,* 186 F.R.D. 137, 1998 U.S. Dist. LEXIS 22392 (D.D.C. 1998), dealing with the sufficiency of a 30(b)(6) deposition notice of the person most knowledgeable about one of the White House Office databases, clearly contemplates eventual production of the database if found to be within the scope of Rule 26.

(u)    Moreover, case law from other Circuits show that requesting and obtaining raw data in databases is a standard operating procedure in federal discovery in cases such as this one. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978); *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1382 (7th Cir. 1993) (sanctions for failing to produce database that contained raw data regarding commissions on each policy sold); *National Union Electric Corp. v Matsushita Electric Industrial Co.,* 494 F. Supp. 1257 (E.D. Pa. 1980; *Williams v. E.I. du Pont de Nemours & Co.,* 119 F.R.D. 648 (W.D. Ky. 1987) (defendant sought – and received at its own expense—the database that its adversary's expert had created from the hard-copy documents that were originally produced, including a copy of the computerized database in the form of the computer storage disc, the code book, all documents used in encoding the database, and the user's manual); *Anderson v. Cornejo,* 2001 WL 219639, at *6 (N.D. Ill. Mar. 6, 2001) (in case challenging discriminatory strip searches, court ordered defendants to provide plaintiffs with passengers' identifying information from computer databases of passengers that had landed at O'Hare International.) (**Symposium; Emerging Technologies and**

*the Law; Article; A Practitioner's Overview of Digital Discovery*, **Gpmz :/ Rev/ 347 19971998.**

(v) The courts have ruled that a flexible approach to discovery prior to summary judgment is warranted. *First Chicago Int'l,* 267 U.S. App. D.C. at 32, 836 F.2d at 1380 (1988). In *First Chicago Int'l,* the United States Court of Appeals for the District of Columbia Circuit held that a litigant was entitled to further discovery prior to summary judgment, despite the faiure to file a Rule 56(f) affidavit, because "other documents filed by the Plaintiff – as opposing motions and outstanding discovery requests – sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit." *Id.* see also *Novecon,* 977 F. Supp. At 54 (noting First Chicago Int'l exception to the Rule 56 (f) affidavit requirement. "It is incumbent on the court to make sure that the parties have had an opportunity to develop the record before ruling on a summary judgment motion," particularly where, as here, "a party claims the need for discovery. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

(w) The Court has a "duty under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment."[6] *See Strange v. United States Arms Control*

---

[6] Rule 56 (f) provides:

> *When affidavits are unavailable.* Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavits facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be

       *& Disarmament Agency,* 275 U.S. App. D.C. 37, 39, 864 F.2d 859, 861 (1980).

(x) Plaintiff needs discovery to show that the material sought above-referenced would lead to a genuine issue of material fact. *Dowling v. Philadelphia,* 855 F.2d 136, 139-40 (3d Cir. 1990).

(y) Plaintiff incorporate by reference Plaintiff's Affidavit filed in support of Motion for Injunctive Relief and in support of the original complaint. Plaintiff incorporate by reference Plaintiff Rule 56(f) Affidavit in support of Motion for discovery scheduling Order. Previously filed, and Plaintiff's affidavits filed in support of Plaintiff's Rule 56(e) and (f) Motions. See Plaintiff's Exhibits In Support of Plaintiff's Rule 56(e) Motion. See Plaintiffs Second Set of Exhibits in Support of Plaintiff's Rule 56(e) Motion. (Both Filed on November 9, 2006 in Paper Form). See Plaintiff's Motion for Judicial Notice filed on November 15, 2006

(z) The Plaintiff has established on the record that Plaintiff has factual evidence that tend to show a pervasive and widespread overdetention problem that is deeply rooted, and continues to cause unconstitutional harm.

(aa) The Plaintiff has established on the record as a whole, that this case is ripe and ready for discovery.

WHEREFORE, Plaintiff pray that this Honorable Court grant the motion for a discovery scheduling order.

---

    obtained or depositions to be taken or discovery to be had or may make such other order as is just.

_____//s//_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, was mailed, via electronic mail, this day of 15th day of November, 2006, to the following:

**VIA EMAIL TO**
**Denise.baker@dc.gov**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887

**VIA EMAIL TO**
Megan.benary@eclairryan.com
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

**Kelvin.Newsome@LeClairRyan.com**
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

**Facsimile 602 263-1784**
Daniel P. Struck
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012

_____/s//_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,