# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
                             )
**DR. SIMON BANKS, J.D.** )
**P.O. BOX 17052** )
**ALEXANDRIA, VA. 22302** )
                             )
                  **Plaintiff** )
                             )
**v.** )        **Civil Action No. 05-1514 (ESH)**
                             )        **Ellen Segal Huvelle, Judge**
**DISTRICT OF COLUMBIA** )
**SERVE, ANTHONY WILIAMS** )        ..
**MAYOR** )
                             )        **December 4, 2006**
**ODIE WASHINGTON,** )
**FORMER DIRECTOR** )        **4th AMENDED COMPLAINT**
**DC DEPARTMENT OF** )
**CORRECTIONS** )
                             )
**S. ELWOOD YORK, JR.** )
**FORMER DIRECTOR,** )
**DC DEPARTMENT OF** )
**CORRECTIONS** )        **(BANKS V ELWOOD, YORK,**
**724 THOMAS STREET** )        **ET AL**
**KEYWEST, FLA. 33040** )
                             )
**DEVON BROWN,** )
**DIRECTOR** )
**DC DEPARTMENT OF** )
**CORRECTIONS** )
**1923 VERMONT AVENUE, NW** )
**WASHINGTON, DC 2003** )
                             )
**LARRY CORBETT,** )
**FORMER WARDEN, DISTRICT OF** )
**COLUMBIA JAIL** )
                             )
**EDWARD D. REISKIN** )
**DISTRICT OF COLUMBIA** )
**DEPUTY MAYOR FOR PUBLIC** )
**SAFETY** )
**1350 PENNSYLVANIA AVENUE, NW** )

SUITE 327                                    )
WASHINGTON, DC 2004                          )
                                             )
NORA TALLY, CAPTAIN                          )
JAIL                                         )
DISTRICT OF COLUMBIA                         )
DEPARTMENT OF CORRECTIONS                    )
DC JAIL                                      )
1901 D STREET, S.E.                          )
WASHINGTON, DC 20003                         )
                                             )
GLORIA NELSON, DIRECTOR                      )
OF RECORDS                                   )
D.C. DEPARTMENT OF                           )
CORRECTIONS                                  )
1923 VERMONT AVENUE, NW                      )
WASHINGTON, DC 20003                         )
                                             )
DR. GREGORY PANE, DIRECTOR                   )
DISTRICT OF COLUMBIA                         )
DEPARTMENT OF HEALTH                         )
825 NORTH CAPITOL STREET, N.E.               )
WASHINGTON, DC. 20002                        )
                                             )
DR. FOZIA ABDULWAHAB,                        )
MEDICAL DIRECTOR DC                          )
JAIL AND CENTRAL TREATMENT                   )
FACILITY (CTF)                               )
1901 D STREET, S.E.                          )
WASHINGTON, DC 20003                         )
                                             )
CORRECTIONS CORPORATION OF                   )
AMERICA                                      )
102 Woodmont Boulevard, Suite 800            )
Nashville, TN 37205                          )
SERVE                                        )
CT CORPORATION SYSTEM                        )
1015 15TH STREET, NW                    )
SUITE 1000                                   )
WASHINGTON, DC 20005                         )
                                             )
CENTER FOR CORRECTIONAL                      )
HEALTH AND POLICY STUDIES, INC.)
SERVE                                        )
CT CORPORATION SYSTEM                        )
1015 15TH STREET, SUITE 1000            )

**WASHINGTON, D.C. 2005**       )

**JOHN CAUFIELD, WARDEN**     )
**CENTRAL TREATMENT FACILITY**  )
**(CTF)**                        )
**CORRECTIONS CORPORATION OF**  )
**AMERICA**                   )
**1901 E STREET, S.E.**          )
**WASHINGTON, DC 20003**     )

**Defendants**

**<u>COMPLAINT</u>**

1.      The plaintiff brings this action against the Government of the District of Columbia Government, and other District of Columbia Government defendants whom are employees of the District of Columbia, the Center For Correctional Health and Policy Studies, Inc., and the Corrections Corporation of America, in their official capacity, and in their individual capacity under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce the Fourth, Fifth, and Eighth Amendments and through the Fifth Amendment, the Standards of the Fourteenth Amendment, for injuries suffered by Plaintiff because defendants held Plaintiff at a District of Columbia Corrections facility past his release date, for False Imprisonment, and subjected the Plaintiff injuries as the result of Negligence, Medical Malpractice, and Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress.

**JURISDICTION AND VENUE**

3.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  This Court has pendent jurisdiction over the Plaintiff's common law claims against the defendants pursuant to 28 U.S.C. 1367(a).

**VENUE**

4.    Venue is appropriate in this District under 28 U.S.C. § 1391(b).  Each of the claims for relief arose in this judicial district.

5.    There is a clear question of liability on the question of whether the Plaintiff was over-detained, subjected to false imprisonment, and the answer to that question can be determined by ministerial inspection of the Department of Corrections' records, the corrected face-sheet authored by the Department of Corrections Records Office.

6.    Among the questions of law and fact are:

(a) whether defendant District of Columbia has a pattern and practice of holding detainees and inmates past their release dates;

(b) whether defendants District of Columbia has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates holding them past their release dates;

(c) whether defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

(d) whether defendants York, Devon Brown, Larry Corbett, Nora Tally, Gloria Nelson, Gregory Pane, and Fozia Abdulwahab were deliberately indifferent to the rights of Plaintiff and inmates and detainees in the

4

custody of the Department of Corrections by failing to supervise and appropriately their respective subordinates;

(e) whether defendants Corrections Corporation of America, Center for Correctional Health and Policy Studies, Inc., and John Caufield were deliberately indifferent to the rights of Plaintiff and inmates and detainees in the custody of the Department of Corrections by failing to supervise and appropriately their respective subordinates;

(f) whether the defendants individually were deliberately indifferent to Plaintiff's health and safety, and objectively were sufficiently serious to constitute constitutional violations.

(g) whether the defendants individually subjected the Plaintiff to unconstitutionally harsh conditions,

(h) whether the defendants' actions amounted to negligence

(i) whether the defendants' actions amounted to gross negligence.

(j) whether the conduct of the defendants individually and collectively violate clearly established constitutional rights, statutory law and rights of which a reasonable person would know;

(k) whether the defendants, individually, conduct was negligent and intentional and caused the Plaintiff to suffer injuries as the result of negligent infliction of emotional distress, and intentional infliction of emotional distress.

(l) Whether the defendants York, Devon Brown, Larry Corbett, Gloria Nelson, had prior knowledge of Plaintiff's right to be released from

5

custody on or before March 20, 2006 and because of their actions and inaction and actions, the Plaintiff was subjected to over-detention.

(m) Whether Plaintiff has sustained damages as a consequence of the defendants actions, and, if so, the proper measure of such damages.

## EXHAUSTION

The Plaintiff exhausted his administrative remedies by bringing the conditions that the Plaintiff suffered set forth in the complaint to the attention of Defendant District, Defendant York, Defendant Corbett, Defendant Caufield, Defendant Abdulwahab, Defendant CHHPS, Defendant CCA, the medical personnel and the Mayor's Risk Management Office, the Warden at CTF, the Contract Monitor of CCA/CTF.

## PARTIES

7.    The Plaintiff Simon Banks is an adult resident of the State of Virginia.  At all times relevant the Plaintiff was incarcerated at the CDF from December 17, 2004 through August 30, 2005, and April 26 thru April 27, 2006; and at the CTF from August 30, 2005 through April 26, 2006

8.    Defendant District of Columbia Government   ("District"), is a municipal corporation.  The District of Columbia by and through its agents, employees, is responsible for the supervision, training, of employees of and operation of the District of Columbia Department of Corrections ("DCDC") and ensuring the health and safety of all inmates incarcerated in DCDC facilities, including the Central Detention Facility ("CTF").

9.      The District through its agents, employees and assigns is responsible for monitoring the facilities with which the Department of Corrections contracts for the care and custody of prisoners committed to the custody of the Department of Corrections.  The District is also responsible for and has a duty to establish policies and procedures for the Department of Corrections and its contracting agents, and for the training, supervision, and discipline of DCDC staff.

10.     Defendant Elwood York, Jr., at all times relevant was the Director of the District of Columbia Department of Corrections **(from February 21, 2005 through December 2005)** and is being sued in his official capacity.  At all times relevant to this complaint, Defendant York was acting under color of law in all of his capacities with respect to the incarceration, care, custody, health and safety of the Plaintiff, Dr. Simon Banks.

11.     Defendant Brown, at all times relevant to this complaint, **(December 2005 thru April 30, 2006)** had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of the prisoners, including Dr. Simon Banks, under the Fourth, Fifth and Eighth Amendment of the United States Constitution and under the laws of the United States and the District of Columbia.  These necessary policies include policies to assure that prisoners are released when their sentence expire and to assure that prisoners are provided with proper and necessary medical treatment.

12.  Defendant DeVon Brown was the Director of the District of Columbia Department of Corrections and is being sued in his official and individual capacities. At all times relevant to this complaint, Defendant Brown was acting under color of law in all of his capacities with respect to the incarceration, care, custody, health and safety of the Plaintiff, Dr. Simon Banks. Defendant Brown, at all times relevant to this complaint, had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of the prisoners, including Dr. Simon Banks, under the Fourth, Fifth and Eighth Amendment of the United States Constitution and under the laws of the United States and the District of Columbia. These necessary policies include policies to assure that prisoners are released when their sentence expire and to assure that prisoners are provided with proper and necessary medical treatment.

13.  Defendant Larry Corbett was the Warden of the District of Columbia jail ("CDF") and is being sued in his official capacity. At all times relevant to this complaint, Defendant Corbett was acting under color of law in all of his capacities with respect to the incarceration, care, custody, health and safety of the Plaintiff,  Dr. Simon Banks. Defendant Corbett, at all times relevant to this complaint, had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of the prisoners, including Dr. Simon Banks, under the Fourth, Fifth and Eighth Amendment of the United States Constitution and under the laws of the United States and the District of Columbia. These necessary policies include

policies to assure that prisoners are released when their sentence expire and to assure that prisoners are provided with proper and necessary medical treatment.

14.    Defendant Edward D. Reiskin is the Deputy Mayor of the District of Columbia for Public Safety and is being sued in his official capacity.

15.    Defendant Nora Tally, Captain, is an employee of the DC Department of Corrections and is being sued in her official capacity and in her individual capacity.  At all times relevant Defendant Reiskin owed a duty to the Plaintiff to ensure that the Plaintiff was released when Plaintiff's sentence expired, and to ensure that his subordinates were properly trained and were familiar with the established release policies and sentence calculation policies of the District of Columbia, and had a duty to ensure the safety of the Plaintiff.

16.    Defendant Gloria Nelson, Director of Records, at all times relevant, was an employee of the D.C. Department of Corrections, is being sued in her official capacity.  Defendant Nelson had a duty to ensure that she and her subordinates were adequately trained and sufficiently aware of the record-keeping and sentence/release calculations of the Records Office of the DCDC.

17.    Defendant Dr. Gregory Pane, Director District of Columbia Department of Health, is being sued in his official capacity.  Defendant Gregory Pane, at all times relevant, had a duty to ensure that the Plaintiff's health was protected, and that the Plaintiff's medical needs were protected and afforded, and that the employees under his supervision were able, capable, equipped, to provide the Plaintiff with appropriate dental care.

18.     Defendant Dr. Fozia Abdul Wahab, Medical Director DC Jail and Central Treatment Facility, is being sued in his official capacity. Defendant Abdul Wahab, at all times relevant, had a duty to ensure that the Plaintiff and prisoners of the CDF and the CTF, were properly staffed with dentist and medical personnel that were sufficiently able and capable to provide the Plaintiff with appropriate dental care that met the standard of care and treatment reasonably expected and of which the Plaintiff could reasonably expect given the condition of the Plaintiff's dental-medical problem.

19.     Defendant Center for Correctional Health and Policy Studies, Inc. ("CCHPS"), and were in a contractual relationship with the District of Columbia and the Corrections Corporation of America. At all times relevant it provided medical care to prisoners in the DC Jail and the CTF.

20.     Defendant Corrections Corporation of America, Inc. ("CCA") is a Tennessee Corporation doing business in and with the District. CCA operates the Correctional Treatment Facility on behalf of the District. At all times relevant to this Complaint, Defendant CCA was acting under color of law in all of its activities with respect to the incarceration, care, custody, health and safety of the Plaintiff, Dr. Simon Banks.

21.     Defendant John Caufield, was the Warden of the Central Treatment Facility (CTF), is an employee of the Corrections Corporation of America, is being sued in his official capacity. He was responsible for the care and custody of prisoners committed to the custody of DCDC housed at CTF, and had a duty to provide for their safety. He also was responsible for and had a duty to

establish policies and procedures for CTF and oversight of the training, supervision, and discipline of CTF staff. At all times relevant to this Complaint, Defendant John D. Caulfield was acting under color of law.

## FACTUAL ALLEGATIONS
## DISTRICT OF COLUMBIA'S PATTERN AND PRACTICE OF OVER-DETENTION

### Introduction and description of the problem

22.    In all the acts and omissions alleged herein, all of the Defendants were acting under color of the laws, customs, and uses and by virtue of the laws of the District of Columbia and the Constitution of the United States.

23.    At all times relevant herein, each and every defendant knew or should have known of the acts, omissions, and conditions alleged herein. Said acts and omissions violated Plaintiff's Constitutional and statutory rights.

24.    Defendant District of Columbia was at all times relevant the employer of each of the District Defendants, and the employees and subcontractors of CCA were agents of the District of Columbia whose actions are stated in this Complaint. With respect to these acts, the employees and subcontractors acted within the scope of their employment. Under the Doctrine of respondeat superior, the District of Columbia and CCA was and is responsible for the negligent acts of its officers for any and all common law, constitutional, and statutory violations.

25.    The Department of Corrections has a long and documented history of over-detaining detainees and inmates past their release dates.

26.    "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date.

27.    "Release Date" for each detainee is the day which the person is entitled to be released by court order or the date on which the basis for his or her detention has expired.

28.    The Plaintiff was released on April 28, 2006 at 10:00 O'clock PM although the Plaintiff's sentence expired on March 20, 2006.

29.    The Defendants and their employees, agents and assigns, miscalculated Plaintiff's release date on several occasions during May 2005 and April, 2006 as October 7 and October 2, 2006, respectively.

30.    The Plaintiff protested defendant's miscalculation of the Plaintiff's release date that the defendants, their agents, employees and assigns calculated, erroneously as October 7 and October 2, 2006.

31.    Notwithstanding the Plaintiff's numerous protest, including the Plaintiff's protest on July 7, 2005, and at other times, at or about a year prior to the Plaintiff's release, that the release calculation of the defendant DCDC Records Office and its personnel, was erroneous, and the Plaintiff specifically informed Defendants District and DCDC, the nature of its erroneous-miscalculated release date for Plaintiff as set forth in the face-sheet District-DCDC provided the Plaintiff, that defendants failed to credit the six months that the Plaintiff was purportedly erroneously released to the Alexandria, Virginia, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals, Judge Noel Kramer sitting by as an

appellate Judge, in the District of Columbia.  Notwithstanding Plaintiff's

repeated notices, the District failed to correct the error, with reckless,  and

egregious indifference to the rights of the Plaintiff, and subjected the Plaintiff

to an additional seven months and 9 days of incarceration beyond the

expiration of the Plaintiff's sentence, March 20, 2006.

32.    The District was further advised on April 4, 2006, via facsimile from Plaintiff

to the Mayor's Risk Management Officer, that the District had erroneously

calculated the Plaintiff's release date to be October 2, 2006.

33.    Despite this repeated prior notice, the District did not release the Plaintiff, or

correct the Plaintiff's release date, which subjected the Plaintiff to an

additional seven months and 9 days of incarceration until the Plaintiff filed an

Emergency Petition pursuant to DC Code §23-110, for release from over-

detention and false imprisonment.

34.    When the District received further notice from the Court's, on or about April

26, 2006, the District rather than release the Plaintiff then, the District

transferred the Plaintiff to the CDF on April 26, 2006 for release processing.

35.    On April 26, 2006, at 1:00 PM the Plaintiff was taken from E2A Section of

the Central Treatment Facility and placed in a holding cell at the Central

Treatment Facility until 10:00 0'Clock PM where there was no TV, bed, or

recreation area.    The Plaintiff was required to sit in a chair and then on the

floor until 1:00 a.m. on April 27, 2006

36.    On April 26, 2006, at 10:00 PM the Plaintiff was taken to the DC Jail and held

in a holding area on the first floor of the DC Jail until 12:30 A.M. April 27,

2006 when the Plaintiff was transferred to an intake cell on the Third Tier of

the DC Jail and not released for recreation until 2:30 PM thru 5:30 PM, then

the Plaintiff was returned to his cell where the Plaintiff remained until 5:30

PM on April 27, 2006 when the Plaintiff was allowed to leave his cell for four

hours of recreation and then returned to his cell until April 28, 2006.

37.    On April 28, 2006, the District allowed the Plaintiff to come out of his

assigned cell at 2:30 PM and at on or about 6:00 O'clock PM the Plaintiff was

informed that he could bag up, without telling Plaintiff whether the Plaintiff

was being released or being reassigned to a Halfway House as the Plaintiff

was previously informed on April 15, 2006, by Ms. Jennings, the Case

Manager of E2A of the CTF Detention Center.  It took the District another

three and a half hours to release the Plaintiff.

38.    D.C. Code § 24-201.06 requires that a prisoner shall be released by the

Department of Corrections on the date of the expiration of the prisoner's term

of imprisonment, less any time credited toward the service of the prisoner's

sentence.  The federal rule is the same.  8 USCA § 3624(a).  The District

violated the Plaintiff's Constitutional rights pursuant to these laws.

39.    "Exit Date" for each detainee or inmate means the date on which he or she

was actually released from the custody of the Department of Corrections.

**The Department of Corrections And Its Facilities; Responsibility**

**For Administering Prisoners In the District of Columbia**

40.    As Director, Defendant DeVon Brown is the policy maker for the Department

of Corrections.

14

41.    Defendant DeVon Brown has ultimate supervisory authority for all operations of the Department of Corrections.

42.    Defendant DeVon Brown is ultimately responsible for the functioning of the Department of Corrections' Records Office, as defined below, and all other Departments of Corrections Facilities.

43.    Defendant DeVon Brown is also responsible for ensuring that each employee of the Department of Corrections discharges his or her duties in accordance with the law.

**COMPONENTS OF THE DEPARTMENT OF CORRECTIONS**

44.    The District of Columbia Central Detention Facility ("D.C. Jail") is the primary facility used by the Department of Corrections to house inmates.

45.    The D.C. Jail houses about 2,000 and some odd prisoners at any one time.

46.    Most of the prisoners at the D.C. Jail are either pre-trial  detainees, misdemeanants serving sentences, or parole and probation violators.

47.    The Department of Corrections also houses prisoners in its Correctional Treatment Facility ("CTF").

48.    CTF is a freestanding, privately-run facility about 500 feet from the D.C. Jail building.

49.    Prisoners in CTF remain in the custody of the Department of Corrections.

50.    CTF houses about 700 individuals at any one time.

51.    Most prisoners detained in CTF are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

52.   The Department of Corrections also houses prisoners at various halfway houses located in the District of Columbia.

53.   On information and belief, approximately several hundred prisoners are housed at various Department of Corrections halfway houses at any one time.

54.   Inmates housed at Department of Corrections halfway houses remain in the custody of the Department of Corrections, although they are permitted access to the street in order to work, obtain drug or other substance abuse treatment, or for other purposes.

### THE INMATE MANAGEMENT SYSTEM

55.   The records office located at the D.C. Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the D.C. Jail, CTF and the halfway houses.

56.   The Records Office is responsible for ensuring that all persons housed at the D.C. Jail, CTF and the halfway houses are released according to their court-ordered Release Dates.

57.   Currently, the Receiving and Discharge Office located at the DC Jail is the only place where people are booked into and out of the Department of Corrections' custody.

58.   Until about June 2001, people were also booked out of the Department of Corrections' custody directly from the District of Columbia Superior Court.

59.     The Plaintiff was released from the DC Jail although the Plaintiff was housed at the CTF Facility until April 26, 2006, when the Plaintiff was taken to the DC Jail for release processing.

60.     Almost every inmate taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge is no longer pending is returned to the D.C. Jail for processing before release rather than being released from the courthouse.

61.     The District of Columbia Superior Court for the District of Columbia and the United States District Court for the District of Columbia use different computer systems from the computer system used by the Records Office.

62.     Release and commitment data entered into the court computer systems by courtroom clerks do not appear in the computer system used by the Records Office, the JAXX system ("JAXX") and (JACCS).

63.     As a result, all release and commitment orders generated by judges in the Superior and District Courts on paper must be hand carried to the Records Office by marshals as prisoners are bused from the courthouse to the jail.

64.     All processing of release and commitment orders must be done by hand at the Records Office located at the D.C. Jail.

65.     Release and commitment data entered into the court computer system by courtroom clerks must be entered again by hand into JAXX, JACCS.

66.     The name and DCDC number (jail identification number) of every inmate physically entering or leaving the D.C. Jail is also entered by hand into the

"Count" computer, a MacIntosh/Apple computer used to maintain a census of

all inmates in the D.C. Jail at any one time.

### THE CAUSE OF THE OVER-DETENTION PROBLEM – COLLAPSE AND NEGLIGENT APPLICATION OF THE INMATE MANAGEMENT SYSTEM

67.    The cause of the over-detention problem is a deliberate indifference by

Defendant District of Columbia, Defendant York, DeVon Brown, Defendant

Corbett, Defendant Corbett, and Defendant Nelson.

68.    to the rights of detainees and prisoners to be released on their Release Dates,

inasmuch as the Department of Corrections has no effective inmate

management system that can ensure release of prisoners by their Release

Dates.

69.    The fact that the Department of Corrections has no effective inmate

management system has been documented by a series of reports and

recommendations dated back at least 20 years.

70.    On October 5, 1999, John L. Clark, Corrections Trustee for the District of

Columbia, prepared a Report to the United States Attorney General entitled,

"Review of the Handling of Leo Gonzales Wright and Similar Offenders

Sentenced by the U.S. District Court for the District of Columbia" (the

"Wright Report").

71.    The Wright Report documented a long pattern of systemic problems dealing

with case management, classification and records office management at the

Records Office. (Wright Report, Major Findings, F-14).

72.     Among the major findings of the Wright Report were lack of adequate written

policy and procedures resulting in out-of-date policies that either were being

ignored or were ineffective, which resulted in an inmate records office

management system that was "overwhelmed and in distress and suffering

from years of prolonged inattention from top management." (Wright Report,

Major Findings, F-14 and F-20).

73.     The Wright Report also listed an extensive series of studies and

recommendations that were "not seriously implemented" including studies

dating back as far as 1976.  The studies mentioned and some of their principal

recommendations were as follows:

1976 RMC Research Corporation Analysis.  Major
Recommendations: reorganization of the Record Office and
increased staffing in the office.

1985 BOP Evaluation.  Major Recommendations:  creation of a
headquarters level position at the Department of Corrections' to
provide guidance and written policy to the Records Office; increased
Records Office staff; and restricted access to the Records Office and
files.

1986 DOC Security Workgroup Study.  Major Recommendations:
creation of a system of judgment and commitment files separate
from central inmate files; restricted access to the Records Office and
institutional files.

The District was placed on notice of the defects in the Defendant's
Records Office that resulted in over-detentions and false
imprisonment of prisoners beyond the dates and times that they are
entitled to be released and beyond the time when their sentences
expire.

## PLAINTIFF'S OVER-DETENTION BY THE D.C. JAIL

74.     Plaintiff,  Simon Banks' Release Date from incarceration was March 20,

2006.

75.    Plaintiff, Simon Banks' was over-detained for more than 40 days when the Plaintiff was released on April 28, 2006 at 10:00 p.m.

76.    The moving force behind Plaintiff's over-detention was the collapse of the Department of Corrections' inmate management system and the inability of the District's (DCDC) Record office employees to correctly compute and determine the correct date that the Plaintiff was entitled to be released from custody.

77.    Defendants' over-detention of the Plaintiff was unconstitutional, outragous, egregious and with reckless indifference to the rights of the Plaintiff.

78.    Because of the District's actions and inactions, Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a result of the over-detention.

79.    The District had further prior notice of the erroneous release date that the District defendants caused to be computed regarding the Plaintiff when the Plaintiff filed this instant civil suit on July 7, 2005 and when District, Defendant York, Defendant Corbett,  were copied with Plaintiff's suit and Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive Relief.  See ¶2-Z5 of Page 12 of Plaintiff's initial complaint.

80.    Notwithstanding Plaintiff's civil complaint and Plaintiff's exercise of serving notice upon the Defendants York, Brown,  and Nelson, these Defendants did not correct their erroneous computation which resulted in the plaintiff being over-detained for in excess of 40 days beyond his March 20, 2006 release date.

81.  On or about May, 2005, the defendants' subordinate correction officers conducted a shakedown at the unit where the Plaintiff was housed in the District of Columbia Jail.

82.  In February and March 2004, the Plaintiff paid in excess of $8000 to have seven of his teeth sawed down for purposes of installing a permanent dental crown that would improve the protection of Plaintiff's teeth and that would improve the Plaintiff's teeth appearance.

83.  During a Shakedown, (strip search of inmates and their cells) correction officers of the District (DCDC), confiscated and destroyed Plaintiff's dental crown protecting some 7 teeth of the Plaintiff.

84.  The Plaintiff filed a grievance and a complaint with Warden Corbett of the District of Columbia Jail regarding the confiscation and destruction of the Plaintiff's Dental Crown, dated February 11, 2005, via facsimile.

85.  In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown by correctional officers of the DC Jail, the Plaintiff met personally with Warden Corbett in Warden Corbett's Office on February 22, 2005, connected with the Plaintiff's facsimile to Warden Corbett of February 11, 2005, and Warden Corbett stated he would look into the matter but that he doubted that there was anything that the DC Jail medical unit could do to assist Plaintiff in securing a dental crown for the Plaintiff's exposed teeth.

86.  In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown and in connection with the pain, suffering and damage

to the Plaintiff's teeth, the dental unit of the Department of Corrections treated the Plaintiff with antiobics and informed the Plaintiff that that was all that the dental/medical unit could do other than pull seven of the Plaintiff's teeth that were chipping and causing the Plaintiff to suffer infection and great pain and suffering, because they were not equipped to perform other dental services, nor could the dental unit provide the Plaintiff with any dental crown.

87.  Because of the District's failure to appropriately treat the Plaintiff's dental problem, from February 9 2005, through April  2006, the Plaintiff suffered chipping and repeated gum and tooth infection due to the exposure of the Plaintiff's seven teeth without the protection of a dental crown.

88.  Because of the District's deficient actions and inactions, the Plaintiff, from May, 2005 through April, 2006, was repeatedly provided pain medicine and antibiotics to alleviate the pain and suffering that the Plaintiff was suffering as the result of the progressive destruction of Plaintiff's seven sawed down teeth which were openly exposed as, the result of  the District failure to provide the Plaintiff with a temporary crown to protect the Plaintiff's brittle teeth..

89.  As a consequence of the defendants' egregious, gross negligence, and reckless indifference to the medical needs of the Plaintiff, and because of defendants failure to provide the Plaintiff with replacement crown,  the Plaintiff suffered the lost of four remaining teeth out of the seven teeth of the Plaintiff that were prepared for a dental crown prior to the Plaintiff's incarceration Plaintiff suffered anxiety, loss of teeth, pain, gum infection, and damages as the result of the destruction of the Plaintiff's dental crown and the defendant's failure to

replace the Plaintiff's dental crown or afford the Plaintiff opportunity to go to his dentist who was prepaid to secure f or the Plaintiff a temporary and/or permanent dental crown which done to improve the plaintiff's looks, smile, and general appearance.

90.    The failure of Dr. Gregory Pane, Director District of Columbia Department of Health, Pane, Director District of Columbia Department of Health, Defendant Edward D. Reiskin as the Deputy Mayor of the District of Columbia for Public Safety,  and Dr. Fozia Abdulwahab, Medical Director, DC Jail and Central Treatment Facility (CTF) to provide for Plaintiff to have proper dental care, medical care, and the policy, custom and systemic practices of the medical department at the DC Jail and the Central Treatment Facility, not to treat exposed teeth  and their failure to provide Plaintiff with a dental crown, while such facilities were under their respective supervision, management and direction of defendant Pane,  and Dr. Fozia Abdulwahab, constitute deliberate indifference to the dental health, and general health and safety of the Plaintiff.

91.    At all times relevant the defendants were aware and knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions.

92.    The actions and inactions of Dr. Gregory Pane and Dr. Fozia Abdulwahab, unconstitutionally deprived the Plaintiff of the basic necessities of life and was egregious and outrageous.

**FAILURE AND/OR DELIBERATE ACTIONS OF
DEFENDANTS ELWOOD YORK, DEVON BROWN AND LARRY
CORBETT
TO HOUSE THE PLAINTIFF AT THE CENTRAL TREATMENT**

**FACILITY**

93.     When the Plaintiff was initially incarcerated in connection with the four

consecutive misdemeanor contempt citations and order, arising out of the

Plaintiff's allege violation of  prior restraint speech restrictions of  DCCA,

through Judge Noel Kramer, (for alleged violation of injunctive order

precluding the Plaintiff from indicating that the titles "Hearing Examiner" and

"Administrative Law Judge" are interchangeable and from indicating that the

Plaintiff provides nationwide service) on April 8, 2004, in May, 2004, the

Plaintiff, was determined by the District as illegible for reassignment to

housing at the CTF and then transferred to the CTF.

94.     Notwithstanding the Plaintiff's prior eligibility and designation as eligible for

reassignment and housing at the CTF,  and notwithstanding the Plaintiff's age,

65, the  District assigned the plaintiff housing at the CDF on December 17,

2004, when the Plaintiff was returned to the DC Jail after spending six months

incarceration at the Alexandria Detention Center.

95.     Despite the eligibility assessment and approval for reassignment to the CTF

Facility, the Plaintiff was denied housing at the CTF Facility, when and while

inmate with higher custody levels were higher, and whom were under 64

years of age.

96.     Defendant District, York, Corbett, and Talley,  from May, 2005 through

August 30, 2005,  caused the Plaintiff to be reassigned and housed at the CDF,

at sections of the DC Jail labeled "the hole" where the Plaintiff suffered

regular lockdowns, extreme restrictions on liberty, recreation, commissary,

visitation, telephone privileges and deprivation of access to the Jail's law library, with only one hour provided for both telephone, shower and recreation and where the Plaintiff was locked down for 23 hours per day for 30 days, limited to one hour in which to take a shower, use a telephone when one was available, and participate in recreation; and for sixty (60) days where the Plaintiff was locked down for twenty hours per day, and where the Plaintiff received visitors chained from ankle, waist and wrist handcuffs, and when the Plaintiff was transported to the visitors unit of the CDF, the Plaintiff was placed in a locked holding –steel cage, like an animal and segregated from other inmates, the same as if the Plaintiff had committed a violation of institutional rules and was placed on administrative segregation.   As a consequence of this action of the District,  the Plaintiff suffered inhumanely, humiliation, lost of liberty, undue hardship and deprivation of privileges afforded other non-violent inmates.

97.    As a consequence of the actions and inactions of the District, Defendants York, Larry Corbett, Gregory Pane, Edward D. Reiskin and Captain Tally, the Plaintiff was commingled with inmates whom were charged with multiple murder, members of "Murder Incorporated, including inmate that committed murder in the Tavern Case, and other murderers, brutal physical crimes against members of the public whom confided in the Plaintiff that they were found guilty of murder, conspiracy to murder, and were awaiting transfer to the federal institutions operated by the Bureau of Prisons.

98.   The actions and inactions of the District against the Plaintiff, as set forth in

paragraphs 93 through 97 was outrageous, malicious, intentional, abusive,

egregious and with deliberate indifference to the Constitutional rights of the

Plaintiff.

**SUBSTANTIVE ALLEGATIONS**
**COUNT 1 – NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION**
**(Defendants District, York, Corbett, DeVon Brown,  Robert and Gloria Nelson)**

99.   The Plaintiff realleges and incorporate by reference all allegations set forth

above in this complaint.

100.  Defendants District, York, Corbett, DeVon Brown, and Gloria Nelson, whom

were entrusted certain duties including but not limited to ensuring the release

of Plaintiff on his Release Date, and of all detainees and inmates in the

Department of Corrections' Custody to certain Department of Corrections

employees.

101.  Therefore, Defendants District, York, Corbett, DeVon Brown,  and Gloria

Nelson had respective duties to exercise reasonable care in training,

supervising and disciplining of such employees in exercising their duties.

102.  The need for such training was obvious from the sensitive and technical nature

of the responsibilities entrusted to such Department of Correction employees.

103.  The problems at Department of Corrections facilities described above, and the

various reports prepared by **John Shaw, John L. Clark** and others, as well as

the injunctions and settlement agreements entered by the Honorable United

States **Judge Royce C. Lamberth**, on January 25 2006, in the case of

***Marcus Bynum v. District of Columbia, et al* 02-cv-956, [See 6-8, 18-20 of**

**Approved Settlement Agreement] [attached], (Over-detention class action resulting in a $12 Million Settlement),** *Carl A. Barnes v. District of Columbia,* **CA No. 06-315, (There exist some 41 affidavits of over-detained persons,** *Joseph Heard v. District of Columbia* **(**Spent 669 days in DC Jail, wrongly imprisoned), **the Shaw Report, Order to Show Cause Misc. No. 00-0149 (RCL), the August 21, 2000 "District of Columbia Department of Corrections Records Office Action Plan 2000," Department of Corrects Director August 31 2000 letter to Hon. Royce C. Lamberth, re: Order to Show Cause Misc. No. 00-0149 (RCL)**

104.    District was on notice that there was difficulty with the custom, policy, procedures and institutional mechanism upon which the District facilitated the release of inmates.  1999 by the D.C. Corrections Trustee, John Clark regarding the erroneous release of Leo Gonzales Wright." Pl.'s Opp'n at 11 ("Clark Report"). According to Plaintiff, the Clark Report noted that the "DOC administration should respond expeditiously to the problems in the records office management and implement the recommendations **[*29]**  of previous studies in 1985, 1989, 1996 and 1997. Particular attention to the need of the headquarters record office administrator, increased security, and a separate J&C file system should be a priority. Trustee Clark also recommended: The current process DOC has undertaken to thoroughly review and update all written policy in case management and records management needs to be brought to completion and operational staff adequately trained.

105.    The District was "aware that on July 28, 2000 John Shaw, an independent

consultant [operating] pursuant to an order by U.S. District Judge Royce

Lamberth, issued a report regarding the D.C. Jail Record Office Operations.

[The District was] on notice that in his report[,] Shaw noted six major studies

regarding the DOC Record Office Operations over the past 24 years and

concluded that many of the pertinent recommendations had not been followed,

including those made by Trustee Clark in the [Clark **[*30]**  Report]." Id.

("Shaw Report"). Plaintiff claims that "Defendants admit they received the

[Shaw Report] but deny they knew this information."

106.    The foregoing coupled with the reports and admissions of the Defendant

District of Columbia and the District of Columbia Department of Corrections

therein, should have made it obvious to Defendants **District**, York, Corbett

DeVon Brown and Gloria Nelson, that the training such employees were

receiving was inadequate, that the medical care and dental care, were

inadequate, that the Records Office ability to correctly calculate Release Dates

and facilitate the timely release of inmates at the DC Jail and CTF were

inadequate, and that as a direct and proximate result Plaintiff and other

inmates under their supervision would suffer injury.

107.    Defendants S. Elwood York, Jr., DeVon Brown, and Gloria Nelson,

respectively, negligently trained and supervised or negligently failed to train

and supervise such employees in their duties, and as a result such employees

were incompetent to perform their duties.

108.   This negligent training and negligent failure to train and supervise by
       Defendants York, Corbett, DeVon Brown and Nelson, respectively, resulted
       in the, mismanagement, complete breakdown of the inmate management
       system of the Department of Corrections, a continuing violation of the rights
       of inmates and of the Plaintiff's rights, and as a result such employees were
       incompetent to perform their duties.

109.   This negligent training and negligent failure to train and supervise by
       Defendant District, York, Corbett, DeVon Brown, and Gloria Nelson, resulted
       in the mismanagement, ineffective and complete breakdown of the inmate
       management system of the Department of Corrections and caused the over-
       detention of Plaintiff and other inmates, a continuing violation, a continuing
       custom, usage and institutionally policy, overtly, covertly, and negligently
       perpetuated prior to and subsequent to the filing of the *Marcus Bynum, et al,*
       02-956, Case, the injunctions issued and settlement agreement ratified by
       United States District Court Judge, Royce Lamberth. *Id.*

110.   Defendant Gloria Nelson, Director of Records, DC Department of
       Corrections, negligently performed her duties and functions of keeping
       accurate release records and accurately computing and facilitating the
       Plaintiff's release on the date the Plaintiff's was entitled to be released.

111.   At all times relevant, Defendant Nelson knew and had reason to know, and it
       was foreseeable that if Defendant Nelson and the employees of the DCDC
       Record office did not perform their duties accurately and competently, of
       facilitating the Plaintiff on the date his sentence expired and when the Plaintiff

was entitled to be released that the harm and injuries Plaintiff suffered would occur.

112. As a result of said negligence of Defendants District, York, DeVon Brown, Larry Corbett and Gloria Nelson, Plaintiff suffered injuries described in the preceding paragraphs of this Complaint.

**NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION OF Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar**

113. Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, negligently trained their, employees, medical subordinants and negligently enforced a systemic policy, custom and practice and procedure of not affording proper, appropriate dental care to the Plaintiff's dental and medical needs because of a policy, custom, practice and procedure of deliberate indifference to the medical and dental needs of the Plaintiff.

114. Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, were aware of the facts that a substantial risk of harm exist to Plaintiff's teeth, dental health, and facial structure.

115. Defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions and enforcement of the official policy of the DC Department of Corrections Medical Department, its custom, practice that is persistent and widespread.

116. The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar were egregious, sufficiently serious and constitute flagrant abuse of the

constitutional rights of the Plaintiff, and were taken with deliberate indifference to the rights of the Plaintiff.

117.   The Plaintiff suffered physical injuries as the result of the actions and inactions of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar and their subordinates.

118.   The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, violated clearly established Constitutional rights, statutory law and rights of which a reasonable person would know, and were deliberately indifferent to the Plaintiff's constitutional rights.

**COUNT 2**
**THE DISTRICT'S VIOLATION OF THE FOURTH, FIFTH AND EIGHTH AMENDMENTS,**
**AND, THROUGH THE FIFTH, THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C.§ 1983**

**(Defendants York, Corbett, DeVon Brown and Gloria Nelson,)**

119.   Plaintiff reallege and incorporate by reference all allegations set forth above in this complaint.

120.   Defendants District, York, DeVon Brown, Corbett and Gloria Nelson, were at all times relevant, the supervisors of the Department of Corrections employees charged with ensuring the release of Plaintiff on Plaintiff's Release Date and the Release of all detainees and inmates in the custody of the Department of Corrections.

121.   Defendant District, York,  DeVon Brown, and Gloria Nelson, respectively, deliberately failed to train, monitor and discipline such employees.

31

122.    Defendant District, York, DeVon Brown,  and Gloria Nelson, respectively, had both actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff and other inmates.

123.    Defendant District, York, DeVon Brown, and Gloria Nelson, respectively, engaged in a pattern of continued inaction in the face of such employees' documented widespread abuse of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

124.    Defendant District, York, Devon Brown, and Gloria Nelson, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

125.    The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant District, York, DeVon Brown, Corbett and Gloria Nelson, respectively, while York, DeVon Brown,  and Gloria Nelson, respectively, were acting under color of District of Columbia law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

126.    Defendant District, York,  DeVon Brown, Corbett and Nelson's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

127.    Defendant District's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

128.  Defendant Elwood York, Jr's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

129.  Defendant DeVon Brown's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

130.  Defendant Larry Corbett's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

131.  Defendant Gloria Nelson's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

132.  The "actions and inactions" of all Defendants "both directly and through a pervasive policy of failing to provide funding, staff and supervise and enforce policies and procedures with respect to the operations of the Records Office, classification and case management and processing of release orders and warrants constituted the deliberate indifference to Plaintiff's right to be free from cruel and unusual punishment pursuant to the *Eighth Amendment*[], not to be deprived of his liberty without Due Process of Law in violation of the *Fifth Amendment* and [to be] free from unreasonable seizure in violation of the *Fourth Amendment to the Constitution*.

### ACTIONS OF DEFENDANT NORA TALLY, CAPTAIN

133.  On June 29, 2005, after the Plaintiff complained to defendant Tally that an inmate that had just been assigned to Plaintiff's cell had disclosed to the Plaintiff that he was HIV positive and that the Plaintiff , who immediately when to the CDF infirmary then demanded of Defendant Tally that the new inmate be transferred to another cell or that the Plaintiff be transferred to

another cell, defendant Tally, in retaliation against the Plaintiff for Plaintiff's

protected disclosure, placed Plaintiff in  solitary confinement, in a disciplinary

division of the District of Columbia Jail, referred to as the "hole" where the

Plaintiff was locked down for 30 days for 23 hours per day, required to wear

shackles from arms to feet, at visitations and at trips to the medical unit, and

locked in a cage during visitations, and commingled with inmates that had

high custody levels including an inmate that was incarcerated for committing

murders in a Tavern that was published in the media as well as other inmates

whom informed the Plaintiff that they were incarcerated in the area where the

Plaintiff was confined from June 29, 2005 through August 30, 2005.

134.    Defendant Tally asserted to the Plaintiff that she was placing the Plaintiff in

involuntary protected custody.  This alleged "protected custody action" and

reassignment, was a smokescreen to disguise the abusive, shocking;

retaliatory, disciplinary actions that Tally took against the Plaintiff.

135.    The actions of defendant Tally were in violation of the Plaintiff's

Constitutional Rights, statutory, rights, rights pursuant to 28 DCMR § 509.1

and other regulations of the DC Department of Corrections.

136.    The actions of defendant Tally, was intentional, excessive, disparate,

shocking, and with deliberate indifference to the Plaintiff's health, safety, and

objectively serious to constitute constitutional violations.

137.    The actions of defendant Tally deprived the Plaintiff of access to the Courts,

the DC Jail's prison library, and prejudiced and harmed the Plaintiff's civil

litigation, **Banks v. Comey, et al.** as well as other pending litigation of the Plaintiff's.

138. The actions of defendant Tally caused the Plaintiff to suffer cruel and unusual punishment in violation of the Eighth Amendment.

*139.* As a consequence of the actions of defendant Tally, the Plaintiff was deprived of access to the prison law library, the prison's computers, the prison's telephones.

140. As a consequence of the actions of Defendant Tally, the Plaintiff was unable and prejudiced in the Plaintiff's ability to prosecute his civil actions, *Banks v. Comey, et al.* No. 04-5161, 97 CV 01970, and *Commonwealth v. Banks,*

*141.*    which was made it substantially more difficult for the Plaintiff to acquire writing paper, specific times to make telephone calls, perform research, and prosecute the Plaintiff's appeal before the Virginia Court of Appeals.

*142.* The actions of Defendant Tally was egregious, outrageous and with deliberate indifference to the rights of the Plaintiff.

*143.* As the result of the actions of Defendant Tally, the Plaintiff was lockdown 23 hours per day for 30 days, and 20 hours for 4 months.

144. As a consequence of the actions of Defendant Tally Plaintiff was denied the minimal civilized measure of life's necessities.

*145.*

*146.* As the result of the actions of Defendant Tally, the Plaintiff was confined in a section of the jail described as the "Hole" where inmates whom committed misconduct, violation of the jail's rules, were housed as punishment.

147.  As the result of the actions of Defendant Tally, the Plaintiff was dangerous felons whom had committed murder, mayhem, and other heinous crimes, and whose custody level were high, while the Plaintiff custody level was "minimum".

148.  As the result of the actions of Defendant Tally, the Plaintiff was deprived of physical access to the Law Library.

149.  As the result of the actions of Defendant Tally, the Plaintiff was shackled from ankles to wrist when being escorted to the infirmary twice daily for medical treatment of the Plaintiff's diabetes.

150.  As the result of the actions of Defendant Tally, the Plaintiff was segregated from other inmates in the DC Jail, and when they passed the Plaintiff they were required to move aside along with their escort.

151.  As the result of the actions of Defendant Tally, the Plaintiff was escorted to the visitor section of the jail once a week for visitation and shackled with leg irons, hand-cuffs and placed in a locked cage, (like a dangerous animal) while other inmates met visitors in an open area without physical restraints.

152.  As the result of the actions of Defendant Tally, the Plaintiff was humiliated, embarrassed, isolated, suffered hopelessness, treated as though the Plaintiff's custody level was extremely high and as though the Plaintiff was a hostile threat to the security of the CDF, the staff of the CDF and other inmates, when the plaintiff was not.

153.  As a direct and proximate cause of the actions of defendant Tally, the Plaintiff suffered injury to his person, his mental health, and suffered mental and

emotional abuse, apprehension, and Plaintiff was continually on guard to

protect his person and safety against the commingled inmates whom were

charged with murder and other egregious conduct.

**COUNT III**
**§ 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT**
**DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS**
**OF ITS EMPLOYEES**

154.    The Plaintiff realleges and incorporate by reference all allegations set forth in

the preceding paragraphs of this complaint.

155.    District of Columbia employees caused the intentional unjustified over-

detention of the Plaintiff by deliberate indifference to the risk of constitutional

injury of over-detention in administering records relating to inmates'

detention and release.

156.    Over-detaining any person violates that person's Fifth and, through the Fifth,

Fourteenth Amendment procedural and substantive liberty rights to freedom

and due process, and also violates their Fourth and Eighth Amendment Rights.

157.    District of Columbia employees continue in such conduct up to and including

the present.

158.    At all times relevant such District of Columbia employees were acting within

the scope of their employment, their acts were motivated by a desire to further

the interests of the District of Columbia, and such District of Columbia

employees were acting in furtherance of the business of the District of

Columbia.

159. Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

160. The actions of defendants Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

161. The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, DeVon Brown, respectively, while Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab,, respectively, were acting under color of District of Columbia law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia, and furthering the interest of the District of Columbia.

162. Defendant Edward D. Reiskin's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

163. Defendant  Dr. Gregory Pane's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

164. Defendant Dr. Fozia Abdulwahar's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

165. Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

166. Defendant District of Columbia  is therefore further liable under 42 U.S.C. § 1983  for constitutional injuries to the Plaintiff caused by the deliberate indifference of defendant Tally.

167. At all times relevant defendant Tally was acting pursuant to the policy, custom, practices and procedures of the District of Columbia Government.


**UNCONSTITUTIONAL DEPRIVATION OF DENTAL CARE**

168. At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinate employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

169. At all times relevant the District of Columbia Government employees caused the intentional, unjustified harm to the Plaintiff's teeth, Plaintiff's dental health, and the disfigurement of the Plaintiff, because of the defendant's Reiskin, Pane and Abdulwahar's reckless and deliberate indifference to the medical and dental needs of the Plaintiff.

170. At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinates were acting within the scope of their

employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

171.   Depriving Plaintiff of the dental care that the Plaintiff was entitled to after the defendants destroyed the Plaintiff's dental crown, violates Plaintiff's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates Plaintiff Fourth and Eighth Amendment Rights.

172.   District of Columbia employees continue in such conduct up to and including the present.

173.   As a direct and proximate cause of the defendants Reiskin, Pane and Abdulwahab's actions and inactions the Plaintiff was injured and suffered damages to his physical person, his teeth, his dental health, his facial features, his ability to eat and consume food and drink, and his appearance.

**COUNT 1V**
**§ 1983 MONELL CUSTOM AND PRACTICE DIRECT LIABILITY OF DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, EIGHTH AND, THROUGH THE FIFTH, FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFF**

174.   The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint.

175.   District of Columbia employees caused the intentional, unjustified over-detention of the Plaintiff in failing to provide an effective system to govern the timely release of prisoners in its detention facilities.

176.    District of Columbia employees continue in such conduct up to and including the present time.

177.    Defendant District of Columbia was at all times relevant the municipality in charge of the D.C. Jail, CTF and other Department of Corrections facilities.

178.    Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in Department of Corrections  facilities in accordance with their Release Dates.

179.    There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.

180.    The pattern of unconstitutional conduct the Plaintiff complain of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.

181.    Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their Release Dates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff at a Department of Corrections facility. [The Honorable United States **Judge Royce C. Lamberth**, on January 25

2006, in the case of *Marcus Bynum v. District of Columbia, et al* **02-cv-956**, **[See 6-8, 18-20 of Approved Settlement Agreement attached]],**

182.    Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged with monitoring and ensuring release of the Plaintiff and other inmates in Department of Correction facilities in accordance with their Release in violation of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of such individuals.

183.    Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

184.    Defendant District of Columbia's policy, custom and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

185.    Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above were pursuant to the District of Columbia policy, practices and procedures and violated the Plaintiff's rights pursuant to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights

186.    The actions of defendants Reiskin, Pane, Abdulwahab and Tally, as described
        above, were the moving force behind the deprivations to the Plaintiff's Fourth,
        Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

187.    Defendant District of Columbia's (York, DeVon Brown, Corbett, Tally)
        actions, and failure to act, as described above, directly and proximately
        caused, and was the moving force behind, the Plaintiff's injury as described
        above were pursuant to the District of Columbia policy, practices and
        procedures and violated the Plaintiff's rights pursuant to the Fourth, Fifth and
        Eighth and, through the Fifth, Fourteenth Amendment

188.    Defendant District of Columbia's actions, and failure to act, as described
        above, directly, proximately and affirmatively caused the violations of the
        Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth
        Amendment rights.

### UNCONSTITUTIONAL DEPRIVATION OF DENTAL AND MEDICAL CARE

189.    Defendant District of Columbia's (York, DeVon Brown, Corbett, Tally)
        actions, and the actions of Dr. Pane, Dr. Abdulwahab, CHHPS, CCA, John
        Caufield, their respective employees, agents and assigns, and failure to act, as
        described above, directly and proximately and affirmatively were the moving
        force behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and,
        through the Fifth, Fourteenth Amendment Rights.

190.    Defendant District of Columbia's policy, custom, procedures and practice
        described above were the moving force behind the deprivations to the

Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth
Amendment Rights.

191.    Defendant District of Columbia's actions, and failure to act, as described
above, directly and proximately caused, and was the moving force behind, the
Plaintiff's injury as described above.

192.    Defendant District of Columbia's actions, and failure to act, as described
above, directly, proximately and affirmatively caused the violations of the
Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth
Amendment rights.

193.    Defendants Abudulwahab, CCA, CHHPS, and John Caufield, their
employees, agents and assigns, actions, inactions, as described above, directly,
proximately and affirmatively caused the violations of the Plaintiff's Fourth,
Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

**COUNT V**
**§ 1983 LIABILITY OF**
**DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, AND**
**FOURTEENTH AMENDMENT**
**RIGHTS OF PLAINTIFF WHEN PLAINTIFF WAS TRANSFERRED**
**TO ALEXANDRIA, VIRGINIA IN VIOLATION OF THE EXTRADITION**
**LAWS OF THE UNITED STATES AND THE DISTRICT OF**
**COLUMBIA**

194.    The Plaintiff reallege and incorporate by reference all allegations set forth
above in this Complaint.

195.    The District of Columbia government by and through the actions of
Defendants Odie Washington, and Steven Smith, former warden CDF, its/his
agents, employees and assigns violated the Plaintiff's constitutional rights and

statutory rights under the laws of the United States and the District of
Columbia, when they directly and indirectly caused the transfer of the Plaintiff
to Alexandria, Virginia on June 23, 2004, when and while the Plaintiff was
serving a sentence imposed by the District of Columbia Court of Appeals. .

196.   At the time Defendants District of Columbia, Defendant Odie Washington,
Defendants York, and  Steven Smith, former warden CDF, its/his agents and
assigns caused the Plaintiff to be transferred to Alexandria, Virginia, they
knew and had reason to know through clearly established law that a reason
person would know, that the Plaintiff's rights were clearly established not to
be transferred to the State of Virginia, and the Constitutional Rights vested in
the Plaintiff pursuant to the Extraditions Laws of the United States, the
Compact Act which the District is a party to, which requires that the prisoner
be advised of his rights and that any waiver be executed by the prisoner.
Moreover, the Plaintiff is not required to serve his sentence in installments,
nor is the Plaintiff required to waive his rights to complete the sentence
imposed and upon which the Plaintiff was serving.

197.   At the time Defendants Odie Washington, and Steven Smith, former warden
CDF, its/his agents, employees and assigns violated  its/his agents and assigns
caused the Plaintiff to be transferred to Alexandria, Virginia, Plaintiff had not
waived his constitutional right to an extradition hearing and to protest the
legal validity and authenticity of the detainer order of Alexandria, Virginia.

198.   At the time Defendants Odie Washington, and Steven Smith, former warden
CDF, its/his agents, employees and assigns violated its/his agents and assigns

caused the Plaintiff to be transferred to Alexandria, Virginia caused the Plaintiff to be transferred to Alexandria, Virginia, they knew and had reason to know that Plaintiff sought and was expecting an extradition hearing for purposes of exercising his constitutional right to protest the legal validity and authenticity of the detainer order of Alexandria, Virginia.

199.    Prior to the time Defendants Odie Washington, and Steven Smith, former warden CDF, its/his agents, employees and assigns violated, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, Plaintiff articulated his protest, in open court, against the legal validity, propriety and authenticity of the detainer order of Alexandria, Virginia.

200.    At the time Defendants Defendants Odie Washington, and Steven Smith, former warden CDF, its/his agents, employees and assigns violated, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, it acted with wanton/reckless disregard and with reckless indifference to the rights of the Plaintiff.

201.    Because of the deficient training that the District of Columbia Government, Defendants Odie Washington, and Steven Smith, former warden CDF, its/his agents, employees and assigns violated, its/his agents and assigns its employees agents and assigns, the Plaintiff was transferred to Alexandria, Virginia on June 23, 2004, in violation of his Constitutional and statutory right to a hearing to challenge and protest his transfer to Alexandria, Virginia in connection with the detainer that the City of Alexandria, Virginia

(Commonwealth of Virginia) had lodged against the Plaintiff, the Plaintiff was deprived of his substantive procedural constitutional rights.

202. As a consequence of the actions and inactions of Defendant District of Columbia, Defendants York (his Predecessor Steven Smith), its/his agents and assigns , transfer of the Plaintiff to the City of Alexandria, Virginia the Plaintiff suffered injury to his Constitutional Rights, his Substantive Due Process Rights and his Procedural Due Process Rights, including the right to bring a Petition of writ of habeas corpus to challenge the transfer prior to the Plaintiff being transferred to the City of Alexandria, state of Virginia.

203. As a consequence of the actions and inactions of Defendant District of Columbia, Defendant York  (his Predecessor Steven Smith), its/his agents and assigns , transfer of the Plaintiff to the City of Alexandria, Virginia, the Plaintiff was deprived of access to Plaintiff's computer, Plaintiff's personal files, the records of and exculpatory evidence contained in over 200 files of the Plaintiff's clients and former clients, including client that the Plaintiff represented in Okinawa, Japan, the files of FBI, CIA, Department of Justice employees and other government employee clients, including attorneys that the Plaintiff represented before administrative agencies of the United States, which irreparably and prejudicially prejudiced the Plaintiff's in the Plaintiff's ability to prosecute the actions that the Commonwealth Attorney and his agents fabricated against the Plaintiff and used the assistance of the Plaintiff's appointed attorneys to suppress these files from the Plaintiff, in an effort to force the Plaintiff to accept a plea to crimes the Plaintiff never committed, and

in effort to protect the Commonwealth Attorney and the City of Alexandria,
from the $150 Million civil suit Plaintiff brought against them, respectively on
July 5, 2004, and amended on July 7, 2004, and August 23, 2004, Civil
Action *Judge Banks v. Pak, et al*, Civil Action No. 04-CV-625. The Plaintiff
removed the action Commonwealth v. Banks, CF 04000337, on July 5, 2004,
Case No. Case No. 1: 04MG248 and, subsequently again on August 6, 2004,
of related case No. Case No. 1: 04MG249 – CF 04000240**,** immediately when
the Plaintiff was processed out of lockdown in the Alexandria Detention
Center, where the Plaintiff protested both cases as related to the Plaintiff's
illegal transfer on the basis of civil rights, 28 § U.S.C. 1443.

204.    The transfer of the Plaintiff, by the District to the City of Alexandria, the
product of a conspiracy, severely crippled the Plaintiff's ability to prosecute
his defense and to protect his civil, constitutional rights to due process of law
and caused the Plaintiff to rely, prejudicially upon the ineffective, deficient,
conflicted appointed counsel, whom secured a secret withdrawal as the
Plaintiff's appeal counsel, suppressed from the Plaintiff by both the court and
Plaintiff's appeal counsel after sabotaging the Plaintiff's defense, and the
Plaintiff was not made aware of the withdrawal until the Virginia Court of
Appeals ruled. The Plaintiff had previously requested an FBI and Senatorial,
Congressional Investigation.

## COUNT V1

## VIOLATION OF RIGHTS PROTECTED BY THE EIGHTH AMENDMENT

205.    The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

206.    From on or about December 21, 2004 to the present, the defendants individually and collectively have subjected the plaintiff to the following:

## A. OVERCROWDING

An overcrowded jail that exceeds the population cap to the rated design capacity, that resulted in the plaintiff and other inmates suffering a twenty-three hour lockdown seven days a week, poor-third world sanitary and health conditions, deprivation of recreation and medical services, and imminent threat to personal safety.

## MEDICAL CARE AT THE DC JAIL SUFFERS FROM SYSTEMIC DEFICIENCIES

The jail where the plaintiff was confined suffers from systemic deprivation of medical care, poor and extremely deficient medical care and services, lack of dental care, failure to respond to request for dental and other medical care needs.

## C.  THE DC JAIL SUFFERS FROM INADEQUATE MEDICAL HEALTH PROFESSIONALS

The DC Jail where plaintiff was confined suffers from systemic personal indifference with respect to its policy of providing medical care to inmates, inadequate staffing of medical health professionals including doctors, nurses, nursing assistants, which has resulted in continued failure to respond to plaintiff and other inmates numerous requests for medical needs and which have resulted in prolong delays from one week to ninety days to secure an appointment with a doctor, dentist, nurse, optometrist where the plaintiff has waited for in excess of ninety days for an appointment with the jail's podiatrist and optometrist and dentist to no avail.

49

### D.  DEFECTIVE AND UNSANITARY THIRD-WORLD SHOWERS

The defendants have directly and indirectly caused the plaintiff to be confined in the DC Jail Block, S.W. 1 where the showers are infested with bacteria, standing water, infested with various diseases and/or disease causing germs, bacteria.  The showers are made of aluminum and exhibit a third-world structure, a throwback to the 18th Century, where water collects because of insufficient drainage.

### E.  INADEQUATE DIETARY AND NUTRITIONAL HEALTH CARE PROFESSIONALS

The DC Jail where the plaintiff was confined suffers from inadequate dietary staff, nutritional health professionals, and as a consequence the plaintiff and other inmates whom require diabetic foods, have been denied nutritional diets and foods to accommodate our dietary needs, in particular the needs of diabetics.

### F.  DEFICIENT LAW LIBRARY RESOURCES AND STAFF

The DC Jail where the plaintiff was confined has an inadequate jail law library which suffers from a lack of staff, which is unable to accommodate a population that exceeds from 2,300 to 2,400 inmates and contains antiquated law books, Federal Reporters Third Series, Atlantic Reporters Second Series, a deficiency in Fed. Supplements, Advance Sheets and current volumes of the District of Columbia Codes, a deficiency in the current criminal code, a deficiency in the United State Reports, Supreme Court Reports, all which expire at 2001; a total lack of Slip. Opinions, Shepherds which expire at 2001; a lack of c.d.s which contain current laws, a lack of Black's Law Dictionary which is a third edition, some five editions behind current law all which prejudices and deprive the plaintiff and other inmates with access to the courts.  These deficiencies caused the Plaintiff to suffer inability to prosecute his case, *Banks v. Comey,*

Commonwealth v Banks, (removed case) CF 04000337, on July 5, 2004, Case No. Case

No. 1: 04MG248 and, subsequently again on August 6, 2004, of related case No. Case

No. 1: 04MG249 – CF 04000240 (removed companion case) before the United States

District Court for the District of Columbia and the United States  Court of Appeals for the

District of Columbia Circuit and the Plaintiff's appeal in the Court of Appeal of the State

of Virginia, and before the United States District Court, Eastern District of Virginia and

before the Fourth Circuit, and before the Supreme Court of Virginia, in that these

deficiencies substantially contributed to the Plaintiff's timely filing of his appeals.

## G.  INSUFFICIENT SECURITY AND LACK OF CORRECTIONAL OFFICERS

The DC Jail where the plaintiff was confined lacked appropriate security,

correctional officers and other staff to prevent a jail riot, or injury to staff as well as to the

respective overcrowded inmate population, and thus posed an imminent threat of personal

injury, personal safety, assault and/or death to the Plaintiff as well as to the other

respective inmates, in particular and as well as to staff and to inmates whom are fragile,

and inmates whom are elderly and inmates who are rated at a low or minimum custody

threat levels.

## H.  DANGEROUS COMMINGLING OF INMATES

The DC Jail where the plaintiff was confined, commingled, recklessly,

negligently, and unwarrantly, dangerous felons, felons with murder charges, with

misdemeanors defendant awaiting trial for stealing a coca -cola, and with other low-

custody rated inmates.  This systemic policy shows a reckless indifference for the safety,

health and welfare of the Plaintiff and other inmates.

## I.  DEFECTIVE GRIEVANCE PROCESS

The jail where plaintiff was confined did not process Plaintiff and other inmates grievances, and did not provide Plaintiff and other inmates with receipts of his/their grievances that they and that Plaintiff filed and submitted.  The jail systemically failed to credit, record or respond to grievances.  These actions are systemically designed to preempt and frustrate Plaintiff and other institutional inmates' ability to exhaust administrative remedies, a jurisdictional pre-requisite to filing suit under the PLRA.

## J.  SYSTEMIC SMOKE SCREENS TO FRAUDULENTLY DISGUISE AND SUPPRESS DISMAL HEALTH-SAFETY CRISIS AND DEPRECATORY CONDITIONS

The DC Jail where the plaintiff was confined engaged in systemic cosmetic smokescreens orchestrated to distort Plaintiff's and other inmate despair, disguised intrinsic defects, unsanitary conditions, rats, roaches, insects, and the potential for out-of-control spontaneous combustions; a jail that would make the Iraq's Abu Ghraib Prison look like a country club, or the Ritz Carlton.

## K.  LACK OF READING MATERIALS

The DC Jail where plaintiff was confined lacked magazines, reading materials and books to reduce boredom, despair, hopelessness, suicidal acts and inmate altercations, as well as dangers to society for retribution. (The Plaintiff suffered boredome, despair, and was a witness to inmate altercations that were causally connected to these deficiencies.

## L.  LACK OF RECREATIONAL BUDGET/ RECREATIONAL EQUIPMENT

The DC Jail where the plaintiff was confined did not provide a standard gym, table tennis, volleyball courts, weight lifting apparatus, walking room, et cetera, and there

is not established recreational budget for the DC Jail.  This deficiency caused the Plaintiff

to suffer mental and emotional distress and unwarranted anxiety.

### M. DEFECTIVE ROACH INFECTED MATTRESSES

The DC Jail where the plaintiff was confined contained hundreds of torn, unsanitary

and defective mattresses and blankets which have not been cleaned for months and are

systemically left on beds and are repeatedly recycled to other inmates whom are

processed in the jail's intake section as well as disseminated to other inmates.  Some

mattresses contain roaches and other insects.

### N.  ONE DESK, ONE CHAIR FOR TWO INMATES IN ONE-MAN CELLS

The DC Jail where the plaintiff was confined possessed one man cells where two

inmates are confined, there is one desk with one attached steel seat for each two-man

cells causing squabbles over the desks and chair space and usage for inmates whom are

locked down for an average of twenty-three hours per day, seven days a week.  This is a

deprivation of basic human needs, and most of the time during Plaintiff's confinement,

the Plaintiff did not have access to a desk and/or a seat to a desk.

### O.  DEFICIENT COMMISSARY

The DC Jail where the plaintiff was confined has a contract with a company to

provide commissary items to inmates which has failed to fill inmate order for some six

months, such as lotions, skin oils, hair oils, peanut butter and where such items as coffee,

tea are not included.  As well as other items which are not filled by the contractor.  This

has resulted in a breach of contract that has adversely affected the Plaintiff and other

inmate population who has contracted with the DC Jail to receive orders that they fill out,

resulting in unwarranted induced detrimental reliance and despair, anxiety which contributed to the adverse conditions setforth above and below.

### P.  LACK OF AND NO PROVISIONS FOR NAIL CLIPPERS

The jail where the plaintiff was confined systemically deprived the plaintiff and other inmates for some six months and longer of fingernail clippers, toenail clippers, and/or any manner by which the plaintiff could get his nails cut off, resulting in the plaintiff suffering for months with extraordinary fingernails and toenails which caused pain, suffering and anxiety.

### Q.  DEPRIVATION OF BASIC HUMAN NEEDS

The DC Jail where the plaintiff was confined, through its policy, practices and procedures deprived the plaintiff and other inmates of basic medical and human needs including skin lotions, sufficient blankets for cold cells, microwave ovens for heating cold foods and other foods improperly cooked foods that were prepared by inmates, for heating coffee, tea and soups.

### R.  REGULAR SEWAGE BACKUP

The DC Jail where the plaintiff was confined has regular sewage backups and subjects the plaintiff and other inmates to lockdown confinement in areas where sewage stench is nauseating, sickening and triggers pulmonary anxiety, mental and emotional stress and nausea.  Moreover, the sewage system and frequent backup poses an exponential health risk, if not an epidemic of colossal proportion.  As a consequence the Plaintiff suffered despair, anxiety, hopelessness as a consequence of the stench.

### S.  LACK OF DENTAL CARE

The DC Jail where the plaintiff was housed had two dentist who provided dental services limited to pulling teeth whether or not sound medical diagnosis and prognosis suggest tooth retention an alternative medical treatment and regimen.  There were two dentists for in excess of 2,300 inmates.  In order for inmates to receive dental services offered based upon expediency and opposed to sound medical judgment, inmates are required to sign a waiver rendering the jail and its medical staff harmless, or forego dental treatment, i.e. pulling of one's tooth (teeth).  Moreover, upon rejecting the tooth pulling alternative, the Plaintiff and other inmates were required to sign a form rejecting dental treatment.  There was no provision on the form that offers the rejectee inmate, including the Plaintiff an opportunity to state what specifically is being rejected.  As a consequence the Plaintiff's dental condition was not treated and the Plaintiff ultimately lost seven teeth.

### T.  UNAUTHORIZED OPENING OF MAIL OUTSIDE OF THE INMATE PRESENCE INCLUDING LEGAL MAIL

The correctional officers and/or staff of the DC Jail opened plaintiff's legal and personal mail on numerous occasions during the months of January through April 2005, outside of the plaintiff's presence, a violation of plaintiff's right to Due Process, Equal Protection and Privacy.  As a consequence the Plaintiff suffered deprivation to his constitutional right and reasonable expectancy to privacy with respect to legal matters.

### U.  HAZARDOUS BUNK BEDS WITHOUT LADDERS

The DC Jail where plaintiff has been confined had bunk beds without ladders and required the Plaintiff and other inmates to negotiate getting up and down these steel bunk beds, to Plaintiff's peril and to their peril where many have suffered falls and injuries, in

particular the elderly, the impaired, the disabled.  These bunk beds pose an imminent threat of injury and harm each time the Plaintiff and other inmates was required to negotiate getting up, on and down from these structural hazards.  This continuous and perpetual condition caused the Plaintiff to suffer anxiety, fear of falling and suffering an injury and apprehension each time the Plaintiff, a 66-67 years of age inmate, was required to negotiate his way to the upper bunk bed without a ladder.

### V.  DC DEPARTMENT OF HEALTH FAILURE TO INSPECT JAIL FOR HEALTH AND SAFETY

Because the District of Columbia Department of Health and its Director, had failed to conduct regular audits and evaluation of the unsanitary and unsafe conditions that systemically plague the DC Jail's facility, between April 8, 2004 through June 23, 2004, and December 19, 2005 and July, 2005, the Plaintiff was subjected to a condition of confinement where an egregious health and safety crisis existed, and was unabated, systemically and strategistically ignored for prolonged periods of time.  This reckless indifference for the rights of the Plaintiff and the DOC inmate population caused the Plaintiff to be subjected to conditions of confinement that provided a human health-safety crisis.

### W. LACK OF REHABILITATIVE COURSES

The DC Jail where the plaintiff was confined lacks:  rehabilitative courses, adequate staffing, adequate ventilation, adequate heating and air filtering and poses environmental risk because of lack of clean air and lack fresh air.

## X.  DEFECTIVE HEATING AND VENTILATION

Because of the DC Jail lack of heating and lack of ventilation, ventilating air ducts and air vents, air filters, the plaintiff and other inmates suffered from temperature ranging from thirty and forty degrees during the months of December through March 2005.

Y.  Because of the reckless disregard for the constitutional rights of the plaintiff and deliberate indifference of the defendants to the needs of the plaintiff and other inmates setforth in paragraphs 5A through X "here of " the plaintiff has suffered deprivations of his constitutional rights, equal protection of the laws, deprivation of due process.

## Z.  DESTRUCTION OF PLAINTIFF'S DENTAL CROWN AND REFUSAL TO REPLACE

When the correctional officers during the jail shakedown took plaintiff's temporary crown containing protection for seven of plaintiff's teeth that were sawed down and when the DC Jail's Dentist and the defendant failed to provide and protect plaintiff's exposed teeth which repeated became infected and at the present posed a serious risk of loss and irreparable harm and after plaintiff's serious medical/dental needs were diagnosed by the jail's two physicians, the defendants acted with reckless disregard and deliberate indifference to plaintiff's medical/dental health needs by refusal to accommodate plaintiffs health crisis.

## Z1.  RETALIATION AND REPRISAL FOR WHISTLEBLOWING ACTIVIES AND FOR PETITIONING THE COURT AND CONGRESS FOR REDRESS

In retaliation for plaintiff's whistleblowing activies and for petitioning the Courts, the Congress and the DC Jail for redress, the defendants' York and Corbett has subjected the plaintiff to systemic retaliation and reprisal from December 2004 to the present, by

retaliating against the plaintiff when they subjected Plaintiff to be placed in cell blocks where the plaintiff was locked down twenty-three hours per day despite the plaintiff's age, low custody level, and despite plaintiff had not violated any rules or regulations of the Department of Correction. The Plaintiff was previously housed at the Central Treatment Facility (CTF) contract facility, where the plaintiff was not locked down at all prior to being illegally transferred to Virginia on June 23, 2004, including failure to provide plaintiff with dental access.

### Z2. UPON CANCELLATION OF PLAITIFF'S ASSIGNMENT TO THE LAW LIBRARY

The defendant York and Corbett abruptly cancelled the plaintiff's assignment to the law library as a Volunteer Assistant and removed other library assistants as a smokescreen to disguise denying plaintiff access to the DC Jail's Library. The defendant Corbett directly and indirectly facilitated the abrupt closure of the law library on Tuesday, May 3, 2005 to prevent plaintiff access to the law library after Corbett received pleadings requesting leave to exceed the page limit where defendant Corbett is a defendant as Warden in the stead of defendant Smith in the Case of Banks v. Smith, et al.

### Z3. DEFENDANT CORBETT DIRECTEDLY AND INDIRECTLY FACILITATED THE CANCELLATION OF PLAINTIFF'S DIETARY MEALS ON MAY 2, 2005 CAUSING PLAINTIFF TO BE TAKEN OFF THE DIABETIC DIET LIST, DEPRIVING PLAINTIFF OF MILK, FRUIT, LOW SUGAR FOODS, LOW STARCH FOODS AND THREATENS PLAINTIFF'S GENERAL HEALTH AND SAFETY

### Z4. THE DEFENDANT YORK AND CORBETT PLACED AN INMATE IN A CELL WHERE THE PLAINTIFF WAS CONFINED WHO HAS SORES FROM HIS HEAD TO HIS FEET

Z5. The defendants York and Corbett placed an inmate in a cell where the plaintiff was confined whom had sores from his head to his feet. Many of the

sores were open.  The inmate, Mr. Davis, date of birth 5-5-58 suffers from fungus

infection, and a disease resulting from heroin and other drugs addition, and posed

an imminent health risk to the Plaintiff, causing the Plaintiff to suffer fear,

apprehension, anxiety, despair, depression and hopelessness.

207.    The actions of Defendant District of Columbia, Defendant Elwood York,

Defendant  DeVon Brown, Larry Corbett, its/his agents, employees and

assigns, were intentional, reckless, with reckless indifference to the rights of

the Plaintiff.

208.    The actions of Defendant District of Columbia and DeVon Brown, its/his

agents, employees and assigns, were intentional, and pursuant to the custom,

policy, and systemic practices, policies and procedures of the District of

Columbia Government, the District of Columbia Department of Corrections.

209.    Z5. Over-detention, causing the Plaintiff to suffer being imprisoned for 40

days past his release date, March 20, 2006, when the defendants did not

release the Plaintiff until April 28, 2006, although the District, its employees

agents and assigns knew and had reason to know, based upon the imposition

of the Plaintiff's sentence which was imposed on June 3, 2004, the Plaintiff

having been stepped back, April 8, 2004 coupled with the Plaintiff Letters to

the District, Defendant York and Defendant Corbett, in February, March,

June, July, 2005 and again on April 4, 2006, via facsimile and correspondence

as well as through the Plaintiff's initial complaint filed on July 7, 2005, and

via facsimile and first class mail, that the District had miscalculated the

Plaintiff's release date, release from incarceration.  And notwithstanding these

prior notices, which were ignored by the District, Defendant York, Defendant Corbett, Defendant Nelson, causing the Plaintiff to suffer harm to Plaintiff's Constitutional rights and to his person.

210. The actions of the District, Defendants York, Corbett, and Nelson, were based upon deliberate indifference to the rights of the Plaintiff to be free from incarceration when the Plaintiff's sentence had expired.

211. Plaintiff has complied with the provisions of D.C. Code § 12-309 by proving timely written notice to the Mayor, through the Office of Risk Management, of his intention to file civil claims against the District of Columbia based upon the Plaintiff's over-detention.

**ACTIONS OF DEFENDANT CORRECTION CORPORATION OF AMERICA AND DEFENDANT CAUFIELD**

212. The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint.

213. Defendant CCA and Defendant Caufield, from August 30, 2005 through April 28, 2005, treated the Plaintiff with reckless indifference and intentionally, wantonly and recklessly subjected the Plaintiff to cruel and unusual punishment and placed the Plaintiff in an extreme deprecatory housing unit and conditions of confinement at the CTF which CCA supervised and operated on behalf of the District of Columbia Government

214. Defendant Corrections Corporation of America and Defendant Caufield, at all times relevant were employed by the District of Columbia.

215. Defendant Caufield, at all times relevant was an employee of Defendant Corrections Corporation of America.

216.    All actions and omissions of CTF, Defendant Caufield and CTF employees
        and agents as described in this Complaint were taken pursuant to and as the
        result of the policies and customs of their employer and principal the District
        of Columbia.

217.    Defendant Corrections Corporation of America, defendant John Caufield,
        because of its negligent training of its law librarian and medical staff, from
        September 1, 2005 through April 28, 2006, and because of its municipal
        policy restrictions, its custom and corporate policy restrictions that precluded
        the Plaintiff from having medical care that meets the standards of the
        community, which exist and prevail in the general community; and it deprived
        the Plaintiff of reasonable access to the Central Treatment Facility Law
        Library, and its restrictions on copying materials from books, deprived the
        Plaintiff of access to the Court's, and harmed the Plaintiff's appeal filed with
        the Virginia Court of Appeals, and Plaintiff's Appeals filed with the United
        States District Court for the District of Columbia,  by its restrictions placed on
        Plaintiff's access to the Central Treatment Facility Law Library, causing the
        Plaintiff's litigation appeals to be dismissed.

218.    The defendants John Caufield and the dentist assigned to the CTF medical
        unit deprived the Plaintiff of dental care needed to save the Plaintiff's teeth
        from destruction, when the medical staff knew and had reason to know that
        the Plaintiff would more likely than not suffer lost of teeth and damage to his
        gums, his person, Plaintiff general health, should the medical staff not provide
        the Plaintiff with a dental crown to cover and protect the Plaintiff seven

sawed-down teeth which were sawed down and a crown placed over them for purposes of enhancing the Plaintiff's appearance, and to protect the Plaintiff teeth and dental health.

219. Defendant John Caufield and the dentist assigned to provide the Plaintiff with dental care further caused the Plaintiff harm to Plaintiff's teeth, Plaintiff's gums, Plaintiff's jaw and Plaintiff's physical looks, and Plaintiff's ability to eat, consume and digest food, and resulting in the Plaintiff having to have root canals and removal of teeth.

220. The defendant's John Caufield and the facilities management of the Corrections Corporation of America, from September 1, 2005 through February 2006, the CTF facility, subjected the Plaintiff to long periods of exposure to cold temperatures in the unit where the Plaintiff was housed, causing the Plaintiff to suffer pain, colds, and harsh living conditions, that violated the Plaintiff's rights pursuant to the Eighth Amendment of the United States Constitution.

221. The actions and inactions of defendants Correction Corporation of America, defendant Caufield, his subordinates and assigns, were reckless and with deliberate indifference to the Plaintiff's Constitutional rights, Plaintiff health and safety and constitute grievous and flagrant abuse.

222. The actions and inactions of defendants Corporation of America and defendant Caufield, were pervasive, and pursuant to and in furtherance of the custom and practices of the District of Columbia Government Department of Corrections.

223. The actions of defendants Corrections Corporation of America and defendant Caufield, violated clearly established constitutional, legal and rights of the Plaintiff under laws, rules, regulations that a reasonable person would know.

224. The actions of defendants Corrections Corporation of America (CCA) and defendant Caufield, were negligent, and breached a duty of care that the Plaintiff was entitled to pursuant to the laws and contract and management agreement with the District of Columbia Government governing the conduct and actions of the defendants  CCA and defendant Caufield.

225. The actions of the CCA and Caufield were willful, deliberate and with reckless and deliberate indifference and reckless disregard for the rights of the Plaintiff.

226. The CCA medical staff and personnel, were notified by the Plaintiff repeatedly that the Plaintiff stood to loose seven teeth should the dental staff not provide the Plaintiff with a temporary crown or permanent crown and that this treatment was required and critically needed.

227. Notwithstanding the Plaintiff's numerosity of notices to the CCA and its employees and assigns, CCA ignored the Plaintiff's notices and pleas for medical treatment.

228. At all times relevant, Defendants Caufield, CCA and its employees, contractors and subcontractors, were acting under color of law, pursuant to the custom, policy, practices and procedures of the District of Columbia Government.

229. Defendant Dr. Fozia Abdul Wahab, Medical Director DC Jail and Central Treatment Facility, is being sued in his official capacity. Defendant Abdul Wahab, at all times relevant, was an employee and/or contractor of CCHPS.

230. At all times relevant Defendant Dr. Fozia Abdul Wahab, Medical Director DC Jail and Central Treatment Facility, were in a contractual relationship to provide medical services for the District of Columbia and for CTF and CCA, this include operating the CDF and CTF infirmaries.

231. The CTF, CCA and defendant Dr. Fozia Abdul Wahab, were informed via facsimile by the Plaintiff through correspondence, including a letter that the Plaintiff submitted to Cary Parker, Contract Monitor for CCA on November 8, 2005, informing them that the Plaintiff needed immediate emergency dental treatment, blankets and that the Plaintiff had made some 32 request for dental appointments since September 2005 and not one appointment provided to the Plaintiff.

232. The Defendants were further placed on notice of the Plaintiff's emergency dental requests on 11-4-05, 11-22-05 and from December 2005 through April, 2005, via medical request that the Plaintiff submitted to Defendant York, supervisory employee of CTF, Figeroa.

233. The Plaintiff further informed the dentist assigned to CTF at various times from September, 2005 through April 2006, that the Plaintiff was suffering from pain and breakage, chipping of Plaintiff's dental crown and swelling of the Plaintiff's gums.

234.   The CCA treated the Plaintiff with deliberate indifference and repeatedly ignored the Plaintiff's request for dental crown, a temporary dental crown and/or to escort the plaintiff to Plaintiff's personal dentist.  However, the CCA treated the Plaintiff's notice and request and diagnosis and prognosis with deliberate indifference.

235.   Notwithstanding CCA-CHHPS dentist knowledge that the Plaintiff required a dental crown to protect seven of his teeth and for other treatment to protect the Plaintiff's teeth, none was provided, except the offer of opting to have removed all seven teeth, because CTF did not provide services the Plaintiff required, a temporary crown to protect seven of the Plaintiff's teeth.

236.   Notwithstanding CCA-CHHPS dentist's knowledge that the Plaintiff needed medical treatment to protect his teeth.

237.   The District of Columbia, Defendant York, Caufield, CCA, CTF, CHHPS, and   defendant Dr. Fozia Abdul Wahab, failed to make reasonable adjustments in policies, practices and procedures to enable Plaintiff to receive a dental crown, be taken to the hospital so that the Plaintiff could receive a dental crown and/or other treatment that would have saved the Plaintiff's teeth from destruction and progressive chipping and damage.

238.   All actions of CTF, omissions, of Defendant York, Caufield, CCA, CTF, CHHPS, and   defendant Dr. Fozia Abdul Wahab, and the actions taken by their agents, servants and employees were acting within the course and scope of their agency, servantship and employment.

239.    At all times relevant, the pain and suffering, embarrassment humiliation and loss of self-esteem, that the Plaintiff suffered were as the result of the Defendants' actions.

240.    As a direct and proximate consequence of defendant's CCA and Caufield breach of duty and deliberate indifference to the rights of the Plaintiff, the Plaintiff suffered injury and harm to his person.

241.    As a direct and proximate consequence of defendant's CCA and Caufield breach of duty and negligent actions, the Plaintiff suffered injury and harm to Constitutional rights pursuant to the Fifth, the Fourth, the Fourteenth and Eighth Amendment of the United States Constitution.

## COUNT V1
## FALSE IMPRISONMENT

242.    The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

243.    From December 17, 2004 through April 28, 2005, the District falsely imprisoned the Plaintiff by incarcerating the Plaintiff at the CDF and the CTF during that period of time, without just cause or legal right.

244.    From March 20, 2006 through April 28, 2006, the District falsely imprisoned the Plaintiff, without just cause or legal right.

245.    At all times relevant the Plaintiff was unable and restrained from leaving the custody and control of the District.

WHEREFORE, Dr. Simon Banks, Plaintiff, demands:

(A) Compensatory damages against Defendant District of Columbia in the amount of $30 Million ($30,000.000)

(B) Compensatory damages against Defendant CCA in the amount of $10

Million Dollars ($10,000.000)

(C) Compensatory damages against Defendant CHHPS in the amount of $10

Million Dollars ($10,000.000)

(D) Reasonable Attorneys' fees

(E) Costs and expenses of this cause of action.

## COUNT V11
## MEDICAL NEGLIGENCE AND GROSS NEGLIGENCE

246.    The Plaintiff realllege and incorporate by reference all allegations set forth

above in this Complaint.

247.    At all times relevant, Simon Banks, Plaintiff enjoyed and was entitled to be

treated as a medical patient within a patient/provider relationship, and relied

upon the care, skill and judgment of those who provided or failed to provide

medical treatment to Plaintiff.

248.    Each defendant had a duty to treat Plaintiff with the same degree of skill, care

or knowledge which a reasonable and prudent person of the medical

profession would have exercised under the same or similar circumstances, and

to treat Plaintiff within the prevailing standard of care which existed at the

time of the subject events and which still exist today.

249.    Defendants, and each of them, committed negligence and gross negligence,

and negligently acted or failed to act, resulting in the denial of necessary

medical care to Plaintiff, and those acts and omissions proximately caused

Plaintiff substantial pain and suffering, including mental anguish, and

ultimately seven of his teeth, damage to his gums and facial structure, all in violation of the applicable standard of medical care.

WHEREFORE, Plaintiff demands:

(A) Compensatory damages against all Defendants, jointly and severally, in the amount of $30 Million Dollars, ($30,000.000).

(B) Costs and expenses of this action.

## COUNT VIII
## INTENTIONAL AND NEGLIGENT INFLICTION OF
## MENTAL AND EMOTIONAL DISTRESS

250. The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint.

251. The actions of each defendant was intentional, grossly negligent, conscience shocking, and was with deliberate indifference, with willful, reckless disregard for the rights of the Plaintiff.

252. With respect to the conduct of each defendant the injuries that the Plaintiff suffered and will suffer was foreseeable.

253. Each Defendant knew and ought to have known that their actions, omissions and inactions, would cause and did cause the Plaintiff to suffer: humiliation, depression, hopelessness, mental and emotional distress.

254. The actions of each of the Defendants named herein were malicious, outrageous and highly egregious.

255. As a consequence of the actions, inactions and omissions of each of the defendants, severally and collectively, the Plaintiff suffered injuries and damage as cited above.

WHEREFORE, Simon Banks, Plaintiff demands:

(A)    Compensatory Damages against Defendant District of Columbia in the

amount of $10, Million Dollars.

(B)    Compensatory Damages against Defendant CCA in the amount of $5

Million Dollars.

(C)    Compensatory Damages against Defendant CHHPS in the amount of $5

Million Dollars

(D)    Compensatory Damages against Defendant Caufield in the amount of $1

Million Dollars.

(E)    Costs and expenses of this action to be divided amongst the various

defendants.


_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,




## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, Plaintiff's Pleading was mailed, via electronic mail this day of  4th day of December, 2006, to the following:

**VIA EMAIL TO**
**Denise.baker@dc.gov**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South

Washington, DC 20001
(202) 442-9887

**VIA EMAIL TO**

Megan.benary@eclairryan.com
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

**VIA EMAIL TO**

dstruck@jshfirm.com
Daniel P. Struck
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012

_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,
703 965-5637