## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| **SIMON BANKS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1514 (ESH)** |
| | ) | **Ellen Segal Huvelle, Judge** |
| **S. ELWOOD YORK, JR., ET AL.** | ) | |
| | ) | |
| **Defendants** | ) | **December 20, 2006** |
| | ) | |

### PLAINTIFF, SIMON BANKS' OPPOSITION TO
### DISTRICT MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Comes now, Simon Banks, Plaintiff and submit opposition to Defendant District

(Joint) Motion to Dismiss the Third Amended Complaint, and in support submits the

following:

Plaintiff Simon Banks, brings this action alleging violations of his *Fourth*, *Fifth*

and *Eighth Amendment* rights under *42 U.S.C. § 1983* and various common law

violations. Defendants are the District of Columbia (the "District"); DeVon Brown then-

Director of the District of Columbia Department of Corrections ("Corrections"); Anthony

Williams, Mayor, Robert Clay, Warden; Edward D. Reiskin, Deputy Mayor for Public

Safety, Nora Tally, Captain ("Corrections"), Gloria Nelson, Director of Records

(Corrections), Dr. Gregory Pane, Director District of Columbia Department of Health,

Dr. Fozia Abdulwahab, Medical Director, DC Jail and Central Treatment Facility (CTF);

the Corrections Corporation of America ("CCA"), John Caufield, Warden (CTF of CCA).

Each of the District Defendants are sued in their official capacity, except Defendant Tally is sued in her official capacity and in her personal capacity.  (3rd Amended Compt. At 3¶1.

The Court has determined that suits against government employees sued in their official capacity is equivalent to suit against the District of Columbia itself, the government entity which they represent.  **See** *Dominion CoGen, D.C., Inc. v. District of Columbia,* 878 F. Supp. 258, 264 n.5 (D.D.C. 1995)  The Supreme Court recognized in *Monell* that a local government official can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name").

The District of Columbia Government received adequate notice of the suit and are not prejudiced.

**The Plaintiff has stated claims for which relief ought be granted.**

Among the questions of law and fact are:[1]

---

3.      [1] Among the questions of law and fact are: (at 4¶¶(a)-(h), Third Amended Compl.)

    (a)  whether defendant District of Columbia has a pattern and practice of holding detainees and inmates past their release dates;

    (b)  whether defendants District of Columbia has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates holding them past their release dates;

    (c)  whether defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

    (d)  whether defendants Devon Brown, Clay was deliberately indifferent to the rights of Plaintiff and inmates and detainees in the custody of the Department of Corrections by failing to supervise his subordinates;

The Plaintiff allege that the District of Columbia's has a long history and pattern and practice of overdetention, overdetaining detainees and inmates past their release date, the date that detainees are entitled to be released, and that the Plaintiff was released on April 28, 2006 although the Plaintiff's sentence expired on March 20, 2006, that the District and its employees miscalculated Plaintiff's release date on several occasions during May 2005 and April 2006 as October 7, 2006 and October 2, 2006, respectively.¶¶17-21.

The Plaintiff allege that the Plaintiff protested defendant's miscalculation of the Plaintiff's release date and that notwithstanding the Plaintiff's numerous protest that the release calculation of the District defendants was erroneous in that the defendants failed to credit the six months that the Plaintiff was purportedly erroneously released to the Alexandria, Virginia, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals, the defendants failed to correct the error, with reckless, egregious indifference to the rights of the Plaintiff, and subjected the Plaintiff to an additional 39 days and 20 hours beyond the expiration of the Plaintiff's sentence. ¶23.

---

(e)  whether the defendants individually were deliberately indifferent to Plaintiff's health and safety,  and objectively were sufficiently serious to constitute constitutional violations.

(f)  whether the defendants individually subjected the Plaintiff to unconstitutionally harsh conditions,

(g)  whether the conduct of the defendants individually and collectively violate clearly established constitutional rights, statutory law and rights of which a reasonable person would know;

(h)  whether plaintiff has sustained damages and, if so, the proper measure of such damages.

The Plaintiff allege that **DC Code § 24-201.06** requires that a prisoner shall be released by the Department of Corrections on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence.  8 U.S.C.A. § 3624(a). ¶27.  There is no discretion here. [**Emphasis Added**]

The Plaintiff allege that defendant DeVon Brown is the policymaker for the Department of Corrections and as such has ultimate supervisory authority for all operations of the Department of Corrections, that Defendant DeVon Brown is ultimately responsible for the functioning of the Department of Corrections' Records Office, and all other Department of Corrections Facilities. ¶¶30-31.

The Plaintiff allege that the Corrections department is responsible for inmates, including the Plaintiff, detained in components of the Department f Corrections such as the CTF, under CCA. ¶¶33-49.

The Plaintiff allege that the cause of the Plaintiff's overdetention and the overdetention problem is the collapse of the inmate management system and deliberate indifference by Defendant District of Columbia and DeVon Brown.¶56-57.

The Plaintiff allege that the Department of Corrections has no effective inmate management system that can ensure release of prisoners by their release dates, and that this deficiency has been documented by a series of reports and recommendations dated back at least 20 years.  In support the Plaintiff cites the October 5, 1999 Report of John L. Clark, Corrections Trustee for the District of Columbia, who prepared a Report to the United States Attorney General entitled, "Review of the Handling of Leo Gonzales Wright and Similar Offenders Sentenced by the U.S. District Court for the District of Columbia" (the "Wright Report"), which documented a long pattern of systemic

problems dealing with case management, classification and records office management at the Records Office. (Wright Report, Major Findings, F-14). Among the major findings of the Wright Report were lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management." (Wright Report Major Findings, F-14 and F-20). The Plaintiff further list other studies and reports in support. ¶¶58-62. **See Plaintiff's attached Exhibits showing prior notice.**

The Plaintiff allege that the District, DeVon Brown and Robert Clay, in their official capacity received prior notice that the Plaintiff was exposed to over-detention as far back as a year before the Plaintiff's overdetention, and because of the District's outrageous, egregious and with reckless indifference to the rights of the Plaintiff, the collapse of the Department inmate management system, and that these defendants did not correct their erroneous computation which resulted in the Plaintiff being overdetained for in excess of 40 days beyond his March 20, 2006 release date., ¶¶63-69 notwithstanding the numerous prior notices, complaints, grievance complaints and discussions with the DC Warden of the DC Jail and its attorneys. **See attachments and Exhibits containing grievances, facsimiles to the Warden and the Director of Corrections, and the original complaint of this civil actions, and Plaintiff's prayer for injunctive relief, and for mandamus to direct the Director of Corrections and the Warden of DC Jail to correct the erroneous release date that the District had for the Plaintiff, from Jan. 2005 through April 28, 2006.**

**The Plaintiff has exhausted his administrative remedies. ¶4 (Mot to Dismiss 3rd Amended Comp)**

The Plaintiff has exhausted his administrative remedies.  See attached Exhibits showing the Plaintiff's utilization of the Corrections Department and CCA/CTF grievance process.  The Plaintiff incorporate exhibits attached to the Plaintiff's Motion to Supplement the Third Amended Complaint.  See **Attached Exhibits on Exhaustion.**

**All-non-constitutional claims should not be dismissed for lack of subject matter jurisdiction. ¶5 (Dist. Mot to Dismiss 3rd Amended Comp)**

The Court has jurisdiction of all non-constitutional claims based upon its pendent jurisdiction.  Federal Courts have jurisdiction over state-law claims only wen the claims either satisfy the requirements for diversity jurisdiction under 2 U.S.C. § 1332 or (2) are closely "related" to fedral-question claims. 28 U.S.C. § 1331, within the meaning of the supplemental jurisdiction statute, 28 U.S.C. § 1367.  The latter statute requires that the closeness of the relationship between the federal claims and the state claims be such that they "form part of the same case or controversy under Article III of the United States Constitution."  **See,** *28 U.S.C. § 1367(a).*  Courts consider claims to be part of the same Article III case or controversy if they "derive from a common nucleas of operative fact." **See** *United Mine Workers of Am. V. Gibbs,* 383 U.S. 715, 725 (1966).  Accordingly, the Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).").

**Negligent Training and Negligent Supervision**

The Plaintiff allege that the defendants DeVon Brown, Robert Clay and Gloria Nelson, negligently trained their subordinates, ¶¶89-91, and that the "need for such training was obvious from the sensitive and technical nature of the responsibilities entrusted to such Department of Correction employees, citing the various reports prepared by John L. Clark and others, as well as the injunctions and settlement agreements entered by the Honorable United States Judge Royce C. Lamberth, on January 25, 2006, in the case of *Marcus Bynum v. District of Columbia, et al,* **02-cv-956,** coupled with the reports and admissions of the Defendant District of Columbia and the District of Columbia Department of Corrections therein, should have made it obvious to Defendants DeVon Brown and Robert Clay that the training such employees were receiving was inadequate, that the medical care and dental care, were inadequate, that the Records Office ability to correctly calculate Release Dates were inadequate, and that as a direct and proximate result Plaintiff, an inmate and other inmates under their supervision would suffer injury. ¶¶92-94.

**The Plaintiff does not merely allege miscalculation of Jail Sentence but that this miscalculation was part and parcel of a custom, policy, pattern and practice of the municipality At 5 (Mot. To Dismiss)**

The Plaintiff has alleged that the District has a long history of overdetention, excuse of miscalculation, and miscalculation with deliberate indifference to the rights of the Plaintiff and other inmates. ¶¶17-21 (3rd Amended Compl.

The Plaintiff has alleged that the actions and inactions of the defendants were based upon municipal policy, custom, pattern and practice and reckless indifference. ¶¶22-27; ¶¶30-31; ¶¶33-49; ¶¶56-57; ¶¶58-62., which include failure to investigate and correct

known deficiencies that the District knew and had reason to know would cause constitutional harm even though Plaintiff informed the policymakers DeVon Brown, the Corrections Records Office, all components of the DCDC.  (3rd Amended Compl)

The Plaintiff attributed the collapse of the series of overdetention the result of deliberate indifference by DeVon Brown, Policymaker ¶56-57.  The Plaintiff allege that the DCDC has no effective inmate management system and that this has been documented for 20 years¶58-62.

The Plaintiff allege that this negligent training and negligent failure to train and supervise by Defendants DeVon Brown and Robert Clay, respectively, resulted in the complete breakdown of the inmate management system of the Department of Corrections, a continuing violation of the rights of inmates and of the Plaintiff's rights, and as a result such employees were incompetent to perform their duties. ¶¶95-96.

The Plaintiff allege that Defendant Gloria Nelson, Director of Records, DC Department of Corrections, negligently performed her duties and functions of keeping accurate release records and accurately computing the Plaintiff's release date, As a result of said negligence of Defendant DeVon Brown, Robert Clay and Gloria Nelson, Plaintiff suffered injuries described in the preceding paragraphs of this complaint. ¶¶97-99.

The reasons given by the District at 6 of Mot to Dismiss are part of a pattern and practice of excuses provided in other cases such as *Marcus Bynum v. Odie Washington, Carl Barnes, Heard Case, et cetera.*

   ***The above-reference set forth Constitutional violations by DeVon Brown, Gloria Nelson.  (At 8, Mot to Dismiss)***

**Plaintiff has set forth a Constitutional claim resulting from the Medical care that the Plaintiff received and did not receive.**

**District's reckless indifference to Plaintiff's Medical/Dental needs**

The Plaintiff allege that the District was indifference to the Plaintiff's medical needs and even though it had prior notice through grievances, letters, civil complaints, that the Plaintiff was at risk of suffering progressively worst, it did not afford the Plaintiff proper medical treatment even though it was the cause in fact of the Plaintiff's dental condition and the lost and progressive destruction of the Plaintiff's teeth, gum and medical condition when its employees pursuant to a shakedown seized the Plaintiff's dental crown and left the Plaintiff's exposed teeth exposed to chipping and treated the plaintiff with pain killers, informing the Plaintiff that the limits of its medical treatment was to pull seven of the Plaintiff teeth. ¶¶69-77.  The Plaintiff allege "As a consequence of the defendants' egregious, gross negligence, and reckless indifference to the right of the Plaintiff, and because of defendants failure to provide the Plaintiff with replacement crown and medical malpractice, the Plaintiff suffered the lost of four teeth which were removed by the Plaintiff's dentist, Pamela Brady, after the Plaintiff was released from custody of the DC Jail, I May 2006.¶77-80.

The Plaintiff allege that the failure of Dr. Gregory Pane, Director of District of Columbia Department of Health, and Dr. Fozia Abdulwahab, Medical Director, DC Jail and Central Treatment Facility (CTF) to provide for Plaintiff to have proper dental care, medical care, and the policy, custom and system practices of the medical department at the DC Jail and the Central Treatment Facility, which were under the supervision,

management and direction of defendant Pane, were with deliberate indifference to the dental health, and general health and safety of the Plaintiff.¶79.

***The above-reference and foregoing shows the Plaintiff has set forth a Constitution Predicate for a Constitutional claim against Defendant Pane and Dr. Fozia Abdulwahab.***

**Negligent Training and Negligent Supervisoin of Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar**

The Plaintiff has alleged that Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, negligently trained their medical subordinates and negligently enforced a systemic policy, custom and practice and procedure of not affording proper dental care to the Plaintiff's dental and medical needs because of a policy, custom, practice and procedure of deliberate indifference to the medical and dental needs of the Plaintiff. ¶99.

The Plaintiff alleged that Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, were aware of the facts that a substantial risk of harm exist to Plaintiff's teeth, dental health, and facial structure, and that Defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, knew and had reason to know that harm would result to the Plaintiff as a consequence of their respective actions and inactions and enforcement of the official policy of  the DC Department of Corrections Medical Department, its custom, practice that is persistent and widespread, and that the conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar were grevious, sufficiently serious and constitute flagrant abuse of the constitutional rights of the Plaintiff. ¶¶100-104. **See attachments containing grievances and complaints.**

The Plaintiff allege that Defendant DeVon Brown, Robert Clay and Gloria Nelson, were at all times relevant, the supervisors of the Department of Corrections employees charged with ensuring the release of Plaintiff on Plaintiff's release date and the release of all detainees and inmates in the custody of the Department of Corrections.¶106.  The Plaintiff allege that Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, deliberately failed to train, monitor and discipline such employees event though they had both actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff and other inmates. ¶¶107-108.

The Plaintiff allege that Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, engaged in a pattern of continued inaction in the face of such employees' documented widespread abuse of the Fourth, Fifth and Eighth and through the Fifth, Fourth Amendment rights of the Plaintiff.¶109.

The Plaintiff allege that Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, actions and failure to act, as described above, directly, proximately and affirmatively caused the violation of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.¶110.

The Plaintiff allege that Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, were acting under color of District of Columbia law and were acting pursuant to the policy, custom and practice of the Defendant District of Columbia.¶111.

The Plaintiff allege that Defendant DeVon Brown's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.¶112.

**The Plaintiff has set forth a constitutional claim against Defendant Tally.**

**Actions of Defendant Tally, Captain**

The Plaintiff allege that the actions of Defendant Tally of placing the Plaintiff in segregation, based upon a sham smokescreen, after the Plaintiff submitted a complaint to her of his being exposed to an inmate, recently assigned to Plaintiff's cell, who articulated to Plaintiff that he was HIV positive, was retaliatory, a smokescreen to disguise retaliation, causing the Plaintiff to be locked down for 23 hours a day for 30 days and required to wear shackles from arms to feet, at visitations and at trips to the medical unit, and locked in a cage during visitations, and commingled with inmates that had high custody levels including an inmate that was incarcerated for commiting murders in a Tavern that was published in the media as well as other inmates whom informed the Plaintiff that they were incarcerated in the area where the Plaintiff was confined from June 29, 2005 through August 30, 2005.  The Plaintiff allege that the actions of defendant Tally was in violation of Plaintiff's Constitutional rights, Plaintiff's statutory rights, and rights pursuant to 289 DCMR § 509.1 and other regulations of the DC Department of Corrections.¶115-117.

The Plaintiff allege that the actions of Defendant Tally was intentional, and with deliberate indifference to the Plaintiff's health, safety, and objectively serious to constitute constitutional violations.  ¶118.

The Plaintiff allege that the actions of Defendant Tally deprived the Plaintiff of access to the Courts, the DC Jail's prison library, and prejudiced and harmed the Plaintiff's civil litigation, *Banks v. Comey, et al.* as well as other pending litigation of the Plaintiff's.

**§1983 Respondeat Superior Liability of Defendant District of Columbia**

The Plaintiff allege that that the conduct of District of Columbia employees as set forth in the complaint, caused the intentional unjustified overdetention of the plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and releases, and that the District of Columbia employees continue in such conduct up to and including the present. ¶¶122-125.

The Plaintiff allege that at all times relevant such District of Columbia employees were acting within the scope of their employment, their acts were motivated by a desire to further the interest of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia, and that the acts and inactions of Defendants Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, and Defendant DeVon Brown, were acting under color of law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia. ¶¶136-135.

**Unconstitutional Deprivation of Dental Care**

The Plaintiff allege that the Defendants District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinate employees were acting within the scope of their

employment, that their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.¶141.

The Plaintiff allege that at all times relevant the District of Columbia Government employees caused the intentional, unjustified harm to the Plaintiff's teeth, Plaintiff's dental health, and the disfigurement of the Plaintiff, because of the defendant's Reiskin, Pane and Abdulwahar's reckless and deliberate indifference to the medical and dental needs of the Plaintiff.  ¶¶142-146.

### §1983 Monell Custom and Practice Direct Liability of District of Columbia for Violation of Fourth, Fifth, Eighth and, Through the Fifth, Fourteenth Amendment rights of the Plaintiff

*The Plaintiff has sufficiently alleged a predicate §1983 Monell, custom, practice and direct liability claim for violation of Plaintiff's rights pursuant to the Fourth, Fifth, Eighth and Through the Fifth, Fourteenth Amendments.*¶¶147-161.

The Plaintiff allege that the District of Columbia was at all times relevant the municipality in charge of the DC Jail, CTF and other Department of Corrections facilities, and that the Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their release dates.¶151.

The Plaintiff allege that there was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.¶152.

14

The Plaintiff allege that the Pattern of unconstitutional conduct the Plaintiff complained of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.¶153.

The Plaintiff allege that the District had both actual and constructive knowledge that employees charged with monitoring and ensuring release of inmates in the Department of Corrections facilities in accordance with their Release Dates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff at a Department of Corrections facility.  [The Honorable United States Judge Royce C. Lamberth, on January 25, 2006, in the case of *Marcus Bynum v. District of Columbia, et al,* 02-cv-956], [See 6-8, 18-20 of Approved Settlement Agreement attached]]¶154

The Plaintiff alleged that the Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged with monitoring and ensuring release of the Plaintiff and other employees charged with monitoring and ensuring release of the Plaintiff andother inmates in Department of Correction facilities in accordance with their release in violation of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of such individuals.¶155.

The Plaintiff allege that Defendant District of Columbia's policy, custom and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.¶157.

The Plaintiff allege that Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as describe d above were pursuant to the District of Columbia policy, practices and procedures and violated the Plaintiff's rights pursuant to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.¶158.

**§1983 Liability of District of Columbia for violation of Fourth, Fifth and Fourteenth Amendment Rights of Plaintiff when Plaintiff was transferred to Alexandria, Virginia in violation of the Extradition Laws of the United States and the District of Columbia**

The Plaintiff has made out a §1983 liability of the District of Columbia, when it caused the Plaintiff to be transferred from the District of Columbia Department of Corrections when the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals and when and while the Plaintiff had protested extradition and demanded a hearing and the right to file a Petition for Writ of Habeas Corpus prior to being forced to the State of Virginia, causing the Plaintiff to suffer injury. ¶¶166-174

The Plaintiff allege that the District of Columbia violated Plaintiff's Constitutional rights and the statutory laws of the District of Columbia, when it caused the Plaintiff to be transferred to the City of Alexandria, Virginia on June 23, 2004.

The Plaintiff allege that he had not waived his rights to protest the extradition and transfer¶169, and that the Defendants knew and had reason to know that the Plaintiff was expecting an extradition hearing for purposes of exercising his constitutional right to protest the legality and authenticity of the detainer order of Alexandria, Virginia.¶170.

The Plaintiff allege that prior to defendants District of Columbia, DeVon Brown and its agents and assigns caused the Plaintiff to be transferred to the State of Virginia,

Plaintiff had articulated his protest in open court, against the legal validity, propriety and authenticity of the detainer order of Alexandria, Virginia.¶171, that the District and its employees acted with wanton/reckless disregard and with reckless indifference to the rights of the Plaintiff.¶172, and that as a consequence of the District's actions, the Plaintiff suffered injuries.

### VIOLATION OF EIGHTH AMENDMENT

The Plaintiff has made out a predicate case for violation of the Eighth Amendment, based upon the referenced allegations of overdetention, placement in the hole, segregation, and as setforth in ¶¶175 through 189 of the Third Amended Complaint.

The Plaintiff has alleged that the inactions of defendants Correction Corporation of America, defendant Caufield, his subordinates and assigns, were reckless and with deliberate indifference to the Plaintiff's Constitutional rights, Plaintiff health and safety and constitute grievous and flagrant abuse.

The Plaintiff has alleged that the actions of defendants Corporation of American and Defendant Caufield, were pervasive, and pursuant to an in furtherance of the custom and practices of the District of Columbia Government Department of Correction¶184.

The Plaintiff allege that the actions of defendants Correction Corporation of America and defendant Caufield, violated clearly established constitutional, legal and rights of the Plaintiff under laws, rules, regulations that a reasonable person would know.¶185,

The Plaintiff allege that the actions of defendants Corrections Corporation of America (CCA) and defendant Caufield, were negligent, and breached a duty of care that the Plaintiff was entitled to pursuant to the laws and contract and management agreement

with the District of Columbia Government governing the conduct and actions of the defendants CCA and defendant Caufield.¶186

The Plaintiff has alleged that the actions of CCA and defendant Caufield were willful, deliberate and with reckless and deliberate indifference and reckless disregard for the rights of the Plaintiff.¶187.

**Deprivation of rights Plaintiff was entitled to a transfer to CTF based upon the established procedures of the District and of the CTF.**

The Plaintiff alleged that because the District did not comply with its established policy to transfer persons of the Plaintiff's age, 66 to CTF notwithstanding that Plaintiff met the "minimum custody level" criteria, and age, and because case and classfication managers had cleared the Plaintiff for transfer to CTF, the Plaintiff was placed in solitary confinement, housed in a section of the jail described as the "hole", where the Plaintiff suffered 23 hours a day locked down and where the Plaintiff received visitors chained from ankle to wrist with wrist handcuffs, and where the Plaintiff was placed in a locked-holding steel screen area, segregated from other inmates, the same as if the Plaintiff had committed a violation of institutional rules and was placed on administrative segregation, when this was not the case. ¶¶82-87.  In this section the Plaintiff was commingled with dangerous inmates whom were charged with multiple murders, including inmate that committed murder in the Tavern Case, and other murderers whom confided in the Plaintiff that they were found guilty of murderer, conspiracy to murder, and were awaiting transfer to the federal institution operated by the Bureau of prisons.¶88.

The Plaintiff allege that the "actions and inactions" of all Defendants "both directly and through a pervasive policy of failing to , staff and supervise and enforce policies and procedures with respect to the operations of the Records Office, classification and case

management and processing of release orders and warrants constituted deliberate indifference to Plaintiff's right to be free from cruel and unusual punishment pursuant to the *Eighth Amendment*[], not to be deprived of his liberty without Due Process of Law in violation of the *Fifth Amendment* and [to be] free from unreasonable seizure in violation of the *Fourth Amendment to the Constitution*." First Am. Compl. P 42.

### *The Plaintiff has set forth a predicate case on the issue of Municipal Liability*

### MUNICIPAL LIABILITY

"In considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry." *Baker, 326 F.3d at 1306* (internal citation omitted). First, it must determine whether the plaintiff can establish a claim for a predicate constitutional violation. See id. (internal citation omitted). Second, if so, then it must determine whether a custom or policy of the municipality caused the violation. See id. (internal citation omitted). "Each inquiry is separate and serves different purposes." Id. (internal citations omitted).

Plaintiff has met the predicate by alleging that the deprivation of the Plaintiff's constitutional rights to be free from over-detention, and deprived of freedom, by alleging it was caused by an existing, a pre-existing, and an on-going unconstitutional municipal policy…." *Parker v. Dist. of Columbia,* 850 F.2d 708, 711-12 (D.C. Cir. 1988) (quoting *Okla. City v. Tuttle,* 471 U.S. 808, 823-24 (1985)).

**Plaintiff has established a predicate claim of custom, policy and deliberant indifference by alleging failure to train.**

The Plaintiff has established a custom, policy and deliberant indifference by alleging that the District failed to train employees charged with making sure that the Plaintiff was

released when his sentence expired, with specific reference to employees of the records department of the District of Columbia Department of Corrections (DCDC).  The failure to train, supervise or discipline city employees can constitute such a policy or custom if it amounts to '"deliberate indifference' towards the constitutional rights of persons in its domain." *Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C. Cir. 2000) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388-89 & n.7 (1989)); **See also,** *Carter v. Dist. of Columbia,* 795 F.2d 116, 122 (D.C. Cir. 1996) (a municipality's failure to adequately train, supervise, investigate, and discipline police officers can give rise to municipal liability if that failure represents city policy and reflects deliberate indifference). Deliberate indifference is determined objectively, "by analyzing whether the municipality knew or should have known of the risk of unconstitutional violations," and yet failed to respond as necessary.  *Baker v. Dist. of Columbia,* 326 F.3d 1302, 1307 (D.C. Cir. 2003)…conscious or reckless, 489 U.S. at 389.

### District failed to investigate even when it was placed on notice

The District failed to investigate or take remedial action to determine whether the District Records Office and others charged with facilitating the Plaintiff's timely release, when it was placed on notice by the Plaintiff on several occasions in 2005, that the release date and expiration of sentence date did not credit the six months that the Plaintiff was incarcerated in the Alexandria City Jail, which occurred subsequent to the District of Columbia Court of Appeal's imposing four six month sentences to be served consecutively, commencing from June 3, 2004, crediting the Plaintiff's incarceration on April 8, 2004. **See Plaintiff's** facsimile to Larry Corbett, dated June 10, 2005, memorializing Plaintiff's May 6, 2005 letter to Warden Corbett, and the discussion the

Plaintiff had with Warden Corbett on February 22, 2005 regarding the District documenting an incorrect release date and the correction of the release date DCDC scheduled for the Plaintiff. **See,** Plaintiff's original complaint filed on July 7, 2005, at ¶Z5, Dkt No.___, Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive Relief, filed on July 7, 2005, Dkt No.___, Affidavit of Simon Banks, at 3¶8, at 6¶19, at 6¶22, Dkt No. ___ filed on July 7, 2005. These pleadings were served directly upon the Director of the District of Columbia Department of Corrections and the Warden of the District of Columbia Jail. **(See Certificate of Service).**

The District was further placed on notice of Plaintiff's exposure to unlawful incarceration, when the Plaintiff filed Motion for Mandamus in the case of *Banks v. Smith, 04cv00903,* on June 24, 2005, attaching Plaintiff's Memorandum of Points and Authorities In Support of Motion for Mandamus to Correct Time Served, Good Time Credit and Release Records of Plaintiff, at 1¶¶s1-3[2], and at 2¶1 of said Memorandum of Law and at 1¶¶1 and at 2¶6, and at 3¶¶8&9, and at 4¶5 of said

 motion. Dkt. No. ___. The certificate of service shows service upon Steven Smith, Warden as well as the District attorneys.

The District was further placed on notice of the Plaintiff's exposure to unlawful incarceration and over-detention when the Plaintiff submitted his June 10, 2005 facsimile to Larry Corbett, acting warden DC Jail, warning of Plaintiff's intent to seek injunctive relief, at 2.

**The District's Prior Notice of Plaintiff's exposure to destruction of Plaintiff's teeth and injury to Plaintiff's health.**

---

[2] Which provides, at ¶8: "The DC Jail Records continue to erroneously fail to credit the Plaintiff with time served during the period June 23, 2004 through December 19, 2004."

The Plaintiff provided the District of prior notice of the potential destruction of his teeth should his condition not be treated and notwithstanding this notice, the District with reckless indifference and reckless disregard did not take reasonable medical action to protect the Plaintiff's teeth. **See following prior notices provided by the Plaintiff to the District:**

a)    Plaintiff discussed with Larry Corbett, former warden of DCDC on February 22 2005, and Plaintiff met with Warden Corbett of the DC Jail on February 12, 2005, regarding the Plaintiff's exposure to destruction of his teeth because of the confiscation of the Plaintiff's dental crown by correction officers. **See** Plaintiff's to Warden Corbett dated June 10, 2005,

b)    Plaintiff's Motion for Emergency Medical Furlough dated June 24, 2005, filed in *Simon Banks v. Steven Smith, (warden), Case No.* 04cv00903 (JRL), at 1¶¶2-3, at ¶¶4 and 5 of said motion Plaintiff informed the Warden of the DC Jail and the District of Plaintiff's Emergency Medical Condition and exposure to the potential lost of seven teeth. (Certificate of Service shows Warden Smith was a designated recipient of the Motion per se as well as the District attorneys.  At 1¶¶2 and 3 Plaintiff provide:[3]  Warden Smith was a designated

---

[3] 'The Plaintiff is in imminent danger of loss of seven to eighth teeth resulting from exposure of (7) of plaintiff's teeth having been sawed down in February and March 2004 for purposes of installing a crown which provides for porcelain teeth covering.

"The Plaintiff was scheduled to return to his dentist for his prepaid dental treatment completion of root canal which was partially to be performed on April 9, 2004 however, the Plaintiff was incarcerated on April 8, 2004, and the DC Court of Appeals directly and through Judge Kramer, continuous denied Plaintiff's motion for Emergency Medical Furlough to resolve this medical problem.

"On February 12, 2005, Correctional Officers of the DC Jail effectuated a shakedown of the cells in the cellblock and seized and trashed plaintiff's temporary crown, leaving plaintiff's seven sawed-down teeth vulnerable to chipping and breakage.  In addition, the plaintiff has been administered penicillin on three different occasions and painkillers, Motrin and other medication to relief infection resulting from plaintiff's dental problems.  The DC Jail dentist states that the only option they can afford is to pull plaintiff's teeth.

recipient of this motion along with District's attorneys.  See Certificate of Service.

c)    Plaintiff's facsimile-letter to Larry Corbett, Acting Warden, dated February 11, 2005.[4]

d)    On August 23, 2005, the Plaintiff submitted a letter to Elwood York, Jr., Acting Warden, DC Department of Corrections, with a cc copy to Mayor Anthony Williams, c/o Risk Management, which provides:

**Re: Request for Dental Appointment**

**Subject:  DC Code § 12-309**

**Please be advised that this constitute my precursor to civil litigation against the dentists at the DC Jail in their official and personal capacity pursuant to the requirements of DC Code § 12-309, et seq., for failure to treat me, provide me with an appointment, although I have now submitted seventeen requests for dental appointments.  Several months ago, specifically March 2005.    The DC Corrections' Officers confiscated my crown**

---

"As a consequence of plaintiff inability to chew solid foods because of the dental dilemma, the plaintiff has lost thirty pounds…"

[4] Providing:  "This is to inform you that your officers, during one of the two shakedowns that occurred on Wednesday, February 9, 2005, removed and trashed my temporary crown which was sitting in a cup in a sanitary glove (see through).  As a consequence, all of my sawed-down teeth (seven) are exposed and I am suffering pain.  Moreover, my ability to eat cold, hot and non-soft foods is obstructed.  Unless provisions are made for me to be seen by my dentist, Pamela Brady in Southwest Washington, for treatment and replacement and for installation of permanent or temporary crown s, I will have no alternative but to seek Judicial Relief pursuant to 42 U.S.C. § 1983, Negligence and other rights, in the United States District Court for the District of Columbia, where I will further seek immediate injunctive relief."

While I do not wish nor do I have time to pursue this option, should it however become necessary, I will cover a wide-host of and myriad of problems, defects, deprecatory conditions existing at the DC Jail."

**protecting seven (7) teeth.  I reported this and subsequently met with Larry Corbett then Acting Warden, having been provided various assurances to no avail.  Subsequent to meeting with Larry Corbett, I have been subjected to retaliation and reprisal and my request for dental appointment has fallen on death ears.**

e)    On November 3, 2005, the plaintiff submitted a facsimile to the Medical Director, CTF, Sick Call Request, which provides, in part:

**I wish to be seen at Sick Call because (Describe Problem) I have an Emergency Dental Problem – second chipping and breakage of tooth.  I am in continuous pain. – This is my 32nd request. I am in continuous pain.  Second breakage and chipping of tooth.  I promised – guarantee civil action – immediate – this week.**

f)    Plaintiff submitted an affidavit in this instant case, dated July 6, 2005, where the Plaintiff cited the immediate danger that the Plaintiff is exposed to coupled with the potential lost of the Plaintiff's seven teeth should the Plaintiff not receive reasonable dental care, at 1¶¶1 and 2, at ¶¶3 and 4, at 4¶¶12-15, at 5¶¶16-17, at 6¶¶18, 21, at 7¶¶1.  See also other dangerous conditions that the Plaintiff cited at 6¶22, and at 7-9 of the affidavit.

g)    The Plaintiff submitted a facsimile to Cary Parker, Contract Monitor for CCA Correctional Treatment Facility, on November 8, 2005, seeking emergency appeal of denial of dental treatment which provide, in part:

**The undersigned has submitted some thirty-two requests for dental appointments since September 2005 with not one appointment having been provided.**

**Plaintiff has established a predicate *Eighth Amendment* and Due Process Clause violation**

In Plaintiff's Third Amended Complaint, Plaintiff alleges three predicate constitutional violations based on his "wrongful incarceration:" (1) an *Eighth Amendment* violation; (2) a due process violation; and (3) a *Fourth Amendment* violation.

To establish an *Eighth Amendment* violation, Plaintiff must demonstrate that Defendants

Prison officials cannot "stand by idly after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided documentary evidence in support of his claim" Whatever haziness obscures the exact contours **[*27]** of a duty to investigate burns off once the authorities know that they have no basis for detention

All of Plaintiff's requests for correction of the release date and for release were ignored until April 28, 2006, when the Plaintiff was released, subsequent to the Plaintiff filing, "Defendant's Emergency Motion for Release and To Correct Sentence Pursuant to D.C. Code § 23-110 on April 12, 2006. See Order issued by Superior Court Judge Ann O'Regan Keary, dated June 8, 2006 in *In Re Simon Banks, 02-BG-1374, 04-SP-789.* and accompanying DCDC facesheet, showing that the expiration of the Plaintiff's sentence was March 20, 2006, Dkt. No.___. **See** Plaintiff's letter to Mayor Anthony Williams, re Risk Management, dated April 6, 2006, informing the Mayor through its department, Risk Management, that should the DCDC not correct Plaintiff's release records and

release Plaintiff from incarceration, the Plaintiff will file a civil suit against the District. The District ignored this emergency notice with deliberate indifference, Dkt. No. ___.

### *Accordingly, Plaintiff has established a predicate constitutional violation pursuant to both the Eighth Amendment and the Due Process Clause*

**The Plaintiff is entitled to succeed on his *Section 1983* claim against the District, because the Plaintiff has alleged "an affirmative link, such that a municipal policy was the moving force behind the constitutional violations cited in the complaint." *Baker, 326 F.3d at 1306* (internal quotations omitted**). Causation would exist if, for instance, the District fails "to respond to a need . . . in such a manner as to show deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker, 326 F.3d at 1306* (internal citations omitted). "Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard. The above-referenced prior notices clearly show that the District knew or should have known of the risk to depriving the Plaintiff of constitutional rights should the District not investigate and rectify the discrepancies in the District records that showed the Plaintiff's release date was October 2, 2006 and October 7, 2006. And the District knew and ought to have known of the risk to Plaintiff's medical condition should the District not take reasonable objective action in accordance with acceptable medical/dental practice in the District of Columbia, to correct the deficiencies prior to the Plaintiff suffering the constitutional injuries that the Plaintiff complained of for in excess of one year and on-going and continuously, upto the date of Plaintiff's release, which was only facilitated by the Plaintiff's Emergency Motion pursuant to DC Code §23-110.

1999 by the D.C. Corrections Trustee, John Clark regarding the erroneous release of Leo Gonzales Wright." Pl.'s Opp'n at 11 ("Clark Report"). According to Plaintiff, the Clark Report noted that the "DOC administration should respond expeditiously to the problems in the records office management and implement the recommendations **[*29]** of previous studies in 1985, 1989, 1996 and 1997. Particular attention to the need of the headquarters record office administrator, increased security, and a separate J&C file system should be a priority. Trustee Clark also recommended: The current process DOC has undertaken to thoroughly review and update all written policy in case management and records management needs to be brought to completion and operational staff adequately trained."

Plaintiff also claims that the District was "aware that on July 28, 2000 John Shaw, an independent consultant [operating] pursuant to an order by U.S. District Judge Royce Lamberth, issued a report regarding the D.C. Jail Record Office Operations. [The District was] on notice that in his report[,] Shaw noted six major studies regarding the DOC Record Office Operations over the past 24 years and concluded that many of the pertinent recommendations had not been followed, including those made by Trustee Clark in the [Clark **[*30]** Report]." Id. ("Shaw Report"). Plaintiff claims that "Defendants admit they received the [Shaw Report] but deny they knew this information."

Based on the evidence which Plaintiff has presented, a reasonable juror could conclude that the District knew or should have known of the risk of constitutional violations.

"Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell, 436 U.S. at 690, n.55*. A

plaintiff who prevails in an official-capacity suit must look to the government entity as the real party in interest.

In Count I, the claimed injuries are allegedly the result of District policy or custom, i.e., the failure "to provide funding, staff and supervise and enforce policies and procedures with respect to the operations of the Records Office, classification and case management and processing of release orders and warrants

In Count II of the First Amended Complaint, Plaintiff alleges that the District, Clay, DeVon Brown, Talley and __ violated his *Eighth Amendment* right to be free from cruel and unusual punishment when they confined him in the solitary confinement/disciplinary cellblock from May through August 30, 2005, and when the District, Devon Brown and Clay, did the acts set forth at pages 33 through 45 of Plaintiff's Third Amended Complaint.

The Plaintiff appropriately alleged a predicate constitutional violation when the Plaintiff alleged at 33-35¶¶167-174, that the District, defendant Clay, DeVon Brown, **violated Plaintiff's constitutional procedural rights to an extradition hearing, and the right to bring a Petition for Writ of Habeas Corpus** in connection with Plaintiff's allegation that the District transferred the Plaintiff to the city of Alexandria, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals, which prejudiced these constitutional procedural due process rights, in violation of the Fourth, Fifth and Fourteenth Amendment, and in violation of the Extradition laws of the United States and the District of Columbia.

**The Plaintiff allege that he was not served with the detainer until after Plaintiff was picked up by the Alexandria Sheriff.  Plus, precluding the defendant**

**from exercising his right under the Interstate Agreement on detainers to demand a hearing and further challenge his extradition to Virginia.**

**The Plaintiff allege that he never signed any "request for final disposition" regarding his extradition.  See Article III (e) of the Interstate Agreement on detainers.  Code § 53.1 –210 Art. III (e).  Article III (e) of the Interstate Agreement on retainers provides that the The Defendant never signed any "request for final disposition" regarding his extradition.  See Article III (e) of the Interstate Agreement on detainers.  Code § 53.1 –210 Art. III (e).  Article III (e) of the Interstate Agreement on retainers provides that the request for final disposition "shall … be deemed to be a waiver of extradition with respect to any charge or proceedings contemplated."  Code § 53.1-210.**

The Plaintiff alleged a custom, practice, deliberate indifference claim when the Plaintiff, at 35¶173, alleged that because of the deficient training that the District of Columbia Government, DeVon Brown, afforded its employees agents and assigns, the Plaintiff was transferred to Alexandria, Virginia on June 23, 2004, in violation of his Constitutional and statutory right to a hearing to challenge and protest his transfer to Alexandria, Virginia.  The Plaintiff never waived his right to challenge the extradition/transfer, the Plaintiff never waived his right to complete his sentence upon which the Plaintiff was serving, prior to being transferred to the City of Alexandria, the Plaintiff never waived his right to file a Petition for Writ of habeas corpus to challenge the District transfer of the Plaintiff.  At the hearing where the Plaintiff is alleged to have waived his right to transfer, the District provides that the Plaintiff was represented by an attorney.  The Plaintiff was never, ever represented by any attorney at any proceeding in

the District of Columbia prior to January, 2005.  See Plaintiff's affidavit.  See Plaintiff's protest of the extradition proceedings on the record in *In Re Simon Banks, 1364.* Moreover, the District asserts that the Plaintiff was transferred by mistake.  See DCDC facesheet, attached to Judge O'Keary's Order, acknowledging the Plaintiff's release pursuant to Plaintiff's Emergency Motion DC Code §23-110.  **See Plaintiff's Memorandum of Law In Support of Plaintiff's Rule 56(f) Motion to Deny Defendant's Motion Without Prejudice, or Alternatively, for extension of Time In Which To Complete Discovery, at 1-3.**

**The Plaintiff has established predicate claims pursuant to the Eighth Amendment and should not be dismissed.**

The ***Eighth Amendment*** prohibits the infliction of "cruel and unusual punishments." ***U.S. Const. Amend. VIII***. When evaluating claims for cruel and unusual punishment, courts make a two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind (the "subjective component"), and (2) whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation.  **See Plaintiff's Memorandum of Law In Support of Plaintiff's Rule 56(f) Motion to Deny Defendant's Motion Without Prejudice, or Alternatively, for extension of Time In Which To Complete Discovery, at 1-3.**

The subjective component is satisfied by showing "deliberate indifference" by prison officials. *Id. at 303.* See *Estelle, 429 U.S. at 105* ("deliberate indifference to a prisoner's serious illness or injury" violates the *Eighth Amendment*). "Deliberate indifference entails something more than mere negligence [but] is satisfied by something

less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result

("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the *Cruel and Unusual Punishments Clause*, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). To constitute cruel and unusual punishment, conduct "must involve more than ordinary lack of due care for the prisoner's safety; mere negligence will not suffice

The objective component is satisfied by showing that the conditions of confinement "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment ("Conditions of confinement will violate the *Eighth Amendment* if the deprivation is sufficiently serious, judged objectively, that is, when the prisoner is denied the minimal civilized measure of life's necessities.

In Count __ of the Third Amended Complaint, Plaintiff asserts the common law claims of negligence, gross negligence, false imprisonment and intentional infliction of emotional distress against all Defendants for their "failure to supervise and enforce policies and procedures which are included in the constitutional claims.

Plaintiff alleges the common law claims of negligence, gross negligence, false imprisonment and intentional infliction of emotional distress.

**Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); **See also** *Haynesworth v. Miller,* 820 F.2d 1245, 1245, 1254 (D.C. Cir. 1987). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984))

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant Cty. Narcotics and Coordination Unit,* 507 U.S. 163, 164 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000). Conclusory legal and factual allegations, however, need not be considered by the court. *Domen v. Nat'l Rehabilitation Hosp.,* 925 F.Supp. 830, 837 (D.D.C. 1996) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

**Official Policy or custom of the District**

The Plaintiff has alleged that the actions and inactions of the District that caused deprivation the Plaintiff's constitutional rights were based upon official policy, custom, practices and procedures as required by *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978); **See also,** *Triplett v. Dist. of Columbia,* 108 F.3d 1450, 1453 (D.C. Sir. 1997)("Under § 1983, a municipality is liable…only for constitutional torts arising from action arising from action pursuant to official municipality policy."

The Plaintiff has alleged that the defendants, severally and individually, have policymaking authority.[5]  Here, it is hard to imagine who has greater policymaking authority with regard to the governance of the District's Department of Corrections and the D.C. Jail, and the CTF than the defendants named in this case.

**Defendants are not entitled to immunity**

The District argue that the District defendants are entitled to immunity.

This contention is contradicted by the actions of the District employees whom as alleged by the Plaintiff were acting pursuant to official municipal policy, custom, pattern, practices and procedures as set forth above.

**"Defendants sued in their individual capacity are not entitled to qualified immunity" ¶2 (Dist. Mot to Dismiss)(this is to include all defendants)**

The Plaintiff has alleged that the District and its employees violated clearly established rights that a reasonable person would know or would have known, and are

---

[5] An individual's actions may constitute "official municipal policy" if the person has "'final policymaking authority [under] statelaw.'" *Triplett,* 108 F.3d at 1453 (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989)).

thus liable. *Crawford-El v. Britton,* 523 U.S. 574, 588 (1998)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982)) This is an objective standard.

**The District had no discretionary authority to release Plaintiff when it wished to.**

Applying this ***Harlow*** standard, the first inquiry is whether the individual defendants' conduct was "discretionary." If not, then qualified immunity is no defense. As the D.C. Circuit has explained, courts "generally define 'discretionary' acts as those involved in the formulation of policy, while 'ministerial' acts are defined as those related to the execution of policy." *Rieser v. Dist. of Columbia,* 563 F.2d 462, 475 (D.C. Cir. 1977). The Plaintiff dispute that the District's conduct was discretionary. The District had no discretionary authority but to release the Plaintiff upon the expiration of his sentence,[6] and the District had no discretion to transfer the Plaintiff to the state of Virginia when the Plaintiff did not waive his right to extradition, and when the Plaintiff was serving a sentence imposed by the DC Court of Appeals. Moreover, this lack of discretion included the reasonable quality of acceptable medical care and dental treatment known to protect the Plaintiff from further lost and damage to his teeth because of the lack of a dental crown. Further, the District had no discretion to place the Plaintiff into the hole section of the DC Jail which is reserved for inmates whom violate institutional rules, and whom request and require protected custody because of an articulated or presumed threat from other inmate. The Plaintiff protested the disciplinary segregation and sued the District because of it in close proximity to the time of being placed in

---

[6] DC Code § 24-201.06 requires that a prisoner shall be released by the Department of Corrections on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence. 8 U.S.C.A. § 3624(a). ¶27 (3rd Amended Comp)

disciplinary segregation. (Original Compl.  See Affidavit in Support of Mot. For Temp. Prel. Inj. Relief).

The next step in determing whether defendants are entitled to qualified immunity requires an analysis of whether defendants' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford-El,* 523 U.S. at 588 (quoting *Harlow,* 472 U.S. at 817-18).  Whether a statutory or constitutional right was clearly established at the time of the official's conduct is "an 'essentially legal question.'" *Id.* at 589 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526-29 (1985)). See DC Code § 24-201.06.

The "contours of the right is sufficiently clear that a reasonable official would understand that what he is doing violate that right." *Anderson v. Creighton,* 483 U.S. at 640. (1987); **See also,** *Harris v. Dist. of Columbia,* 932 F.2d 10, 13 (D.C. Cir. 1991).

**Illegal transfer of the Plaintiff to the State of Virginia, City of Alexandria violated Plaintiff's substantive due process rights[7]**

**The Plaintiff is not barred from contesting his extradition to the custody of Virginia Correctional authorities. ¶3 (Def's Mot to Dismiss)**

The Plaintiff has alleged that the District's transfer of him violated his substantive due process rights. ¶¶166-174. [¶170].  Pursuant to the International Agreement on Detainers Plaintiff's rights to an extradition hearing may only be waived if the waiver is voluntary. *New York v. Hill,* 528 F.2d at 167; *United States v. Oldaker,* 823 F.2d 778, 780 (4th Cir. 1987).  The United States Congress adopted the IAD on behalf of the federal government. 18 U.S.C. App. 2 § 1, et seq. (1970).  The United States and its territories

---

[7] **See Article III (e) of the Interstate Agreement on detainers.  Code § 53.1 –210 Art. III (e).**

including the District of Columbia is defined as a state. 18 U.S.C. App. 2 § 2, Art. 11(a).

See *Hagans v. United States,* 408 A.2d 965, 967, on the issue of the validity of a waiver

under the totality of the circumstances, was knowingly and voluntary.  *Id. (United States*

*v. Holmes,* 380 A.2d 598, 602 (D.C. 1977).(citing *Schneckloth v. Bustamonte,* 412 U.S.

218 (1973).  Even when a waiver is based upon materially inaccurate information, the

validity of the waiver is in question as to voluntariness, or something more, such as: (1) a

"voluntary, intelligent and knowing" standard, see *Hagans, Holmes, supra; or (2) a*

*combination of "voluntariness" with the assessment of whether the defendant had at least*

*"some rudimentary understanding of the rights being relinquished." See Buchanan v.*

*City of Kenosha,* 90 F. Supp. 2d 1008, 1015. (citing from *Outlaw v. United States, Slip.*

*Op. No. 00-CF-1042 (Sept. 5, 2002*), DC Court of Appeals.).  Moreover, the action of the

District in transferring Plaintiff to Virginia violated the Plaintiff's right to challenge the

extradition through Habeas.  See, e.g. *Stokes,* 374 F.3d at 1238

    The District of Columbia Department of Corrections transfer of the Plaintiff to the

State of Virginia when and while the Plaintiff was serving a sentence imposed by the

District of Columbia Court of Appeals (Superior Court Judge Noel Kramer serving by

special designation), after the Plaintiff submitted protest on the record of the Virginia

detainer and Plaintiff's intent to challenge the constitutionality of the Virginia detainer,

On June 4, 2004, violated Plaintiff's Constitutional rights pursuant to the Interstate

Compact, the  Interstate Agreement on Detainers, Pub. L. 91-538, § 1, Dec. 9, 1970, 84

Stat. 1397, as amended by Pub. L. 100-690, title VII, § 7059, Nov. 18, 1988, 102 Stat.

4403,  to which the State is a party.

As the federal government is a party to the IAD, it constitute federal law, subject to federal construction. *Somerlot, 209 W.Va. at 128 (quoting Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401 (1985). ([t]he Agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const. Art. 1, § 10, cl.3, and thus is a federal law subject to federal construction."); see also, *New York v. Hill,* 528 U.S. 110, 111, 120 S.Ct. 659 (2000).  When the Plaintiff was transferred his right to bring a habeas corpus petition on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a) (1996).  The Plaintiff can show prejudice arising from the violation. *Wainwright v. Sykes,* 433 U.S. 72 (1977); *Maggard v. Gammon,* 197 F.Supp.2d 1321, 1330-31 (D.Kan. 2002).  The Plaintiff can show that any constructive waiver conclusively-self-servingly construed by the District of Columbia Government, was not voluntary.  *New York v. Hill,* 528 U.S. 110, 114, 120 S.Ct. 359 (2000).

The Uniform Extradition and Rendition Act provides that after being informed by a judge of the effect of a waiver, the person may waive the right to require a judicial hearing and consent to return to the other state by executing a waiver in the presence of a judge. Uniform Extradition and Rendition Act § 2-103(b), 3-106(b), U.C.E.A. § 25-A.

Any waiver of rights under the Uniform Criminal Extradition Act should be explicit. *State v. Maglio,* 189 N.J. Super. 257, 459 A.2d 1209 (Law Div. 1983).   "It is the governor's duty to ensure that each prisoner arrested under a extradition warrant is given a pre-extradition hearing.  *In re Extradition of Martinez,* 2001, NMSC-2009, 130 N.M. 144, 20 P.3d (2001).

**Intentional and/or Negligent Infliction of Mental and Emotional Distress**

The Plaintiff has established a predicate case for intentional and/or Negligent Infliction of Mental and Emotional Distress based upon the foregoing and allegations set forth in the Third Amended Complaint.

Accordingly, the Plaintiff has stated claims upon which relief can be granted against each of the defendants and on each of the counts, and the District's Motions to Dismiss ought be denied.


_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,
703 965-5637


**VIA EMAIL TO**
**Denise.baker@dc.gov**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 70001
(202) 442-9887

**VIA EMAIL TO**
Megan.benary@eclairryan.com
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

**VIA EMAIL TO**
dstruck@jshfirm.com
**Facsimile 602 263-1784**
Daniel P. Struck
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800

Phoenix, Arizona 85012

**Denise.baker@dc.gov**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887

Megan.benary@eclairryan.com
Megan S. Ben'Ary
LeClair Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314

dstruck@jshfirm.com
Daniel P. Struck
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012

_____/s/_____
drsbanks@msn.com
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302