IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BANKS<br><br>Plaintiff,<br><br>v.<br><br>JOHN CAUFIELD, et al.,<br><br>Defendants. | Civil Action No. 05-1514 (ESH) |

**DEFENDANT CAULFIELD'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendant John Caulfield, through counsel, files this Motion to Dismiss Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b) because Plaintiff has failed to exhaust the administrative remedies available to him pursuant to 42 U.S.C. § 1997e(a). This motion is supported by the following Memorandum of Points and Authorities and the pleadings on file with the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**

Inmate Banks filed his Third Amended Complaint on August 18, 2006, wherein he alleges that he: (1) did not have adequate dental care, (2) was exposed to cold temperatures, and (3) did not have reasonable access to the law library while he was incarcerated at the Correctional Treatment Facility ("CTF"). For the foregoing claims, Inmate Banks alleges that his constitutional rights provided under the Fourth, Fifth, and Fourteenth Amendments were violated.

1722422.1

Inmate Banks has not alleged or shown that he has exhausted administrative remedies available to him, as is required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Indeed, despite the fact that Inmate Banks was fully aware of his right to file and appeal grievances as set forth in the Inmate Handbook that all inmates are provided upon arrival at CTF, the record demonstrates that Inmate Banks did not follow the grievance procedure to the end with respect to any of the claims he alleges against Warden Caulfield.

## II.   LEGAL ARGUMENT

### A.   Plaintiff's Failure to Exhaust Administrative Remedies Warrants Dismissal of His Claims Against Warden Caulfield.

The PLRA requires inmates to exhaust administrative remedies before bringing a lawsuit. Under 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under § 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement promotes important interests, which include:

> (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.[1]

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, or whether they allege excessive force or some other wrong."[2] Moreover, the United States Supreme Court recently clarified that even

---

[1] *See Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991).

[2] *See Jeanes v. United States Dep't of Justice*, 231 F.Supp.2d 48, 50-51 (D.D.C. 2002) (internal citations omitted).

inmates seeking only monetary relief must properly complete a prison administrative process that could provide some sort of relief, even if not monetary, before filing a § 1983 claim.[3]

As outlined, an inmate is required to exhaust all administrative remedies before filing a civil lawsuit. CTF provides an administrative grievance process, and all inmates, including Inmate Banks, are informed of the grievance procedures upon arrival at the facility.[4] Additionally, inmates have access to the complete grievance policy at the CTF Law Library or through facility staff.[5]

CTF's grievance procedures state that in order for an inmate or detainee to exhaust his administrative remedies, the inmate must follow the facility grievance procedures and carry the grievance through to its final conclusion.[6] The CTF grievance policy is as follows: Prior to pursuing the formal grievance process, inmates must first utilize the Informal Resolution Process.[7] Inmates may utilize this process by: (1) submitting an Inmate Request Slip; or (2) speaking with any staff member concerning the issue prior to submitting a grievance.[8] If the complainant is dissatisfied with that the result of the Informal Resolution process, only then may the formal process be initiated.[9] At CTF, the formal grievance process contains four steps.[10] First, the inmate must initially send the grievance, on the Corrections Corporation of America

---

[3] *See Woodford v. Ngo*, 126 S.Ct. 2378, 2380 (2006); *see also Booth v. Churner*, 532 U.S. 731 (2001) (dismissing the claims of an inmate who failed to exhaust all available administrative remedies).

[4] *See* J. Allen Aff. of 1/8/07 at ¶ 6, attached to Defendants' Motion to Dismiss as Exhibit 1.

[5] *Id.*

[6] *Id.* at ¶ 7.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

1722422.1

("CCA") Inmate/Resident Grievance Form (Form 14-5A), to the Grievance Officer within seven (7) days of the alleged incident.[11]  The time for filing begins from the date the problem or incident became known to the inmate/resident.  Second, if the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the request for Warden/Administrator Review portion of the Grievance Form.[12]  Third, if the inmate is unsatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response.[13]  Fourth, the inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision.[14]  If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the administrative remedies available.[15]

Additionally, the Grievance Policy includes procedures for inmates/residents to file Emergency Grievances.[16]  Grievances may be considered Emergency Grievances if the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury.[17]  If the grievant asks that the grievance be considered an emergency and details the basis for needing an immediate response, the Facility Grievance

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at ¶ 8.

[16] *Id.* at ¶ 9.

[17] *Id.*

Officer, will, within 24 hours, review the grievance to determine if an emergency exists.[18]  If an emergency exists, the Facility Grievance Officer will take initial action to resolve the grievance within twenty-four (24) hours of receipt.[19]  After initial action has been taken and within seventy-two (72) hours of receipt of the emergency grievance, the Facility Grievance Officer will prepare and issue a written decision to the Grievant.[20]

Inmate Banks did not properly utilize the general or emergency grievance procedures at CTF.  The Grievance Log was electronically searched for grievances filed by the Plaintiff for the calendar years of 2005-2006.[21]  While Inmate Banks did file grievances regarding his claims against Warden Caulfield, those grievances were not timely and/or not appealed to their final conclusion, demonstrating that Plaintiff failed to properly exhaust all available administrative remedies prior to bringing suit.  As a result, his Third Amended Complaint must be dismissed.

### 1. Inmate Banks' Claim Regarding Dental Care

On November 1, 2005, Inmate Banks submitted Grievance 05-3642 complaining that his 29 previous requests for a dental appointment and emergency treatment in connection with purported dental pain were denied.[22]  Inmate Banks requested a dental appointment and transfer to a facility where his private dentist could see him.[23]  The grievance was denied on November 7, 2005, with the explanation that the medical contractor is under the control of the District of Columbia Department of Corrections and CCA had no authority to provide dental care.[24]  Inmate

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at ¶ 10.

[22] *Id.* at ¶ 11.

[23] *Id.*

[24] *Id.*

Banks acknowledged receipt of this decision on November 7, 2005 and did not appeal.[25]

### 2. Inmate Banks' Claim Regarding Temperatures

On October 31, 2005, Inmate Banks submitted Grievance 05-3643 complaining that his cell was too cold, with temperatures ranging between 35-40 degrees Fahrenheit.[26] This grievance was resolved on November 7, 2005, and Inmate Banks acknowledged receipt of the decision on the same day.[27] Inmate Banks did not appeal.[28]

One month later, on December 3, 2005, Inmate Banks submitted Grievance 05-3798 again complaining about cold temperatures.[29] This grievance was resolved and acknowledged on December 9, 2005.[30] Inmate Banks did not appeal.[31]

### 3. Inmate Banks' Law Library Access Claim

On December 3, 2005, Inmate Banks submitted Grievance 05-3824 complaining that the law library had been closed for four out of the past six weeks, and that copies of cases were not timely provided.[32] On December 27, the Grievance Officer reported that the law library was only closed for Thanksgiving, and that it was unknown why Inmate Banks did not show up during his scheduled hours on November 11 and 18.[33] Further, the Grievance Officer indicated that a review of Inmate Banks' records show that Inmate Banks did not have any initial pleadings or pending criminal matters before the court, thus CCA was not required to provide Inmate

---

[25] *Id.*

[26] *Id.* at ¶ 12.

[27] *Id.*

[28] *Id.*

[29] *Id.* at ¶ 13.

[30] *Id.*

[31] *Id.*

[32] *Id.* at ¶ 14.

[33] *Id.*

Banks with assistance.[34]  In any event, Inmate Banks was provided 90 percent of his requests.[35]

Plaintiff acknowledged receipt of the decision on December 27, 2005 and appealed disputing that he received any percentage of service, and that the "law library was a dysfunctional mess."[36]  The Warden replied to the appeal indicating that Inmate Banks was receiving all appropriate legal materials as requested and suggested that Inmate Banks request more library time.[37]  After this step, if he was unsatisfied with this results, Inmate Banks had two more steps to follow in order to exhaust the administrative remedies available to him.[38]  Inmate Banks did not appeal the Warden's decision, and thus, did not follow all of the required steps.[39]

One month later, on January 23, 2006, Inmate Banks submitted Grievance 06-245 continuing his complaint that the law librarian failed to print out copies of 11 cases.[40]  The librarian replied that the CCA/CTF policy on copying for inmates dictates that CTF is only required to provide free copies of documents that will be filed in court, not research material that is otherwise available in the library.[41]  The grievance was deemed resolved by the Grievance Officer on January 30, 2006, and Inmate Banks acknowledged receipt of that decision on the same day.[42]  Inmate Banks did not appeal.[43]

---

[34] *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996).

[35] Ex. 1 (Allen Aff.) at ¶ 14.

[36] *Id.*

[37] *Id.*

[38] *Id.* at ¶ 7.

[39] *Id.* at ¶ 14.

[40] *Id.* at ¶ 15.

[41] *Id.*

[42] *Id.*

[43] *Id.*

B.  **Plaintiff's Complaint Contains a "Pleading Defect" and Must Be Dismissed.**

The failure to exhaust administrative remedies raises a "jurisdictional challenge" under the PLRA. In this regard, in *Al-Owhali v. Ashcroft*, the court recently stated:

> Defendant further posits that even if the regulation had been implemented against plaintiff, [the inmate] has not exhausted his administrative remedies, as he is required to do, prior to initiating this lawsuit. Because these challenges, like any jurisdictional challenge, "imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," *Grand Lodge of the Fraternal Order of Police v. Ashcroft,* 185 F. Supp.2d 9, 13 (D.D.C. 2001), the "plaintiffs' factual allegations in the complaint...will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13-14 (citations omitted)."[44]

Likewise, in *Eldridge v. District of Columbia*, the court also treated the failure to allege exhaustion as a pleading defect.[45] This Circuit's treatment of the exhaustion issue comports with the PLRA's unequivocal language, which states that "[n]o action shall be brought . . . until such administrative remedies as are available are exhausted."[46] Because the PLRA's exhaustion requirement is jurisdictional, Defendants may raise this issue at any point or the Court may consider it *sua sponte*. Other circuits concur with this analysis.[47]

While there are other courts that take a different approach, by dismissing a case on the

---

[44] *See* 279 F.Supp.2d 13, 21 (D.D.C. 2003).

[45] *See* No. 02-7059, 2002 WL 31898173, at *1(D.C. Cir. Dec. 23, 2003).

[46] 42 U.S.C. § 1997(e).

[47] *See e.g., Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209 (10th Cir. 2003), petition for cert. filed (April 26, 2004) (No. 03-10625); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (holding that "[a] prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or in the absence of written documentation describe with specificity the administrative proceeding and its outcome."); *Brown v. Toombs*, 139 F.3d 1102, 1004 (4th Cir. 1998) (holding that district courts should enforce the exhaustion requirement *sua sponte* if not raised by the defendant.")

pleadings pursuant to an "unenumerated 12(b) motion," these courts still recognize that the PLRA gives prisons and their officials a valuable entitlement – the right *not* to face a decision on the merits – which courts must respect if a defendant chooses to invoke it.[48]  For this reason, even if exhaustion were not jurisdictional, it is appropriate to resolve the issue at this stage.[49]

Because Plaintiff failed to provide the Court with any evidence that he complied with the PLRA exhaustion requirements, there is a pleading defect that mandates dismissal of Plaintiff's Third Amended Complaint.

### C.   Plaintiff Fails to State Any Actual Injury Regarding Allegedly Cold Conditions.

With regard to all three claims against Warden Caulfield, Inmate Banks fails to allege that he suffered any specific physical injury with regard to the temperature of his cell at CTF.  In a recent United States Supreme Court decision, the Court discussed the necessity of alleging an "actual injury" in order to acquire standing to prosecute an action for a claimed constitutional deprivation.

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of the courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.
> \* \* \*

---

[48] *See e.g., Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) ("[T]he failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment."); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999).

[49] Even the minority of courts that generally do not permit defendants to raise exhaustion before summary judgment still permit defendants to raise the matter on a motion to dismiss when, as here, the complaint and attachments indicate that the plaintiff did not exhaust.  *See e.g., Brown v. Croak*, 312 F.3d 109, 111 n.1 (3rd Cir. 2002); *Ray v. Kertes*, 285 F.3d 287, 295 n. 8 (3d Cir 2002) ("We do not suggest that defendants may not raise failure to exhaust as the basis for a motion to dismiss in appropriate cases.")

> Of course the two roles briefly and partially coincide when a Court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If -- to take another example from prison life -- a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.[50]

Inmate Banks has alleged only that it was cold in his cell. He has not alleged any actual injury. Thus, even if Plaintiff's allegations are accepted as true, Plaintiff lacks standing to prosecute this claim because he has not suffered any actual injury.

### D. Plaintiff's Claim Regarding Law Library Access Fails.

Inmate Banks cannot maintain this claim because (1) CTF satisfied its constitutional obligation regarding access to courts and (2) Plaintiff cannot demonstrate actual injury with regard to this claim.

#### 1. Inmate Banks Was Not Denied Access to the Courts.

A prisoner does not have a "freestanding right to a law library or legal assistance."[51] Prisons need only provide the tools necessary to allow inmates to institute actions challenging sentences or conditions of confinement: "impairment of other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."[52]

---

[50] *Lewis v. Casey*, 518 U.S. 343, 349-50, 116 S.Ct. 2174, 2179 (1996).

[51] *Id.* at. 351, 116 S.Ct. at 2180.

[52] *Id.* at 355, 116 S.Ct. at 2182.

Thus, prisons do not have an affirmative duty to provide a full and complete law library.[53] Moreover, an inmate does not establish a denial of access to courts claim by merely alleging that library access or assistance is sub par.[54]

As outlined in *Lewis*, incarcerated individuals do not have a freestanding right to access of the prison law library.[55] Instead, *Lewis* makes clear that prison facilities are only required to provided detainees or inmates with the tools to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. In other words, once a pro se litigant has his foot in the door (of the courthouse) the governmental entity's affirmative obligation is satisfied.

In light of Plaintiff's aborted efforts to utilize the grievance process, it is apparent that Plaintiff's issue is not that he was denied access to the legal research materials he requested, but that he did not like the form of access provided. That is, while copies of all requested cases were provided in the physical reporters required pursuant to this Court's order in *Green v. District of Columbia*, No. 90-793 (Nov. 12 and 14, 1991), Plaintiff wanted to have copies of those cases printed out from on-line sources so he could read them in his cell, rather than reading them in the law library. Plaintiff seemingly is asking this Court to turn *Lewis* on its head.

Here, even though Inmate Banks did not have any initial pleadings or pending criminal matters, it is undisputed that CTF provided Inmate Banks with access to legal materials. In fact, Inmate Banks asserts that he was virtually provided free rein of the library, except that the library was closed four out of six weeks (which the record shows it was not) and that CTF would not continue to print out cases for him at CTF's expense. However, CTF did print-out those

---

[53] *Id.* at 384-5, 116 S.Ct. at 2186.

[54] *Id.* at 355, 116 S.Ct. at 2182.

[55] *Id.* at. 351, 116 S.Ct. at 2180.

documents Plaintiff typed and sought to file in court, as well as letters he wrote.[56]

Thus, CCA provided Inmate Banks with access to the courts which exceeded the directive of *Lewis*. As a result, Defendant has met his burden of proof on the first prong of Plaintiff's access to courts claim.

### 2.  **Inmate Banks Cannot Demonstrate Actual Injury.**

The second prong of an access to courts claim requires the inmate to show actual injury: that he was unable to file a non-frivolous claim because of the prison's inadequacies in allowing meaningful access to the courts.[57] Here, however, Inmate Banks' claim is doomed at the outset because he is unable to establish actual injury. Inmate Banks has provided no evidence that other non-frivolous lawsuits were dismissed,[58] that he was unable to file documents related to his appeals, or that he was unable to file a lawsuit because he was allegedly denied access to the law library. In sum, Inmate Banks fails to establish that anything Warden Caulfield did or failed to do prevented Plaintiff from obtaining case law, drafting pleadings or other legal documents, or requesting extensions of time.

---

[56] *See* Ex. 1 (Allen Aff), Attachment F, attached memorandum from Jeanette Davis-Boykins and Smakeka Bivens to Plaintiff indicating that all documents were printed out and that Plaintiff was free either to handcopy selections from the case reporters or pay for his printouts of case law.

[57] *Lewis*, 518 U.S. at 350-1, 116 S.Ct. at 2179-80. Courts have found that even the denial of direct access by segregation inmates to the prison's law library does not violate the constitution if the segregation inmates are nevertheless afforded access to basic legal research tools. *See Keenan v. Hall,* 83 F.3d 1083, 1093-94 (9th Cir. 1996); *Wood v. Housewright,* 900 F2d. 1332, 1334, 1335 (9th Cir. 1990); *Pawelski v. Cooke,* 1991 WL 03181 at 3, 6-8 (W.D. Wis. 1991). Thus, where the prison provides segregation inmates the ability to request legal materials from the law library, the inmate is provided meaningful access to courts.

[58] Interestingly, despite Plaintiff's allegation that his appeals in the Commonwealth of Virginia that were impaired, no Virginia case law was included amongst his requests to be printed out. *See* Ex. 1, Attachment E, Inmate Request for Printout of the Following Cases, which lists only Federal and District of Columbia cases.

1722422.1

In fact, in Grievance No. 06-245, Plaintiff admitted that he did not experience any injury. He explains that since he did not receive a printout of a motion the same day he requested it that he "handwrote an emergency request and [timely] mailed it."[59] In terms of legal research, Plaintiff's sole "injury" was that he was hindered from sending "excerpts of the case cites to my outside word processors/typists."[60] These do not amount to any injury since, this and all other courts are used to accepting handwritten documents from *pro se* inmate litigants and do not have any rule requiring that they submit typed or word processed documents.

Because no action by Warden Caulfield has had a detrimental effect on Plaintiff's legal affairs, Inmate Banks is unable to establish actual injury, as required by the Supreme Court in *Lewis*, to survive a motion to dismiss for failure to state a claim.

### III.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that his Motion to Dismiss be granted.

Dated: this 16th day of January, 2007.

By: /s/ Daniel P. Struck
Daniel P. Struck, Bar No. 012377
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-1700
Facsimile:  (602) 263-1784

Attorneys for Defendant
John Caulfield

---

[59] Ex. 1 (Allen Aff) at. ¶ 15.

[60] *Id.*

1722422.1

Electronically filed this 16th
day January, 2007, with:

United States District Court
   for the District of Columbia

Copy delivered electronically
this even date to:

Judge Ellen Segal Huvelle
United States District Court
   for the District of Columbia

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, VA  22302
*Pro Per*

Denise J. Baker
OFFICE OF THE ATTORNEY GENERAL
     FOR THE DISTRICT OF COLUMBIA
441 4th Street, NW
Room 6S028
Washington, DC 20001
Attorneys for Defendants Tally, Reiskin, Williams,
   Pane, Brown and Nelson

Richard S. Love
OFFICE OF CORPORATION COUNSEL
441 Fourth Street, NW
Washington, DC 20001
Attorneys for Defendants Tally, Williams and Pane

Kelvin L. Newsome
LECLAIR RYAN
999 Waterside Drive
Suite 2525
Norfolk, VA 23510

Megan Starace Ben'Ary
LECLAIR & RYAN
225 Reinekers Lane
Suite 700
Alexandria, VA 22314

/s/ Kamika A. Brown

1722422.1