# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARCUS BYNUM, <u>et al.</u>,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Number 02-956 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on plaintiffs' motion for class certification [6-1], which was filed on July 26, 2002, and defendant's motion for an enlargement of time to file a brief in opposition to the "strip search" component of plaintiffs' motion [41-2].  Upon consideration of the parties' motions, the opposition and reply briefs filed thereto, and the applicable law in this case, the Court finds that plaintiffs' motion should be granted in part and denied in part, and that defendant's motion should be denied.

## I.   BACKGROUND

This action arises under section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiffs are persons who have been, are, or will be incarcerated by the District of Columbia Department of Corrections as detainees or prisoners.  They seek monetary damages and injunctive relief for defendant's alleged violations of the Fourth, Fifth, and Eighth Amendments to the U.S.

Constitution.

Plaintiffs seek the formation of a class and subclass in this case pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The alleged injury inflicted by defendant against the putative class consists of holding the putative class members in a Department of Corrections facility past midnight on the date of their scheduled release from custody.  The alleged injury inflicted by defendant against the putative subclass consists of subjecting the putative subclass members to strip searches after the members were returned to a Department of Corrections facility following a judicial determination that there was no longer any basis for the members' detention, apart from processing for release from custody.

Plaintiffs filed their second amended complaint on July 23, 2002.  On July 26, plaintiffs moved for an order from this Court certifying the proposed class and subclass described above.  Defendant submitted its opposition brief on December 16, and plaintiffs filed a reply brief in support of their motion on January 13, 2003.  On December 9, 2002, plaintiffs dismissed the claims of all of the named plaintiffs except for Marcus Bynum, Kim Nabinette, Leroy S. Thomas, Dianne Johnson, Gloria Scarborough, and Julian Ford.  On the same date, defendant moved for a further enlargement of time to respond to plaintiffs' motion to certify a subclass in this action.  Plaintiffs submitted their brief in opposition to defendant's motion for an enlargement of time on December 20.

## II.    DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME

Although defendant has filed an opposition brief to plaintiffs' motion for class certification, that brief contains no discussion of plaintiffs' proposal to certify a subclass in this action consisting of

inmates allegedly subjected to unconstitutional strip searches.  Instead, in conjunction with its motion for partial summary judgment, defendant filed a motion for an extension of time in which to file a brief in opposition to plaintiffs' motion to certify a subclass.  The sole justification presented by defendant for its request for an enlargement of time was that if the Court were to grant its motion for partial summary judgment, plaintiffs' motion to certify the subclass would be mooted.  In a separate memorandum and order filed this date, the Court denied defendant's motion for partial summary judgment.  The Court will also deny defendant's motion for an enlargement of time.

Rule 23(c) of the Federal Rules of Civil Procedure states that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."  Plaintiffs' motion to certify the class and subclass in this action has been pending since July 26, 2002, yet defendant has filed no brief in opposition to plaintiffs' motion to certify the subclass.  Defendant has apparently been operating under the assumption that such a filing would be unnecessary while its summary judgment motion was pending.  That assumption has proven incorrect.  Moreover, such an assumption was unwarranted, given the fact that the issue of whether to certify a class (or subclass) proceeds without an examination of the merits of the case, as in a summary judgment motion.  Because eight months is more than enough time for defendant to have filed a brief in opposition to plaintiffs' motion to certify the subclass, and because the mandate of Rule 23(c) is clear, the Court will not brook any further delay of the certification question.  Accordingly, it will deny defendant's motion for a further enlargement of time, and deem defendant to have waived its right to file a brief in opposition to plaintiffs' motion to certify the subclass.  Although the Local Rules of the District of Columbia permit the Court to treat such a motion as conceded, the Court will nevertheless examine the

merits of plaintiffs' motion before determining whether the certification of a subclass is appropriate.

### III.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

"The party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one of the categories of Rule 23(b)." Franklin v. Barry, 909 F. Supp. 21, 30 (D.D.C. 1995). The evidence that plaintiffs have presented in support of class certification is presumably the same evidence that plaintiffs will rely upon to prove the merits of their case at trial. However, as noted above, the class certification inquiry does not extend to an examination of the merits of the case. Instead, the legal standard is whether the evidence presented by plaintiffs establishes a "reasonable basis for crediting [plaintiffs'] assertion[s]." Wagner v. Taylor, 836 F.2d at 578, 587 n.57 (D.C. Cir. 1987) (quoting Kuck v. Berkey Photo, Inc., 81 F.R.D. 736, 739 (S.D.N.Y. 1979)); see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (quoting Miller v. Mackey Int'l, 452 F.2d 424, 427 (5th Cir. 1971)).

The initial inquiry by the Court is whether a class exists that can be certified. Additionally, Rule 23 of the Federal Rules of Civil Procedure, which governs class certification, requires a party seeking certification to satisfy the requirements of subdivisions (a) and (b). Rule 23(a) mandates that a class should be certified only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

4

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

Finally, in order to maintain an action as a class action, the party seeking certification must demonstrate that one of the relevant provisions of Rule 23(b) have been satisfied.  In the instant case, plaintiffs represent that the putative class satisfies subsections (b)(2) and (b)(3) of Rule 23.  Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Rule 23(b)(3) requires the Court to find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The Court will examine each of these requirements in turn.


A.     Existence of a Class

"It is axiomatic that for a class action to be certified a 'class' must exist."  Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981).  On the subject of whether a class exists, this Court has explained that

> [a]lthough Rule 23 of the Federal Rules of Civil Procedure does not specifically require plaintiffs to establish that a class exists, this is a common-sense requirement and courts routinely require it.  The requirement that a class be clearly defined is designed primarily to help the trial court manage the class.  It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation.  In other words, the class must be sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member.

Pigford v. Glickman, 182 F.R.D. 341, 346 (D.D.C. 1998) (internal citations and punctuation omitted);

see also Rodriguez v. U.S. Dep't of the Treasury, 131 F.R.D. 1, 7 (D.D.C. 1990). Defendant argues

that plaintiffs have failed to provide a meaningful definition of the proposed class, and cites two cases in

which district courts denied class certification because the proposed class definition was considered to

be too amorphous. In Mueller v. CBS, 200 F.R.D. 227, 233-34 (W.D. Pa. 2001), the plaintiffs

sought to certify a class consisting of all of the defendant's former employees over forty years of age

who had been terminated in order "to interfere with their benefits." The court denied certification,

explaining that it would be necessary to hold a series of individualized causation hearings to determine

which of the employees had been fired in order to prevent them from receiving retirement benefits. In

the second case, In re Copper Antitrust Litig., 196 F.R.D. 348, 350 (W.D. Wis. 2000), the district

court denied certification to a proposed class consisting of "[a]ll copper or metals dealers . . . that

purchased physical copper" during a specified time period "at prices expressly related to LME or

Comex copper future prices." The court noted that the plaintiffs' proposed definition fell "far short of

communicating to copper purchasers what they [would] need to know to decide whether they [were] in

or outside the proposed class" because it failed to explain the meaning of the terms "copper or metals

dealers," "physical copper," and "expressly related to." Id. at 358-60.

The Court must determine whether plaintiffs' proposed class definition sets forth general

parameters that limit the scope of the class to such a degree that it is administratively feasible for this

Court to determine whether a particular individual is a member of the class. Plaintiffs' second amended

complaint defines the proposed class as

> consisting of each person who, in the three years preceding the filing of this action, up until the
> date this case is terminated [(a)], has been, is, or will be incarcerated at any Department of
> Corrections facility, and [(b)] who was not released, or, in the future, will not be released [(i)]

> by midnight on the day on which the person is entitled to be released by court order or [(ii)] the date on which the basis for his or her detention has otherwise expired.

Pls.' Second Am. Compl. ¶ 8.  In <u>Pigford</u>, this Court concluded that the plaintiffs had sufficiently outlined the boundaries of the class because "by looking at the class definition, counsel and putative class members can easily ascertain whether they are members of the class." <u>Pigford</u>, 182 F.R.D. at 346.  Having reviewed plaintiffs' class definition, the Court is satisfied that an individual would be able to determine, simply by reading the definition, whether he or she was a member of the proposed class. If, during the prescribed time period, he or she was incarcerated in a Department of Corrections facility, all that he or she would need to determine is whether he or she was not released by midnight on the date he or she was entitled to be released, either because a court order had been issued to that effect, or because the basis for his or her detention had expired.  Unlike in <u>Copper Antitrust</u>, there are no terms in the definition that require further clarification.  And unlike the proposed definition in <u>Mueller</u>, plaintiffs' definition would  not require the Court to hold individualized hearings to decide whether a particular individual fell within the scope of the definition.  Therefore, the Court concludes that plaintiffs have successfully demonstrated the existence of an ascertainable class.


      B.      Prerequisites of a Class Action under Rule 23(a)

           1.      Impracticability of Joinder

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable."  "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." <u>Gen. Tel. Co. of the Northwest, Inc.</u>

v. EEOC, 446 U.S. 318, 330 (1980); see also Civic Ass'n of Deaf of New York City v. Giuliani, 915

F. Supp. 622, 632 (S.D.N.Y. 1996) (explaining that a "precise quantification of the class members is

not necessary because the court may make 'common sense assumptions' to support a finding of

numerosity") (citation omitted).  Generally speaking, courts have found that a proposed class consisting

of at least forty members will satisfy the impracticability requirement.  See Consolidated Rail Corp. v.

Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1993) (observing that "numerosity is presumed at a

level of 40 members"); Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.), cert.

denied, 479 U.S. 883 (1986) (explaining that "while there is no fixed numerosity rule, generally less

than twenty-one is inadequate, more than forty adequate, with numbers between varying according to

other factors") (internal punctuation omitted).  The general rule is that a plaintiff need not provide the

exact number of potential class members in order to satisfy this requirement.  See, e.g., Kifafi v. Hilton

Hotels Retirement Plan, 189 F.R.D. 174, 176 (D.D.C. 1999) ("So long as there is a reasonable basis

for the estimate provided, the numerosity requirement can be satisfied without precise numbers.");

Pigford, 182 F.R.D. at 347 ("Mere conjecture, without more, is insufficient to establish numerosity, but

plaintiffs do not have to provide an exact number of putative class members in order to satisfy the

numerosity requirement.")  Vargas v. Meese, 119 F.R.D. 291, 293 (D.D.C. 1987).

At present, there are six named plaintiffs in this action.  Additionally, plaintiffs have alleged,

upon information and belief, that at any particular time, up to 5-20% of the population in the

Department of Corrections – a population of approximately 2700 – is being held later than their release

date.  However, the Court need not rely solely on plaintiffs' conjecture as to the number of persons

who are being held later than their release date.  In its supplemental opposition brief, defendant has

provided a chart that it represents as "the most recent tabulation of 'late releases' from the D.C. Jail, as determined by the Department of Corrections." Def.'s Supp. Opp. Br., Second Supp. Dec. of Steven Smith ¶ 2. The chart represents that, between May 2002 and January 2003, ninety-seven inmates were detained for 48 hours or more after their scheduled release date.[1] Even assuming that each of the named plaintiffs are included in this tally, defendant has provided evidence indicating that at least ninety-three persons fall within the definition of plaintiffs' proposed class.[2] The Court therefore concludes that the class proposed by plaintiffs is so numerous that it would be impracticable to join all of its members in a single action. Accordingly, the Court deems the impracticability requirement of Rule 23(a) to be satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." It is not necessary that every issue of law or fact be the same for each class member. Forbush v. J.C. Penney, Inc., 994 F.2d 1101, 1106 (5th Cir. 1993); Cox, 784 F.2d at 1557. Indeed, factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members. See Pendleton v. Schlesinger, 73 F.R.D. 506,

---

[1] This does not include the number of inmates who were detained past their date of release for a "justifiable reason," defined by the D.C. Department of Corrections as including "inmates with detainers, outstanding warrants, pending charges, awaiting placement in a drug treatment facility, or delayed release orders." Def.'s Supp. Opp. Br., Late Release Trends, DC Department of Corrections, February 5, 2003, at n.1.

[2] It is unclear whether all of the named plaintiffs are, in fact, included in this tally because defendant fails to specify in the chart whether the months listed represent the month of the inmates' scheduled release dates or the dates on which they were actually released.

508 (D.D.C. 1977), aff'd, 628 F.2d 102 (D.C. Cir. 1980) ("In passing

on commonality, it is not appropriate to examine the likeness or relation of the several claims of all

members of the class and their representatives.  The only proper inquiry is, as the language [of Rule

23(a)(2)] suggests, whether there is some aspect or feature of the claims which is common to all.");

Marisol A. by Forbes v. Giuliani, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), aff'd, 126 F.3d 372 (2d

Cir. 1997) ("Rule 23(a)(2) will be satisfied if the named plaintiffs share at least one question of fact or

law with the grievances of the prospective class.  Indeed, a single common question may be sufficient to

satisfy this rule.") (citing cases) (internal punctuation omitted).

 Defendant claims that plaintiffs have failed to satisfy the commonality requirement because some

of the named plaintiffs allege that they were detained by only one to four days after their scheduled

release date, while others allege that they were overdetained by a significantly longer period of time.

However, as stated above, a single factual dissimilarity does not suffice to defeat the commonality

requirement.  Thus, for example, in another prison litigation case, the Third Circuit reversed the district

court's denial of class certification, noting that "Rule 23 does not require that the representative plaintiff

have endured precisely the same injuries that have been sustained by the class members, only that the

harm complained of be common to the class, and that the named plaintiff demonstrate a personal

interest or threat of injury that is real and immediate, not conjectural or hypothetical."  Hassine v. Jeffes,

846 F.2d 169, 177 (3d Cir. 1988) (internal punctuation omitted).

 The Court finds that, despite the fact that some of the plaintiffs might have been detained past

their release date for a longer time period than other plaintiffs, there are questions of law and fact that

are common to the class.  Plaintiffs have identified several such common questions, including whether

defendant follows the practice of holding persons in its custody later than their scheduled release date, and whether this alleged practice violates the Constitution. Additionally, the leading treatise on class action litigation has observed that "[w]hen the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3.10 (4th ed. 2002). In the present case, plaintiffs allege that defendant has systematically detained persons in their custody after their scheduled date of release, in violation of the Fourth, Fifth, and Eighth Amendments to the Constitution. Because it was this alleged course of conduct that caused injury to the plaintiffs (albeit to varying degrees based on the length of time of their overdetention), the causation elements of their Section 1983 claims are common to all plaintiffs. Accordingly, the Court finds that plaintiffs have satisfied the commonality requirement of Rule 23(a).

### 3.    Typicality

Rule 23(a)(3) mandates that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." While commonality requires a showing that the <u>members</u> of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the <u>representatives</u> of the class suffered a similar injury from the same course of conduct. This Court has explained that the purpose of the typicality requirement is to "ensure[] that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class." <u>Littlewolf v. Hodel</u>, 681 F. Supp. 929, 935

11

(D.D.C. 1988) (citation omitted).  It has also explained that "[a] plaintiff's claim is typical if it arises

from the same event or practice or course of conduct that gives rise to a claim of another class

member's where his or her claims are based on the same legal theory."  Stewart v. Rubin, 948 F.

Supp. 1077, 1088 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997).  The requirement has been

liberally construed by courts.  See In re Vitamins Antitrust Litig., 209 F.R.D. 251, 260 (D.D.C. 2002)

(citing cases).

      Factual variations between the claims of class representatives and the claims of other class

members claims do not negate typicality.  See Wagner v. Taylor, 836 F.2d 578, 591 (D.C. Cir. 1987)

(noting that "typicality is not destroyed merely by factual variations"); United States v. Trucking

Employers, Inc., 75 F.R.D. 682, 688 (D.D.C. 1977) (citing numerous cases for the proposition that

"where the claims or defenses raised by the named parties are typical of those of the class, differences

in the factual patterns underlying the claims or defenses of individual class members will not defeat the

action").

      Plaintiffs have submitted a list of the named representatives, together with their scheduled and

actual release dates from custody.  The amount of time they were allegedly detained past their

scheduled release date ranges from one to two hundred ten days.  Despite the varying lengths of each

named plaintiffs' overdetention, plaintiffs represent that all members of the class are advancing the same

legal theory based on the same set of facts, namely, that their constitutional rights were violated when

they were detained later than their release period, which in turn was caused by the alleged collapse of

the inmate management system maintained by defendant.  However, defendant insists that plaintiffs have

not met the typicality requirement because the claims of the named plaintiffs who were overdetained for

a relatively short time period ("short-term detainees") are not typical of those who were held for weeks or months ("long-term detainees").

But as noted above, demonstrating typicality does not mean showing that there are no factual variations between the claims of the plaintiffs. Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims. In the present case, the claims of the named plaintiffs are founded upon the same legal theory as those of the other plaintiffs – that defendant violated Section 1983 when it held them in custody after their scheduled release date, in violation of the Fourth, Fifth, and Eighth Amendments. Additionally, the alleged injuries suffered by the named plaintiffs arise from the same conduct that gave rise to the claims of the other class members, namely, defendant's failure to release them by midnight of their scheduled date of release. For purposes of the typicality inquiry, the fact that some class members may have been overdetained for one day, and others for weeks or even months is not determinative. Plaintiffs need only show that the named plaintiffs' claims are typical, not that the individual facts underlying their claims are identical to those of those of all other class members. The Court is satisfied that the claims of the named plaintiffs are typical of those of the class as a whole, and that plaintiffs have therefore satisfied the mandate of Rule 23(a)(3).

4.      Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately represent the interests of the class." In another case involving prison facilities maintained by

the District of Columbia, the D.C. Circuit explained that

> [a]mong the many factors governing the district court's decision that the prisoners are
> adequately represented are the quality of class counsel, any disparity in interest between class
> representatives and members of a would-be subclass, communication between class counsel
> and the class, and the overall context of the litigation.  Or, as this court once put it: "Two
> criteria for determining the adequacy of representation are generally recognized: 1) the named
> representative must not have antagonistic or conflicting interests with the unnamed members of
> the class, and 2) the representative must appear able to vigorously prosecute the interests of the
> class through qualified counsel."

Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997) (citing Nat'l Ass'n of

Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340, 345 (D.C. Cir.1976)) (internal citation

omitted).

Defendant has advanced several theories in support of its argument that neither the named

plaintiffs nor class counsel will fairly and adequately represent the interests of the class.  First, defendant

asserts that a conflict of interest exists between short-term detainees and long-term detainees.  Second,

defendant claims that class counsel's proposal that defendant advance some of the costs of notice to the

class members demonstrates a financial inability that will adversely affect the interests of the class.

Finally, defendant argues that the fact that class counsel is representing another inmate in a suit against

defendant demonstrates the inadequacy of the named plaintiffs.  The Court will examine each of these

arguments in turn.

Defendant argues that the named plaintiffs would not vigorously prosecute the interests of the

class because an inherent conflict exists between the named plaintiffs who constitute short-term

detainees and those who constitute long-term detainees.  Defendant asserts that the short-term

detainees will push for settlement of the class action, realizing that they do not stand to recover

significant damages awards at trial.  On the other hand, defendant argues, the long-term detainees might

resist the possibility of a quick settlement, presumably because they might realistically expect to recover

more if the case proceeds to trial.  Defendant analogizes to <u>Amchem Products, Inc. v. Windsor</u>, 521

U.S. 591 (1997), in which the Supreme Court decertified a class on purportedly similar grounds.

However, the factual situation in <u>Amchem</u> is manifestly inapposite to the situation presently

before the Court.  In <u>Amchem</u>, the plaintiffs sought certification of a settlement-only class action

composed of individuals who alleged that they had been exposed to asbestos.  <u>Amchem</u>, 521 U.S. at

601-02.  Although some of the named plaintiffs alleged that they already manifested physical injuries

resulting from their exposure, others alleged that they had suffered no physical injuries to date.  <u>Id</u>. at

603.  The Supreme Court observed that "[i]n significant respects, the interests of those within the single

class are not aligned.  Most saliently, for the currently injured, the critical goal is generous immediate

payments.  That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-

protected fund for the future."  <u>Id.</u> at 626.  Accordingly, the Court found that the plaintiffs had not

satisfied the adequacy requirement of Rule 23(a)(4).

Unlike in <u>Amchem</u>, the named plaintiffs in the instant case are not divided into those who have

suffered a present injury and those who merely expect to suffer similar injuries at some unknown later

date.  Rather, the relevant factual dissimilarity between the named plaintiffs' claims is that although some

were allegedly overdetained for only a day or a few days, others were overdetained for a month or

more.  It may be that the former group of named plaintiffs possess a lower financial stake in the case

than the latter group because a jury might determine their injuries to have been lesser in degree.  But the

size of a named plaintiff's financial stake in the action is not the determinative issue; rather, the issue is

whether the named plaintiffs will adequately protect the interests of the class.  See Shulman v. Ritzenberg, 47 F.R.D. 202, 206 (D.D.C. 1969) ("[T]o assert that the minute financial interest of the party before the court is a factor to be considered ignores the very spirit of the Rule 23 class action, which is to provide a means of vindicating small claims."); In re Oxford Health Plans, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (observing that "there is no requirement in Rule 23 concerning the amount of loss either in gross or compared with the losses of others, necessary to qualify as a class representative").  Additionally, defendant's assertion that the named plaintiffs might harbor different motives, and that those allegedly different motives might affect the overall trial strategy, is pure speculation.  This assertion is predicated on the assumption that the short-term detainees stand to recover significantly fewer damages at trial, an assumption that involves an assessment of the merits of the case, which is improper in a class certification inquiry.  If any antagonism later arises among the class members, the Court is certainly within its rights to revisit its determination as to the adequacy of the named plaintiffs' representation.  But the Court will not base a finding of inadequate representation on defendant's unfounded assertion that the interests of the class members might potentially be at odds.

Defendant also asserts that plaintiffs' proposal that defendant pay the cost of mailing the class notices to all class members demonstrates that class counsel will be unable to adequately represent the interests of the class.  However, in their reply brief, plaintiffs represent that they are "willing, ready and able to advance the costs of notice, and every other cost of the litigation to the extent allowed by the ethics rules."  Pls.' Reply Br. at 14.[3]  Additionally, plaintiffs have demonstrated that their proposed

---

[3] Presumably in order that they be able to provide appropriate notice, plaintiffs include in their proposed class certification order an overbroad provision directing defendant to provide to class counsel "all electronic data in defendant's possession, in a form usable by plaintiffs, relating to any

class counsel are qualified to prosecute this action on their behalf.  One of the two attorneys is a solo

practitioner with over fourteen years of experience whose practice during the last four years has

focused on complex federal civil rights litigation, including cases against the District of Columbia.  The

other attorney is a member of the clinical faculty of the George Washington University School of Law

who has practiced law in the District since 1975, and has served as counsel of record in a number of

lengthy, complex civil rights actions against various agencies of the District of Columbia.  The Court is

satisfied that plaintiffs' proposed class counsel will fairly and adequately represent the interests of the

class.

This determination is not undermined by the fact that class counsel is representing another

inmate in a separate action against defendant.  In Watkins v. District of Columbia, case number 02-

2352, which is also pending before this Court, the plaintiff alleges that he was subjected to a strip

search by defendant after being released on personal recognizance pending trial.  In their reply brief,

plaintiffs explain that Watkins does not appear to be a member of the putative class in the present

action because although he was allegedly strip-searched by defendant, he was not detained past his

scheduled date of release.  Additionally, on February 3, 2003, Watkins moved to consolidate his case

with the present case, and on February 28, he moved to certify his action as a class whose definition

coincides with the definition of the proposed subclass in the instant case, except that the members of the

---

person incarcerated in a District of Columbia Department of Corrections facility within the three years
preceding the filing of this action . . ."  If this provision was added for the purpose of providing notice to
class members, "all electronic data in defendant's possession" is far too sweeping.  In any event,
privacy concerns must also be addressed.  The parties should determine whether they will be able to
agree upon notification procedures and, within thirty days of the date of this opinion, should submit an
agreed-upon (or separate) proposed order(s).

putative class were not detained after their scheduled release date. The Court sees no reason why class counsel's responsibilities towards the class members in the present case would interfere with their duty to prosecute Watkins's case.

In sum, defendant has presented no evidence of any disparity between the interests of the named plaintiffs and the absent class members. By contrast, plaintiffs have represented that there exists no antagonism of conflicts of interest between the named plaintiffs and the other class members, and have demonstrated that class counsel will furnish competent representation for the class. The Court determines that plaintiffs have satisfied the fourth and final prong of Rule 23(a).

C.      Maintenance of a Class Action under Rule 23(b)

If the four requirements of Rule 23(a) have been met, a court must determine whether one or more of the requirements of Rule 23(b) has been satisfied, in order for the action to be maintained as a class action. Plaintiffs have requested certification as a 23(b)(2) and 23(b)(3) class action. The Court will examine whether plaintiffs have satisfied the requirements of either subsection.

1.      Appropriateness of Equitable Relief

Before a class may be certified under Rule 23(b)(2), the plaintiffs must demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This provision may be interpreted as imposing two requirements: (1) that defendant's actions or refusal to act are "generally applicable to the class" and (2) that plaintiffs seek

18

final injunctive relief or corresponding declaratory relief on behalf of the class.  The Court will examine

these requirements separately.

Defendant argues that because it has no policy of detaining inmates after their scheduled release

dates, and because the circumstances of each alleged overdetention vary, plaintiff cannot demonstrate

that its conduct is generally applicable to the class.  But the courts have never required such a

demonstration to turn on whether the party opposing the class has adopted such a formal policy.

Rather, it is enough to show that a defendant "has acted in a consistent manner toward members of the

class so that his actions may be viewed as part of a pattern of activity."  7A CHARLES ALAN WRIGHT

& ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1775 (2d ed. 1986); see, e.g., Jones

v. Goord, 190 F.R.D. 103, 112 (S.D.N.Y. 1999) (certifying a (b)(2) class of prisoners alleging that

they were unconstitutionally double-celled, "notwithstanding defendants' argument that matters such as

inmate screening is done on a case-by-case basis by different prison officials at different facilities").  In

the present case, plaintiffs allege that a systemic failure on the part of defendant's records office has

resulted in the overdetentions complained of by plaintiffs.  It may be true, as defendant claims, that "the

circumstances surrounding each overdetention are particular to the detainee."  Def's Opp. Br. at 15.

But the fact remains that, on the facts alleged by plaintiffs, the overdetentions do not appear to be

isolated instances, but instead represent part of a consistent pattern of activity on the part of defendant.

Based on these representations, the Court is satisfied that defendant's continued detention of  inmates

after their scheduled release date has passed constitutes conduct that is generally applicable to the

members of the class.

The second requirement of Rule 23(b)(2) is that plaintiffs be seeking final injunctive relief or

corresponding declaratory relief. Given that plaintiffs' second amended complaint seeks the entrance of a declaratory judgment and preliminary and permanent injunctive relief against defendant, it would seem obvious that this requirement has been met. However, defendant argues that "money is what this case really is about" because the plaintiffs are no longer being detained by defendant, and that "[t]he presence of a significant, and likely predominant, claim for money damages means that the plaintiffs cannot maintain their class under Rule 23(b)(2)." Def.'s Opp. Br. at 17.

Defendant's objection raises an important threshold issue. The Advisory Notes to the 1966 Amendment to Rule 23 explained that subsection (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." In the present case, because plaintiffs seek both monetary and injunctive relief, it would seem necessary to determine whether their claims for monetary relief predominate over their other claims. However, the circuits have split on the appropriate manner in which courts are to make this determination. The Fifth, Seventh, and Eleventh Circuits have all held that claims for monetary relief predominate over equitable claims unless the monetary relief sought is incidental to the requested injunctive relief. See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998); Jefferson v. Ingersoll Int'l, Inc., 195 F.3d 894, 898 (7th Cir. 1999); Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001). On the other hand, the Second and Ninth Circuits have rejected this approach in favor of an ad hoc balancing determination of whether (b)(2) certification is appropriate under the circumstances. Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001); Molski v. Gleich, 318 F.3d 937, 949-50 (9th Cir. 2003). The issue has not been resolved in this Circuit. See Garcia v. Veneman, 211 F.R.D. 15, 23 (D.D.C. 2002) (declining to choose between the two approaches); McReynolds v. Sodexho

Marriott Servs., Inc., 208 F.R.D. 428, 449 n.32 (D.D.C. 2002) (same).

However, the Court need not resolve the "predominance" issue because the D.C. Circuit has

held that

> when a (b)(2) class seeks monetary as well as injunctive or declaratory relief the district court
> may exercise discretion in at least two ways. The court may conclude that the assumption of
> cohesiveness for purposes of injunctive relief that justifies certification as a (b)(2) class is
> unjustified as to claims that individual class members may have for monetary damages. In such
> a case, the court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for
> declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively
> granting (b)(3) protections including the right to opt out to class members at the monetary relief
> stage. Alternatively, the court may conclude that the claims of particular class members are
> unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should
> be permitted on a selective basis. . . . [W]e view Rule 23(d)(5) to be broad enough to permit
> the court to allow individual class members to opt out of a (b)(1) or (b)(2) class when
> necessary to facilitate the fair and efficient conduct of the litigation.

Eubanks v. Billington, 110 F.3d 87, 96 (D.C. Cir. 1997). The Eubanks decision thus presents this

Court with two options in cases such as the present action: it may decide to certify a "hybrid" (b)(2)

and (b)(3) class, or it may certify a (b)(2) class and afford individual class members the due process

protections afforded to (b)(3) class members. Before choosing between these two options, the Court

will first examine whether plaintiffs have satisfied the requirements of certifying the present action as a

(b)(3) class action.


2.        Predominance of Common Questions of Law or Fact

For the putative class to be certified as a Rule 23(b)(3) class, the Court must find that "the

questions of law or fact common to the members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy." Among the factors the Court should examine in making its determination are

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Once again, the requirements of this subsection may be divided into two separate requirements: (1) that factual and legal questions common to the class members predominate over any such questions affecting only individual class members, and (2) that maintaining the action as a class action will be superior to other available methods of adjudication. The Court will examine these two requirements separately.

The first requirement is that common factual and legal issues predominate over any such issues that affect only individual class members. There is no magic formula by which a court may make such a determination. This Court has observed in a recent case, however, that this determination is related to the commonality requirement of Rule 23(a), in that "the common issues identified as sufficient under Rule 23(a) must be shown by the plaintiffs to predominate over the non-common issues [but] the common issues do not have to be shown to be dispositive." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 262 (D.D.C. 2002). Similarly, the leading commentators on the federal courts have explained that "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though important matters will have to be tried separately." 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1778 (2d ed. 1986).

The Court has already determined the existence of at least one common question of fact (whether defendant has detained the class members later than their scheduled release date) and at least one common question of law (whether these alleged overdetentions violate the Fourth, Fifth, and Eighth Amendments). A resolution of these two questions, which are common to all of the class members' claims, would dispose of the issue of whether defendant is liable to plaintiffs in this action. The only other significant issue in the case is the issue of remedy – that is, whether plaintiffs are entitled to equitable or monetary relief if they succeed in establishing liability. Defendant has pointed out that if plaintiffs succeed in establishing that they are entitled to damages, the award that each individual class member is entitled to may vary significantly. Nevertheless, even if accepted as true, this single fact would not preclude a finding that common questions of law and fact predominate over individual questions. See McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984) ("It is apparently conceded that damages may vary greatly among putative class members. Appellants argue, however, that the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification. We agree.")

Defendant argues that plaintiffs have not established predominance because the Court may ultimately determine that class members who were detained for only one day or less than a week may not have suffered a legally cognizable injury, while those who were detained for a greater length of time may be entitled to relief. However, such a question is bound up with the merits of plaintiffs' claims, and the Court will not make a preliminary inquiry into the merits in determining whether to certify the class. The Court is satisfied that plaintiffs have shown that factual and legal issues that are common to the class members predominate over any such issues that affect only individual class members.

The second requirement of Rule 23(b)(3) is that the Court find that maintaining the present action as a class action will be superior to other available methods of adjudication.  "Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.'"  Wells v. Allstate Ins. Co., 210 F.R.D. 1, 12 (D.D.C. 2002) (quoting Dellums v. Powell, 566 F.2d 167, 189 (D.C. Cir. 1977)).  It has often been observed that class treatment is appropriate in situations such as the present case, in which the individual claims of many of the putative class members are so small that it would not be economically efficient for them to maintain individual suits.  Thus, for example, in a case where the plaintiffs sought certification of a class of African-American women alleging that they had been unlawfully detained and searched at a major airport, the court determined that class treatment would be a superior method of adjudication:

> There may be a significant savings of judicial and legal resources by jointly resolving the issues of whether plaintiffs were entitled to a judicial determination of their being held and whether they were entitled to be able to contact others.  If liability is proven, many of the plaintiffs may not be entitled to a large amount of damages because not held for a lengthy period of time.  Therefore, for those plaintiffs, a class action may be the most practical means for resolving these issues.

Anderson v. Cornejo, 199 F.R.D. 228, 243 (N.D. Ill. 2000).  Similarly, in Smith v. Montgomery County, Md., 573 F. Supp. 604, 613 (D. Md. 1983), the court certified a class of persons alleging they had been unlawfully strip-searched at a county detention center, explaining that "resolution of the liability and damages issues within the context of a class action is far more efficient than individual prosecution of damages actions.  A class action is also the fairest means to settle this controversy since it is unlikely that most class members would pursue these claims on their own."  In the present case, both parties agree that many of the individual class members who were allegedly overdetained for

relatively short time periods may stand to recover only a small amount of damages. As such, the

interest of class members in individually controlling the prosecution of separate actions against

defendant appears to be relatively low. It would seem unlikely that the prospect of a minimal damages

award would entice many attorneys into filing such separate actions against defendant, as is perhaps

best demonstrated by the fact that no putative class member appears to have filed a separate action

against defendant.

The parties differ most, however, on whether difficulties are likely to arise if the present action is

maintained as a class action. Defendant asserts that potential difficulties in identifying the class members

and sending them notice will make the class unmanageable. The Court is unconvinced by defendant's

arguments. In a recent opinion in this case, the Court ordered defendant to preserve records that set

forth the scheduled release date and actual release date of inmates currently being held by the

Department of Corrections. Additionally, plaintiffs have represented to the Court that the identification

of former inmates who are members of the class will not be difficult, because they have retained a

computer expert to scrutinize the relevant databases maintained by the Department of Corrections and

the D.C. Superior Court. As for the notice requirement, Rule 23(c)(2) requires only that the Court

"direct to the members of the class the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Defendant has

conceded that it possesses a last known address for each inmate that it has incarcerated, although it

notes that there is no guarantee that the addresses are still valid. The Court is satisfied that sending

notices to the last known address for each former inmate who is a member of the class, and whose

current address cannot be identified through reasonable efforts (e.g., Internet searches), will satisfy the

"individual notice" requirement of the Rule.  As for class members who cannot be identified through reasonable efforts, plaintiffs need only provide them with the best notice practicable under the circumstances.

Finally, defendant argues that evidentiary proceedings will be necessary in order to determine which inmates and former inmates are class members.  As noted above, however, all that will be required to determine whether an individual is a class member is a simple perusal of the class definition. For the reasons stated, the Court is satisfied that there are no formidable difficulties that are likely to be encountered in the management of this action if it is maintained as a class.  It is also appropriate, because of the identity of the defendant, that the litigation of all of the class members' claims be resolved in the present forum.

The Court will therefore certify the present action as a hybrid (b)(2) / (b)(3) class action, a form expressly authorized by the D.C. Circuit in <u>Eubanks</u>.  More specifically, the Court will certify a (b)(2) class with respect to the plaintiffs' claims for injunctive and declaratory relief, and a (b)(3) class with respect to their claims for monetary damages.  All of the class members with damages claims against defendant will thus be afforded all of the due process protections afforded to members of a (b)(3) class, including notice and opt-out rights.  The maintenance of this action as a hybrid class action will provide a just and efficient forum for the resolution of all of the claims asserted.

## IV.    PLAINTIFFS' MOTION TO CERTIFY A SUBCLASS

Plaintiffs also seek certification of a subclass, consisting of those members of the class who were strip-searched by defendant after a court had ordered their release, pursuant to Rule 23(c)(4)(B).

26

That rule provides that when appropriate, "a class may be divided into subclasses and each subclass treated as a class, and the provisions of [Rule 23] shall then be construed and applied accordingly." In considering whether certification of the subclass proposed by plaintiffs is appropriate, the Court must determine whether the subclass satisfies all the prerequisites for maintenance of a class action under Rule 23.

As noted above, Rule 23(a)(1) states that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Although plaintiffs allege that "[t]he causes of the strip searches continue so [that] new plaintiffs are generated daily," their motion for certification of the subclass names only nine plaintiffs, six of which have subsequently dismissed their suits against defendant. But the joinder of three, or even nine, plaintiffs in this action would not be impracticable. Additionally, the chart submitted by defendant in its supplemental opposition brief, which the Court considered above in making its numerosity determination as to the class, does not specify which of the late releases were court returns and which were entitled to release simply upon the expiration of their period of incarceration. Plaintiffs are alleging that strip-searches were conducted only on court returns who were overdetained, not on inmates who were detained after the term of their detention had otherwise expired. Although plaintiffs need not supply the exact number of potential members of the subclass, they must nevertheless provide evidence that joinder of all of its members would be impracticable. Simply stating that new plaintiffs are generated daily will not suffice. Because plaintiffs have not provided sufficient evidence that joinder of all members of the putative subclass would be impracticable, the Court must deny plaintiffs' motion to certify a subclass. It will therefore be unnecessary for the Court to determine whether plaintiffs have satisfied any of the other requirements

for certification.  However, the Court will deny this component of plaintiffs' motion without prejudice, so that if plaintiffs later establish that they have satisfied the numerosity requirement, the Court will consider whether plaintiffs have satisfied the remaining certification requirements.


### V.    CONCLUSION

The Court has determined that it will be appropriate to certify the present action as a hybrid class action.  Plaintiffs have established that the prerequisites for class certification set forth in Rule 23(a) of the Federal Rules of Civil Procedure have been met.  Plaintiffs have also established that defendant has acted on grounds generally applicable to the class as a whole, making appropriate final injunctive and corresponding declaratory relief appropriate with respect to the class as a whole.  The claims of the class members for declaratory and injunctive relief will therefore be consolidated for maintenance as a (b)(2) class action.  Additionally, the Court finds that questions of law and fact that are common to the class members predominate over any questions that affect only individual members, and that a class action will be a superior method for the fair and efficient adjudication of the class members' claims for monetary relief.  Therefore, the collective claims of the class members for damages will be consolidated for maintenance as a (b)(3) class action.  Because plaintiffs have failed to satisfy the requirements for certification of their proposed subclass, the Court will deny plaintiffs' motion for certification of a subclass.

A separate order consistent with the foregoing opinion shall issue this date.

Date: _____

_____
Royce C. Lamberth
United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARCUS BYNUM, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action Number 02-956 (RCL) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER

For the reasons set forth in the Court's memorandum opinion issued this date, it is hereby

ORDERED that plaintiffs' non-consent motion for class certification [6-1] be, and hereby is,

GRANTED in part and DENIED in part. It is further

ORDERED that plaintiffs' non-consent motion for class certification [6-1] be, and hereby is,

GRANTED with respect to the component of plaintiffs' motion relating to the certification of a class in

this action. The Court hereby adopts the following two-part class definition: (a) Each person who has

been, is, or will be incarcerated in any District of Columbia Department of Corrections facility in the

three years preceding the filing of this action up to and until the date this case is terminated; and (b) who

was not released, or, in the future, will not be released by midnight on the date on which the person is

entitled to be released by court order or the date on which the basis for his or her detention has

otherwise expired. It is further

ORDERED that the class defined above be maintained as a class action pursuant to Rule

23(b)(2) of the Federal Rules of Civil Procedure as to the claims of the class members for declaratory

or injunctive relief, and that the class be maintained as a class action pursuant to Rule 23(b)(3) of the

Federal Rules of Civil Procedure as to the claims of the class members for monetary relief.  It is further

ORDERED that Marcus Bynum, Kim Nabinette, Leroy S. Thomas, Dianne Johnson, Gloria Scarborough, and Julian Ford be, and hereby are, certified as the named representatives of the class defined above.  It is further

ORDERED that William Claiborne and Lynn Cunningham shall serve as class counsel in this action.  It is further

ORDERED that plaintiffs' non-consent motion for class certification [6-1] be, and hereby is, DENIED WITHOUT PREJUDICE with respect to the component of plaintiffs' motion relating to the certification of a subclass of the class defined above.  It is further

ORDERED that defendant's motion for further enlargement of time to oppose the strip search component of plaintiffs' motion for class certification [41-2] be, and hereby is, DENIED.  It is further

ORDERED that defendant's motion for leave to file a supplemental memorandum in opposition to plaintiffs' motion to certify the "overdetention" class [64-1] be, and hereby is, GRANTED.  It is further

ORDERED that within thirty (30) days of the date of this Order, the parties shall file an agreed-upon proposed order regarding class notification procedures; provided, however, that if the parties are unable to reach agreement on the terms of the proposed order, then within thirty (30) days of the date of this Order, plaintiff and defendant shall file separate proposed orders regarding class notification procedures.

SO ORDERED.


Date: _____                                      _____
                                                         Royce C. Lamberth
                                                         United States District Judge