**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MARCUS BYNUM, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 02-956 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## **FINAL APPROVAL ORDER**

This Lawsuit, having come before this Court for a final approval hearing on January 20,

2006, at 9:30 a.m., pursuant to this Court's Order Preliminarily Approving Proposed Settlement

Between Plaintiffs and Defendant, dated August 31, 2005 (the "Preliminary Approval Order")

(docket # 128) to consider and determine the matters set forth in the Preliminary Approval Order;

and due notice of said hearing having been published and given; and all entities that made timely

objections to the proposed settlement set forth in the Settlement Agreement made and entered into on

June 16, 2005, as amended June 22, 2005 and August 31, 2005, 2005, and described in the Class and

Settlement Notice, having been given an opportunity to present such objections to the Court and to

be heard at the hearing; and the Court having considered the matter, including all papers filed in

connection therewith, and the oral presentations of counsel and objectors at said hearing; and good

cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.     Each term and phrase used in this Final Order and Judgment shall have the same definition and

meaning as in the Settlement Agreement, as follows:

    a.   "Class Administrator" - The firm chosen by agreement of the parties to administer the claims process - Rosenthal & Co. - which specializes in such work.

    b.   "Plaintiff class" or "Class Member(s)" - All Class Members

    c.   "Named plaintiffs" or "Class Representatives" - The original named plaintiffs in the Amended Complaint to this suit:

    d.   "Claimant(s)" - Class members who actually file claims pursuant to the procedures set forth in this Agreement.

    e.   "Class Fund or Class Settlement" - Lump sum payment to be paid by the defendant, totaling $12,000,000, which will be paid and/or distributed and allocated as further described in this Agreement.

    f.   "Class Fund Attorneys' Fees" - That portion of the Class Fund awarded as attorney's fees and costs to Class Counsel. Litigation costs and the costs of class notice and administration shall constitute a separate cost and will be paid separately from the attorney's fees. The amount of these fees will be paid from the portion of the Class Fund that is to be distributed to class members (as opposed to the reversion fund).

    g.   "Defendant" - The District of Columbia

    h.   "Department" - The D.C. Department of Corrections.

    i.   "Fairness Hearing" - The final hearing on the fairness of this Settlement in the District Court, held on January 20, 2006.

    j.   "Named Plaintiffs' Distribution" - The amount of the Class Fund to be distributed to the Named Plaintiffs.

k.  "Plaintiffs" - As used in this Order, the term "Plaintiffs" refers to all class members who have not opted out of this settlement.

l.  "Preliminary District Court approval" - The date on which the Court granted initial approval of the Settlement Agreement (August 31, 2005).

m.  "Final District Court approval" - The date on which the District Court granted final approval of the Settlement Agreement.

n.  "Plaintiffs' counsel," "Counsel for plaintiffs," or "Class Counsel" - The counsel of record for the plaintiff class. They are William Claiborne, Lynn Cunningham and Barrett Litt, Attorneys at Law.

o.  "Counsel for the parties" - Counsel for plaintiffs and counsel for the defendant.

p.  "Settlement Funds" - The sum of $12 million the District must pay under the Settlement Agreement.

2.  This Court has jurisdiction over this Lawsuit and each of the parties to it.

**<u>Notice</u>**

3.  As required by this Court in its Preliminary Approval Order: (a) Class and Settlement Notice were mailed by first-class mail to all Class Members or their representatives whose addresses could be obtained with reasonable diligence, and to all potential Class Members who requested a copy; and (b) Class and Settlement Notice was published as set forth in the Settlement Agreement and in the Preliminary Approval Order, all as more fully set forth in the Declaration of the Class Administrator, dated January 16, 2006.

4.  The notice given to the class is hereby determined to be fully in compliance with requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is found to

3

be the best notice practicable under the circumstances and to constitute due and sufficient notice

to all parties entitled thereto.

5.    Due and adequate notice of the proceedings having been given to the Class and a full

opportunity having been offered to the Class to participate in the hearing, it is hereby determined

that all Class Members, except those who have opted out of the settlement (who are listed in

Exhibit 1 to this Order) are bound by this Final Order of Approval of Settlement. Exhibit 1

contains the list of the three individuals who opted out of the settlement.

**Objections**

6.    There were a combined total of two objections to the settlement and/or the Motion for an

award of attorneys' fees filed. Mr. Gregory Bess, through counsel, challenged the accuracy of the

data on his claim form regarding the number of over-detention days he was entitled to. Mr. Bess

through counsel and Class Counsel filed a notice withdrawing his objection before the Final

Fairness Hearing and his counsel appeared at the Final Fairness Hearing and confirmed that Mr.

Bess was withdrawing his objection because the error on his claim form had been corrected by

Class Counsel. Mr. Richard Jones, acting pro se, filed an objection to the effect that the District

should not receive money for programs from the settlement, that the attorneys should not receive

1/3 from the settlement, and that the distribution formula was faulty or that class members

should be receiving more money than proposed under the settlement. At the hearing, Mr. Jones

stated to the Court that after reviewing Class Counsel's written responses to his objections, and

after discussing his objections with Class Counsel, he wanted to withdraw his objection to the

reversion because he realized that it was being used to fund the injunctive relief component of

the settlement, and to withdraw his objection to the attorneys' fees request because he thought it

4

was fair in light of Class Counsel's efforts. Mr. Jones did maintain his objection to the amount of the settlement to be distributed to plaintiffs, and to the fact that class members would not know the exact size of the award until after all claims had been processed. The Court concludes that the proposed method of allocating a sum certain for distribution to all class members who filed valid and timely claims (as allowed by this Order) is fair, especially since this is the only method for the District to be certain about its liability under the settlement. Several persons sent letters to Class Counsel or to the Class Administrator challenging the accuracy of the data in their claim forms, claiming membership in the class, or complaining about aspects of the settlement generally. None of these letters complied with the procedure for making objections to the Bynum Settlement Agreement provided in ¶ 15 of the Class Notice. Letters to Class Counsel or to the Class Administrator by persons challenging the accuracy of the data in their claim forms, or claiming membership in the class, will be examined according to the verification procedure set out below in this Order. Letters complaining about aspects of the settlement generally that did not comply with the procedure for making objections to the Bynum Settlement Agreement provided in ¶ 15 of the Class Notice will not be treated as objections. None of the letters complaining about aspects of the settlement generally raised issues that the Court has not already addressed in overruling Mr. Jones' objections.

    a.  The Court concludes that Class Counsel negotiated a very favorable fund for distribution to class members. The low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members. For example, in Neal v. Director of the Department of Corrections, this Court approved a class action

settlement where four of the eight named plaintiffs objected and 60 people filed comments or objections and the class was ultimately held to comprise about 125 members.  Memorandum Opinion, Neal v. Director, Department of Corrections, 93-cv-02420 (RCL) June 28, 1999, pages 14, 22, and 27. See also, e.g., Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-119 (3d Cir.1990) ("only" 29 objections in 281 member class "strongly favors settlement"); In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283, 318 (3d Cir.1998) (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

## Settlement Agreement approved because fair, adequate, and reasonable

7.      The settlement of this Lawsuit was not the product of collusion between Plaintiffs and Defendant or their respective counsel, but rather was the result of bona fide and arm's-length negotiation conducted in good faith by the Parties and their counsel through the United States District Court Mediation Program administered by the Office of the Circuit Executive for the United States Courts for the District of Columbia Circuit, pursuant to LCvR 84. The Settlement Agreement and the settlement set forth therein are hereby approved and found to be fair, adequate, reasonable, in the best interest of the Class as a whole, and in satisfaction of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

## Class certified under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3)

8.      The Court has previously certified both an Over-detention Class and a Strip Search Class under both Fed. R. Civ. P. 23(b)(2) and (b)(3). This is a hybrid class action, certified under Fed. R. Civ. P. 23(b)(2) with regard to seeking injunctive relief on over-detentions, and strip searches

of inmates under the definition of the strip search class set forth herein. Therefore, regarding

prospective relief, no member of the class may opt-out. With regards to monetary relief, the class

is certified under Fed. R. Civ. P. 23(b)(3) and class members have a right to opt out of the

monetary relief stage.

9.    The Over-Detention Injunctive Relief Class is defined as:

      (a)  Each person who has been, is or will be incarcerated in any District of Columbia

            Department of Corrections facility beginning in the three years preceding the

            filing of this action on or about May 16, 2002 up to and until the date this case is

            terminated; and (b) who was not released, or, in the future will not be released by

            midnight on the date on which the person is entitled to be released by court order

            or the date on which the basis for his or her detention has otherwise expired.

The Over-Detention Monetary Relief Class is defined the same as above except that it ends on

August 31, 2005.

**Class-wide Prospective Relief**

11.    The plaintiffs' claims for prospective relief regarding the Over-detention and the strip

search classes have been resolved by the cessation of the practices of Over-detentions and strip-

searching court returns entitled to release. No court order is entered under the terms of the

settlement agreement between the parties on these issues. The parties agree that the injunctive

relief objective of this agreement is the elimination of over-detentions and court release strip

searches. To that end, the District will, for a period of two years, provide to Class Counsel

annually a report on whether 1) it has strip searched any court returns entitled to release absent

individualized reasonable suspicion to do so, and whether 2) it has released any detainees or

inmates more than 24 hours after the time they become entitled to release, and the reasons therefore. In addition, under the terms of this settlement elaborated further on in this Order, the District must invest substantial funds in new renovations that will substantially contribute to processing of inmates in the jail.

## Class Counsel

12.    The Court reaffirms the appointment of William Claiborne, Lynn Cunningham and Barrett S. Litt as Class Counsel, and, based upon the work that has occurred between the Preliminary Approval Order and the present, reaffirms the findings it made at the time of the Preliminary Approval Order confirming or appointing them.

Pursuant to F. R. Civ. P. Rule 23(g)(1)(i), the Court considered the following points in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, and other complex litigation, of the type asserted in the action, based in part on affidavits submitted by counsel in support of their motions to certify, (3) counsel's knowledge of the applicable law, (4) the resources counsel committed to representing the class; as well as other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class. The Court finds that Plaintiffs' counsel have done extensive research in this case, including taking numerous depositions and affidavits and interviewing numerous persons who have knowledge of the case, and thoroughly analyzing the computer records of the District of Columbia. Plaintiffs' counsel are competent to represent the members of the class.

## Payment by the District of Columbia

13.    As set forth in more detail in the Settlement Agreement, the District of Columbia agreed to pay a total of Twelve Million Dollars ($12,000,000) in settlement of this Lawsuit.

14.    Within 45 days of this Order, or within such other time frame as the parties through their counsel may mutually agree upon, but only after the time for all appeals and petition for writ of certiorari filed with the U.S. Supreme Court challenging the Court approval of the settlement has lapsed, the District will pay the sum of $12 million ("the Settlement Funds"), less the costs advanced by the District for preparation and publication of the Class Notice and related administrative expenses, which amount shall be deemed to be in exchange for a full and final release of all claims to be contained in the Final Order of Approval of Settlement. $9 Million of that payment (less monies already paid to Rosenthal) will be deposited and cleared within that 45-day period into a client-trust account that will be designated by Class Counsel in an e-mail to defense counsel at least 20 days before the money is due.  $3 Million of that payment will be deposited and cleared within that 45-day period into a special District account, from which the payments designated in ¶ 32 will be made. How the funds will be used and allocated is addressed in detail below and in the Settlement Agreement.

15.    If no appeal or petition for U.S. Supreme Court review has been filed, then the settlement funds will be paid on the timetable set forth in the preceding paragraph. If an appeal or petition for writ of certiorari has been filed, then the District shall distribute the Settlement Funds in accordance with the provisions below within 30 days of the date that all appellate avenues of review (including Supreme Court review) have been exhausted if the settlement is ultimately approved. If the result of the appeal or Supreme Court review is that the settlement is not ultimately approved, then the case shall revert to active litigation, and the District shall have no

9

responsibility to pay any Settlement Funds not previously paid for the costs of class notice and related administrative expenses.

16.     The parties agreed that $3 million of the $12 million payment referenced above will revert to the D.C. Department of Corrections to be spent on programs and services which relate to the subject of this complaint (hereafter "reversion fund"). The standards and allocations for the reversion fund are addressed further in ¶ 32, *infra.*

17.     The parties agreed that $5 million dollars of the settlement amount would be used for the compensation of the plaintiffs and for the administration and distribution of the monetary compensation fund, including the claims verification procedure. The cost of class notice and administration, any costs awarded, and the Named Plaintiffs' Distribution, all addressed elsewhere in this Order, will be paid from this fund, which the District of Columbia shall pay to the Class Administrator, less costs it has already advanced, within the time frame set forth above. The remainder, after payment of the costs awarded, class notice and class administration from the fund, will be distributed to the Class Members who filed claim forms according to the following formula:

        a.     Over-detentions will receive one point per day for the first two days of over-detention and one point for each additional two days or partial days of over-detention. The maximum number of points to be awarded for an over-detention is 180. Determination of days of over-detention is based solely on the Defendant's records as interpreted by Plaintiffs' experts and the Class Administrator (including, for those who filed claims disputing the information contained in their claim forms or claiming that they were improperly excluded from the class, as adjusted based on jackets, i.e.,

Department of Corrections hard copy paper records, for those whose jackets are available for examination).

b. Strip searches will be valued based on the following formula, which will be determined solely on the basis of the Defendant's records as interpreted by Plaintiffs' experts and the Class Administrator:

   i.   Anyone who went to trial and was acquitted: 30 points.

   ii.  First Offenders not charged with offenses involving drugs, prostitution or violence: 25 points

   iii. Repeat offenders not charged with offenses involving drugs, prostitution or violence: 15 points.

   iv.  First Offenders charged with offenses involving drugs, prostitution or violence: 10 points.

   v.   Repeat offenders charged with offenses involving drugs, prostitution or violence: 5 points.

   vi.  Women in categories i-ii above will receive an additional 20 points. Women in categories iii-iv will receive an additional 10 points.

c. Despite the foregoing provisions of this paragraph, the following parameters will modify the point systems set forth above:

   i.   no person who files and qualifies for a claim will be paid less than $50, and the final distribution formula will be adjusted accordingly;

   ii.  no Over-detention claimant will receive more than 180 Over-detention points regardless of the number of points they would receive under the point system set

11

forth above;

    iii. no strip search claimant will receive any additional strip search points after the first three strip searches reflected in the records for the class period; and

    iv. if a strip search claimant has more than one strip search reflected in the records for the class period, the strip search points for that individual will be calculated on the assumption that all strip searches for that individual are repeat offender incidents, including the first strip search reflected in the records.

    d. As with over-detention points, the hard copy records of individuals' information (where reasonably available as described below) regarding strip searches covered by this Settlement will be accessed and reviewed where the individual has in writing to Class Counsel or to the Class Administrator either disputed the accuracy of information provided on his claim form or has claimed that he was wrongfully excluded from the class.

    e. The District of Columbia shall make all reasonable efforts to locate and provide copies of the hard copy records of the individuals for whom such records are called under the provisions of this paragraph and its sub-parts. If, after such reasonable efforts, the District is unable to locate such records, the District shall communicate that fact in writing to the Class Administrator, in which case the computer records shall control.

18.    Plaintiffs shall use their best efforts to insure that distribution of the settlement amount will occur in such a way so that no residual amount of the $5 million compensation fund will remain following final distribution. Thus, to the extent that checks are written to class claimants and not

cashed within six months of mailing, the amount remaining will be mailed in a second round of distribution to those class members who did both file claims and cash the checks sent to them. The second round distribution shall be based on each such claimant's pro rata share of the fund remaining, utilizing the same distribution formula as was used in the first round. Thereafter, if some residual still remains, that residual amount will revert to the reversion fund discussed above.

**Named Plaintiffs' Distribution**

19.    The Court approves the Named Plaintiffs Distribution in the amount of $200,000 (exclusive of fees and costs). The Named Plaintiffs are listed in the first paragraph of the Bynum Settlement Agreement, which was attached as an attachment to the Preliminary Approval Order entered by the Court. The Court concludes that this award is justified because the Named Plaintiffs made contributions to the class as a whole, justifying awards to them higher than those to the general class. In addition, the Named Plaintiffs' individualized damages claims, including special damages, are a factor in the determination of the sum they receive. Such determinations cannot reasonably be made for class members in general without unduly consuming funds for administrative costs that will otherwise be available for distribution to Class members. Any fees due Class Counsel for their representation of the Named Plaintiffs are encompassed within the Class Fund Attorney's Fees referenced herein. The Class Administrator shall pay each Named Plaintiff the amount designated by Class Counsel.

**Class Fund Attorneys' Fees**

20.    The parties agreed that the settlement amount shall include all attorneys' fees and costs, and that the Plaintiffs could seek up to 1/3 of the Settlement Funds of $12,000,000 as attorney's

fees (exclusive of costs). The Court awards Class Counsel 1/3 (33.3 %) of the $12,000,000

Settlement Funds as Class Fund Attorneys' Fees, to be allocated among the lawyers who worked

on the case, by agreement between Class Counsel, as well as costs, disbursements, and expenses,

with pro rated interest from the date of the deposit of the Settlement Funds earned by the Class

Fund. Class Fund Attorneys' Fees do not include the costs of pursuing the lawsuit to resolution,

the costs after settlement, and the payment of the costs of Class Administration, which are the

subject of a separate award of costs. The Class Fund Attorneys' Fees come to a total of $4

million exclusive of costs awarded. The Court awards plaintiffs as costs and expenses an amount

of $90,052.26 to Litt, Estuar, et al. plus an amount not to exceed $500 to Class Counsel William

Claiborne. Class Counsel may submit additional requests for expenses (but not fees) if Class

Counsel incur additional costs in verifying claims of class members and putative class members

as provided herein.  The handling of the immediate and subsequent payment of costs to

Rosenthal is addressed at ¶ 22 below. The basis for the Court's award is explained in ¶ 34. All of

the foregoing amounts are to be paid exclusively out of the Settlement Funds without additional

contribution or payment by Defendant.

**Class Administrator**

21.     The Court reaffirms the appointment of Rosenthal & Company as Class Administrator

(hereby "Rosenthal"). The Court authorizes the payment, to be made by the District, to the extent

it has not already been paid, of $201,224.46 to cover its expenses through January 6, 2006. When

and if the class distribution goes forward (i.e., if there is no appeal or there is an appeal and the

settlement is approved at the appellate level), then Rosenthal will receive all the funds remaining

after the $3 Million reversion, and payment of the award of attorney's fees and costs described in

the preceding paragraph. Rosenthal will distribute the funds to the Named Plaintiffs as directed

by Class Counsel. In light of the additional work entailed in reviewing hard copy records to

address disputed claims contending that the computer record is incorrect and to analyze the

claims of those who did not use pre-printed claim forms, which work was not fully included in

Rosenthal's estimate of an additional approximately $150,000 in class administration expenses,

Rosenthal is authorized to use up to $200,000 in additional money for further costs of Class

Administration without further order of court. All funds provided to Rosenthal will be distributed

to class members who filed timely class claims as discussed below, except to the extent that this

Order has authorized the use of such funds for costs and expenses.

**Allocation and Distribution Plan**

22.    The Court approves the Allocation and Distribution Plan set forth herein, and directs the

Class Administrator to distribute the Class Fund in the manner provided herein.

23.    The Administrator shall scale the claims based upon the point system described herein.

The Administrator shall compute the number of points due to each Plaintiff, and divide each

Plaintiff's number of points into the total number of points to determine each Plaintiff's

proportionate share of the Class Distribution. Each individual shall receive the highest point

category for which s/he qualifies. To limit the potential effect of multiple arrests and strip

searches on the point calculation, no person may receive more than 75 points for their total strip

search points.

24.    The meaning of each term used above is defined in the following paragraph.

   Ø    First Offender - The arrest at issue was the first arrest of the individual based upon

     the District of Columbia' Records, including Superior Court records. In the

15

absence of a record showing a prior offense, the individual shall be treated as a

first offender.

Ø Repeat Offender - The arrest at issue was not the first arrest of the individual

based upon the District of Columbia' Records, including Superior Court records.

Ø Violence - The matter on which the individual was arrested was an offense that

involved violence or weapons.

Ø Prostitution - The matter on which the individual was arrested involved a charge

of prostitution.

Ø Drugs - The matter on which the individual was arrested involved possession

and/or sale of drugs.

25.    As used above, the term "arrest" refers to the most serious charge identifiable from a) the

JACCS (Department of Corrections computerized inmate management system) database, and b)

the Superior Court for the District of Columbia Database (the "CIS" database).

26.    Each Plaintiff's points are to be based exclusively upon information obtained from the

District of Columbia's records (including the District of Columbia Superior Court records). The

total points will be divided into the available funds, so that a value per point is determined. Each

Plaintiff will receive the value of his or her points, except no Plaintiff will receive less than $50.

27.    As of January 11, 2006, the Class Administrator has received a total of 89_ claims after

the December 23 deadline to file claims (and 3674 claims postmarked within the December 23

deadline. The court will accept all these claims. Additional claims will be accepted until

February 28, 2006. Any claim postmarked after February 28, 2006, will not be accepted, and no

exceptions shall be allowed. Each person submitting a claim after February 28, 2006, will be sent

a letter informing them that their claim is time-barred, and that the claim will not be considered regardless of the reason or circumstance. The Class Administrator shall prominently post this information on the website established for this case as soon as is practicable after entry of this Order.

28.    Except for the deposit into the Settlement Funds required by this Order, the District of Columbia will have no further obligations or duties or liability whatsoever with respect to the Settlement Funds except with respect to the reversion amount used to fund the injunctive relief claims. The District of Columbia has expressly made a condition of this settlement that it has no involvement in the class distribution to Claimants.

29.    Plaintiffs, in conjunction with the Class Administrator, will undertake all allocation and administrative responsibilities for the settlement consistent with the system of distribution that is approved by the Court. The Class Administrator shall use its best efforts to distribute the settlement amount in such a way as to insure that no residual amount of money will remain following final distribution, as is discussed in greater detail in ¶ 18, *supra*. After these efforts to distribute the Settlement Funds to class members who have filed claims have been exhausted, any residual amount still remaining will revert to the District of Columbia, as is also discussed in ¶ 18.

30.    At the conclusion of the Class Distribution, which the Court anticipates will be over one year from the time of this Order, the Class Administrator and/or Class Counsel shall submit a report to the court summarizing the payments made to the Class, and seeking from the class fund any final administrative costs to be approved beyond the amounts previously authorized.

31.     Plaintiffs requested injunctive relief as part of the complaint. The parties agreed that $3 million of the $12 million payment referenced above would revert to the D.C. Department of Corrections to be spent on programs and services which relate to the subject of this complaint (the "reversion fund"). These funds may be spent on new staff, services, construction, technology, equipment, programs or other activities otherwise necessary to improve or assist in processing inmates for release and to reduce incidents of over-detention and the need to strip search, without individualized suspicion, inmates who meet the definition of the strip search class. The reversion fund exists to fund the injunctive relief changes necessary to eliminate the over-detentions and strips searches that are the subject of this lawsuit and will be for new programs or activities not previously budgeted (and specifically not as a part of the general budget).

32.     The reversion funds shall be spent as follows:

The Department of Corrections (DOC) shall use the $3 million in settlement money to build a state of the art Inmate Processing Center (IPC) within the foot print of the DC Jail site, which will be a project totaling approximately $5 Million. The additional $2 million required to complete the project will be provided by the District government.

The purpose of the Inmate Processing Center ("IPC") will be to provide adequate processing facilities for intakes and releases, and associated records processing. The IPC will:

·     Include required processing space, stations, and protocols for new system intakes, inmates returning from court hearings with legal matters pending, inmates returning from court post sentencing, and inmates

18

returning from court with dismissed charges and no legal matters pending. The processing stations will be set up in a logical flow allowing for booking the inmate, collection of property and funds, required searches, risk assessment and classification, generation of photographs and id wristbands, distribution of clothing, establishment of required accounts, orientation, and dissemination of rules and regulations. Court ordered releases will be separated from inmates to be held in custody. The Center may provide for pre-release counseling stations as well, offering job, education and referrals to community and governmental resources. The Center's capacity will be sufficient to adjust operational work stations to match changing demand patterns. DOC's goal is to create a processing environment that is more humane and business-like in appearance.

· Incorporate "boss chairs" and other non-invasive detection technologies in the process flow with the goal of minimizing physical contact and providing for clothed body searches, except where evidence warrants a search. The focus would be on detecting metals, explosives, drugs and other contraband.

· Utilize technology aided inmate property management whereby inmates' property will be digitally photographed prior to storage, and inmates will be given a receipt for property retrieval upon release.

· Contain space for inmate records processing so this function is seamlessly integrated with the new Inmate Processing Center.

·    Take advantage of positive id technology at system intake and release points to verify the identity of individuals prior to intake and release.

Existing staff and computer equipment will be re-located to the IPC. DOC expects the IPC to yield substantial operational benefits as a result of the co-location of interdependent intake/release functions and the logical process flow layout of the Center. In an effort to strengthen IPC operations still further, DOC is requesting capital funds in FY 07 to install a wireless LAN at the DC Jail and an RFID system. The latter system will allow DOC to track inmate movements and locations electronically, conduct real-time counts, and assure positive identification.

33.    Except as otherwise provided in this Order, each party shall bear its own costs, expenses and attorneys' fees.

34.    The basis of the award of attorney's fees and costs contained in ¶ 20 is as follows:

a.    Class Counsel engaged in protracted efforts over a period of four years to obtain this settlement, which the Court considers to be an outstanding settlement both in its monetary and in its non-monetary terms. The court considers the results in this case to have been exceptional.

b.    This was complex litigation, involving novel issues, and the effort that went into the results reflects that fact. There is extensive documentation of the time spent by counsel to attest to the substantial effort that went into this case, and the Court has reviewed the file, which also reflects the extensive work performed on both sides. Extraordinary effort went into the resolution of these cases, not only through litigation, but through many hours of

mediation. These cases were hotly contested both on their merits and on whether a class

would be certified. In addition, there are unique challenges in litigating against the

District of Columbia, of which the Court is well aware.

c.  The outcome of this case was unclear and subject to serious risk of lack of success at the

time the cases were filed, and during the course of the litigation. The Court is aware that

cases of this nature are extremely risky and burdensome for plaintiffs' counsel.

d.  Class counsel did an outstanding job and obtained exceptional results for the class. The

hourly rates defined in Exhibit A do not account for exceptional results, and are based on

hourly rates for lawyers of the skill and expertise of Class Counsel independent of the

results obtained and of any contingent risk. In determining the appropriate fee, the Court

has considered the outstanding results as well as the risks involved in this litigation.

e.  The Court considers that substantial benefits were conferred on the class beyond the

monetary recovery for the class, in the form of the significant policy changes in the

operation of the Department of Corrections that resulted from this litigation. This is a

substantial factor in the Court's determination of the appropriate fee. The policy

achievements obtained through this litigation set it apart from many class fund cases,

which provide only monetary relief. Here, in addition to the monetary relief to the class

directly, the District committed to an additional $3 Million to spend on the jail, and will

spend an additional $2 million more. Further, the policy of strip searching court returnees

subject to release has been stopped as a direct result of this litigation.

f.  The attorneys involved in this litigation on behalf of the class are experienced and

capable civil rights attorneys. The Court finds the hourly rates contained in the fee

petition, based on the modified Laffey matrix, reasonable for attorneys of their skill, experience, reputation and expertise, before accounting for outstanding results or contingent risk. The Court also finds the hours expended (which are also set forth in the Fee Petition) reasonable for litigation of this complexity and duration.

g.  The Court notes that there was a total of three opt outs and two objections, which the Court considers low and to reflect the overwhelming satisfaction of the class with the settlement and the Class Counsel.

h.  The Court considered the comments and objections of class members to the request for attorney's fees and concluded that only as of the time of the Final Fairness Hearing one of the comments, the one filed by Mr. Jones, qualified as an objection, and Mr. Jones withdrew that objection as to attorneys' fees at the Final Approval Hearing. Further, for the reasons stated, the Court has affirmatively concluded that a fee of 1/3 of the Class Fund of $12,000,000, plus costs, is appropriate.

i.  A 1/3 fee is within the range of what is customarily awarded in this District. Chief Judge Hogan of this District found that the presence of the following factors warranted the higher fee award of 34% in Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 25067, 36 (D.D.C. 2001): exceptional benefits to a large class; the experience, skill and professionalism of counsel and the performance and quality of opposing counsel; the litigation was "far ahead of public agencies . . . which long after the institution of this litigation awakened to the concerns that plaintiffs' counsel first identified;" extensive time and effort exerted by the attorneys and the existence of complex legal and factual issues.

These factors are present in this case. In addition, the court notes that the percentage fee awarded in the very similar <u>Williams v. County of Los Angeles</u> case exceeded one third.

j. The Court believes that the foregoing cost and fee award is reasonable in light of all the factors involved, including the complexity of the case, the novelty of the legal issues, the exceptional efforts made by Class Counsel, the exceptional results obtained by Class Counsel, the outstanding monetary and non-monetary benefits visited upon the Class and the community at large through Class Counsel's efforts, the risky nature of the litigation for which Class Counsel received no compensation during the many years of litigation, and the market expectation in the legal market for an enhancement in contingent fee cases to compensate for litigation risk.

35.    The use of the masculine gender herein is construed to include the feminine and/or the neuter where applicable. The use of the singular herein is to be construed to include the plural where applicable. The use of the plural herein shall be construed to include the singular where applicable.

36.    The Court reserves and maintains jurisdiction over this settlement and its provisions, and over the claims administration and distribution of the funds. Disagreements between the parties on any disputes or unresolved aspects of this Order shall be subject to mediation before the mediator who has mediated this case to date. If mediation is not successful, the matter shall be brought to this Court for resolution.

37.    The Class Administrator shall distribute the funds within 90 days of either the last day to file a claim form, or the time that the settlement funds are deposited with the Class Administrator, whichever is later. The Class Administrator may have an additional period of

23

time not to exceed 90 days upon the filing of a declaration with the court setting forth the

additional time needed and the reasons therefore.

38.     The monetary relief provided for in the Settlement Agreement shall compensate for all

alleged violations of rights and all claims and any other incidents of incarceration by the plaintiff

class members that were or could have been brought in this civil action under any theory of

liability for any claims related to allegedly unlawful over-detentions and strip searches, except as

to monetary damages for those class members who choose to opt out.

39.     The Court hereby dismisses the Lawsuit on the merits, with prejudice, and without costs,

with such dismissal subject only to compliance by the Parties with the terms and conditions of

the Settlement Agreement and this Final Order of Approval of Settlement.

40.     Plaintiffs are hereby severally and permanently barred and enjoined, to the fullest extent

permitted by law, from filing, commencing, instituting, maintaining, prosecuting or participating

in a lawsuit or any other proceeding against District of Columbia involving or based on any of

the claims that were brought or that could have been brought in the Lawsuit, either directly or

indirectly, representatively, derivatively, or in any other capacity, or that are otherwise

encompassed within the Settlement agreement.

41.     Plaintiffs have not relied upon the advice of Class Counsel as to the legal and/or tax

consequences of this settlement, the payment of any money by the District of Columbia or the

distribution of the Settlement Funds.

42.     Neither this Final Order of Approval of Settlement, the Settlement Agreement, nor any of

its terms or the negotiations or papers related thereto shall constitute evidence or an admission by

the Defendant that any acts of wrongdoing have been committed, and they shall not be deemed to

24

create any inference that there is any liability therefore. Neither this Final Order of Approval of

Settlement, nor the Settlement Agreement, nor any of its terms or the negotiations or papers

related thereto shall be offered or received in evidence or used for any purpose whatsoever, in

this or any other matter or proceeding in any court, administrative agency, arbitration, or other

tribunal, other than as expressly set forth in the Settlement Agreement.

43.     Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there

is no just reason for delay and therefore directs entry of this Final Order of Approval of

Settlement.

        SO ORDERED.


        Signed by Royce C. Lamberth, United States District Judge, January 25, 2006.

## EXHIBIT 1 - LIST OF OPT OUTS

Robert Louis; Anderson; 631 10th St NE; Washington, DC 20002

Brenda Jackson; 1901 Chillum Road; Hyattsville, MD 20782-3611

Daniel Settles; 5216 Just St NE #1; Washington, DC 20019-5580