# In The Matter Of:

*Merle Watson    v.*
*District of Columbia, et al.*

---

*Deposition of James Austin*
*May 13, 2003*

---

*Miller Reporting Company*
*735 8th Street, SE*
*Washington, DC  USA  20003*
*(202) 546-6666*

*Original File 0513AUST.ASC, 125 Pages*
*Min-U-Script® File ID: 0882852061*

## Word Index included with this Min-U-Script®



Case 1:05-cv-00934-RCL-JMF Document 96-3 Filed 01/24/2007 Page 22 of 22

Page 77

[1] Q: Page four of Exhibit 1, which is page 3

[2] of your report, and here you list systemic

[3] deficiencies in DOC's records office, onto the next

[4] page. Do you see that?

[5] A: Yes.

[6] Q: And the first one there, numbered 1,

[7] again, you are relying on the study you did for

[8] Margaret Moore of the DOC records office?

[9] A: Correct.

[10] Q: I have a copy of that. Let's have this

[11] marked as Exhibit 2.

[12] (Austin Exhibit No. 2 was

[13] marked for identification.)

[14] BY MR. SCHIFFERLE:

[15] Q: I am showing you what has been marked as

[16] Exhibit 2. Again, that is the report you did for

[17] Margaret Moore of the records office at the

[18] Department of Corrections in 1998, correct?

[19] A: Right.

[20] Q: You provided this report to Margaret

[21] Moore?

[22] A: Right.

Page 78

[1] Q: Who at the time was director of the

[2] Department of Corrections?

[3] A: Correct.

[4] Q: Was there anyone else that you reported

[5] your report to?

[6] A: She was — I remember the briefing, and

[7] she had some staff with her during the briefing. I

[8] don't know who they were. I can't recall — I

[9] could guess, but it wouldn't be fair.

[10] Q: But others on her staff?

[11] A: At the time.

[12] Q: Were there particular persons you

[13] consulted or interacted with in preparing this

[14] report within the Department of Corrections?

[15] A: Cheryl Warner was the primary contact

[16] person.

[17] Q: Any others that you recall?

[18] A: No.

[19] Q: I assume you provided a copy of this

[20] report to plaintiff's counsel, Mr. Seligman.

[21] A: Yes.

[22] Q: When was that?

Page 79

[1] A: Yesterday.

[2] Q: Were any copies of this report

[3] distributed to anyone else?

[4] A: I don't know. We gave it to Ms. Moore,

[5] and I am not sure what she did with it.

[6] Q: But in terms of your own distribution of

[7] it?

[8] A: No, I have not distributed it to anyone.

[9] Q: As part of this report, you reviewed

[10] personnel and disciplinary files and records of

[11] records office staff?

[12] A: Yes.

[13] Q: If I could have you turn to — well, it

[14] is page five of Exhibit 2, and it is numbered page

[15] 1 of the report, and specifically the third

[16] paragraph.

[17] The third paragraph states: "It is

[18] important to note that the files reviewed for the

[19] staffing analysis were confidential. Access was

[20] granted based upon the agreement that all

[21] information compiled was for the sole purpose of

[22] completing the audit of the Records Office in order

Page 80

[1] to make the most informed recommendations to the

[2] Director of the Department of Corrections. The

[3] contents of this report, therefore, should remain

[4] classified and be distributed at the discretion of

[5] the Director."

[6] Do you see what I read there?

[7] A: Yes.

[8] Q: Do you disagree with anything that I just

[9] read in that paragraph?

[10] A: No.

[11] Q: Did anyone from the Department of

[12] Corrections authorize you to release this report or

[13] rely upon it in your evaluation of this case?

[14] MR. SELIGMAN: Objection to the question.

[15] You requested this report to be produced, and it

[16] was produced at your request through counsel

[17] yesterday and it was given to you yesterday.

[18] MR. SCHIFFERLE: Objection is noted.

[19] THE WITNESS: I didn't have any questions

[20] with anyone in the department, no.

[21] BY MR. SCHIFFERLE:

[22] Q: In terms of authorization to release