UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MERLE WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 02-980 (GK) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO FOR A PROTECTIVE ORDER**

**Introduction:**

Defendants' have filed a Motion for a Protective Order, to prevent disclosure of (1) internal Department of Corrections audits of the Central Detention Facility and (2) a March 1998 report entitled " Evaluation of the District of Columbia Corrections Records Office". Plaintiff had filed a timely request for production of documents covering these reports and Defendants did not acknowledge the existence of the March 1998 report or object to its disclosure until the expert initially named by Plaintiff produced it. It is only now for the first time acknowledging the existence of pertinent internal audits apparently done by the defendants in 2000.

Having failed to disclose to Plaintiff the existence of unquestionably relevant documents pertaining to the District of Columbia's notice of the history of mismanagement of the Records Office, they now attempt to apply a privilege, which if recognized in Civil Rights cases, where knowledge and intent are key elements of proof, would undermine a citizen's right to discover relevant evidence and obtain relief for

violation of constitutional rights. While this Court exercised its discretion and excluded Dr. Austin as an Expert for Plaintiff in light of his past work with the Department of Corrections as a consultant, it did not address whether the Report itself was privileged. Indeed, it did not address the applicability of the " deliberative process privilege" as asserted by Defendants in excluding Dr. Austin. The legal principals this Court relied on for excluding Dr. Austin do not have direct application to the disclosure or admissibility of a report he issued. Nor do they apply to internal audits performed by the Department of Corrections (Office of Internal Controls) which were done in response to public criticism in the John Clarke and John Shaw Reports prepared at the request of two Judges of the District Court. The Defendants' efforts to exclude Dr. Austin's report and the internal audit by assertion that these reports are covered by a "deliberative process privilege" is directly contrary to established precedent in this Circuit. The deliberative process privilege does not apply to Civil Rights Actions where the governmental decision- making process and knowledge of public officials is an element of the constitutional violation. Any expert hired by the Plaintiff should be entitled to have access to this report and rely on it in formulating an opinion with regard to whether corrections officials were aware of the problems within the Records Office that caused the plaintiff to be wrongfully detained in violation of his constitutional rights and whether their actions or failure to act exhibited deliberate indifference to his constitutional rights. Moreover, Plaintiff should be able to use said documents in discovery to question said officials or potentially at trial to seek admissions or stipulations of fact.

**Factual Discussion**:

Plaintiff has filed a Civil Rights Action in which he has asserted that there was a pattern and practice of deliberate indifference of the District of Columbia to management of the Records Office and that they knew that as a result of hiring unqualified employees and failure to train employees of the Records Office, Defendant's actions would result in erroneous detentions of individuals such as the Plaintiff. The knowledge and intent of high government officials is a critical element of Plaintiff's proof. What the Defendants knew about the inadequacies of the Records Office, its personnel and when the Defendants knew it is key to Plaintiff's case. What actions the defendant's chose to take after being put on notice of the problems with the Record's Office, is also a critical element of Plaintiff's case. Thus their deliberative process, or lack thereof, is relevant to proof of plaintiff's claims. This is particularly true where Plaintiff asserts constitutional claims, which require proof of deliberate indifference. Plaintiff was aware of several studies and reports conducted by the Corrections Trustee, John Clarke in 1999 as requested by Judge Emmet Sullivan in response to the Leo Gonzales Wright erroneous release and in 2000 by John R. Shaw on behalf of John Carver, Trustee, Court Services and Offender Supervision Agency at the request of Judge Royce Lamberth in response to the Oscar Veal erroneous release. Both studies indicated that there had been several other studies of the D.C. Records Office in past years that were ignored by the officials of the D.C. Department of Corrections. See Wright Report pages 54-58. (Excerpted Report Attached as **Exhibit A**) Because these studies were unquestionably relevant to Plaintiff's case, Plaintiff made specific requests for all such studies. See Request for Production of

3

Documents No 9.[1] However, Defendant did not disclose any of the reports requested, much less the existence of Dr. Austin's report on the records office, nor did they seek a protective order with regard to its contents. See Defendant's Response No 9.[2] It was only after the study was disclosed by Plaintiff's Expert that Defendants acknowledged its existence and asserted that it was privileged.

Given the fact that the study required review of personnel files that are confidential, it was agreed that the personnel information compiled in the report would be held confidential. Indeed the report makes reference to Table 2, which contains names and disciplinary histories of Records Office Employees. The paragraph contained within the report and quoted by Defendants' counsel was intended to recognize that the personnel records reviewed were confidential and personnel information "complied" in the report was itself confidential. The fact that the report contains such confidential information does not make it inappropriate for use if relevant to the issues in this litigation. It is routine for experts in the field of Corrections to review confidential information contained in both inmate and employee files and agree to not make public disclosure of such information. Indeed, the Defendants in this case sought a protective order with regard to records office employee personnel files and Plaintiff's counsel agreed to the order. The order specifically permits Plaintiff's counsel, his agents and experts to review such records. The study conducted by Dr. Austin was done in the public

---

[1] Request for production of documents No 9 stated: "Please produce all documents relating to any and all studies, reports or recommendations conducted and produced internally by the DOC or through outside consultants or other third parties regarding in pertinent the case management, staffing and procedures pertaining to the records office and the J&C file system at the DOC or D.C. Jail that preceded the Report by Trustee Clark in the Leo Gonzalez Wright case in 1999. Said reports and studies should include but not be limited to studies done in 1985, 1989, 1996 and 1997 referred to in the Trustee's report in 1999.
[2] . Defendants Response to Request 9 was: Defendant will provide such documents if they become available."

4

interest. It would be contrary to the public interest to permit the DOC to hide the results of the study by simply declaring it " confidential" particularly when it is relevant to issues in Plaintiff's civil rights claims. Moreover, the contents of his study and the internal audit (absent the identifying personnel information) have been in the public domain in three separate studies issued in 1999, 2000 and 2002. In his response to the Report by John Shaw, Defendant Odie Washington's Action Plan includes reference to the establishment of the Office of Internal Controls to conduct periodic audits of the records office. See Records Office Action Plan, 8/21/00, **Exhibit B**. This action plan and whether it was implemented is at issue in this case. Indeed, in a October , 2002 public report by the Office of the Inspector General, there is a reference to the DOC's compliance with the recommendations in the Clarke and Shaw reports and it is noted that the internal audit in 2000-2001 indicated the Records Office had hundreds of inmate files missing. See Executive Summary of the Report of Inspection, pgs 32-34. **Exhibit C**. It is apparent that the audit report was disclosed to the Inspector General as were the earlier consultant reports disclosed to the investigators for the Corrections Trustee.

  Defendants have submitted affidavits from defendant Odie Washington regarding the need for confidentiality of Dr. Austins' 1998 report and Regina Gilmore has submitted a similar affidavit with respect to the 2000-2001 audit report on the Records Office. They are self-serving assertions, which add little to the assessment by this Court. Clearly the confidential nature of the personnel records can be protected by the same limited type of protective order agreed to by plaintiff previously. Interestingly, in his deposition Mr. Washington indicated that as of May 29, 2003 he was not familiar with the existence of this report commissioned by his predecessor or with other reports

5

indicating that there were problems with regards to qualifications and the supervision of records office personnel. See Washington Deposition Tr. 45-46, **Exhibit D**. When asked about his response to the Shaw Report and the Office of Internal Control, he acknowledged its existence but was unaware of any particular audits on the records office. No objection based on privilege was made at that time to discussion of or production of any such audit reports. See Wash Dep. Tr. 54-56, **Exhibit D**. With regard to Ms Gilmore's comments about the chilling effect of disclosure of her 2000 –2001 audit, one must question why it was ok to release information about the loss of over 100 inmate files to the Inspector General and not in the context of a Civil Rights case alleging unconstitutional detention of the Plaintiff. See Excerpt of Inspector General's Report, **Exhibit C**. It is also interesting that defendant Elwood York in his deposition discussed the Office of Internal Compliance and internal audit reports and he was apparently surprised it had not been disclosed to Plaintiff's counsel and indicated that they were probably in the possession of Regina Gilmore. Defendants' counsel did not object and indicate that said documents would be privileged. Deposition of Elwood York , June 10, 2003 Tr. 73-74, Also See 127-133. Moreover, Defendants did not seek to supplement its response to Request for Production of Document No. 9 or even disclose the actual existence of said records until filing the instant motion for a protective order at least 5 months later.

6

. **Legal Argument**

**The Deliberative Process Privilege Does Not Apply In This Case,
Because The Government Officials' Knowledge, Decisions And Actions Are At Issue**

As a preliminary matter, the Defendants bear the burden of proving both the existence of a privilege and its " non-waiver". See *Mayer v Dell*, 139 FRD 1 ( D.D.C. 1991) at 3. In this case the disclosure of the same information in the public domain, without apparent objection by the Defendants implies a waiver, which has not been rebutted by the Defendants.

Defendants assert that Dr. Austin's report and the internal audit are protected by the "deliberative process privilege". However, the deliberative process privilege does not apply in cases where congress has made government officials establishment of policy and practices and deliberations related thereto the issue in the case. Clearly in this case Plaintiff has asserted constitutional claims that the District of Columbia and D.C. Officials were deliberately indifferent to his constitutional rights. See Complaint ¶ 38 , Count I.  This Circuit has clearly distinguished the type of issue present in this case from the FOIA cases where the privilege has been recognized. Each of the cases cited by the defendants involve Freedom of Information Act requests and exclusions.  The Court of Appeals in this Circuit squarely addressed the issue presented by defendants with regard to the application of the deliberative process privilege in  *In re Subpoena Ducas Tecum Served on the Office of the Comptroller of the Currency*, 145 F3d 1422 ( D.C. Cir 1998 ) The case involved a fraudulent transfer action against Federal Deposit Insurance Corporation  (FDIC), where the bankruptcy trustee filed motion to compel production of documents pursuant to a subpoena duces tecum served on Federal Reserve Board and

Office of the Comptroller of Currency. The United States District Court for the District of Columbia, Thomas F. Hogan, J., denied the motion applying the deliberative process privilege and the trustee appealed. The Court of Appeals, held that the deliberative process privilege could not be asserted, since case turned on government's intent:

> Appellant's primary argument is that the common law deliberative process privilege is not appropriately asserted-- as the district court in Massachusetts appeared to recognize--when a plaintiff's cause of action turns on the government's intent. We agree. The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. *See, e.g., In re Subpoena Served Upon the Comptroller of the Currency,* 967 F.2d 630 (D.C.Cir.1992) (shareholders sought Comptroller's bank examination reports to prove fraud charges against corporation); *Singer Sewing Machine Co. v. NLRB,* 329 F.2d 200 (4th Cir.1964) (petitioner wanted deliberative materials to establish a defense to an unfair labor practice charge). If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, **it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination**. *See Crawford-El v. Britton,* --- U.S. ----, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). The Supreme Court struggled in *Crawford-El* and *Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. **The argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur**. The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)**. If Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's raison d'etre evaporates.**

8

*In re Subpoena Ducas Tecum Served on the Office of the Comptroller of the Currency*, 145 F3d at 1424. (Emphasis added) Courts in this Circuit are not alone in rejecting the deliberative process privilege in Civil Rights cases where government decision-making is the issue. Federal courts in Kansas, California, Massachusetts and New York have also rejected the claim of deliberative process privilege focusing on the importance of vindicating violations of citizen's rights by unconstitutional actions of state or government officials, not shielding wrongdoing by law enforcement officials and insuring that relevant information pertaining to issues of decision making are disclosed in discovery. One U.S. District Court in Boston provided a good synopsis of federal cases when it rejected the claim with respect to a police board disciplinary hearing report:

> Moreover, withholding the hearing officers' final Report is inappropriate in this civil rights case against a police department. In federal civil rights cases, "an assertion of privilege must 'overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" <u>Mason v. Stock, 869 F.Supp. 828, 833 (D.Kan.1994)</u> (internal citations omitted). It "offends basic notions of openness and public confidence in our system of justice" to shield the results of a police department investigation from public scrutiny, as the public's confidence in the workings of the police department is of utmost importance. <u>Soto v. City of Concord, 162 F.R.D. 603, 612 (N.D.Cal.1995)</u> (finding deliberative process privilege "inappropriate for use in civil rights cases against police departments"), and cases cited. *Accord* <u>King v. Conde, 121 F.R.D. 180, 192-93 (E.D.N.Y.1988)</u> (discussing factors to be considered in applying privilege, and expressing skepticism that disclosure of internal investigative reports would compromise or chill investigations), and cases cited. Finally, but no less importantly, where, as here, the "decision-making process itself is the subject of the litigation," it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information. <u>Burka v. NYC Transit Auth., 110 F.R.D. 660, 667 (S.D.N.Y.1986)</u>, and cases cited.

*Williams et al v City of Boston*, 213 FRD 99 ( D. Mass 2003) By way of contrast the Defendants have cited only one case outside this jurisdiction upholding a deliberative

9

process privilege claim in a Section 1983 suit. *Centifanti v Nix* , 865 F2d 1422,1432 ( 3rd Cir. 1989 ) That case had no substantive legal analysis supporting its decision and while it was technically a 1983 claim by a disbarred attorney challenging the constitutionality of the review process, the narrow issue that the privilege was applied to involved communications involving rule making, much like the other cases cited by Defendants in the context of government agencies and Freedom of Information Act Requests. See *Tax Analysis v IRS* 294 F.3d 71, 80 ( D.C. Cir. 2002 ) The information sought was unlike this case collateral to the issues in the case. Indeed, this Circuit in *Tax Analysis v IRS* did not have occasion to even address its decision in *In re Subpoena Ducas Tecum Served on the Office of the Comptroller of the Currency* , supra., because it was obviously distinguishable from the analysis appropriate to an FOIA request. *In re Subpoena Ducas Tecum Served on the Office of the Comptroller of the Currency* is clearly the law of this Circuit and applicable to Civil Rights cases of this nature where the knowledge and intent of government decision makers is at issue.

## CONCLUSION

Plaintiff submits that the Defendants have the burden of establishing both that a privilege exists and its non-waiver. In this case because the deliberative process is at issue in a Civil Rights case, the established law of this Circuit is that the privilege is not applicable. Alternatively, if the privilege is deemed to apply, the Defendants have waived it by their past disclosure to outside consultants and its release into the public domain. Accordingly, the motion should be denied and Defendants should disclose the audit report not previously disclosed. Finally, Defendant's effort to obtain a total prohibition on disclosure is overly broad and unnecessary to further any privacy interest in employee

personnel records or other confidential information. The Court should review the records in camera and if it finds the records are subject to a protective order, fashion a limited protective order that will minimize public disclosure outside of relevant trial proceedings.

Respectfully submitted,

/s/ Richard Seligman/s/
Richard Seligman [296426]
Counsel for Plaintiff
The Lincoln Building
514 10th Street N.W.
 9th Floor
Washington, DC 20004
 Tel:  202-745-7800
 Fax: 202-639-0458