UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS,                    ) | |
| )  | |
| Plaintiff           ) | |
| )  | |
| v.                              ) | Civil Action No. 05-1514 (ESH) |
| )  | Ellen Segal Huvelle, Judge |
| S. ELWOOD YORK, JR., ET AL.     ) | |
| )  | |
| Defendants         ) | February 28, 2007 |
| )  | |

**PLAINTIFF'S SWORN-TO REPLY TO
DEFENDANT CAULFIELD'S COMBINED RESPONSE TO PLAINTIFF'S
MOTION FOR EXTENSION OF TIME REGARDING DEFENDANT'S MOTION
TO DISMISS AND PLAINTIFF'S MOTION FOR DISCOVERY**

The attorney for Caulfield maintains at 2¶2 of Defendant Caulfield's combined response to Plaintiff's motion for extension of time regarding defendant's motion to dismiss and plaintiff's motion for discovery, ("Caulfield's response") that "Plaintiff was provided a copy of each grievance after initial resolution, and if he had appealed those decisions (which he did not), he would have been provided a copy of each appeal. See Policy 14-5 at 1(1.)(1-2), J(7), and L (3) (attached as Exhibit 1). Thus, Plaintiff already has the records he needs to respond to the Motion to Dismiss…" The Plaintiff is not familiar with this referenced policy. Moreover, the attached exhibit at the footnote on each page provides "***Proprietary Information – Not for Distribution – Copywrited, Property of Correction Corporation of America***" While this may be a CCA policy, but it was undisclosed to the Plaintiff at all times relevant. Additionally, because of the secret existence of this undisclosed policy, the Plaintiff was unable to utilize it or act to

enforce it to the Plaintiff's benefit, at all times relevant. It is quite one thing for counsel for Caulfield to make assumptions regarding his self-serving speculation on one hand, and the factual reality of the situation on the other hand.

The Plaintiff as well as other inmates at the CTF often were not provided a copy of grievances submitted because on many, many occasions the grievance form contained only one page and the one-page photocopy form provided the Plaintiff and other inmates at the unit where the Plaintiff was assigned, by the correctional officers located at the unit. This can be verified by both inmates and the correctional officers, that on many occasions the grievance forms did not contain the triplicate attachments they were supposed to have and inmate grievants thus were required to submit their respective grievances on a one-page form with no copy then provided.

On a number of occasions when the Plaintiff requested a copy of his grievance, the grievance officer, would state and did state that Plaintiff would get it later, that a copy was not then available.

The Plaintiff simply does not have a copy of each grievance that the Plaintiff submitted to the CTF grievance process.

The Plaintiff did submit appeals and was otherwise mislead as to his appeal rights, when the Plaintiff did not place an x in the appeal form box, believing that a separate appeal form would be provided when the Plaintiff signed, "signed under protest" what the Plaintiff was led to believe was an initial response, not the final resolution of his grievance.

The Plaintiff did submit appeals which the Plaintiff does not have records of.

2

The Plaintiff prosecution of grievances were also futile because on many occasions the CTF law library was closed, and on many occasions the Plaintiff could not get access to the CTF law library because of lockdowns and it was an act of futility to complain of lack of library access when the entire

Ninety percent of the research the Plaintiff acquired was not at the CTF law library of CCA, but from outside resources, and even when the Plaintiff secured a list of case cites which the Plaintiff sought to acquire from the CTF law library, the Plaintiff was unable to get them printed out. There were some three (3) occasions, when the Plaintiff submitted his own case cites secured from outside of the CTF law library, after numerous legal threats, the CTF law librarian produced the requests. It is on these occasions, that the CTF seeks to distort the facts by stating that 90 percent of the Plaintiff's requests were filed, when this is a blatant lie and an assumption not based upon fact, but a wild-cockeyed self-serving-fraudulent conclusion.

**In ability to Show that the CTF/CCA Grievance Process with respect to the CTF Law Library and Dental Care, were acts of futility, absent discovery, because this information is within the exclusive control of Caulfield, CCA/CTF, its employees and staff.**

Because of the Plaintiff's inability to secure discovery, the Plaintiff is unable to secure factual evidence to show the scope and extent of lack of law library access because of facility lockdowns, unit lockdowns, library closures and/or inaccessibility for the various reasons herein set forth as well as for other undisclosed reasons.

In an effort to facilitate self-help, the Plaintiff purchased a Georgetown Law Journal, and Plaintiff purchased Geronimo Casefinder, Supreme Court decisions as well

3

as decisions of the Virginia Supreme Court and the Virginia Court of Appeals on CDs and it took one year from the August 29-30, 2005, the date that Warden Corbitt, at the DC Jail authorized Plaintiff to receive them, to February, 2006, for these CDs to be authorized by the CTF Warden and Warden Figuroa for receipt by the Plaintiff at the Central Treatment Facility (CCA).  **See Exhibits 1 through 5 hereto attached.**

However, these research CDs were never usable at the CTF Law Library because the antiquated computer did not have sufficient memory to run these CDs.   And on April 26, 2006, Warden Firguroa personally handed these CDs to Plaintiff along with two floppy disk I was allowed to receive from the outside that contained some research that I had handwritten from the Georgetown Law Law Journal and I had dictated from the telephones of the CTF. **See Exhibit _ hereto attached**

Most of the time it was futile to pull books and stack them on the desk of the law library, waiting for an inmate to copy the cases listed, because for several weeks at a time, the photocopier at the CTF law library was inoperable and these case cites contained in these stacks of books were left and ultimately the books were restacked without any copying being done.

On many occasions when case cites were pulled, there was no inmate assigned to photocopy them and it became a futile act to leave books stacked when the inmate-detail person was no longer copying cases.

On many occasions the law librarian, Ms. Bivins was unavailable or in some class that she was ordered to take about library science because of the numerosity of complaints from inmates unable to perform research task, the dismal condition of the law library, the inaccessibleness of the law library because of lack of computers, there being

4

only two (2) for an average of 40-50 inmates in the law library at the same time. On these two (2) referenced computers, inmates could only perform word processing. They were not connected to the internet as were the computers at the DC Jail.

During the entire period of time, from September 1, 2005 through April 26, 2006, the Plaintiff was rarely able to perform research at the CTF law library because of inaccessibility due to:

a) Failure of the correction officer escort to pick the Plaintiff up from his unit although the Plaintiff was on the list of persons listed to go to the CTF law library one day a week for one hour.

b) failure of the correction officer escort to pick the Plaintiff up from his unit at the designated time on time, although the Plaintiff was on the list of persons listed to go to the CTF law library one day a week for one hour, because the Plaintiff and other inmates were picked up 15 to 20 minutes late routinely. The sign-in logs and sign-out logs that were kept at the CTF law library would show that inmates assigned to come to the law library for research arrived at the law library 15 to 20 minutes late.

c) On most occasion when the Plaintiff and other inmates arrived at the CTF Law Library 15 to 20 minutes late, they first had to sign in, be seated somewhere and then they had to wait another 5 or 10 minutes before Ms. Bivins would authorize them to start researching, approach the book shelves. Records of complaints including grievance complaints would show this.

d) On most if not all occasions when the Plaintiff and other inmates arrived at the CTF law library, on their scheduled date, arriving 10 to 20 minutes late, some times 30 minutes late, Ms Bivins, the law librarian, would order the Plaintiff and other inmates whom were on the two available computers, i.e. word processors, to cease using them, turn in the floppy disks issued by the law librarian, 5 to 10 minutes prior to the expiration of the designated one-hour law-library use, return books, and wait for the correctional officer assigned to escort the inmates back to their units.

e) For several months, during the period September 15, 2005, through April 26, 2006, the CTF law librarian abruptly ceased affording the right of inmates to secure photocopies from books, we were directed to handwrite any research we might have been able to do within the 20-25 minutes time afforded for research, once or twice a week.  This situation made it futile to perform research from the blind, even those of us whom knew how to perform legal research, and then read any case cite once you found one that seem to fit your purpose, and handwrite from the book, a reasonable summary of the case cite, with perhaps 10 to 15 minutes to find a case and 5 to 7 minutes to decide what to write and write down the points of law found.

f) When the Plaintiff was finally authorized to have additional time to perform research at the CTF law library, the Plaintiff's correctional officer escort was 15 to 20 minutes late routinely picking the Plaintiff up from his unit, and when the Plaintiff arrived at the law library, the Plaintiff rarely

acquired access to the law library two computers to perform word processing, because the computers were not hooked up to the internet. On several occasions the computers were inoperable because of virus or the law librarian was not there to provide the disk to turn them on. Inmates were not allowed to save research or any writing to the hard drive. The floppy disk were kept in the office of the law librarian and if she was not there the computers were not used. On a few occasions, however, the floppy disk assigned were left when the law librarian was absent and the law library was opened by her supervisor.

The Plaintiff is further prejudiced by Plaintiff's inability to join CCHPS, and the dentists assigned to CTF from August 30, 2005 through April 27, 2006.

Further, the Plaintiff witness the writing and submission of more than 50 grievances regarding the CTF law library, filed by inmates at the CTF, because of inaccessibility, inability to perform research and inability to secure photocopy of research performed by inmates at the CTF.

The CTF Law Library from September 5, 2005 through April 25, 2006, was a Mecca of chaos and a dysfunctional mess and Plaintiff needs discovery to show futility of attempting to perform legal research, exhaust the grievance process in time to aid the legal deprivation and lack of access to the courts as a result and consequence thereof.

Signed, pursuant to 28 U.S.C. § 1754, the penalties of perjury, and to the best of my knowledge and belief.

_____/s/_____
Simon Banks