# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1514 (ESH) |
| | ) |
| S. ELWOOD YORK, JR., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court on motions to dismiss filed on behalf of certain officials

and employees of the District of Columbia and the Corrections Corporation of America.

## I. BACKGROUND

All the claims set forth in plaintiff's Third Amended Complaint ("3d Am. Compl.") arise

from his incarceration at the Central Detention Facility ("D.C. Jail"), which is operated by the

District of Columbia Department of Corrections ("DOC"), and the Correctional Treatment

Facility ("CTF"), a District of Columbia facility which is operated by the Corrections

Corporation of America ("CCA"). Plaintiff brings this civil rights action under 42 U.S.C. § 1983

against the District of Columbia, CCA, and nine individual defendants for alleged violations of

rights protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States

Constitution.[1]  3d Am. Compl. ¶ 1.  Plaintiff also asserts claims for negligent supervision and

---

[1]      In relevant part, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or

(continued...)

1

training against certain of the individual defendants under District of Columbia law.  *Id.* ¶¶ 89-

104.[2]

### A.  Overdetention

In 2004, plaintiff was detained pursuant to four misdemeanor contempt orders issued by

the Superior Court of the District of Columbia.  3d Am. Compl. ¶ 82; *see Banks v. United States*,

926 A.2d 158 (D.C. 2007) (affirming conviction of criminal contempt).  On or about June 23,

---

[1](...continued)

> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

*Id.*  The District of Columbia is a "person" for purposes of Section 1983.  *See, e.g., Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990).  CCA is a private corporation which is performing functions normally performed by a municipality.  *See Gabriel v. Corrections Corp. of Am.*, 211 F. Supp. 132, 138 (D.D.C. 2002).  Thus, it can be held liable under Section 1983 if a plaintiff alleges and ultimately proves that his injuries are a result of an unconstitutional custom or policy of the corporation.  *Id.*

Although the District of Columbia is neither included in the caption of plaintiff's Third Amended Complaint nor listed among the parties to the action, *see* 3d Am. Compl. ¶¶ 8-16, it is clear that plaintiff intended to sue the District, which is specifically named in several of plaintiff's claims.  *See id.*, Counts III-V.  In November 2006, plaintiff submitted an "errata" to his Third Amended Complaint, in which he sought to add allegations identifying the District as a defendant.  Dkt. # 80.  At the same time, plaintiff also filed a motion to direct service of process on the District and one District official.  Dkt. # 78.  In addition, the Third Amended Complaint includes claims against individual District officers in their official capacities, which are treated as if they were brought directly against the District, the real party in interest.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself.").  Accordingly, the Court will grant plaintiff's motion to the extent that the Court will substitute the District as a named defendant and dismiss defendants Williams, Reiskin, Pane, and Abdulwahab, who are sued in their official capacities only, *see id.* ¶¶ 8, 11, 14-15, as parties to this action.

CCA is named in the caption of the complaint but, like the District, is not listed among the parties to the action.  3d Am. Compl. ¶¶ 8-16.  Although plaintiff appears to assert the same claims against both CCA and John Caulfield, the warden of the CTF, *see id.* ¶¶ 179-89, there is no indication in the docket that CCA was ever served; hence, CCA is not a party to this action.

[2]    To the extent that plaintiff seeks to add claims for gross negligence, false imprisonment, and intentional and negligent infliction of emotional distress by raising them for the first time in his opposition to the District of Columbia defendants' motions to dismiss, Pl.'s Opp'n to District Defs.' Mots. to Dismiss at 31, 37-38, the attempt must be rejected.  *See Coll. Sports Council v. Gov't Accountability Office*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006) ("[P]laintiff cannot amend [his] complaint *de facto* to survive a motion to dismiss by asserting new claims for relief in [his] responsive pleadings."); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).

2004, plaintiff was transferred to the custody of Alexandria, Virginia authorities pursuant to a detainer. 3d Am. Compl. ¶¶ 167, 173. According to plaintiff, DOC staff failed to credit the six months he served in Virginia, thus miscalculating his sentence and his release date. *Id.* ¶¶ 21-23. Plaintiff was released from the D.C. Jail on April 28, 2006, allegedly 39 days past the date on which he should have been released. *Id.* ¶¶ 20, 23, 64. He claims to have "suffered anxiety, loss of freedom, loss of liberty and damages as a result of the overdetention." *Id.* ¶ 67.

Plaintiff attributes this overdetention not only to "the collapse of the Department of Corrections' inmate management system," 3d Am. Compl. ¶ 65, but also to the "deliberate indifference by Defendant District of Columbia [and] Devon Brown." *Id.* ¶ 56 According to plaintiff, defendants' alleged failure to train and supervise employees responsible for ensuring the timely release of prisoners not only was negligent, but also violated the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. *See id.* ¶¶ 90-97, 106-14, 129, 151-60.

### B. Dental Care

Plaintiff alleges that, in May 2005, corrections officers "confiscated and destroyed [his] dental crown protecting some 7 teeth." 3d Am. Compl. ¶ 71. Without the crown's protection, he states that his teeth were chipped and his gums became infected. *Id.* ¶¶ 75-76. The DOC's dental unit treated plaintiff with "pain medicine and antibiotics to alleviate the pain and suffering," *id.* ¶ 76, and offered to pull the affected teeth, *id.* ¶ 74; however, plaintiff alleges that defendants' "egregious, gross negligence, and reckless indifference" in failing to replace the crown and otherwise to provide proper treatment resulted in the removal of four teeth. *Id.* ¶ 77. He alleges that the loss of his teeth has resulted in damage to his gums, disfigurement of his face, infection, pain, and anxiety. *Id.* ¶ 78. In addition, he alleges that defendants Pane and

Abdulwahab, the Director of the District of Columbia Department of Health and DOC's Medical Director, respectively, were aware of and were deliberately indifferent to the harm plaintiff would suffer as a result of the failure to provide proper dental care. *See id.* ¶¶ 79-81. He also alleges that CCA "deprived [him] of dental care needed to save [his] teeth from destruction, and further caused the [] harm to [his] teeth, [] gums, [] jaw], [] physical looks, and [] ability to eat, consume and digest food, resulting in the Plaintiff having to have root canals and removal of teeth." *Id.* ¶ 181.

### C. Conditions of Confinement

Plaintiff's amended pleading also contains a virtual laundry list of prison conditions that he complains constituted a violation of the Eighth Amendment to the United States Constitution. 3d Am. Compl. ¶ 176. According to plaintiff, the D.C. Jail's population exceeded its capacity; its medical and nutritional staff was insufficient; its showers are defective and unsanitary; its law library lacked resources and staff; there were not enough correctional officers to maintain security; violent felons commingled with pre-trial misdemeanants; the grievance process was defective; reading materials were not available; there was no recreational equipment in the unit where plaintiff was housed; mattresses and blankets were infested with roaches; only one desk and one chair were available in each two-man cell; the commissary did not stock certain items; plaintiff was denied nail clippers; there were regular sewage backups; dental care was not available; staff opened legal mail outside of the inmates' presence; bunk beds without ladders posed a safety hazard for elderly inmates; no health and safety inspections of the D.C. Jail were conducted; no rehabilitative courses were available; and the heating and ventilation system was defective. *Id.*

Plaintiff also alleges that while detained at the CTF from September 2005 through February 2006, he was "expose[d] to cold temperatures . . . , causing the Plaintiff to suffer pain, colds, and harsh living conditions, that violated the Plaintiff's rights pursuant to the Eighth Amendment to the United States Constitution." *Id.* ¶ 182.

### D.  Extradition to Virginia

Plaintiff alleges that on or about June 23, 2004, defendants caused his transfer to the custody of Alexandria, Virginia authorities, 3d Am. Compl. ¶ 167, even though he "had not waived his constitutional right to an extradition hearing and to protest the legal validity and authenticity of the detainer order." *Id.* ¶ 169.  He asserts that defendants knew or had reason to know of his request for an extradition hearing, and that his transfer occurred because of defendants' "wanton/reckless disregard and [] reckless indifference to the rights of the Plaintiff." *Id.* ¶ 172.

### E.  Confinement at the D.C. Jail

Because of plaintiff's age and low custody level, he was initially housed at CTF "where [his] cell was never locked, and [he] was allowed to leave his cell at all times excepting Count Times and Lockdowns." 3d Am. Compl. ¶ 83.  Notwithstanding his eligibility for placement at CTF, upon his return from the custody of the Alexandra, Virginia authorities, plaintiff was housed at the D.C. Jail.  *Id.* ¶¶ 84-86.  There, plaintiff was housed in a unit "where the Plaintiff suffered regular lockdowns, extreme restrictions on liberty, recreation, commissary, visitation, telephone privileges and cost." *Id.* ¶ 86.  According to plaintiff, defendants' failure to reassign him to CTF caused him to suffer "humiliation, los[s] of liberty, undue hardship and deprivation of privileges." *Id.* ¶ 87.  In addition, plaintiff was commingled with inmates charged with or convicted of murder and other violent offenses.  *Id.* ¶ 88.

For these and other claims, plaintiff demands damages in excess of $125 million.  3d Am. Compl. at 48-49 (Prayer for Relief).

## II.  DISCUSSION

### A.  The District of Columbia Defendants' Motions Will Be Granted In Part and Denied In Part Without Prejudice

There are two motions to dismiss filed on behalf of the District of Columbia defendants.[3] The first [Dkt. #55] is filed on behalf of Anthony Williams, Gregory Pane, and Norma Tally who are, respectively, the former Mayor of the District of Columbia, the Director of the Department of Health, and a DOC Captain.  The second [Dkt. #60] is filed on behalf of Devon Brown, Edward Reiskin, and Gloria Nelson who are, respectively, the DOC Director, the Deputy Mayor for Public Safety, and the DOC's Director of Records.  Both motions essentially make the same arguments.  For convenience, the Court refers to the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [Dkt. #55] as "Williams Mot." and to the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [Dkt. #60] as "Brown Mot."

---

[3]    No answer or motion is filed on behalf of defendants Robert Clay and Fozia Abdulwahab.  Review of the docket shows the summonses for these defendants are returned unexecuted.  Dkt. # 59.  The Court will therefore dismiss Clay and Abdulwahab as party defendants.  Because defendant Clay is no longer the warden of the D.C. Jail, plaintiff has moved to direct service of process upon Clay's successor, William Smith.  Dkt. #78.  Plaintiff suggests that he seeks to sue Smith in his official capacity only.  *See id.* (noting that prior wardens were sued in their official capacities and that plaintiff seeks to sue Smith as the successor to those individuals).  Because any official capacity claims against Smith would be redundant of plaintiff's claims against the District, the Court will deny plaintiff's motion.  Although plaintiff does not appear to be seeking to sue Smith in his individual capacity, the Court notes that Smith could have no individual liability in any event, having assumed the position of warden of the D.C. Jail after plaintiff's release.

1.   <u>Motion to Dismiss under Rule 12(b)(6)</u>

The District of Columbia defendants move to dismiss plaintiff's Third Amended

Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that it fails

to state claims upon which relief can be granted.

A complaint need not set forth detailed factual allegations.  *See Krieger v. Fadely*, 211

F.3d 134, 136 (D.C. Cir. 2000) (citing *Leatherman v. Tarrant County Narcotics Intelligence &*

*Coordination Unit*, 507 U.S. 163, 168 (1993)).  However, a complaint must include "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  In deciding a Rule 12(b)(6)

motion, the Court presumes the truth of the factual allegations of plaintiff's complaint and

liberally construes these allegations in plaintiff's favor.  *EEOC v. St. Francis Xavier Parochial*

*Sch.*, 117 F.3d 621, 625 (D.C. Cir. 1997).  These factual allegations "must be enough to raise a

right to relief above the speculative level . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965 (internal citations

omitted).  The Court need not "accept inferences drawn by plaintiff[] if such inferences are

unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions

cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994).  At this stage of the proceedings, "[t]he issue is not whether a plaintiff will

ultimately prevail but whether [he] is entitled to offer evidence to support the claims." *Scheuer*

*v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S.

183 (1984).

### 2. Liability under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a complaint must allege facts sufficient to show that the conduct of which plaintiff complains (1) was committed by a person acting under color of state law, and (2) deprived plaintiff of a right secured by the Constitution and laws of the United States. *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988). "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (emphasis in original). A "plaintiff[] alleging municipal liability under section 1983 may not be held to a heightened pleading standard." *Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (citing *Leatherman*, 507 U.S. at 163-69). "[A] municipality's liability under section 1983 . . . cannot rest on a *respondeat superior* theory," *id.* at 420, such that a municipality "cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691. The District of Columbia is therefore subject to liability under § 1983 only "when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986). The policy or custom itself must be the moving force behind the constitutional violation. *Id.* (citing *Monell*, 436 U.S. at 694); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985) (plaintiff must show course deliberately pursued by city establishing affirmative link between city's policy and alleged constitutional violation). "[A] city's inaction, including its failure to train or supervise its employees adequately, constitutes a policy or custom under *Monell* when it can be said that the failure amounts to deliberate indifference towards the constitutional rights of persons in its domain." *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

### 3. <u>Claims Against Brown and Nelson</u>

Defendants Brown and Nelson are sued in both their official and individual capacities.

3d Am. Compl. ¶¶ 9, 13. "As a general rule, government officials may be sued in their

individual capacities for constitutional violations only if they are directly responsible for the

alleged violations." *Caldwell v. Hammonds*, 53 F. Supp. 2d 1, 9 (D.D.C. 1999); *see Arnold v.*

*Moore*, 980 F. Supp. 28, 33-34 (D.D.C. 1997); *Price v. Kelly*, 847 F. Supp. 163, 169 (D.D.C.

1994), *aff'd*, 56 F.3d 1531 (D.C. Cir. 1995). These defendants seek dismissal of the complaint

against them in their individual capacities because the pleading "fails to allege any specific

unconstitutional or improper act/conduct was committed by these defendants." Brown Mot. at 8-

9.

Admittedly, the factual allegations of the amended complaint are vague and inartfully

pleaded. However, mindful that a motion under Rule 12(b)(6) is designed only to test the

sufficiency of the complaint's allegations, the Court concludes that plaintiff adequately alleges

defendant Brown's involvement in the events giving rise to this civil action. Brown is alleged to

have violated plaintiff's rights by refusing to transfer him from the D.C. Jail to CTF and by

failing to train DOC employees under his supervision in such a way as to prevent plaintiff's

overdetention. *See* 3d Am. Compl. ¶¶ 86-87, 106-14.

To the extent that plaintiff seeks to hold defendants Brown liable for the unconstitutional

actions or omissions of his subordinates on a theory of *respondeat superior*, however, such a

theory cannot survive. *See Monell*, 436 U.S. at 691 (*respondeat superior* liability cannot form

the basis of liability for a § 1983 claim); *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir.

1993) (complaint naming Attorney General and BOP Director as defendants based on theory of

*respondeat superior*, without allegations specifying their involvement in the case, does not state *Bivens* claim).

Nelson, like Brown, is alleged to have failed to train, monitor, and discipline the DOC employees charged with ensuring plaintiff's release on the appropriate date. 3d Am. Compl. ¶¶ 86-87, 106-14. Although Nelson is sued only in her capacity as the Director of the DOC Office of Records, *id.* ¶ 13, she did not assume that position until several weeks *after* plaintiff's release from jail. Brown Mot. at 22. Having taken office after plaintiff's release, Nelson cannot have caused his overdetention and cannot be liable under Section 1983. *See Haynesworth v. Miller*, 820 F.2d 1245, 1259 (D.C. Cir. 1987) (affirming dismissal of *Bivens* action against police chief who "took office . . . as the events in question drew to a close," as "no corrective action on his part could have aided [plaintiff] since the harm he asserts had already taken place"), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). Accordingly, the Court will dismiss the claims against defendant Nelson in her individual capacity.

### 4. Inadequate Dental Care

Defendants argue that plaintiff fails to state a constitutional claim for inadequate medical care. *See* Williams Mot. at 8-11; Brown Mot. at 10-13.

The District of Columbia is obligated to provide medical care for the prisoners in its custody. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A successful Eighth Amendment claim for the denial of medical care must satisfy both parts of a two-pronged test. *Pryor-El v. Kelly*, 892 F. Supp. 261, 266 (D.D.C. 1995). Plaintiff first must show that the alleged deprivation is sufficiently serious to be considered cruel and unusual. A medical need is considered serious if it either is diagnosed by a physician as mandating treatment or is so obvious that a lay person easily would recognize the necessity of a doctor's attention. *Cox v.*

*District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992). Next, plaintiff must allege that a government official acted with a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). A "prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106 (1976).

Liberally construing the complaint's factual allegations in plaintiff's favor, the Court concludes that plaintiff arguably has alleged a serious medical need. The loss of his dental crown and the resulting damage to his teeth and gums are conditions that a professional would diagnose or that a lay person would recognize as warranting medical attention. *See Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998) (plaintiff's dental condition was sufficiently serious to give rise to an Eighth Amendment claim where plaintiff alleged that, as a result of defendants' failure to treat his tooth cavity, plaintiff "suffered extreme pain, his teeth deteriorated, and he [was] unable to eat properly"); *Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (inmates' dental needs "for fillings, crowns, and the like" are "serious medical needs as the law defines that term").

With respect to defendants' deliberate indifference, the complaint makes clear that this is *not* a case involving a complete denial of medical treatment. Plaintiff acknowledges that the DOC's dental unit treated him with antibiotics and offered to extract the seven affected teeth, which apparently was the only other treatment the DOC could provide. 3d Am. Compl. ¶¶ 74, 76. Plaintiff instead challenges the DOC's failure to provide him with the alternative treatment

he desired by replacing his dental crown or by permitting him to have his private dentist do so. *Id.* ¶ 78.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. Prisoners must be provided with treatment that is medically adequate, but "the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'") (quotation omitted). Although deliberate indifference in some instances may be demonstrated based on a physician's conscious choice of an "easier and less efficacious" treatment, "failure to provide the more efficacious treatment . . . does not, without more, rise to the level of deliberate indifference." *O'Connor v. McArdle*, 217 F. App'x 81, 83 (2d Cir. 2007). In *Chance*, for example, the Second Circuit held that the plaintiff had sufficiently alleged an Eighth Amendment claim for inadequate dental care based on the defendants' insistence on extracting two infected teeth rather than taking less invasive measures such as filling them where plaintiff also alleged that the treating dentists had recommended extraction not on the basis of their medical views but because they would be better compensated for the extractions. 143 F.3d at 703-04. The plaintiff's allegations regarding the defendants' financial incentives, however, were "[c]rucial[]" to his claim, as "if proven true, [those allegations] would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." *Id.* at 704. In contrast, plaintiff here alleges that the defendants were deliberately indifferent to his serious dental needs solely

12

because of their failure to provide him with a replacement crown.  3d Am. Compl. ¶¶ 77-78.[4]

These allegations are insufficient to state an Eighth Amendment claim, and plaintiff's claim for

inadequate dental care will therefore be dismissed.  *See McQueen v. Karr*, 54 F. App'x 406 (5th

Cir. 2002) (affirming dismissal of plaintiff's Section 1983 claim based on the denial of

restorative treatment rather than extraction of his injured teeth); *Swartz v. Steinhauser*, No. 97-

15721, 1997 WL 599547, at *1 & n.2 (9th Cir. Sept. 22, 1997) (affirming grant of summary

judgment for defendants on plaintiff's Eighth Amendment claim challenging failure to repair

fillings in his teeth where plaintiff "was offered dental treatment in the form of extraction of

teeth as the most appropriate treatment for his dental problems"); *Wilkens v. Ward*, No. 05-254,

2007 WL 2407082, at *7 (W.D. Okla. Aug. 22, 2007) (rejecting for failure to show deliberate

indifference plaintiff's dental claim based on defendants' failure to provide her with root canal

therapy rather than extraction); *Del Muro v. Fed. Bureau of Prisons*, No. 03-214, 2004 WL

1542216, at *3-4 (N.D. Tex. July 8, 2004) (failure to treat plaintiff's three decayed teeth, which

could not be filled, with crowns and/or a bridge did not amount to deliberate indifference where

defendant offered to treat the affected teeth by extracting them).

　　　　Moreover, to the extent that plaintiff seeks to hold the District of Columbia liable for

inadequate dental care on the basis of its employees' unconstitutional actions, the claim must fail

for the additional reason that a municipality "cannot be held liable *solely* because it employs a

---

[4]　　　　Plaintiff alleges that corrections officers confiscated and destroyed his temporary crown during a May 2005 shakedown at the unit where he was housed, 3d Am. Compl. ¶¶ 69, 71; however, plaintiff has not sued the corrections officers responsible for the shakedown, nor has he linked their actions in any way to the dental care he subsequently received.

tortfeaser." *Monell*, 436 U.S. at 691.  Accordingly, Count III of the complaint will be dismissed for this reason as well.[5]

### 5. Overdetention

Defendants argue that plaintiff cannot establish the existence of a custom or policy of overdetention relevant to the miscalculation of his sentence.  Brown Mot. at 13.  Rather, defendants attribute plaintiff's overdetention to "factors unique to calculating his sentence, as opposed to any systemic inadequacy."  *Id.*  Counsel represents that records originating from the District of Columbia courts used different case numbers, such that there was no release order tied to the case on which plaintiff was held.  *Id.* at 14.  In addition, defendants represent that there was a misunderstanding with regard to crediting the time plaintiff spent in Virginia's custody towards service of his District of Columbia sentences.  *Id.*  These "very discreet and individualized bases for miscalculation of his jail term," defendants argue, do not rise to the level of a constitutional violation brought about by a District of Columbia custom or policy.  *Id.* at 14-15.

A Rule 12(b)(6) motion tests the sufficiency of the allegations of a complaint.  *See Scheuer*, 416 U.S. at 236.  Counsel's representations as to the reasons for plaintiff's release on April 28, 2006, and general denial of responsibility under *Monell* do not undermine the sufficiency of the allegations themselves.  Although the amended complaint is overly long, difficult to decipher, and poorly organized, plaintiff manages to allege that municipal policies or practices pertaining to the training, supervision, and discipline of employees responsible for

---

[5]  The Third Amended Complaint has two counts labeled "Count III," both of which seek to hold the District of Columbia liable on plaintiff's inadequate dental care and overdetention claims based on a theory of *respondeat superior*.  *See* 3d Am. Compl. ¶¶ 122-35, 136-46.  As noted, *respondeat superior* liability is not available under Section 1983, *Monell*, 436 U.S. at 691, and both counts therefore must be dismissed in their entirety.

inmates' release from DOC custody resulted in his untimely release from prison in violation of his constitutional rights. *See, e.g.,* 3d Am. Compl. ¶¶ 107-14, 148-61; *see also Barnes v. District of Columbia*, 242 F.R.D. 113, 117-18 (D.D.C. 2007) (holding that allegations of overdetention resulting from District custom or policy state cognizable § 1983 claim for deprivation of liberty without due process of law in violation of the Fifth and Fourteenth Amendments).[6] At this stage of the proceedings, dismissal of the overdetention claim is not warranted.

## 6. Conditions of Confinement

In Count VI of his complaint, plaintiff alleges that the defendants violated his rights under the Eighth Amendment "individually and collectively" by subjecting him to a host of adverse conditions. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. A prisoner alleging that the conditions of his confinement violate the Eighth Amendment must identify a deprivation that is, "objectively, sufficiently serious'" in that it "result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (internal quotations omitted). He must also show deliberate indifference on the part of the responsible prison officials, *i.e.*, that the officials knew of and disregarded an excessive risk to inmate health or safety. *Id.* at 834, 837; *see also Wilson*, 501 U.S. at 302-03 (1991). "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human

---

[6]     In addition to upholding denying the District's motion to plaintiffs' overdetention claims, the court in the *Barnes* case certified an overdetention class consisting of "[e]ach person who has been, is, or in the future will be incarcerated in any District of Columbia Department of Corrections facility from September 1, 2005 forward; and who was not released, or, in the future, will not be released by midnight on the date on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired." 242 F.R.D. at 120, 124. His incarceration having persisted beyond September 1, 2005, plaintiff would qualify as a member of this overdetention class.

need . . . ." *Id.* at 304.  However, the Supreme Court has rejected the notion that "all prison conditions are a seamless web for Eighth Amendment purposes." *Id.* at 305.  Considered under these standards, the Court concludes that plaintiff has failed to state a claim for a violation of the Eighth Amendment with respect to many, though not all, of the conditions he identifies.

As an initial matter, plaintiff's challenges to the lack of reading material and a recreational budget at the D.C. Jail; the failure of the commissary to stock items such as "lotions, skin oils, hair oils, [and] peanut butter;" his exposure to the stench created by regular sewage backups at the Jail; and the Jail's use of bunk beds without ladders, 3d Am. Compl. ¶ 176(K), (L), (O), (R), and (U), must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA") because plaintiff has not alleged that he suffered any physical injury as a result of these alleged violations.  The PLRA commands that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff alleges that each of these conditions caused him to suffer various mental and emotional injuries, but he does not allege that they caused him any physical injury.  *See Davis v. District of Columbia*, 158 F.3d 1342 (D.C. Cir. 1998) (affirming *sua sponte* dismissal of prisoner complaint alleging emotional and mental distress resulting from disclosure of his medical information but identifying no other injury).[7]

---

[7]    In opposing dismissal of his claims against defendant Caulfield under the PLRA's exhaustion provision, which also applies to "action[s] . . . brought . . . by a prisoner confined in any jail, prison, or other correctional facility," 42 U.S.C. § 1997e(a), plaintiff argues that because he has been released from his incarceration, he is no longer a "prisoner" required to exhaust administrative remedies under the PLRA.  Pl.'s Opp'n to Caulfield.'s Mot. to Dismiss at 2.  Notwithstanding his release, plaintiff was still incarcerated when he "brought" this "action" in July 2005, and he is therefore subject to the requirements of the PLRA.  *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (plaintiff, who filed suit prior to his release from prison, was bound by the PLRA and could not free himself of its strictures by amending his complaint after his release); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("prisoner" refers to the plaintiff's status at the time the litigation begins).

To the extent that plaintiff challenges the D.C. Jail's provision of only one desk and chair in each two-person cell; failure to provide him with nail clippers, skin lotions, and microwave ovens; and lack of rehabilitative courses, 3d Am. Compl. ¶¶ 176(N), (P), (Q), (W), these challenges also must be dismissed as none of the alleged deprivations is sufficiently serious to rise to the level of an Eighth Amendment violation.

Plaintiff's allegations relating to overcrowding and sanitation at the Jail, 3d Am. Compl. ¶¶ 176(A), (D), (J), (M), and (V), are likewise insufficient. Overcrowding is not itself an Eighth Amendment violation unless it results in the deprivation of basic human needs such as food, medical care, or sanitation. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Plaintiff alleges that overcrowding resulted in his exposure to "poor-third world sanitary and health conditions," 3d Am. Compl. ¶ 176(A); that the showers in his housing unit were infested with bacteria, standing water, and various diseases, *id.* ¶ 178(D), and that "hundreds" of the mattresses in the Jail were unsanitary and defective, some containing roaches and other insects. *Id.* ¶ 176(M). In *Robinson v. Carr*, Nos. 94-7143, 94-7146, 96-7147, 1996 WL 622032, at *4 (10th Cir. Oct. 28, 1996), the Tenth Circuit affirmed the dismissal of similar claims,[8] holding that the plaintiffs' "general and conclusory allegations failed to demonstrate the standard of deprivation necessary to establish a constitutional violation" and that plaintiffs had "failed to state 'specific facts connecting the allegedly unconstitutional conditions with [their] own experiences [in the prison], or indicat[e] how the conditions caused [them] injury.'" The same is true here.

---

[8]    The plaintiffs in *Robinson* had alleged, *inter alia*, "unsanitary conditions in prison dorm areas, including unsanitary mattresses, roach infestation, dirty toilets, faulty plumbing and leaking ceilings"; "prison overcrowding, resulting in inadequate showers and toilets, dining, laundry, medical and recreational facilities"; and "inadequate and unsanitary ventilation." *Id.* at *1.

Plaintiff's allegations regarding the lack of appropriate security and dangerous commingling of felons and misdemeanants at the Jail, 3d Am. Compl. ¶¶ 176(G), (H), are also insufficient to state a claim for violation of his right to personal safety under the Eighth Amendment. Although a plaintiff need not demonstrate "that he has been the victim of an actual attack to bring a personal safety claim, he must establish that he reasonably feared such an attack." *Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994). Here, plaintiff alleges that a lack of security personnel created a risk of personal injury to inmates. 3d Am. Compl. ¶ 176(G). Because he has failed to "set forth sufficient facts establishing that he reasonably feared an attack on his personal safety," however, his personal safety claim must be dismissed. *Brodak v. Nichols*, No. 97-1688, 1998 WL 553032, at *2 (6th Cir. Aug. 17, 1998).

Plaintiff devotes several paragraphs of his Eighth Amendment claim to deficiencies in the medical and dental care provided at the D.C. Jail. 3d Am. Compl. ¶¶ 176(B), (C), (E), (S), (Z). To the extent that plaintiff complains that the level of care and staffing provided were generally inadequate without identifying a specific "serious medical need" to which defendants were deliberately indifferent, *see id.* ¶¶ 176(B) (complaining generally about the "systemic deprivation of medical care and deficient medical care and services"), 176(C) (complaining generally of inadequate staffing of medical professionals and delays in obtaining medical appointments), these allegations are insufficient. Plaintiff does make two more specific claims regarding deficient medical care, realleging his claim based on the failure to replace his dental crown, 3d Am. Compl. ¶¶ 176(S), (Z), and alleging that defendants failed to provide him with a diet appropriate for a diabetic. *Id.* ¶ 176(E). The Court has already addressed the merits of the former claim, which will be dismissed for the reasons set forth above. As to the latter claim, the Eighth Amendment has been held to "require[] officials to provide inmates with a special diet if

such an accommodation is medically necessary." *Frazier v. Dep't of Corrections*, No. 97-2086, 1997 WL 603773, at *1 (10th Cir. Oct. 1, 1997). Plaintiff alleges that he has special dietary needs as a diabetic and that defendants have failed to provide him with "foods to accommodate [those] dietary needs." 3d Am. Compl. ¶ 176(E). Plaintiff further alleges that defendants were "deliberate[ly] indifferen[t] to . . . [his] needs" in doing so, *id.* ¶ 176(Y), and that defendants' actions were "pursuant to the custom, policy, and systemic practices, policies and procedures of the District of Columbia Government [and the DOC]." *Id.* ¶ 178. Although conclusory, these allegations are sufficient at this stage to state a claim against the District. *See Atchinson*, 73 F.3d at 423 (finding plaintiff's "mere allegation of deliberate indifference" to be sufficient on a motion to dismiss).[9]

Plaintiff's allegations regarding the lack of heating in the Jail, 3d Am. Compl. ¶ 176(W), are likewise sufficient. Warmth is a basic human need, the deprivation of which can amount to an Eighth Amendment. *See Wilson*, 501 U.S. at 304 (noting that low cell temperature at night combined with a failure to issue blankets could violate the Eighth Amendment); *Johnson v. Lewis*, 217 F.3d 726, 732-33 (9th Cir. 2000) (subjecting prisoners to subfreezing temperatures for five to nine hours without blankets could amount to an Eighth Amendment violation). Here, plaintiff alleges that due to a lack of heating and ventilation at the Jail, he "suffered from temperatures ranging from thirty and forty degrees during the months of December through March 2005," 3d Am. Compl. ¶ 176(W); that defendants failed to provide him with "sufficient blankets for cold cells," *id.* ¶ 176(Q), and that defendants' actions were taken with "deliberate

---

[9]     Plaintiff does not allege that any of the defendants sued in their individual capacities had any personal involvement in the denial of a diabetic diet; hence, the claim cannot proceed against any of those defendants. *See Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997) (complaint in a *Bivens* action "must at least allege that the defendant federal official was personally involved in the illegal conduct").

indifference" to plaintiff's needs and pursuant to DOC policy.  *Id.* ¶¶ 176(Y), 178.  These allegations are sufficient to state a claim against the District at this stage.

Although Count VI of plaintiff's complaint is styled as an Eighth Amendment claim, certain of the conditions challenged therein are more properly analyzed under the First Amendment.  Plaintiff challenges, for example, the adequacy of the law library and grievance process at the D.C. Jail, 3d Am. Compl. ¶¶ 176(F), (I), as well as defendants' unauthorized opening of his legal and personal mail outside of his presence.  *Id.* ¶ 176(T).  In *Lewis v. Casey*, 518 U.S. 343, 351 (1996), the Supreme Court held that in order to establish a violation of the First Amendment right of access to the courts based on the alleged inadequacies of a prison's library facilities, a plaintiff must show "that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim."  Although plaintiff baldly alleges that deficiencies in the Jail's law library caused him "to suffer inability to prosecute his case . . . in that these deficiencies substantially contributed to the Plaintiff's timely filing of his appeals," 3d Am. Compl. ¶ 176(F), he does not allege that the timeliness (or, more likely, untimeliness) of his filings had an actual adverse impact on his case.  *See Deleon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (plaintiff failed to allege that defendants took actions that actually "hindered [his] efforts to pursue a legal claim" or otherwise prejudiced his legal action where his case had been dismissed on the merits after a bench trial, not for untimeliness of court submissions); *Alexander v. Justus*, No. 05-336, 2006 WL 488632, at *2 (S.D. Ill. Feb. 28, 2006) (to show detriment based on delay, a prisoner must show "actual substantial prejudice to specific litigation").  Plaintiff's claim based on a deficient law library must therefore be dismissed.  Plaintiff's challenge to the Jail's grievance process, which also concerns his right of access to the courts and therefore requires a showing of actual injury, must be dismissed for this reason as well.

For his remaining First Amendment claim, plaintiff alleges that correctional officers or staff at the D.C. Jail opened his legal and personal mail outside of his presence on "numerous occasions" during the period from January to April 2005. 3d Am. Compl. ¶ 176(U). Prisoners have a right to be present when their legal mail is opened, and "[i]nterference with legal mail implicates a prison inmate's rights to access to the courts and free speech." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). While a claim for denial of access based on interference with legal mail requires an allegation that the defendant's actions "'resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim,'" a free speech claim does not. *Id.*; *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (rejecting the argument that plaintiffs must prove "some injury-in-fact beyond the infringement of constitutionally protected speech"). To state a claim for a violation of free speech rights, however, the plaintiff must show more than "an isolated incident of mail tampering." *Davis*, 320 F.3d at 351. He must show "that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Id.* (quotation omitted). Plaintiff alleges that his legal mail was opened outside of his presence "on numerous occasions" during a four-month period and that defendants' actions were intentional and pursuant to a policy or systemic practice. 3d Am. Compl. ¶¶ 176(T), 178. These allegations are sufficient at this stage to state a claim against the District only.[10]

### 7. Detention at the D.C. Jail

Plaintiff alleges that he was wrongfully detained at the D.C. Jail, and was entitled to placement at CTF, where conditions were far less restrictive. Defendants persuasively argue, *see*

---

[10]     Plaintiff also alleges that certain actions by defendants York and Corbett violated his constitutional rights. Plaintiff does not name these individuals as defendants in his Third Amended Complaint; therefore, these claims will also be dismissed.

Williams Mot. at 18, that an inmate has no right to a particular place of confinement or level of security. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (interstate transfer of prisoner does not implicate liberty interest protected by Due Process Clause); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (Due Process Clause does not "in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); *Meyer v. Reno*, 911 F. Supp. 11, 16-17 (D.D.C. 1996) (no protected liberty interest in obtaining or maintaining security classification or remaining among general prison population); *Ali v. United States*, 743 F. Supp. 50, 52 (D.D.C. 1990) (prisoner's transfer from Lorton, Virginia to California did not violate Due Process Clause where he "had no right, and therefore no liberty interest under the Due Process Clause, to be assigned to Lorton in the first instance"). Therefore, the Court will grant defendants' motion to dismiss plaintiff's claim stemming from defendants' alleged refusal to house plaintiff at CTF.

## 8. Extradition to Virginia

The District of Columbia defendants argue that plaintiff waived extradition to Virginia and thus is barred from contesting extradition at this time. *See* Williams Mot. at 22. Attached to defendants' motion is a copy of a Superior Court Order for Return of Fugitive Upon Waiver dated June 18, 2004, which states that plaintiff, "having appeared with Counsel in open Court . . . and having waived further proceedings pursuant to law[,] indicated his desire to return voluntarily to the State of Virginia." *Id.*, Ex. A. Plaintiff's opposition merely restates the allegations of his complaint, *see* Banks Opp'n at 16-17, 29, 35, and asserts various bases for challenging extradition.

This Court may take judicial notice of the Superior Court Order without converting the instant motions into motions for summary judgment. *See Dupree v. Jefferson*, 666 F.2d 606, 608

n.1 (D.C. Cir. 1981) (taking judicial notice of record in related civil case); *Vance v. Chao*, 496 F.

Supp. 2d 182, 184 n.1 (D.D.C. 2007) (taking judicial notice of docket sheet from civil action

before Magistrate Judge); *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100

n.5 (D.D.C. 2003) (taking judicial notice of portions of criminal indictment and trial transcript).

Based on the current record, the Court concludes that plaintiff fails to state a claim regarding his

extradition to the custody of Alexandria, Virginia authorities, and Count V of the Third

Amended Complaint will be dismissed.

### 9. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982); *see Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (noting that

qualified immunity shields government officials from liability for civil damages "as long as their

actions could reasonably have been consistent with the rights they are alleged to have violated");

*Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006).  "[W]hether an official protected by

qualified immunity may be held personally liable for an allegedly unlawful official action

generally turns on the 'objective reasonableness' of the action." *Anderson*, 483 U.S. at 639

(quoting *Harlow*, 457 U.S. at 819).  The official's subjective good faith is not relevant in a

qualified immunity analysis.  *See Harlow*, 457 U.S. at 818.  An official protected by qualified

immunity enjoys "*immunity from suit* rather than a mere defense to liability," which is

"effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S.

511, 526 (1985) (emphasis in original).  Thus, questions of immunity are matters of law for the

Court to decide as early in the proceedings as possible. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam).

To determine whether a party is entitled to qualified immunity, the Court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "At the first stage of the inquiry, 'courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning.'" *Int'l Action Ctr. v. United States*, 365 F.3d 20, 25 (D.C. Cir. 2004) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001)). The right must be defined "to a degree that would allow officials reasonably to anticipate when their conduct may give rise to liability for damages." *Id.* (internal quotation marks, brackets, and citations omitted). Next, the Court must determine "whether the right was clearly established." *Saucier*, 533 U.S. at 201. "The Court should dismiss a claim against an individual official where he was not on notice that his conduct was unlawful." *Abdullah v. Washington*, 437 F. Supp. 2d 137, 141 (D.D.C. 2006) (citing *Briscoe v. Potter*, 355 F. Supp. 2d 30, 47 (D.D.C. 2004)).

### a. Nora Tally

Plaintiff alleges that defendant Tally "placed [him] in solitary confinement, in a disciplinary division of the District of Columbia Jail" in retaliation for his having complained to her that his newly-assigned cellmate was HIV positive and demanded that either he or his cellmate be transferred to another cell. 3d Am. Compl. ¶115; *see also* Pl.'s Opp'n at 12. Plaintiff further alleges that Tally's actions violated his constitutional and statutory rights, as

well as rights pursuant to 28 DCMR § 509.1 and other DOC regulations. 3d Am. Compl. ¶ 117.

Although plaintiff does not identify the particular constitutional right that Tally allegedly

violated, because the plaintiff alleges that the retaliation was in response to his complaint about

his housing situation, the Court assumes that it is plaintiff's First Amendment rights that are

implicated.[11]

It is well established that prison officials may not retaliate against prisoners for the

exercise of a First Amendment right. *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998);

*Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584-85 (D.C. Cir. 2002). To state such a

retaliation claim, the plaintiff must allege that: (1) he engaged in conduct protected under the

First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of

ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the

exercise of a constitutional right and the adverse action taken against him. *See Rauser v. Horn*,

241 F.3d 330, 333 (3d Cir. 2001); *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000); *cf.*

*Crawford-El v. Britton*, 93 F.3d 813, 825-26 (D.C. Cir. 1996), *rev'd on other grounds*, 523 U.S.

574 (1998).

Construing the allegations of plaintiff's complaint liberally in his favor, the Court finds

that plaintiff has alleged a violation of his constitutional rights by Tally. By complaining to

Tally about his assignment to an HIV positive cellmate and requesting that she remedy the

---

[11]     Defendants construe this claim as alleging that Tally retaliated against him not for his complaints to her but for his disclosure of his cellmate's HIV status. Williams Mot. at 19. Admittedly, plaintiff's complaint is somewhat ambiguous, alleging that "[o]n June 29, 2005, after the Plaintiff had complained to defendant Tally that an inmate that had just been assigned to Plaintiff's cell had disclosed to the plaintiff that he was HIV positive and that the Plaintiff then demanded that the new inmate be transferred to another cell or that the Plaintiff be transferred to another cell, defendant Tally, in retaliation against the Plaintiff for Plaintiff's protected disclosure, placed Plaintiff in solitary confinement . . . ." 3d Am. Compl. ¶ 115. Plaintiff's opposition to the District of Columbia defendants' motions to dismiss makes clear, however, that he seeks to challenge Tally's acts in retaliation for his having "submitted a complaint to her" regarding his assignment of an HIV positive roommate. Pl.'s Opp'n at 12.

situation, plaintiff engaged in conduct arguably protected by the First Amendment. Prisoners "retain their First Amendment 'right to petition the Government for redress of grievances.'" *Toolasprashad*, 286 F.3d at 584 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)). The D.C. Circuit has recognized that this right "extends not just to court filings but also to the various preliminary filings necessary to exhaust administrative remedies prior to seeking judicial review." *Id.* Thus, had plaintiff filed an administrative grievance regarding his housing situation, it clearly would have constituted protected conduct under Circuit precedent. *Id.* at 584-85. The Court sees no reason to find that plaintiff's complaint is any less protected simply because he made it orally to an individual prison official rather than submitting it in writing through the grievance process. *See, e.g.*, *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (declining to hold that "legitimate complaints lose their protected status simply because they are spoken" as "[n]othing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form").

Plaintiff has likewise alleged retaliatory conduct by Tally that would likely "'deter a person of ordinary firmness from th[e] exercise [of First Amendment rights],'" *Toolasprashad*, 286 F.3d at 585 (citation omitted), namely that she "placed [him] in solitary confinement, in a disciplinary division of the District of Columbia Jail." 3d Am. Compl. ¶ 115. Defendants argue that Tally "had the right and discretion to take such an action after receiving complaints from plaintiff, himself, that he wanted to move because 'an inmate that had just been assign[ed] to Plaintiff's cell had disclosed to the Plaintiff that he was HIV positive' and the Plaintiff wanted one of them to move." Williams Mot. at 19. While plaintiff does allege that he requested that either he or his cellmate be transferred to another cell, he did not request to be placed in solitary confinement, where, according to plaintiff, he was "locked down for 30 days for 23 hours per

day, required to wear shackles from arms to feet, at visitations and at trips to the medical unit, and locked in a cage during visitations, and commingled with inmates that had high custody levels . . . ." 3d Am. Compl. ¶ 115. Even assuming that Tally did have discretion to move plaintiff into solitary confinement, an "'ordinarily permissible' exercise of discretion 'may become a constitutional deprivation if performed in retaliation for the exercise of a [F]irst [A]mendment right.'" *Toolasprashad*, 286 F.3d at 585 (quoting *Crawford-El*, 93 F.3d at 846 (Henderson, J., concurring)) (prisoner's transfer to another prison and reclassification as a "special offender" were actionable notwithstanding Bureau of Prisons's "long-recognized discretion to decide where to house prisoners").

Finally, plaintiff alleges that Tally placed him in solitary confinement after he had complained to her about his cellmate and in retaliation for his complaints. 3d Am. Compl. ¶ 115. Although plaintiff provides little factual detail in support of his allegation that Tally's conduct was retaliatory, the Court is constrained to find that these allegations are sufficient to show a causal connection between plaintiff's protected activity and Tally's allegedly retaliatory acts for purposes of a motion to dismiss.

Having concluded that the facts alleged, taken in the light most favorable to plaintiff, show a violation of his constitutional rights by Tally, the Court must determine whether the right infringed was "clearly established" such that it would be clear to a reasonable officer in Tally's position that her conduct was unlawful in the situation she confronted. *See Barham*, 434 F.3d at 572. The Court cannot conclude that it was. The law is clear in the D.C. Circuit and elsewhere that the First Amendment protects an inmate's right to file administrative grievances, at least to the extent that such grievances are "'truthful [] and not otherwise offensive' to [legitimate penological] interests," *Toolasprashad*, 286 F.3d at 584-85 (quoting *Crawford-El*, 93 F.3d at

826); *see also Pearson*, 471 F.3d at 740; however, plaintiff does not allege that he filed a grievance regarding his cellmate assignment or that he even contemplated doing so.  Rather, plaintiff alleges that Tally's retaliatory conduct was in response to his oral complaints to her.  3d Am. Compl. ¶ 115.  Although the law is also clear that a prisoner's oral complaints are protected by the First Amendment in some circumstances, the law is not settled whether complaints like plaintiff's, which concerned only his particular housing assignment rather than conditions at the D.C. Jail more broadly, are protected.

In particular, the Seventh Circuit has imposed a "public concern" requirement in prisoner speech cases, holding that a prisoner's speech "must relate to a public concern and not just a personal matter to receive First Amendment protection."  *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005); *see also Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999).  The Second Circuit has rejected such a requirement, at least for cases involving the exercise of the right to petition the government for redress of grievances, holding that "[t]he 'public concern' requirement, developed in the context of public employee speech, has no place in the context of prisoner petitions for redress of grievances, which typically address matters of personal concern."  *Friedl*, 210 F.3d at 87.  Although the Sixth Circuit has similarly rejected a "public concern" requirement for claims involving "a prisoner's constitutional right to access the courts, an aspect of the First Amendment right to petition the government for redress of grievances," that court expressly declined to determine "the appropriateness of explicitly applying the public concern limitation to speech by prisoners, whose free speech rights are uncontrovertedly limited

by virtue of their incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 392 (6th Cir. 1999) (en banc).[12]

Most importantly, the D.C. Circuit has not directly addressed the issue. In *Crawford-El*, the D.C. Circuit held that a prisoner's criticism of the prison administration in communications with the press was protected by the First Amendment, 93 F.3d at 825-26, but the speech at issue in that case concerned prison conditions generally and therefore related to a matter of public concern. *See Pearson*, 471 F.3d at 740-41 (prisoner's complaints regarding conditions affecting all prisoners transitioning to a lower-security facility, were "statements to administrators on matters of 'public concern' designed to 'urge a change of . . . prison policy'"); *also Crawford-El*, 93 F.3d at 825-26 (citing approvingly case recognizing that "prison conditions are 'an important matter of public policy'") (quotation omitted).

In sum, because the law was unsettled as to whether a prisoner's oral complaints must relate to a matter of public concern in order to warrant First Amendment protection, the Court cannot say that the First Amendment right alleged by plaintiff was clearly established at the time Tally acted, and Tally is therefore entitled to qualified immunity. *See Butera*, 235 F.3d at 652-54 (finding that the due process right to protection from third-party violence in the context of State endangerment was not clearly established where the D.C. Circuit had not previously recognized the right and the "contours" of the right were not settled among the circuits).

---

[12]     The Tenth Circuit also has not addressed the precise issue before the Court in this case; however, a recent decision by that court suggests that oral complaints by prisoners are not protected by the First Amendment. In that case, *Fogle v. Pierson*, 435 F.3d 1252, 1263 (10th Cir. 2006), the plaintiff alleged that he was transferred to long-term administrative segregation at another facility in retaliation for "'complaining' about his placement in administrative segregation and threatening to file suit." The court held that there was an "arguable basis" for plaintiff's claim, precluding dismissal under the *in forma pauperis* statute, but only because plaintiff's "complaints" about his placement could be construed as "referring to internal prison appeals and/or formal grievances to prison officials." *Id.* at 1264. The court thus concluded that "if in fact DOC officials retaliated against [plaintiff] based on his filing administrative grievances, they may be liable for a violation of his constitutional rights." *Id.*

b.  Devon Brown

According to plaintiff, defendant Brown failed to house him at CTF, leaving him instead at the D.C. Jail where he "suffered regular lockdowns, extreme restrictions on liberty, recreation, commissary, visitation, telephone privileges and cost."  3d Am. Compl. ¶ 86.  Plaintiff also alleges that Brown failed to train, monitor and discipline DOC employees with regard to the timely release of inmates from DOC custody and that his deliberate failure to do so caused plaintiff's overdetention in violation of his Fourth, Fifth, Eighth and Fourteenth Amendment rights.  *Id.* ¶¶ 106-12.[13]

With respect to plaintiff's claim regarding Brown's failure to reassign him to the CTF, as discussed above, the decision to house a prisoner in a particular place is discretionary, and plaintiff has no constitutionally protected right to a particular placement.  *See Meachum*, 427 U.S. at 224-25; *Meyer*, 911 F. Supp. at 16-17.  Plaintiff has therefore failed to allege that his assignment to the D.C. Jail rather than the CTF violated a constitutional right, and defendant Brown is entitled to qualified immunity on this issue.

As for plaintiff's claim against Brown based on supervisory inaction, however, the Court finds the allegations of plaintiff's complaint sufficient to set forth a constitutional violation.  As Judge Lamberth recently recognized in denying a motion to dismiss class action claims alleging overdetention by the District, "[t]here is a substantial body of law in support of the proposition that a plaintiff who alleges overdetention, sometimes even for a very short period, states a claim for constitutional violations."  *Barnes*, 242 F.R.D. at 117 (collecting cases).  The D.C. Circuit

---

[13]     Plaintiff asserts the same supervisory inaction claim against defendant Nelson.  As set forth above, however, Nelson did not assume the position of Director of the DOC's Records Office until after plaintiff's release from jail, and plaintiff's claim against her in her individual capacity must therefore be dismissed.

has held, moreover, that a supervisory official may be personally liable in damages for the unconstitutional acts of his subordinate where the plaintiff shows that the official "was responsible for supervising the wrongdoer; that a duty to instruct the subordinate to prevent constitutional harm arose from the surrounding circumstances; and that, as a result of the official's failure to instruct, the plaintiff was harmed in the manner threatened." *Haynesworth*, 820 F.2d at 1262. The plaintiff in *Haynesworth* alleged that police officers had pursued disorderly conduct charges against him in retaliation for his refusal to waive his civil suit against them and sought to hold the chief of police liable for failing to adequately instruct his subordinates regarding the impropriety of initiating retaliatory prosecutions. *Id.* at 1248, 1251. The District Court granted the police chief's motion to dismiss, but the Court of Appeals reversed, holding that the plaintiff had stated a claim for supervisory inaction based on allegations that the police chief was charged with the responsibility of supervising the wrongdoing officers, that a practice of retaliatory prosecutions had unfolded in the District of Columbia; that the police chief failed to supervise or instruct his officers in order to guard against further outbreaks of retaliation; and that plaintiff's injuries resulted from that failure. *Id.* at 1262-63.

The D.C. Circuit again addressed supervisory liability under Section 1983 in *International Action Center v. United States*, 365 F.3d 20 (D.C. Cir. 2004). Emphasizing that the *Haynesworth* court had recognized a duty to act on the part of the police chief based on the "notorious existence" of a past practice of retaliatory prosecutions that was "highly likely" to continue, the Court declined to extend *Haynesworth* to impose supervisory liability absent any allegation that the supervisors in question "had actual or constructive knowledge of past transgressions or that the supervisors were responsible for or aware of 'clearly deficient'

31

training." *Id.* at 25-28.  However, the Court did not disturb *Haynesworth*'s endorsement of a supervisory inaction claim based on "particular past transgressions highly likely to continue in the absence of supervisory action." *Id.* at 26.

Here, plaintiff alleges that Brown, the Director of the DOC, supervised the DOC employees charged with ensuring the timely release of detainees and inmates; that he "deliberately failed to train, monitor and discipline such employees," notwithstanding that he had "both actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff and other inmates" and "in the face of such employees' documented widespread abuse of [plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights];" and that Brown's actions and failures to act caused his overdetention and resulting injuries.  3d Am. Compl. ¶¶ 106-10, 112, 114. With respect to Brown's "actual and constructive knowledge" of the problems with overdetention at DOC facilities and the need for training of the relevant DOC employees, plaintiff further alleges that these issues should have been obvious based on a series of reports documenting the DOC's lack of an effective inmate management system,[14] as well as the "injunctions and settlement agreements" and "reports and admissions of the . . . District of Columbia and the [DOC]" in *Bynum, et al. v. District of Columbia*, No. 02-0956 (D.D.C.), a prisoner class action challenging the DOC's practices of detaining inmates and detainees beyond their appropriate release dates and strip searching inmates as part of their out-processing from

---

[14]    Plaintiff identifies in particular an October 1999 report, which, according to plaintiff, "documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office," including the finding that the "inmate records office management system . . . was 'overwhelmed and in distress and suffering from years of prolonged inattention from top management.'" 3d Am. Compl. ¶¶ 59-61.

DOC custody. *Id.* ¶¶ 58-62, 93. These allegations, construed liberally in plaintiff's favor, are sufficient to state a claim for violation of plaintiff's constitutional rights by defendant Brown.

The Court also concludes that the law regarding overdetention and Section 1983 liability based on supervisory inaction was clearly established by early 2006, when plaintiff's overdetention allegedly occurred. Although the Court is aware of no D.C. Circuit case on point, there is, as noted, a "substantial body of law" recognizing that overdetention violates the Constitution. *See, e.g.*, *Berry v. Baca*, 379 F.3d 764, 773 (9th Cir. 2004); *Davis v. Hall*, 375 F.3d 703, 714 (8th Cir. 2003) (plaintiff alleged that defendants "deprived him of a protected liberty interest by continuing to confine him after he completed his sentence and was ordered immediately released"); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and unusual punishment."); *Golson v. Dep't of Corrections*, Nos. 90-7344, 90-7345, 1990 WL 141470, at *1 (4th Cir. 1990) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment."); *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."). Moreover, as noted, the plaintiff has alleged the existence of a past practice of overdetention by the DOC that Brown was or should have been aware of and that was likely to

continue absent supervisory action.  The Court therefore finds plaintiff's allegations to be

sufficient at this juncture to defeat Brown's assertion of qualified immunity.[15]

### B.  Defendant Caulfield's Motion Will Be Granted

### 1.  Motion for Summary Judgment

Defendant Caulfield moves to dismiss plaintiff's third amended complaint on the ground

that plaintiff failed to exhaust available administrative remedies prior to filing the instant civil

action.  *See* Def. Caulfield's Mot. to Dismiss Third Am. Compl. ("Caulfield Mot.") at 2-7.  He

further argues that plaintiff's amended pleading is defective because it fails to allege exhaustion

of administrative remedies.  *See id.* at 8.  This argument is meritless for two reasons.[16]  First,

plaintiff clearly alleges that he "exhausted administrative remedies by bringing the conditions

that the Plaintiff set forth in the [third amended] complaint to the attention of the Warden, the

Director of Corrections, the medical personnel and the Mayor's Risk Management Office."  3d

Am. Compl. at 5 (unnumbered paragraph under heading "Exhaustion").[17]  Second, because

"failure to exhaust is an affirmative defense under the PLRA," *Jones v. Bock*, 127 S. Ct. 910,

921 (2007), a plaintiff's failure to allege exhaustion is not fatal to his claims.  Unlike the District

of Columbia defendants, *see* n.16, *supra*, Caulfield acknowledges his burden and properly treats

---

[15]     The District of Columbia defendants argue that since all of plaintiff's constitutional claims are subject to dismissal, the Court should decline to exercise supplemental jurisdiction over plaintiff's common law claims. Brown Mot. at 22-23; Williams Mot. at 21.  Because certain of plaintiff's constitutional claims survive these motions, the Court will deny the District defendants' motion to dismiss the common law negligence claim (*i.e.*, Count I of the Third Amended Complaint).

[16]     The District of Columbia defendants also move for dismissal on the ground that plaintiff neither alleged nor demonstrated his exhaustion of available administrative remedies before filing the instant civil action, as is required under the PLRA, *see* 42 U.S.C. § 1997e(a).  *See* Williams Mot. at 22.  Although their motion must be denied for these same reasons, the denial is without prejudice to defendants' ability to demonstrate, on a motion for summary judgment, that plaintiff failed to exhaust administrative remedies.

[17]     Plaintiff's letters to Wardens Figueroa and Luna and to Program Manager Fulton are not considered grievances or appeals.  Caulfield's Reply in Support of Motion to Dismiss, Second Allen Aff. ¶ 12.

exhaustion as an affirmative defense by providing an affidavit and exhibits to support his

argument.  Because both Caulfield and the plaintiff have submitted, and the Court has

considered, matters outside of the pleadings, the Court treats Caulfield's motion as a motion for

summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P.

12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (motion to dismiss

under Rule 12(b)(6) converted to summary judgment motion under Rule 56 where parties

submitted and magistrate judge considered matters outside the pleadings).

### 2.  Exhaustion of Administrative Remedies

The PLRA in relevant part provides:

> [n]o action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined to any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and "applies to all prisoners

seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520

(2002); *see Jones v. Bock*, 127 S. Ct. at 918-19.  Exhaustion under the PLRA requires proper

exhaustion, meaning that a prisoner must comply with procedural rules, including filing

deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered

through the administrative process.  *Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006); *Booth v.

Churner*, 532 U.S. 731, 741 (2001).  Thus, a prisoner may file a civil action concerning

conditions of confinement under federal law only after he has exhausted the prison's

administrative remedies.  *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

The grievance procedure in effect at the CTF calls for an inmate to "avail [himself] to the

Informal Resolution Process by submitting an Inmate Request Slip or speaking with any staff

member concerning the issue <u>prior</u> to submitting a grievance.  If the complainant is dissatisfied

with that result, only then may the formal process be initiated."  Caulfield Mot., Aff. of Joyce

Allen ("Allen Aff.")  ¶ 7 (emphasis in original).  The four-step formal grievance process[18] is

described as follows:

> a.    Inmates must initially send grievances, on the CCA Inmate/Resident Grievance Form (Form 14-5A), to the Grievance Officer within seven (7) days of the alleged incident.  (Step One). The time for filing begins from the date the problem or incident became known to the inmate/resident.

> b.    If the inmate finds the [Grievance Officer's] response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the Request for Warden/Administrator Review portion of the Grievance Form.  (Step Two).

> c.    If the inmate is dissatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response.  (Step Three).

> d.    The inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision.  (Step Four).

*Id.*  "If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the

administrative remedies available."  *Id.* ¶ 8.

According to CCA, plaintiff submitted five grievances between November 2005 and

January 2006.  Allen Aff. ¶ 10.

---

[18]    CCA/CTF also has an Emergency Grievance Procedure, *see* Allen Aff. ¶ 9, but plaintiff's grievances were not labeled as emergencies.  Def. Caulfield's Reply in Support of Mot. to Dismiss, Second Aff. of Joyce Allen ¶ 11.

a.  Grievance No. 05-3642

On November 1, 2005, plaintiff submitted a grievance regarding his 29 prior requests for dental care.  Allen Aff. ¶ 11 & Attach. B (Grievance No. 3642).  He requested an emergency appointment with a dentist or a transfer to a facility where his private dentist could treat him.  *Id.* On November 7, 2005, the Grievance Officer responded, explaining that the Department of Corrections, not CCA, is responsible for providing such treatment.  *Id.*  Because CCA had neither the authority nor the responsibility to provide dental care, the grievance was denied.  *Id.* Plaintiff did not appeal.  Allen Aff. ¶ 11.

Plaintiff contends that an appeal of his grievance pertaining to dental care would be "an act of futility" because "CCA/CTF did not provide[] and was not authorized to provide the Plaintiff with a dental crown to cover the Plaintiff's exposed teeth."  Pl.'s Statement of Material Facts Upon Which There Exist[s] Genuine Dispute in Opp'n to Def. Caulfield['s] Joint Mot. to Dismiss Third Am. Compl. ¶ 24; Pl.'s Aff. in Support of Pl.'s Opp'n to Def. Caulfield['s] Joint Mot. to Dismiss Third Am. Compl. ¶ 25.

Even if plaintiff believes that pursuing the grievance procedures is futile, he is not relieved of his obligation to follow through with those procedures.  *See Booth v. Churner*, 532 U.S. at 741 n.6 (finding that the Court will not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Jeanes v. U.S. Dep't of Justice*, 231 F. Supp. 2d 48, 50 (D.D.C. 2002) ("The plaintiff's belief that availing himself of those grievance procedures is futile is not a sufficient reason for bypassing portions of the administrative remedy process.").

b.  Grievance No. 05-3643

On October 31, 2005, plaintiff submitted a grievance complaining about the cold

temperatures in his cell.  Allen Aff. ¶ 12 & Attach. C (Grievance No. 05-3643).  He demanded

compensation "for 7 days of misery and health-hazardous temperatures."  *Id.*, Attach. C.  The

Grievance Officer responded that, according to a maintenance supervisor, the heat had been

turned on.  *Id.*  Plaintiff did not appeal.  Allen Aff. ¶ 12.

c.  Grievance No. 05-3798

On December 3, 2005, plaintiff submitted a second grievance complaining about cold

temperatures in his cell.  Allen Aff. ¶ 13 & Attach. D (Grievance No. 05-3798).  According to

the Grievance Officer, the temperatures in the cell were between 77 and 80 degrees Fahrenheit.

*Id.*, Attach. D.  Plaintiff did not appeal.  Allen Aff. ¶ 13.

d.  Grievance No. 05-3824

On December 3, 2005, plaintiff submitted a grievance regarding the law library.  Allen

Aff. ¶ 14 & Attach. E.  According to plaintiff, the library had been closed for four out of the

previous six weeks, and that requested copies of Supreme Court decisions had not been

provided.  *Id.* ¶ 14.  The Grievance Officer responded that the law library had been closed only

on Thanksgiving, and that plaintiff did not come to the library on two days when other inmates

from his housing unit had been escorted there.  *Id.*  In addition, the Grievance Officer noted that

plaintiff had no matters pending in the courts, and that he had been provided most of the

materials he sought.  *Id.*

Plaintiff appealed the Grievance Officer's decision, complaining to the Warden that the

law library was a "dysfunctional mess."  Allen Aff., Attach. E.  The Warden suggested that

plaintiff request more library time. *Id.* Plaintiff did not appeal this decision to the DOC

Contract Monitor. *Id.* ¶ 14.

### e. Grievance No. 06-245

On January 23, 2006, plaintiff submitted a grievance complaining that the law librarian

failed to provide copies of 11 cases in a timely manner. Allen Aff. ¶ 15 & Attach. F. A

memorandum from the Principal of the Education Department and the Law Librarian restated

plaintiff's January 19, 2006 requests, and explained CTF's policy on providing copies for

inmates. *Id.*, Attach. F (January 20, 2006 Memorandum from J. Davis-Boykins and S. Bivens).

Plaintiff was not indigent, and therefore was expected to pay for his copies. *Id.* Plaintiff did not

appeal. Allen Aff. ¶ 15.

The record shows that in no instance did plaintiff complete all the four steps of CCA's

formal grievance procedure, and thus, he failed to exhaust his administrative remedies properly

prior to filing this civil action. In response, plaintiff counters that he was not required to exhaust

his administrative remedies at CCA/CTF because he filed the instant civil action after his release

from custody. Although a number of circuits have held that "the PLRA does not apply to actions

filed by former prisoners," *Ahmed*, 297 F.3d at 210 n.10 (citing cases from the Second, Seventh,

Ninth, and Eleventh Circuits), plaintiff's was still incarcerated and was therefore "a prisoner

confined in any jail, prison, or other correctional facility" when he "brought" this "action" in

July 2005. *See* 42 U.S.C. § 1997e(a). Thus, while plaintiff "would have been free of the

strictures of the PLRA if he had filed a timely complaint after his release from prison, he is

bound by the PLRA because his suit was filed [in July 2005, nine months before his release the

following year]." *Ahmed*, 297 F.3d at 210 (denying motion to amend lawsuit filed while plaintiff

was incarcerated to reflect his release from prison on the ground that amendment would be futile

in light of the court's prior dismissal of plaintiff's case for failure to exhaust); *see also Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003) (plaintiff, who was a prisoner when he "brought" or filed" his lawsuit concerning prison conditions, was required to exhaust administrative remedies, notwithstanding that he had been released by the time the court considered his motion to dismiss for failure to exhaust); *Kerr*, 138 F.3d at 323 (term "prisoner" in the PLRA refers to plaintiff's status at the time the litigation begins).  Furthermore, the CCA grievance policy calls for the filing of a grievance within seven days of the incident, and according to the operative pleading, the claims against CCA pertain to event occurring before plaintiff's release from the D.C. Jail.

The Court concludes that plaintiff failed to exhaust his administrative remedies at CTF before filing this civil action, and defendant Caulfield's motion for summary judgment will be granted.

### III.  CONCLUSION

For the reasons stated above, plaintiff's motion to direct service of process on the District of Columbia will be granted to the extent that the District will be substituted as a party defendant so service will not be necessary.  The motion will otherwise be denied.

The District of Columbia defendants' motions to dismiss will be granted in part and denied in part without prejudice.  Robert Clay and Dr. Fozia Abdulwahab will be dismissed as party defendants because they have not been served.  In light of the substitution of the District as a party defendant, Anthony Williams, Edward D. Reiskin, and Dr. Gregory Pane, who are sued only in their official capacities, will also be dismissed as party defendants, and all claims against them will be treated as if they were raised directly against the District.  All of the claims and defendants included in plaintiff's Third Amended Complaint will be dismissed with prejudice,

except that plaintiff may continue to pursue against the District of Columbia: (1) his Section

1983 claim for overdetention; (2) his Eighth Amendment claims based on the denial of a diabetic

diet and the lack of heat at the D.C. Jail; (3) his claim regarding the opening of his legal mail

outside of his presence; and (4) his negligent training and supervision claims.  Plaintiff may also

continue to pursue his Section 1983 claim for overdetention and his negligent training and

supervision claims against Devon Brown in his individual capacity.

Defendant Caulfield's motion to dismiss, which the Court has treated as a motion for

summary judgment, will be granted.  Plaintiff's claims against John Caulfield will be dismissed.

An Order consistent with this Memorandum Opinion is issued separately on this same

date.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: September 17, 2007

41