BEFORE THE DISTRICT OF COLUMBIA COURT OF APPEALS

No. 04-SP-789

SIMON BANKS, Appellant

v.

UNITED STATES OF AMERICA

(Improvidently titled by the Clerk of the District
of Columbia Court of Appeals – the United States is not a party)

(Hon. Noel A. Kramer, Trial Judge)  July 10, 2007

APPELLANT'S AMENDED PETITION FOR
REHEARING EN BANC

Comes now, Simon Banks, Appellant, pro se, and submit Appellant's Amended Petition for Rehearing En Banc and for, pursuant to Rule 40 of the District of Columbia Court Rules, appealing the decision of the Per Curiam panel dated December 14, 2007,

This appeal was argued on May 22, 2007 by appointed appeal counsel, before Reid, Blackburne-Rigsby, **Associate Judges and Wagner, Senior Judge**

Consideration of the Full Court is necessary to maintain the integrity of the Court, to promote Judicial Fairness, to protect the Appellant from manifest injustice resulting from Judicial Conflict of Interest and the failure of Senior Judge Annice Wagner, former Chief Judge, District of Columbia Court of Appeals ("DCCA") to recuse as a member of the panel, because of conflict of interest and to avoid the appearance of bias, and conflict of interest.[1]  **The United States is not the Appellee herein. [Emphasis Added]**

---

[1] Judge Wagner: **a) steered the outcome of the trial and sabotaged the Appellant's entire defense, directly and indirectly and covered up the judicial errors,**

misconduct of Judge Kramer, and abuse of authority and arbitrary actions of Judge Kramer,
- b) Judge Wagner, appointed the investigator and legislator, Stuart Pierson, Chairman of DCCA Committee on Unauthorized Practice, and ignored all complaints Appellant filed against Stuart Pierson,
- c) Judge Wagner appointed the Prosecutor, Thomas Zeno, AUSA, whom requested of Judge Wagner to appoint him to prosecute the Appellant after the Appellant sued him, *Simon Banks v. Holder, et al*, USDC DC (J. RC Lamberth) and after the Appellant filed complaint with the DCCA to hold Thomas Zeno in Contempt of Court, and After the Appellant filed complaint on March 10, 1999 with R. Keith Thomas, Associate Counsel U.S. Department of Justice Office of Professional Responsibility, for forgery, altering an official court document, corruption, obstruction of justice, etc.;
- d) Judge Wagner appointed Judge Kramer to prosecute the Appellant and withheld from the Appellant that Judge Kramer was an applicant for Associate Judge of DCCA, and suppressed from the Appellant that Judge Wagner was a sponsor and ardent supporter of Judge Kramer's application for Associate Judge DCCA, and Judge Wagner appeared before the Senate Governmental Affairs Committee confirmation proceedings along with the Hon. Eric Washington, Chief Judge, in support of Judge Kramer, and Judge Wagner condoned the perjurious testimony of Judge Kramer when Kramer testified in response to Senator (Ohio) question whether she was aware of any complaint(s) filed against her, and in response Judge Kramer stated no and that she would not ordinarily be made aware of such complaints, although the Appellant on April 7, 2004 served Judge Kramer via facsimile and Judge Wagner via facsimile and Garland Pinkston, Clerk of DCCA via facsimile, *Simon Banks v. DCCA, Judge Annice Wagner and Judge Noel Kramer*, 04-399 along with complaint for temporary, preliminary and permanent injunctive relief, filed before the United States District Court for the Eastern District of Virginia; and
- e) Judge Wagner appointed Edward Sullivan, Esq. As the Appellant's Appeal Counsel, whom at all times relevant was a candidate for Magistrate Judge, and whom abandoned the Appellant, after six months from date of his appointment, without ever disclosing to the Appellant that he was a candidate for Magistrate Judge, and whom never discussed with the Appellant Appellant's Assignment of Errors, or any Assignment of Error or appeal strategy, and
- f) Judge Wagner appointed Attorney Cynthia Nordone as the Appellant's Appeal counsel on June 21, 2005, who used the Appointment to sabotage the Appellant's entire defense, and whom at oral argument, waived the appellant's issue that there was insufficient evidence to find the Appellant guilty of any of the four counts,
- g) Judge Wagner used Garland Pinkston and his staff, to block the Appellant and otherwise prevent the Appellant from bringing to the Court's

2

**THE USE OF THE UNITED STATES AS A PARTY BY THE CLERK IS AN EGREGIOUS ABUSE OF THE LOCAL POWER, AND THE MERE APPOINTMENT OF THE U.S. ATTORNEY DOES NOT AUTHORIZE THE HI-JACKING OF THE UNITED STATES AS A PARTY WHERE NO FEDERAL INTEREST IS INVOLVED, AND WHERE THOMAS ZENO, FALSELY AND FRAUDULENTLY SUBMITTED U.S. GRAND JURY SUBPOENAS TO WITNESSES WHERE NO FEDERAL GRAND JURY WAS IMPANELED**.

The United States is not a party to these proceedings.

The proceeding involves one or more questions of exceptional importance:

(A)    **Whether the Court may regulate a member of the public thru a Rule, DC Ct. App. R. 49, without a statute and not violate the Due Process Clause.**

**See Unconstitutionality of Rule 49 as enforced against Appellant, fn3.**

---

**attention, the Appellant's concerns regarding Cynthia Nordone conflict of interest, irreconcilable differences, dilatory tactics, attempts to sabotage the Appellant's Appeal, terminating Cynthia Nordone, although there was clear evidence of ineffective counsel, conflict of interest, dilatory tactics, and although the Cynthia Nordone requested eight (8) frivolous extensions of time to file the Appellant's brief, without objection from the government, that spanned some 14 months when and while the Appellant was incarcerated for a period of 2 years subsequent to Judge Wagner appointing Cynthia Nordone as Appellant's Appeal Counsel, and although the Appellant was overdetained for some 40 days after the Appellant's sentence expired, with a designated release date of October 2, 2006, Cynthia Nordone's Appellant's brief was not filed until September 10, 2006, and but for the Appellant's self-help of filing his own DC Code §23-110 Emergency Motion for Release on April 12, 2006, resulting in the Appellant being released on April 28, 2006, the Appellant would have been still incarcerated for a period of six months beyond the expiration of the Appellant's Sentence. See Appellant's Motion to Enjoin Cynthia Frank from continuing to interfere with the Appellant's DC Code § 23-110 proceedings.**

h) **And where Cynthia Nordone, was encouraged by Garland Pinkston to file a emergency motion for the Appellant's release on the date of the Appellant's release, April 28, 2006, although the Appellant had been transferred from the CTF to DC Jail on April 26, 2006 in connection with the Appellant's pro se emergency Motion for immediate release.**

3

(B) The panel decision conflicts with a decision of the United States Supreme Court, *Sperry v. State of Florida,* **373 U.S. 379 (1963),** which provides that the Supremacy Clause preempt state laws that conflict with rights afforded pursuant to the laws of the United States. The Appellant's authority to practice before administrative agencies of the United States is a protected right, authorized by the EEOC, 29 C.F.R. §1614.695, and the decision conflicts with decision of the court to which the petition is addressed, *Brookens v. District of Columbia Court of Appeals on Unauthorized Practice of Law,* 538 A.2d 1120, Amended Rule 49, Order M-198-96, December 11, 1997, effective February 1, 1998, and it conflicts with the laws of the domicile and residence of the Appellant, the State of Virginia, **Virginia UPL, UPR 9-102** provides: "Unauthorized Practice of Law (UPL): Law related services provided by nonlawyer professional service entitles, *Indeed, a state bar cannot restrict or interfere with practice rights conferred under federal law* , **and consideration by the full court is therefore necessary to secure and maintain uniformity of the court**

(C) The panels decision conflicts with a decision of the United States Supreme Court, the United States Civil Service Commission, and the laws of the District of Columbia with respect to the interchangeability of the titles "Hearing Examiner" and "Administrative Law Judge -- they are synonymous.[2] **See Respondent's Exhibit 19 regarding the**

---

[2] District of Columbia "Workers' Compensation Administrative Law Judges Amendment Act of 2000, D.C. Law 13-229, Reclassifying the Worker's Compensation "Hearing Examiners" as "Administrative Law Judges." OAH legislation promoted by Judge John

4

>    **Interchangeability of the titles "Hearing Examiner" and "Administrative Law Judge."**

(D)    This case presents a challenge to the statutory laws of the State of Virginia which authorize its citizens, in particular the Appellant to practice law before administrative agencies of the United States, pursuant to the laws of the United States as an exception to the State of Virginia Unauthorized Practice Law.

## DC CT. APPEALS RULE 49 AS ENFORCED THROUGH ORDER 18 AGAINST THE APPELLANT IS UNCONSTITUTIONAL

(E)    This case presents a facial challenge to the constitutionality of the D.C. Court of Appeals Rule 49 as enforced and applied to the Appellant. Rule 49 through Order 18, as enforced against the Appellant is unconstitutional. [3]

---

Ferren while on sabattical from DCCA as Corporation Counsel, that triggered his appointment to Vice President of Council for Court Excellence.

[3] **DC COURT APPEALS RULE 49 IS UNCONSTITUTIONAL D.C. App. R. 49 [Rule 49] is unconstitutional on the basis that it is impermissibly vague on its face, and an arbitrary restriction on personal liberties.** *See Chicago v. Morales*, **slip** *op*. **No. 97-1121 at 6 (June 10, 1999), and because it fails to provide notice for parties that it regulates whom are not licensed members of the bar. The notice to this population of regulated must be clear and unambiguous.** *See General Elec. Co. v. EPA, 53* F.3[12] *1324, 1328-29 (D.C. Cir. 1995),* **and because it fails to give ordinary citizens adequate notice of what is forbidden and what is permitted;** *See Coates v. Cincinnati, 405 U.S. 489, 499*, **and because it is overly broad and reaches constitutionally protected conduct that is permitted by federal laws.** *See Wilson v. Yoder, 406* **U.S. 205 (1972); and because it does not provide minimal standards to guide the District of Columbia Court of Appeals' prosecutors, investigators, regulatory police; and judicial officers of the Court.** See *Kolender v. Lawson*, **461 U.S. at 358; and because it delegates too much discretion to the judiciary, the police, the DCCA' prosecutors and investigators;** See *Smith v. Goguen*, **415 U.S. 566, 575; and because it pre-empts and undermines federal laws and rights under federal laws in violation of the** *Supremacy Clause, Art 6, cl, 2; See Ham v. City of Rock Hill, 379 U.S. 306*; **and because it violates the District of Columbia Publication Act and Administrative Procedures Act for failure to publish in the District of Columbia**

5

(F)     This is a case that presents a challenge to the right of the Appellant, a law school graduate and former hearing examiner, to represent himself, pro se against the courts imposing upon the appellant an ineffective counsel whom waived 99 assignments of errors, and ignored the appellant's demands that she enforce pretrial issues argued by the appellant pro se at the trial of the case, and in a wholesale manner, rejected the appellant's affirmative defenses, and although the Appellant attempted to terminate the appointed appeal counsel after she failed to file the Appellant's brief for some 4 months, six months, 12 months, and although it to the Appointed appeals counsel took some 14 months and two weeks to file the Appellant's appeal brief which contained one assignment of error, after seeking and securing some 9 continuances without objection, and where the appointed counsel waived all but one of the

---

**Register, rules that it enforce against the general citizenry.** *See § 1-1505,§ 1-506\*, § 1-1507* **of the D.C. Code which requires publication of the District of Columbia Municipal Regulations and Council acts and resolutions, Chap. 15 or 16 of** *the Code §1532, § 1533.*  **See D.C. Law 1-120 "D.C. Register Publication Act of 1976" of Pub. L. 93-198, effective April 19, 1977. (ref. 23, D.C. Register, 5050, Jan. 26, 1977).  See also D.C. Codes § 1-1509 (d), which requires that parties be afforded opportunity to file exceptions and present arguments,** *D.C. Code § 1-262(b), (c).  See Mullein v. Central Hanover Bank and Trust Co., 33 U.S. 306, 313; Goldberg v. Kelly, 397 U.S. 255;* **and because it promotes, even encourages impermissible restraint on liberty and led to arbitrary enforcement.** *Kolender v. Lawson 461 U.S. at 357*; **and because it promotes and has led to acts that have abridged the right to travel and engage in commerce.** *See Planned Parenthood of Central Mo. V. Danforth, 428 U.S. 52, 82-83 (1976); Kent v. Dulles, 357 U.S. 116, 126 (1958)*; **and because it promotes and has led to impermissible restraint on the liberty of contract,** *Art. 1§10, Clause 1,* **and because it abridges the** *Privileges and Immunities Clause, Article IV, Cl. 1.  See New Hampshire v. Piper, 470 U.S. 284*; **and because it impermissibly operates to trespass and encroach upon the executive or legislative authority, in violation of the separation of powers.**

Appellant's Assignments of errors and affirmative defenses again at the oral argument on May 22, 2007.

## DEPRIVATION OF A FAIR TRIAL WHEN JUDGE KRAMER DID NOT RECUSE

1. The Court deprived the appellant of a fair trial when Judge Kramer did not recuse, when she suppressed from the Appellant that she was an applicant and candidate for Associate Judge to the DCCA, and when Judge Kramer waited until the close of the evidence and the end of the trial to rule upon the Appellant's Motion challenging the jurisdiction of the Court for purposes of steering the outcome and for the purpose of preventing the Appellant from submitting challenges to the Court's decision on jurisdiction .

2. **Judge Kramer ordered Appellant released on June 7, 2004, and forced the Appellant to Alexandria, Va. In violation of the Extradition laws and Compact Act, when the Appellant was serving a sentence imposed by Judge Kramer on June 3, 2004, and Judge Kramer issued a bench warrant on June 24, after the Appellant was transferred to Virginia on June 23, 2004, therafter causing the Appellant to be overdetained for 40 days subsequent to the expiration of the Appellant's sentence.**

3. The Court deprived the appellant of a fair and impartial judge when Judge Kramer suppressed from the Appellant that she was planning to convict the Appellant and use her decision against the Appellant as a catalyst to promote her application as an associate judge to the DCCA, and for purposes of citing her decision in the instant case involving the Appellant, as her most important case, in response to expected questions and inquiry of the Senate, requesting her to identify some of her most important cases, for

7

purposes of promoting her self interest against the Appellant's Constitutional right to a fair trial.

### DEPRIVATION OF EFFECTIVE ASSISTANCE OF COUNSEL AND NULLIFICATION OF THE APPELLANT'S ABILITY TO ASSIST IN HIS APPEAL

4. The Court deprived the appellant of effective assistance of counsel on appeal and nullified the Appellant's ability to assist in the prosecution of his appeal, pursuant to the conspiracy between Judge Kramer and Judge Wagner, and Garland Pinkston, to steer the outcome, when the Court directly and indirectly blocked all of the Appellant's efforts to terminate Cynthia Nordone, as Wagner appointed appeal counsel notwithstanding extreme evidence of ineffective counsel, conflict of interest, and that Cynthia Nordone was serving as a second prosecutor. The Court deprived the appellant of his constitutional right to represent himself on appeal, notwithstanding appointed counsel Cynthia Nordone's failure to file the Appellant's appeal for one year and two months after being appointed, and not withstanding the Appellant's numerous complaints against Cynthia Nordone, for irreconcilable differences, ineffective counsel, dilatory tactics, plan to sabotage the Appellant's appeal. Cynthia Nordone passed the Bar in 2002. **See the attached exhibits, 4th Motion to terminate Nordone. 3-14-2006 letter to Nordone.** The *Baish* case, *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983) is inapplicable to the instant case, Appellant never called into the District of Columbia, as in *Baish.*

5. The *Hunter* case, *Hunter v. United States,* 48 U.S. App. D.C. 19 (1918), is inapplicable to the instant case. The Appellant never went into another state that was under contract with the District of Columbia, to commit an offense against the District of

8

Columbia in connection with the District of Columbia contract with the sister state. There is no nexus. (Cited in the per curiam decision at 12¶2.)

6. The DCCA has stretched the reach of its authority to cover the entire United States and its territories, by, based upon a conclusive presumption, articulating that it has nationwide criminal jurisdiction to protect its "orderly administration of justice." No such right has been vested in the District of Columbia Courts by the Constitution or the United States Congress. Art. 1, §8, cl 17. To create this legislative stretch by judicial decree is overreaching, and violates the plenary powers of the United States Congress. Art. 1, §8, cl 17.

7. The Dyson case is inapplicable to the instant case.

8. The Court order, ordering the Appellant, a resident of the State of Virginia, to State a falsity on advertisements and any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state: that the Appellant is trading as Job Protectors, which the Appellant is not and requiring that the Appellant to state he is not authorized to give opinions concerning any persons legal rights, when the appellant is authorized the Appellant to give legal opinions in connection with the Appellant's authorization to practice law before administrative agencies of the United States.

**9.** This speech restraint is preempted by the Supremacy Clause, enforcement of 29 CFR §1614,605, 5 U.S.C. §2303, et seq., EEOC Management Directive 110, against Rule 49, and Order 18 which conflict with Rule 49 and Order 18 in that they violates the

Appellant's constitutional rights pursuant to the Supremacy Clause, the First Amendment. See District of Columbia Court of Appeals (DCCA) Rule 49 as amended, Order M-198-96, December 11, 1997, effective February 1, 1998.  See Virginia UPL, UPR 9-102 [4], and See ***Sperry v. State of Florida,* 373 U.S. 379 (1963), 29 C.F.R. §1614.605; EEOC Management Directive 110 (MD-110), and the Commerce Clause,**

Clearly the lack of practice rules, rules of interpretation, and guidelines to govern DCCA's enforcement of Rule 49, has led to unequal evaluation.  "The formulation of uniform rules to determine intent based on these recurring circumstances is practicable and, we conclude necessary.  *Ibid.* at 7.  **See** *Gore v. Harris, ___So. 2d__(slip op at 51)*(citing from *Bush v. Gore, slip op. No. 00-949, 531 U.S. at 6 (2000).*

The DCCA, from 1987 through the present, interpreted Rule 49 as if it were a statute, and as not providing the court with jurisdiction over practice before administrative agencies when applied to the Kentucky attorney **Benoit Brookens,** and the

---

[4] **Virginia UPL, UPR 9-102** provides:  "Unauthorized Practice of Law (UPL): Law related services provided by nonlawyer professional service entitles, *Indeed, a state bar cannot restrict or interfere with practice rights conferred under federal law. **See Sperry v. Florida,** 373 U.S. 379 (1963).  At fn. 5, Va. UPR 9-102* provides: "A partial list of some federal agencies allowing "qualified representatives" (nonlawyers) to act on behalf of a party before that agency includes:
   a. **Department of Treasury, internal Revenue Service and Tax Court – 31 U.S.C. § 330; 5 U.S.C. § 500; 31 C.F.R. § 10.33; IRC § 7452 and Tax Court Rule of Practice and Procedure 200**
   b. **Immigration and Naturalization Service – 8 C.F.R. § 3.1(d)(3)**
   c. **Department of Energy – 10 C.F.R. § 205.3**
   d. **Social Security Administration – 20 C.F.R. § 416.1400**
   e. **Drug Enforcement Agency – 21 C.F.R. § 1316.5-**
   f. **National Labor Relations Board – 29 C.F.R. § 102.38**
   g. **Equal Employment Opportunity Commission – 29 C.F.R. § 1601.7**
   h. **Health and Human Services – 45 C.F.R. § 205.10 (a)(3)(iii)**

**Bellingers,**[5] The DCCA's inconsistent interpretation of its own Rule, Rule 49, has on a sustained and continuous basis deprived the Appellant of equal protection of the laws.

**LACK OF JURISDICTION OVER FEDERAL PRACTICE LOCATED IN THE STATE OF VIRGINIA**

10. The Court erred when it ruled it has jurisdiction over the Appellant's professional authorized practice located in the State of Virginia, licensed to do business in the State of Virginia, *Id.* and authorized by the United States EEOC and the United States Merit Systems Protection Board, nationwide. The territorial scope of the DCCA's jurisdiction is limited to the jurisdiction vested in it by the United States Congress, Art. 1 §8, cl 17, and the District of Columbia Code. **See** *Pealmore v. United States,* 411 U.S. 389 at 394 (1973). See Senate Rep. No. 91-405 at Page 1 through 3, 5, 18; H.R. Rep. No. 91-907, Pp. 23-24-33 pursuant to its Clause 17 authority, Congress enacted laws that compose the District of Columbia Code. The 1970 Reorganization Act amended the Code by creating the Superior Court of the District of Columbia and the District of Columbia Court of Appeals. The Courts being expressly established pursuant to Art. 1 of the Constitution. D.C. Code Ann. § 11-101 ((2)(Supp. V 1972). See n2 *supra.* The Superior Court among other things, was vested with jurisdiction to hear criminal cases involving alleged violations of criminal laws applicable only to the District of Columbia, *i.d.* § 11-923; the District of Columbia Court of Appeals, with jurisdiction to hear appeals in cases. *I.d.* § 11-721. (*i.d.* at 398). None of the acts complained of took place within the District. The term "within the District" is a term of art. **See** *Blair-Bey v. Quick,* 151 F.3d. at 1043 [n4]. **See also,** *McCall v. Swain,* 510 F.2d 167 (D.C. 1975).

---

[5] **Brookens v. District of Columbia Court of Appeals,** 538 A.2d 1120, *Simon v. Bellinger,* **643 F.2d 774 (1980).,** *Sperry v. State of Florida,* **373 U.S. 379 [1963].**

11. Judge Levie's speech restrictions contained in Order 18, which derive from Rule 49, as articulated by the trial judge at 4 Findings of Fact and Legal Conclusions (FFLC), violates the Appellant's right to Free Speech and Association pursuant to the Free Speech Clause of the First Amendment, [6] and is preempted by Supremacy Clause.

12. The DCCA has never promulgated any guidelines for implementation and enforcement of Rule 49.  **See** *Brookens v. District of Columbia Court of Appeals on Unauthorized Practice of Law,* 538 A.2d 1120.

13. These speech-restraint prohibitions that burden Appellant and Appellant's class (unlicensed practitioners whom are not licensed by any state bar) cannot survive the "rational basis" review which the Court require to be rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446 (1985).

14. To punish the Appellant for truthful speech, under the pretext of maintaining the orderly administration of justice, and by prosecuting the Appellant for practicing law without a state bar license where no State Bar license is required, is unethical, wrongful and violates the prohibition regarding prior restraint and self-censorship which is disfavored by the First Amendment.. *Fla Star,* 491 at 535.  **See** *New York Times v. United States,* 43 U.S. 713-725-26 (Brennan, J. Contrary), *United States v. Noriega,* 917 F.2d 1543, 1549 (11th Cir. 1990).  The DCCA, under the pretext of protecting the public

---

[6] The Injunction punishes the Appellant for exercising rights connected with Freedom of Association with the Legal Profession, by virtue of Appellant's Law Degree, by virtue of his restricted federal administrative practice, by virtue of appellant's former position as an Administrative Law Judge and Hearing Examiner (both titles are synonymous and involve adjudicating administrative hearings, where attorneys represented their clients before the Appellant sitting as a "Judge", a "right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.  See *De Jorge v. Oregon*, 299 U.S. 353, 364; *Bates v. Little Rock,* 361 U.S. at 522, 523.

and the administration of justice, ignore Appellant's constitutional rights that authorize Appellant's practice and titles. (citing from *NAACP v. Alabama ex rel Patterson,* 357 U.S. 449, at 439, "….A state may not, under the gise of prohibiting professional misconduct, ignore constitutional rights. *See Schware v. Board of Bar Examiners,* 353 U.S 232; *Konig at berg v. State Bar,* 353 U.S. 252.

The Court may not use *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983) (cited at 13 ¶1 of the Per Curiam decision), because in *Baish,* the defendant called into the District of Columbia, as opposed to the instant case, where the government employee of the United States Attorney, called the Appellant from a phone, purportedly located in D.C.

**FAILURE TO PROVIDE COUNSEL AT SENTENCING VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHTS**

21.     .**The Court** failed to provide defendant counsel at sentencing, and the Court erred when it did not inquire of defendant whether defendant wished to have counsel appointed and available at sentencing This error violated defendant's Constitutional Right pursuant to the Sixth Amendment of the Constitution, the Right to Counsel.  Because of the sua sponte arrest on April 8, 2004 and the Summary Proceedings on June 3, 2004, the defendant was unable to bring this claim at trial.  The defendant never waived right to counsel.  Moreover, the extent of inquiry before accepting a waiver of counsel at sentencing the Court never engaged in pursuant to the requirement of *Von Moltke v. Gillies*, 332 U.S. 708 (1948), *Moore v. Michigan*, 355 U.S. 155 (1957); *Robins v. United States*, 404 U.S. 1049 (1972 dissenting opinion). See also *Boyd v. Dutton*, 405 U.S. (1972).  See also *Iowa v. Tovar*, 541 U.S. --, 124 S.Ct. 1379 (2004).

**THE GOVERNMENT CONTACT EXCEPTION PREEMPTS THE COURT JURISDICTION OVER THE DEFENDANT IN CONNECTION WITH THE DEFENDANT'S CONTACTS WITH THE UNITED STATES GOVERNMENT**

13

While the Appellant did not enter the District of Columbia, it is well established law that "Entry into the District of Columbia by nonresidents for purposes of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction" *Environmental Research Int'l, Inc. v. Lockwood Green Eng'rs., Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc.)  The rationale for this exception.  The **Government Contacts Exception** has been upheld and cited in the following cases:  "The District of Columbia Court of Appeals has stated repeatedly that the jurisdictional reach of DC Code § 13-423 is coextensive with the Due Process Clause.  *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d. 79, 80 (DC 1979), and 521 F.Supp. 142 Supra, the Court cites Judge Ferren in the conclusion reached by the District of Columbia Court of Appeals in *Rose v. Silver*, 394 A.2d. 1368 (DC 1978).  Judge Ferren first distinguished *Environmental Research International Inc. v. Lockwood Green Engineers, Inc.,* 355 A.2d. at 812, which held that the end-state acts of an "independent contractor" could not be attributed to the nonresident for jurisdiction.

### SPECIFIC JURISDICTION UNDER DC CODE § 13-423
### "TRANSACTING BUSINESS"

The government failed to prove that the Appellant purposefully directed his activities at residents of the forum state.  In *Gonzalez v. Internacional De Elevadores*, 2006 DC App LEXIS 21, [HN7] the DC Court of Appeals, provide:

We conducted an extensive analysis of the history of section 13-423 (a) (1) and (b) in *Shopper's Food Warehouse v. Moreno*, 746 A.2d. 320, 324-330 (DC 2000) citing *Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d. 808, 810-811 (DC 1976) (en banc) …. In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend "traditional notions of fair play and substantial justice."  *Shopper's*, 746 A.2d. at 330 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  **Hence the defendant must have "purposefully directed" [his] activities at residents of the forum …."** *Shoppers*, 746 A.2d and 331….**This means that the non-resident defendant's "conduct and connection with the forum state are such that he would reasonably anticipate being haled into court**

there."…..[843] …"This single, responsive mailing cannot constitute meaningful" **contact**, *Burger King*, 471 U.S. at 472, or "substantial connection between the defendant and the forum state, *McGee v. Int'l Life Ins.* (1951)" [HN7] "The scope of its otherwise broad "transacting any business" clause is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs.,* Inc. 355 A.2d. 808, 813 (DC App. 1976) en banc.

### THE GOVERNMENT MUST ESTABLISH JURISDICTION OVER PERSON

The government failed to establish jurisdiction over Appellant. The Court in *United States v. Ferrara*, 54 F.3d. at 833, 1995 U.S. App. LEXIS 11789 at 24 opined:

"…the government must nevertheless establish the District Court's jurisdiction over her person." (citing *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d. 24, 29 (1st Cir. 1988); see also *Edmond v. U.S. Postal Serv. Gen. Counsel*, 292 U.S. App. DC 240 (DC Cir. 1991). **See § 13-423 (A) (4)**

**See *McFarland v. Esquire Magazine*, 74 F.3d at 1301, (citing *Keton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984), *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d. 44, 52 (2nd Cir. 1991),** including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, with the District." The writer is not the publisher; *Unger's* contacts must be accessed separately." See *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984

### ASSOCIATE JUDGE JOHN FERREN, TEMPORARILY STEP DOWN TO BECOME CORPORATION COUNSEL AND FACILITATED A CHANGE IN THE TITLE "HEARING EXAMINER" TO "ADMINISTRATIVE LAW JUDGE" AND THE NEW LAW ARISING OUT OF JUDGE FERREN'S ACTIONS REQUIRED A LICENSE TO PRACTICE LAW AS A CONDITION FOR RETAINING THE CONVERTED HEARING EXAMINER POSITION TO ALJ, WHEN AND WHILE THE DCCA WAS PROSECUTING THE APPELLANT FOR SPEAKING OF THE INTERCHANGEABILITY OF THE TITLES

See D.C. Administrative Hearing Establishment Act (OAH), D.C. Law 14-76, March 6, 2002. **See DC Law 13-229, Worker's Compensation Administrative Law Judges Amendment Act of 2000 effective April 13, 2001. See attached, Act, Office of Administrative Hearings Establishment Act of 2001.**

_____
**Dr. Simon Banks, J.D.**

CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading was mailed, postage prepaid, and/or sent via electronic mail, this 9th day of July, 2007, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith

_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**