IN THE DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 97-SP-1761 and 97-SP-652

In Re: Simon Banks

**92-BG-652**

Appellant,

And



Nos. 96-SP-817, 97-SP-1629 and 97-SP-1760
No. 00-SP-815
99-SP-1025 & 99-SP-1192

IN RE: SIMON BANKS

SP1038-96
96-BG-114

Appellant,

\*96-SP-817, SP1038-96, 97-SP-1760

February 22, 2001

### APPELLANT'S EMERGENCY MOTION
### EN BANC FOR RECUSAL OF
### THE DISTRICT OF COLUMBIA COURT OF
### APPEALS AND FOR THE APPOINTMENT OF
### A DISINTERESTED THREE-JUDGE PANEL TO
### DECIDE THE APPELLANT'S APPEAL
### BASED UPON THE COURT'S CONFLICT OF INTEREST
### IN ACTIVIST-LEGISLATIVE RULE-MAKING
### IN COLLUSION WITH THE DISTRICT OF COLUMBIA BAR
### FROM 1993 THROUGH 1998, DESIGNED TO EMBELLISH
### AND AMEND D.C. APPEALS RULE 49 TO REGULATE
### AUTHORIZED PRACTICE BEFORE ADMINISTRATIVE
### AGENCIES OF THE UNITED STATES, IN VIOLATION
### OF THE PLENARY POWERS OF THE UNITED STATES
### CONGRESS, ART. 1§8 CL. 17, AND CONCEALED FROM THE
### DESIGNATED POPULATION THAT RULE 49 HAS
### BEEN AMENDED TO REGULATE, WHEN AND WHILE THE
### COURT CONTINUOUSLY DENIED THE APPELLANT'S
### MOTIONS FOR A RULING UPON THE CONSTITUTIONALITY
### OF D.C. COURT OF APPEALS RULE 49

### CERTIFICATE OF COMPLIANCE

1

AMENDED RULE 27

Pursuant to D.C. Ct. App. Rule 27, as amended, I hereby certify that the appellant has been advised by the designated Assistant United States Attorney, John Fisher oppose the motion, and Deputy Corporation Counsel Charles L. Reischel, is withholding his disposition on this motion until after he peruses the motion. The appellant has been unable to secure a response to the motion from the D.C. Committee On Unauthorized Practice of Law.

Comes now the appellant and submit appellant's emergency motion en banc for recusal of the District of Columbia Court of Appeals and for the appointment of a disinterested three-judge panel to decide the appellant's appeal based upon the court's conflict of interest in activist-legislative rule-making in collusion with the district of Columbia Bar from 1993 through 1998, designed to embellish and amend D.C. Court of Appeals Rule 49 to regulate, when and while the Court selectively enforced D.C. App. R. 49 against the appellant and when and while the Court continuously, from 1987 to the present, denied each of the appellant's Motions for a ruling upon the Constitutionality of D.C. Court of Appeals Rule 49.

authorized practice before administrative agencies of the United States, in violation of the plenary powers of the United States Congress, Art. 1§8, cl. 17, and concealed from the designated population that rule 49 has been amended to regulate.

The Appellant refer the Court to Appellant's Petition for Rehearing En Banc, appealing the Court's Order dated February 14, 2001, in each and all respects, which attaches Petitioner's Exhibits 1 through 4 in support of Petition for Rehearing En Banc.** **(The Court Ordered the Appellant to provide a copy of each pleading upon which the appellant relied or it would not be considered, and when the appellant did, the court ruled that the pleadings, i.e. appendices, were "voluminous".)**

**The Authors of the Amended Rule M-198-96, (*which attempts to delegate to the Department of Consumer and Regulatory Affairs, powers that DCCA does not***

attorney for the District of Columbia Court of Appeals Committee On Unauthorized

Practice of Law **("CUPL"),** and an attorney witness at the May 9, 1994 proceedings in

92-BG-652, ref. In Order No. 18, Jan. 13, 1995, and a defendant and respondent in

previous complaints initiated by the appellant in **1994. These individuals**

**unconstitutionally  prosecuted Rule 49 against the appellant for 15 years without**

**jurisdiction,** through the use of commingled powers as lobbyist, legislators, prosecutors,

and as judicial officers)  See *D.C. Bar Examination of Rule 49 Committee Created by*

*the Board of Govenors December 1995*, Chaired by James Schaller (former chair of

**CUPL** 1985-1989 (whom appellant brought ethics complaint against and sued in 1987-

88), and Stuart Pierson the Report author (former Chair of **CUPL** 1989-1999 (whom

appellant brought several ethic/corruption complaints and civil complaints against and

complaints of witness tampering, bribery and motions for contempt against.))

      **Also Appellant filed complaints with DCCA against,**  Richard A. Beverly,

General Counsel D.C. Employee Appeals, D.C. Bar Committee Member on Rule 49 and

(General Counsel to D.C. Office of Employee Appeals, 1987 through 1997 (whom

appellant filed suit against in 1994 *Banks v. Barrymore & Loots, et al*, and whom

appellant sought an in junction against and filed ethics complaints against in 1994.  **Also,**

Jay A. Resnick (former staff director and attorney for CUPL 1985-1989.  **Also,** Charles

Reischel, Chief Deputy Corporation Counsel, Counsel for DCCA, Counsel for Stuart

Pierson and his former law firm, Davis Wright Tremaine, in *Banks v. Barrymore &*

*Loots, et al,* **former attorney for Richard A. Beverly (also Committee Member); and**

**attorney for defendant D.C. Office of Employee Appeals, defendant in** *Banks v.*

capacity of Chairman and Staff Director/Attorney CUPL, used their official

positions with CUPL to influence the DC Office of Employee Appeals, in 1985, to

change its rules to bar the appellant, requiring a license to practice where no license

was previously required.  See *Brookens v. District of Columbia Court of Appeals, 538*

*A.2d 1120 (D.C. App. 1988)* *This explains why Stuart Pierson submitted Richard A.*

*Beverly's testimony in 92-BG-652, May 9, 1994, In Re Simon Banks, through affidavit –*

to suppress cross-examination and to conceal the identity of the co-conspirators. **See**

**Order 18,** 92-BG-652 issued on January 13, 199 *In re Simon Banks.* See Tr. Of  May 9,

1994 proceedings. **It must be noted that the D.C. Bar Examination of Rule 49**

**Committee was created in 1993, when DCCA  ruled upon and ratified DCRA-**

**CPPA's jurisdiction over the appellant's Lawyer-type service by declaring the**

**appellant a *Merchant*** This UCC label was used to deprive the appellant of the

exemption contained in the CPPA for "lawyer-type services." **See *D.C. Code § 28-3903***

***©(2)©(1991) (citing also from Simon Banks v. District of Columbia Department of***

***Consumer and Regulatory Affairs, slip op. No. 91-AA-883, at 32, App App*** **See** *Banks*

*v. Consumer & Regulatory Affairs, 634 A.2d 433 (D.C. App 1993); Simon Banks v.*

*District of Columbia Department of Consumer and Regulatory Affairs, No. 91-AA-883*

*(Dec. 6, 1993).* On December 8, 1993 Stuart Pierson, on DCCA's stationary,

disseminated a letter dated December 8, 1993, nationwide to the appellant's clients,

urging them to file a complaint against the appellant with the DCRA, offering treble

damages. **Supra/infra**.

The author D.C. Bar Examiners of the Rule 49 Examination serves as

**authors** of the amended Rule 49, resulting in **Order No. M-198-96**, **(that replaced Rule 49 with DCRA-CPPA)** include, but is not limited to:

John D. Bates, Hon. James A. Belson (DCCA), Ozzie Bermant, Chauncey Fortt, Cornish F. Hitchcock and  Hon. Cheryl Long (Super Ct).

The original D.C. Bar Rule 49 Committee include:  James A. Belson (Superior Court Judge), Ozzie Bermant, Richard A. Beverly (Respondent in appellant's ethics complaint and civil complaint, *Banks v. Barrymore & Loots, et al (filed August 1994);* Chauncey Fortt, Linda Hoffman, Esq.; Stuart Pierson Chair CUPL, Charles Reischel, Jay Resnick(former Chief of Staff CUPL); Susan B. Riley, Esq. EEOC;  Patricia A. Wynn (Superior Court Judge).

Again, on December 6, 1993 DCCA affirmed DCRA's stretch of District of Columbia Laws, in violation of the plenary powers of the United States Congress, and the right to Constitutional Due Process and Equal Protection, by incorporating the unconstitutional implicit speech restrictions contained in Rule 49 into the DC Consumer Protection Procedures Act (CPPA). On December 8, 1993 Stuart Pierson disseminated letters on the stationary of the DCCA to appellant's clients nationwide, urging them to bring a complaint against appellant with the DCCRA, promising that CPPA provides for treble damages.  Also, in 1993 the above-referenced DC  Bar Rule 49 Committee Members, while legislating through **Order No. M-198-96 (Dec. 9, 1997)**, manufactured the following *straightjacket* specifically for the appellant and other practitioners that practice before administrative agencies, in retaliation against the appellant for participating in the protective conduct of petitioning government for redress, as a prior

5

Amendment and as protectionist legislation to protect the DC Bar and its members from competition:

<u>Commentary to § 49(b)(4):</u>

**As a regulation with a purpose to protect the public, the rule requires that representations of non-bar members must avoid giving the impression to persons not learned in the law that a person is a qualified legal professional subject to the high ethical standards and discipline of the District of Columbia Bar.**

**The listing of terms, which normally indicate one is holding one self out as authorized or qualified to practice law, is not intended to cover any conduct which gives the impression that one is qualified or authorized to practice law. See <u>In Re: Banks</u>, 561 A.2d 158 (D.C. 1987).**

**Where a member of the public correctly understands that a person is not admitted to the District of Columbia Bar but is nonetheless offering to perform services functionally equivalent to those performed by a lawyer, that person is subject to sanction under the consumer protection statutes of the District of Columbia. See <u>Banks v. D.C. Dept. of Consumer and Regulatory Affairs,</u> 634 A.2d 433 (D.C. 1993)**

<u>**Commentary to § 49 ©(2):**</u>

**Section ©(2) substantially refines former section ©(4). It is intended to provide only a limited exception to the requirement for admission to the District of Columbia Bar for persons who practice before federal for a in circumstances where all three conditions are met.**

**The United States Supreme Court has held that states may not limit practice before a federal agency, or conduct incidental to that practice, where the agency maintains a registry of practitioners and regulates standards of practice with sanctions of suspension or disbarment. <u>Sperry v. State of Florida</u>, 373 U.S. 379 (1963).**

Powers Doctrine and the appellant's constitutional rights thereunder, as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

**PURSUANT TO THE CONSPIRACY WHICH COMMENCED ON OR ABOUT FEBRUARY, 1985 BETWEEN THE DC BAR AND ITS JUDICIAL ARM, THE D.C. COURT OF APPEALS, AND FOR PURPOSES OF MAINTAINING THE AD HOC JURISDICTION THAT THE DCCA SEIZED OVER THE APPELLANT, THE COURT READ RULE 49 DISJOINTEDLY, SEPARATING APPELLANT'S COMMERCIAL SPEECH AND MARKETING EFFORTS FROM THE APPELLANT'S AUTHORIZED PRACTICE AND THEREAFTER USED IMPLIED SPEECH RESTRICTIONS THAT DCCA INFERRED EXIST IN DC APP. R. 49 AS THE BASIS FOR DECLARING THE APPELLANT AS HOLDING OUT AS QUALIFIED AND AUTHORIZED TO PRACTICE LAW CONTRARY TO THE RULES GOVERNING STATUTORY CONSTRUCTION**

Pursuant to the conspiracy and for purposes of maintaining the *ad hoc* jurisdiction that the DCCA seized over the appellant, the court read Rule 49 disjointedly, and subjected the appellant to a dual standard, separating the appellant's commercial speech and marketing efforts from the appellant's authorized federal practice before administrative agencies that do not require a license to practice law and thereafter the Court used alleged implicit speech restrictions that DCCA inferred exist in Rule 49 as the basis for holding that the appellant's marketing efforts, use of former titles, pictures on the appellant's walls and claims of nationwide service, **constitute unauthorized practice of law (citing the overbreath of Rule 49.** DCCA construed appellant's advertisements and representation of parties in matters of law as leading lay members of the public to believe that the appellant is licensed to practice law in the District of Columbia. Similarly situated White people and other administrative law

practitioners are excepted from this standard, in violation of the actual Protection Clause. *See **Simon v. Bellinger**, 643 F.2d 774 (1980)(a White couple similarly situated couple), and See **Brookens v. District of Columbia Court of Appeals**, 538 A.2d 1120,( a Black similarly situated practitioner)*  **The DCCA continuously avoids referencing appellant's statutory rights and federal rights connected with the appellant's sole practice before administrative agencies *in order to avoid and deprive the appellant of clearly established rights connected its ruling in Brookens, supra.* And appellant's clearly established** rights as set forth in ***Sherry v. State of Florida, supra and infra.***  Thereafter the Court ***intentionally misconstrued*** *D.C. App. R. 49©(4),* and thereafter, again, the Court reverted back to the preclusions set forth in Rule  49(d) in the same breath to declare that the appellant's exercise of rights allegedly granted appellant through 49©(4) was violated the moment that the appellant indicated that he had a right to represent parties in matters of law or otherwise exercised the rights that Judge Levie states the appellant received pursuant to Order 49©(4).  **See Order 18, *Id.* At 3-4, 46 ¶2(referring to nationwide service), 50¶s#(12),(13); 60, 62¶(13),(14). See App. App. 1, at 1, 5-6, 8, 19-27; See also App. App. 5; See also App. App. 6 Order 18 *Ibid*.; See App. App.**

As the Supreme Court of Florida ruled in *Bush v. Gore, Slip Op. No. SC00-2431 [Dec. 8, 2000] at 88:* "…Related statutory provisions must be read as a cohesive whole. (citing *Sun Ins. Office, Ltd. V. Clay, 133 So. 2d 735 (Fla. 1961).* 'as stated in *Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992))….* 'a statutory provision will not be construed in such a way that it

8

*Newman, 653 So. 2d, United States v. John C. Grimberg Co., 702 F.2d 1362, 1366*

*(Fed. Cir. 1983).*

The doctrine of **Judicial Estoppel** precludes this very type of foot-loose shifting.

When and while the DCCA acknowledge that it cannot make rules governing practice

before federal administrative agencies, **[See App. App. 5]** notwithstanding this

acknowledgment, the DCCA continues to legislature laws for the citizens of the District of

Columbia, through its **joint DC-BAR-DCCA-Judicial legislation activities and** in

collaboration with the **DCRA,** in violation of the Supremacy Clause and in violation of the

executive powers vested in the District of Columbia Council and the United States Congress

which ratifies the laws promulgated by the District of Columbia Government. **See Pp 18,**

¶s1&2 and 6 of **Order No. M-198-96,**, which provides:

> **The United States Supreme Court has held that states may not limit practice before a federal agency, or conduct incidental to that practice, where the agency maintains a registry of practitioners and regulates standards of practice with sanctions of suspension or disabarment. *Sperry v. State of Florida*, 373 U.S. 379 (1963).....**

> **As the seat of the national government, the District of Columbia is naturally the place where people locate to provide representation of persons or entities petitioning federal departments or agencies for relief. Inasmuch as such activity would often constitute the practice of law, the *Supremacy Clause of the* United States Constitution, case law, and comity between the District and federal governments counsel a deference to federal departments and agencies that determine to allow persons not admitted to the Bar to practice before them. [Emphasis added]**

Under the third condition 24, a person seeking to
practice under the ©(2) exception must include the
indicated notice on all letterhead, business cards,
formal papers of all kinds, promotions,
advertisements and any other document submitted
or expression made to any third party, the public or
any official entity.

29.    The **DCCA** through the **DCRA** in its continuing unconstitutional application of

its judicial legislating for the general public and the appellant, continue to deprive the public

and the appellant of notice of what it's unconstitutional rules that encroach upon the powers of

the legislature, subject them to by limiting the dissemination of these amended rules, like it did

the original rules, to licensed members of the D.C. Bar, through the D.C. Bar's office.  A clear

conflict of interest and a clear intent to mislead as a prelude for continuing retroactive

rulemaking, offensively enforced as a Bill of Attainder.  **See  Pp. 1¶1 of District of Columbia**

**Court of Appeals, <u>Notice of  Proposed Rulemaking</u>, dated Nov. 26, 1996, No. M-198-96,**

which provides:

> **The District of Columbia Court of Appeals is
> considering the adoption of amendments to D.C.
> App. R. 49 on the unauthorized practice of law,
> AFFIRMING AND/OR DELEGATING
> JURISDICTIONAL AUTHORITY OVER
> PRACTICE BEFORE FEDERAL
> ADMINISTRATIVE AGENCIES THAT IS
> ENGAGED IN BY UNLICENSED CITIZENS OF
> THE UNITED STATES.  The proposed
> amendments were transmitted to the Court by the
> Board of Governors of the District of Columbia
> Bar. The District of Columbia Bar will publish the
> proposed rule and proposed commentary, and a
> report of the Committee on the Examination of
> Rule 49 in the December/January <u>Bar Report</u> of the
> District of Columbia Bar. Copies of the proposal
> entitled *Proposed Clarification and Revision of
> District of Columbia Court of Appeals Rule 49
> Concerning the Unauthorized Practice of Law and*
> the report of the Committee on Examination of

Bar, 1250 H Street, N.W., Sixth Floor, Washington,
D.C. 20005. The proposed rule and commentary
are also available by visiting the District of
Columbia Bar's web site at .

This notice is published to afford interest parties an
opportunity to submit written comments
concerning the proposed amendments to Rule 49.
[Emphasis added]

30.   Needless to say, the appellant and the general public whom this regulation,

the CPPA,  ratified by DCCA in its amendment of  Rule 49, is designed to

regulate, does not have a chance.  They are subject to the arbitrarily whim

and practice of retroactive rule-making that the DCRA in collaboration

with DCCA has subjected the appellant to, which include the vague

explicit, coupled with the vague implicit, enforcement of  unconstitutional

speech restrictions, arbitrarily inferred by DCRA and DCCA and its

subordinate employees, judicial officers, and delegatees.  The actions of

the DCCA with respect to its suppression of notice to the general public

coupled with its restrictive release of notice to the appellant's competitors,

violate the Due Process Clause, the Equal Protection Clause, the

Supremacy Clause, and the District of Columbia Anti-trust Act, and the

Sherman Anti-Trust Act.  In addition to violating the requirements of

*Sperry v. State of Florida,*  373 U.S. 379 (1963), the DCCA is in violation

of the **NOTICE REQUIREMENT** set forth by the Supreme Court in

*Chicago v. Morales,* slip op. No. 97-1121, at 5, 6, 12 and 16, (June 10,

1999).\* **See** **also**  *General Elec. Co. v. EPA,* 53 F.3rd 1324, 1328-*29* (D.C.

11

Doctrine <u>See</u> *Morrison v. Olson,* 487 U.S. 654, 682, 680-681.

### DCCA'S INCONSISTENT RULINGS AND DISCRIMINATORY AND INCONSISTENT ENFORCEMENT OF RULE CPPA AND DCRA'S RADICAL/ERADIC AND WHIMSICAL INTERPRETATION OF ITS CPPA WHEN APPLIED TO THE APPELLANT AND THE APPELLANT'S CLASS, ARE IN VIOLATION OF THE RULES GOVERNING STATUTORY CONSTRUCTION, SEVERELY DIMINISH DCCA'S CLAIMS OF COMPELLING STATE INTEREST

31.  When faced with inconsistent and contradictory actions by the government, the Courts have interpreted such actions as a substantial diminution of the integrity of the government's rational basis and compelling state interest claims[1]

32.  The appellant hereby incorporate the Appellant's Memorandum of Points & Authorities In Support of Appellant's Motion To Enjoin Further Enforcement of The Implied Speech Restrictions that DCCA Infer Exist In The Implied Speech Restrictions That DCCA Infer Exist In Rule 49 That Support Its Regulation Of Practice Before Administrative Agencies of the United States Through two Injunctions it has sustained for 12 years in violation of *Sperry v. State of Florida* 373 U.S. 379 (1963).

District of Columbia Consumer and Regulatory Affairs Consumer Protection Procedures Act, 28-3901(a)(6), §28-3903(c)(2)(C), §28-3904(a), (b)(d), (et seq.)

---

, for Chief Hearing Examiner, in *In Re Simon Banks*, 92-BG-652 and 96-BG-114. <u>See</u> <u>also</u> *Banks v. Barrymore & Loots, et al*, ca 6986-94, and CA 9785-94

[1] **holding:**

…When the government's program targets expression in only a narrow band of a broad spectrum of similar market activities in which its interests appear to be at stake, a question naturally does arise. For the arbitrariness or underinclusiveness of the scheme chosen by the government may well suggest that the asserted interests either are not pressing or are not the real objects animating the restriction on speech. *See Rubin v. Coors Brewing Co.*, 514 U. S., at 489 ("[E]xemptions and inconsistencies" in alcohol labeling ban "bring into question the purpose of the . . . ban," such that it does not survive the Central Hudson test); *City of Ladue v. Gilleo*, 512 U.S. 43, 52-53 (1994) ("Exemptions from an otherwise legitimate regulation of a medium of speech . . . may diminish the credibility of the government's rationale for restricting speech in the first place"); *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424-426 (1993) (same); *Florida Star v. B. J. F.*, 491 U.S. 524, 540 (1989) ("[T]he facial underinclusiveness" of a regulation of speech "raises serious doubts about whether Florida is, in fact, serving, with this statute, the significant interests" invoked in support of it). Under such circumstances, the government's obligation to establish the empirical reality of the problems it purports to be addressing, see *Turne*d of the United States, whom do not and did not require a license to practice law as a condition for practice and representation of contested parties.

hereinafter "CPPA"] had has been functioning as a Filed 10/04/2007 Appendix 91 of

unauthorized practice of law, the underpinnings that support  the  regulation of practice

before administrative agencies of the United States through two injunctions that DCCA

has sustained for 12 years, against the appellant, when and while it adopted the

unconstitutional regulatory jurisdiction over the appellant, contained in the rule-making

of DCRA, by declaring the appellant a "merchant" while DCRA through the CPPA,

exempted **all** attorneys throughout the United States, in violation of the appellant's

Constitutional Rights as set forth in ***Sperry v. State of Florida*** <u>**373 U.S. 379**</u> **(1963)** and

in violation of *Brookens v. District of Columbia Court of Appeals,* <u>538 A.2d 1120</u> (D.C.

App. 1988).  DCCA through Stuart Pierson and its CUPL, engaged in joint-editing and

joint-promulgation of the CPPA, for purposes of regulating authorized federal practice of

unlicensed practitioners, the appellant and the appellant's class, after the appellant

repeated and sustained challenge to the constitutionality and jurisdictional authority of

the DCCA, over the appellant and the appellant's class, through Rule 49, coupled with the

appellant's sustained and repeated protest that the DCCA had deprived the appellant of

the rights, benefits and privileges of its ruling in ***Brookens,*** <u>**supra**</u>. Because of the

appellant's race [**BLACK**] and the appellant's class [**unlicensed practitioners that**

**practice before administrative agencies that do not require a license to practice law**

**as a condition for representing clients]**

       The attempt by DCCA-DC-BAR and DCRA  to enforce Rule 49 through CPPA

that which the DCCA cannot enforce directly, is unconstitutional on its face.

unconstitutionally obstruct the operation of federal law and is *ipso facto* invalid. **See**

Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984) Your Brief at 14 of 29,

further held:

> It is an essential attribute of the States' retained autonomous within their proper sphere of authority. See Texas v. White, 7 Wall, at 725.

The actions of **DCCA, DCRA** and the **DC-BAR**, [**operating jointly and severally pursuant to a common scheme and plan**] against the appellant, as set forth in **Order M-198-96, subjects the appellant to continuous and perpetual violations of his Constitutional Rights, are** against the Supremacy Clause, and violate their oath of office as Justice officials to support the federal constitution. See Printz v. United States, supra, at 5,6, where Justice Souter, in a dissenting opinion provides:

> "...all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution." U.S.C. Const., Art. VI, cl. 3.

> It is appropriate for state officials to make an oath or affirmation to support the Federal Constitution because, as explained in the Federalist, they "have an essential agency in giving effect to the federal Constitution." The Federalist No. 44, p. 312 (E. Bourne ed. 1947)(J. Madison). There can be no conflict between their duties to State and those owed to the Federal Government because Article VI unambiguously provides that federal law "shall be the supreme Law of the Land," binding in every State. U.S. Const., Art. VI, cl. 2. Thus, not only the Constitution, but every law enacted by Congress as well, establishes policy for the States just as firmly as do laws enacted by state legislatures.

The actions of DCCA through the DC-BAR and through the DCRA, and through the CPPA, are unconstitutional on the basis that these acts as set forth herein and above-referenced, obstructs the laws of the United States. **See Art. 1 §8, cl. 17.**

At 7, Justice Souter citing Claflin v. Houseman, 93 U.S. 130, 136, 137, opined:

14

> 'The laws of the United States are laws in the several
> States, and just as much binding on the citizens and
> courts thereof as the State laws are. The United States is
> not a foreign sovereignty as regards the several States,
> but is a concurrent, and within its jurisdiction,
> paramount sovereignty.'" Second Employers' Liability
> Cases, 223 U.S. 1, 57 (1912).

The Court further held:

> There is not a clause, sentence, or paragraph in the entire
> text of the Constitution of the United States that supports
> the proposition that a local police officer can ignore a
> command contained in a statute enacted by Congress
> pursuant to an express delegation of power enumerated
> in Article 1.

The Supreme Court in Printz v. United States, supra, at 13, while focusing on state

government's owe a duty to the National Government, providing:

> ....the duty owed to the National Government, on the part
> of all state officials, to enact, enforce, and interpret state
> law in such fashion as not to obstruct the operation of
> federal law, and the attendant reality that all state actions
> constituting such obstruction, even legislative acts, are
> ipso facto invalid. See Silkwood v. Kerr-McGee Corp.,
> 464 U.S. 238, 248 (1984) (federal pre-emption of
> conflicting state law).

Stuart Pierson chairman of CUPL, pursuant to DC App. R. 49, unconstitutionally

and unethically used judicial influence and the stationary of the DCCA to influence the

bringing of complaints with CUPL, the D.C. Consumer and Regulatory Affairs, and a

civil class-action against the appellant upon two (2) acts of bribery and improper offers of

legal services, treble damages, and participation in a class-action suit that Stuart Pierson,

States, and just as much binding on the citizen, and
courts thereof, as the State and District courts are, and
not a foreign sovereignty as regards the several States.

These cooperating attorneys whom were recruited by Stuart Pierson include:

Barrymore & Loots, T. J. Barrymore, Alan Banov, Esq. Harry J. Jordan, Esq., Marc S.

Zweben, Esq and Richard Beverly of D.C. Office of Employee Appeals and the law firm

of Hogan & Hartson, whom brought the case of *Bell v. Banks,* against the appellant,

seeking treble damages pursuant to the District of Columbia Consumer Protection

Procedures Act, after the Appellant sued Barrymore and Loots, et al and the conspiring

clients. <u>**See**</u> *In Re Simon Banks (1992), No. 92-SP-652, Tabs 1-4 attached to "Newly*

*Discovered Evidence In Support of Simon Banks' Emergency Motion En Banc For Stay*

*Of Proceedings Pending Disposition of Petition For Writ of Mandamus Before the*

*Supreme Court, Filed on July 11, 1994.* **Tab 2** provides *"Simon Banks' Motion that the*

*Court Refer the Matter of Witness Tampering and Other Ethical Improprieties*

*Committed by Stuart Pierson to the Bar Counsel, to the Committee on Grievances, To the*

*District of Columbia Government's Ethics Office, To the United States Office On*

*Government Ethics, To the American Bar Association Committee On Ethics and*

*Professional Responsibility.* (attaching further Simon Banks' Memorandum of Law In

Support of same Motion), which provide at Pp2:

> **Stuart Pierson and the Committee deceptively, fraudulently**
> **and unethically, transmitted the identities of proposed**
> **witnesses to each proposed witness as well as other clients**
> **that were on a witness pool, whom were not proposed**
> **witnesses, based upon the court's orders limiting the**
> **witnesses. Nevertheless, Stuart Pierson and the Committee**
> **caused the identities of these present and former clients of**
> **Respondent/Banks for purposes of surreptitiously**
> **tampering with the witnesses scheduled to testify at the**
> **hearing on May 9, 1994.**

16

These witnesses were thereafter tampered with other pay clients of Banks by Shirley Stewart and Jimmie Pratt, whom at the urging, suggestion and influence of Stuart Pierson, set up a fraud corporation titled "Title V11 Outreach, Inc. for purposes of tampering with witnesses scheduled to testify at the proceedings of May 9, 1994, and for surreptitiously interring with Banks' ability to make and enforce contracts, and for purposes of retaliation, and for purposes of prosecutorial vindictiveness, and for purposes of influencing abuse of process against Banks.

Stuart Pierson and the Committee, surreptitiously caused the list of Banks' present and former clients, secured from co-defendants in <u>Banks v. Edwards, [DCRA, et al</u>, and <u>Banks v.Teitelman, et al</u> to be disseminated to T. Jay Barrymore, Esq. And to Barrymore & Loots, Esqs., for purposes of having these lawyers contact Banks' clients and proposed witnesses scheduled to testify at the May 9, 1994 proceedings, whom acted as a straw-recipient of Shirley Stewart and Jimmie Pratt and Title V11 Outreach, whom jointly conspired to influence, steer and tamper with the prospective testimony of prospective witnesses under the pretext and smokescreen of taking some action on behalf of and on the part of alleged "victims of Simon Banks."

It is clear that Stuart Pierson and the Committee and Shirley Stewart, and T. Jay Barrymore, and Title V11 Outreach, Inc. have assured these prospective witnesses that testified at the May 9, 1994 proceedings that this court will lay the foundation for future suits against Banks. By taking these acts as well as other acts unknown to Banks, that these conspirators, conspired to influence the testimony of witnesses that testified at the May 9, 1994.[2]

It is also further obvious that giving the timing of these activities, that the defendant Legal Times is also involved in preparing a story, based on these joint activities between these co-defendants, and parties acting to manufacturing a class action case, whom are also represented by the Corporation Counsel, as is the District of Columbia Court of Appeals.

At Tab 4 of *Simon Banks' Response to Statement of Stuart Pierson that he Did*

*Not Tampered With the Witnesses Whom Testified At the May 9, 1994 Contempt*

17

Because of the Shirley Stewart letter of Stuart Pierson using the "interested person's list" generated and disseminated by the DCCA through its stationary to tamper with the proposed witnesses for the May 9, 1994 hearing before Judge Richard A. Levie, provide:  (1 of 3 letters attached to Shirley Stewart's letter dated June 15, 1994)

---

Jimmie Pratt
882 Walutes Circle
Alexandria, VA 22300
Tel: (703) 799-6690
FAX:(703) 360-7908

Shirley Stewart
1601 Society Court
Herndon, VA 22070
Tele⊗703) 471-1450
FAX:(703) 709-8170

# TITLE VII OUTREACH, INC.

## "WE'RE THE ONE YOU COME TO, WHEN YOU WANT TO FIGHT CITY HALL

June 15, 1994

Greetings:

On Monday, June 13, 1994, Shirley and I attended  the Gertrude Stein Mayoral Debate. Candidates came there to address issues of importance to the gay community.  Gays Consider their issues so important that they should be separate from all other issues in America.

I realize then, that as victims of discrimination who stood up and fought, we became Victims all over again (i.e. Simon Banks, EEOC). I will guarantee you that black leaders Gathered this week in Baltimore will not address the issues of Simon Banks, corruption at The EEOC, equal treatment at NASA, the Alexandria Post Office and lawyers that abandon You.  Our issues demand a forum of its own.  For too long now, others have spoken for us. We must come together and speak for ourselves.

Title V11 Outreach is putting together a candidate forum.  Your participation is essential. We are inviting candidates from DC, MD & VA.  If you plan to attend call one of the numbers listed above.

### A Job is a Right

#### *Shirley A. Stewart*

Attached to this letter signed by Shirley Stewart, [also attached to the motion at tab 4] is a follow-up letter from the **"INTERESTED PERSON'S LIST AUTHORED BY STUART PIERSON FOR PURPOSES OF ORGANIZING A CLASS-ACTION CASE AGAINST THE APPELLANT AND FOR USE TO VIOLATE THE RULE ON WITNESSES, AND FOR USE FOR ATTORNEYS RECRUITED BY STUART PIERSON, AS TO BRIBE WITNESSES, AND FOR A QUID-PRO-QUO, UNDER THE AUSPICES OF THE DCCA".**

18

882 Walutes Circle
Alexandria, VA 22300
Tel: (703) 799-6690
FAX:(703) 360-7908

1601 Society Court
Herndon, VA 22070
Tele℗703) 471-1450
FAX:(703) 709-8170

# TITLE VII OUTREACH, INC.

## "WE'RE THE ONE YOU COME TO, WHEN YOU WANT TO FIGHT CITY HALL

### Persons Interested in Filing a Class Action Against Simon Banks/Job Protectors, Inc.
### RE:  Update on Simon Banks' Class Action Suit—Free Initial Consultation

June 13, 1994

Dear Interested Persons:

I have spoken to the Barrymore and Loots Law Firm, located in Washington Metropolitan area, who wants to set up a meeting of interested persons.  Mr. Barrymore is willing to meet on a Saturday or week day evening andwe have agreed on the following date and time:  June 28th at 6:30 p.m. Persons interested should contact either individual above, as soon as possible. If you are interested but unable to meet on this date, please contact us to let us know.

We have a candidate for Mayor of Wash., D.C.  Our campaign is informational.  We Will be seeking redress of issues important to victims of Simon Banks, EEOC and other Agencies or private companies.  Our candidate is a victim, himself.  We will be registering Voters in D.C. and P.G. County, MD.  And Virginia and conducting other political activities including fund raising and protests in the near future. Participation on your behalf is Necessary in order to bring Mr. Banks to justice.

The Committee on Unauthorized Practices of Law has laid the groundwork.  Now, We, as victims, must come together.

Yours in the Struggle

Cc: Sen. Paul Simon
   U.S. Rep. Leslie Byrne
   Sen. John Glenn
   Dept. of Consumer Regulatory Affairs
   J. Barrymore

Allied with:  ALL People's Congress, Whistleblower's Alliance, Judicial Alliance, Jobs Is A Right, Corp., R.A.M.B.R.O., Inc.

---

(Envelope)

Title V11 Outreach
Jimmie Pratt/Shirley A. Stewart
882 Walutes Circle
Alexandria, VA 22309

C. Roger Cooper
4713 Dunbarton Drive
Orlando, FL 32817-3133

---

The above-referenced was submitted to each proposed May 9, 1994 witness to the

proceedings resulting in Order No. 18, January 13, 1995, *In re Simon Banks 92-BG-652,*

for purposes of surreptiously violating the Rule of Witness or rules of, for

tampering with witnesses directly and indirectly, thereby depriving the appellant of

a fair trial. *The above-reference and the letters submitted to "Interested Persons" on*

*Pierson's "Interested Persons' List" constitute the payoff of bribes for testimony given at*

*the May 9, 1994 proceedings. This "Interested Person's List was first initiated on*

*December 8, 1993, one day subsequent to the DCCA's Ruling in Banks v. Consumer and*

*Regulatory Affairs, No. 91-AA-883 (Dec. 6, 1993)* <u>See</u> **Pierson's letter to C. Roger**

**Cooper, Dec. 8, 1993 which attached the decision of DCCA *supra./infra.* as well as a**

**list of "interested persons" on the "Interested Persons' list".**

Rather than wait to be sued by Stuart Pierson'group, the appellant, in a pre-

emptive strike, after receiving the above-referenced from C. Roger Coooper, sued the the

conspirators and their attorneys, *See Dr. Simon Banks v. Barrymore & Loots, C.A. No.*

*94-00985. See Pp1-10 (App. App. 36, at 1-10)* of "Simon Banks' Opposition to

Committee's Motion for Injunction Prohibiting Retaliation and Intimidation against

witnesses. And pursuant to the payoff bribery, Stuart Pierson and CUPL influenced the

lawfirm of Hogan & Hartson, to replace Barrymore & Loots, in representing the

appellant's former clients whom conspired to bring a class-action complaint against

appellant.

**DCCA-CUPL WITNESS TAMPERING\*\***
**THERE CAN BE NO DISPUTE THAT EACH OF THE WITNESSES**
**CALLED TO TESTIFY AT THE MAY 9, 1994 HEARING IN *IN RE***
***SIMON BANKS*, 92-BG-652 AND/OR 92-SP-652, WERE TESTIFYING**
**IN EFFORT TO SECURE TREBLE DAMAGES PROMISED BY**
**STUART PIERSON, AND WERE ALSO TESTIFYING TO SECURE**
**THE QUID-PRO-QUO ATTORNEYS FEES OF $59,000THAT JUDGE**
**LEVIE AWARDED STUART PIERSON AND HIS LAW FIRM, AND**

**THAT JUDGE REVIE THEN THREATEN TO PUNISH THE APPELLANT IF THE APPELLANT DID NOT PAY THE FRAUDULENTLY SECURED ATTORNEY'S FEES AWARDED STUART PIERSON WHO HAD A PROBONO AGREEMENT WITH THE DCCA AT ALL TIMES RELEVANT**

Judge Judith Retchin, thereafter, in the case of *Bell v. Banks,* ordered the appellant to either submit to discovery, regarding CUPL and Hogan & Hartson's attempt to coerce the appellant to waive his right under the 5th Amendment, by submitting responsive responses to discovery of plaintiff's former clients represented by Hogan & Hartson, as a condition for being allowed to defend against these clients on the basis of statute of limitations.  Most of these plaintiffs were represented by the appellant some seven years prior to the bringing of the suit and the statute of limitations applied.  **See** Motion to Dismiss and Answer to the complaint filed by the appellant. **See** Motion to Recuse Judge Judith Retchin.

**CUPL'S COLLABORATION WITH OTHER AGENCIES TO BAR THE APPELLANT FROM PRACTICING BEFORE THEM NATIONWIDE**

The DCBar and the DCCA, pursuant to DC App. R. 49 implied speech restrictions, and through their agents, employees James Schaller, Stuart Pierson and Committee On Unauthorized Practice of Law, used the commingled judicial powers and authority of the DCCA[3] and administrative agencies of the District of Columbia Government,[4] and the United States Equal Employment Opportunity Commission, to

---

994, referencing that he had met with approximately 15 people who are on the "interested persons list" in matter known as "In re Simon Banks 92-SP-652

[3] The DCCA, at all times relevant through CUPL, functioned as the lobbyist, the investigator, the prosecutor, the disinterested designee and judge, the appellate advocate and the final arbiter.

[4] The District of Columbia Office of Employee Appeals whom hearing examiners that are licensed to practice law, classify and publish themselves as "administrative judges" although it is without dispute that their official titles are "hearing examiners"; and the District of Columbia Consumer and Regulatory Affairs, whose hearing examiners use the title "administrative law judge" although, their official position of record is "hearing examiner".  The appellant has been enjoined and jailed for allegedly using the title "administrative law judge" in connection with the appellant's former employment as "admini[5] DCCA AND

21

before administrative agencies and advertise said right. **See** App. App. 6 at 47. **See also**

App. App. 6 at 25, 25-A*, 27, 29, 57-A

On January 11, 1995 the appellant filed a complaint against Susan Buckingham

Reilly, Director U.S. Equal Employment Opportunity Commission, with the Office of

Special Counsel, complaining against her for ethical misconduct and for conspiring with

Stuart Pierson and CUPL to interfere with the appellant's contracts and contractual

relations, in retaliation against the appellant because Susan Reilly and Administrative

Judge Samuel Teitelman were previously sued by the appellant in connection with their

attempt to bar the appellant nationwide from practicing before administrative agencies of

the United States. **See** *Banks v. Teitelman, et al,*

### DCCA-CUPL LOBBIED DCRA TO HI-JACK JURISDICTION OF APPELLANT'S SPEECH AND AUTHORIZED PRACTICE SO THAT DCCA COULD INDIRECTLY REGULATE PRACTICE BEFORE ADMINISTRATIVE AGENCIES PURSUANT TO AN ALTER-EGO OF DC APP. R. 49, I.E. CPPA

Stuart Pierson, in the capacity of chairman of CUPL, in 1989 lobbied the DCRA

to manufacture jurisdiction over the appellant by through the District of Columbia

Consumer Protection Procedures Act, ("CPPA"), D.C. Code Sec. 28-3901 et seq. (1981)

by: declaring the lawyer-type services of the appellant, as the services of a merchant with

respect to the sale of goods and services.[5]  However, the lawyer-type services of license

attorneys were exempted from this jurisdictional classification by operation of the statute.

See D.C. Code § 28-3903 ©(2)©(1991.  See also, *Simon Banks v.District of Columbia*

*Department of Consumer and Regulatory Affairs, No. 91-AA-883.* (634 A.2d 433

---

DC BAR SET THE CPPA UP AS AN ALTER-EGO OF RULE 49, FOR INDIRECT REGULATORY
JURISDICTION OVER UNLICENSED PRACTITIONERS

(1993)).[15] This manipulation of the facts and statutory construction was taken from the UCC.

### DCBAR-DCCA ARBITRARY SELF-SERVING PREJUDICIAL LEGISLATING OPERATE AS A CONFLICT OF INTEREST AND DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHT TO OBJECTIVE ADJUDICATORS

Rather than continue to interpret and consistently construe the clear and

unambiguous terms of the District of Columbia Consumer Protection Procedures Act,

D.C. Code § 28-3903 ©(2)©(1991, the DCCA, **arbitrarily and inconsistently** construed

legal services of a non-attorney, [appellant] and the legal services of an attorney not

licensed in the District of Columbia, and the legal services of an attorney licensed in the

District of Columbia, by holding, in *Banks v. District of Columbia Consumer and*

*Regulatory Affairs, No. 91-AA-883 and Banks v. Consumer & Regulatory Affairs, 634,*

*A.2d 433 (D.C. App. 1993),* as follows:   **(Consistent with delegating to DCRA that**

**which the DCCA lacked jurisdiction of, i.e. authorized unlicensed practice before**

**administrative agencies of the United States)** (See also Appendix 32-33 of Dr. Simon

Banks, t/a Job Protectors Former Administrative law Judges, Petition for Writ of

Certiorari, No. 93-2002 [5/2/94], which provide:

> **This court also exercises some authority over the**
> **unauthorized practice of law by non-lawyers, see D.C. App.**
> **R. 49, but there is no statutory or other authority to the**
> **effect that our power over the unauthorized practice of law**
> **is exclusive. Although the Consumer Protection Procedures**
> **Act excludes from its purview the "professional services of**
> **…lawyers," D.C. Code § 28-3903 ©(2)©(1991), there is no**
> **statutory purport to practice law. Nor do the Act's**
> **prohibitions against deceptive trade practices interfere with**
> **this court's authority to regulate the practice of law. We see**
> **no reason, therefore, why the Act should not apply to non-**
> **lawyers who purport to practice law.**

23

does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services." D.C. Code § 3901 (a)(6)(1991). "Goods and services: are defined as "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer service of all types." D.C. Code § 3901 (a)(7)(1991). <u>We agree with DCRA that the performance of legal service is an act that "make[s] available," or "provide[s] information about," a service []" that is part[] of the economic output of society." The performance of legal services, therefore, is a "trade practice" under the Act.</u> [Emphasis Added]??????????????

Because the DCCA, while legislating in collaboration with the DC Bar, and DCCA was the motivator of the regulatory-taking plan and was prepared to ratify any such selective classification and jurisdictional authority over the appellant, for the specific purpose of enforcing the implied speech restrictions DCCA inferred exist in Rule 49 through the DCRA-CPPA, and the appellant's authorized federal administrative practice, the appellant, at all times relevant, was suffered prejudice to his due process and equal protection constitutional rights and was left without a remedy. Further, because the DCCA lack oversight, the appellant has been and will continue to be unconstitutionally deprived of a fair trial, due process and equal protection of the laws. The Courts have construed such judicial legislating as an impermissible abuse of discretion and authority.[6] The appellant was left without a remedy.

The DCCA, further committed error when it, from 1989-91 to the present when it used its undisclosed and secret-selective rulemaking and legislative powers to enforce

---

[6] The Supreme Court in <u>Codispoti v. Pennsylvania</u>, 418 U.S. 506 (1974),[6] cautioned and admonished the judiciary to avoid substituting the judicial measures of community preferences for that of the legislature. **See** <u>Blanton v City of North Las Vegas</u>, 489 U.S. 538, 541.

restrictions of that DCRA inferred existed in the Consumer Protection Procedures Act,

[CPPA] D.C. Code §28-3901(a)(6), §28-3903(c)(2)(C), § 28-3901(a)(6), §28-3904(a),

(b) and (d) (1991), and DCRA's selective interpretation of the appellant's lawyer-type-

legal services as that of a "merchant".  This classification and arbitrary construction was

designed on its face to selectively enforce DC App. R. 49 through the  D.C. Consumer

Protection Procedures Act. **See Order M-198-96, Part © Exceptions at Page3**

**¶©(1(&2(a-b), and Pp3¶(5)(A-C), (App. App. 5 at 3)** and **See also Pp18 of said**

**Order.  (Dec. 9, 1997)** – in violation of the appellant's constitutional rights to due

process, equal protection and a fair trial.

In this new Order, **Order M-198-96,** supra, the DCCA characterize the services

that CPPA's exemption for attorneys refers to as **"Legal Services."**  However,

inconsistently, for purposes of dressing up the appellant as a **"merchant"** in order to

place the appellant under the umbrella of the District of Columbia Consumer and

Regulatory Affairs Agency, and its Consumer Protection Procedures Act, the DCCA

along with its collaborator, Donald Sheehee, Esq., labeled the appellant's **legal-lawyer-**

**type services** as that of a **"Merchant** that deals in the sale of "goods" and "services"

connected with the sale of goods. **See Webster, and the Uniform Commercial Code**

**for the definition of a "merchant".**[7]

---

strative law judge and hearing examiner" although the appellant was certified by the District of Columbia Government as an "administrative law judge."

1. [7] **BLACK'S LAW DICTIONARY, Fifth Edition,** Pp890, defines the term **"merchant"** as: **"One who is engaged in the purchase and sale of goods; a trafficker; a retailer a trader.  Term commonly refers to person who purchases goods at wholesale for resale at retail;** i.e. person who operates a retail business (retailer).

The DCCA acknowledges that the services in question performed by the

appellant are <u>lawyer-type services</u> referenced in CPPA's exemption. <u>See</u> D.C. Code

§ 28-3903 ©(2)©(1991 However, the DCCA and the DC Bar, in their continuing act of

regulating the appellant out of business, engaged in a self-serving conclusive

presumption, for self-serving prejudicial reasons, and to steer the outcome, **adopted the**

**labels and characterization of hearing examiner Olga Clegg**, [classified as an

administrative law judge by DCCA], **by arbitrarily distinguishing between the**

<u>**professional services of a licensed lawyer**</u> and the <u>**professional services of a non-**</u>

<u>**licensed advocate, authorized and licensed by federal laws to practice before federal**</u>

<u>**administrative agencies and the administrative agencies of the District of Columbia**</u>

**[Emphasis Added]** The distinctions of DCCA and of Olga Clegg [hearing examiner for

DCRA are arbitrary and lacking statutory support and with out support of stare decisis.

Moreover, this construction slaps the rules governing statutory construction in the face.

In addition, the DCCA adopted the practice of **hearing examiner Olga Clegg** of

referring, arbitrarily and through a predisposition of negative conclusive presumptions, to

the professional services of the appellant and the appellant's class, in a demeaning

manner, again without record support.  <u>See</u> DCCA's **Order M-198-96, at 17¶s1-3 (Dec.**

**9, 1997).  (Glenard N. Hodges, the complainant terminated the services of appellant**

**within days subsequent to the appellant being retained, so <u>there exist no record</u>**

<u>**evidence for the hearing examiner to evaluate the appellant's professional services.**</u>

---

**A person who deals in goods of a kind or otherwise by his occupation holds**
**himself out as having knowledge or skill peculiar to the practices or goods involved**
**in the transaction or to whom such knowledge or skill may be attributed by his**
**employment of an agent or broker or other intermediary who by his occupation**
**holds himself out as having such knowledge or skill.  <u>U.C.C. §2-104(1)</u>**

Moreover, <u>Olga Clegg, hearing examiner</u> [classified as an administrative law judge by the DCCA] was severely criticized for issuing a bald decision that is not supported by the record.  <u>See</u> blistering dissent and rebuke of Judge Schwelb and Judge Steadman, *Banks v. Consumer & Regulatory Affairs,* <u>634 A.2d 433</u> (1988).

The DCCA, in its legislating and delegation of jurisdictional authority to the DCRA, the jurisdictional authority of which the DCCA acknowledge that it does not have pursuant to *Sperry v. Florida, <u>supra,</u>* opines at **Order M-198-96, at 17¶s1-3 (Dec. 9, 1997),** as follows:

> **Where a member of the public correctly understands that a person is not admitted to the District of Columbia Bar but is nonetheless offering to perform services functionally equivalent to those performed by a lawyer, that person is subject to sanction under the Consumer Protection Statutes of the District of Columbia.**

### FOR 15 YEARS THE DCCA WAS LEGISLATING RATHER THAN ADJUDICATING AND DURING THIS LEGISLATING PROCESS THE APPELLANT WAS DEPRIVED OF CONSTITUTIONAL RIGHTS

There is no doubt that the DCCA was legislating rather than adjudicating and doing so, as an advocate in collaboration with the DC Bar and its attempt to manufacture jurisdiction over the appellant and the appellant's class, for purposes of regulating the appellant and the appellant's class out of the marketplace through arbitrary implied speech restrictions implied in DC App. R. 49 and implied in the Consumer Protection Procedures Act, **D.C. Code § 28-3903 ©(2)©(1991, et seq.**, and selectively enforced against the appellant.  This form of judicial legislating usurps the legislative authority of the Congress and the District of Columbia Council.[8]

27

**BY NOT TAKING ANY ACTION AGAINST PIERSON CUPL
DCCA CONDONED THE USE OF ITS STATIONERY
AND THE DISSEMINATION OF ITS OPINION AND
DECISIONS IN *SIMON BANKS V. DISTRICT OF COLUMBIA
CONSUMER AND REGULATORY AFFAIRS, 91-AA-883
ON DECEMBER 8, 1993, DECIDED DECEMBER 6, 1993,BY
AND THROUGH ITS ATTORNEY AND EMPLOYEE,
STUART PIERSON AND PIERSON'S "INTERESTED
PERSON'S LIST, CONTAINING THE NAMES AND
ADDRESSESS OF DESIGNATED WITNESSES TO
THE MAY 9, 1994 HEARING, RESULTING IN
ORDER NO. 18, 92-BG-652, JANUARY 13, 1995,
IN RE SIMON BANKS, WHICH ORDERED THE APPELLANT
NOT TO STATE THAT HE PROVIDES NATIONWIDE
SERVICES OR TO INDICATE THAT THE SERVICES
APPELLANT PROVIDES IS FUNCTIONALLY
EQUIVALENT TO THE SERVICES OF ANY ATTORNEY***

**DCCA's wrongs against the appellant continues.  \*\*\*\*  through its actions**

**To use its decision in *In Re Banks, 561 A.2d 158 (D.C. 1987)* and its decision in**

**DCRA Case No. OAD 91-007-1 and  its decision in 91-AA-883, December 6, 1993 as**

**Magnets and artifices to influence the appellant's clients and prospective clients to**

**file complaints with CUPL and the DCRA,  against the appellant as a prelude to**

**being awarded treble damages promised by Stuart Pierson to individuals, listed on**

**Stuart Pierson's Interested Person's List.  The promise required the promisees to**

**breach their respective contracts with the appellant.  Because of  judicial immunity**

**this was done with impunity and notwithstanding the appellant's clearly established**

**rights that a reasonable person would know simply because Stuart Pierson and**

**CUPL are immune and DCCA has no oversight**

With respect to the above-referenced conspiracy to bribe witnesses in return for

their favorable testimony against the appellant,  Stuart Pierson through the use of the

stationery of the District of Columbia Court of Appeals, contacted and communicated

28

various states of the United States, seeking to influence them to file complaints against

the appellant with the District of Columbia Consumer and Regulatory Affairs, upon the

promise of treble damages. Stuart Pierson's December 8, 1993 letter attaching the

decision of the DCCA was transmitted to the appellant's clients, prior to the appellant

being in receipt of the Court's new ruling in 91-AA-883 (*Banks v. Consumer &*

*Regulatory Affairs, 634 A.2d 433 (D.C. App 1993).* <u>See</u> Dr. Simon Banks, t/a Job

Protectors Former Administrative Law Judges, Petition for Writ of Certiorari, at AAP51-

A1, (<u>See</u> *In Re Simon Banks (1992) No. 92-SP-652,* **filed Aug. 5, 1994,** pleading entitled

*Newly Discovered Evidence In Support of: Simon Banks' Emergency Motion En Banc*

*For Stay of Proceedings Pending Disposition of Petition For Writ of Mandamus*

*Before the Supreme Court Filed on July 11, 1994,* <u>attached at Tab 4</u> to pleading

<u>**Exhibit 1**</u> entitled: *Simon Banks' Response to Statement of Stuart Pierson that he did*

*Not Tamper With the Witnesses Whom Testified At the May 9, 1994 Contempt*

*Proceedings.*), which provide: (witnesses on interested person's list)

---

District of Columbia Court of Appeals
Committee on Unauthorized Practice of Law
500 Indiana Avenue, N.W. – Room 4200
Washington, D.C. 20001
(202) 879-2777

      December 8, 1993

C. Roger Cooper
4713 Dunbarton Drive
Orlando, FL 32817-3133

Dear Mr. Cooper:

On December 6, 1993, the District of Columbia Court of Appeals handed down a decision which may be of additional interest to you concerning your complaint against Simon Banks. This does not relate to the contempt proceedings against Mr. Banks that is scheduled for hearing January 18, 1994.

In the case of <u>Banks v. District of Columbia Department of Consumer and Regulatory Affairs</u>, No. 91-AA-883 (DCCA, December 6, 1993), the Court held that members of the public like you may recover money paid to people like Banks who solicit the money on the basis of a misrepresentation that they are the functional equivalent of a lawyer.

Specifically, the Court held that people who pay money to Simon Banks believing that he is the functional equivalent of a lawyer, and rely on such descriptions as "administrative advocate," may recover the payments if the services were not performed. A complaint must be submitted to the D.C. Department of Consumer and Regulatory Affairs, and that agency must agree to order the recovery.

A copy of the Court's Decision is attached for your information.

If you wish to contact the District of Columbia Department of Consumer and Regulatory Affairs, you may contact their Consumer Protection Division at 614 H Street, N.W., Washington, D.C. (202/727-7080).

C. Roger Cooper
December 8, 1993
Page 2

If you should have any questions concerning this matter, you may contact information at the District of Columbia Department of Consumer and Regulatory Affairs (202) 727-7000).

Very Truly Yours

Stuart F. Pierson
Chair

| | |
|---|---|
| Jimmie Pratt | Shirley Stewart |
| 882 Walutes Circle | 1601 Society Court |
| Alexandria, VA 22300 | Herndon, VA 22070 |
| Tel: (703) 799-6690 | Tele®703) 471-1450 |
| FAX:(703) 360-7908 | FAX:(703) 709-8170 |

# TITLE VII OUTREACH, INC.

## "WE'RE THE ONE YOU COME TO, WHEN YOU WANT TO FIGHT CITY HALL

### Persons Interested in Filing a Class Action Against Simon Banks/Job Protectors, Inc.
### RE:  Update on Simon Banks' Class Action Suit—Free Initial Consultation

**June 13, 1994**

**Dear Interested Persons:**

I have spoken to the Barrymore and Loots Law Firm, located in Washington Metropolitan area, who wants to set up a meeting of interested persons.  Mr. Barrymore is willing to meet on a Saturday or week day evening andwe have agreed on the following date and time:  June 28th at 6:30 p.m. Persons interested should contact either individual above, as soon as possible. If you are interested but unable to meet on this date, please contact us to let us know.

We have a candidate for Mayor of Wash., D.C.  Our campaign is informational.  We Will be seeking redress of issues important to victims of Simon Banks, EEOC and other Agencies or private companies.  Our candidate is a victim, himself.  We will be registering Voters in D.C. and P.G. County, MD.  And Virginia and conducting other political activities including fund raising and protests in the near future. Participation on your behalf is Necessary in order to bring Mr. Banks to justice.

The Committee on Unauthorized Practices of Law has laid the groundwork.  Now, We, as victims, must come together.

**Yours in the Struggle**

Cc:  Sen. Paul Simon
U.S. Rep. Leslie Byrne
Sen. John Glenn
Dept. of Consumer Regulatory Affairs
J. Barrymore

**Allied with:  ALL People's Congress, Whistleblower's Alliance, Judicial Alliance, Jobs Is A Right, Corp., R.A.M.B.R.O., Inc.**

---

**(Envelope)**

Title V11 Outreach
**Jimmie Pratt/Shirley A. Stewart**
882 Walutes Circle
Alexandria, VA 22309

C. Roger Cooper
4713 Dunbarton Drive
Orlando, FL 32817-3133

The above-referenced was submitted to each proposed May 9, 1994 witness to the proceedings resulting in Order No. 18, January 13, 1995, *In re Simon Banks 92-BG-652,* **for purposes of surreptiously violating the Rule on Witnesses and for purposes of tampering with witnesses directly and indirectly, thereby depriving the appellant of a fair trial.** *The above-reference and the letters submitted to "Interested Persons" on Pierson's "Interested Persons' List" constitute the payoff of bribes for testimony given at the May 9, 1994 proceedings. This "Interested Person's List was first initiated on December 8, 1993, one day subsequent to the DCCA's Ruling in Banks v. Consumer and Regulatory Affairs, No. 91-AA-883 (Dec. 6, 1993)* **See Pierson's letter to C. Roger Cooper, Dec. 8, 1993 which attached the decision of DCCA *supra./infra.* as well as a list of "interested persons" on the "Interested Persons' list".**

Rather than wait to be sued by Stuart Pierson'group, the appellant, in a pre-emptive strike, after receiving the above-referenced from C. Roger Coooper, sued the the conspirators and their attorneys, *See Dr. Simon Banks v. Barrymore & Loots, C.A. No. 94-00985. **See Pp1-10 (App. App. 36, at 1-10)*** of "Simon Banks' Opposition to Committee's Motion for Injunction Prohibiting Retaliation and Intimidation against witnesses. And pursuant to the payoff bribery, Stuart Pierson and CUPL influenced the lawfirm of Hogan & Hartson, to replace Barrymore & Loots, in representing the appellant's former clients whom conspired to bring a class-action complaint against appellant.

The DCCA's February 23, 1994-witness- tampering- list at Exhibit 2 **where the DCCA stigmatize the appellant as practicing law without a license by representing**

*parties before administrative agencies or which do not require a license to consel*

*persons that DCCA used the Court's stationary and authority to recruit as complainants*

*and as advocates against the appellant, and which Stuart Pierson generated a list to*

*indicate "numerosity of complainants, to influence prospective witnesses and to*

*disseminate the names of the appellant's clients to others to use against the appellant:*

**provides:**

---

*DISTRICT OF COLUMBIA COURT OF APPEALS*
*COMMITTEE ON UNAUTHORIZED PRACTICE OF LAW*
*500 INDIANA AVENUE, N.W. – ROOM 4200*
*WASHINGTON, D.C. 20001*
*[202] 879-2777*

*February 23, 1994*

**Re:  In re Simon Banks (1992). D.C.C.A. No. 92-SP-652**

"Dear Interested Persons:

The Federal District Court has rejected Simon Banks' attempt to delay this contempt proceeding further by remanding all of his claims and objections back to District of Columbia Court of Appeals.

The hearing on the District of Columbia Court of Appeals' order to show cause Why Mr. Banks should not be held in contempt for violating that Court's 1987 injunction **against his unauthorized practice of law** will be heard before D.C. Superior Court Judge Richard A. Levie. (hearing was subsequent rescheduled for May 9, 1994)

Judge Levie will probably set a hearing date in March 1994.  When that date is set we will advise you.

Robert Draton
1712 I Street, N.W.
Washington, D.C. 20001

Jane Harris
3 Briars Knoll Way
Hanover, Md 21076

Gary A. Evans
6629 Chestnue Avenue
New Carollton, MD 20784

William R. Henderson
1501 Ray Road, Apt. 301
Hyattsville, MD 20782

33

Apt. 310
1009 Chuillum Road

2620 Rhode Island Avenue, N.E.
Washington, D.C. 20013

Robert Falcone
3200 Perry Street
Mount Rainier, MD 20712

Frank L. Hinton
13 Freedom Court
Portsmouth, VA 23701

Russell E. Flinn
12805 Bay Drive
Lusby, MD 20657

Regina Hinton
13 Freedom Court
Portsmouth, VA 23701

Pamela J. Fraizier
6810 Red Top Road
Takoma Park, MD 20912

Reginald I. Holt
Apartment 33
1025 Fifth Street, S.E.
Washington, D.C. 20003

Stephen Gregory, Esq.
111 14th Street, N.W.
Washington, D.C. 20005

Elizabeth L. Hunter
12336 Quiet Owl Lane
Bowie, MD 20720

Sonja B. Hall
1913 Treetop Lane, Apt. 33
Silver Spring, MD 20904

Gayle James
3809 V Street, S.E.
Washington, D.C. 20028

---

2

---

*PERSONS INTERESTED IN THE SHOW CAUSE HEARING RE SIMON BANKS*
*PAGE 2*
*February 23, 1994*

Richard Beverly, Esq.
Ann F. Melchoir
Maria L. Johnson, Esq.
LaVerne H. King
Casandra Webb
Donna Wyatt
Jane Harris
Vivian Reese
Lovie L. Robinson
Brenda Berkley
Robert Falcone
LaTonya S. Sills
Irene Walker
Carl D. McAllister

will submit post-hearing information on other people who have complained about Mr. Banks' **unauthorized practice of law.**[9]

As stated, we will advise you of the specific date, time and place of the hearing when it is set.

If you have any questions, do not hesitate to contact Stuart F. Pierson, Chair, c/o The Committee (202/879-2713).

Very Truly yours,

Stuart F. Pierson
Chair"

Alafe Ola. Adeymi
10903 Sunflower Court
Mitchellville, MD 20716

William A. Bransford
Richard A. Moore
Shaw, Bransford & O'Rourke
815 Connecticut Avenue, N.W.
Washington, D.C. 20006

Phillip Alexander
3218 Loud Place, S.E.
Washington, D.C. 20019

Michael Brock
6802 Westchester Court
Camp Springs, MD 20748

Leroy J. Appel
114 Glyndon Drive
Reisterstown, MD 21136-2009

N. Onita Brown
5427 13th Street, N.W.
Washington, D.C. 20011-1862

Marko W. Bell
9214 Allenswood Road
Randallstown, MD 21133

James C. Clemmons, Jr.
1802 Wetherbee Circle, Apt. 1802

Charles E. Berkley
320 Thelma Avenue
Glen Burnie, MD 21061

Vernon Cline
4800 Kirkdale Drive
Woodbridge, VA 31705

Brenda Berkley
320 Thelma Avneue
Glen Burnie, MD 21061

Cameal Cockrell
P.O. Box 8312
Temple Hills, MD 20748

Richard Beverly, Esq.
General Counsel

C. Roger Cooper
4713 Dunbarton Drive

---

voting rights are within Congress' power to enforce the Fourteenth and <u>Fifteenth Amendments</u>, despite the burdens those measures placed on the states.
[9]. **(The DCCA preconcluding prior to trial that the appellant committed unauthorized practice of law by representing parties before administrative agencies that do not require a license to practice law.)**

Government of the District of Columbia
Suite 303
415 12th Street, N.W.
Washington, D.C. 20004

Robert J. Dawson
Apt. 104
1401 Tuckerman Street, N.W.
Washington, D.C. 20011

George W. Jenkins
3048 Memory Lane
Silver Spring, MD 20904

Carl D. McAllister
1936 Fourth Street, N.E.
Washington, D.C. 20002

Maria L. Johnson, Esq.
420 Oklahoma Avenue, N.E.
Washington, D.C. 20002

Arthur A. McRavin
c/o Brenda C. McRavin
1100 Kingsdale Court
Bowie, MD 20721

Malachi Jones
213 Varnum Street
Washington, D.C. 20002

Ann F. Melchoir
c/o Susan Spielberg, Esq.
Assistant Bar Counsel
Virginia State Bar
8 and Main Building
707 East Main Street
Suite 1500

Harry J. Jordan
Jordan, McFadden, Bunce & Flint
Suite 802
1140 Connecticut Avenue, N.W.
Washington, D.C. 20036

Howard C. Kang
4925 Backlick Road
Annandale, VA 22003

Lorraine Peterkin
Apt. 4
4869 St. Barnabas Road
Temple Hills MD 20748

Astra King
168 Azalea Court
Upper Marlboro, MD 20772

Vivian Reese
Apt. 12
4911 C Street, S.E.
Washington, D.C. 20019

Laverne H. King
4600 13th Street, N.W.
Washington, D.C. 20011

Lovie L. Robinson
1234 Massachusetts Avenue, N.W.
Washington, D.C. 20005-4541

Lawrence Mann
705 Upshur Street, N.W.
Washington, D.C. 20011

Raymond Rusten
4301 23rd Parkway
Temple Hills, MD 20748

36

Viola E. Sally
Apt. 201
7322 Lee Highway
Falls Church, VA 22046

Valerie White
4726 15th Street, N.W.
Washington, D.C. 20011

LaTonya S. Sills
7013 Groveton Drive
Clinton, MD 20735

Robert M. Wilson
5510 Paxford Court
Fairfax, VA 22032-4007

Constance Solice
7108 Muir Drive
Fort Washington, MD 20744

Ruth N. Wilson
9117 Grandhaven Avenue
Upper Marlboro, MD 20072

James Surles
Route 2
Box 163-B2
Newton Grove, NC 28366

Katherine Witherspoon
Apt. 101
3226 Swann Road
Suitland, MD 20746

Bennie Derrick Vaughn
12400 Lytton Avenue
Brandywine, MD 20613

Donna Wyatt
5031 7th Street, N.W.
Washington, D.C. 20011

Irene Walker
Apt. V-540
201 I Street, S.W.
Washington, D.C. 20024

Robert L. Washington
P.O. Box 4564
Albany, GA 31706

Cassandraa Webb
849 48th Street, N.E.
Washington, D.C. 20019

---

The DCCA's March 11, 1994- witness-tampering **"Persons Interested In The Show Cause Hearing Re Simon Banks" List,** is at:  See *In Re Simon Banks (1992) No. 92-SP-652,* **filed Aug. 5, 1994,** pleading entitled *Newly Discovered Evidence In Support of: Simon Banks' Emergency Motion En Banc For Stay of Proceedings Pending Disposition of Petition For Writ of Mandamus Before the Supreme Court Filed on July 11, 1994,* <u>attached at Tab 4</u> to pleading <u>**Exhibit 3**</u> entitled: *Simon Banks' Response to*

*Statement of Simon Banks on the Handwritten Paper of Dr. Dores Who Testified At the May 9, 1994 Contempt Proceedings*, provides:

DISTRICT OF COLUMBIA COURT OF APPEALS
COMMITTEE ON UNAUTHORIZED PRACTICE OF LAW
500 INDIANA AVNEUE, N.W. – ROOM 4200
WASHINGTON, D.C. 20001
(202) 879-2777

*March 11, 1994*

<u>PERSONS INTERESTED IN THE SHOW CAUSE HEARING RE SIMON BANKS</u>

**Re: <u>In re Simon Banks (1992), D.C.C.A. No. 92-SP-652</u>**

Dear Interested Persons:

The hearing on the District of Columbia Court of Appeals' order to show cause why Mr. Banks should not be held in contempt for violating that Court's 1987 injunction against <u>his unauthorized practice of law</u>[1] will be heard before D.C. Superior Court Judge Richard A. Levie. The hearing will be held on May 9, 1994 AT 9:30 A.M. in Courtroom 516 in the Moultrie Courthouse located at 500 Indiana Avenue, N.W., Washington, D.C.

As you may know, Judge Levie has restricted the number of witnesses which this Committee may put on against Mr. Banks. The witnesses will present are:

Richard Beverly, Esq.
Ann F. Melchoir
Marie L. Johnson, Esq.
Laverne H. King
Cassandra Webb
Donna Wyatt
Sonja B. Hall
Jane Harris
Vivian Reese
Lovie L. Robinson
Brenda Berkley
Robert Falcone
LaTonya S. Sills
Irene Walker
Carl D. McAllister
Prosecutorial misconduct both
Shirley Stewart witness tampering

*PERSONS INTERESTED IN THE SHOW CAUSE HEARING RE: SIMON BANKS*

*March 11, 1994*

**All other interested persons may, however, attend and observe the hearing.**
We will **submit** post-hearing information on other people <u>who have complained about</u>
<u>Mr. Banks' unauthorized practice of law.</u>[1].

Members of the Committee who will be presenting the case against Simon Banks
will contact the witnesses listed above within three (3) weeks before the date of the
hearing.

If you have any questions, do not hesitate to contact Stuart F. Pierson, Chair, c/o
The Committee (202/879-2713).

Very truly yours,

Stuart F. Pierson
Chair"

---

### DCCA-CUPL WITNESS TAMPERING**
<u>THERE CAN BE NO DISPUTE THAT EACH OF THE WITNESSES
CALLED TO TESTIFY AT THE MAY 9, 1994 HEARING IN *IN RE
SIMON BANKS*, 92-BG-652 AND/OR 92-SP-652, WERE TESTIFYING
IN EFFORT TO SECURE TREBLE DAMAGES PROMISED BY
STUART PIERSON, AND WERE ALSO TESTIFYING TO SECURE
THE QUID-PRO-QUO ATTORNEYS FEES OF $59,000 THAT JUDGE
LEVIE AWARDED STUART PIERSON AND HIS LAW FIRM, AND
THAT JUDGE LEVIE THEN THREATEN TO PUNISH THE
APPELLANT IF THE APPELLANT DID NOT PAY THE
FRAUDULENTLY SECURED ATTORNEY'S FEES
AWARDED STUART PIERSON WHO HAD A PROBONO
AGREEMENT WITH THE DCCA AT ALL TIMES RELEVANT</u>

Judge Judith Retchin, thereafter, in the case of *Bell v. Banks,* ordered the

appellant to either submit to discovery, regarding CUPL and Hogan & Hartson's attempt

to coerce the appellant to waive his right under the 5th Amendment, by submitting

---

nclusive presumption and judicial predisposition of the case by the Court of Appeals before the case is tried by Superior Court Judge
Richard A. Levie

[11] Again, without a hearing and prior to the appellant being afforded a hearing, the District of Columbia Court of Appeals has issued a
conclusive presumption and predisposition of the trial, holding that the appellant had committed unauthorized practice of law by
representing parties before administrative agencies, and by engaging in speech which DC App. R. 49 implies violate Rule 49, coupled
with the statement994, referencing that he had met with approximately 15 people who are on the "interested
persons list" in matter known as "In re Simon Banks 92-SP-652

Hartson, as a condition for being allowed to defend against these clients on the basis of statute of limitations. Most of these plaintiffs were represented by the appellant some seven years prior to the bringing of the suit and the statute of limitations applied. **See** Motion to Dismiss and Answer to the complaint filed by the appellant. **See** Motion to Recuse Judge Judith Retchin.

## CUPL'S COLLABORATION WITH OTHER AGENCIES TO BAR THE APPELLANT FROM PRACTICING BEFORE THEM NATIONWIDE

The DCBar and the DCCA, pursuant to DC App. R. 49 implied speech restrictions, and through their agents, employees James Schaller, Stuart Pierson and Committee On Unauthorized Practice of Law, used the commingled judicial powers and authority of the DCCA[12] and administrative agencies of the District of Columbia Government,[13] and the United States Equal Employment Opportunity Commission, to

---

UPL, functioned as the lobbyist, the investigator, the prosecutor, the disinterested designee and judge, the appellate advocate and the final arbiter.

[13] The District of Columbia Office of Employee Appeals whom hearing examiners that are licensed to practice law, classify and publish themselves as "administrative judges" although it is without dispute that their official titles are "hearing examiners"; and the District of Columbia Consumer and Regulatory Affairs, whose hearing examiners  use the title "administrative law judge" although, their official position of record is "hearing examiner".  The appellant has been enjoined and jailed for allegedly using the title "administrative law judge" in connection with the appellant's former employment as "admini

before administrative agencies and advertise said right. **See** App. App. 6 at 47. **See also**

App. App. 6 at 25, 25-A*,  27, 29, 57-A

**Dr. Simon Banks**
**P.O. Box 17052**
**Alexandria, Virginia 22302**


### CERTIFICATE OF SERVICE

 I, hereby certify that a copy of this motion was mailed, postage prepaid this 22ND day of February, 2001 to:

John R. Fisher, Esq.
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20001

Charles L. Reishel, Esq.
Deputy Corporation Counsel
441 Fourth Street, N.W.
Washington, D.C. 20001

Committee On Unauthorized
Practice of Law
500 Indiana Avenue, N.W.
Washington, D.C. 20001

Dr. Simon Banks
P.O. Box 17052
Alexandria, Virginia 22302

## IN THE DISTRICT OF COLUMBIA
## COURT OF APPEALS

Nos. 97-SP-1761 and 97-SP-1762

IN RE: SIMON BANKS,                          92-BG-652

                      Appellant

      And

Nos. 96-SP-817, 97-S--1629 and 97-SP-1760

IN RE: SIMON BANKS,

                                    SP1038-96
                    Appellant        94-BG-114

**APPELLANT'S MOTION FOR AN ORDER
DIRECTING STUART PIERSON AND THE
DISTRICT OF COLUMBIA COURT OF APPEALS
COMMITTEE ON UNAUTHORIZED PRACTICE OF LAW
TO PROVIDE THE APPELLANT WITH A COPY
OF EXHIBITS 1 THROUGH 40, IN IN RE: SIMON
BANKS, 92-BG-652, AND TO PROVIDE THE APPELLANT
A COPY OF ALL EXHIBITS THAT WERE SUBMITTED INTO
EVIDENCE AND WITHDRAWN BY CUPL BECAUSE OF
IMPROPER LACK OF FOUNDATION ON MAY 9, 1994
AND TO PROVIDE
COURT OF APPEALS CLERK, BROOKS WITH
A COPY OF ALL EXHIBITS THAT WERE
SUPPOSED TO BE RETAINED BY THE
COURT, ALTHOUGH NEITHER
THE JUDGE NOR THE CLERK'S OFFICE
RETAINED AN UNTAINTED COPY OF
THESE EXHIBITS, PREJUDICIAL TO
THE CHAIN-OF-CUSTODY AND TO
THE INTEGRITY OF THESE RECORDS**

Comes now the appellant and motion this Honorable Court for an order directing

Stuart Pierson and the District of Columbia Court of Appeals Committee On

Unauthorized Practice of Law [hereinafter "CUPL"] to provide the appellant with a copy

of exhibits 1 through 40, in In Re: Simon Banks, 92-BG-652, and to provide the appellant

With a copy of all exhibits that were submitted into evidence and withdrawn by CUPL

because of improper lack of foundation on May 9, 1994; and to provide

court of appeals clerk, Brooks with a copy of all exhibits that were **supposed to be retained**

by the court, although neither the judge nor the clerk's office retained an untainted copy

ofthese exhibits, prejudicial to the chain-of-custody and to the integrity of these records.

In support of the motion the appellant cites the following:

1.  **THE MISSING EXHIBITS ARE EVIDENCE OF PERJURY,
    SUBORNATION OF PERJURY AND IMPEACH EACH WITNESS'
    TESTIMONY.**

2.  The appellant recently inquired of Judge Richard A. Levie's office as to
    the whereabouts of these official records and was advised that the Judge
    did not have a copy of these exhibits, and the appellant was directed to Mr.
    Brooks and to Mr. Pierson.

3.  The appellant inquired of the DCCA' designated custodian of the records
    in the disciplinary matters regarding the appellant, Mr. Brooks of the
    DCCA, and was advised by Mr. Brooks that he did not have these
    exhibits, that he never seen these exhibits.  Subsequent to speaking with
    Mr. Brooks on the 7th of February, Mr. Brooks advised the appellant on
    the 8th of February again that he did not have these exhibits for which he is
    the designated custodian for and, however, that he has a copy of a
    document that says that the appellant received a copy.  The transcript of

had some exhibits in open court, that was placed on the table designated

for the respondent, but the respondent, now the appellant, did not attend

the hearing.

4. The appellant never received a copy of any of these exhibits that were

marked and submitted into evidence. The record does not properly

identify or describe the exhibits that were entered into evidence on the

record.

5. Each of the witnesses called by the Court, CUPL, testified in unison, that

they thought the appellant was a licensed member of the bar and would

represent them in a court of law, notwithstanding the indisputable fact that

each signed receipts, retainer agreements, contracts, and disclosure

statements, acknowledging that they were made aware that the appellant is

not licensed to practice law, and that if they decided to take their case to

court that they would have to retain a licensed member of the bar in the

jurisdiction where they wished to file any civil complaint.

6. The appellant has never known of any witness or former client that was

prepared by Mr. Pierson to state that the acknowledgement he/she signed,

made them aware that the appellant is not licensed to practice law and

would not and could not represent them in a court of law, but that all

representations provided would be before administrative agencies that do

not require a license to practice law. Instead, each witness and former

client prepared by Stuart Pierson and co-conspirators, all repeat the same

statement, that notwithstanding their execution of these disclosures and acknowledgements, they each believed that the appellant was an attorney licensed to practice law in the District of Columbia, because the appellant either told them or indiated that he was a former administrative law judge. Now, President Harry S. Truman was a former Court Judge. He never went to Law School or to College.

7.      This is the reason why the appellant has to continue to turn this type of corruption over to the FBI and to the various United States Committees on the Judiciary, the Senate and Congressional Governmental Affairs, and the various Appropriation Committees, and the General Accounting Office (GAO) because the appellant cannot get a fair trial.

8.      Stuart Pierson and others operating in concert with him, has placed false statement, and conclusions in each witness head, and asked them to adopt the false statements and conclusions, in unison, that no matter what the facts are, no matter what they signed or acknowledged, that all each of them have to do is repeat: "Because the appellant stated or indicated that he is a former "administrative law judge" made me believe and continue to believe that he is licensed to practice law in the Courts of the District of Columbia."

9.      On May 9, 1994, witness Carl McAllister, testified that the appellant promised him that he had a 100 percent chance of winning his case and that the appellant would represent him for a jury in a court of law. The Judge Levie ordered Mr. Pierson to withdraw the exhibit he was <u>allegedly</u>

Judge could stomach **Mr. McAllister's Outright, blatant perjury**, so a scenario of submission and withdrawal was the order of the day, with particular emphasis on documents that wholly impeached the testimony of these perjurers.

10. Because of the appellant's inability to receive a fair trial, or to secure any investigation of these blatant perjurious sworn testimonies, and any investigation into subornation of perjury, the appellant has faxed and mailed a copy of each of these disclosure statements to the Attorney General, the Director of the Federal Bureau of Investigation and to every member of Congress, and over the weekend, each and every member of the United States Senate will receive a fax containing the disclosure statements, receipts, and retainer agreements, signed by the witnesses prepared by Stuart Pierson and CUPL, requesting Congress assistance in bringing this matter to light, and aiding the appellant in receiving a fair hearing.

### THE APPELLANT'S APPEAL AND RIGHT TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS ARE SEVERELY PREJUDICED AS A RESULT OF THE SUPPRESSION AND TAINTING OF THE TRIAL EXHIBITS BY STUART PIERSON CUPL, AND THE OMISSION OF THE CUSTODIAN OF THE RECORDS

11. The appellant's appeal and right to substantive and procedural due process rights are severely prejudiced as a result of the suppression and tainting of trial exhibits by Stuart Pierson, CUPL and the omission of the custodian of

the records, Mr. Brooks, to retain and maintain the integrity of the chain-
of-custody of official records.

12.　The clerk's office has left Stuart Pierson, now a non-special employee of

the DCCA, in the capacity of custodian of the records in *In Re Simon*

*Banks, 92-BG-652, May 9, 1994 (resulting in Order No. 18, Jan. 13, 1995,*

92-BG-652, notwithstanding the fact that the appellant has filed

complaints against Stuart Pierson for:

a)　subornation of perjury,
b)　birbery,
c)　witness tampering,
d)　ethical misconduct,
e)　breach of fiduciary responsibility,
f)　conspiracy to deprive of civil rights,
g)　making false statements to a Superior Court Judge;
h)　conspiracy to maintain and perpetuate a monopoly,
i)　tortuous interference with contracts and contractual relations;
j)　conspiracy to violate civil rights,
k)　racketeering and violation of the RICO Act;
l)　conspiracy to influence government officials to violate their oath
　　of office and to make fraudulent statements;
m)　using official position for personal and private gain;
n)　using the stationary of the DCCA to influence complaints, to
　　influence the filing of a class-action complaint, i.e. Banks vs.
　　Barrymore & Loots, et al, Bell v. Banks, et al;
o)　Invasion of Privacy,
p)　Unlawful contact with the press,
q)　Using official position and stationery of the Court to lobby for
　　restrictive rules and regulations, designed to crush competition
　　against the DC Bar, in violation of Sections 2, and 1 of the
　　Sherman Act, and the District of Columbia Antitrust Act;
r)　Conspiring and using official position to regulate interstate
　　commerce, et cetera.

13.　The actions of Stuart Pierson and CUPL in retaining the custody and

control of the official filings in a case where the CUPL is an opposing party, constitute a

conflict of interest and an interference with the administration and operation of the

official duties of the Court.   Moreover, the actions of Stuart Pierson and CUPL of interfering with the chain of custody of official pleadings, are violative of conflict of interest and ethical laws governing employees of the Court. The conduct of Clerks and employees of the DCCA, affording prejudicial treatment with respect to official duties, violate Executive Order 11222 prescribing standards of ethical conduct for government officers and employees.  **See Section 202 of Title 18 of the United states Code.**

The conduct of employees of the DCCA prejudicial to the administration of justice and with respect to official duties, is violative of the **District of Columbia Comprehensive Merit Personnel Act of 1978, D.C. Law 2-139.  See Chap. 18 of Employee Conduct**.

The Employees of DCCA, CUPL, and Stuart Pierson, are/were general and/or are designated as special government employees subject to and govern by:.

Chapter 18 of  D.C. Law 2-139 provides:

**Special Government Employee –**

> a person or officer on the rolls of the District of Columbia Government who is retained, designated, appointed, or employed to perform, with or without compensation, for a period of time not to exceed 130 days during any period of three hundred sixty-five consecutive days, temporary duties either on a full-time or intermittent basis.

**Section 1801.1 provides:**

> Employees of the District Government shall at all times maintain a high level of ethical conduct in connection with the performance of official duties, and shall refrain from taking, ordering or participating in any official action which would adversely afect the confidence of

the public in the integrity of the District Government.

**Section 1801.2 provides:**

> The maintenance of unusually high standards of honesty, integrity, impartiality, and conduct by District employees and special district employees is essential to assure the proper performance of the government business and maintenance of confidence by citizens in their government. The avoidance of misconduct and conflicts of interest on the part of employees is indispensable to the maintenance of these standards. To accord with these concepts, this sets forth the regulations prescribing standards of conduct and the requirements for reporting outside employment and financial interest for District Government employees.

**Section 1804.1 provides:**

> An employee or special government employee shall avoid action, whether or not specifically prohibited by this chapter which might result in, or create the appearance of:
> a)  Using public office for private gain
> b)  Giving preferential treatment to any person
> c)  Impeding government efficiency or economy
> d)  Losing complete independence or impartiality,
> e)  Making a government decision outside official channels; or
> f)  Effecting adversely the confidence of the public in the integrity of government

13.  The appellant incorporate by reference appellant's motion to hold Rosana Mason in contempt of Court.

**The appellant incorporate by reference:**

> " Appellant's notice of filing objection to the clerk's office deliberately mismailing orders of the court to the Appellant's previous address for purposes of protecting court of

Appellant's motion for contempt, causing
the Appellant to be deprived of notice of
the court's denial of the motion and thereby
depriving the Appellant of his due process right
to appeal the cover-up of Rosana Mason's action
of causing Appellant's appeal of In Re Simon Banks
92-BG-652, Order No. 19, Jan. 13, 1995, to be
erroneously dismissed and not reinstated
until November, 1998.

### And

Appellant's objection to the clerk's office identifying Rosana Mason as "rm" on the court's docket sheet, thereby disguising Rosana Mason's identity and providing her **with special cover-up and discriminatory treatment from the manner that the appellant and other Black persons have been treated, because she is white, and because she is an employee of DCCA, a clear conflict of interest."**

14. The appellant further incorporate by reference the Appellant's motion to hold Rosana Mason in Contempt of Court .

15. The appellant further incorporate by reference the Appellant's motion to hold Court of Appeals Staff Attorney Rosana Mason in contempt of Court.

16. The appellant incorporate by reference appellant's motion to hold Thomas Zeno in contempt of Court.

17. The appellant incorporate by reference appellant's motion that the court appoint the FBI to investigate Stuart Pierson and CUPL.

**WHEREFORE,** the appellant request that the motion be granted and that Stuart Pierson and CUPL, provide the court with a full and complete statement of the whereabouts of these exhibits during the period May 9, 1994 to the present, and in whom/who's possession these exhibits 1 through 40, and the trial exhibits, were in. Who had custody and control of these exhibits?

_(signature)_

Simon Banks, J.D., pro se
P.O. Box 17052
Alexandria, Virginia 22302

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading was mailed, postage prepaid, hand-delivered, this 11th day of February, 2000, to:

John R. Fisher, Esq.
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.c. 20001

Charles L. Reischel, Esq.
Deputy Corporation Counsel
441 Fourth Street, N.W.
Washington, D.C. 20001

Committee on Unauthorized Practice of Law
500 Indiana Avenue, N.W.
Washington, D.C. 20001

Simon Banks, J.D., pro se
P.O. Box 17052
Alexandria, Virginia 22302

**JOB PROTECTORS, INC.**
**CONSULTING FIRM**
**468 M STREET, S.E.**
**WASHINGTON, D.C. 20024**
**[202] 554-5627**

DATE:   September 1, 1992


## RECEIPT FOR CONSULTANT CONSULTATION


TO:      Carl McAllister


**Nature of Services Rendered**   Payment on Account


AMOUNT: $ *Three Hundred fifty (350.00)*


_For Dr. Simon Banks, Juris Doctor/Job Protectors_


I, CARL McALLISTER acknowledge that I have been advised that **Simon Banks/Job Protectors**, will not provide any representation service before any court and that all consultant services provided will be limited to administrative agencies of the United States and of the various States of the United States.


x *Carl McAllister*