**DISTRICT OF COLUMBIA**
**COURT OF APPEALS**

In Re Simon Banks                    D.C.C.A. No. 02-BG-1374
                                     Defendant's Collateral Attack upon
                                     The imposition of the sentence
                                     computation
                                     (J. Kramer, sitting by Designation)

                                     April 12, 2006

**RULE 27 DISCLOSURE**
**Defendant was unable to secure the government's response to whether or not it objects to the filing of this motion.  The government has not responded regarding this motion.**

**DEFENDANT'S EMERGENCY MOTION FOR RELEASE AND TO CORRECT SENTENCE PURSUANT TO D.C. CODE § 23-110 (1996), DC CODE § 16-1901 (1989) AND/OR IN THE ALTERNATIVE EMERGENCY MOTION FOR MANDAMUS DIRECTING THE DEPARTMENT OF CORRECTIONS TO RELEASE THE DEFENDANT AND/OR IN THE ALTERNATIVE INJUNCTIVE RELIEF ENJOINING THE DC DEPARTMENT OF CORRECTIONS, TEMPORARILY, PRELIMINARILY AND PERMANENTLY FROM FAILING TO RELEASE THE DEFENDANT**

Comes now, Simon Banks, Defendant herein and submit Emergency Motion for Release and to Correct Sentence pursuant to DC Code § 23-110 (1996) DC Code § 16-1901 (1989) and/or in the Alternative Emergency Motion for Mandamus directing the Department of Corrections to Release the Defendant and/or in the Alternative Injunctive Relief enjoining the DC Department of Corrections, Temporarily, Preliminarily and Permanently from Failing to Release the Defendant.

In support of the motion (s) the defendant cites the following:

1.  The defendant is a prisoner in custody under sentence of the Superior Court (acting on behalf of the District of Columbia Court of Appeals) who has a right to be released upon the grounds:
    (a)  The sentence was imposed, in whole and in part, in violation of the Constitution of the United States, the Laws of the District of Columbia and State of Virginia,

(b) The Court was without jurisdiction to impose the sentence,

(c) The sentence was in excess of the maximum authorized by law,

(d) The sentence is otherwise subject to collateral attack.

2. The DC Department of Corrections erroneously computed defendant's release date as October 2, 2006 as opposed to April 7, 2006 and/or April 8, 2006. The defendant was on loan to Alexandria, Virginia after the defendant's District of Columbia sentence had already commenced. See 18 U.S.C. § 3568. See *Crawford v. Delbert C. Jackson*, 191 U.S. App. DC 170. The defendant was entitled to receive credit for the six months he spent in Alexandria, Virginia, while on loan to Virginia. The defendant has been unduly prejudiced by the act of the Department of Corrections of interrupting defendant's sentence which the defendant has already commenced serving when it loaned the defendant to Alexandria, Virginia without crediting the time the defendant spent in Alexandria against the DC sentence of which the defendant was serving.

**CLEARLY ESTABLISHED LAWS OF THE UNITED STATES PREEMPT RULE 49 AND ORDER 18**

3. The Court enforcement of Rule 49, and specifically Rule 49 (c) (4) as well as Order 18, 92-BG 652, January 13, 1995, and its Injunction conflict with the laws of the United States that authorize the defendant's practice. These federal administrative agencies, nationwide, do not require federal practitioners to possess a state bar license as a condition for practicing before them and their administrative judges.[1] **The defendant is entitled to refer to**

---

[1] 1. Amongst the clearly established laws that preempt conflicting state laws and rules, pursuant to the Supremacy Clause, Article VI, Cl. 2, and *Sperry v. the state of Florida*, 373 U.S. 379 (1963), and which provide for the defendant's federal rights to practice before administrative agencies of the United States that do not require a license to practice law, include, but are not limited to:

    a) 29 C.F.R. § 1614.106, 29 C.F.R. §1614

    b) EEOC Management Directive 110 (MD-110)

    c) 5 U.S.C. § 1201

    d) 5 U.S.C. § 2302

    e) 42 U.S.C. § 2000 e, Title 7 VII of the 1964 Civil Rights Act

    f) Federal Employees Compensation Act (FECA) United States Department of Labor

    g) EEOC Policies, Practices and Procedures Manual

    h) United States Merit Systems Protection Board Policies, Practices and Procedures Manual

    i) Department of Defense EEO Manual, Policies, Practices and Procedures

    j) The Civil Service Reform Act of 1978 as amended

    k) Section 717 of the Civil Rights Act of 1964

2. Amongst the laws providing for equal civil rights with the defendant cannot and is unable to enforce in the state of the Courts of Virginia are:

    a) The right to represent and serve as the representative of aggrieved federal employees of the United States before administrative agencies of the United States in contested cases involving discrimination in federal employment, section 717 of the Civil Rights Act of 1964.

    b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e, et seq.

**the titles Administrative Law Judge and Hearing Examiner as interchangeable.**

The defendant is entitled to refer to the titles "Administrative Law Judge" and "Hearing Examiner" as interchangeable in the District of Columbia and before the United State Government.[2]

---

  c) 28 U.S.C. § 1343
  d) 42 U.S.C. 1991
  e) 42 U.S.C. 1981,
  f) As set forth in paragraph 4 a-k hereof

[2] **PROOF OF INTERCHANGEABLILITY OF THE TITLES "HEARING EXAMINER" AND "ADMINISTRATIVE LAW JUDGE" IN THE DISTRICT OF COLUMBIA AND THROUGHOUT THE UNITED STATES**

1. The United States Supreme Court stated that the titles "Hearing Examiner" and Administrative Law Judge" are interchangeable, i.e. one in the same. *See Butz v. Economu 438 U.S. 478 (1978).*

2. On February 21, 1980 the Defendant/Banks was certified by the District of Columbia Government as an Administrative Law Judge and Hearing Examiner. See MBOC certificate no. 3495.

3. On January 20, 1995 the District of Columbia Consumer and Regulatory Affairs reclassified its Hearing Examiners as Administrative Law Judges pursuant to Administrative Hearings Establishment Act, DC Law 14-76 (March 6, 2002).

4. The United State Civil Service Commission changed the title "Hearing Examiner" to Administrative Law Judge" in 1972, by regulation on August 19, 1972, 37 F.2d Reg. 1687, and by statute March 27, 1978, 5 U.S.C. § 3105.5372.7521 (supp. IV)

5. Subsequent to the change of titles, the duties and functions essentially all remained the same. The United States Merit Systems Protection Board, the SEC, the NLRB, the FTC, the DOL, the Department of Transportation, the Civil Aeronautics Board; amongst others changed the title of their "Hearing Examiner", to Administrative Judge", an 1986, the EEOC changed the title of its Hearing Examiners to "Administrative Law Judge".

6. See Black's Law Dictionary, See Barron's Law Dictionary, for "Hearing Examiner". It will refer you to "Administrative Law Judge" and vice-versa.

7. Maria Johnson, Vice Chair of the United States Merit System Protection Board, during her hearing before the Senate Governmental Affairs Committee referred to her position with the District of Columbia Rental Accommodations Office ("ROA") of the DC Rent Commission, when and while she was a subordinate of Simon Banks, as "Hearing Examiner". See transcript of Congressional Record (1983). However in 1983, Maria Johnson, after her confirmation by the United States Senate Governmental Affairs Committee, disseminated a biographical sketch nationwide, referring to her title with the "ROA" as "Administrative Law Judge".

8. Again, when Maria Johnson left the United States Merit System Protection Board as Vice Chair when and while she was reemployed with the District of Columbia Office of Employee Appeals as a "Hearing Examiner", she and the DCCA referred to her as Administrative Law Judge."

9. In 1993 the DCCA referred to "Hearing Examiner Olga Clegg" of the District of Columbia Consumer and Regulatory Affairs as Administrative Law Judge" *See Banks v. Consumer and Regulatory Affairs, 634 A.2nd 433 (December 6, 1993) See Harsh Dissent of Judge Steadman of the DCCA.*

10. In 1995 the District of Columbia Consumer and Regulatory Affairs where Hearing Examiner Olga Clegg was asked to leave, changed the title of its "Hearing Examiners to Administrative Judges". *See DC Register, Vol. 42 No. 3 Page 397. (January 20, 1995).*

11. On November 12, 1991 the District of Columbia Office of Employee Appeals changed the title of its "Hearing Examiners" to Administrative Law Judges" by a simple memo authored by Warren Cruise, although their official title remain "Hearing Examiner", they continued to refer to themselves "administrative Judges".

12. During 1999-2002 Judge John Ferren, of the District of Columbia Court of Appeals took a temporary a sabbatical from the DCCA and assumed the position of District of Columbia

Corporation Counsel, Chief Legal Officer for the District of Columbia. While serving as Corporation Counsel and before becoming the Vice Chair of the Counsel for Court Excellence Judge Ferren caused a sole-source contract to be issued to the Counsel for Court Excellence to do a study in support of changing the title of DC agencies Hearing Examiners to Administrative Law Judges and to centralize the District of Columbia Administrative Hearings. This resulted in the "Administrative Hearings Establishment Act of 2002), DC Law 14-76 (March 6, 2002), to with: without any change in the duties and functions of District of Columbia Hearing Examiners. They were, retitled, "Administrative Law Judges with the exception that not a license to practice law is required to hold the position of "Administrative Law Judge" or "Hearing Examiner". It is now referred to as the Office Of Administrative Hearings.

13. Further, John Ferren, prior to returning to the District of Columbia Court of Appeals as a judge when and while he was one leave as DC Corporation Counsel, facilitated the change in title of District of Columbia Workman's Compensation Hearing Examiners, from "Hearing Examiners" to Administrative Law Judges". See DC Workman's Compensation change of title "Hearing Examiner to Administrative Law Judge Act, DC Law 13-229, now titled Worker's Compensation Administrative Law Judges Amendment Act of 2000 effective April 13, 2001.

14. The Honorable Norma Holloway Johnson Chief Judge of the United States District Court for the District of Columbia upon motion and request of the District of Columbia Corporation Counsel determined that "Hearing Examiner Lenox Simon of the DC Office of Adjudication, Previously RAO, was an Administrative Law Judge, entitled to judicial immunity. See Robert Lepelletier v. Sharon Pratt Kelly No. 94-245 (March 1995), citing *Butz v. Economou* Supra. Chief U.S. Judge Johnson supported Judge Annice Wagner at her confirmation hearing before the United States Senate Governmental Affairs Committee Burns' transcript of Judicial Confirmation Hearings.

**15. THERE ARE NONLAWYER JUDGES IN SOME TWENTY-SEVEN STATES**

There are nonlawyer judges in some twenty-seven states. See *North v. Russell,* 427 U.S. 328 (1976)2. In the case of *North v. Russell,* supra the Supreme Court provide:

"Article III of the United States Constitution, of course, unlike provisions of some state constitution, see, e.g., N.Y. Const. Art. 6, § 20 (a); D.Const., Art. 5, §§ 10, 25, is silent as to any requirement that judges of the United States Courts, including Justices of the Supreme Court, be lawyers or "learned in the law." We note that in excess of 95 percent of all criminal cases in England are tried before lay officers. See D. Karlen, Judicial Administration." (citing from *North v. Russell*, 427 U.S. 328 (1976)2

**NONLAWYER JUDGES IN CIVIL COURTS**

There are Nonlawyer Judges in Civil Courts see 29 N.M.L Rev. 119 (winter, 1999) at 11, 12[*143], which provides:

"Currently, four states allow Nonlawyer Judges to adjudicate civil matter where the amount in controversy is up to $2,500.00. N. 168 nine states allow Nonlawyer Judges to adjudicate civil matters where the amount in controversy is between $2,500.00 and $4,994.00 N. 69. Twelve states allow Nonlawyer Judges to adjudicate civil matters where the amount in controversy is between $5000.00 and $9,999.00. N. 170. Five states allow Nonlawyer Judges to adjudicate civil matter where the amount in controversy is [*144] between $10,000.00 and $14,999.00 N. 171. Nine states allow Nonlawyer Judges to adjudicate at least some civil matter where the amount in controversy is over $15,000.00 N. 172. The state of Washington, which allows nonlawyers to adjudicate civil cases where the amount in controversy is up to $35,000.00, has the highest civil jurisdictional limit for non-lawyer judges in the country. See 12 ¶ 4 [*145] 29 N.M.L.Rev. 119, which further provides:

"Furthermore, even though Nonlawyer Judges handle only civil cases where the amount in controversy is relatively low, they collectively adjudicated tremendous amount of litigation that goes on in our society. N. 176. Thus, Nonlawyer Judges exert a great deal of influence on individual pieces of economic resource allocation. This larger picture impact must not be ignored."

See [*142] the role of Nonlawyers Judges in Civil Justice into the Twenty-first Century.

Iowa has met the Court's wish which involved debt collection of large debts collection companies, corporate defendants, credit stores where skilled lawyers represent debt collection companies [*150] at 14 29 N.M.L.Rev. 119.

At 17 the "importance of a law degree, [which Banks has] to the ability to serve as a judge [*156] N. 241.

In *Butz v. Economou*, 438 U.S. 478, at 513 (1978) the Supreme Court opined:

4.  During the trial of the case the defendant raised the issue of lack personal jurisdiction based upon,

    (a)  The Government Contacts Exception,

    (b)  Lack of jurisdiction in connection with the telephone call Dianne Eickman made from the District of Columbia to the defendant in the State of Virginia,

    (c)  Lack of jurisdiction based upon defendant's interaction with Anthony Thompson,

    (d)  Lack of jurisdiction based upon pleadings submitted to the United States Department of Education located in the District of Columbia and because there was no testimony from any employee of the United States Department of Education who testified that it received the letter and that acceptance into evidence of the letter referenced by the government based upon hearsay, violated the defendant's rights pursuant to the Confrontation Clause; [3]

    (e)  That the defendant's advertisement in the Federal Times, Army Times and Navy Times, located in the State of Virginia and distributed nationally and internationally to employees of the United States Government, did not form a basis for jurisdiction (see Government Contacts Exception),

    (f)  In that Rule 49-Order 18, requiring the defendant to state in advertisement, stationery, document that the defendant was trading as Job Protectors, when the defendant was trading as Judge Banks' Group, and requiring the defendant to state that he was not authorized to render any opinion on anyone's legal rights, was preempted by the Supremacy Clause.  See *Sperry v. State of Florida*, 373 U.S. 379 (1963),

    (g)  And that Rule 49 – Order 18 conflicted with the defendant's rights under the laws of the United States which authorized the defendant's practice and defendant's related conduct in connection with defendant's practice out of an office located in the State of Virginia. (See footnote setting forth the laws of the United States that authorize the defendant's practice which preempt Rule 49-Order 18;

    (h)  The defendant's telephone call-forwarding telephone number located in cyberspace which automatically call forwarded to defendant's telephone number in the State of Virginia cannot and does not afford jurisdiction upon the District of Columbia Courts over the defendant,

    (i)  And that defendant's listing of business and telephone number located in the State of Virginia, is authorized by the defendant's business

---

"There can be little doubt that the role of the modern federal Hearing Examiner or Administrative Law Judge within this framework is "functionally comparable" to that of a judge.  His powers are often, if not generally, comparable to a trial judge; he may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions.  More importantly, the process of agency adjudication is currently structured so as to assure that Hearing Examiners exercises his independent judgment on evidence before him, free from pressures by the parties or other officials within the agency."

[3] See *Crawford v. Washington*, 541 US at 38, 124  S.Ct. at 1357.  U.S. Const. Amend VI

license and rights under the laws of the State of Virginia which
preempt the DC Court Rule 49- Order 18 Injunction as well as such
Injunction is outside the territorial jurisdiction of District of Columbia
Courts and District of Columbia Code.  See Defendant's
Memorandum and Supplemental Memorandum on Jurisdiction, and

(j)  And defendant's advertisement in radio station which broadcast in
Maryland, Virginia, and the District of Columbia is protected by the
Commerce Clause and the Supremacy Clause.

**ALL CONTACT ACTIONS ALLEGED BY THE GOVERNMENT AGAINST
THE DEFENDANT AS HAVING OCCURRED IN THE DISTRICT OF
COLUMBIA WERE BEFORE ADMINISTRATIVE AGENCIES OF THE
UNITED STATES**

5.  All contact actions alleged by the government against the defendant as having
occurred in the District of Columbia were before Administrative Agencies of
the United States in connection with the exercise of clearly established rights
afforded defendant by the laws of the United States that authorize defendant's
practice of law before Administrative Agencies of the United States.  ***Id.***

6.  The Court failed to provide defendant counsel at sentencing, and the Court
erred when it did not inquire of defendant whether defendant wished to have
counsel appointed and available at sentencing given the fact that defendant's
position changed drastically when defendant was stepped back and
incarcerated on April 8, 2004, without prior notice and held in the custody of
Department of Corrections until June 3, 2004, the date of sentencing.  This
error violated defendant's Constitutional Right pursuant to the Sixth
Amendment of the Constitution, the Right to Counsel.  Because of the sua
sponte arrest on April 8, 2004 and the Summary Proceedings on June 3, 2004,
the defendant was unable to bring this claim at trial.  The defendant never
waived right to counsel.  Moreover, the extent of inquiry before accepting a
waiver of counsel at sentencing the Court never engaged in pursuant to the
requirement of *Von Moltke v. Gillies*, 332 U.S. 708 (1948), *Moore v.
Michigan*, 355 U.S. 155 (1957); *Robins v. United States*, 404 U.S. 1049 (1972
dissenting opinion). See also *Boyd v. Dutton*, 405 U.S. (1972).  See also *Iowa
v. Tovar*, 541 U.S. --, 124 S.Ct. 1379 (2004).

7.  While the defendant did argue that the Court's enforcement of the Injunction,
Order 18, requiring that defendant must state falsely that he was trading as
"Job Protectors" when defendant was not, defendant was trading as "Judge
Banks' Group", this was in conflict with the truth, the evidence and the facts.
However, defendant did not articulate specifically that the Order was void for
vagueness.  Defendant did argue that defendant was misled into believing the
Order was conflicted when the truth was unenforceable because it conflicted
with the truth.  Defendant did not argue that the Order, however, violated Rule

52, and nevertheless ought to be allowed to argue it in the present scenario and context of the instant motion.

## THE INJUNCTION, ORDER 18, IS FOR VAGUENESS AND VIOLATES RULE 65 (D)

The Injunction, Rule 49-Order 18, 92-BG-652, is void for vagueness and violates Super. Ct. Rule 65 (d) and Rule 52, requiring adequate Findings of Fact and Conclusions of Law, where Order 18 requires the defendant to state he is practicing as "Job Protectors", which conflicts with overwhelming evidence of the record that defendant, at all times relevant, was trading as "Judge Banks' Group."  The government failed to establish on the record specific facts supporting the presumed allegations that defendant was trading as "Job Protectors."  Moreover, the evidence is indisputable that the government presented evidence that the defendant was trading as "Judge Banks' Group".

The Injunction is further void for vagueness where it precludes that the defendant from stating that he is authorized to render any decision on any person's legal rights.  The Order 18, lacks specificity and is violative of Rule 52 where it is presumed to preclude "legal opinions" in the sense of "legal opinions" rather than engaging, interpreting and enforcing legal rights based upon the general authority that the laws of the United States authorized representatives of employees of the United States in contested cases before Administrative Agencies of the United States.  As the Supreme Court noted in *Schmidt v. Lessard,* 94 S.Ct. 713, 414 U.S. 473 (1974):

> The specificity provisions of Rule 65 (d) are no mere technical requirements.  The rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree to be understood.[4]

> "[A nonspecific decree] leaves them open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and later

---

[4] Prevent uncertainty. *Id.* 94 S.Ct. at § 15, 414 U.S. at 476, citing Wright & Miller.

find themselves subject to punishment for contempt." *B & C Trucking Leasing, Inc. v. ICC*, C.A. Tent, 1960, 283 F.2d. 163, 167. See Also, *Robinson v. Coopwood*, DC 292 F.Supp. 926, 934, (D.C. Miss (1968), affirmed per curiam C.A. 5th 1969, 415 F.2d. 1377; *U.S. v. Weffers*, 435 F.2d. 826 (1970) (ineffectual).

8.  The defendant's actions, at all times relevant, are protected by the "Government Contact Exception" which preempt the Courts of the District of Columbia exercise of personal jurisdiction over the defendant. See Defendant's Supplemental Memorandum on Jurisdiction.

### THE GOVERNMENT CONTACT EXCEPTION PREEMPTS THE COURT JURISDICTION OVER THE DEFENDANT IN CONNECTION WITH THE DEFENDANT'S CONTACTS WITH THE UNITED STATES GOVERNMENT

"Entry into the District of Columbia by nonresidents for purposes of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction" *Environmental Research Int'l, Inc. v. Lockwood Green Eng'rs., Inc*., 355 A.2d 808, 813 (D.C. 1976) (en banc.) The rationale for this exception. The **Government Contacts Exception** has been upheld and cited in the following cases: "The District of Columbia Court of Appeals has stated repeatedly that the jurisdictional reach of DC Code § 13-423 is coextensive with the Due Process Clause. *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d. 79, 80 (DC 1979), and 521 F.Supp. 142 Supra, the Court cites Judge Ferren in the conclusion reached by the District of Columbia Court of Appeals in *Rose v. Silver*, 394 A.2d. 1368 (DC 1978). Judge Ferren first distinguished *Environmental Research International Inc. v. Lockwood Green Engineers, Inc.,* 355 A.2d. at 812, which held that the end-state acts of an "independent contractor" could not be attributed to the nonresident for jurisdictional purposes. Judge Ferren reasoned that Due Process would permit such attribution because "(t)he unilateral activity of those whom claim some relationship with a nonresident defendant cannot satisfy the requirements of a contact with a forum state." 394 A.2d. at 1370 quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). See also *Islamic Atlantic*

*Relief Agency v. Unidentified FBI Agents*, 394 F.Supp. 2d 34, *2005 U.P.S. Dist. LEXUS 21570. At 58 the United States District Court for the District of Columbia provide "…it is well settled that this Court cannot assert jurisdiction over an individual defendant based upon his actions taking pursuant to his employment. See, e.g., *Ali v. District of Columbia*, 349 U.S. App. D.C. 327, 278 F.3d.1, 7 (DC Cir. 2002). The Court has opined that "this so-called government "contacts" principle first was articulated in *Mueller Brass Co. v. Alexander Milburn Co*., 80 U.S. App. D.C. 274, 152 F.2d. 142 (1945).

## SPECIFIC JURISDICTION UNDER DC CODE § 13-423 "TRANSACTING BUSINESS"

In *Gonzalez v. Internacional De Elevadores*, 2006 DC App LEXIS 21, [HN7] the DC Court of Appeals, provide:

> We conducted an extensive analysis of the history of section 13-423 (a) (1) and (b) in *Shopper's Food Warehouse v. Moreno*, 746 A.2d. 320, 324-330 (DC 2000) citing *Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d. 808, 810-811 (DC 1976) (en banc) …. In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend "traditional notions of fair play and substantial justice." *Shopper's*, 746 A.2d. at 330 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). **Hence the defendant must have "purposefully directed" [ips] activities at residents of the forum …."** *Shoppers*, 746 A.2d and 331….**This means that the non-resident defendant's "conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there."** World-wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)… **Random isolated and fortuitous contacts cannot constitute transacted business in the District of Columbia**. *Shopper's Food Warehouse*, 746 A.2d. at 327. .. **[Hn9] the Mere existence of a contract between a foreign corporation and local residents is not enough to establish minimum contacts sufficient to satisfy due process**.) See *Kumeyaay Tribal Coalition v. United States*, 2000 U.S. LEXIS 7269, at 22 (citing *United States v. Ferrara*, Supra, *Rose v. Silver*, 394 A.2d. 1368, 1370 (DC 1978), *Environmental Research Int'l Inc.* v. *Lockwood Green Engineers, Inc.,* 355 A.2d. 808, 813 (DC 1976). See also *Sea Lift Inc. v. Refinadora Costarricense de Petroleo*, SA, 792 F.2d. 989, 993 (11th Cir. 1986). See *United States v. Ferrar*, 311 U.S. App. DC (1995), LEXIS 311 U.S. App. DC 421 at [HN7], the Court provide: 'The

scope of the otherwise broad" transacting any business" clause of the District of Columbia Long Arm Statute, DC Code Ann. § 13-423 (a) (1), is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction.  See [Hn3]"Minimum Contacts" analysis … "DC Code Ann. § 13-423 (1981…with limited exceptions, the codes' "transacting any business" clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause.  *Hummel v. Koehler*, 458 A.2d. 1187, 1190 (DC App. 1983); see also *Reuber v. United States*, 242 U.S. App. DC 370, 750 F.2d. 1039, 1050 n. 13 (DC Cir. 1984) citing *World-Wide Volkwagon Corp*., v. Woodson, 444 U.S. 286, 297 (1980).

At 843, [HN7] the Court opined …"This single, responsive mailing cannot constitute meaningful" contact**, *Burger King*, 471 U.S. at 472, or "substantial connection between the defendant and the forum state, *McGee v. Int'l Life Ins.* (1951)" [HN7] "The scope of its otherwise broad "transacting any business" clause is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction.  *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs.,* Inc. 355 A.2d. 808, 813 (DC App. 1976) en banc.

### THE GOVERNMENT MUST ESTABLISH JURISDICTION OVER THE PERSON

The Court in *United States v. Ferrara*, 54 F.3d. at 833, 1995 U.S. App. LEXIS 11789 at 24 opined:

"…the government must nevertheless establish the District Court's jurisdiction over her person." (citing *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d. 24, 29 (1st Cir. 1988); see also *Edmond v. U.S. Postal Serv. Gen. Counsel*, 292 U.S. App. DC 240 (DC Cir. 1991).

### THE GOVERNMENT FAILED TO SHOW REGULARLY DOING BUSINESS OR PERSISTANT COURSE OF CONDUCT SUFFICIENT TO SATISFY § 13-423 (A) (4)

The United States Court of Appeals for the District of Columbia Circuit has held in *McFarland v. Esquire Magazine*, 74 F.3d at 1301, (citing *Keton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984), *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d. 44, 52 (2nd Cir. 1991), 'If regularly' and 'persistent' are to have any meaning, sale of two articles to district-based publications over a career in journalism cannot amount to 'regularly doing

business or to a' persistent course of conduct…. We agree with the District Court that

McFarland failed to show contacts between Unger and District satisfying § 13-423 (a)(4).

### SUBMITTING AN ARTICLE THAT IS PUBLISHED THROUGHOUT THE NATION DOES NOT CONSTITUTE DOING OR SOLICITING BUSINESS OR ENGAGING IN A PERSISTENT COURSE OF CONDUCT

The Court in *McFarland v. Esquire Magazine*, 316 U.S. App. DC at 1301, has

opined that "writing an article for a publication that is circulated throughout the nation,

including the District, hardly constitutes doing or soliciting business, or engaging in a

persistent course of conduct, with the District."  The writer is not the publisher; *Unger's*

contacts must be accessed separately."  See *Keeton v. Hustler Magazine*, 465 U.S. 770,

781 n.13 (1984).  Accordingly, the government cannot establish jurisdiction over the

defendant through the defendant's advertisement in the Federal Times, a nationwide and

international publication, located in the State of Virginia nor can the government

establish jurisdiction over the defendant in connection with the defendant's listing of his

Virginia business telephone number and co-forwarded number that forwards call

automatically from a call center in New York to the defendant's Virginia-based business.

Nor can jurisdiction be established over the defendant by virtue of the defendant's listing

of his Virginia based business in the tri-state telephone book as Virginia based business.

### THE CONTACTS DOCTRINE PRECLUDES THE CONDUCT OF DIANNE EICKMAN AS A BASIS FOR JURISDICTION

Dianne Eickman, Government Investigator and witness for the government, called

defendant from DC to a telephone number in Virginia in *Baish* the defendant called into

DC from outside of DC.  Moreover, Eickman's conduct constitutes entrapment and thus

must be excluded.  The Court erred when it determined that it had jurisdiction with

respect to Count III in connection with the testimony of Eickman.  At 53 Tr the defendant

elicited testimony from Eickman that she instituted or initiated a telephone call to 703-575-8487 which is located in Virginia from office located in the District of Columbia.[5]

During Dianne Eickman's discussion with the defendant Eickman did not state that she was calling from the District of Columbia she merely stated that as the record reflects that she worked at a federal administrative agency located in the District of Columbia she never gave the telephone number that she was calling from so the defendant had no knowledge where she was calling from.

### DEFENDANT, A RESIDENT OF THE STATE OF VIRGINIA FROM MARCH 1987 TO THE PRESENT, WAS AUTHORIZED BY THE LAWS OF VIRGINIA WHICH PREEMPT RULE 49 ORDER 18

The defendant, at all times relevant, was a citizen of the State of Virginia from March 1987 to the present, and was licensed to do business in the State of Virginia under the title "Judge Banks' Group", defendant was authorized by the laws of the State of Virginia to practice before Administrative Agencies of the United States and to exercise any right authorized by Administrative Agencies of the United States, *id.*  See Virginia Code UPC 9-1, UPC 9-2, UPC 9-3, UPC 9-5, UPC 9-7.  See also, *Duncan v. Garrett*, Cin Re Tanksley, 174 Bankr W. D. VA. (1994).[6]

---

[5] The Trial Court provides on *U.S. v. Baish*, 460 A.2d. 38 (DC 1983) to show it has personal jurisdiction over the defendant for Count III.  In *Baish* was outside the District of Columbia called a person located inside of the District of Columbia.  *U.S. v. Baish*, 460 A.2d 38, 40 (DC 1983) the facts of these two cases are not near identical.  See also page 6 of decision of U.S. Judge Royce Lambert in *Simon Banks v. Smith*, 1: 04 01-00903 (7-8-2005) dismissing Petition for Writ of Habeas Corpus without prejudice and so holding.

[6] **UNAUTHORIZED PRACTICE CONSIDERATIONS**

At 411-442 of rules of the Supreme Court of Va. Pt. 6, § 1.  Rule 9, it provides:  UPC 9-1, - Representing another before an administrative agency normally constitutes the practice of law.

UPC 9-2 – Regulation of the practice of law before federal administrative agencies is the responsibility of Congress.  When Congress grants authority to an agency to prescribe regulations governing the recognition and conduct of a person representing the interest of another before such agency, the State is preempted from enforcing its own rules of practice while such person is acting reasonably within the scope of the practice authorized by the agency.  As to rules of practice before Virginia administrative agencies see Unauthorized Practice Rule 1, Practice Before Tribunals.

UPC 9-5, - The privilege of practicing before most federal administrative agencies is not restricted to lawyers.  The Federal Administrative Procedure Act grants to an individual who is a member in good

**DIANNE EICKMAN, GOVERNMENT WITNESS, CALLED BANKS FROM A LOCATION IN THE DISTRICT OF COLUMBIA TO BANKS LOCATED IN THE STATE OF VIRGINIA**

The "Trial Court relies on *US v. Baish*, 460 A.2d. 38 (DC1983) to show it has personal jurisdiction over defendant for Count III. In *Baish* the defendant who was outside of the District of Columbia called a person located inside of the District of Columbia. *US v. Baish*, 460 A.2d. 338, 40 (DC 1983) the facts of these two cases are not near identical". See also page 6 of decision of U.S. Judge Royce Lamberth *In Simon Banks v. Smith*, 1:04 01-00903 (7-8-2005) dismissing Petition for Writ of Habeas Corpus without prejudice and so holding that the petitioner stated a cause of action.

**ENTRAPMENT BY ESTOPPEL**

With respect to Counts I, II, III and IV, the defendant is entitled to be exonerated pursuant to the Doctrine of "Entrapment by Estoppel".[7] The defendant reasonably believes that his Virginia Citizenship, his Virginia-based licensed business, his Virginia-

---

standing of the Bar of the highest court of any state an initial right to represent others before any federal agency; but if such person is not duly licensed or authorized to practice law in Virginia or has not obtained the requisite revenue license required by § 85-371 of the Code of Virginia, he is subject to the same rules as a non-lawyer when his activities in Virginia extend beyond the scope of the practice authorized by the federal agency.

UPC 9-7….The Virginia State Bar recognizes that certain nonlawyers may be authorized to practice before federal immigration agency. However, nonlawyers who are not so authorized are limited to providing assistance to an alien resident for such limited services as translation of documents, and assistance in the transcription of documents or answers provided by the alien, for a fee commensurate within such limited services.

See *Duncan v. Garrett* (In re *Tanksley*), 174 *Bankr*. 434 (*Bankr*. W.D. Va. 1994)

UPC 9-3 Normally, a person authorized to practice before an administrative agency may give advice to others informing them of their rights and obligations as to matters pending before, to be presented to or otherwise within the jurisdiction of such agency; prepare applications, exhibits and other documents as required by such agency in the submission of matters to it and in the performance of its regulatory functions; appear before such agency at any hearing, formal or informal, within Virginia and, as otherwise permitted by such agency, represent the interests of others before such agency, including filing motions and briefs, cross-examining witnesses, and making oral arguments as to matters of law; and hold himself out as qualified to perform such services before such agency within the scope of the agency license.

[7] The defense of "Entrapment by Estoppel" permits acquittal when defendant was reasonably mistaken and and of the belief that his activity was authorized by government. *U.S. v. Nevile*, 82 F.3d. 750, rehearing and suggestion for rehearing denied, Certiorari denied 117 S.Ct. 49, *U.S. v. Dumlao*, 1999 WEST LAW 756182.

based practice, authorized by the State of Virginia, *id*; the laws of the United States, *id* and the laws of the District of Columbia, Amended Rule 49, Order M-498-96, *id* and the "Government Contact Exception", the Interstate Commerce Clause, rendered defendant's practices activities legal.

## MANDAMUS IS THE PROPER MEANS TO
## CHALLENGE AN ON-GOING WRONG

The Supreme Court " has frequently recognized that its jurisdiction is not necessarily defeated by the practical termination of a contest which is short lived by nature. If the underlying dispute is capable of repetition, yet evading review, it is not moot." *Richmond Newspaper, Inc. v. Virginia*, 448 U.S. 555, 563 (1980). See *In Re Times World Corp.*, 7 VA App. 317, 323 – 24 (1998). "[M] andamus rather than appeal is the proper means to challenge the closure order in a pending criminal trial. *In Re Worrells Enters, Inc.*, 14 VA App. 671, 375 (1992).

## DEFENDANT WILL BE PREJUDICED AND DAMAGED
## IN WAYS NOT CORRECTABLE ON APPEAL

Defendant has shown that he will be damaged or prejudiced in ways not correctable on appeal. Should mandamus not issue there exists manifest disregard of the laws of the state, the rules of the court and stare decisis. See *U.S. v. Young*, 424 F.3d.499

## THE GOVERNMENT SHOWED NO INJURY

Anthony Thompson never testified he was injured by any act of defendant. At n5, *id*. At 9, *id* to establish personal jurisdiction under DC Code § 13-423 (a) (3) or § 13-423 (a) (4) the plaintiff must show that he suffered a torturous injury in the District of Columbia. [*19]. Alvin Milton could not show an injury because he was not a client or prospective client of defendant, nor did he contract with defendant and never received or

was provided any service by the defendant, period, in the District of Columbia or else where.

"**The Equal Protection Clause** of the [Fifth] Amendment Commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382 (1982).

### FIFTH AMENDMENT AND EQUAL PROTECTION

"The *Fifth Amendment* provides that no person may "be deprived of life, liberty, or property, without due process of law." *U.S. Const. Amend V.* "The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976) [*49] (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965)). "Procedural Due Process rules are meant to protect persons not from deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042 (1978). "Due Process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471 at 481, 92 S.Ct. 2593 (1972).

The actions of the government operate to deprive the defendant of the liberty of practicing law before Administrative Agencies of the United States where no state bar license is required, and to engage in a calling. See *Board of Regents State College v. Roth*, 408 U.S. 564, 578; *Meyer v. Nebraska*, 262 U.S. 390, 399. See *Najera v. Gabbert*, 526 U.S. 286, at 292, 119 S.Ct. 1296 (1999). In *Schare v. Board of Fire Examiners of*

*N.M.*, 353, U.S. 232, 238-239, 77 S.Ct. 752 (1957) the Supreme Court said that a state cannot exclude a person from the practice of law that contravenes the Due Process Clause.  (Citing from *Najera v. Gabbert*, 526 U.S. 292 (1999).

Moreover, the defendant's speech and conduct is protected by the Free Speech Clause.  See *Florida Bar v. Went for it, Inc*., 115 S.Ct. 2371 (1995).  The enforcement of DC Court of App. Rule 49 and the Order 18 Injunction, its underpinning, conflicts with the laws of the United States that authorize the defendant's practice and thus is violative of the Supremacy Clause and thus preempted.  See *Sperry v. State of Florida*, 373 U.S. 379 (1963).

### ACT AND INJURY MUST OCCUR IN THE DISTRICT OF COLUMBIA

At 18, id the Court opined "under DC Code § 13-423 (a) (3), … this "statute clearly separates the act from the torturous injury and affords personal jurisdiction over non-residents only when both act and injury occur in the District of Columbia."  *Margole v. Johns*, 157 U.S. App. DC 209 (DC Cir. 1973).

At 12 id. the plaintiff must demonstrate that exercising jurisdiction over the defendants would not "offend the conditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).  "Under the minimum contacts "standard, courts must insure that the defendant's conduct and connection with the forum state are such that he reasonably anticipate being held into court here.'"  *GTE New Media Services, Inc. v. Bell South Corp*., 339 U.S. App. DC 332 (DC Cir. 2000)."

The District of Columbia Court of Appeals in 355 A.2d. at 811, Supra, opined that DC Code 1973 § 13-423 (a) (1) … "n.2 the statute was part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Act of July 29, 1970, Pub. L. No. 91-

358, 84 Stp. 473, which became effective on February 1, 1971. n.3.  See S.Rep.No. 405, 91st Cong., 1st. Session.  61 (1970)…. the outer limits of jurisdiction consistent with the Due Process Clause had been demarcated by the Supreme Court principally in these cases; *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *McGee International Life Insurance Co. v. Washington*, 355 U.S. 220 (1957); and *Hanson v. Denckla*, 357 U.S. 235 (1958).  To satisfy the requirements through Due Process, the nonresident defendant must have had sufficient "minimum contacts" with the forum state to justify subjecting him to the exercise of personal jurisdiction by its courts."  811 id.  See 812 id.

## THE DEPARTMENT OF CORRECTIONS ERRONEOUSLY CALCULATED DEFENDANT'S RELEASE DATE AS OCTOBER 2, 2006 WHEN DEFENDANT SHOULD BE RELEASED ON APRIL 7, 2006

The District of Columbia Department of Corrections erroneously calculated defendant's release date as October 2, 2006, although the defendant was incarcerated on April 8, 2004 and defendant was sentenced on June 3, 2004 to four consecutive six months misdemeanor sentences.  Defendant was released to the Alexandria Sheriff Department on June 23, 2004 when and while defendant was serving a 24 months aggregate sentence issued on June 3, 2004 without interruption.  The defendant was returned to the DC Department of Corrections on December 17, 2004 without any break in the defendant's incarceration from April 8, 2004 to present.  As of April 7, 2006, the defendant would have served 24 months of the sentence imposed on June 3, 2004 by Judge Noel Kramer crediting defendant with having been incarcerated from April 8, 2004 to June 3, 2004 and through the present.

The Court actions misled the defendant into believing that he was going to be release from custody to go home which prevented the defendant from exercising to bring

Habeas Corpus in the United States District Court for the Eastern District of Alexandria.

Protesting the unconstitutionality of the detainer issued by the City of Alexandria

pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973).  In

the case of the detainer the defendant would have listed City of Alexandria the

Commonwealth Attorney as respondents in his Federal Habeas Corpus Petition had he

known that he was subject to a detainer from the City of Alexandria at the time he was

being released from custody pursuant to Judge Noel Kramer's Order.  It was a surprise to

the defendant when he was being picked up by the Virginia Authorities to be taken to the

State of Virginia in connection with the detainer given the fact that the defendant had

received notice of his release just prior to the enforcement of the Virginia detainer.

The defendant was on loan to Alexandria, Virginia after the defendant's District

of Columbia sentence had already commenced.  See 18 U.S.C. § 3568.  See *Crawford v.*

*Delbert C. Jackson*, 191 U.S. App. DC 170.

### THE DEFENDANT WAS SUBJECTED TO THE HARSHEST OF SENTENCE EVER IMPOSED IN CONNECTION WITH A RULE 49 VIOLATION CHARGE

The sentence imposed violated the defendant's rights pursuant to the Eighth

Amendment prohibits grossly disproportionate penalties.  See *Sutto v. Finney*, 437 U.S.

678 (1978); see also *Solem v. Helm*, 463 U.S. 477 (1983).

### THE DEFENDANT WAS SUBJECTED TO AN UNDULY OPPRESSIVE IMPRISONMENT IN CONNECTION WITH THE CHARGE VIOLATION OF RULE 49

The defendant was subjected to an unduly oppressive imprisonment in connection

with the charge violation of Rule 49.  This violates the Eighth Amendment.  ***id.***

### ENFORCEMENT OF RULE 49 AN ORDER CAME UNDER A COLOR OF STATE LAW

Enforcement of Rule 49 and Order 18 under color of state law violate defendant's federal constitutional rights.  See 42 U.S.C. § 1983.

## ENFORCEMENT OF ORDER 18 PROHIBITING NATIONWIDE SERVICE

The enforcement of Order 18 prohibiting nationwide service is not connected with any legitimate state interest or interest connected with Rule 49.  Moreover, the enforcement of Rule 49 protects the DC Bar from competition and violates the Equal Protection Clause.  See *Romer v. Evans*, 517 U.S. 620 (1996).  Moreover, since selective and discriminatory prosecution violates equal protection.  See *Flynt v. Ohio*, 451 U.S.619 (1981).

## RULE 49 IS UNCONSTITUTIONAL AS IT HAS BEEN APPLIED TO THE DEFENDANT[8]

---

**[8] DC COURT APPEALS RULE 49 IS UNCONSTITUTIONAL**

D.C. App. R. 49 [Rule 49] is unconstitutional on the basis that it is impermissibly vague on its fact, and an arbitrary restriction on personal liberties.  *See Chicago v. Morales*, slip *op. No. 97*-1121 at 6 (June 10, 1999), and because it fails to provide notice for parties that it regulates whom are not licensed members of the bar.  The notice to this population of regulated must be clear and unambiguous.  *See General Elec. Co. v. EPA, 53* F.3[12] 1324, *1328-29 (D.C. Cir. 1995),* and because it fails to give ordinary citizens adequate notice of what is forbidden and what is permitted; *See Coates v. Cincinnati, 405 U.S. 489, 499*, and because it is overly broad and reaches constitutionally protected conduct that is permitted by federal laws.  *See Wilson v. Yoder, 406* U.S. 205 (1972); and because it does not provide minimal standards to guide the District of Columbia Court of Appeals' prosecutors, investigators, regulatory police; and judicial officers of the Court.  See Kolender v. Lawson, 461 U.S. at 358; and because it delegates too much discretion to the judiciary, the police, the DCCA' prosecutors and investigators; See Smith v. Goguen, 415 U.S. 566, 575; and because it pre-empts and undermines federal laws and rights under federal laws in violation of the *Supremacy Clause, Art 6, cl, 2; See Ham v. City of Rock Hill, 379 U.S. 306;* and because it violates the District of Columbia Publication Act and Administrative Procedures Act for failure to publish in the District of Columbia Register, rules that it enforce against the general citizenry.  *See § 1-1505,§ 1-506\*, § 1-1507* of the D.C. Code which requires publication of the District of Columbia Municipal Regulations and Council acts and resolutions, Chap. 15 or 16 of *the Code §1532, § 1533.*  See D.C. Law 1-120 "*D.C. Register Publication Act of 1976" of Pub. L. 93-198, effective April 19, 1977. (ref. 23, D.C. Register, 5050, Jan. 26, 1977).*  See also D.C. *Codes § 1-1509 (d),* which requires that parties be afforded opportunity to file exceptions and present arguments, *D.C. Code § 1-262(b), (c).  See Mullein v. Central Hanover Bank and Trust Co., 33 U.S. 306, 313; Goldberg v. Kelly, 397 U.S. 255;* and because it promotes, even encourages impermissible restraint on liberty and led to arbitrary enforcement.  *Kolender v. Lawson 461 U.S. at 357;* and because it promotes and has led to acts that have abridged the right to travel and engage in commerce.  *See Planned Parenthood of Central Mo. V. Danforth, 428 U.S. 52, 82-83 (1976); Kent v. Dulles, 357 U.S. 116, 126 (1958);* and because it promotes and has led to impermissible restraint on the liberty of contract, *Art. 1§10, Clause 1,* and because it abridges the *Privileges and Immunities Clause, Article IV, Cl. 1.  See New Hampshire v. Piper, 470 U.S. 284*; and because it impermissibly operates to trespass and encroach upon the executive or legislative authority, in violation of the separation of powers.

The defendant's right to Mandamus is clear and indisputable and there is no other adequate means to obtain relief.  See *In Re M.O.R.*, 851 A.2d. 503 at 504 (DC 2004).  See also *Banov v. Hon. Henry Kennedy*, 694 A 2d. 850, 857 (DC 1997) id. at 509.  (Citing *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, (1943).  See also *Bowman v. United States*, 412 A.2d. 10, 12 (DC 1980).

There is no adequate remedy at law, the defendant is likely to suffer irreparable harm if the motion is not granted if the relief requested is not granted, the public interest favors the granting of the motion, the non-moving party does not stand to be unduly prejudiced should the Court grant the motion whereas the defendant stands to be irreparably harmed.

Wherefore, defendant pray that the Court grant the motion.

_____

Simon Banks, J.D., Pro se

---

*See Morrison v. Olson, 487 U.S. 654, 682 680-681 (1988).  See In Re Olson, 818 F.2d 34, 47 (D.C. Cir. 1987).  See also, J.H. Marshall & Assoc., Inc. v Burleson, 313 A.2d 587 (D.C. 1973),* and because it leads to and has led to enforcement that has violated substantive due process and procedural process.  *See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572-575-(1972); and because it impairs First Amendment right of association.  See Dallas v. Stronglin, 490 U.S. 19, 23-25 (1989);* and because it provides for prosecution of conduct after the conduct has already occurred, while it cannot provide the kind of advance notice that will protect a non-licensed authorized administrative practitioner from being subjected to its enforcement sanctions; *See Wright v. Georgia, 375 U.S. 284, 292 (1963); See also, Shuttlesworth* v. *Birmingham, 382 U.S. 87,* 90 (1965), and because it unconstitutionally promote view point discrimination, prohibited by the Court *in Lamb's Chapel v. Center Moriches Union Free School Dist., 508 U.S.__,_, Pp7-11,* and because it impermissibly regulate content of expression.

**CERTIFICATE OF SERVICE**

I, hereby certify that a copy of this pleading was hand delivered to the following,

this 12th day April, 2006:


John D. Griffith, Asst. US Atty.
Judicial Center Bldg.
555 4th Street, N.W.
Washington, DC  20001




_____
Simon Banks, J.D., Pro se
#269768
CTF
1901 E Street, S.E.
Washington, DC  20003

And

Simon Bank, J.D., Pro se
P.O. Box 17052
Alexandria, VA  22302