UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS,                              )<br>                                                    )<br>                    Plaintiff          )<br>                                                    )<br>v.                                                 )<br>                                                    )<br>S. ELWOOD YORK, JR., ET AL.   )<br>                                                    )<br>                    Defendants      )<br>                                                    ) | Civil Action No. 05-1514 (ESH)<br>Ellen Segal Huvelle, Judge<br><br>October 12, 2007 |

**PLAINTIFF'S THIRD MOTION FOR DISCOVERY
AND A DISCOVERY SCHEDULING ORDER**

PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)
The District defendants indicated they do not consent
To the relief Requested

Comes now, Simon Banks, Plaintiff and submit Plaintiff's Fourth Motion for Discovery, pursuant to Fed. R. Civ. P. 16(b) and LCvR 16.4, and a discovery scheduling order pursuant to Fed. R. Civ. P. 26, and in support, submit the following:

1.  Affidavits recently filed in the *Carle A. Barnes v Government of the District of Columbia*, CA No. 06-315 [RCL) show that the overdetentions and strip searches that Judge Royce C. Lamberth, United States District Court, District of Columbia, addressed in *Bynum v. District of Columbia,* 412 F. Supp. 2d 73 (D.D.C. 2006) (final approval order settling overdetention and strip search damages claims as of August 31, 2005).

2. The plaintiff seeks discovery of the persons held in DC Jail from January 1, 2001 through the present from the court's staff and the Records Office staff to determine the persons overdetained and their length of overdetentions.

3. The plaintiff further seek discovery of the number of court returns entitled to be release whom have been subjected to illegal strip searches from December 19, 2005 to the present.

4. The Legal Times Article dated June 5, 2006, show that the District of Columbia Government and the Department of Corrections are exposed to more claims of illegal detentions, these potential claims include but are not limited to the persons whom are the signatories to the attached affidavits.

5. The plaintiff needs this discovery to prove his *Monell*[1] claim.

6. The Cumulative Master Exhibit List submitted in *Carle A. Barnes v Government of the District of Columbia*, CA No. 06-315 [RCL] *Id.* consist of eleven (11) exhibits. The affidavits describe overdetentions ranging from one day to 96 days and range in date of overdetention from 2005 to December 31, 2006.

7. The overdetentions fall into two catgories: (1) lengthy overdetentions of 96 days, 21 days, 19 days, et cetera, and short term overdetentions of one or two days. Glendale McLaurin was overdetained for 10 days over this past Christmas and was not released until New Year's eve.

8. The first type of overdetention is caused by continuing problems in the Records Office of the DC Jail.

9. The second type of overdetention appears to be cause by the DC Jail's apparent belief that it has 24 to 48 hours to release inmates.

---

[1] *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (U.S. 1978)

10.     Many of the overdetained persons are court returns entitled to be released.

11.     Under the *Bynum v. District of Columbia* class action settlement the District promised to return court returns entitled to be released to a facility on the grounds of the old DC General Hospital where they could be processed and checked for other cases, warrants, detainers, before release without having to undergo the mandatory strip search of prisoners entering the DC Jail.

12.     The DC Jail, rather sends these inmates to the DC Jail for commitment pending release, where they are subjected to illegal strip searches although they have been ordered released.

13.     Attached to this motion are the following listed 11 exhibits, recently filed in the case of *Carle A. Barnes v Government of the District of Columbia*, CA No. 06-315 [RCL] *Id.*:  (These Exhibits contain Plaintiff's Exhibit Number as well as the same exhibit number listed in the Carle A. Barnes Case for purposes of coordinating them with Master List filed herein and in *Barnes, Id.*)

| Plaintiff's Exhibit # | Description | Days |
|---|---|---|
| Plaintiff's Exhibit # 1 (Exhibit #47) | Affidavit of Keenan Miller re over-detention and stip search | 7 days |
| Plaintiffs' Exhibit # 2 (Exhibit 48) | Affidavit of Jerry Kidd Re over-detention and strip search | 13 days |
| Plaintiffs' Exhibit #3 (Exhibit #49) | Affidavit of Shelly Berry re over-detention | 2 days |
| Plaintiffs' Exhibit #4 (Exhibit #50) | Affidavit of James Parker re over-detention and strip search | 1 |
| Plaintiffs' Exhibit #5 (Exhibit #51) | Affidavit of Adam Hamilton re over-detention and strip search | 1 |

3

| | | |
|---|---|---|
| Plaintiff's Exhibit #6 (Exhibit #52) | Affidavit of Razina Jones re over-detention/strip search | 1 |
| Plaintiff's Exhibit #7 (Exhibit #53) | Affidavit of Derrick Suggs Re over-detention and strip search | 1 |
| Plaintiff's Exhibit #8 (Exhibit #54) | Affidavit of Chetonia Eldridge re over-detention and strip search | 4 |
| Plaintiff's Exhibit #9 (Exhibit #55) | Affidavit of Charles Williams re over-detention and strip search | 1 |
| Plaintiff's Exhibit #10 (Exhibit #56) | Legal Times Newspaper Article: "Jail Faces More Claims of Illegal Detention | |
| Plaintiff's Exhibit #11 (Exhibit #57) | Affidavit of David Peterson | 4 |
| Plaintiff's Exhibit #12 (Exhibit #58) | Affidavit of Glendale McLaurin, Jr. | 10 |

In support of the Plaintiff's motion for discovery, the Plaintiff submit Plaintiff's Memorandum of Points and Authorities, and Plaintiff's Memorandum of October 3, 2007; Plaintiff's "Meet and Confer" Statement of October 11, 2007 at 3-10 hereto attached.

\_\_\_\_/s/_____
Simon Banks

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS,             )<br>                          )<br>          Plaintiff  )<br>                          )<br> v.                       )<br>                          )<br> S. ELWOOD YORK, JR., ET AL.  )<br>                          )<br>          Defendants )<br>                          ) | Civil Action No. 05-1514 (ESH)<br>Ellen Segal Huvelle, Judge<br><br>October 12, 2007 |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S THIRD MOTION FOR DISCOVERY
AND FOR A DISCOVERY SCHEDULING ORDER**

The Plaintiff needs the District to produce to the Plaintiff and to have access to the following records produced to the Plaintiffs in *Bynum v. District of Columbia,* 412 F. Supp. 2d 73 (D.D.C. 2006) (final approval order settling overdetention and strip search damages claims as of August 31, 2005), and/or also dating from January 2001 to the present:

(1) records from selected fields, from the DC Jail's database JACCS, the District of Columbia Superior Court's database, CIS, and the entire Records Office "discrepancy" databases (databases that records all persons prematurely released or overdetained, as well as other data); (2) code documentation and other documents (in electronic format where available) required to interpret, program and decode the databases, including

5

documents explaining any codes used in the databases, and (3) persons most knowledgeable about the databases for depositions ("database discovery"), database records in delimited ascii text file, free format with delimiters, using delimiter that does not also perform some other function in the database, and labels which refer to each column in text format, delimited by tabs.

     1.     The Plaintiff request that the District provide the Plaintiff a copy of (1) a list (provided to the Plaintiffs in *Bynum* Id.) and/or in the records of District of Columbia Department of Corrections (DOC) of every person who was overdetained and the length of the overdetention, and (2) a list of every person who was returned to the DC Jail with no other pending cases, detainers or warrants, and was then subjected to a blanket strip search after a judge ordered his/her release during the period from May 1, 1999 up to the date the case is terminated;

     2.     The Plaintiff needs, to be provided and have access to the following records provided, *Id.,* copy of CD or DVD or DVDs, in the original format and in Excel format, all of the discrepancy data bas(s), discrepancy database which include all databases containing persons released before or after their court ordered release dates and also includes the "release discrepancy database" mentioned on page 391 of the deposition of Steven Smith taken on March 6, 2003.

     3.     The Plaintiff needs, to be further provided access to the following records provided, *Id.,*:

| | |
|---|---|
| Jail database | Records from fields in the following tables: Booking, BondMaster, Charge History, Charges, Detainer, Disposit, |

| | |
|---|---|
| | Good Time, Grieve, Moad, OSF, PHAUDIT, RCLOCA, RTYPE, SCOM, TRHIST. |
| Superior Court Database | Each field in the Superior Court database corresponding to each entry in the one page "Update Final Disposition" data entry screen on page 3 of Plaintiffs' Exhibit 3 from the Foor-Cipullo deposition (page 3 which was attached) (Taken in the Carl Barnes |
| Discrepancy Databases | Entire databases |

4. The Plaintiff needs, to be provided and have access to the following records provided, *Id.,* copy of, all depositions taken by the respective parties in *Bynum v. Odie Washington, 02-956, Carl Barnes v. District of Columbia. Id.*, copy of all stipulations and admissions entered into by the respective parties, *Id.* copy of all statements of material facts not in dispute asserted by the respective parties. *Id.*

5. The Plaintiff's participation in the Protective Order entered into by the parties in the *Bynum, Id.* case will not prejudice or delay the adjudication of the rights of the parties;

6. The Plaintiff needs discovery to perpetuate the record with respect to the issues of

    a) Overdetention, (Prior admissions of the defendants in the cases of *Marcus Bynum v Dist of Col 02-956*, the *Barnes, et al v. District of*

7

*Columbia*, Royce C. Lamberth, presiding Date filed, 02/23-2006, and Marcus Bynum v Dist of Col 02-956 (RCL) Memorandum and Order, filed Nov. 18, 2002. In *Watson v. Gaines, Civil Action No. 01 CV 2418 (GK), Judge Kessler has required the DCDC to provide plaintiff's counsel "lists" of D.C. Jail inmates subject to detainers (Pltfs. Reply Mem. 6n.4), thereby implying an ongoing duty to report to the Plaintiff in that case*

(a)  The Plaintiff is pursuing discovery in the above-referenced and other overdetention cases, showing negligence, failure to train and systematic deficiencies in recordkeeping causing systemic overdetention. Plaintiff seeks discovery expert statements provided to the United States Attorney General and to United States Judge Royce Lamberth in the *Marcus Bynum* case regarding the overdetention issue, inter alia.  This discovery would facilitate admissions and promote a climate that is conducive to settlement and/or dispositive motions, thereby promoting judicial economy.

(b)  (b) The plaintiff is pursuing discovery to perpetuate the record regarding defendants' transfer of the Plaintiff to Alexandria Virginia in violation of Plaintiff's Constitutional rights, statutory rights, right to substantive and procedural due process that affords the Plaintiff the right to an extradition hearing in connection with the transfer of the Plaintiff immediately after the Plaintiff asserted his protest to the legal validity and constitutionality of the Virginia detainer when and while the Plaintiff was serving a sentence that had previously been imposed;

    (c)      The Plaintiff is seeking discovery on the issue of violation of the Eighth Amendment cruel and unusual punishment that the Plaintiff was subjected to while an inmate at the DC Department of Corrections, i.e. the deprivation of basic human needs, as set forth in Plaintiff's Third Amended Complaint (Previously articulated in Plaintiff's original complaint and Plaintiff's affidavit in support of injunctive relief filed with the Plaintiff's original complaint. These deprivations caused the Plaintiff to suffer irreparable harm, lost of seven teeth and damage to gums and facial features and personal appearance; damage to Plaintiff's appeal in the case of Banks v. Comey, and a case in the Virginia Court of Appeals for untimeliness when and while the Plaintiff was being overdetained, and where and when the Plaintiff was in custody of the DC Department of Corrections and then in Alexandria, Virginia, the Commonwealth attorney, whom conspired with the Assistant United States Attorneys, Thomas Zeno and John Griffith,[2] seized all of the Plaintiff's client files, business records, computer, and all evidence that the Plaintiff needed to prove his innocence, all of Plaintiff's business records, and where the Commonwealth Attorney refused to release these exculpatory evidence[3], until after the initial appeal was decided, notwithstanding Plaintiff's Motions to Compel deprivation of Brady Material, and where the

---

[2] Based upon the complaint of one witness, former client whose complaint was dismissed by the Circuit Court of Alexandria

[3] Disclosure statements of Plaintiff's non-bar license status, services performed, cases won and cases settled throughout the United States; Plaintiff's complaints to the FBI, the Attorney General, the United States Senate Judiciary Committee, the DC Bar Counsel, against the Perpetrators whom conspired to retaliate against the Plaintiff for Petitioning government for redress.

    Plaintiff was provided two attorneys whom sabatoged Plaintiff's case and also refused to provide access to all but 12 of some 200 client business records after announcing they would not be a party to assisting Plaintiff in his prosecution of Plaintiff's civil complaint against the Alexandria Detective, a Virginia Bar investigator and the Assistant Commonwealth Attorney whom knew that Plaintiff's right to practice before administrative agencies of the United States was clearly established. The Plaintiff represented attorneys, FBI agents, CIA and other government employees nationwide and in Okinawa, Japan, for over 20 years. These attorneys were appointed to sabatoged the Plaintiff's defense when and while the Plaintiff was incarcerated. These attorneys that represented Plaintiff called one witness,[4] out of 20, requested by Plaintiff, while an attorney Plaintiff represented waited for three days and was not called.

(d) But for the unconstitutional transfer of the Plaintiff in violation of Plaintiff's extradition rights, the Plaintiff would have had access to all of his files, his computer, and the Plaintiff would have been able to defend himself although the DC and Virginia Authorities made sure that over 190 contracts of the Plaintiff were destroyed, when and while the Commonwealth Attorney advised the Plaintiff's clients that Plaintiff had abandoned them and

---

[4] a Park Service Police Officer, SWATT team member, assigned to protect the President of the United States as a counter-sniper, whom Plaintiff had won his case before an administrative judge of the United States Merit Protection Board. This witness wrote the Plaintiff a commendation letter for outstanding trial performance, and neither the letter was put into evidence, nor was the fact that this witness was a police officer. He was identified only as a government employee, asked did I do a good job and did I disclose to him my non-bar status and subsequent to responding to these questions he was hurried off the stand.

absconded with their money while suppressing Plaintiff's contact information precluding the Plaintiff from communicating with his clients when the Plaintiff was incarcerated. (The Plaintiff has requested the FBI, the Department of Justice and the entire Congress to investigate)

(e) The Plaintiff has been subjected to the above when and while the District of Columbia Court of Appeals has refused to allow the Plaintiff to terminate appointed attorney Cynthia Nordone, who was appointed on June 21, 2005 to file an appellate brief in 40 days and as of this present date after five motions to terminate her, has not filed the Plaintiff's appeal brief, now over 14 months after the first appointed attorney, Frederick Sullivan sat on the Plaintiff's appeal brief for six months and then announced he was being appointed a magistrate judge. In December 2005 Plaintiff requested the appointment of an attorney only because the Plaintiff feared the court would not give him a 30 day continuance to perfect his appellate brief, because of retaliation for petitioning Congress and the FBI for redress.

(f) The Plaintiff seeks to prove the District's liability with evidence based upon declarations of pre-trial detainees, overdetained individuals, statistical sampling, analysis of the District's own computer records, deposition testimony and with witness testimony.

(g) The use of statistical evidence to prove liability in civil rights cases is well established. *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1413 (D.C. 1998); *Davis v. Califano,* 613 F.2d 957 (D.C. Cir. 1979)("statistical proof may alone be used, without presentation of specific

   instances of discrimination, to establish a prima facie case of employment discrimination"); *Mitchell v. Diamond Cab Company of District of Columbia,* 2003 U.S. Dist. LEXIS 12492, *25 (D.D.C. 2003) (motion for summary judgment) (collecting cases); *Simon II,* 2002 U.S. Dist. LEXIS 25632, *156 (E.D.N.Y. Oct. 22, 2002) (citing to extensive body of law review articles discussing sampling to prove liability and making point that requiring individuals trials on damages allows wrongdoer to avoid responsibility for conduct). Both scholars and courts have recognized that, in many cases, statistical methods actuall provide a more accurate form of evidence than individual testimony. **Simon II,** 2002 U.S. Dist. LEXIS 25632, at *161.

(h) Many categories of federal cases routinely use statistical methods to determine liability and damages. *See, e.g., Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L. Ed. 2d 498 (1977); *Zippo Manufacturing Co. v. Rogers Imports, Inc.* 216 F. Supp. 670 (S.D.N.Y> 1963) (Feinberg, J.) (survey data in trademark infringement case); *Cimino v. Raymark Indus.,* 751 F. Supp. 649, 659 (E.D. Tex 1990) (discussing statistics and its applications in federal cases) *rev'd, Cimino v. Raymark Indus., Inc. 151 F.3d 297 (5th Cir. 1998).* Courts frequently permit evidence of life expectancy on mortality tables when determining damages. See *Ageloff v. Delta Airlines, Inc.,* 860 F.2d 379 (11th Cir. 1988); *Asana v. United States,* 616 F.2d 41 (2nd Cir. 1980); *Larsen v. International Business Machines Corp.,* 87 F.R.D. 602 (E.D. Pa. 1980) (use of work-life tables.

(i)   The Plaintiff needs to discover all documents (electronic or otherwise) relating to JACCS, CRYSIS, the "release discrepancy database," the District of Columbia Superior Court CIS system, FTR Gold and FTR regular (recording system, drug program software systems ("old system, Prism") and "any other computer software used to track and monitor persons charged with criminal offense heard in the Superior Court of the District of Columbia."

(j)   Plaintiff need the raw data instead of paper discovery so Plaintiff can reconstruct the databases, combine the databases, run their queries, and generate his own reports. The simplest method of obtaining this information [data items (fields), datasets, and key fields] is to obtain selected fields from databases that contain information about putative class of overdetained persons.on a medium such as a DVD and then to give the selected fields to an expert for analysis. The expert could then put the selected fields from the different databases into a single database and devise a computer program to compile a group list, profile and sample. Plaintiff will have generated identifiers to identify individuals using the unique identifiers of PDID, DCDC and case numbers and then ask the defendants to produce data identifying overdetained and other designated comparatives by name. Plaintiff will ask for social security numbers of selected overdetained by name as needed to locate them for notice and sampling. This is the method that was successfully employed in a similar case, a class action lawsuit[5]

(k)   Plaintiff needs to discover more than one database in this case. First, the Department of Corrections ("DOC") has used two different computerized

---

[5] *Williams v. Los Angeles County*, Case No. CV 97-03826-CW (and consolidated cases),.

        inmate management system databases during the recent past. From before 1999 up to about October 2000 the DOC employed a computer system called "CRYSIS." Then, in about October 2000, the DOC switched to the current system called "JACCS." Plaintiff's expert will definitely need fields from the JACCS database because that is the computerized inmate management system current used to track inmates and their release dates at the DC jail. Plaintiff will need some fields from the CRYSIS system because when the DOC made the switch from CRYSIS to JACCS, the DOC did not "migrate" from CRYSIS to JACCS all the data needed to make sentence calculations for inmates serving sentences and other release decisions. (Plaintiff knows this from discovery had in other cases).

(l)    Plaintiff further needs fields from the CIS system and other District of Columbia Superior Court databases to serve as a check on the accuracy of the data in JACCS and CRYSIS and to supplement gaps in the JACCS/CRYSIS data because of problems with data entry in the JACCS and CRYSIS systems. ***Report of Inspector General on Central Detention Facility,* Report Number 02-00002FL, October 2002, "Inspector General's Report.** According to the Inspector General's Report, on October 25, 2001, over one year after the Action Plan was filed, the DC Jail's inmate management software, JACCS, indicated that 703 inmates were overdetained on that date.

(m)    Third, CIS contains many fields that have information that can be used to verify or calculate release dates or ascertain overdetainees even though the data in the fields is not used by the Department of Corrections in making

        release determinations because the information is not entered in the CIS until several days after the date the person is entitled to release.  For example, CIS has fields that capture information about a defendant's charge, his court dates, his release status (whether and when in custody), disposition, and jail sentence if any.  Data in these fields can be used to verify or supply missing data in JACCS.

(n)     On the other side of the coin, CIS has some fields with information on releases that is relied on by the Department of Corrections in making certain releases.  For example, the current procedure for obtaining the release of an in custody pretrial detainee held on bond is to go to the District of Columbia Superior Court Finance Office and post the bond, obtain a receipt from the Finance Office verifying payment of the bond, and then take the receipt to the DC Jail to obtain release of the inmate.  The DC Jail will not release such a person without the bond receipt.

(o)     Fourth, the fields from the CIS system and other District of Columbia Superior Court databases will also be used in compiling a statistical profile of the arrest and conviction history of overdetained persons and other comparables regarding violation of extradition procedural and substantive rights as well as deprivation of dental and other medical treatment.

(p)     The PTL (Prisoner Transfer List) generated by the District of Columbia Superior Court CIS system does show every in-custody defendant at the DC Jail who went to court at the District of Columbia Superior Court on a particular day.  JACCS (and (CRYSIS) for the relevant period) shows the

        charges and detainers against each person.  Combining the data from these systems will enable Plaintiff to compile a list of victims of the District of Columbia Policy, practices, custom and procedures.

(q)    Plaintiff must conduct discovery for each database in stages in order to make intelligent choices about which electronic data is needed for each database, and to make the requests for raw data as narrow as possible. Plaintiff need to (1) identify databases with relevant information, (2) obtain data dictionaries (or record layouts) and documentation on how to interpret the code fields and technical manuals to identify what data items (fields ) , datasets, and key fields exist in each database and (3) depose person most knowledgeable how data items (fields), datasets, and key fields are used in the release process, or can be used by Plaintiff for identifying comparable victims similar to Plaintiff, calculating overdetentions, making profiles or choosing a sample, (4) request selected data items (fields), datasets, and key fields, less any personal identifying information, for each comparable victim which are relevant to Plaintiff's case of systemic, custom, policy, practice and procedure.

***Databases are Clearly Discoverable under the Federal Rules of Civil Procedure***

(r)    Computer information is discoverable under Rule 34 as a matter of course. Fed. R. Civ. P. 34(a) (document(s) include "data compilations from which information can be obtained").  As long ago as 1990, in an employment discrimination class action, this Court ordered an employer to produce two of its "data bas[s], in computer readable form, with hard copy documentation required to interpret, program and decode the data". *Martin v. Potomac Elec.*

*Power Co.,* 1990 U.S. Dist. LEXIS 11688, at **48**-50 (D.D.C. 1990). This Court has approved the discoverability of computer databases in at least two cases. In *Cobell v. Norton,* 96-1285 (RCL), the parties have been using discovery of databases and analyzing the data in them in the "*Indian Trust Fund"* litigation pending before this Court. *Alexander v. FBI,* 186 F.R.D. 137, 1998 U.S. Dist. LEXIS 22392 (D.D.C. 1998), dealing with the sufficiency of a 30(b)(6) deposition notice of the person most knowledgeable about one of the White House Office databases, clearly contemplates eventual production of the database if found to be within the scope of Rule 26.

(s) Moreover, case law from other Circuits show that requesting and obtaining raw data in databases is a standard operating procedure in federal discovery in cases such as this one. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978); *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1382 (7th Cir. 1993) (sanctions for failing to produce database that contained raw data regarding commissions on each policy sold); *National Union Electric Corp. v Matsushita Electric Industrial Co.,* 494 F. Supp. 1257 (E.D. Pa. 1980; *Williams v. E.I. du Pont de Nemours & Co.,* 119 F.R.D. 648 (W.D. Ky. 1987) (defendant sought – and received at its own expense—the database that its adversary's expert had created from the hard-copy documents that were originally produced, including a copy of the computerized database in the form of the computer storage disc, the code book, all documents used in encoding the database, and the user's manual); *Anderson v. Cornejo,* 2001 WL 219639, at *6 (N.D. Ill. Mar. 6, 2001) (in case challenging discriminatory

       strip searches, court ordered defendants to provide plaintiffs with passengers' identifying information from computer databases of passengers that had landed at O'Hare International.) (***Symposium; Emerging Technologies and the Law; Article; A Practitioner's Overview of Digital Discovery*, Gpmz :/ Rev/ 347 19971998.**

(t)     The courts have ruled that a flexible approach to discovery prior to summary judgment is warranted. *First Chicago Int'l,* 267 U.S. App. D.C. at 32, 836 F.2d at 1380 (1988). In *First Chicago Int'l,* the United States Court of Appeals for the District of Columbia Circuit held that a litigant was entitled to further discovery prior to summary judgment, despite the faiure to file a Rule 56(f) affidavit, because "other documents filed by the Plaintiff – as opposing motions and outstanding discovery requests – sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit." *Id.* see also *Novecon,* 977 F. Supp. At 54 (noting First Chicago Int'l exception to the Rule 56 (f) affidavit requirement. "It is incumbent on the court to make sure that the parties have had an opportunity to develop the record before ruling on a summary judgment motion," particularly where, as here, "a party claims the need for discovery. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

(u)     The Court has a "duty under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment."[6] *See Strange v. United States Arms Control*

---

[6] Rule 56 (f) provides:

     *& Disarmament Agency,* 275 U.S. App. D.C. 37, 39, 864 F.2d 859, 861 (1980).

(v)    Plaintiff needs discovery to show that the material sought above-referenced would lead to a genuine issue of material fact. *Dowling v. Philadelphia,* 855 F.2d 136, 139-40 (3d Cir. 1990).

(w)    The Plaintiff further seek to depose certain Superior Court and Records Office Staff familiar with overdetention and the problem it has caused and causes the court with respect to its administratition.

### DISCOVERY OF CCA/CTF/ AND CENTER FOR CORRECTIONAL HEALTH AND POLICY STUDIES, INC.

5.    The Plaintiff seek discovery of the Correctional Corporation of America (CCA), the Central Treatment Facility warden, correctional officers, and medical staff. The Plaintiff further seek discovery of Center for Correctional Health and Policy Studies, Inc., (CCHPS) which has contracts with the District of Columbia Government to provide medical services to inmates housed at the Department of Corrections, Central Detention Facility and the Central Treatment Facility.

6.  Amongst other things, the Plaintiff seek to take deposition discovery of dentist whom were employed at the CDF and the CTF during the period December 2005 through April 28, 2006, regarding the scope of dental services they provided, the limitations they operated under, the standard of medical care.

---

> *When affidavits are unavailable.* Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavits facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

7. The Plaintiff is aware that there exist rights of indemnification agreements existing between the DOC, the CTF and the CCHPS. The Plaintiff expect the District to produce and disclose, voluntarily, all such agreements, their addendums, amendments, et cetera pursuant to Rule 26 and 16 Fed. R. Civ. Procedure.

8. .Plaintiff incorporate by reference Plaintiff's Affidavit filed in support of Motion for Injunctive Relief and in support of the original complaint.

9. Plaintiff incorporate by reference Plaintiff Rule 56(f) Affidavit in support of Motion for discovery scheduling Order, previously filed in support of the Plaintiff's Motion to Amend the Third Complaint.

**WHEREFORE**, Plaintiff pray that this Honorable Court grant the motion for a discovery scheduling order and for discovery.


_____/S/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,