DR. SIMON BANKS
DOCTOR OF LAWS
P.O. BOX 17052
ALEXANDRIA, VA. 22302
703 965-5637
E-Mail: drsbanks@msn.com

October 11, 2007

**VIA ELECTRONIC MAIL TO**
**Denise.baker.@dc,gov**
Denise Baker, Esq.
Office of the Attorney General
441 Fourth Street, N.W.
Washington, DC 2001

          **RE:**  Banks v. York, et al
          **NO:**  04-1514

## PLAINTIFF'S MEET AND CONFER STATEMENT

### ISSUES

The issues in this case include but are not limited to the following:

1. The Plaintiff claim for §1983 violation regarding Plaintiff's overdetention.

2. Eighth Amendment claims based upon the denial of a diabetic diet and lack of heat at the DC Jail.

3. First Amendment Claim, Opening Plaintiff's Legal and Personal Mail outside of Plaintiff's presence.

4. Plaintiff's negligent training and supervision claims.

5. Plaintiff's 1983 claim for overdetention and negligent training and supervision against Devon Brown. See Memorandum Opinion at 41.

## OVERDETENTION

6. Plaintiff provide in the 3d Amended Complaint that the DOC Staff failed to credit the six months Plaintiff served in Virginia, plus miscalculating his sentence and his release date. *Id*. ¶¶ 21-23. Plaintiff was released from the DC Jail on April 28, 2006 rather than March 20, 2006 past the Plaintiff's release date. *Id*. ¶¶ 20, 23, 64.

7. Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a result of the overdetention. See ¶ 67.

8. Plaintiff's detention was due to the collapse of the Department of Corrections' Inmate Management System". See 3d Am Compl. ¶ 65, but also due to the "deliberate indifference by defendant District of Columbia [and] Devon Brown. See ¶ 56.

9. The Plaintiff allege failure to train and supervise employees responsible for ensuring the timely release of prisoners not only was negligent, but also violated the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. See ¶¶ 90 – 97, 106 – 14, 129, 151 – 60. See Mem. Op. at 3.

## PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT DEVON BROWN

10. Defendant Brown is liable in his official and personal capacity for deprivation of Plaintiff's constitutional rights in connection with his failure to train DOC Employees under his supervision. See 3d Am Compl. ¶¶ 86 – 87, 106- 114 and for Plaintiff's overdetention and inaction. See Mem. Op. at 30 – 34. See 3d Am Compl. ¶¶ 106 – 10, 112 – 114.

## DISTRICT IS LIABLE TO PLAINTIFF FOR SUBJECTING THE PLAINTIFF TO COLD TEMPERATURES AT DC JAIL IN VIOLATION OF THE EIGHTH AMENDMENT

11.  The Plaintiff suffered cold temperatures in violation of the Eighth Amendment while housed at the DC Jail.

### DEPRIVATION OF SPECIAL DIETARY NEEDS

12.  Defendant District caused the Plaintiff to suffer deprivation of special dietary needs as a diabetic as set forth in the 3d Am Compl. See Mem. Op. ¶¶ 1-2 at 19, and at 20 ¶ 1.

### UNAUTHORIZED OPENING OF LEGAL AND PERSONAL MAIL

13. The Plaintiff suffered a violation of his First Amendment Rights and his Constitutional Rights when the District opened the Plaintiff's personal and legal mail outside of Plaintiff's presence. See Mem. Op. at 20- 21. See 3d Am Compl. ¶¶ 176 (F) (I)

### PROPOSED CONSENT TO VOLUNTARY DISCOVERY PRODUCTION

### PURSUANT TO RULE 26(F) DEFENDANT AGREES TO PRESERVE AND VOLUNTARY PROVIDE PLAINTIFF DOCUMENTS AND/OR ELECTRONIC RECORDS RELATED TO THE FOLLOWING REQUESTS OF PLAINTIFF

14.  The Plaintiff's proposed discovery include the following: See also Plaintiff's electronic mail to you (Denise Baker) dated October 3, 2007, Subject Pre-scheduling Conference-Conference; **Proposed Discovery** in support of the Plaintiff's request for a Discovery Schedule.

15. The Plaintiff seeks discovery of the defendants in support of his *Monell Claims*[1]. The Plaintiff seeks discovery of the defendant District requiring it to produce databases of prisoners/inmates whom have been overdetained while in custody of the DC Department of Corrections ("DOC").

16. The Plaintiff seeks evidence of multiple instances of DOC's failure to release inmates, their overdetention, lack of adequate record keeping.

17. The Plaintiff seeks statistical evidence of overdetention. The Plaintiff seeks evidence of upgrades in the DOC policies since the Wright Report.

18. The Plaintiff seeks statistical evidence of releases.

19. The Plaintiff seeks evidence of cost benefits and effectiveness analysis conducted by DOC of its Records Office release policy and of it standard operating procedure, and of its policies practices and procedures.

20. The Plaintiff seeks evidence of specific instances of the District's failure to release inmates in a timely manner at the time of the expiration of their sentences with respect to declarations and affidavits submitted in the case of *Bynum v. Odie Washington, The District of Columbia* and the Case of *Carl Barnes* v. District of Columbia, and recent *Morgan* Case, the Plaintiff seeks disclosure and document production of discovery had between the parties to depositions, declarations, admissions, responses to production of documents. These files are readily available with minimum search. **There is evidence that these documents are electronically stored.** They are part of the record in *Bynum v. Odie Washington,* 02-cv-956*, Barnes v. District of Columbia,* 06-

---

[1] *Monell v. Dept' Social Services*, 436 U.S. 658, (1978).

4

315 (RCL), *Morgan*, and their authenticity, admission into evidence is without dispute.

21. Plaintiff request permission pursuant to the discovery rules to engage in written deposition, questions following interrogatories.

22. The Plaintiff seeks disclosure of the addresses of the following witnesses

23. whom the Plaintiff seeks to depose and/or acquire affidavits from:

   a) Larry Corbett, Former Assistant Warden at the DC Jail during the period December 2004 through October 2005. Larry Corbett was a recipient of the Plaintiff's Motion for TRO and was a recipient of the Plaintiff's original complaint filed on May 6, 2005 and was a Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive Relief. Plaintiff seeks to depose Larry Corbett as well, in connection with Corbitt's knowledge of the Plaintiff's complaints.

   b) The Plaintiff seeks to depose Robert Clay, Warden DC Jail. Mr. Clay was the Warden during the period April 4, 2006 and he was a recipient of interrogatories in connection with this case and had some knowledge of Plaintiff's complaints.

   c) The Plaintiff seeks to depose Elwood York. Elwood York was both an Acting Warden and Director of the Records Office for the DC Jail. Elwood York received Plaintiff's Motion for TRO and for Preliminary and Permanent

    Injunctive Relief on or about July 6, 2005. See Certificate of Service attached to Plaintiff's Motion for Temporary Injunctive Relief and Memorandum of Points and Authorities in support Plaintiff's Motion for Temporary Injunctive Relief.

d) The Plaintiff seeks discovery of the Inmate Management System Director of Records of the Records' Office at the DC Jail during the period January 2005 through October 2007.

e) The Plaintiff seeks discovery of the Receiving and Discharge Officer at the DC Jail during the period January 2005 through October 2007.

f) The Plaintiff seeks discovery of the Superior Court Computer Director who supervises the release and commitment data during the period January 2004 through October 2007.

g) The Plaintiff seeks discovery of the Director of the Inmate Management System Clerk Supervisor for the Department of Corrections during the period January 2004 through October 2007.

h) The Plaintiff seeks discovery of Steven Smith and other persons in charge providing release, discrepancy reports which were created during the period January 2005 through October 2007 and any and all declarations issued by Steven

    Smith in the *Bynum* Case whereby Steven Smith supplied a declaration of inmates who were overdetained.

i) The Plaintiff seeks discovery of John Pendergrapf of the Records Office of the DOC who was involve in generating Release Discrepancy Reports.

j) The Plaintiff seeks discovery of the persons of the DOC that were charged with implementing the recommendations connected with the Shaw Report and in connection with the contracts awarded for new automated Jail Inmate Management System for the Central Detention Facility.

k) The Plaintiff seeks discovery of the Sentence Computation Manual generated by the Corrections Trustee in April 2000 and persons who implemented the recommendations of the Corrections' Trustee and provided training regarding the sentence computation manual.

l) The Plaintiff seeks discovery of Joyce Jones who was assigned to assist Elwood York in the Records Office in connection with the Office Plans for supervising the release policy of the DOC

m) The Plaintiff seeks discovery of the Legal Instrument Examiner assigned to the R & D Automated Jail Management System Department Order 1281.1 and 1280.2A

n) The Plaintiff seeks discovery of the DC's Beal Abatement Plan and the DOC response to R-1. R-2, and R-3 desk audits of all Record Office positions, how many existed during the period from January 2004 through October 2007.

o) The Plaintiff seeks information regarding the archival of the inmate files by September 30, 2001 which were subject to computerized checks and utilized from September 30, 2001 to October 2007. See Plaintiff's Motion for Mandamus in the Case of *Banks v. Steven Smith, 04-903* (RCL) and served upon Elwood York on June 24, 2005. Steven Smith was also served with Plaintiff's Motion for Mandamus on June 24, 2005 via facsimile and first class mail

p) The Plaintiff seeks discovery of Charles Kim, Industrial Engineer who reengineered DOC Records Office operation, the JACCS (Automated Management System or Jail and Community Corrections System).

q) The Plaintiff seeks discovery of the Department of Corrections 950 page Operations Manual provides from 0 to 14 percent error rate regarding all releases. This is reflected in the news release of the Department of Corrections on September 30, 2002.

r) The Plaintiff seeks Discovery of J. Myrick, Supervisor of Records Office during the period in question January 2005 through April 28, 2006.

s) The Plaintiff also seeks discovery of John Manuel who was the new Director of the Records Office that was assigned to the Records Office of the Department of Corrections in 2006.

t) The Plaintiff seeks discovery of Cheryl L. Warner, Deputy Director of the Records Office as of the present time.

u) The Plaintiff seeks discovery of the District of Columbia Statistician who provided statistics regarding errors in releases and failure to release for the Department of Corrections.

v) The Plaintiff seeks discovery of implementation of the Inspector General's recommendation and report dated October 2002 regarding the District of Columbia Jail Management challenges and improving the DC Jail Facility.

w) The Plaintiff's seeks discovery of the individual in training of the JACCS (Jails and Community Correction System) on how employees learned how the log in/log out procedures and the execution of screen and tasks relevant to their specific jobs.

x) The Plaintiff seeks discovery of the how the District of Columbia Department of Corrections implemented the 1976

        RMC Research Corporation Analysis and referenced the major recommendations, or reorganization of the Records Office and increased staffing in the office.

y) The Plaintiff seeks evidence on spoliation [destruction of evidence] on electronically stored depositions, responses to discovery such as requests for admissions, authentication of documents, responses to interrogatories, interrogatories submitted, responses to request for production of documents, electronically stored on computers and existing on CDs or other electronically storage devices.

z) The electronically stored information that the Plaintiff seeks include:

The above-reference (set forth in ¶y) and:

i) declarations, affidavits, deponents of depositions of Department of Corrections employees whom gather and assess statistics, and whom store, enter, retrieve, assess, access records of prisoner intake, prisoner release, discrepancies in release of inmate.

ii) grievances/complaints (administrative and civil) regarding failure of DOC to release prisoners when sentence expire and when inmates are entitled to be released from incarceration.

iii) Memorandums on training requirements,

iv) types of training afforded employees in the Records office of the DOC, and the identity of all trainers, training entities utilized by the DOC.

 v) The Plaintiff seeks the identities of all demographic/statistical experts used by the DOC and their attorneys in the recent class-action cases, including but not limited to *Bynum v. Odie Washington, et al,* 02-cv-956, *Barnes v. District of Columbia,* 06-cv-315RCL.

In further support the Plaintiff cite the following:

23. The Wright Report documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office. (Wright Report, Major Findings, F-14).

 24. Among the major findings of the Wright Report were a lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management." (Wright Report, Major Findings, F-14 and F-20).

 25. The Wright Report also listed an extensive series of studies and recommendations that were "not seriously implemented" including studies dating back as far a 1976. The studies mentioned and some of their principal recommendations were as follows:

 26. 1976 RMC Research Corporation Analysis. Major Recommendations: reorganization of the Record Office and increased staffing in the office.

 27. 1985 BOP Evaluation. Major Recommendations: creation of a headquarters level position at the Department of Corrections' to provide guidance and written

policy to the Records Office: increased Records Office staff; and restricted access to the Records Office and files.

28.     There is no genuine dispute that at all times relevant:

a)      Almost every inmate taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge is no longer pending is returned to the D.C. Jail for processing before release rather than being released from the courthouse.

b)      The Superior Court of the District of Columbia and the United States District Court for the District of Columbia use different computer systems from the computer system used by the Records Office.

c)      Release and commitment data entered into the court computer systems by courtroom clerks do not appear in the computer system used by the Records Office, The JAXX system ("JAXX") AND ("JACCS").

d)      As a result, all release and commitment orders generated by judges in the Superior Court and District Court on paper must be hand-delivered to the Records Office by marshals as prisoners are bused from the courthouse to the jail.

e)      All processing of release and commitment orders must be done by hand at the Records Office located at the D.C. Jail.

f)      Release and commitment data entered into the court computer system by courtroom clerks must be entered again by hand into the JAXX, JACCS.

      g)    The name and DCDC number (jail identification number) of every inmate physically entering or leaving the D.C. Jail is also entered by hand into the "Count" computer, a MacIntosh/Apple computer used to maintain a census of all inmates at the D.C. Jail at any one time.

### DOCUMENTS THAT DISTRICT AGREE TO VOLUNTARILY PROVIDE PLAINTIFF WHICH ARE ELECTRONICALLY STORED AND/OR ARE OTHERWISE AVAILABLE

28. The Plaintiff request that the District disclose which documents the District is willing to produce voluntarily, including but not limited to the above-referenced, on the issue of overdetention, lack of adequate heat, cut-off-of diabetic trays. This includes manuals used in the operation of the Superior Court inmate tracking systems, the DOC inmate tracking and release procedures.

### PROPOSED SUPPLEMENTS TO THE COMPLAINT

The Plaintiff propose to file motion to supplement the complaint with state law claims within 30 days These claims the Plaintiff previously sought to add to the 3d Amend. Comp. by amending the Plaintiff's 3d Amend. Compl. See Plaintiff's proposed 4th Amended Complaint at 66-68, ¶¶242-255. **See** Plaintiff's Motion to Amend the Third Amended Complaint and file Fourth Amended Complaint at "¶G which provide as follows:

> **The cause of actions the Plaintiff seek to join include common law claims of: Medical Negligence, false imprisonment, intentional infliction of mental and emotional distress**

29. But for the Court's Order precluding the Plaintiff from filing any further pleadings until the Court decided the merits of the Plaintiff's Third Amended Complaint, (Which the Plaintiff objects to for the record) the Plaintiff would have been successful pursuant to Rule 15 to Amend the Complaint to add these referenced State Law Claims, particularly given the fact that the District had not filed an appropriate response to the Complaint, including but not limited to file an Answer to the complaint.

30. The Plaintiff propose to facilitate service of process on the individuals whom were not served, (referenced by the Court in its Mem. Op. Sept. 17, 2007) excluding parties were dismissed based upon the Court's declaration that they were operating in their official capacity and the District stands as defendant in their place.

These are the issues, supportive documentation, and initial request of the plaintiffs at this point. **(Not waiving the right to assert other issues previously declared but by mistake or inadvertence, inadvertently omitted)** The Plaintiff seeks to have discussion regarding these issues with the District Counsel as well as with other counsel prior to the Meet and Confer Scheduling Conference. Please give the Plaintiff at call 703-965-5637 regarding these issues and any issues that the defendant wish to discuss in connection with the Court's requirement pursuant to local rule 16C.1 and 16.1.

Please inform me of any privilege the District intends to assert, or assert in connection with any refusal to voluntarily produce the above-referenced documents, electronic records stored.  See Rule(f).

I suggest that the District attempt to provide any and all information requested above without waiving any privilege. And to provide the Plaintiff with an opportunity for initial examination of any and all documentary evidence that the District agrees to provide.

Please provide me with a timetable for initial examination of the above-requested documents.

Please inform me of any and all stipulations that you are willing to make with respect to the above-referenced. Let's discuss them.

Sincerely,

------------/S/----------------

Simon Banks.

**\*On Friday, October 12, the District responded to the Plaintiff's "Meet and Confer" Statement and stated that it has read the Plaintiff's proposal set forth in Plaintiff's "Meet and Confer Statement" and that; a) there would be no mutual agreement on any of the Plaintiff's requests/suggestions, and b) The District would file its own "Meet and Confer" Statement.**

_____/s/_____

**Simon Banks**