# EXHIBITS

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SIMON BANKS,                         )
                                     )
            Plaintiff,               )
                                     )
        v.                           )        Civil Action No. 05-1514 (ESH)
                                     )
S. ELWOOD YORK, JR., *et al.*,       )
                                     )
            Defendants.              )
                                     )

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that plaintiff's motion to direct service of process [Dkt. #78] is **GRANTED**

**IN PART** to the extent that the District of Columbia is substituted as a party defendant.  It is

**FURTHER ORDERED** that the District of Columbia defendants' motions to dismiss

[Dkt. #55, 60] are **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE**

as follows.  Robert Clay and Dr. Fozia Abdulwahab are **DISMISSED** as party defendants

because they have not been served.  Anthony Williams, Edward D. Reiskin, and Dr. Gregory

Pane, who are sued only in their official capacities, are also **DISMISSED** as party defendants,

and all claims against them will be treated as if they were raised directly against the District of

Columbia.  All of the claims and defendants included in plaintiff's Third Amended Complaint

will be **DISMISSED WITH PREJUDICE**, except that plaintiff may continue to pursue against

the District of Columbia (1) his Section 1983 claim for overdetention; (2) his Eighth Amendment

claims based on the denial of a diabetic diet and the lack of heat at the D.C. Jail; (3) his claim

1

regarding the opening of his legal mail outside of his presence; and (4) his negligent training and supervision claims.  Plaintiff may also continue to pursue his Section 1983 claim for overdetention and his negligent training and supervision claims against Devon Brown in his individual capacity.  It is

FURTHER ORDERED that the District of Columbia and Devon Brown shall answer plaintiff's Third Amended Complaint on or before October 1, 2007; it is

FURTHER ORDERED that defendant Caulfield's motion to dismiss [Dkt. #92] , which the Court treated as a motion for summary judgment, is GRANTED.  Plaintiff's claims against defendant Caulfield are DISMISSED.  It is

FURTHER ORDERED that plaintiff's motion for leave to file [#115] is DENIED.

SO ORDERED.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: September 17, 2007

2

# EXHIBIT B

## Baker, Denise (OAG)

| | |
|---|---|
| **From:** | DRSimon Banks [drsbanks@msn.com] |
| **Sent:** | Wednesday, December 05, 2007 2:55 PM |
| **To:** | Baker, Denise (OAG) |
| **Cc:** | drsbanks@msn.com |
| **Subject:** | RE: REFILED COMPLAINT Civil action 07-2115 |

It is my understanding that Dr. Abdulwahabi, was employed as an employee of a contractor.

1.  I propose to file an amended complaint which will include the contractor as a defendant.  Do you consent to the filing of Motion to amend complaint in Banks v. Brown, et al, 07-02115.

2.  I propose to file Motion to consolidate/join Banks v. Brown, 07-02115 with Banks v. York, et al 05-1514

3.  I propose to file Motion for Declaratory Judgment, to determine my right to rely upon the over-detention constitutional claims set forth in 05-1514 as connected to and the underpinning of the non-overdetention state law/common law claims filed in 07-2115, Banks v. Brown, as well as the prejudicial effect and impact that the sua sponte severance has upon the Plaintiff's procedural and substantive rights.  As well as right to receive any and all evidence/discovery, disclosures shared by and between the parties in Carl Barnes v DC, 06-00315RC.

4.  I propose to file Motion to supplement Banks v. York, 05-1514, with state law claims pertaining to over-detention, i.e. false imprisonment.  This motion shall include Plaintiff's right to participate in any and all mediation involving class plaintiff and lead class counsel.

5.  I propose to file motion in Carl Barnes v DC, 06-00315RC to lift protective order and/or injunction precluding respective counsel from disclosing content of discovery and other facts and for an order directing counsel to share with the Plaintiff/intervenor/class member, any and all discovery, affidavits, pretrial evidence shared by and between parties, so that Plaintiff may share and participate in any and all proceedings, including but not limited to discovery and mediation.

Do you consent to the filing of these motions?

*Simon Banks*

---

Subject: RE: REFILED COMPLAINT Civil action 07-2115
Date: Fri, 30 Nov 2007 09:57:35 -0500
From: denise.baker@dc.gov
To: drsbanks@msn.com
CC: ellen.efros@dc.gov

Thank you.  I received a courtesy copy of the complaint.  Please confirm when you receive a time stamped copy so that I may timely respond to the complaint.

It is my understanding that this complaint is still not "filed" with federal court.  Nevertheless, out of an abundance of caution, I have calendared it for answer or dispositive motion 13 days after it was delivered to me.

I also see that you made a claim against Dr. Abdulwahabi and Devon Brown in the new complaint.  Please be advised that the Doctor is not a District employee.  With respect to Devon Brown, please advise me as to your reasoning why Director

# EXHIBIT C

CHAPTER 14:            INMATE/RESIDENT RIGHTS
SUBJECT:              INMATE/RESIDENT GRIEVANCE PROCEDURES
SUPERSEDES:           JULY 15, 2000
EFFECTIVE DATE:       DECEMBER 1, 2002
FACILITY:             CORRECTIONAL TREATMENT FACILITY
FACILITY SUPERSEDES:  AUGUST 14, 2001
FACILITY EFFECTIVE DATE:  MARCH 6, 2003


APPROVED:   **SIGNATURE ON FILE AT CORPORATE OFFICE**
            JIMMY TURNER
            VICE PRESIDENT, OPERATIONS

APPROVED:   **SIGNATURE ON FILE AT CORPORATE OFFICE**
            G. A. PURYEAR
            EXECUTIVE VICE PRESIDENT/ GENERAL COUNSEL

---

**14-5.1  PURPOSE:**

To establish procedures for inmates/residents to formally file complaints about facility conditions, treatment, policies, and procedures. To provide that such complaints are reviewed in a fair and expeditious manner and resolved in the best interest of both the inmate/resident and the facility.

**14-5.2  AUTHORITY:**

Corporate and Facility Policy and Contract.

**14-5.3  DEFINITIONS:**

A.   Emergency Grievance – A grievance, the resolution of which, if subject to the normal time limits, would subject the grievant to a substantial risk of personal injury or irreparable harm.

B.   Facility Grievance Officer – Facility staff member responsible for tracking, coordinating grievance investigations and answering grievances.

C.   Grievance - A written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate/resident by staff or other inmates, or any condition or incident within the department or institution which personally affects the inmate/resident.

D.   Grievant - The inmate/resident who filed the formal complaint

E.   Informal Resolution - An attempt to address concerns through discussion with appropriate staff.

F.   Inmate/Resident - Any adult or juvenile, male or female housed in a CCA facility. Inmates/residents may also be referred to as detainees, prisoners or offenders depending on classification and in accordance with facility management contracts.

G.   Reasonable Suspicion - A suspicion which is based upon documentable, articulable facts which, together with the employee's knowledge and experience, lead him/her to believe that an unauthorized situation or violation of rules exists.

H.   Reprisal - Any action or threat of action against anyone for the good faith use of or good faith participation in the grievance procedure.

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Correction Corporation of America**

**14-5.4  POLICY:**

Whenever possible, inmate/resident complaints and grievances should be resolved on an informal basis without the filing of a formal grievance. Many matters can and should be resolved directly and promptly between the inmate/resident and institutional staff without the necessity of filing a formal grievance. It is extremely important that institutional counseling staff take an active role in resolving as many complaints as possible prior to the filing of a grievance.

However, all inmates/residents will have access to formal grievance procedures any time the informal process has not provided successful resolution of the complaint.

Inmates/residents shall not be subject to retaliation, reprisal, harassment, or discipline for use or participation in the grievance procedure. Any allegations of this nature will be thoroughly investigated by the Warden/Administrator and reviewed by the appropriate Senior Divisional Director. The Senior Divisional Director will notify the Vice President, Operations of any allegations that are found to be credible.

**14-5.5  PROCEDURES:**

**A.      INFORMAL RESOLUTIONS**

All facilities will have an informal resolution process in place. Inmates/residents are required to utilize the informal resolution process concerning questions, disputes or complaints prior to the submission of a formal grievance. If an inmate/resident does not receive resolution in the informal process, he/she may file a grievance and must document on the grievance that informal resolution was attempted.

**AT THIS FACILITY, THE INFORMAL RESOLUTION PROCESS IS AS FOLLOWS:**

The inmate will fill out an inmate Request Slip or speak with any Staff member concerning an issue that they may have, prior to submitting a grievance.

**B.      GRIEVABLE MATTERS**

The following matters are grievable through this grievance procedure by inmates/residents:

1.      Application of policies, rules, and procedures towards inmates/residents over which CCA has control;

2.      Individual staff and inmate/resident actions, including any denial of access of the grievance procedure;

3.      Reprisals against inmates/residents for utilizing the Inmate/Resident Grievance Procedures;

4.      The loss of property legitimately possessed by an inmate/resident only after the procedures outlined in CCA Corporate and Facility Policy 14-6 have been completed; and

5.      Any other matter relating to the conditions of care and supervision within the authority of CCA, except as noted below.

**C.      NON-GRIEVABLE MATTERS**

The following matters are not grievable by inmates/residents through these grievance procedures:

1.      State and Federal court decisions;

2.      State and Federal laws and regulations;

3.      Final decisions on grievances;

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

4.     Contracting agency (BOP, INS, state department of corrections, etc.) policies, procedures, decisions or matters (i.e., institutional transfers, parole and probation decisions, etc.); or

5.     Disciplinary hearings or appeals (Disciplinary actions must follow the procedure outlined in CCA Corporate and Facility Policy 15-2).

**D.**     GRIEVANCE AVAILABLE REGARDLESS OF CLASSIFICATION

Any inmate/resident confined to a CCA managed facility can invoke the grievance procedure regardless of disciplinary, classification, or other administrative decision to which the inmate/resident may be subject.

**E.**     NO GRIEVANCES TO BE SUBMITTED ON BEHALF OF ANOTHER

An inmate/resident may not submit a grievance on behalf of another inmate/resident; however, assistance from a staff member or inmate/resident may be provided when necessary to communicate the problem on the grievance form.

**F.**     MULTIPLE GRIEVANCES

1.     Inmates/residents will be limited to two (2) pending non-emergency grievances at any given time.

At this facility additional procedures are as follows:

<u>Non emergency grievances addressing different concerns may be submitted by an inmate with no limitation. If more than two (2) grievances are submitted addressing the same concern then only one of those grievances will be answered.</u>

2.     If an inmate/resident files a grievance when he/she has two(2) other active grievances pending, it will be logged and held by the Facility Grievance Officer until one of the previously submitted grievances has been completed.

3.     Grievances will be handled in the order they are received.

4.     The time guidelines below do not apply to those grievances held in suspended status.

5.     A grievance which is alleged by an inmate/resident to be an emergency will be reviewed by the Facility Grievance Officer. If the Facility Grievance Officer determines that the grievance is not an emergency, it will be treated as an ordinary grievance and will count against this limit of two (2) pending grievances.

**G.**     TIME GUIDELINES

1.     The total time for the grievance process will be no more than ninety (90) days from filing to a final appeal decision, unless unusual circumstances are present.

    a.     The inmate/resident must file the grievance within seven (7) days of the alleged incident.

         The time for filing begins from the date the problem or incident became known to the inmate/resident.

    b.     The Facility Grievance Officer will, within fifteen (15) days of receipt of an inmate/resident grievance, conduct an investigation of the grievance and render a decision.

    c.     The inmate/resident is to submit any appeal to the Warden/Administrator or designee within five (5) days of receiving the decision from the Grievance Officer.

    d.     The Warden/Administrator will render a written decision on the grievance appeal within fifteen (15) days of receipt from the inmate/resident.

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

**a.    AT THIS FACILITY, ADDITIONAL PROCEDURES ARE:**

Grievances for Sexual Misconduct will follow the procedures contained in policy 14-100.

2.    Upon notice to the grievant, the time limitations may be extended to allow for a more complete investigation of the claims.  Justification for the extension must be provided to the grievant on Form 14-8B, Grievance Extension Notice.

3.    At all stages of the grievance process, upon receipt of the grievance, the grievance will be date stamped.

## H.    EMERGENCY GRIEVANCE PROCEDURE

1.    If the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury, the grievant may ask that the grievance be considered an emergency and detail the basis for a need of immediate response.

2.    If the Facility Grievance Officer, after reviewing the basis for the grievance being designated an emergency, determines that an emergency does exist, action shall be taken to resolve the grievance within twenty-four (24) hours of receipt of the grievance.

3.    After the initial action, and within seventy-two (72) hours of receipt of the grievance, the Facility Grievance Officer will prepare and give a written decision to the grievant.

4.    If the grievant appeals the decision, the Warden/Administrator or designee will respond with a written decision within five (5) days.

## I.    FILING THE GRIEVANCE

1.    In filing a grievance, the inmate/resident must complete the Inmate/Resident Grievance Form (Form 14-5A) and place it in the Grievance Mail Box, or, if a Grievance Mail Box is not used, forward it to the Facility Grievance Officer.

The Facility Grievance Officer will check the Grievance Mail Boxes daily, except for weekends and holidays.  If a mailbox is not used, grievances are to be forwarded daily to the Facility Grievance Officer.

AT THIS FACILITY, THE PROCEDURE FOR FORWARDING THE GRIEVANCE TO THE GRIEVANCE OFFICER IS AS FOLLOWS:

1.    Emergency grievances and grievances filed by inmates in segregation may be given to any staff member in the grade of Assistant Shift Supervisor or above.  The receiving staff will provide a receipt for the grievance.

2.    The inmate grievance form is a three part form, the last page of the form is the inmates copy to verify that the inmate submitted a grievance.

2.    Grievances are considered special correspondence.  If a sealed envelope is labeled "Grievance" and addressed to the Facility Grievance Officer, it will not be opened for inspection unless there is reasonable suspicion to believe the sealed envelope contains contraband.  If reasonable suspicion exists and the Warden/Administrator or designee's approval is obtained, the envelope may be opened and inspected only for contraband.

3.    If a grievance is submitted for review and the grievant is released from custody, efforts to resolve the grievance will normally continue.  It is the grievant's responsibility to notify the Facility Grievance Officer of the pending release and to provide a forwarding address and any other pertinent information.

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

**4.** AT THIS FACILITY, PROCEDURES FOR FILING A GRIEVANCE AGAINST THE CONTRACTING AGENCY ARE AS FOLLOWS:

**NONE**

J. **FACILITY GRIEVANCE OFFICER**

The Warden/Administrator is to designate an individual or individuals as Facility Grievance Officer(s) whose responsibilities will include the following:

1. overall coordination of the grievance procedure,

2. see that informal resolution has been attempted,

3. assign a number to the grievance and maintain a permanent grievance log,

4. coordinate the timely investigation of grievances,

5. prepare written decisions on grievance matters utilizing Form 14-5A

6. ensure that when a grievance decision specifies that an action is to be taken, that a date is included for completing the action,

7. provide a copy of the completed Form 14-5A to the grievant and have him/her sign it upon receipt,

8. follow-up that all remedies/ required actions are fulfilled by the imposed deadline, and

9. maintain all grievance records and documents as outlined in 14-5.5.M.

K. **GRIEVANCE REMEDIES**

The grievance procedure is to afford the grievant a meaningful remedy. Remedies shall cover a broad range of reasonable and effective resolutions. Remedies include the following:

1. Replacement - Restoration of property by substituting a similar or like item. This will normally be ordered before monetary reimbursement is given. Replacement as a grievance remedy will only occur after the procedures of CCA Corporate and Facility Policy 14-6 have been followed.

2. Reimbursement - Money will be given for items lost or destroyed. The value to be reimbursed will be determined by the Warden/Administrator. Reimbursement as a grievance remedy will only occur after the procedures of CCA Corporate and Facility Policy 14-6 have been followed.

3. Change of procedures or practices appropriately related to the complaint or conditions;

4. Correction of records; or

5. Other remedies, as appropriate

L. **APPEAL**

1. If a grievant is not satisfied with the decision of the Facility Grievance Officer, the grievant may appeal to the Warden/Administrator or designee by completing the Request for Warden/Administrator Review portion of the grievance form and submitting this form to the Warden/Administrator. The Warden/Administrator or designee's decision is final unless otherwise specified in the facility management contract.

AT THIS FACILITY, ADDITIONAL APPEAL PROCEDURES ARE AS FOLLOWS:

i. If the inmate is not satisfied with the Warden's response, the inmate may appeal to the Contract Monitor within five (5) days of receipt of the Warden's decision.

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

ii.   If the inmate is not satisfied with the Contract Monitor's response, the inmate may appeal to the Director DC Department of Corrections within five (5) days of receipt of the Contract Monitor's decision.

iii.  All appeals must have the original grievance and response attached when filed.

iv.   The Grievance Officer will log all appeals and forward the appeal, along with any supporting documentation, to the appropriate level of appeal office in accordance with Department Order 4030.1D.

2.  The Warden/Administrator or designee will review the issue of the grievance and the decision to determine if the grievance has been appropriately addressed. The Warden/Administrator can obtain and review any information necessary to render a decision as to the appeal.

3.  A copy of the completed grievance form will be returned to the Facility Grievance Officer who will forward a copy to the inmate/resident.

4.  Barring extraordinary circumstances, a grievance will be considered settled if the decision at any step is not appealed by the inmate/resident within the given time limit.

5.  Grievances which are prematurely appealed to the Warden/Administrator or designee will be returned without review.

M.  **RECORDS**

1.  Records regarding the filing and disposition of grievances shall be collected and maintained systematically by the Facility Grievance Officer through either hard copy or computerized form. The record shall include a log showing the following:

   a.   grievance number;

   b.   date of receipt;

   c.   name of grievant;

   d.   subject of grievance;

   e.   disposition date;

   f.   brief description of the disposition; and

   g.   appeal results, if any.

   This log will be forwarded to the Corporate Quality Assurance Department on a monthly basis.

2.  Record Retention. Records will be retained according to CCA Corporate and Facility Policy 1-15.

3.  Record Location. No copies of grievances shall be placed in an inmate/resident's file.

4.  Confidentiality. Records regarding the participation of an individual in the grievance procedures will not be available to employees or inmates/residents, except for clerical processing of records by CCA. Employees participating in the disposition of a grievance shall have access to records essential to the resolution of the grievance.

N.  **DISTRIBUTION AND TRAINING**

A copy of this Policy and Procedure will be available to each staff member currently employed and for each inmate/resident currently housed at the facility. All new staff will receive a presentation on this Policy and Procedure during pre-service training. New inmates/residents will be informed of the grievance procedure upon entry to the facility and a copy will be

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

available in the inmate/resident handbook or library.  If there is difficulty in understanding the procedure, every effort shall be made to explain the policy and procedure on an individual basis.

**O.      AT THIS FACILITY, ADDITIONAL PROCEDURES ARE AS FOLLOWS:**

A copy of the Grievance Log will be provided to the Contract Monitor on a monthly basis.

## 14-5.6  REVIEW:

The General Counsel and the Vice President, Operations will review this policy on an annual basis.

## 14-5.7  APPLICABILITY:

All CCA facilities except those facilities that are required to follow the Contracting Agency's grievance policy

## 14-5.8  ATTACHMENTS:

1.      Form 14-5A - Inmate/Resident Grievance Form

2.      Form 14-5B – Grievance Extension Notice

3.      Other Forms for this facility are as follows:

        **NONE**

## 14-5.9  REFERENCES:

ACA Standards.  The ACA Standards for this facility are:

3-4271

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

Grievance No.:_____          **Form 14-5A – For Official Use Only**

███████████████████████████████████████████████████████████

Name (Print): _____
                    Last Name                    First                    Middle Initial

Number: _____  Housing Assignment: _____

INFORMAL RESOLUTION ATTEMPTED?    Yes _____    No _____
NAME OF STAFF CONTACTED _____

███████████████████████████████████████████████████████████

_____
_____
_____
_____
_____
_____

███████████████████████████████████████████████████████████

_____
_____

Inmate/Resident's Signature: _____  Date Submitted: _____

███████████████████████████████████████████████████████████

_____
_____
_____
_____
_____

GRIEVANCE OFFICER'S DECISION

_____
_____
_____

Grievance Officer's Signature: _____  Date:_____
Inmate/Resident's Signature (upon receipt): _____  Date: _____

APPEAL:   Yes _____   No _____     STATE REASON (S) FOR APPEAL: _____
_____
_____
_____

WARDEN/ADMINISTRATOR'S RESPONSE

_____
_____
_____

Warden/Administrator's Signature: _____  Date: _____
Inmate/Resident's Signature (upon receipt) _____  Date: _____

Revised 02/01/02

Form 14-5B

# GRIEVANCE EXTENSION NOTICE

INMATE'S NAME:_____

INMATE'S NUMBER:_____ HOUSING ASSIGNMENT:_____

DATE:_____ GRIEVANCE NUMBER#_____

This is to inform you that your grievance will not be answered by the seven (7) day deadline. More time is necessary to complete the investigation of your complaint.

Justification:_____

_____

_____

The Warden/Administrator has granted a _____day extension which means that your grievance will be answered and returned to you by _____.

Facility Grievance Officer's Signature:_____ Date:_____

Inmate's Signature:_____ Date:_____

# EXHIBIT D



# DISTRICT OF COLUMBIA
# DEPARTMENT OF CORRECTIONS

# Program S

| | |
|---|---|
| **OPI:** | **DIR** |
| **Number:** | **4030.1E** |
| **Date:** | **July 1, 2004** |
| **Subject:** | **Inmate Grievance Procedures (IGP)** |

1. **PURPOSE AND SCOPE.** To update administrative procedures through which inmates of the District of Columbia Department of Corrections (DOC) may seek formal redress of their grievances.

2. **POLICY.** It is DOC policy to provide an administrative means for expression and resolution of inmate problems through written complaints, responses and appeal.

3. **APPLICABILITY**

   a. This Program Statement (PS) applies to persons housed in correctional facilities operated under the authority of the DOC.

   b. Inmates housed in contract prison facilities shall use the contractor's grievance process, noting the contractor to be responsible for day-to-day operations within the affected facility. Inmates housed in contract prison facilities shall only file a grievance with the DOC when grievance appeal steps within the contractor's grievance process have been exhausted.

4. **NOTICE OF NON-DISCRIMINATION**

   a. In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Code section 2.1401.01 et seq., ("the Act") the District of Columbia does not discriminate on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, familial status, family responsibilities, matriculation, political affiliation, disability, source of income, or place of residence or business. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action.

   b. DOC prohibits discrimination regarding administrative decisions or program access for inmates.

5. **PROGRAM OBJECTIVES.** The expected results of this program are:

   a. Staff is available to counsel inmates on request.

b.    Inmate grievances will be resolved through formal procedures when informal means have failed.

c.    Written responses based upon full investigation and resolution when appropriate including the reasons for the decision shall be given to all inmate grievances within the prescribed time limits.

d.    Inmates will use this procedure and pursue claims in court only if dissatisfied with resolutions obtained from the IGP.

6.    **DIRECTIVES AFFECTED**

a.    **Directive Rescinded**

D.O. 4030.1D    Inmate Grievance Procedure (IGP) (5/4/92)

b.    **Directives Referenced**

1)    PS 2000.2        Retention and Disposal of Department Records (4/6/01)

2)    DO 3350.2C       Sexual Misconduct Against Inmates (12/10/98)

3)    PS 3800.3        Communications for Deaf and Hearing Impaired (9/30/03)

4)    PS 4020.1B       Orientation Program (7/1/04)

5)    PS 4022.1A       Community Correctional Centers Disciplinary Procedures (8/13/02)

6)    SO 5300.1C       Adjustment Board Procedures Detention Services (8/1/04)

7)    PS 4020.1A       Admission and Orientation Program (9/21/00)

8)    PS 4090. 2       Intake Screening (7/1/04)

9)    CA 93-2052       Women Prisoners of DCDC v. DC (6/17/97)

7.    **AUTHORITY.**  DC Code §24-211.02 Powers: Promulgation of Rules

8.    **STANDARDS REFERENCED**

American Correctional Association (ACA) 4th Edition Standards for Adult Local Detention Facilities 4-ALDF-2A-27, 4-ALDF-6B-01 and 4-ALDF-6B-02.

9.   **DEFINITIONS.**  For the purpose of this Program Statement (PS), the following definitions apply:

a.   **Grievance** – An administrative means for the expression and resolution of inmate/offender problems.

b.   **Non-Grievance Issues.**  In accordance with this directive the following issues cannot be grieved under this process:

    1)   Parole Commission decisions,
    2)   Decisions of the Adjustment or Housing Boards
    3)   Classification Committee decisions,
    4)   Requests under Freedom of Information Act,
    5)   Inmate Accident Claims, Tort Claims, and
    6)   Complaints filed on behalf of other inmates.
    7)   Inmate class action grievances or petitions

c.   **Reprisal** – Any overt or covert action or threat of action against an inmate/offender for the good faith use of, or participation in, the inmate grievance process.

d.   **Correctional Facilities**  - Any DOC institution, either contracted or owned by the DOC that houses adult inmates/offenders in a halfway house or jail.

10.   **RESPONSIBILITIES**

a.   This directive shall be implemented under the authority of the DOC Director.

b.   Wardens and the Community Residential Programs (CRP) Administrator shall ensure that an appropriate investigation is conducted and an adequate response is prepared for each grievance in accordance with the procedures set forth in this directive.

c.   Each facility shall maintain a sufficient supply of Inmate Request Slips for use in addressing informal complaints.

d.   Each facility shall maintain a sufficient supply of IGP forms for formal resolution.

e.   Each Housing Unit and Community Correctional Center (CCC) shall ensure that sufficient forms are available and accessible on the unit during his or her tour of duty.

f.   The IGP shall be available to inmates regardless of any disciplinary, classification, or other administrative or legal conditions affecting them.

g.   Employees shall not retaliate or allow other inmates to retaliate against an inmate/offender for participation in the Inmate Grievance Procedure.

11.   **INMATE/OFFENDER NOTIFICATION**

a.   The Warden or the Community Residential Programs (CRP) Administrator shall ensure that this PS and any other written directives pertaining to the Inmate Grievance Procedure (IGP) are readily available to all inmates housed in DOC correctional facilities.

b.   An orientation of the inmate/offender grievance procedure shall also be provided to each inmate/offender upon arrival at a correctional facility. During orientation each inmate/offender shall be given the opportunity to ask questions concerning the IGP and given an opportunity to have these questions answered orally.

c.   This PS shall be made readily available in the law library and case manager offices, posted on inmate/offender bulletin boards and, as appropriate, shall be described in inmate/offender handbooks.

d.   Female inmates/offenders shall be advised of the provisions of CA 93-2052 Women Prisoners v. DC and DO 3350.2C Sexual Misconduct Against Inmates (12/10/98), allowing them to through the inmate grievance form or notice to an employee or inmate representative on the Inmate Grievance Advisory Committee (IGAC) to report verbally or in writing instances of sexual harassment.

e.   The Warden shall ensure that non-English speaking inmates, inmates who cannot read or are otherwise impaired (physically or mentally), receive assistance in order to understand and access the IGP.

12.   **STAFF NOTIFICATION/TRAINING**

a.   The Deputy Director for Operations and CRP Administrator shall ensure that this PS and any other written directives pertaining to the IGP shall be made available to all staff assigned to correctional institutions.

b.   The Department's Training Academy shall include a discussion of the IGP PS as part of its Pre-service and In-service training curriculum for employees.

c.   Staff members shall have an opportunity to ask questions regarding the IGP and will be given an opportunity to have these questions answered orally.

d.   The Training Administrator shall maintain the signed acknowledgements on file.

13.  **INMATE GRIEVANCE PROCEDURE (IGP) COORDINATOR**

a.  The Warden and the CRP Administrator shall appoint an IGP Coordinator who shall:

1)  Coordinate activities and operations associated with IGP retrieval, distribution, tracking, database entry, monitoring and establishment of resolution suspense dates.

2)  The CDF IGP Coordinator or designee shall collect grievances from each housing unit 'IGP" mailbox on a daily basis (excluding Saturdays, Sundays and legal holidays).

3)  Maintain the JACCS electronic data input and tracking.

4)  Apprise the affected Warden or CRP Administrator on the next business day when suspense dates are not met.

5)  If the inmate/offender is transferred to another facility under the jurisdiction of or contract with DOC, the IGP Coordinator shall forward the response to the IGP Coordinator at the affected facility.

6)  The IGP Coordinator where the inmate is located shall ensure that the response is forwarded to the inmate/offender and a copy placed in the inmate's official institutional record.

b.  The Director and Deputy Director shall assign staff to perform the above stated duties at the respective appeal levels.

14.  **GRIEVANCE PROCESS**

a.  **Informal Resolution**

1)  Executive staff, Chief Case Managers, Case Managers, Correctional Supervisors, Correctional Counselors and Housing Unit Officers shall make every attempt to keep the channels of communication open between staff and inmates/ offenders and shall informally resolve issues expeditiously whenever possible.

2)  Whenever an inmate/offender has a dispute or complaint, the inmate/offender should, whenever appropriate and possible, first seek to resolve this situation informally by completing an Inmate Request Slip or verbally notifying and discussing the complaint with the relevant parties or an appropriate DOC employee or manager.

3)   Inmate Request Slips, for the purpose of informal resolution, shall be placed in the institutional or CCC mailbox and not in the IGP mailbox.

4)   The staff person receiving the initial complaint shall discuss and document his or her efforts to informally resolve the complaint at this level within 7 calendar days.

**b.   Formal Resolution**

1)   Whenever an inmate/offender has not been able to resolve a complaint through informal means, he or she may file a formal grievance by completing an IGP Form 1 (Attachment A).

2)   DOC also strictly prohibits reprisals against inmates/offenders for the good faith filing of grievances or legal actions. Inmates who believe they have been subjected to reprisals for using the IGP may submit a subsequent grievance seeking a remedy.

3)   The inmate/offender must attach documentation of efforts to reach informal resolution.  Each grievance must pertain to one specific incident, charge or complaint.

4)   Inmates/offenders shall not submit duplicate copies of the same grievance.

5)   Inmates may request IGP Forms from any staff member who is assigned to his or her housing unit and the affected staff member shall ensure that inmates who request an IGP Form are provided a form during his or her shift or tour of duty.

6)   If an IGP Form 1 cannot be obtained, an inmate/offender may submit his or her grievance on standard, letter-sized paper.  This grievance should contain the following information:

a)   The name and DOC number of inmate/offender filing the grievance;

b)   The name of the institution or community correctional center where the inmate/offender is housed;

c)   The nature of the complaint or grievance, date of occurrence, and the remedy sought;

d)   The inmate/offender's signature; and

e)   Date.

7)  Whenever a grievance does not receive a response within the prescribed response time as established in this PS:

   a)  The inmate/offender may attach a copy of the grievance to the IGP Form 2 or 3 as is appropriate and forward it to the next step in the grievance process for response.

   b)  An inmate/ offender may waive this right if he or she has agreed in writing to an extension of the allowable response time.

   c)  The specific length of the extension shall also be stated in writing.

8)  An inmate/offender's failure to adhere to any of the prescribed requirements of this PS can result in a grievance being dismissed. However, if an inmate/offender can provide and explanation why they do not have a receipt or if they are appealing to the next level due to no response within the time limit allotted and is without a decision for the level below, these irregularities will be excused.

9)  Complaints listed as non-grievance issues shall also be dismissed.

15.  **PROCEDURES FOR FILING AN INMATE/OFFENDER GRIEVANCE**

   a.  **Inmates at CDF**

   1)  Each formal grievance must be filed within 15 calendar days of the incident that precipitates the filing of a grievance or within 15 days when the inmate/offender became knowledgeable of the incident that he or she believes has cause for filing of a grievance.

   2)  Inmates/offenders shall use Blue IGP Form 1 (Attachment A) to file a grievance. If an IGP Form 1 cannot be obtained, an inmate/offender may submit the grievance on standard, letter-sized paper.

   3)  A secured IGP collection box shall be placed in a location accessible to all inmates. The inmate/offender shall place the IGP form in the locked box marked "GRIEVANCES."

   4)  Inmates housed in segregation units shall deposit the IGP form in the locked box marked "GRIEVANCES" during their individual recreation time. An inmate in this status may also submit the IGP to their assigned case manager or a supervisor, having first placed the IGP form in a sealed envelope. The case manager or supervisor shall then place the IGP form in the locked box marked "GRIEVANCES".

b.   Community Correctional Center

1)   Inmates/offenders housed in contract halfway houses shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts.

2)   Inmates/offenders housed in contract halfway houses may file an IGP with the DOC Community Residential Programs (CRP) Administrator

3)   Offenders who are housed in a contract halfway house shall submit the IGP to the DOC Community Residential Administrator.

c.   **IGP Coordinator**

1)   The IGP Coordinator or designee shall collect grievances from each CDF housing unit locked grievance box daily, Monday through Friday.

2)   The CRP Administrator or designee shall receive IGPs through the mail.

3)   The IGP Coordinator shall inform the inmate/offender in writing of the appropriate administrative procedure if the request or appeal is not acceptable under the IGP.

4)   The IGP Coordinator shall generate the inmate/offender receipt using the Crystal Report "G – IGP Grievance Receipt" (Attachment B).

5)   The IGP Coordinator shall forward the inmate/offender receipt via the institutional mail.

6)   The IGP Coordinator shall input required complaint data into the JACCS "Grievance" Data Entry Screen (See Attachment C) to include:

a)   Grievance Entry Information - The IGP Codes (Attachment D) shall be used for the JACCS Grievance Type code to indicate the subject of the complaint in order to permit efficient reporting, tracking and monitoring of all inmate/offender complaints, on all IGP logs and reports.

b)   Submitted for Review Information

c)   Referred to Investigation

d)   Extension of Time requested and new date for response if the inmate/offender consents

e)   Finding Response

f)   Final Appeal Ruling (when applicable)

7)  The IGP Coordinator shall scan the IGP document image into JACCS.

8)  The IGP Coordinator shall then forward the complaint to the appropriate manager for investigation and resolution, along with a photocopy to the affected Warden.

d.  **Investigation**

1)  Staff who are implicated or involved in a grievance are prohibited from investigating that grievance.

2)  The manager shall impartially investigate the complaint and make every effort for reasonable resolution.  Resolution may result in a further assessment and improvement of management or operational controls.

3)  Inmates/offenders may not participate in the resolution of an inmate's/offender's grievance.

e.  **Response to IGP**

1)  The manager shall provide a written response in memorandum format via the IGP Coordinator to inmate/offender grievances within 21 calendar days following receipt of the grievance.

2)  The affected Warden shall review and approve/disapprove or otherwise revise the response.

3)  Inmates/offenders shall be provided with written justification for any decision that is rendered on their grievance or grievance appeal.

4)  Upon satisfactory completion of the complaint resolution, the Warden shall return the IGP to the IGP Coordinator for distribution to the inmate.

5)  In any instance when the IGP Coordinator, in consultation with the affected Warden and the investigating manager, determines that a sufficient response to a grievance cannot be rendered within the prescribed time limitation, the following conditions apply:

a)  The affected inmate/offender must be notified in writing of the need for the extension and of the specific length of the extension.

b)  The inmate/offender must agree in writing to the extension.

c)  Otherwise, when a grievance does not receive a response within the prescribed response time, as established in this PS, the

inmate/offender may proceed to the next step in the grievance procedure.

16. **PROCEDURES FOR FILING AN APPEAL**

a. **Central Detention Facility**

1) If an inmate housed at the CDF is not satisfied with the Warden's response to a grievance, he or she may file an appeal to the Deputy Director.

2) This appeal shall be filed within 5 calendar days of receipt of the grievance response from the Warden, using Green IGP Form 3 (Attachment F). The appeal shall be accompanied by a copy of the original grievance and the Warden's response and supporting documentation. If an IGP Form 3 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper.

3) The Deputy Director shall respond to an appeal within 21 calendar days following its receipt.

b. **Corrections Corporation of America Correctional Treatment Facility**

1) Inmates/offenders housed in the CTF shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts.

2) The CCA Warden shall ensure that sufficient grievance and appeal forms are available on the housing units at the CTF.

3) If the inmate/offender is not satisfied with his or her response from the CTF Warden he or she may file an appeal to the Deputy Director within 5 calendar days, using Green IGP Form 2 (Attachment F) or plain letter-size paper. If an IGP Form 2 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper. This appeal must be accompanied by copies of the original grievance and responses, and appropriate support documentation, from the CCA/CTF Warden.

4) The Deputy Director or designee shall investigate and respond to the appeal within 21 calendar days following its receipt.

c. **Contract Community Correctional Center**

1) If an inmate/offender housed in a contract community correctional center is not satisfied with his or her response from the CRP Administrator he or she may file an appeal to the Deputy Director within 5 calendar days, using Pink IGP Form 2 (Attachment E). If an IGP Form 3 cannot be obtained, an

inmate/offender may submit the grievance on standard letter-size paper. This appeal must be accompanied by copies of the original grievance and responses, and appropriate support documentation, from the CRP Administrator.

2)  The Deputy Director or designee shall respond to the appeal within 21 calendar days following its receipt.

d.  **Appeals Process – Final Level**

1)  As a final appeal, an inmate/offender housed in a correctional facility under the jurisdiction of or contract with DOC, who is dissatisfied with an appeal decision rendered by the Deputy Director may submit his or her grievance to the Director within 5 calendar days following the receipt of a grievance appeal response.

2)  The Yellow IGP Form 4 (Attachment G) shall be used for filing an appeal to the Director.  Appeals to the Director must be accompanied by the original grievance along with the corresponding responses. If an IGP Form 4 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper.

3)  The Director shall respond to an inmate's/offender's appeal within 21 calendar days following its receipt.

4)  The Director shall be the final level of appeal for each inmate/offender who files a Grievance within the DOC Inmate Grievance Procedure.

## 17.  PROCEDURES FOR FILING AN EMERGENCY GRIEVANCE

a.  Emergency grievances shall be defined as matters in which an inmate/offender would be subjected to substantial risk of personal injury, or serious and irreparable harm, if the inmate/offender filed the grievance in the routine manner with the normally allowed response time.

b.  The inmate/offender must prominently label and identify the grievance as an "Emergency Grievance" at the top of the IGP Form 1 and state the nature of the emergency.

c.  The inmate/offender shall file the emergency grievance in a sealed envelope; also marking it as an emergency grievance.  The inmate/offender shall address his or her Emergency Grievance to the lowest administrative level at which an appropriate remedy can be achieved (i.e., CRP Administrator, Warden, or Director).

d.    If an inmate's/offender's grievance is of a sensitive nature and he/she has reason to believe that he/she would be adversely affected if it was to become known at the institutional level, he/she may file the grievance directly with the Director.  All such Emergency Grievances may be forwarded via the regular institutional mail.

e.    The IGP Coordinator shall immediately review and consult with the Warden, or Administration/CRP Administrator to determine if the complaint is of an emergency nature as defined in this directive.

f.    The inmate shall be informed if the grievance is not accepted as an emergency grievance and that the grievance shall be treated as a regular grievance.

g.    The following special provisions shall apply to Emergency Grievances:

1)    An emergency grievance shall be responded to within 72 hours of its receipt.

2)    Within 48 hours of receiving a response to the emergency grievance, an inmate/offender may appeal to the next level of the IGP appeal process.

## 18.  REPORTING

a.    Each IGP Coordinator shall print the Crystal Report "G – IGP Complaint Log" (Attachment H) that records all formal grievances entered in JACCS under the IGP. Not later than the 10th day of each month, a copy of this log, reflecting grievances filed during the previous month, shall be forwarded through the affected Deputy Director.

b.    Each DOC official who renders a decision on an Inmate Grievance Appeal shall print the Crystal Report "G – IGP Appeal Log" (Attachment I) that records all appeals entered in JACCS under the IGP.  Not later than the 10th day of each month, a copy of this log, that reflects appeals filed during the previous month, shall be forwarded through the affected Deputy Director to the Director.

c.    The IGP Coordinator shall print the Crystal Report "G – Unresolved Grievance Log" (Attachment J) that tracks and monitors the progress of grievances remaining unresolved more than 22 days after receipt.  Not later than the tenth 10th day of each month, a copy of this log, which reflects all unresolved grievances, shall be forwarded through the affected Deputy Director to the Director.

d.    All records, logs, and reports that pertain to an inmate/offender grievance shall be maintained in accordance with the DOC Records Retention and Disposal Schedule.

19.  **EVALUATION**

a.  **Internal Program Review.**  When managers determine that the results of an inmate/offender grievance point to systemic deficiencies, appropriate improvements shall be taken. Improvements may include recommendations for procedural changes to correct systemic problems, refresher training, counseling or discipline when the investigation findings clearly point to this as the appropriate action.

b.  **Annual Statistical Summary Report.**  The Office of Management Information and Technology Services shall maintain the database and provide an annual statistical summary of the DOC IGP and submit it to the Director and the Office of Internal Controls, Compliance and Accreditation.  This summary shall be provided by the 21st day of October for the preceding fiscal year.

c.  At a minimum, the reviews described above, shall include assessments of the following operational factors:

   1)  Compliance with Response Time – An assessment to determine if inmate grievances are responded to within the prescribed time periods.

   2)  Availability of Forms – A determination of the accessibility and availability of the forms used to submit grievances.

   3)  Response to Grievances – An analysis to determine if appropriate responses and remedies are being provided in response to grievances.

   4)  Credibility of the System – An assessment of inmate knowledge of, satisfaction with, and confidence in the IGP.

   5)  Conclusions and Recommendations – An evaluation of the data generated through the IGP process (i.e., number of grievances, types of grievances filed, number and types of grievances by institutions).  This data shall be used to develop specific conclusions and recommendations regarding Department operations and the DOC IGP.

d.  **Senior Executive Review.**   The designated senior executive manager assigned to evaluate the IGP process shall conduct not less than annual audits and monitor compliance at subsequent reviews.

e.  **Risk Management.**  The Risk Manager shall review crystal reports and annual audits and in conjunction with the Warden determine plans of action where warranted to improve safety, quality and program performance.

## 20.  CONFIDENTIALITY

Records concerning an individual's participation in the IGP are considered confidential. These records shall be made available in accordance with the established procedures for confidential records and information, as contained in the D. C. Freedom of Information Act.


Odie Washington
Director


## ATTACHMENTS

A.  Blue IGP Form 1 (Administrative Remedy to Warden/CRP Administrator)
B.  Crystal Report – "IGP Grievance Receipt"
C.  JACCS Grievance Data Entry Screen
D.  Grievance Codes
E.  Pink IGP Form 2 (CCC Inmate Appeal to Deputy Director)
F.  Green IGP Form 3 (CDF and CCA/CTF Inmate Appeal to Deputy Director)
G.  Yellow IGP Form 4 (Appeal to Director)
H.  Crystal Report - Monthly IGP Complaint Log (IGP Form 6)
I.  Crystal Report - Monthly IGP Appeal Log (IGP Form 7)
J.  Crystal Report - Unresolved IGP Log (IGP Form 8)

EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIMON BANKS

               Plaintiff,

        v.

JOHN CAUFIELD, et al.,

               Defendants.

Civil Action No. 05-1514 (ESH)

## AFFIDAVIT OF JOYCE ALLEN

I, JOYCE ALLEN, being duly sworn according to law, upon my oath, depose and say:

1.    I have been employed by Corrections Corporation of American (hereinafter "CCA") since October 2000. I currently am the Facility Grievance Officer at the Correctional Treatment Facility ("CTF") operated by Corrections Corporation of America in Washington, D.C.

2.    I have reviewed the allegations contained in Plaintiff's Complaint.

3.    I have personal knowledge that the matters in this Affidavit are true and accurate, and submit this Affidavit in support of Defendant Caulfield's Motion to Dismiss.

4.    As Facility Grievance Officer, I am familiar with the CCA grievance policies and procedures regarding the available administrative remedies for inmates and detainees. My responsibilities include overall coordination of the grievance procedure at CTF, assigning a number to each grievance, coordinating the investigation of grievances,

completing the Grievance Officer's Report utilizing Form 14-5A, and maintaining all grievance records and documents, including the permanent grievance log.

     5.    The inmate grievance procedure contained in CCA Policy 14-5 (attached hereto as Attachment A) was in effect at the time of Simon Banks' incarceration at CTF.

     6.    Upon inmates' arrival to the facility, CCA/CTF provides an Inmate Handbook, which contains a summary of the facility grievance policies and procedures. Additionally, inmates have access to the complete grievance policy at the CTF Law Library or through facility staff.

     7.    In order for an inmate or detainee to exhaust his administrative remedies, he should follow the facility grievance procedures and carry the grievance through to its finish. Prior to pursuing the formal grievance process, inmates and detainees should first avail themselves to the Informal Resolution Process by submitting an Inmate Request Slip or speaking with any staff member concerning the issue prior to submitting a grievance. If the complainant is dissatisfied with that the result, only then may the formal process be initiated. At CTF, the formal grievance process contains four steps:

     a.    Inmates must initially send grievances, on the CCA Inmate/Resident Grievance Form (Form 14-5A), to the Grievance Officer within seven (7) days of the alleged incident. (Step One). The time for filing begins from the date the problem or incident became known to the inmate/resident.

     b.    If the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by

- 2 -

completing the Request for Warden/Administrator Review portion of the Grievance Form.. (Step Two).

        c.    If the inmate is unsatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response.(Step Three).

        d.    The inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision (Step Four).

        8.    If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the administrative remedies available. If an inmate or detainee fails to cooperate with the investigation process, he has failed to carry the grievance through to its finish and thus has failed to exhaust the administrative remedies available.

        9.    Additionally, the Grievance Policy includes procedures for inmates/residents to file Emergency Grievances. Grievances may be considered Emergency Grievances if the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury. If the grievant asks that the grievance be considered an emergency and details the basis for needing an immediate response, the Facility Grievance Officer, will, within 24 hours review the grievance to determine if an emergency exists. If an emergency exists, the Facility Grievance Officer will take initial action to resolve the grievance within twenty-four (24) hours of receipt. After initial action has been taken and within seventy-two (72) hours of receipt of the emergency grievance, the Facility Grievance Officer will prepare and issue a written decision to the Grievant.

-3-

10.     I have reviewed the grievance log for calendar years 2005-2006 and identified a total of five grievances which address the issues raised in Plaintiff's Complaint.

11.     On November 1, 2005, Inmate Banks submitted Grievance 05-3642 complaining that his 29 previous requests for a dental appointment and treatment in connection with purported dental pain were denied. Inmate Banks requested a dental appointment and a transfer to a facility where his private dentist could see him. The grievance was denied on November 7, 2005, with the explanation that the medical contractor is under the control of the District of Columbia Department of Corrections and CCA had no authority to provide dental care. Inmate Banks acknowledged receipt of this decision on November 7, 2005 and did not appeal. A true copy of the Facility Grievance Officer's file of Grievance 05-3642 is Attachment B hereto.

12.     On October 31, 2005, Inmate Banks submitted Grievance 05-3643 complaining that his cell was too cold, with temperatures ranging between 35-40 degrees Fahrenheit. This grievance was resolved on November 7, 2005, and Inmate Banks acknowledged receipt of the decision on the same day. Inmate Banks did not properly appeal. A true copy of the Facility Grievance Officer's file of Grievance 05-3643 is Attachment C hereto.

13.     On December 3, 2005, Inmate Banks submitted Grievance 05-3798 again complaining about cold temperatures. This grievance was resolved and acknowledged on December 9, 2005. Inmate Banks did not appeal. A true copy of the Facility Grievance Officer's file of Grievance 05-3798 is Attachment D hereto.

14.     On December 3, 2005, Inmate Banks submitted Grievance 05-3824 asserting that the law library had been closed for four out of the past six weeks and that

copies of cases were not timely provided. He requested that copies of case law be provided and that CTF purchase electronic copies of Supreme Court decisions. On December 27, the Grievance Officer reported that the law library was only closed for the Thanksgiving holiday, and that it was unknown why Inmate Banks did not show up during his scheduled hours on November 11 and 18 when other inmates from his housing unit were escorted to the library. In addition, the Grievance Officer indicated that a review of Inmate Banks' records show that Inmate Banks did not have any initial pleadings or pending criminal matters before the court, and that Inmate Banks was provided 90 percent of his requests. Inmate Banks acknowledged receipt of the decision on December 27, 2005 and appealed disputing that he received research material and that the "law library was a dysfunctional mess." The Warden replied to the appeal indicating that Inmate Banks was receiving all appropriate legal materials as requested and suggested that Inmate Banks request more library time. A true copy of the Facility Grievance Officer's file of Grievance 05-3824 is Attachment E hereto.

15. On January 23, 2006, Inmate Banks submitted Grievance 06-245 complaining that the law librarian failed to copy 11 cases which hindered "sending excerpts of these case cites to my outside word processors/typists" and that since he could not receive a printout of a motion the same day he requested it, that he "handwrote an emergency request ... and mailed it." The librarian and Principal of the Education Department, which oversees the Law Library, replied that the CCA/CTF policy on copying for inmates dictates that CTF is only required to provide free copies of documents that will be filed in court and that those documents had been provided as requested. Additionally, she clarified that inmates may hand-copy any case citations or quotations which are contained in library books. The grievance was deemed resolved by the Grievance Officer on January 30, 2006, and Inmate

Banks acknowledged receipt of that decision on the same day. Inmate Banks did not appeal, and thus, failed to exhaust his available administrative remedies regarding access to the law library. A true copy of the Facility Grievance Officer's file of Grievance 06-245 is Attachment F hereto.

16. I hereby attest that Inmate Banks failed to properly exhaust the administrative remedies available to him for the allegations contained in his Third Amended Complaint.

FURTHER AFFIANT SAYETH NAUGHT.

_Joyce Allen_
Joyce Allen

WASHINGTON                          )
                                    ) ss.
DISTRICT OF COLUMBIA                )

SUBSCRIBED AND SWORN before me this 8th day of January, 2007, by Joyce Allen.

_Phoenix C. Ishmon_
Notary Public

My Commission Expires:

PHOENIX C. ISHMON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 31, 2011

1722418.1.

EXHIBIT F

Grievance No.: 3649    3692

Form 14-5A - For Official Use Only.

## CCA INMATE/RESIDENT GRIEVANCE FORM

Name (Print): Banks, Simon

Number: 269768    Housing Assignment: EBA — Cell 10

INFORMAL RESOLUTION ATTEMPTED?    Yes ✓    No _____

NAME OF STAFF CONTACTED _____

STATE GRIEVANCE (include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Monday, Oct 3), 2005 (I have no blanket)
During the past 7 days (one week)
the cells, in particular my cell BW it
has been extremely cold with temperature
ranging between 35° and 40° (below) zero
virtually all inmates are complaining.
The Central Region seems to have received heat and the

Requested Action    provide blankets
turn heat on in cells, and compensate me for
7 days of misery and health-hazardous temperatures

Inmate/Resident's Signature: Simon Banks    Date Submitted: 10-31-05

### GRIEVANCE OFFICER'S REPORT

Per Mrs. J. Smith the maintenance
supervisor, the heat has been turned
on. Inmate Banks failed to attempt to
resolve this issue informally by submitting
an inmate request help to his house manager

### GRIEVANCE OFFICER'S DECISION

on a blanket. Resolved.

Grievance Officer's Signature: _____ R. Allen    Date: 11/2/05

Inmate/Resident's Signature (upon receipt): Simon Banks    Date: 11-9-05

APPEAL:  Yes _____  No _____    STATE REASON (S) FOR APPEAL: _____

_____

_____

### WARDEN/ADMINISTRATOR'S RESPONSE

_____

_____

Warden/Administrator's Signature: _____    Date: _____

Inmate/Resident's Signature (upon receipt) _____    Date: _____

Form 14-5A 02 01 02

Dr. Simon Banks
Doctor of Laws
P.O. Box 17052
Alexandria, VA 22302
And
CTF
1901 E Street, S.E., #269768
Washington, DC 20003

October 31, 2005

**202-698-3301 VIA FACSIMILE**
F.E. Figueroa, Warden
CTF
1901 E Street, S.E.
Washington, DC 20003

Re: Simon Banks, #269768 Grievance regarding extremely cold climate conditions at CTF E2A

Resolution previously attempted, yes.

### ~~GRIEVANCE~~

On Monday, October 31, 2005 (I have no blanket) and during the past seven days (one week) the cells, in particular my cell, room 16, has been extremely cold with temperatures ranging between thirty-five degrees and forty degrees. Virtually all inmates at E2A are complaining. The center room for gathering of inmates seems to have received heat on this day. However, the temperatures outside are higher.

**Requested action:** Provide blankets, turn on heat in cells and compensate me for seven days of misery and health-hazardous conditions.

Simon Banks
10/31/05

Grievance Appeal to Warden submitted via Internal Grievance Process as well as Facsimile and First Class Mail



**CORRECTIONS CORPORATION OF AMERICA**

*1901 E Street SE*
*Washington DC 20003*

# <u>*MEMORANDUM*</u>

TO: _____COS / C/O ☒ Brown_____

FROM:      J. Allen
           Grievance Coordinator

DATE: _____  Return Date: _____

RE:        Attached Grievance (s) 3643

Please investigate the attached grievance (s) and submit a response to my
officer within <u>three days of the above date.</u>  If additional time is needed for
further investigation please notify this office <u>in writing.</u>  Thanking you in
advance for your assistance in this matter.

<u>**UNIT MANAGERS/SUPERVISORS PLEASE MEET WITH THE
INMATE AND OBTAIN SIGNATURES.**
**OBTAIN STATEMENTS FROM STAFF INVOLVED, OR ANY
OTHER SUPPORTING DOCUMENTATION.**</u>

## CCA INMATE/RESIDENT GRIEVANCE FORM       DEC 5 PM 5:04

Name (Print): Banks                    Simon
           Last Name                First                                    Middle Initial

Number: 269768          Housing Assignment: E2A

INFORMAL RESOLUTION ATTEMPTED?    Yes ✓    No _____

NAME OF STAFF CONTACTED  Warden F. Guevara, et.

**STATE GRIEVANCE** (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

From November 16 2005 To the Present 12-3-2005 12 and continuing, with Exception of 2 Days when temperatures outside Rose above 60 My cell, was as well as all other cells in the unit, have been Extremely cold with Temperatures Fluxuating From 25 to 40 in the cells. On Dec 2, 2005 we were issued Jackets. The Temp in my cell was Extremely cold. I have a cold as consequence!

**Requested Action**  Damages For Pain, suffering vio of Const. Rights, and For Maintaining This Deprecatory condition, and For Negligent and Deliberate indifference etc.

Inmate/Resident's Signature: Simon Banks        Date Submitted: Dec 3, 2005

---

**GRIEVANCE OFFICER'S REPORT**

---

**GRIEVANCE OFFICER'S DECISION**

Temperatures were taken u/e 10° cell 77° to 80° so if you all unblock your cells from fab. paper, tape you will feel the inmate

Grievance Officer's Signature: Kalee Smith _____ Date: 12-9-05

Inmate/Resident's Signature (upon receipt): Simon Banks _____ Date: 12/14/05

*(handwritten margin note:)* I dispute these assertions as fabricated

APPEAL:  Yes _____    No ✗       STATE REASON (S) FOR APPEAL: _____

---

**WARDEN/ADMINISTRATOR'S RESPONSE**

---

Warden/Administrator's Signature: _____  Date: _____

Inmate/Resident's Signature (upon receipt) _____  Date: _____

Revised 02 01-02

**CORRECTIONS CORPORATION OF AMERICA**

1901 E Street SE
Washington DC 20003

## MEMORANDUM

TO:        J Smith - Maintenance

FROM:     J. Allen
          Grievance Coordinator

DATE:     12/5/05     Return Date:  12/8/05

RE:       Attached Grievance (s) 3799, 3798

Please investigate the attached grievance (s) and submit a response to my officer within three days of the above date. If additional time is needed for further investigation please notify this office in writing. Thanking you in advance for your assistance in this matter.

UNIT MANAGERS/SUPERVISORS PLEASE MEET WITH THE INMATE AND OBTAIN SIGNATURES. OBTAIN STATEMENTS FROM STAFF INVOLVED OR ANY OTHER SUPPORTING DOCUMENTATION.

## CCA INMATE/RESIDENT GRIEVANCE FORM

Name (Print): **BANKS    Simon (Doctor of Law)**

Number: **269768**    Housing Assignment: **269768**

NOV 28 2005

INFORMAL RESOLUTION ATTEMPTED?    Yes _____    No ✓_____
NAME OF STAFF CONTACTED    CCA Board of Dir/Dr's, Warden Figuroa via Facsimile

STATE GRIEVANCE (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary). 11-24-2005 (Deprivation of Dietary Health)

My Thanksgiving day was ruin by the irrational dietary Decision. On Thursday, Thanksgiving Day the CCA-CTF Dietary Dept (cooks, etc.) served me processed turkey (2 slices) for lunch while Non-Dietary inmates received turkey (unprocessed and absent hi-level of processed sodium) and 3 slices of sodium Laced-processed turkey for dinner. Others also recid peach pie.

Requested Action    1 plate of Barbecue chicken and one plate of fried fish (Not square fish) (whiting) and one slice of pie (peach, Apple, cherry, Blueberry) (Not cod)

Inmate/Resident's Signature: *Simon Banks*    Date Submitted: 11-26-05

### GRIEVANCE OFFICER'S REPORT

Sir. I came my self to talk to all of you and I brought extra chips. Every one was fine. DC

### GRIEVANCE OFFICER'S DECISION

We will serving frist you a gable. We will take care this time at Christmas time.

Grievance Officer's Signature: _____    Date: 12/02/05
Inmate/Resident's Signature (upon receipt): X *under protest sb*
*Simon Banks (unsatisfied)*    Date: 12/2/05

APPEAL:  Yes _____    No _____    STATE REASON (S) FOR APPEAL: _____

### WARDEN/ADMINISTRATOR'S RESPONSE

Warden/Administrator's Signature: _____    Date: _____
Inmate/Resident's Signature (upon receipt) _____    Date: _____

Revised 02-01-02

Grievance No.: _____    Form 14-5A - For Official Use Only

## CCA INMATE/RESIDENT GRIEVANCE FORM

DEC 5 PM 6:03

Name (Print): BANKS    Simon
_____    _____    _____
Last Name        First        Middle Initial

Number: 269768    Housing Assignment: E2A CTF

INFORMAL RESOLUTION ATTEMPTED?    Yes ✓    No _____

NAME OF STAFF CONTACTED _____

STATE GRIEVANCE (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Arbitrary retaliatory Abrupt cut off of Diet Tray
and Snack Bag subsequent to my Filing Grievance
Complaint Last Week For being issue processed-
Sodium Laced Turkey Slices For Lunch and For
Dinner on Thanksgiving Day while other inmates
Received Baked Turkey and Peach Pie.
I Have Not eaten For 3 Days Excepting Peanut Butter.

Requested Action Reinstate Diet Trays and Snack Bag and
Compensate Me For Each meal Deprived of From
November 29, 2005 To Date of Reinstated Diet Tray and Snack Bag

Inmate/Resident's Signature: Simon Banks DR of Law Date Resubmitted: 12-3-2005

## GRIEVANCE OFFICER'S REPORT

Sir,
I Do Not Understand what you Try to
Say. Can you Re-Write More. The
the Above-Referenced Speaks For Itself Banks

## GRIEVANCE OFFICER'S DECISION

Waiting

under protest. Grievance to Court
Simon Banks

Grievance Officer's Signature: _____    Date: 12/14/05

Inmate/Resident's Signature (upon receipt): _____    Date: _____

APPEAL: Yes _____    No _____    STATE REASON (S) FOR APPEAL: _____
_____
_____
_____

## WARDEN/ADMINISTRATOR'S RESPONSE
_____
_____
_____

Warden/Administrator's Signature: _____    Date: _____

Inmate/Resident's Signature (upon receipt) _____    Date: _____

Revised 02-01-02

EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. SIMON BANKS, J.D.                    )
                                         )
        Plaintiff                        )
                                         )
        v.                               )          Case: 1:07-cv-02115 (RCL)
                                         )
DISTRICT OF COLUMBIA, et al.             )
                                         )
                                         )
        Defendants                       )
                                         )

## DECLARATION OF STANLEY WALDREN

I, Stanley Waldren, being duly sworn according to law, upon my oath, depose and say:

1. I have been employed by the District of Columbia Department of Corrections (hereinafter "DOC") since November 28, 1983. I am the Acting Warden. Prior to holding the position as Acting Warden, I was the Deputy Warden for Operations.

2. I have reviewed the Allegations contained in Plaintiff's Complaint.

3. I have personal knowledge that the matters in this Declaration are true and accurate, and submit this Declaration in support of the District Defendants' Motion to Dismiss.

4. In my position as Acting Warden, I am familiar with the inmate grievance procedures used while prisoners are incarcerated at the DOC Central Detention Facility. (See Copy of DOC Directive 4030.1E, Inmate Grievance Procedures (IGP attached hereto as Attachment 1 and made a part hereof. I also know that there is a similar inmate grievance procedure for prisoners who are incarcerated at the Correctional Treatment Facility (CTF"), which is operated under contract by the Corrections Corporation of America in Washington, D.C.

5.  In order to for an inmate or detainee housed at either the CDF or the CTF to

exhaust his administrative remedies, he/she must follow the grievance procedure of the

facility at which they are housed and must carry the grievance through to its finish.

The final step in the grievance process for inmates house and both CDF and CTF is an

appeal to the Director of the D.C. Department of Corrections.

**FURTHER AFFIANT SAYETH NAUGHT.**


_12/14/07_
DATE

STANLEY WALDREN

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS<br><br>                    Plaintiff,<br><br>        v.<br><br>JOHN CAUFIELD, et al.,<br><br>                    Defendants. | Civil Action No. 05-1514 (ESH) |

## DEFENDANT CAULFIELD'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

Defendant John Caulfield, through counsel, files this Motion to Dismiss Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b) because Plaintiff has failed to exhaust the administrative remedies available to him pursuant to 42 U.S.C. § 1997e(a). This motion is supported by the following Memorandum of Points and Authorities and the pleadings on file with the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES AND AUTHORITIES

### I.    FACTUAL BACKGROUND

Inmate Banks filed his Third Amended Complaint on August 18, 2006, wherein he alleges that he: (1) did not have adequate dental care, (2) was exposed to cold temperatures, and (3) did not have reasonable access to the law library while he was incarcerated at the Correctional Treatment Facility ("CTF"). For the foregoing claims, Inmate Banks alleges that his constitutional rights provided under the Fourth, Fifth, and Fourteenth Amendments were violated.

Inmate Banks has not alleged or shown that he has exhausted administrative remedies available to him, as is required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Indeed, despite the fact that Inmate Banks was fully aware of his right to file and appeal grievances as set forth in the Inmate Handbook that all inmates are provided upon arrival at CTF, the record demonstrates that Inmate Banks did not follow the grievance procedure to the end with respect to any of the claims he alleges against Warden Caulfield.

## II.   LEGAL ARGUMENT

### A.   Plaintiff's Failure to Exhaust Administrative Remedies Warrants Dismissal of His Claims Against Warden Caulfield.

The PLRA requires inmates to exhaust administrative remedies before bringing a lawsuit. Under 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under § 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement promotes important interests, which include:

> (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.[1]

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, or whether they allege excessive force or some other wrong."[2]  Moreover, the United States Supreme Court recently clarified that even

---

[1] *See Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991).

[2] *See Jeanes v. United States Dep't of Justice*, 231 F.Supp.2d 48, 50-51 (D.D.C. 2002) (internal citations omitted).

inmates seeking only monetary relief must properly complete a prison administrative process that could provide some sort of relief, even if not monetary, before filing a § 1983 claim.[3]

As outlined, an inmate is required to exhaust all administrative remedies before filing a civil lawsuit. CTF provides an administrative grievance process, and all inmates, including Inmate Banks, are informed of the grievance procedures upon arrival at the facility.[4] Additionally, inmates have access to the complete grievance policy at the CTF Law Library or through facility staff.[5]

CTF's grievance procedures state that in order for an inmate or detainee to exhaust his administrative remedies, the inmate must follow the facility grievance procedures and carry the grievance through to its final conclusion.[6] The CTF grievance policy is as follows: Prior to pursuing the formal grievance process, inmates must first utilize the Informal Resolution Process.[7] Inmates may utilize this process by: (1) submitting an Inmate Request Slip; or (2) speaking with any staff member concerning the issue prior to submitting a grievance.[8] If the complainant is dissatisfied with that the result of the Informal Resolution process, only then may the formal process be initiated.[9] At CTF, the formal grievance process contains four steps.[10] First, the inmate must initially send the grievance, on the Corrections Corporation of America

---

[3] *See Woodford v. Ngo*, 126 S.Ct. 2378, 2380 (2006); *see also Booth v. Churner*, 532 U.S. 731 (2001) (dismissing the claims of an inmate who failed to exhaust all available administrative remedies).

[4] *See* J. Allen Aff. of 1/8/07 at ¶ 6, attached to Defendants' Motion to Dismiss as Exhibit 1.

[5] *Id.*

[6] *Id.* at ¶ 7.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

1722422.1

("CCA") Inmate/Resident Grievance Form (Form 14-5A), to the Grievance Officer within seven (7) days of the alleged incident.[11]  The time for filing begins from the date the problem or incident became known to the inmate/resident.  Second, if the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the request for Warden/Administrator Review portion of the Grievance Form.[12]  Third, if the inmate is unsatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response.[13]  Fourth, the inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision.[14]  If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the administrative remedies available.[15]

Additionally, the Grievance Policy includes procedures for inmates/residents to file Emergency Grievances.[16]  Grievances may be considered Emergency Grievances if the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury.[17]  If the grievant asks that the grievance be considered an emergency and details the basis for needing an immediate response, the Facility Grievance

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at ¶ 8.

[16] *Id.* at ¶ 9.

[17] *Id.*

Officer, will, within 24 hours, review the grievance to determine if an emergency exists.[18] If an emergency exists, the Facility Grievance Officer will take initial action to resolve the grievance within twenty-four (24) hours of receipt.[19] After initial action has been taken and within seventy-two (72) hours of receipt of the emergency grievance, the Facility Grievance Officer will prepare and issue a written decision to the Grievant.[20]

Inmate Banks did not properly utilize the general or emergency grievance procedures at CTF. The Grievance Log was electronically searched for grievances filed by the Plaintiff for the calendar years of 2005-2006.[21] While Inmate Banks did file grievances regarding his claims against Warden Caulfield, those grievances were not timely and/or not appealed to their final conclusion, demonstrating that Plaintiff failed to properly exhaust all available administrative remedies prior to bringing suit. As a result, his Third Amended Complaint must be dismissed.

### 1. Inmate Banks' Claim Regarding Dental Care

On November 1, 2005, Inmate Banks submitted Grievance 05-3642 complaining that his 29 previous requests for a dental appointment and emergency treatment in connection with purported dental pain were denied.[22] Inmate Banks requested a dental appointment and transfer to a facility where his private dentist could see him.[23] The grievance was denied on November 7, 2005, with the explanation that the medical contractor is under the control of the District of Columbia Department of Corrections and CCA had no authority to provide dental care.[24] Inmate

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at ¶ 10.

[22] *Id.* at ¶ 11.

[23] *Id.*

[24] *Id.*

Banks acknowledged receipt of this decision on November 7, 2005 and did not appeal.[25]

### 2. Inmate Banks' Claim Regarding Temperatures

On October 31, 2005, Inmate Banks submitted Grievance 05-3643 complaining that his cell was too cold, with temperatures ranging between 35-40 degrees Fahrenheit.[26] This grievance was resolved on November 7, 2005, and Inmate Banks acknowledged receipt of the decision on the same day.[27] Inmate Banks did not appeal.[28]

One month later, on December 3, 2005, Inmate Banks submitted Grievance 05-3798 again complaining about cold temperatures.[29] This grievance was resolved and acknowledged on December 9, 2005.[30] Inmate Banks did not appeal.[31]

### 3. Inmate Banks' Law Library Access Claim

On December 3, 2005, Inmate Banks submitted Grievance 05-3824 complaining that the law library had been closed for four out of the past six weeks, and that copies of cases were not timely provided.[32] On December 27, the Grievance Officer reported that the law library was only closed for Thanksgiving, and that it was unknown why Inmate Banks did not show up during his scheduled hours on November 11 and 18.[33] Further, the Grievance Officer indicated that a review of Inmate Banks' records show that Inmate Banks did not have any initial pleadings or pending criminal matters before the court, thus CCA was not required to provide Inmate

---

[25] *Id.*

[26] *Id.* at ¶ 12.

[27] *Id.*

[28] *Id.*

[29] *Id.* at ¶ 13.

[30] *Id.*

[31] *Id.*

[32] *Id.* at ¶ 14.

[33] *Id.*

Banks with assistance.[34]  In any event, Inmate Banks was provided 90 percent of his requests.[35]

Plaintiff acknowledged receipt of the decision on December 27, 2005 and appealed disputing that he received any percentage of service, and that the "law library was a dysfunctional mess."[36]  The Warden replied to the appeal indicating that Inmate Banks was receiving all appropriate legal materials as requested and suggested that Inmate Banks request more library time.[37]  After this step, if he was unsatisfied with this results, Inmate Banks had two more steps to follow in order to exhaust the administrative remedies available to him.[38]  Inmate Banks did not appeal the Warden's decision, and thus, did not follow all of the required steps.[39]

One month later, on January 23, 2006, Inmate Banks submitted Grievance 06-245 continuing his complaint that the law librarian failed to print out copies of 11 cases.[40]  The librarian replied that the CCA/CTF policy on copying for inmates dictates that CTF is only required to provide free copies of documents that will be filed in court, not research material that is otherwise available in the library.[41]  The grievance was deemed resolved by the Grievance Officer on January 30, 2006, and Inmate Banks acknowledged receipt of that decision on the same day.[42]  Inmate Banks did not appeal.[43]

---

[34] *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996).

[35] Ex. 1 (Allen Aff.) at ¶ 14.

[36] *Id.*

[37] *Id.*

[38] *Id.* at ¶ 7.

[39] *Id.* at ¶ 14.

[40] *Id.* at ¶ 15.

[41] *Id.*

[42] *Id.*

[43] *Id.*

## B.    Plaintiff's Complaint Contains a "Pleading Defect" and Must Be Dismissed.

The failure to exhaust administrative remedies raises a "jurisdictional challenge" under

the PLRA.  In this regard, in *Al-Owhali v. Ashcroft*, the court recently stated:

> Defendant further posits that even if the regulation had been
> implemented against plaintiff, [the inmate] has not exhausted his
> administrative remedies, as he is required to do, prior to initiating
> this lawsuit.  Because these challenges, like any jurisdictional
> challenge, "imposes on the court an affirmative obligation to
> ensure that it is acting within the scope of its jurisdictional
> authority," *Grand Lodge of the Fraternal Order of Police v.
> Ashcroft,* 185 F. Supp.2d 9, 13 (D.D.C. 2001), the "plaintiffs'
> factual allegations in the complaint...will bear closer scrutiny in
> resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for
> failure to state a claim." *Id.* at 13-14 (citations omitted).[44]

Likewise, in *Eldridge v. District of Columbia*, the court also treated the failure to allege

exhaustion as a pleading defect.[45]  This Circuit's treatment of the exhaustion issue comports with

the PLRA's unequivocal language, which states that "[n]o action shall be brought . . . until such

administrative remedies as are available are exhausted."[46]  Because the PLRA's exhaustion

requirement is jurisdictional, Defendants may raise this issue at any point or the Court may

consider it *sua sponte*.  Other circuits concur with this analysis.[47]

While there are other courts that take a different approach, by dismissing a case on the

---

[44] *See* 279 F.Supp.2d 13, 21 (D.D.C. 2003).

[45] *See* No. 02-7059, 2002 WL 31898173, at *1(D.C. Cir. Dec. 23, 2003).

[46] 42 U.S.C. § 1997(e).

[47] *See e.g., Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209 (10th Cir. 2003), petition
for cert. filed (April 26, 2004) (No. 03-10625); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th
Cir. 2000) (holding that "[a] prisoner must plead his claims with specificity and show that they
have been exhausted by attaching a copy of the applicable administrative dispositions to the
complaint, or in the absence of written documentation describe with specificity the
administrative proceeding and its outcome."); *Brown v. Toombs*, 139 F.3d 1102, 1004 (4th Cir.
1998) (holding that district courts should enforce the exhaustion requirement *sua sponte* if not
raised by the defendant.")

pleadings pursuant to an "unenumerated 12(b) motion," these courts still recognize that the PLRA gives prisons and their officials a valuable entitlement – the right *not* to face a decision on the merits – which courts must respect if a defendant chooses to invoke it.[48] For this reason, even if exhaustion were not jurisdictional, it is appropriate to resolve the issue at this stage.[49]

Because Plaintiff failed to provide the Court with any evidence that he complied with the PLRA exhaustion requirements, there is a pleading defect that mandates dismissal of Plaintiff's Third Amended Complaint.

### C. Plaintiff Fails to State Any Actual Injury Regarding Allegedly Cold Conditions.

With regard to all three claims against Warden Caulfield, Inmate Banks fails to allege that he suffered any specific physical injury with regard to the temperature of his cell at CTF. In a recent United States Supreme Court decision, the Court discussed the necessity of alleging an "actual injury" in order to acquire standing to prosecute an action for a claimed constitutional deprivation.

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of the courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.
>
> *   *   *

---

[48] *See e.g., Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) ("[T]he failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment."); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999).

[49] Even the minority of courts that generally do not permit defendants to raise exhaustion before summary judgment still permit defendants to raise the matter on a motion to dismiss when, as here, the complaint and attachments indicate that the plaintiff did not exhaust. *See e.g., Brown v. Croak*, 312 F.3d 109, 111 n.1 (3rd Cir. 2002); *Ray v. Kertes*, 285 F.3d 287, 295 n. 8 (3d Cir 2002) ("We do not suggest that defendants may not raise failure to exhaust as the basis for a motion to dismiss in appropriate cases.")

1722422.1

Of course the two roles briefly and partially coincide when a Court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If -- to take another example from prison life -- a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.[50]

Inmate Banks has alleged only that it was cold in his cell. He has not alleged any actual injury. Thus, even if Plaintiff's allegations are accepted as true, Plaintiff lacks standing to prosecute this claim because he has not suffered any actual injury.

**D.    Plaintiff's Claim Regarding Law Library Access Fails.**

Inmate Banks cannot maintain this claim because (1) CTF satisfied its constitutional obligation regarding access to courts and (2) Plaintiff cannot demonstrate actual injury with regard to this claim.

**1.    Inmate Banks Was Not Denied Access to the Courts.**

A prisoner does not have a "freestanding right to a law library or legal assistance."[51] Prisons need only provide the tools necessary to allow inmates to institute actions challenging sentences or conditions of confinement: "impairment of other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."[52]

---

[50] *Lewis v. Casey*, 518 U.S. 343, 349-50, 116 S.Ct. 2174, 2179 (1996).

[51] *Id.* at 351, 116 S.Ct. at 2180.

[52] *Id.* at 355, 116 S.Ct. at 2182.

1722422.1

Thus, prisons do not have an affirmative duty to provide a full and complete law library.[53] Moreover, an inmate does not establish a denial of access to courts claim by merely alleging that library access or assistance is sub par.[54]

As outlined in *Lewis*, incarcerated individuals do not have a freestanding right to access of the prison law library.[55] Instead, *Lewis* makes clear that prison facilities are only required to provided detainees or inmates with the tools to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. In other words, once a pro se litigant has his foot in the door (of the courthouse) the governmental entity's affirmative obligation is satisfied.

In light of Plaintiff's aborted efforts to utilize the grievance process, it is apparent that Plaintiff's issue is not that he was denied access to the legal research materials he requested, but that he did not like the form of access provided. That is, while copies of all requested cases were provided in the physical reporters required pursuant to this Court's order in *Green v. District of Columbia*, No. 90-793 (Nov. 12 and 14, 1991), Plaintiff wanted to have copies of those cases printed out from on-line sources so he could read them in his cell, rather than reading them in the law library. Plaintiff seemingly is asking this Court to turn *Lewis* on its head.

Here, even though Inmate Banks did not have any initial pleadings or pending criminal matters, it is undisputed that CTF provided Inmate Banks with access to legal materials. In fact, Inmate Banks asserts that he was virtually provided free rein of the library, except that the library was closed four out of six weeks (which the record shows it was not) and that CTF would not continue to print out cases for him at CTF's expense. However, CTF did print-out those

---

[53] *Id.* at 384-5, 116 S.Ct. at 2186.

[54] *Id.* at 355, 116 S.Ct. at 2182.

[55] *Id.* at. 351, 116 S.Ct. at 2180.

documents Plaintiff typed and sought to file in court, as well as letters he wrote.[56]

Thus, CCA provided Inmate Banks with access to the courts which exceeded the directive of *Lewis*. As a result, Defendant has met his burden of proof on the first prong of Plaintiff's access to courts claim.

### 2. Inmate Banks Cannot Demonstrate Actual Injury.

The second prong of an access to courts claim requires the inmate to show actual injury: that he was unable to file a non-frivolous claim because of the prison's inadequacies in allowing meaningful access to the courts.[57] Here, however, Inmate Banks' claim is doomed at the outset because he is unable to establish actual injury. Inmate Banks has provided no evidence that other non-frivolous lawsuits were dismissed,[58] that he was unable to file documents related to his appeals, or that he was unable to file a lawsuit because he was allegedly denied access to the law library. In sum, Inmate Banks fails to establish that anything Warden Caulfield did or failed to do prevented Plaintiff from obtaining case law, drafting pleadings or other legal documents, or requesting extensions of time.

---

[56] *See* Ex. 1 (Allen Aff), Attachment F, attached memorandum from Jeanette Davis-Boykins and Smakeka Bivens to Plaintiff indicating that all documents were printed out and that Plaintiff was free either to handcopy selections from the case reporters or pay for his printouts of case law.

[57] *Lewis*, 518 U.S. at 350-1, 116 S.Ct. at 2179-80. Courts have found that even the denial of direct access by segregation inmates to the prison's law library does not violate the constitution if the segregation inmates are nevertheless afforded access to basic legal research tools. *See Keenan v. Hall*, 83 F.3d 1083, 1093-94 (9th Cir. 1996); *Wood v. Housewright*, 900 F2d. 1332, 1334, 1335 (9th Cir. 1990); *Pawelski v. Cooke*, 1991 WL 03181 at 3, 6-8 (W.D. Wis. 1991). Thus, where the prison provides segregation inmates the ability to request legal materials from the law library, the inmate is provided meaningful access to courts.

[58] Interestingly, despite Plaintiff's allegation that his appeals in the Commonwealth of Virginia that were impaired, no Virginia case law was included amongst his requests to be printed out. *See* Ex. 1, Attachment E, Inmate Request for Printout of the Following Cases, which lists only Federal and District of Columbia cases.

In fact, in Grievance No. 06-245, Plaintiff admitted that he did not experience any injury. He explains that since he did not receive a printout of a motion the same day he requested it that he "handwrote an emergency request and [timely] mailed it."[59]  In terms of legal research, Plaintiff's sole "injury" was that he was hindered from sending "excerpts of the case cites to my outside word processors/typists."[60]  These do not amount to any injury since, this and all other courts are used to accepting handwritten documents from *pro se* inmate litigants and do not have any rule requiring that they submit typed or word processed documents.

Because no action by Warden Caulfield has had a detrimental effect on Plaintiff's legal affairs, Inmate Banks is unable to establish actual injury, as required by the Supreme Court in *Lewis*, to survive a motion to dismiss for failure to state a claim.

## III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that his Motion to Dismiss be granted.

Dated: this 16th day of January, 2007.

By: /s/ Daniel P. Struck
Daniel P. Struck, Bar No. 012377
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-1700
Facsimile:  (602) 263-1784

Attorneys for Defendant
John Caulfield

---

[59] Ex. 1 (Allen Aff) at. ¶ 15.

[60] *Id.*

1722422.1

Electronically filed this 16th
day January, 2007, with:

United States District Court
   for the District of Columbia

Copy delivered electronically
this even date to:

Judge Ellen Segal Huvelle
United States District Court
   for the District of Columbia

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, VA  22302
*Pro Per*

Denise J. Baker
OFFICE OF THE ATTORNEY GENERAL
      FOR THE DISTRICT OF COLUMBIA
441 4th Street, NW
Room 6S028
Washington, DC 20001
Attorneys for Defendants Tally, Reiskin, Williams,
      Pane, Brown and Nelson

Richard S. Love
OFFICE OF CORPORATION COUNSEL
441 Fourth Street, NW
Washington, DC 20001
Attorneys for Defendants Tally, Williams and Pane

Kelvin L. Newsome
LECLAIR RYAN
999 Waterside Drive
Suite 2525
Norfolk, VA 23510

Megan Starace Ben'Ary
LECLAIR & RYAN
225 Reinekers Lane
Suite 700
Alexandria, VA 22314

/s/ Kamika A. Brown

- 14 -