UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIMON BANKS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 05-1514 (RCL) |
| ) | |
| S. ELWOOD YORK, JR., ET AL. ) | |
| ) | |
| Defendants ) | |
| ) | February 21, 2008 |

**PLAINTIFF'S MEET AND CONFER STATEMENT AND
REPORT PURSUANT TO 16.3**

Comes now Simon Banks, Plaintiff and submit Report pursuant to Rule LCvR 16.3. and pursuant to Fed. R. Civ. P. 16(b) and LCvR 16.4 .

On January 30, 2008, the Parties met telephonically and the Plaintiff submitted a draft Meet and Confer Statement as ordered by this Honorable Court on January 22, 2008.

On February 13, 2008 from 9:00 a.m. through 4:00 o'clock a.m. on February 14, 2008, the Plaintiff was at the George Washington Hospital with his 18 years of age son that resulted in an emergency procedure.

On February 14, 2008, the Plaintiff received an Email from counsel for defendants stating that she was not feeling well and may leave work early, noting her consent to an extension of time for the Plaintiff to submit reply to the District's response to Plaintiff's opposition to a motion of the District. (The Plaintiff had not received notice

of the District's response via Email or via ECF because of an inadvertence on behalf of the District and DeVon Brown)

Because of the nature of the notice that District's counsel provided Plaintiff, that apparently she would not be available for a final review of the Meet and Confer statement on February 13, 2008, indicating that she was going home sick. This notice having submitted on the date and time the parties agreed to meet telephonically to discuss joint filing of a single Meet and Confer Statement coupled with the totality of the circumstances, mitigated in the Plaintiff not submitting his final draft, a prelude to the proposed joint Meet and Confer Statement, within the timeframe required and anticipated.

The Plaintiff further submit the following:

A. The Plaintiff has stated causes of actions upon which relief can be granted

B. This case cannot be disposed of by summary judgment

C. Defendant Brown is not entitled to qualified immunity

D. The Court has pendent and ancillary jurisdiction over the Plaintiff's State Law

E. The Plaintiff allege Negligence claim and Negligent Supervision Claims

F. The Court has pendent and ancillary jurisdiction over the State Law Claim

**PLAINTIFF' STATEMENT**

1. Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.

**Response:** This case is not likely to be disposed of by dispositive motion. The Plaintiff have stated facts upon which there is genuine dispute. There exist viable issues

of fact and law that support the Plaintiff's allegations.

2.      The date by which any other parties shall be joined or the pleadings amended, and whether some or all of the factual and legal issues can be agreed upon or narrowed.

**Response:**     Plaintiff believe that any other parties may be joined and/or the pleadings amended within 30 days subsequent to the close of discovery.

3.      Whether the case should be assigned to a magistrate judge for all purposes, including trial.

**Response:**     Plaintiff does not believe that an assignment of this case to a magistrate judge for all purposes is appropriate.  Trial should remain for disposition by this Honorable Court. However, Plaintiff propose that a magistrate judge could be assigned to resolve any discovery matters and to conduct mediation in this case.

4.      Whether there is a realistic possibility of settling the case.

**Response:**      Settlement does not appear to be likely.

5.      Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.

**Response:** Subsequent to the close of discovery mediation may be a realistic possibility 6. Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.

**Response:** It is Plaintiff's contention that this case cannot be resolved by summary judgment. The deadlines for such motion should be as follows:

   a. Dispositive Motion: 30 days after the close of expert discovery

   b. Oppositions: 30 days after filing of dispositive motion

   c. Replies: 15 days after filing of opposition

7. Whether the parties should stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1) and if not, what if any changes should be made in the scope, form or timing of those disclosures.

**Response:** Plaintiff does not stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1). Plaintiff further request that the District Defendants make all initial disclosures required by Fed. R. Civ. 26(a)(1). **See Plaintiff's Prior "Meet and Confer Statement" at 14-28.**

8. The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of discovery, including answers to interrogatories, document production, requests for admissions, and depositions.

**Response:** Plaintiff propose the following discovery plan:

a. Fact discovery, including answers to interrogatories, document production, admissions, and depositions to be completed within 180 days after the Scheduling

4

Conference.

b.  The number of interrogatories upon which the Plaintiff may be served upon the Defendants should not be limited at this time.

c.  Plaintiff should be allowed to submit written deposition questions to the Defendants and the number of depositions upon which the Plaintiff may engage in should not be determined until after the District has made its initial disclosures.

d.   The duration of each deposition to be limited pursuant to LCvR 26.2(c) with leave to petition the Court should the District's witnesses engage in dilatory, evasive tactics designed to frustrate the Plaintiff's ability to secure appropriate discovery. At this time, it does not appear that a protective order is necessary.

9.  Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(2) should be modified, and whether and when depositions of experts should occur.

Plaintiff propose that that expert witness reports and information should be exchanged and expert discovery, including expert depositions, should occur as follows:

a.  Plaintiff's Expert Report: 60 days subsequent to the close of fact discovery

b.  Defendants' Expert Report: 30 days after the close of fact discovery

c.  Close of Expert Discovery: 90 days after the close of fact discovery

10. In class actions, appropriate procedures for dealing with Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.

Not applicable.

11. Whether the trial and/or discovery should be bifurcated or managed in phases and a specific proposal for such bifurcation.

**Response:** Plaintiff believe that bifurcation of the trial and/or discovery is necessary.

12. The date for the pretrial conference (understanding that a trial will take place 90 days thereafter.)

**Response:** Plaintiff propose that a pretrial conference should be set 60 days subsequent to the close of discovery.

13. Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after the pretrial conference.

**Response:** Plaintiff' propose that the trial date should be set at the pretrial conference from 90 days subsequent to that conference.

14. **Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

On January 28, 2008, Plaintiff emailed defense counsel to request consent to file a 56 (f)

6

affidavit in support of discovery and a stay. The request for relief was not given. The Defendants opposed the motion that followed.

### PLAINTIFF'S ALLEGATIONS AGAINST DISTRICT DEFENDANTS

16.     Plaintiff provide in Plaintiff's 3d Amended Complaint that the DOC Staff failed to credit the six months Plaintiff served in Virginia, plus miscalculating his sentence and his release date. *Id*. ¶¶ 21-23.  Plaintiff was released from the DC Jail on April 28, 2006 rather than March 20, 2006 past the Plaintiff's release date. *Id*. ¶¶ 20, 23, 64.

17.     Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a result of the overdetention.  See ¶ 67.

18.     Plaintiff's detention was due to the collapse of the Department of Corrections' Inmate Management System".  See 3d Am Compl. ¶ 65, but also due to the "deliberate indifference by defendant District of Columbia [and] Devon Brown.  See ¶ 56.

19.     The Plaintiff allege District's failure to train and supervise employees responsible for ensuring the timely release of prisoners not only was negligent, but also violated the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  See ¶¶ 90 – 97, 106 – 14, 129, 151 – 60.  See Mem. Op. at 3.

### PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT DEVON BROWN

20. Defendant Brown is liable in his official and personal capacity for deprivation of Plaintiff's constitutional rights in connection with his failure to train DOC Employees under his supervision as the policymaker.  See 3d Am Compl.  ¶¶  86 – 87, 106- 114 and for Plaintiff's overdetention and inaction.  See Mem. Op. at 30 –34.  See 3d

Am Compl. ¶¶ 106 – 10, 112 – 114.

21.     District Defendants are liable to the Plaintiff for the false imprisonment of the Plaintiff.

22.     District Defendants are liable to the Plaintiff for Intentional infliction of mental and emotional distress during the period of time it over detained the Plaintiff.

**PLAINTIFF PROPOSE THAT DISTRICT DEFENDANTS BE ORDERED TO MAKE INITIAL DISCOVERY PRODUCTION**

**PURSUANT TO RULE 26(F) DEFENDANTS SHOULD BE ORDERED TO PRESERVE AND VOLUNTARY PROVIDE PLAINTIFF DOCUMENTS AND/OR ELECTRONIC RECORDS RELATED TO THE FOLLOWING REQUESTS OF PLAINTIFF**

23.     The Plaintiff's proposed discovery include the following: The Plaintiff seek the production of all depositions, interrogatories, responses to interrogatories, request for production of documents, admissions, stipulations, disclosures, that the District Defendants participated in and provided in the over detention cases of *Bynum v. Odie Washington, 20-cv-956 (RCL); Barnes v. District of Columbia,* 06 cv 00315 (RCL).

24.     The Plaintiff seeks discovery of the defendants in support of his *Monell Claims*[1]. The Plaintiff seeks discovery of the defendant District requiring it to produce databases of prisoners/inmates whom have been overdetained while in custody of the DC Department of Corrections ("DOC").

25.     The Plaintiff seeks evidence of multiple instances of DOC's failure to release inmates, their overdetention, lack of adequate record keeping.

26.     The Plaintiff seeks statistical evidence of overdetention. The Plaintiff seeks evidence of upgrades in the DOC policies since the Wright Report.

---

[1] *Monell v. Dept' Social Services*, 436 U.S. 658, (1978).

8

27. The Plaintiff seeks statistical evidence of releases.

28. The Plaintiff seeks evidence of cost benefits and effectiveness analysis conducted by DOC of its Records Office release policy and of it standard operating procedure, and of its policies practices and procedures.

29. The Plaintiff seeks evidence of specific instances of the District's failure to release inmates in a timely manner at the time of the expiration of their sentences with respect to declarations and affidavits submitted in the case of *Bynum v. Odie Washington, The District of Columbia* and the Case of *Carl Barnes* v. District of Columbia, and recent *Morgan* Case, the Plaintiff seeks disclosure and document production of discovery had between the parties to depositions, declarations, admissions, responses to production of documents. These files are readily available with minimum search. **There is evidence that these documents are electronically stored.** They are part of the record in *Bynum v. Odie Washington,* 02-cv-956, *Barnes v. District of Columbia, 06*-315 (RCL), *Morgan*, and their authenticity, admission into evidence is without dispute.

30. Plaintiff request permission pursuant to the discovery rules to engage in written deposition, questions following interrogatories.

31. The Plaintiff seeks disclosure of the addresses of the following witnesses whom the Plaintiff seeks to depose and/or acquire affidavits from:

    a) Larry Corbett, Former Assistant Warden at the DC Jail during the period December 2004 through October 2005. Larry Corbett was a recipient of the Plaintiff's Motion for TRO and was a recipient of the Plaintiff's original complaint filed on May 6, 2005 and was a Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive Relief. Plaintiff seeks to depose Larry Corbett as well, in connection with Corbitt's knowledge of the Plaintiff's complaints.

b) The Plaintiff seeks to depose Robert Clay, Warden DC Jail. Mr. Clay was the Warden during the period April 4, 2006 and he was a recipient of interrogatories in connection with this case and had some knowledge of Plaintiff's complaints.

c) The Plaintiff seeks to depose Elwood York. Elwood York was both an Acting Warden and Director of the Records Office for the DC Jail. Elwood York received Plaintiff's Motion for TRO and for Preliminary and Permanent Injunctive Relief on or about July 6, 2005. See Certificate of Service attached to Plaintiff's Motion for Temporary Injunctive Relief and Memorandum of Points and Authorities in support Plaintiff's Motion for Temporary Injunctive Relief.

d) The Plaintiff seeks discovery of the Inmate Management System Director of Records of the Records' Office at the DC Jail during the period January 2005 through October 2007.

e) The Plaintiff seeks discovery of the Receiving and Discharge Officer at the DC Jail during the period January 2005 through October 2007.

f) The Plaintiff seeks discovery of the Superior Court Computer Director who supervises the release and commitment data during the period January 2004 through October 2007.

g) The Plaintiff seeks discovery of the Director of the Inmate Management System Clerk Supervisor for the Department of Corrections during the period January 2004 through October 2007.

h) The Plaintiff seeks discovery of Steven Smith and other persons in charge providing release, discrepancy reports which were created during the period January 2005 through October 2007 and any and all declarations issued by Steven Smith in the *Bynum* Case whereby Steven Smith supplied a declaration of inmates who were overdetained.

i) The Plaintiff seeks discovery of John Pendergrapf of the Records Office of the DOC who was involve in generating Release Discrepancy Reports.

j) The Plaintiff seeks discovery of the persons of the DOC that were charged with implementing the recommendations

    connected with the Shaw Report and in connection with the contracts awarded for new automated Jail Inmate Management System for the Central Detention Facility.

k) The Plaintiff seeks discovery of the Sentence Computation Manual generated by the Corrections Trustee in April 2000 and persons who implemented the recommendations of the Corrections' Trustee and provided training regarding the sentence computation manual.

l) The Plaintiff seeks discovery of Joyce Jones who was assigned to assist Elwood York in the Records Office in connection with the Office Plans for supervising the release policy of the DOC

m) The Plaintiff seeks discovery of the Legal Instrument Examiner assigned to the R & D Automated Jail Management System Department Order 1281.1 and 1280.2A

n) The Plaintiff seeks discovery of the DC's Beal Abatement Plan and the DOC response to R-1. R-2, and R-3 desk audits of all Record Office positions, how many existed during the period from January 2004 through October 2007.

o) The Plaintiff seeks information regarding the archival of the inmate files by September 30, 2001 which were subject to computerized checks and utilized from September 30, 2001 to October 2007. See Plaintiff's Motion for Mandamus in the Case of *Banks v. Steven Smith, 04-903* (RCL) and served upon Elwood York on June 24, 2005. Steven Smith was also served with Plaintiff's Motion for Mandamus on June 24, 2005 via facsimile and first class mail

p) The Plaintiff seeks discovery of Charles Kim, Industrial Engineer who reengineered DOC Records Office operation, the JACCS (Automated Management System or Jail and Community Corrections System).

q) The Plaintiff seeks discovery of the Department of Corrections 950 page Operations Manual provides from 0 to 14 percent error rate regarding all releases. This is reflected in the news release of the Department of Corrections on September 30, 2002.

r) The Plaintiff seeks Discovery of J. Myrick, Supervisor of Records Office during the period in question January 2005 through April 28, 2006.

s)  The Plaintiff also seeks discovery of John Manuel who was the new Director of the Records Office that was assigned to the Records Office of the Department of Corrections in 2006.

t)  The Plaintiff seeks discovery of Cheryl L. Warner, Deputy Director of the Records Office as of the present time.

u)  The Plaintiff seeks discovery of the District of Columbia Statistician who provided statistics regarding errors in releases and failure to release for the Department of Corrections.

v)  The Plaintiff seeks discovery of implementation of the Inspector General's recommendation and report dated October 2002 regarding the District of Columbia Jail Management challenges and improving the DC Jail Facility.

w)  The Plaintiff's seeks discovery of the individual in training of the JACCS (Jails and Community Correction System) on how employees learned how the log in/log out procedures and the execution of screen and tasks relevant to their specific jobs.

x)  The Plaintiff seeks discovery of the how the District of Columbia Department of Corrections implemented the 1976 RMC Research Corporation Analysis and referenced the major recommendations, or reorganization of the Records Office and increased staffing in the office.

y)  The Plaintiff seeks evidence on spoliation [destruction of evidence] on electronically stored depositions, responses to discovery such as requests for admissions, authentication of documents, responses to interrogatories, interrogatories submitted, responses to request for production of documents, electronically stored on computers and existing on CDs or other electronically storage devices.

z)  The electronically stored information that the Plaintiff seeks include:

the above-reference (set forth in ¶y) as well as:

i)  declarations, affidavits, deponents of depositions of Department of Corrections employees whom gather and assess statistics, and whom store, enter, retrieve, assess, access records of prisoner intake, prisoner release, discrepancies in release of inmate.

12

    ii) grievances/complaints (administrative and civil) regarding failure of DOC to release prisoners when sentence expire and when inmates are entitled to be released from incarceration.
    iii) Memorandums on training requirements,
    iv) types of training afforded employees in the Records office of the DOC, and the identity of all trainers, training entities utilized by the DOC.
    v) The Plaintiff seeks the identities of all demographic/statistical experts used by the DOC and their attorneys in the recent class-action cases, including but not limited to *Bynum v. Odie Washington, et al,* 02-cv-956, *Barnes v. District of Columbia,* 06-cv-315RCL.

In further support of Plaintiff's request for initial disclosure by the District Defendants the Plaintiff cite the following:

    32.    The Wright Report documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office. (Wright Report, Major Findings, F-14).

    33.    Among the major findings of the Wright Report were a lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management." (Wright Report, Major Findings, F-14 and F-20).

    34.    The Wright Report also listed an extensive series of studies and recommendations that were "not seriously implemented" including studies dating back as far a 1976. The studies mentioned and some of their principal recommendations were as follows:

        a)    1976 RMC Research Corporation Analysis. Major Recommendations: reorganization of the Record Office and increased staffing in the office.

      b)      1985 BOP Evaluation. Major Recommendations: creation of a headquarters level position at the Department of Corrections' to provide guidance and written policy to the Records Office: increased Records Office staff; and restricted access to the Records Office and files.

    35.    There is no genuine dispute that at all times relevant:

      a)      Almost every inmate taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge is no longer pending is returned to the D.C. Jail for processing before release rather than being released from the courthouse.

      b)      The Superior Court of the District of Columbia and the United States District Court for the District of Columbia use different computer systems from the computer system used by the Records Office.

      c)      Release and commitment data entered into the court computer systems by courtroom clerks do not appear in the computer system used by the Records Office, The JAXX system ("JAXX") AND ("JACCS").

      d)      As a result, all release and commitment orders generated by judges in the Superior Court and District Court on paper must be hand-delivered to the Records Office by marshals as prisoners are bused from the courthouse to the jail.

      e)      All processing of release and commitment orders must be done by hand at the Records Office located at the D.C. Jail.

      f)      Release and commitment data entered into the court computer system by courtroom clerks must be entered again by hand into the JAXX, JACCS.

      g)      The name and DCDC number (jail identification number) of every

inmate physically entering or leaving the D.C. Jail is also entered by hand into the "Count" computer, a MacIntosh/Apple computer used to maintain a census of all inmates at the D.C. Jail at any one time.

## DOCUMENTS THAT DISTRICT SHOULD AGREE TO VOLUNTARILY PROVIDE PLAINTIFF WHICH ARE ELECTRONICALLY STORED AND/OR ARE OTHERWISE AVAILABLE

36. The Plaintiff request that the District disclose which documents the District is willing to produce voluntarily, including but not limited to the above-referenced, on the issue of overdetention, lack of adequate heat, cut-off-of diabetic trays. This includes manuals used in the operation of the Superior Court inmate tracking systems, the DOC inmate tracking and release procedures.

## PROPOSED SUPPLEMENTS TO THE COMPLAINT

37. The Plaintiff propose to file motion to supplement the complaint with state law claims within 30 days These claims the Plaintiff previously sought to add to the 3d Amend. Comp. by amending the Plaintiff's 3d Amend. Compl. See Plaintiff's proposed 4th Amended Complaint at 66-68, ¶¶242-255. **See** Plaintiff's Motion to Amend the Third Amended Complaint and file Fourth Amended Complaint. The Plaintiff intends to add the following additional counts.

    A)    False Imprisonment

    B)    Negligent false imprisonment

    C)    Trespass upon the Plaintiff's person.

    D)    Negligent Infliction of mental and emotional distress, fear, apprehension, hopelessness.

    E)    Gross Negligence.

F)  Malicious extension of false imprisonment to afford Plaintiff's defense counsel opportunity to file Emergency Motion for the Plaintiff's release on the date of the Plaintiff's release.

G)  Conspiracy to delay the Plaintiff's release so that Plaintiff's appointed appellate counsel could fraudulently intervene in the case, although her coerced appointment and abusive retention, for purposes of affording Attorney Cynthia Nordone opportunity to sabotage the Plaintiff's Emergency Motion for Release and Correction of sentence imposed, (as she did the Plaintiff's appeals by ignoring and waiving 98 (abusively, egregiously, and erroneously titled falsely.  **The United States never was a party to this misdemeanor contempt case)** in addition to waiving the Plaintiff's defense that there was insufficient evidence in the record to support any of four contempt counts set forth in the government's complaint) and for purposes of  affording Plaintiff's appointed appeal counsel opportunity to claim credit for the Plaintiff's release on April 28, 2006, notwithstanding the fact that Plaintiff' filed his own, pro se emergency motion for release on April 12, 2006 pursuant to D.C. Code § 23-110 (habeas petition, as the Plaintiff had attempted to prosecute his protection from over-detention in *Banks v. Smith, 04-903 (RCL)*)


_____/s/_____
Dr. Simon Banks
Doctor of Laws
P.O. Box 17052
Alexandria, Va. 22302
Tele:  703 965-5637
Email: disbands@msn.com