IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIMON BANKS                ]
                           ]
         Plaintiff         ]
                           ]
Vs.                        ]        Civil Action No.
                           ]
ELWOOD YORK, JR., ET AL    ]
                           ]
                           ]        July 6, 2005
                           ]
         Defendants

**Plaintiff was unable to reach by telephone the defendants as to whether they consent to the filing of this motion.**

### AFFIDAVIT OF SIMON BANKS
### Pursuant to 28 U.S.C. § 1754

Comes now, Simon Banks and state as follows:

The plaintiff is 66 years of age and will be 67 in a few months.

1. The plaintiff's dental and medical needs were diagnosed by the DC Jail's dentist as well as the DC Jail's physicians during visits to the DC Jail's Infirmary from December 19, 2004 through February 21, 2005.

2. The plaintiff's private dentist treated plaintiff and performed a root canal on plaintiff's tooth in March 2004, and the plaintiff was seen by the District of Columbia Jail's dentist in connection with the tooth infection resulting from exposed, sawed down teeth, and the jail's dentist on three occasions prescribed Motrin and antibiotics and penicillin to treat the pain and the infection.

3. The plaintiff on March 14, 2005 met the defendant Corbett in connection with plaintiff's complaint regarding dental problems which was faxed to defendant Corbett and these problems include the fact that correctional officers at the DC Jail removed plaintiff's dental crown from plaintiff's cell in a "shakedown". This crown provided protection for seven of plaintiff's sawed-down teeth which were to be replaced by a permanent crown.

4. Defendant Corbett promised plaintiff that he would facilitate replacement of plaintiff's dental crown through the jail's dentist in an attempt to resolve plaintiff's complaint regarding plaintiff's teeth.

5. Defendant Corbett, during the March 14, 2005 meeting in his office acknowledged that he had caused inmates to be reassigned to the jail's law library whom had previously been released from assisting the law librarian who were assisting inmates, when plaintiff informed defendant Corbett that plaintiff was working at the DC Jail's Law Library starting the day before the meeting, with defendant Corbett.

6. Defendant Corbett on March 13, 2005, subsequent to being informed that plaintiff was assisting the DC Jail Law Librarian, as of March 12, 2005, defendant Corbett at the very next Monday caused all inmates whom were assisting the law librarian to be dismissed and it was then announced that the plaintiff and some four other inmates law library assistants would no longer be needed to provide the law librarian assistance.

7. At the March 13, 2005 meeting with defendant Corbett in defendant Corbett's office, the plaintiff informed defendant Corbett that he was previously housed at the Central Treatment Facility (CTF) and had expected to be returned there.

8. Defendant Corbett promised the plaintiff that he would have the records office correct plaintiff's release date and record for time served.  The plaintiff informed defendant Corbett that the DC Jail's Record Office failed to provide plaintiff credit for time incarcerated in Alexandria, Virginia when plaintiff was transferred from the DC Jail to Virginia while under sentence in the DC Jail, pursuant to a detainer issued by the City of Alexandria.  This is when and while Judge Kramer had issued a bench warrant and detainer on plaintiff from June 23, 2004 the date it was determined that plaintiff was by mistake transferred to the City of Alexandria.  The plaintiff's transfer was facilitated by Superior Court Judge who released plaintiff in open court one week prior to plaintiff being transferred to Virginia on June 23, 2004 and returned to the DC Jail on December 19, 2004.

9. Prior to plaintiff meeting with defendant Corbett, the Classification and Placement Parole Officer ("C&P") Ms. Connolly, as well as two of C&P Officers informed plaintiff that plaintiff had been scheduled to be transferred to the CTF Facility, that she had on several occasions submitted plaintiff's name for the transfer.

10. From February 2005 through March 20, 2005 the C&P Officers located and assigned at each of the three cellblocks plaintiff was previously assigned prior to being assigned to Southwest One Cell Block, informed plaintiff that

plaintiff was scheduled to be reassigned to the CTF Facility, that plaintiff's name was submitted to the records office to facilitate this process.

11. On or about April 10, 2005 when the plaintiff next met with the C&P Officer, subsequent to meeting with defendant Corbett the plaintiff was informed the plaintiff was not scheduled to be transferred back to the CTF Facility although prior to plaintiff having been released to the state of Virginia and on a detainer, on June 23, 2004, the plaintiff was confined at the CTF contract facility at a minimum custody level lockup where the plaintiff was still not locked down at all.

12. The plaintiff stands in imminent danger of the loss of seven of plaintiff's teeth which were sawed down for purposes of installing a dental crown which was to provide porcelain teeth that protected plaintiff's sawed down teeth.

13. The plaintiff stands in imminent danger of damage to plaintiff's gums, face and jaw, should the plaintiff not receive permanent installation of a dental crown.

14. Because of the plaintiff's dental condition, inability to eat many foods, as a consequence of plaintiff's dental situation as set forth above, the plaintiff has loss some twenty pounds and suffered from pain in the gums, and the plaintiff's health and safety is compromised.  The plaintiff, at 66 years of age stand in imminent danger of deteriating health due to loss of weight and nutrition.

15. When plaintiff visited the jail dentist in February 2005, the plaintiff was informed that the only service that the jail dentist could perform for the

4

plaintiff is to pull the plaintiff's teeth. Then the dentist requested plaintiff to sign an acknowledgment, acknowledging that plaintiff refused dental service. (erroneously implying that plaintiff refused dental service for treatment per se) however, plaintiff wrote in the form, "medical rejection form that plaintiff refused to permit the DC Jail Dentist to pull good teeth." The jail's form is misleading and leads to a waiver by trick, and leads to conclusive presumption that there is a global waiver omitting the absence of options to pulling good teeth.

16. Since meeting with the jail's dentist in February 2005 and prior to meeting with defendant Corbett on May 13, 2005, the plaintiff has not been afforded further dental appointment or treatment for plaintiff's dental-medical condition despite numerous emergency requests for dental treatment and for medical treatment. Rather, plaintiff merely received penicillin from the infirmary and no further requests for dental treatment or appointment has been afforded plaintiff.

17. On February 21, 2005 plaintiff was transported to the DC Jail Infirmary after fainting, suffering from dizziness and the plaintiff was intravenously fed Saline and Ringer Latent Fluids, given and EKG, finger prick, taking of blood pressure and then given penicillin for plaintiff's infected gums and teeth (Ibruprophen 800 mg#9). Plaintiff was subsequently returned to the cell block, Southwest 1 upon a conclusive presumption that plaintiff suffered from dehydration. It was again determined that plaintiff was diabetic although plaintiff's count was low.

18. Although immediate subsequent to plaintiff being treated by a DC Jail's Doctor on February 21, 2005 the plaintiff suffered from swollen feet and submitted sick request forms to see the dentist a doctor, a podiatrist, the plaintiff has been unable to get an appointment with any podiatrist, dentist or other doctor of the DC Jail.  Plaintiff suffered from swollen feet for ten days.

19. On March 2, 2005 the plaintiff telephoned the records office of the DC Jail after speaking with the C&P Officer regarding plaintiff's release date which was in error and the mail person whom answered the records office telephone abruptly told the plaintiff to go back to the C&P Officer and hung the phone up.

20. On March 5, 2005 plaintiff sent a letter to Elwood York, Jr. informing him that the plaintiff had waited in excess of thirty days to see a Notary Republic despite submitting numerous request slips containing the request.

21. On March 5, 2005 plaintiff sent a letter to Elwood York, Jr.  informing him that the plaintiff had been waiting some sixty-five days to get an appointment with the DC Jail Podiatrist which was a follow-up appointment.  The plaintiff has not heard from Elwood York, Jr. or anyone acting on his behalf, nor has the plaintiff been provided with an appointment with the jail podiatrist as of this date, May 9, 2005.

22. On March 9, 2005 plaintiff wrote a letter to Larry Corbett, Acting Warden, regarding correction of time served records pertaining the to the release date and regarding the failure of the DC Jail's medical staff to provide plaintiff feedback from two x-rays taken by the DC Jail on plaintiff's chest and wrist.

Plaintiff further noted to defendant York that plaintiff had a lump on his upper gum which was swollen. This was a result of plaintiff tooth infection which resulted from chipping of plaintiff's sawed-down teeth during the past several months. The plaintiff's condition has exponentially worsened and the plaintiff has been exposed to the absence of a temporary crown to protect plaintiff's teeth and gums.

23. On March 16, 2005, the plaintiff awoke again to a nauseating, pungent stench, emitted from a sewage backup. The plaintiff started to gasp for air. Plaintiff complained to the Correctional Officer Banks and Banks said in response that there was nothing he could do, that the whole place smelled. The plaintiff was closest to the stench that was emitting from a sewage backup.

24. On May 2, 2005, the correctional officers in Southwest 1 cell block informed the plaintiff that the plaintiff would no longer receive diabetic foods and that diabetic trays which include milk, fruit and a late night snack tray would not be provided plaintiff because of plaintiff's name was no longer on the diabetic tray diet list.

25. The plaintiff was placed in jail's list to receive diabetic trays of food and a daily night snack tray on or about May 2004 and again in January 2005, subsequent to plaintiff being diagnosed and rediagnosed as a diabetic by the jail's medical staff. This abrupt omission, further harms plaintiff's medical-health position.

26. On May 4, 2005 the DC Jail assigned plaintiff a new cell mate who's name is M.S. Davis, date of birth May 5, 1958. This gentleman, Davis has rash, sores

all over his body including his face, ears, head, feet; legs and hands. Mr. Davis (new cellee) informed plaintiff that he has used drugs including heroin for twenty-four years, and he assumed that these drugs were coming out of his body. On May 5, 2005 Mr. Davis was visited by a jail's medical delivery person whom confirmed that he did not have Davis' antifungal medicine. Mr. Davis stated he receive other medicine for his condition. Initially upon meeting Davis, Davis informed plaintiff that he broke out after eating seafood. This was contradicted by his recent disclosure of drug use for twenty-four years.

27. On May 5, 2005 Corbett visited the unit and was shown defects in wiring near showers at Southwest 1, along with other staff. On May 5, 2005 the plaintiff was locked down for twenty-five hours which was extended until 4:30 pm on May 6, 2005, some fifty hours with Davis who was sick.

28. On May 6, 2005 Davis requested of the Correctional Officer Banks and the Sergeant that he be allowed to go to the infirmary because he was sick and because his right ear had swollen more, it was an open rash and he stated he generally did not feel good. I intervened and asked to be let out of the cell, "This man is very sick. He needs immediate medical attention." The correctional officers said they called the doctor. Thirty minutes later Davis says he has Kaiser and Medicaid that a Dr. Jenkins is his doctor at the Howard University Hospital.

29. On May 5 and May 7, 2005 inmate Davis made urgent requests to go to the infirmary, that he had not received his daily medicine and that he was sick,

felt bad. Davis identified two medicines he not received Cycloprophine and Dintiol, among some others. On May 7, 2005 Davis told the correctional officers that he was concerned about his cellee, the plaintiff, being in a cell with him. Davis stated however that he didn't think plaintiff would catch anything.

30. On May 7, 2005 at 9:00 pm thereabouts plaintiff repeated his concern with being locked up in a cell with Davis given his open sores, rashes all over his body, he being a heroin addict for twenty-four years. The correction officer said there was nothing he could do right away to give him a couple of days to attempt to make a movement of Davis.

31. The plaintiff became aware that Mr. Davis (cellee) had been charged with murder in a previous incarceration.

The plaintiff hereby swears pursuant to the penalty of perjury to the best of his knowledge and belief that statements contained in the affidavit are true and correct.

I hereby affirmed pursuant to the Penalty of Perjury, and pursuant to 28 U.S.C. 1734.

_____
Simon Banks, J.D., Pro Se

## CERTIFICATE OF SERVICE

I, hereby certify that the parties are being served pursuant to Rule 4 with a copy of this complaint.

S. Elwood York, Jr.,
Acting Director DC Department of Corrections
1923 Vermont Avenue, N.W.
Washington, DC  20001

Larry Corbett, Acting Warden
DC Jail
1901 D Street, S.E.
Washington, DC  20003

Captain N. Tally
DC Jail
1901 D Street, S.E.
Washington, DC  20003

Edward D. Reiskin
District of Columbia Deputy Mayor for Public Safety,
1350 Pennsylvania Avenue, N.W.
Suite 327
Washington, DC  20004

Anthony Williams
Mayor District of Columbia
1350 Pennsylvania Avenue, N.W.
Washington, DC  20004

Darlene Fields
Office of the Attorney General
For the District of Columbia
441 – 4th Street, N.W.
6th Floor South, Suite 600
Washington, DC 20001

Dr. Gregory Pane
Director of District of Columbia
Department of Health
825 North Capitol Street, N.E.
Washington, DC  20002


_____
Simon Banks
DC Jail
1901 D Street, S.E., #269768
Washington, DC  20003

And

Simon Banks
P.O. Box 17052
Alexandria, VA  22302