UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DR. SIMON BANKS, J.D.** | ) | |
| **P.O. BOX 17052** | ) | |
| **ALEXANDRIA, VA. 22302** | ) | |
|  | ) | |
| **Plaintiff** | ) | |
|  | ) | |
| v. | ) | Case: 05-1514 (RCL) |
|  | ) | |
| **ELWOOD YORK, JR** | ) | |
| **ET AL** | ) | |
|  | ) | September 15, 2008 |
| **Defendants** | ) | |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

The Plaintiff inquired of District regarding Plaintiff's Motion to Compel Discovery pursuant to LCvR 7, and the District Defendants do not consent to this motion

Comes now, Dr. Simon Banks, Plaintiff, and submit Motion to compel Production of Documents, and in support Plaintiff cites the following:

1. The Plaintiff incorporate by reference Plaintiff's Motion to Compel Discovery.

2. Although the Plaintiff submitted to District Defendant Request for Production of Documents on July 5, 2008, the District has not produced a single document in response to the Plaintiff's request.

3. The Plaintiff submitted the following request for Production of Documents which also provides each of the interrogatories that precede each of Plaintiff's requests (For easy accessible reference).

4.	The Plaintiff incorporate by reference and attach Plaintiff's Request for Production of Documents.

5.	The District Defendant, in addition to not having any employee of the District Defendant execute its response to Plaintiff's interrogatories under oath, or at all, it further did not produce a single document.

6.	The Plaintiff needs discovery of the District's late releases of overdetained persons whom were held in the custody of the Department of Corrections, (DOC) in order to show late releases, the extent and effect of its prisoner-release custom, policy, practice and procedures, that caused late releases and overdetentions, and in order to show that the District engaged in a custom, pattern and practice of releasing inmates late, after they were entitled to be released

7.	The Plaintiff needs a copy of the District's discrepancy reports which were generated during the past eight years and produced in recent prior cases and existing cases.

8.	The Plaintiff incorporate by reference Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel Production of Documents.

9.	The Plaintiff a copy of all policies, practices and procedures upon which the District established for its records office and other employees involved in intake and releasing inmates from custody when their sentence expire or when they entitled to be released by the Department of Corrections for other reasons, including but not limited to court order releases.

10.	The Plaintiff needs the documents requested in each of the Plaintiff's Requests, to show that the District failed to adequately train the records office and other

employees, to track and effect the release of inmates once they are entitled to be released from custody for any legal, legitimate reason.

11. The Plaintiff needs all documents, electronic and otherwise relating to JACCS, CRYSIS, the "release discrepancy database," the District of Columbia Superior Court CIS system, FTR Gold and FTR regular (recording system, drug program software systems ("old system, Prism") and "any other computer software used to track and monitor persons charged with criminal offense heard in the Superior Court of the District of Columbia".

12. The database discovery is reasonably calculated to lead to discoverable evidence on merit-based issues.

13. Plaintiff needs the database discovery to identify inmates whom were overdetained and their respective length of overdetention, to establish a pattern and practice, and history profile of overdetention.

14. The Plaintiff need the raw data instead of paper discovery so Plaintiff can reconstruct the databases, combine the databases, run their own queries, and generate their own reports. The simplest method of obtaining this information [data items (fields), datasets, and key fields] is to obtain selected fields from databases that contain information about over-detained inmates on a DVD and then provide the selected fields to Plaintiff's forensic expert for analysis. The Plaintiff will make an initial evaluation of the databases and the data in them using PDID, DCDC and case numbers to identify individuals.

15.     Plaintiff will ask for social security numbers only as needed to locate them for notice and sampling.   Plaintiff intends to have a statistical and computer expert assist in identifying inmates whom were overdetained by the District.

16.     Plaintiff need to discover more than one database in this case.  The Department of Corrections ("DOC") has used two different computerized inmate management system database from 1998 through 2003.  From before 1999 up to about October 2000, the DOC switched to the system called "CRYSIS."  Then, in about October 2000, the DOC switched to the current system called "JACCS."  Plaintiff's statistician and forensic experts will need fields from the JACCS database because that is the computerized inmate management system used by DOC to track inmates and their release dates at the DC Jail.

17.     Plaintiff needs fields from the CIS system and other District of Columbia Superior Court databases to serve as a check on the accuracy of the data in JACCS and CRYSIS and to supplement gaps in the JACCS/CRYSIS data because of problems with data entry in the JACCS and CRYSIS  systems.  **See *Report of Inspector General on Central Detention Facility.  Report No. 02-00002FL.,* October 2002.  "*Inspector General's Report.***  According to the Inspector General's Report, on October 25, 2001, over one year after the Action Plan was filed, the DC Jail's inmate management software, JACCS, indicated that 703 inmates were overdetained on that date.

18.     The CIS contains many fields that have information that can be used to verify or calculate release dates or ascertain the persons who were released late even though the data in the field is not used by Department of Corrections in making release determinations because the information is not entered into the CIS until several days after

the date the person is entitled to release. CIS has fields that capture information about a defendant's charge, his court dates, his release status (whether and when in custody), disposition, and jail sentence if any. Data in these fields can be used to verify or supply missing data in JACCS.

19. Also, CIS has some fields with information on releases that was relied on by the Department of Corrections in making certain releases. The established procedure for obtaining the release of an in custody pretrial detainee held on bond is to go to the District of Columbia Superior Court Finance Office and post the bond, obtain a receipt from the Finance Office verifying payment of the bond, and then take the receipt to the DC Jail to obtain release of the inmate. The DC Jail will not release such a person without a bond receipt.

20. The fields from the CIS system and other District of Columbia Superior Court databases will also be used in compiling a statistical profile of the arrest and conviction history of overdetained inmates.

21. Plaintiff need data from the District of Columbia Superior Court CIS system as well as JACCS (and also CRYSIS for when CRYSIS was in use) to compile a list of overdetained persons. It has been established that the data in JACCS by itself does not show persons who went to court and were entitled to release.

22. The PTL (Prisoner Transfer List) generated by the District of Columbia Superior Court CIS system does show every in-custody defendant at the DC Jail who went to court at the District of Columbia Superior Court on a particular day. JACCS (and CRYSIS, for a period relevant to recent history, shows the charges and detainers against

each person. Combining the data from these systems will enable Plaintiff to compile a list of overdetained persons.

## SEQUENCE OF DATABASE DISCOVERY; NEED FOR SCHEDULING ORDER TO ACCOMMODATE DISCOVERY IN SEVERAL STAGES

23. Plaintiffs must conduct discovery for each database in stages in order to make intelligent choices about which electronic data is needed for each database, and to make the requests for raw data as narrow as possible. Plaintiffs need to (1) identify databases with relevant information, (2) obtain data dictionaries (or record layouts) and documentation on how to interpret the code fields and technical manuals to identify what data items (fields), datasets, and key fields exist in each database and (3) depose persons most knowledgeable how data items (fields), datasets, and key fields are used in the release process, or can be used by Plaintiff for identifying overdetained persons, calculating overdetentions, making profiles or choosing a sample, (4) request selected data items (fields), datasets, and key fields, less any personal identifying information.

24. Plaintiff will undertake this methodology to address the privacy concerns that this Court raised in the opinion, *Bynum v. Dist. Of Columbia,* 214 F.R.D. 27, 37 n.3 (D.D.C. 2003). In addition, the Plaintiff is willing to enter into a confidentiality agreement with the District Defendants.

_____/s/_____
Dr. Simon Banks, J.D.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. SIMON BANKS, J.D. )<br>P.O. BOX 17052 )<br>ALEXANDRIA, VA. 22302 )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>ELWOOD YORK, JR )<br>ET AL )<br>)<br>)<br>    Defendants ) | Case: 05-1514 (RCL)<br><br>September 15, 2008 |

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**
**OF**
**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Comes now, Plaintiff and submit supplemental memorandum of points an authorities in support of Plaintiff's Motion to Compel Production of Documents, and in support cites the following:

**DATABASES ARE DISCOVERABLE UNDER THE FEDERAL RULES OF**
**CIVIL PROCEDURE**

25.     Computer information is discoverable under Rule 34 as a matter of course. Fed. R. Civ. P. 34(a) (document(s) include "data compilations from which information

can be obtained"). *Cobell v. Norton,* 96-1285 (RCL), where this Court approved the discoverability of computer databases. See *Martin v. Potomac Elec. Power Co.,* 1990 U.S. Dist. LEXIS 11688, AT *48-*50 (D.D.C. 1990). **See** *Indian Trust Fund* litigation. *Alexander v. FBI,* 16 F.R.D. 137, 1998 U.S. Dist. LEXIS 22392 (D.D.C. 1998), dealing with the sufficiency of a 30(b)(6) deposition notice of the person most knowledgeable about a database system.

26.     Case law from other Circuits construing Rules 23 and 34 shows that requesting and obtaining raw data in databases is a standard operating procedure in federal discovery in cases such as this one. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978)(Rule 23 is an additional, independent basis for discovery of data); *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1382 (7th Cir. 1993)(sanctions for failing to produce database that contained raw data regarding commissions on each policy sold); *National Union Electric Corp. v. Matsushita Electric Industrial Co.,* 494 F. Supp. 1257 (E.D. Pa. 1980); *William v. E.I. du Pont de Nemours & Co.,* 119 F.R.D. 648 (W.D. Ky. 1987)(defendant sought and received at its own expense—the database that its adversary's expert had created from the hard-copy documents that were originally produced, including a copy of the computerized database in the form of the computer storage disc, the code, book, all documents used in encoding the database, and the user's manual); *Anderson v. Cornejo,* WL 219639, at *5, *6 (N.D. Ill. Mar. 6, 2001)(in challenging discriminatory strip searches, court ordered defendants to provide Plaintiffs with passengers' identifying information from computer databases of passengers that had landed at O'Hare International)**.** ***Symposium Emerging Technologies and the Law;***

*Article: A Practitioner's Overview of Digital Discovery,* 33 Gonz. L. Rev. 347 1997/1998.

## SANCTIONS REQUESTED BY PLAINTIFF

27.     This Honorable Court has authority to impose sanctions against District defendant for failing to product documents in response to Plaintiff's Request for Production of Documents because the District's objections and dilatory tactics are not substantially justified under Fed. R. Civ. P. 37(a)(4)(A).  *Cobell v. Norton,* 213 F.R.D. 16, 28 (D.D.C. 2003).   District Defendant's failure to produce documents and responsive responses to interrogatories is part of an on-going pattern of delay in this case.

## EXAMPLES OF DISTRICT'S PATTERN AND PRACTICE OF FAILURE TO COMPLY WITH ORDERS OF THIS COURT

28.     Monte Reel, *Blind D.C. Student Gets His Equipment; Judge Threatened To Begin Imposing Fines on Schools.*  **Washington Post,** August 16, 2003, at Pg B3 (D.C. public school system takes more than a year and a half to comply with court order to deliver electronics equipment to a legally blind student); *Petties v. District of Columbia,* 2003 U.S. Dist. LEXIS 13401 (D.D.C. 2003) (District of Columbia Public Schools violations of court orders regarding payments to providers of special education services); *Franklin v. District of Columbia,* 960 F. Supp. 394, 399, 406 (D.D.C. 1997) (District and Department of Corrections do nothing to remedy constitutional violations and then engage in a flurry of activity just before trial (subsequent history on other issues); *Evans v. Williams,* 1999 U.S. Dist. LEXIS 19106 (D.D.C. 1999) (District Court had to issue mandamus District of Columbia Superior Court's Family Division) (subsequent history on other issues); *Neal v. Director, D.C. Dep't of Corrections,* 1995

U.S. Dist. LEXIS 11461 (D.D.C. 1995) (Memorandum Opinion I) (detailing defendant's resistance to discovery) (subsequent history on sanctions.

_____/s/_____
**Dr. Simon Banks, J.D.**